1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

COMMANDER EMILY SHILLING;
COMMANDER BLAKE DREMANN;
LIEUTENANT COMMANDER GEIRID
MORGAN; SERGEANT FIRST CLASS
CATHRINE SCHMID; SERGEANT FIRST
CLASS JANE DOE; STAFF SERGEANT VIDEL
LEINS; MATTHEW MEDINA; and GENDER
JUSTICE LEAGUE,

        *Plaintiffs*,

     v.

DONALD J. TRUMP, in his official capacity as
President of the United States; UNITED STATES
OF AMERICA; PETER HEGSETH, in his official
capacity as Secretary of Defense; UNITED
STATES DEPARTMENT OF DEFENSE; MARK
AVERILL, in his official capacity as Acting
Secretary of the Army; UNITED STATES
DEPARTMENT OF THE ARMY; TERENCE
EMMERT, in his official capacity as Acting
Secretary of the Navy; UNITED STATES
DEPARTMENT OF THE NAVY; GARY
ASHWORTH, in his official capacity as Acting

Case No.  2:25-cv-241

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**

**CAPTION CONTINUED ON NEXT PAGE**

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF
CASE NO.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3099
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

1    Secretary of the Air Force; UNITED STATES
2    DEPARTMENT OF THE AIR FORCE,

3                *Defendants.*

4

5                        **NATURE OF ACTION**

6        1.      This action challenges the constitutionality of Executive Order No. 14183,

7    *Prioritizing Military Excellence and Readiness* (the "2025 Military Ban"), which President Donald

8    J. Trump issued on January 27, 2025,[1] and related official federal policy and directives, which

9    together ban a group of Americans—transgender people—from serving their Country in the

10   military simply because of who they are.

11       2.      There are currently thousands of transgender people selflessly and patriotically

12   serving in our Nation's armed services across myriad roles, and many others seek to follow the

13   same noble path. Transgender service members take the same oath as every other service member

14   to serve our Nation and place themselves in harm's way—potentially paying the ultimate price—

15   in service of our Country. And to be clear, our country *needs* ready, able, and willing service

16   members to stand up and protect our freedoms. But the 2025 Military Ban turns them away and

17   kicks them out—for no legitimate reason. Rather, it baselessly declares ***all*** transgender people unfit

18   to serve, insults and demeans them, and cruelly describes every one of them as incapable of "an

19   honorable, truthful, and disciplined lifestyle, even in one's personal life," based solely because

20   they are transgender. These assertions are, of course, false.

21       3.      Nevertheless, the 2025 Military Ban denies the existence of transgender people

22   altogether, branding all people whose gender identities differ from the sex assigned to them at birth

23   as a "falsehood" and lacking the "humility and selflessness required of a service member." 2025

24   Military Ban § 1.  It incorporates the definitions of another executive order (the "Gender Identity

25

26       _____
         [1] Exec. Order No. 14183, *Prioritizing Military Excellence and Readiness*, 90 Fed. Reg.
         8,757 (Jan. 27, 2025), https://www.govinfo.gov/content/pkg/FR-2025-02-03/pdf/2025-02178.pdf.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

Executive Order")[2] which proclaims that having a gender identity incongruent with one's sex designated at birth is a "false belief." 2025 Military Ban § 3; Gender Identity Executive Order § 2(f).

4.      The 2025 Military Ban directs the Secretary of Defense to adopt and execute a policy establishing that a person being transgender is incompatible with military service, thereby preventing existing service members who are transgender from continuing to serve and preventing transgender people from enlisting in, or acceding to, the armed forces in the future.  2025 Military Ban § 4(a)–(c).  It further directs the Secretary of Homeland Security to adopt and execute the same with respect to the Coast Guard.  2025 Military Ban § 4(e).

5.      The 2025 Military Ban and related federal policy and directives undermine military readiness, endanger our safety, and violate the United States Constitution. IT also represents an abrupt and misguided change from current military policy.

6.      Plaintiffs are seven existing service members who have served honorably and openly as transgender in the military for years; one transgender person who, were it not for 2025 Military Ban and related policy and directives, meets the requirements to serve and who wishes to enlist; and an organizational Plaintiff with transgender military members.

7.      Three Plaintiffs are senior officers. Commander Shilling, Commander Dremann, and Lieutenant Commander Morgan are senior Naval officers. Each has an impressive military record. Commander Shilling has flown 60 combat missions. Commander Dremann has supervised hundreds of personnel maintaining United States Marine Corps aircraft and repairing submarines for deployment.  And Lieutenant Commander Morgan manages a substantial science and technology funding portfolio.

8.      Three Plaintiffs are senior enlisted service members in the Army and the Air Force with equally admirable service records.  Sergeant First Class Doe works as a satellite

---

[2] Exec. Order No. 14168, *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, 90 Fed. Reg. 8,615 (Jan. 20, 2025), https://www.govinfo.gov/content/pkg/FR-2025-01-30/pdf/2025-02090.pdf.

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Lambda Legal Defense and
Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

Human Rights
Campaign Foundation
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

communications operator, Sergeant First Class Schmid holds the military occupational specialty of Signals Intelligence Analyst, and Staff Sergeant Videl Leins works on high voltage power plants.

9.    One Plaintiff, Matthew Medina, seeks to enlist in the United States Marine Corps in order to serve his country and simultaneously escape generational poverty. And the organization, Gender Justice League, seeks to protect its members who are or aspire to be service members from discrimination.

10.    By categorically excluding transgender people, the 2025 Military Ban and related federal policy and directives violate the equal protection and due process guarantees of the Fifth Amendment and the free speech guarantee of the First Amendment. They lack any legitimate or rational justification, let alone the compelling and exceedingly persuasive ones required. Accordingly, Plaintiffs seek declaratory, and preliminary and permanent injunctive, relief.

**PARTIES**

**Plaintiffs**

11.    Plaintiff **Commander Emily "Hawking" Shilling** is a 42-year-old woman who resides in Maryland. She has served for more than 19 years in the United States Navy and is currently stationed in Maryland. Commander Shilling is transgender.

12.    Plaintiff **Commander Blake Dremann** is a 43-year-old man who is stationed in Guam. He has served for more than 19 years in the United States Navy. Commander Dremann is transgender.

13.    Plaintiff **Lieutenant Commander Geirid Morgan** is a 45-year-old woman who resides in Maryland. She has served for more than 14 years in the United States Navy and is currently stationed in Maryland. Lieutenant Commander Morgan is transgender.

14.    Plaintiff **Sergeant First Class Cathrine Schmid** is a 40-year-old woman who resides in Baltimore, Maryland. She has served in the United States Army for more than 20 years

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF
CASE NO.    - 3

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Lambda Legal Defense and
Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

Human Rights
Campaign Foundation
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

and is currently stationed at Fort George G. Meade in Maryland. Sergeant First Class Schmid is transgender.

15.    Plaintiff **Sergeant First Class Jane Doe** is a 37-year-old woman who resides in Olympia, Washington. She has served in the United States Army for over 17 years and is currently stationed at Joint Base Lewis-McChord (JBLM) in the State of Washington.  Sergeant First Class Doe is transgender.

16.    Plaintiff **Staff Sergeant Videl Leins** is a 34-year-old woman who resides in Las Vegas, Nevada. She has served in the United States Air Force for 16 years. Staff Sergeant Leins is transgender.

17.    Plaintiff **Mr. Matthew Medina** is a 23-year-old man who resides in New Jersey. He wishes to serve in the military. Mr. Medina is transgender.

18.    Commander Shilling, Commander Dremann, Lieutenant Commander Morgan, Sergeant First Class Schmid, Sergeant First Class Doe, Staff Sergeant Leins, and Mr. Medina are referred to collectively as the "Individual Plaintiffs."

19.    Plaintiff **Gender Justice League** is a Washington State-based gender and sexuality civil and human rights organization. Gender Justice League's principal place of business is in Seattle, Washington. Gender Justice League brings its claims on behalf of its members. Gender Justice League is referred to as the "Organizational Plaintiff."  Multiple Individual Plaintiffs are members of Gender Justice League.

**Defendants**

20.    Defendant **Donald J. Trump** is the President of the United States of America and Commander in Chief of the U.S. military. On January 27, 2025, President Trump signed and issued the 2025 Military Ban.  He is responsible for the actions and decisions that Plaintiffs challenge in this action.  He is sued in his official capacity.

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF
CASE NO.    - 4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

21.     Defendant **United States of America** encompasses all federal agencies and departments, including the United States Department of Defense and United States Department of Homeland Security, that are responsible for implementing the 2025 Military Ban.

22.     Defendant **Peter Hegseth** is the Secretary of the United States Department of Defense. Secretary Hegseth is responsible for all aspects of the operation and management of the Department of Defense, including the implementation of the 2025 Military Ban.  He is sued in his official capacity.

23.     Defendant **United States Department of Defense** is a cabinet-level department of the United States federal government. The Department of Defense is composed of the office of the Secretary of Defense; the Joint Chiefs of Staff; the Joint Staff; America's Defense Agencies; the Department of Defense Field Activities; the Departments of the Army, Navy, and Air Force; the unified and specified combatant commands, such other offices, agencies, activities, and commands as may be established or designated by law or by the President; and all offices, agencies, activities, and commands under any of their control or supervision. Under the direction of Secretary Hegseth, the Department of Defense is responsible for administration and enforcement of the 2025 Military Ban.

24.     Defendant **Mark Averill** is the Acting Secretary of the United States Department of the Army. He is the leader of Department of the Army and is responsible for its administration and operation.  He is sued in his official capacity.

25.     Defendant **Department of the Army** is one of three military departments of the Department of Defense and is responsible for the administration and operation of the United States Army.

26.     Defendant **Terence Emmert** is the Acting Secretary of the United States Department of the Navy. He is the leader of Department of the Navy and is responsible for its administration and operation.  He is sued in his official capacity.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

27.     Defendant **Department of the Navy** is one of three military departments of the Department of Defense and is responsible for the administration and operation of the United States Navy and the United States Marine Corps.

28.     Defendant **Gary Ashworth** is the Acting Secretary of the Air Force. He is the leader of Department of the Air Force and is responsible for its administration and operation. He is sued in his official capacity.

29.     Defendant **Department of the Air Force** is one of three military departments of the Department of Defense and is responsible for the administration and operation of the United States Air Force and the United States Space Force.

30.     Defendants Defense Secretary Hegseth, Department of Defense, Acting Secretary of the Army Averill, Department of the Army, Acting Secretary of the Navy Emmert, Department of the Navy, Acting Secretary of the Air Force Ashworth, and Department of the Air Force are referred to collectively as the "Agency Defendants."

## JURISDICTION AND VENUE

31.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the laws of the United States and the United States Constitution; 28 U.S.C. § 1346, as a civil action against the United States founded upon the Constitution, an Act of Congress, or an executive regulation; and 28 U.S.C. § 1361, as an action to compel an officer or employee of the United States or an agency to perform a duty owed to a plaintiff..

32.     Venue is proper in the Western District of Washington under 28 U.S.C. §§ 1391(b)(2) and 1391(e) because each defendant is an agency of the United States or an officer of the United States sued in their official capacity, Defendants Department of the Army and Department of the Air Force and Plaintiff Jane Doe reside at Joint Base Lewis–McChord in Pierce County within this District, Plaintiff Gender Justice League resides in King County within this District, and a substantial part of the events or omissions giving rise to this action occurred and continue to occur in this District because Defendants Department of the Army and Department of

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

the Air Force and Plaintiff Jane Doe reside in this District and Defendants Department of the Army and Department of the Air Force are among the federal agencies that have been instructed to implement, administer, and enforce the 2025 Military Ban.

33.    An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a), and this Court may grant declaratory, injunctive, and other relief pursuant to 28 U.S.C. §§ 2201–2202 and Rules 57 and 65 of the Federal Rules of Civil Procedure.

34.    This Court has personal jurisdiction over each of the Defendants because their enforcement of the 2025 Military Ban occurs within Washington.

## FACTUAL ALLEGATIONS

**Background Information Regarding Transgender People**

35.    Gender identity is a person's fundamental, internal sense of belonging to a particular gender. It is a core characteristic of human identity that everyone possesses. Gender identity is innate and has a biological basis.

36.    Although most people have a gender identity that matches their sex assigned at birth, this is not the case for transgender people, who are defined as transgender because their gender identity is incongruent with the sex they were assigned at birth. Transgender people have existed throughout human history, although understanding of transgender people has grown in modern times.

37.    A person's sex is generally designated at birth based on external genitalia. But other sex-related characteristics can include chromosomes, hormone levels, internal reproductive organs, and also gender identity.

38.    When someone's sex-related characteristics are not in typical alignment with each other, gender identity is the critical determinant of sex.

39.    Attempts to change an individual's gender identity to bring it into alignment with the sex that the individual was assigned at birth are ineffective and potentially harmful.

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF
CASE NO.    - 7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

40.     For transgender people, the incongruence between their gender identity and sex assigned at birth can cause clinically significant distress, which is known as gender dysphoria.

41.     According to the American Psychiatric Association's *Diagnostic & Statistical Manual of Mental Disorders, Fifth Edition, Text Revision*, "gender dysphoria" is the diagnostic term for the condition experienced by some transgender people of clinically significant distress resulting from the lack of congruence between their gender identity and the sex assigned to them at birth.

42.     Gender dysphoria can be treated in accordance with widely recognized, well-established, and evidence-based clinical practice guidelines. Treatment for gender dysphoria aims to resolve the distress associated with the incongruence between a transgender person's assigned sex at birth and their gender identity.

43.     The health and wellbeing of all people, including those who are transgender, depends on their ability to live in a manner consistent with their gender identity. As such, living in a manner consistent with one's gender identity is a key aspect of treatment for gender dysphoria.

44.     The process by which transgender people come to live in a manner consistent with their gender identity, rather than the sex they were assigned at birth, is known as transition.

45.     The steps that transgender people take to transition are not identical for every individual, but they generally include social, legal, and medical transition.

46.     Social transition entails the adoption of a gender role matching one's gender identity. This can include using a new name, pronouns that correspond to a person's gender identity, and adopting dress or grooming styles that more authentically reflect a person's gender.

47.     Legal transition involves steps to conform one's legal identity to one's gender identity, such as legally changing one's name and updating the name and gender marker on one's driver's license and birth certificate.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

48.     Medical transition includes treatment that brings one's body into alignment with one's gender identity, such as hormone therapy. Whether any particular treatment is medically necessary or even appropriate, however, depends on the needs of the individual.

49.     These various components associated with transition—social, legal, and medical transition—do not change an individual's gender but instead bring the individual's social presentation, legal identity, and physical appearance into greater typical alignment with their gender.

**The Individual Plaintiffs' Military Service**

**Commander Emily "Hawking" Shilling**

50.     Commander Shilling has served in the Navy for over 19 years. She commissioned as an officer in November 2005.

51.     Commander Shilling has served as a combat aviator. She was deployed to Afghanistan and Iraq on board an aircraft carrier, from which she conducted 60 combat missions, leading to the award of three Air Medals for her meritorious service. During this time, she was also awarded the Daedalian Award for Superior Airmanship During an Emergency in which, through her calm execution and superior flying skills, she saved both her aircraft and its four crew members from imminent ejection and destruction over the Pacific Ocean. Commander Shilling has earned one meritorious Service Medal, two Navy Commendations and three United States Navy and United States Marine Corps Achievement Medals.

52.     Commander Shilling then served as a United States Navy Test Pilot, where she conducted high-risk flight tests to advance aviation technology and improve aircraft capabilities.

53.     Commander Shilling currently serves as an Aerospace Engineering Duty Officer, charged with leading large Naval acquisition programs. Her work directly impacts the future of naval aviation, ensuring that the fleet remains operationally effective, technologically advanced, and mission-ready,

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

54.     The Navy has invested over 20 million dollars in Commander Shilling's training and flight experience.

55.     Commander Shilling is transgender. She was assigned the sex of male at birth, but her gender identity is female.

56.     Commander Shilling began to come to terms with her gender approximately six years ago in 2019 and began living openly as female outside of work at that time.

57.     In 2021, once military policy allowed, Commander Shilling transitioned socially and medically within the military.

58.     Commander Shilling has taken legal steps to transition. She legally changed her first name to Emily. She also changed her name and gender marker to female on her driver's license, birth certificate, social security card and records, and passport.

59.     The military updated Commander Shilling's gender marker in the Defense Enrollment Eligibility Reporting System ("DEERS") in Fall 2021.

60.     In consultation with healthcare professionals, Commander Shilling has taken clinically appropriate steps to transition.

61.     In Spring 2023, Commander Shilling regained her flight clearance post-transition to fly high-performance jets. The Naval Aerospace Medical Institute, after extensive evaluations, determined there was no medical reason to deny her flight clearance.

62.     Commander Shilling has engaged in speech and conduct disclosing her transgender status and expressing her gender identity, including within the Navy, and wants to continue to be able to do so without fear of retaliation or discharge.

63.     Being able to serve openly as a transgender person has made Commander Shilling an even more productive, healthy member of her command. Being able to lead with authenticity and integrity has only strengthened her relationships with fellow service members.

64.     Since the 2025 Military Ban was issued, Commander Shilling has felt deeply unsettled, betrayed, and fearful for her future in the military and her bodily autonomy. After

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF
CASE NO.     - 10

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

1  dedicating her entire adult life to the Navy, her ability to continue serving is now in jeopardy solely
2  because of her identity as a transgender woman.
3  Commander Shilling and her partner have built their lives around military service, and they have
4  three children who depend on her continued employment. If she is forcibly discharged, her
5  family will face immediate financial and personal instability, as well as the loss of essential
6  benefits like health care, housing allowances, and retirement security.

7  **Commander Blake Dremann**

8  65.    Commander Blake Dremann has served in the Navy for over 19 years. Commander
9  Dremann currently serves on the USS Frank Cable in Guam as a supply officer. As part of his
10  duties, he supervises 40 sailors and five junior officers working to repair submarines for forward
11  deployment. Prior to his current assignment, he served as a supply officer at the aviation
12  maintenance depot in North Carolina, and numerous other assignments, including service on a
13  submarine from 2011 to 2015.

14  66.    Commander Dremann has received two Defense Meritorious Service Medals, two
15  Meritorious Service Medals, a Joint Service Commendation Medal, a Navy and Marine Corps
16  Commendation Medal, a Joint Service Achievement Medal and four Navy and Marine Corps
17  Achievement Medals.

18  67.    In 2015, Commander Dremann was awarded the Vice Admiral Robert F.
19  Batchelder Award, the Navy League's award to junior officers who gave significant contributions
20  to the operational readiness of the fleet.

21  68.    Commander Dremann is preparing for his 12th career deployment.

22  69.    Commander Dremann is transgender. He was assigned the sex of female at birth,
23  but his gender identity is male.

24  70.    Commander Dremann has changed his legal name and other identity documents
25  and gender marker in DEERS. Mr. Dremann was the first person in the Navy to amend their gender
26  in DEERS.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

71. Commander Dremann has engaged in speech and conduct disclosing his transgender status and his gender identity, including by coming out to his chain of command and fellow service members, taking steps to transition, and living openly as male, and wants to continue to be able to do so without fear of retaliation or discharge.

72. While being able to live openly has made him a better person, sustained and superior performance and merit is why he continues to serve in the United States Navy.

73. Since the 2025 Military Ban was issued, Commander Dremann has been deeply concerned about his future in the U.S. Navy and he is worried about his retirement eligibility, being pulled from going on deployment, and leaving his department with a hole in it.

**Lieutenant Commander Geirid Morgan**

74. Lieutenant Commander Morgan has served in the U.S. Navy for 14 years. She initially served as an enlisted service member from 1998 to 2002, and after earning her Ph.D. from the University of Utah, she commissioned as an Officer and reentered active service in 2015.

75. Lieutenant Commander Morgan's initial occupational specialty was as an enlisted Navy diver where she supported mission critical security operations following the September 11, 2001 attacks.

76. Lieutenant Commander Morgan currently works as a Program Officer with the Office of Naval Research where she manages a science and technology funding portfolio that invests in fundamental and applied human physiology research efforts to fill current and projected operational capability gaps in the U.S. Navy and the United States Marine Corps.

77. Lieutenant Commander Morgan is transgender. She was assigned the sex of male at birth, but her gender identity is female.

78. Lieutenant Commander Morgan has changed her legal name and gender and other identity documents and has changed her name and gender marker in DEERS.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

79.     Being able to serve openly as who she is has made Lieutenant Commander Morgan a stronger asset to the military. She is able to forge stronger relationships through increased trust, which has led to two of her most productive years as a working professional in the military.

80.     Since the 2025 Military Ban was issued, Lieutenant Commander Morgan has felt deeply devalued and attacked by the 2025 Military Ban. The language in the 2025 Military Ban Executive Order is particularly difficult for Lieutenant Commander Morgan to absorb given its dehumanizing and genuine antipathy towards who she is, and its contempt for her military service and complete disregard for her family's well-being as military dependents.

81.     Involuntary separation from the Navy would cause Lieutenant Commander Morgan measurable and immediate harm by upending her retirement and long-term economic prospects and eliminating the substantial personal investment she has made in her military-specific professional development, one that does not translate into civilian life. It would also cause great harm to her family, who relies on her health care coverage to provide care for Lieutenant Commander Morgan's son, who suffers from a complex metabolic disease that requires treatment.

**Plaintiff Sergeant First Class Cathrine "Katie" Schmid**

82.     Plaintiff Sergeant First Class Cathrine "Katie" Schmid is a 40-year-old woman who resides in Baltimore, Maryland. She has served in the U.S. Army for more than 20 years and is currently stationed at Fort George G. Meade in Maryland.

83.     Sergeant First Class Schmid was born at K.I. Sawyer Air Force Base in Michigan, and was raised in Portland, Oregon. She has always been a patriotic American with a desire to serve others and was drawn to opportunities presented by serving in the Army. She is proud to put on her uniform each day and serve her country.

84.     Sergeant First Class Schmid holds the military occupational specialty of Signals Intelligence Analyst within the Army and currently performs duties as a Brigade Equal Opportunity Advisor. She has previously performed duties as a Multi-Domain Intelligence Non-Commissioned Officer in Charge, Senior Technical Intelligence Sergeant, Platoon Sergeant,

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF
CASE NO.     - 13

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

Signals Intelligence Sergeant, Squad Leader, Multifunction Team Leader, Brigade Land and Ammunition NCO, Brigade Current Operations NCO, Signals Intelligence Analyst, All-Source Analysis System Master Analyst, Human Intelligence Collector, and Counterintelligence Agent. She joined the Army in 2005.

85.     Sergeant First Class Schmid is transgender. She was assigned the sex of male at birth but has a female gender identity. She knew from a young age in life that she was female.

86.     Sergeant First Class Schmid began to come to terms with her gender identity approximately eleven years ago. At that time, she started to see a mental health professional who diagnosed her with gender dysphoria.

87.     Sergeant First Class Schmid began living openly as a woman in 2014.

88.     In consultation with health care professionals, Sergeant First Class Schmid has taken clinically appropriate steps to transition.

89.     Sergeant First Class Schmid has taken legal steps to transition. She legally changed her first name to Cathrine. She also changed her name and changed her gender marker to female on her driver's license, passport, and social security records.

90.     Sergeant First Class Schmid has worked with her chain of command throughout her transition, and both they and other enlisted personnel have been supportive of her throughout that process. Her gender marker in DEERS reflects that she is female.

91.     Sergeant First Class Schmid is recognized and treated as female in all aspects of military life, including in social interactions and in her compliance with women's grooming, facilities use, and physical training requirements.

92.     The fact that Sergeant First Class Schmid is transgender has not prevented her from doing her job in the military, nor has it prevented others from doing their jobs in the military. Sergeant First Class Schmid performs valuable services for the Army, and her performance of those duties strengthen our nation's military readiness.

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF
CASE NO.    - 14

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Lambda Legal Defense and
Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

Human Rights
Campaign Foundation
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

93.     Sergeant First Class Schmid has received numerous awards and decorations for her service and has been promoted since coming out as transgender to her chain of command.

94.     Being able to serve openly as a transgender woman has made Sergeant First Class Schmid a stronger asset for the military. She is able to function as a productive, healthy member of the military, and she is able to forge stronger relationships with others in her unit.

95.     Sergeant First Class Schmid has engaged in speech and conduct disclosing her transgender status and expressing her gender identity, including within the Army, by coming out to her chain of command and her fellow service members, taking steps to transition, and living openly as a woman in military life. She wants to continue to be able to engage in speech and conduct disclosing her transgender status and expressing her gender identity.

96.     The 2025 Military Ban has caused Sergeant First Class Schmid great fear and anxiety, as it risks her ability to fulfill her remaining service requirements, her continued employment in the Army, and her retirement benefits. Her intent and desire are to finish her current term of service in 2026 and then to apply for another position in her unit before retiring.

97.     Sergeant First Class Schmid also relies on her employment with the military to provide continuity of critical health care to her disabled wife.

98.     In addition to her concerns about loss of employment and benefits, the 2025 Military Ban also causes Sergeant First Class Schmid distress because it tells her fellow soldiers—for whom she would lay down her life—that her very existence is a threat to them.

**Plaintiff Sergeant First Class Jane Doe**

99.     Plaintiff Sergeant First Class Jane Doe is 37-years-old. She is actively serving in the United States Army and has served for over 17 years.

100.     Sergeant First Class Doe has worked as a satellite communications operator and maintainer for more than ten years. She was deployed to Iraq for most of 2009 and then again to Iraq in 2011, and she also served nine months in Kuwait.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

1    101.    Sergeant First Class Doe has received numerous awards and decorations for her

2    service in the Army.

3    102.    Sergeant First Class Doe is transgender. She was assigned male at birth, but her

4    gender identity is female.

5    103.    Since coming out as transgender, Sergeant First Class Doe has been selected for

6    positions of increased responsibility and trust, completed a nine-month assignment to Kuwait,

7    and was promoted into senior leadership. She is currently preparing for two international

8    missions this year in key leadership positions.

9    104.    Sergeant First Class Doe came out about her gender identity in 2021 and has lived

10   as female since then. She has updated her gender marker in DEERS, on her passport, and on her

11   state identification.

12   105.    In consultation with health care professionals, Sergeant First Class Doe has taken

13   clinically appropriate steps to transition.

14   106.    Sergeant First Class Doe and her family recently relocated to a location with a

15   higher cost of living for her military job. Her military job provides the majority of the income

16   and health benefits for her family, which includes her wife and child. She plans to pass her GI

17   Bill education benefits to her child and has planned on receiving retirement benefits from the

18   military. The 2025 Military Ban has caused Sergeant First Class Doe to fear for her and her

19   family's future and safety.

20   107.    Sergeant First Class Doe wishes to continue her service. If she is forced to leave

21   military service before reaching 20 years of service, she risks losing the retirement benefits and

22   GI bill benefits that she has worked to establish over the past 17 years.

23   **Plaintiff Staff Sergeant Videl Leins**

24   108.    Plaintiff Staff Sergeant Leins is 34-years-old. She is actively serving in the United

25   States Air Force and has served for 16 years.

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

109.    Staff Sergeant Leins works on various electrical systems including high voltage power plants, interior wiring, fire alarms, and airfield lighting.

110.    Staff Sergeant Leins joined the military to develop her career and gravitated towards the Air Force to follow in her grandfather's footsteps.

111.    Staff Sergeant Leins has been deployed overseas five times—she volunteered for her first deployment to Iraq, served back-to-back deployments in Kuwait, and was deployed to Korea twice. She is currently stationed at Nellis Air Force Base in Las Vegas, Nevada.

112.    Staff Sergeant Leins is transgender. She was assigned the sex of male at birth but has a female gender identity.

113.    Staff Sergeant Leins began coming to terms with her gender identity in 2016. She began living openly as a woman in 2022.

114.    In consultation with healthcare professionals, Staff Sergeant Leins has taken clinically appropriate steps to transition.

115.    Staff Sergeant Leins has taken legal steps to transition. She has changed her name and gender marker on her driver's license. She has amended her birth certificate.

116.    The 2025 Military Ban has left Staff Sergeant Leins uncertain about her future, which has taken a toll on her mental and emotional wellbeing. It has created a sense of distance and unease.

117.    Staff Sergeant Leins relies on her military-provided healthcare to provide services to her child. The 2025 Military Ban not only threatens her military career but also her family's well-being.

**Plaintiff Matthew Medina**

118.    Plaintiff Mr. Matthew Medina is a 23-year-old man who was born in California and currently resides in New Jersey.

119.    Mr. Medina was raised under difficult circumstances, and he hopes to rise above the adverse circumstances he experienced as a youth to deliver his family from generational

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

1   poverty and to find role models and support in the brotherhood of the Marines. He has been

2   preparing to join the military for the past year, including by consulting with a recruiter, completing

3   his application documents, and working to meet tattoo removal and physical fitness requirements.

4   Mr. Medina chose the Marines because the Marines consider themselves the best and brightest,

5   and he wants to be counted among their ranks.

6        120.    Mr. Medina was raised in a single parent household and had hoped to enlist in order

7   to help support his mother and his 12-year-old sister, and invest in his future family. Without the

8   military's assistance, Mr. Medina will be unable to afford the higher education he was planning to

9   pursue, which upends his career goals and his future earning potential. Mr. Medina feels that

10  transgender people should be able to serve their country and avail themselves of the opportunities

11  provided by the military to create a foundation for themselves and their families.

12       121.    Mr. Medina is transgender. He was assigned the sex of female at birth, but his

13  gender identity is male.

14       122.    Mr. Medina has known since he was young that he is a male.

15       123.    Mr. Medina has taken clinically appropriate steps as part of his medical transition,

16  has changed the gender marker on his identity documents, and lives in all ways as a man.

17       124.    Mr. Medina believes that the 2025 Military Ban seeks to erase his identity and

18  declare his identity as something dishonorable. This has caused him to feel discomfort and pain,

19  akin to being bullied, as the 2025 Military Ban denies him the right to be treated with dignity and

20  respect as he serves his country.

21  **The Organizational Plaintiff: Gender Justice League**

22       125.    Founded in 2012, Gender Justice League is a civil and human rights membership

23  organization that, as relevant here, advocates on behalf of transgender individuals in the State of

24  Washington and across the country. It has offices in Seattle, Washington and Alexandria, Virginia.

25  It seeks to create a community for transgender people and to empower them to combat the

26  structural oppression, discrimination, and violence they face in their daily lives.

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF
CASE NO.    - 18

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

126.    Gender Justice League sues on behalf of its members, including multiple Individual Plaintiffs, and other prospective and current transgender service members who are currently adversely affected by the 2025 Military Ban.

**Prior Military Service by Transgender Individuals**

127.    There are thousands of transgender service members in the United States Armed Forces.

128.    Though there has never been a federal statute excluding transgender people from military service, prior to 2016, the military appears to have had a practice of excluding transgender people from service based on Department of Defense and service-specific rules and regulations.

129.    This earlier military exclusionary policy was based on an inaccurate, historical, pathological view that regarded transgender people as deviants. This view was discredited long ago following psychological and medical advances in the understanding of gender identity and of transgender people.

130.    Despite this earlier practice of exclusion, transgender people have always served in the military.

131.    As noted by former Secretary of Defense Ash Carter ("Secretary Carter"), transgender people "often had to serve in silence alongside their fellow comrades in arms."

132.    Transgender people have played essential, mission-critical roles in the military, even when they have not had the ability to serve openly.

133.    According to a study conducted by the Williams Institute at the University of California, Los Angeles, an estimated 134,300 transgender people are veterans or are retired from guard or reserve service.

134.    It is a statistical certainty that transgender people have sacrificed their lives during military service to the United States.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

**After Study and Deliberation, the Military Explicitly Permits Transgender People to Serve**

135.    The military's prior exclusionary policy barring transgender people from serving was the subject of extensive research and study, which concluded that it lacked any valid justification.

136.    For example, in March 2014, the Transgender Military Service Commission (the "Commission") issued a report analyzing the military's prior exclusionary policy. The Commission, which was co-chaired by a former U.S. Surgeon General, was convened to determine whether the ban was based on medically sound reasons. The Commission found that there was "no compelling medical rationale" for banning military service by transgender people.

137.    In May 2014, then-Secretary of Defense Chuck Hagel publicly stated that he was receptive to reviewing and reassessing the rules that govern service by transgender people. He explained that "[e]very qualified American who wants to serve our country should have an opportunity if they fit the qualifications and can do it."

138.    In July 2015, then-Secretary Carter admitted that Department of Defense regulations regarding transgender service members "[were] outdated and [were] causing uncertainty that distracted commanders from our core missions." He also recognized the many transgender people who were already serving in the military: "We have transgender soldiers, sailors, airmen and Marine—real, patriotic Americans—who I know are being hurt by an outdated, confusing, inconsistent approach that's contrary to our value of service and individual merit."

139.    Accordingly, Secretary Carter announced the creation of a working group to study for six months the policy and readiness implications of permitting transgender individuals to serve openly. This working group was chaired by the Under Secretary of Defense for Personnel and Readiness and comprised senior representatives from each of the military services, the Joint Staff, and relevant components from the Office of the Secretary of Defense.

140.    In addition to creating a working group, Secretary Carter also directed that, effective July 13, 2015, no service member could be involuntarily separated or denied reenlistment

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF
CASE NO.    - 20

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

or continuation of active or reserve service based on their gender identity without the approval of the Under Secretary of Defense for Personnel and Readiness.

141.    On information and belief, separations of service members on the basis of their gender identity fell sharply after July 2015, and there were very few, if any, service members who were separated on that basis from July 2015 to June 2016. In effect, transgender people served without issue in the military from July 2015 to June 2016, as well as likely before that period, albeit under the threat of separation.

142.    In or around July 2015, Secretary Carter also directed the commencement of a study to evaluate the implications of allowing transgender people to serve openly in the military. The Department of Defense commissioned the RAND Corporation, a non-profit, non-partisan research organization, to conduct the study. The Department asked RAND to (1) identify the health care needs of the transgender population and the costs associated with providing transition-related care to transgender service members, (2) assess the readiness implications of allowing transgender service members to serve openly, and (3) review the experiences of foreign militaries that permit transgender individuals to serve openly. The findings from the study, which reflected the culmination of months of research and spanned 91 pages, were publicly released in May 2016.

143.    As detailed further below, the RAND study demonstrated that the cost of providing transition-related care is exceedingly small relative to the Department of Defense's overall health care expenditures, that there are no readiness implications that prevent transgender members from serving openly, and that foreign militaries have successfully permitted open service without a negative effect on effectiveness, readiness, or unit cohesion.

144.    The leadership of the Armed Services—including the Joint Chiefs of Staff, the Service Secretaries, and Secretary Carter—together with personnel, training, readiness, and medical specialists from across the Department of Defense, studied the available data, including the findings and analysis from RAND. They also received input from transgender service members, from outside expert groups, and from medical professionals outside the Department of

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF
CASE NO.      - 21

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

1    Defense. They looked carefully at what lessons could be learned from outside the U.S. military,

2    including from allied militaries that permit transgender people to serve openly, as well as from the

3    private sector.

4    145.    As a result of this deliberative process and year-long study, on June 30, 2016,

5    Secretary Carter announced that the military was ending the ban on open service by transgender

6    people. The conclusion was supported by, among other things, the need to recruit and retain the

7    individuals most highly qualified to serve. Effective immediately, transgender service members

8    were permitted to serve openly and could no longer be discharged or otherwise separated from the

9    military solely for being transgender. Department of Defense materials explained that "[t]his

10    policy change was crafted through a comprehensive and inclusive process that included the

11    leadership of the Armed Services, medical and personnel experts across the Department,

12    transgender Service members, outside medical experts, advocacy groups, and the RAND

13    Corporation."

14    146.    In the accompanying directive-type memorandum regarding the policy change,

15    Secretary Carter explained that the policies and procedures permitting open service were premised

16    on the conclusion that "open service by transgender Service members . . . is consistent with military

17    readiness and with strength through diversity."

18    147.    The policy change was announced through a press conference held by Secretary

19    Carter as well as through a section of the Department of Defense website titled "Department of

20    Defense Transgender Policy." That website lists the highlights of the policy change, links to

21    various Department of Defense resources related to the policy change, and includes a video that

22    assures transgender individuals:  "Transgender Members Can Now Serve Openly."

23    148.    The Department of Defense planned a 12-month implementation process that

24    would proceed in stages, beginning with the needs of current service members and their

25    commanders, followed by training for the entire force, and concluding with the accession of

26    transgender recruits.

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF
CASE NO.    - 22

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

149.    On September 30, 2016, within 90 days after the lifting of the ban, the Department of Defense issued a training handbook for commanders, transgender service members, and the force, titled "Transgender Service in the U.S. Military: An Implementation Handbook." The 71-page handbook was designed to help transgender service members in their transition, help commanders with their duties and responsibilities, and help all service members understand the new policies allowing open service by transgender service members. The handbook illustrates that open service has been workable and practicable.

150.    Also, within 90 days of the lifting of the prior ban, the Department of Defense issued medical guidance for providing transition-related care to transgender service members, who were also able to begin the process to officially change their gender marker in the military's personnel management systems.

151.    Over the next nine months following the lifting of the ban (i.e., from October 2016 to June 2017), the services conducted training of the force based on detailed guidance and training materials regarding the policy change.

**The 2017 Ban on Transgender Military Service Members**

152.    Through a series of three tweets on July 26, 2017, President Trump unilaterally reversed the U.S. military's policy of permitting open service by transgender individuals and dismantled the years of work that led to the development and implementation of that policy.

153.    The "process" that led to the "2017 Ban"—to the extent there was any meaningful process at all—was the antithesis of the deliberative, comprehensive, and inclusive process that led to the rescission of the prior ban.

154.    President Trump's unilateral decision to bar transgender individuals from the military was met with widespread opposition and condemnation. Attorneys general from 17 states and the District of Columbia joined a letter denouncing the President's exclusion of transgender individuals from the military as "blatant discrimination" that violates "fundamental constitutional and American values." The states included California, Connecticut, Delaware, Illinois, Iowa,

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

1    Maine, Maryland, Massachusetts, Minnesota, New Mexico, New York, Oregon, Pennsylvania,

2    Rhode Island, Vermont, Virginia and Washington.

3        155.    Fifty-six retired generals and admirals issued a public statement on August 1, 2017,

4    warning that the proposed ban on transgender service members would downgrade military

5    readiness. The statement noted that two four-star generals and former chairmen of the Joint Chiefs

6    of Staff—Army General Martin Dempsey and Navy Admiral Mike Mullen—have publicly

7    supported open service by transgender individuals.

8        156.    In response to the 2017 Ban, a lawsuit, *Karnoski v. Trump*, was filed in the Western

9    District of Washington alleging that the 2017 Ban was unconstitutional, which led to a nationwide

10   preliminary injunction in 2017. After entry of the preliminary injunction, the military altered its

11   policy in significant respects. The injunction was subsequently stayed by the U.S. Supreme Court

12   while the government appealed the decision to the United States Court of Appeals for the Ninth

13   Circuit. The appeals court issued a ruling holding that heightened scrutiny must apply to

14   classifications singling out transgender people for discrimination, including within the military

15   context. The appeals court sent the case back to the district court to apply heightened scrutiny and

16   consider whether the court's preliminary injunction should continue in light of the military's

17   changes to its policies relating to the 2017 Ban. The appeals court emphasized that although the

18   military is entitled to deference, such deference "does not mean abdication," and defendants bear

19   the burden of establishing that they reasonably determined the policy significantly furthers the

20   government's important interests, which "is not a trivial burden."

21       157.    Similar challenges were filed in *Doe v. Trump*, a lawsuit filed in the District of

22   Columbia, *Stockman v. Trump*, filed in the Central District of California, and *Stone v. Trump*, filed

23   in the District of Maryland. Each of these challenges also led to preliminary injunctive relief

24   against the 2017 Ban.

25

26

**President Biden Enables All Qualified Americans to Serve Their Country in Uniform, Rescinds the 2017 Ban, and Opens Up the Armed Forces to More Soldiers**

158.    On January 25, 2021, after carefully considering the conclusions made by the Secretary of Defense in 2016 as well as the public testimony of then-serving Chiefs of Staff of the Army, Naval Operations, Commandant of the United States Marine Corps, and Chief of Staff of the Air Force in 2018 that transgender service did not create any issues with regard to unit cohesion or morale, President Joseph R. Biden issued Executive Order No. 14004, *Enabling All Qualified Americans to Serve Their Country in Uniform*, directing the Secretary of Defense and Secretary of Homeland Security to ensure that transgender service members could serve free from discrimination.[3]

159.    Under Executive Order 14004, transgender service members were held to the exact same rigorous standards as every other service member. They were no longer arbitrarily barred from service because they are transgender.

160.    The Chiefs of Staff to each military branch have testified that there have been no negative effects on readiness due to transgender individuals serving in the U.S. military. Additionally, data obtained by the Pentagon has shown that the cost of providing medical care to transgender troops has been miniscule.

161.    The American Medical Association, American Psychological Association, and American Psychiatric Association all oppose the banning of transgender people from the military, agreeing that there is no medical reason transgender troops should be barred from serving.

162.    Executive Order No. 14004 thus furthered the goals of the U.S. military. It opened up the military ranks to additional individuals who met the readiness qualifications to serve in the armed forces.

---

[3] Exec. Order No. 14004, *Enabling All Qualified Americans to Serve Their Country in Uniform*, 86 Fed. Reg. 7,471 (Jan. 25, 2021), https://www.govinfo.gov/content/pkg/FR-2021-01-28/pdf/2021-02034.pdf.

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF
CASE NO.    - 25

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

1

**The 2025 Ban on Transgender Military Service Members**

2      163.    On August 8, 2023, President Trump announced that he would "restore the Trump

3  ban on transgender [sic] in the military," adding, "we had it banned, we had it banned." He then

4  impersonated a General asking, "what do you think of transgender?" and responding "Uh, I don't

5  like it, sir."

6      164.    On December 22, 2024, then-President-Elect Trump declared that "I will sign

7  Executive Orders to . . . get transgender [sic] out of the military and out of our elementary schools

8  and middle schools and high schools."

9      165.    On January 27, 2025, barely one week into office, President Trump upended the

10  lives of thousands of transgender service members by issuing the 2025 Military Ban. The executive

11  order rescinds President Biden's Executive Order No. 14004 and bans transgender people from

12  military service, stating that transgender status is incompatible with military service and directing

13  the Secretary of Defense to update the standards for retention and accession to reflect this policy.

14      166.    The 2025 Military Ban expresses a demeaning and disparaging viewpoint about

15  transgender people throughout. The Executive Order asserts that having a gender identity that is

16  inconsistent with one's sex assigned at birth "conflicts with a soldier's commitment to an

17  honorable, truthful, and disciplined lifestyle, even in one's personal life. A man's assertion that he

18  is a woman, and his requirement that others honor this falsehood is not consistent with the humility

19  and selflessness required of a service member." 2025 Military Ban § 1.

20      167.    The 2025 Military Ban directs the Secretary of Defense to "update DoDI 6130.03

21  Volume 1 (Medical Standards for Military Service: Appointment, Enlistment, or Induction (May

22  6, 2018) Incorporating Change 5 of May 28, 2024) and DoDI 6130.03 Volume 2 (Medical

23  Standards for Military Service: Retention (September 4, 2020), Incorporating Change 1 of June 6,

24  2022) to reflect the purpose and policy of this Order" within 60 days. 2025 Military Ban § 4(a).

25      168.    The 2025 Military Ban has immediate effect, ordering that "the Armed Forces shall

26  neither allow males to use or share sleeping, changing, or bathing facilities designated for females,

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF
CASE NO.    - 26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

1    nor allow females to use or share sleeping, changing, or bathing facilities designated for males."

2    2025 Military Ban § 4(d).

3        169.    The 2025 Military Ban incorporates the definitions from the Gender Identity

4    Executive Order, stating that they "shall apply" to the 2025 Military Ban. 2025 Military Ban § 3.

5        170.    These definitions express a disparaging, demeaning, idiosyncratic, and unscientific

6    viewpoint about transgender people and gender identity. Together, the definitions deny the

7    existence of gender identities that differ from a person's sex assigned at birth and deny the

8    existence of people who are transgender.

9        171.    Specifically, the Gender Identity Executive Order says that it is the "policy of the

10    United States to recognize two sexes, male and female," which "are not changeable and are

11    grounded in fundamental and incontrovertible reality." Gender Identity Executive Order § 2

12    ("Policy and Definitions").

13        172.    The Gender Identity Executive Order further defines "Female" to mean "a person

14    belonging, at conception, to the sex that produces the large reproductive cell," Gender Identity

15    Executive Order § (d); and "Male" to mean "a person belonging, at conception, to the sex that

16    produces the small reproductive cell," *id.* § 2(e).

17        173.    The Gender Identity Executive Order also adopts the following definition of what

18    it terms "Gender ideology" and "Gender identity":

19        (f) "Gender ideology" replaces the biological category of sex with an ever-shifting
concept of self-assessed gender identity, permitting the false claim that males can
20    identify as and thus become women and vice versa, and requiring all institutions of
society to regard this false claim as true. Gender ideology includes the idea that
21    there is a vast spectrum of genders that are disconnected from one's sex. Gender
ideology is internally inconsistent, in that it diminishes sex as an identifiable or
22    useful category but nevertheless maintains that it is possible for a person to be born
in the wrong sexed body.

23        (g) "Gender identity" reflects a fully internal and subjective sense of self,
24    disconnected from biological reality and sex and existing on an infinite continuum,
that does not provide a meaningful basis for identification and cannot be recognized
25    as a replacement for sex.

26    Gender Identity Executive Order § 2(f), (g).

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF
CASE NO.    - 27

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

174.    The 2025 Military Ban further requires the Secretary of Defense promptly to issue directives preventing the use of pronouns that accord with the gender identities of transgender service members. 2025 Military Ban § 4(b).

175.    In light of the 2025 Military Ban and related federal policy and directives, transgender service members are now no longer able to serve openly on the same terms as before the order. Any present-day speech or conduct that "openly" discloses a transgender individual's gender identity or transgender status while serving in the military or even in their private lives places them in violation of the 2025 Military Ban, subjecting them to discharge and other "action . . . against [them]."

176.    Defendants are responsible for implementing and enforcing the 2025 Military Ban and related policy and directives.

177.    Banning ready, willing, and able service members does not further the objectives of the United States Armed Forces. The military needs more recruits to maintain readiness and fill its ranks. But the 2025 Military Ban turns them away and forces current decorated service members to hide their identity, quit, or be separated from the military.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### EQUAL PROTECTION VIOLATION

178.    Plaintiffs incorporate paragraphs 1 through 177 as though fully set forth herein.

179.    Plaintiffs Shilling, Dremann, Morgan, and Medina state this claim against Defendants Trump, United States, Hegseth, Department of Defense, Emmert, and United States Department of the Navy. Plaintiffs Schmid and Doe state this claim against Defendants Trump, United States, Hegseth, Department of Defense, Averill, and United States Department of the Army.

180.    Plaintiff Leins states this claim against Defendants Trump, United States, Hegseth, Department of Defense, Ashworth, and United States Department of the Air Force.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

181.    Plaintiff Gender Justice League states this claim against all Defendants.

182.    Plaintiffs state this cause of action against individual Defendants in exclusively their official capacities for purposes of seeking declaratory and injunctive relief and challenge the 2025 Military Ban and related federal policy and directives both facially and as applied to them or, as to the Gender Justice League, as applied to its members.

183.    The Fifth Amendment to the United States Constitution provides that no person shall be deprived of life, liberty, or property without due process of law. The Due Process Clause of the Fifth Amendment includes within it a prohibition against the denial of equal protection by the federal government, its agencies, or its officials or employees that is commensurate with the Equal Protection Clause of the Fourteenth Amendment.

184.    The Equal Protection Clause of the Fourteenth Amendment, which is incorporated into the Fifth Amendment, protects individuals from discrimination based on sex and transgender status.

185.    The 2025 Military Ban and Defendants' conduct in implementing, administering, and enforcing the 2025 Military Ban and related official federal policy and directives has resulted in a ban on transgender people serving in the military that discriminates against Individual Plaintiffs and the transgender members of Gender Justice League based on sex and transgender status.

186.    Defendants' disparate treatment of transgender people facially and intentionally discriminates against transgender people based on sex and transgender status in violation of the equal protection guarantee, without even a legitimate justification, let alone the important, exceedingly persuasive, or compelling one required.

187.    The 2025 Military Ban and related federal policy and directives reflect and are based on impermissible animus towards transgender people, which renders them invalid as a whole.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

188.    Defendants have violated the equal protection rights of transgender people, including Individual Plaintiffs and members of Gender Justice League, under the Fifth Amendment.

### SECOND CAUSE OF ACTION
### FREE SPEECH VIOLATION

189.    Plaintiffs incorporate paragraphs 1 through 177 as though fully set forth herein.

190.    Plaintiffs Shilling, Dremann, Morgan, and Medina state this claim against Defendants Trump, United States, Hegseth, Department of Defense, Emmert, and United States Department of the Navy.

11. Plaintiffs Schmid and Doe state this claim against Defendants Trump, United States, Hegseth, Department of Defense, Averill, and United States Department of the Army.

191.    Plaintiff Leins states this claim against Defendants Trump, United States, Hegseth, Department of Defense, Ashworth, and United States Department of the Air Force.

192.    Plaintiff Gender Justice League states this claim against all Defendants.

193.    Plaintiffs state this cause of action against Defendants in exclusively their official capacities for purposes of seeking declaratory and injunctive relief and challenge the 2025 Military Ban and related federal policy and directives both facially and as applied to them or, as to the organizational plaintiffs, as applied to their members.

194.    The 2025 Military Ban and related federal policy and directives violate the Free Speech Clause of the First Amendment because they impermissibly burden and chill the exercise of the Individual Plaintiffs' and of Gender Justice League's transgender members' constitutionally protected speech, expression, and expressive conduct based on the content and viewpoint of their speech, even in their private lives.

195.    All Individual Plaintiffs and many transgender members of Gender Justice League have been open about their status as transgender either in the context of seeking to join the military or in the course of their military service.

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF
CASE NO.      - 30

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

196.    All Individual Plaintiffs and transgender members of Gender Justice League want to continue being open about their status as transgender and to continue expressing and conducting themselves consistently with their gender.

197.    The gender expression of the Individual Plaintiffs and of transgender members of Gender Justice League, the conduct of those individuals that is consistent with their gender, and those individuals' disclosure of their transgender status, all constitute protected First Amendment activity.

198.    In issuing the 2025 Military Ban and related federal policy and directives, the government created a bizarre, idiosyncratic, and unscientific definition of so called "gender ideology," and then used it to engage in impermissible viewpoint and content discrimination by penalizing Plaintiffs' speech and expression that conflicts with the government's viewpoint, explicitly restricting such speech and expression even in their private lives.

199.    The viewpoint discrimination memorialized in the 2025 Military Ban relates both to the text of this particular executive order and the way it incorporates by reference the Gender Identity Executive Order.

200.    Viewpoint and content discrimination are presumptively unconstitutional.

201.    The 2025 Military Ban and related federal policy and directives violate the Free Speech Clause of the First Amendment in many ways, including the following respects:

a.    First, the 2025 Military Ban and related federal policy directives impermissibly burden and chill the exercise of constitutionally protected speech, expression, and expressive conduct of the Individual Plaintiffs and of the Gender Justice League's transgender members based on the content and viewpoint of their speech, even in their private lives.

b.    Second, Defendants intend the 2025 Military Ban and related federal policy directives to coerce the Individual Plaintiffs and Gender Justice League's

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF
CASE NO.    - 31

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

1    transgender members to adopt, endorse, and comply with the government's own

2    idiosyncratic viewpoint as if it were their own, even in their private lives.

3    c.    Third, as to those Individual Plaintiffs and Gender Justice League's transgender

4          members who refuse to be chilled or coerced to adopt the government's preferred

5          message, the 2025 Military Ban and related federal policy and directives

6          discriminate against them for engaging in protected core speech and expressing

7          their own viewpoint.

8    202.    The government lacks even a legitimate justification for its viewpoint and content

9    restrictions, let alone a compelling one.

10    203.    To the contrary, the purpose and effect of the 2025 Military Ban and related federal

11    policy and directives is to chill, coerce, and punish the Individual Plaintiffs, and transgender

12    members of Gender Justice League, for their speech and gender expression—constitutionally

13    protected First Amendment activity—even in their private lives.

14    204.    Indeed, the 2025 Military Ban on its face labels transgender peoples' expressions

15    of their own identities as inconsistent with "a soldier's commitment to an honorable, truthful, and

16    disciplined lifestyle, even in one's personal life. A man's assertion that he is a woman, and his

17    requirement that others honor this falsehood, is not consistent with the humility and selflessness

18    required of a service member."

19    205.    The reach of the 2025 Military Ban and related federal policy and directives extends

20    to First Amendment activity of a person of ordinary firmness who is transgender by requiring such

21    persons either to attempt to deny who they are and suppress expression of their gender or be denied

22    military service on the same terms as others.

23    206.    The Individual Plaintiffs and Gender Justice League's transgender members are

24    harmed by being denied the opportunity to serve in the military on the same terms as other service

25    members.

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

207.    Thus, the 2025 Military Ban and related federal policy and directives inflict current, direct First Amendment injury on all current and prospective transgender service members, including Individual Plaintiffs and Gender Justice League's transgender members. Further, they face a realistic danger of sustaining ongoing and future injuries.

### THIRD CAUSE OF ACTION
### PROCEDURAL DUE PROCESS VIOLATION

208.    Plaintiffs incorporate paragraphs 1 through 177 as though fully set forth herein.

209.    Plaintiffs Shilling, Dremann, and Morgan state this claim against Defendants Trump, United States, Hegseth, Department of Defense, Emmert, and United States Department of the Navy.

11. Plaintiffs Schmid and Doe state this claim against Defendants Trump, United States, Hegseth, Department of Defense, Averill, and United States Department of the Army.

210.    Plaintiff Leins states this claim against Defendants Trump, United States, Hegseth, Department of Defense, Ashworth, and United States Department of the Air Force.

211.    Plaintiff Gender Justice League states this claim against all Defendants.

212.    Defendants have violated the procedural due process rights of the Individual Plaintiffs and Gender Justice League's transgender members. Plaintiffs relied detrimentally on the military's policy from 2021 to the present of welcoming open service by transgender people.

213.    Plaintiffs who are current service members have a protectible liberty interest in their continued military service. They deserve not to be branded as inferior and unworthy of service based simply on who they are.

214.    Plaintiffs who are current service members have a protectible property interest in their continued military service and benefits upon retirement that they have earned. The 2025 Military Ban would deprive them of their careers and the related current and future benefits that they have earned as a result of their military service.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

215.    Defendants have provided no adequate procedural protections for Plaintiffs or indeed any avenue for redress. The 2025 Military Ban decrees that all transgender people are considered categorically unfit for service, rendering futile any procedures that otherwise might apply to protect service members from arbitrary separation.

216.    The 2025 Military Ban directs agencies to pre-judge people categorically as unfit, undermining and rendering futile any procedural protections or process that might otherwise apply. Consequently, the 2025 Military Ban and related federal policy and directives violate the procedural due process rights of Plaintiffs under the Fifth Amendment.

**FOURTH CAUSE OF ACTION**

**EQUITABLE ESTOPPEL**

217.    Plaintiffs incorporate paragraphs 1 through 177 as though fully set forth herein.

218.    Plaintiffs Shilling, Dremann, and Morgan state this claim against Defendants Trump, United States, Hegseth, Department of Defense, Emmert, and United States Department of the Navy.

11. Plaintiffs Schmid and Doe state this claim against Defendants Trump, United States, Hegseth, Department of Defense, Averill, and United States Department of the Army.

219.    Plaintiff Leins states this claim against Defendants Trump, United States, Hegseth, Department of Defense, Ashworth, and United States Department of the Air Force.

220.    Plaintiff Gender Justice League states this claim against all Defendants.

221.    The 2025 Military Ban and related federal policy and directives punish Plaintiff current service members for doing precisely what the prior policy invited and induced them to do — disclose their transgender status and take medical and other steps to transition.

222.    Plaintiffs Shilling, Dremann, Morgan, Schmid, Doe, Leins, and members of Gender Justice League who are current service members had settled expectations based on the prior policy and reasonably relied on it when they came out as transgender and underwent medical and social transition.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

223.    Plaintiffs Shilling, Dremann, Morgan, Schmid, Doe, Leins, and members of Gender Justice League who are current service members were induced to disclose their transgender status and would be deprived of both a property and liberty interest due to the effects of the 2025 Military Ban and related federal policy and directives on their continued employment and educational opportunities, and the stigma of having been labeled as presumptively unworthy of continued service.

224.    The 2025 Military Ban and related federal policy and directives works a serious injustice on Plaintiff current service members, including Plaintiffs Shilling, Dremann, Morgan, Doe, Schmid, Leins, and members of Gender Justice League who are currently serving, by punishing them for doing what the government explicitly induced them to do.

225.    Defendants therefore should be equitably estopped from implementing the 2025 Military Ban and related federal policies and directives as applied to Plaintiff current service members.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

A.    Issue a declaratory judgment, pursuant to 28 U.S.C. §§ 2201–2202, declaring Executive Order No. 14183 (the "2025 Military Ban") and related federal policy and directives unconstitutional on their face and as applied to the Individual Plaintiffs and transgender members of Gender Justice League, for the reasons set forth above;

B.    Issue preliminary and permanent injunctive relief enjoining Agency Defendants, their agents, employees, representatives, successors, and any other person or entity subject to their control or acting directly or indirectly in concert with them from implementing, administering, or enforcing Executive Order No. 14183 (the "2025 Military Ban") and related federal policy and directives, including by enjoining any separation, discharge, adverse action, retaliation, or denial of promotion, reenlistment, continuation of service, accession, or appointment because an individual is transgender;

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF
CASE NO.    - 35

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

1    C.    Waive the requirement for the posting of a bond of security for the entry of

2   temporary and preliminary relief;

3    D.    Award Plaintiffs their reasonable fees, costs, and expenses, including attorneys'

4   fees, pursuant to 28 U.S.C. § 2412 and any other applicable laws; and

5    E.    Grant any injunctive or other relief that this Court deems just, equitable, and proper.

6

7   February 6, 2025

8                                       By:   *s/ Matthew P. Gordon*
                                              Matthew P. Gordon, WSBA No. 41128
9                                             MGordon@perkinscoie.com

10                                      By:   *s/Abdul Kallon*
                                              Abdul Kallon, WSBA No. 60719
11                                            AKallon@perkinscoie.com

12                                      Perkins Coie LLP
                                        1201 Third Avenue, Suite 4900
13                                      Seattle, Washington 98101-3099
                                        Telephone: 206.359.8000
14                                      Facsimile: 206.359.9000

15                                      Danielle Sivalingam (*pro hac vice* forthcoming)
16                                      Perkins Coie LLP
                                        505 Howard Street, Suite 1000
17                                      San Francisco, CA 94105-3204
                                        Telephone: 415.344.7000
18                                      Facsimile: 415.344.7050
19                                      Email: DSivalingam@perkinscoie.com

20                                      Mary Grace Thurmon (*pro hac vice* forthcoming)
                                        Bo Yan Moran (*pro hac vice* forthcoming)
21                                      Perkins Coie LLP
                                        3150 Porter Drive
22                                      Palo Alto, CA 94304-1212
                                        Telephone: 650.838.4300
23                                      Facsimile: 650.838.4350
24                                      Email: MThurmon@perkinscoie.com
                                        Email: BMoran@perkinscoie.com
25
                                        Gabriella Romanos Abihabib (*pro hac vice*
26                                      forthcoming)

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF
CASE NO.    - 36

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

Perkins Coie LLP
1155 Avenue of the Americas, 22nd Floor
New York, NY 10036-2711
Telephone: 212.262.6900
Facsimile: 212.977.1649
Email: GRomanos@perkinscoie.com

Attorneys for Plaintiffs

Sasha Buchert (*pro hac vice* forthcoming)
Lambda Legal Defense and Education Fund, Inc.
815 16th St. NW, Suite 4140
Washington, DC 20006
Telephone: 202.804.6245
Facsimile: 855.535.2236
Email: SBuchert@lambdalegal.org

Jennifer C. Pizer (*pro hac vice* forthcoming)
Lambda Legal Defense and Education Fund, Inc.
800 South Figueroa Street, Suite 1260
Los Angeles, CA 90017
Telephone: 213.382.7600
Facsimile: 855.535.2236
Email: JPizer@lambdalegal.org

Camilla B. Taylor (*pro hac vice* forthcoming)
Kenneth Dale Upton, Jr. (*pro hac vice* forthcoming)
Lambda Legal Defense and Education Fund, Inc.
3656 N Halsted St.
Chicago, IL 60613
Telephone: 312.663.4413
Facsimile: 855.535.2236
Email: CTaylor@lambdalegal.org
Email: KUpton@lambdalegal.org

Omar Gonzalez-Pagan (*pro hac vice* forthcoming)
Lambda Legal Defense and Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585
Facsimile: 855.535.2236
Email: OGonzalez-Pagan@lambdalegal.org

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF
CASE NO.    - 37

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

Kell Olson (*pro hac vice* forthcoming)
Lambda Legal Defense and Education Fund, Inc.
3849 E Broadway Blvd, #136
Tucson, AZ 85716
Telephone: 323.370.6915
Facsimile: 855.535.2236
Email: KOlson@lambdalegal.org

Attorneys for Plaintiffs

Sarah Warbelow (*pro hac vice* forthcoming)
Cynthia Weaver (*pro hac vice* forthcoming)
Ami Patel (*pro hac vice* forthcoming)
Human Rights Campaign Foundation
1640 Rhode Island Ave. N.W.
Washington, DC 20036
Telephone: 202.527.3669
Facsimile: 202.347.5323
Email: Sarah.Warbelow@hrc.org
Email: Cynthia.Weaver@hrc.org
Email: Ami.Patel@hrc.org

Attorneys for Plaintiffs

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF
CASE NO.    - 38

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669