# EXHIBIT C



**SECRETARY OF THE ARMY**
WASHINGTON

0 7 OCT 2016

MEMORANDUM FOR SEE DISTRIBUTION

SUBJECT: Army Directive 2016-35 (Army Policy on Military Service of Transgender Soldiers)

1. References. A complete list of references is at enclosure 1.

2. The Army is open to all who can meet the standards for military service and readiness and remains committed to treating all Soldiers with dignity and respect while ensuring good order and discipline. The Army allows transgender Soldiers to serve openly. Consistent with this policy, the following principles shall apply:

    a. No otherwise qualified Soldier may be involuntarily separated, discharged, or denied reenlistment or continuation of service solely on the basis of the Soldier's gender identity.

    b. Army medical providers will diagnose and provide medically necessary care and treatment for transgender Soldiers eligible for military medical care in accordance with the guidance for transgender care issued by the Assistant Secretary of Defense (Health Affairs) and the Army Surgeon General. Consistent with that guidance, a Soldier eligible for military medical care with a diagnosis from a military medical provider indicating that gender transition is medically necessary will be provided medical care and treatment for the diagnosed medical condition.

    c. For policies and standards that apply differently to Soldiers according to gender, the Army recognizes a Soldier's gender by the Soldier's gender marker in the Defense Enrollment Eligibility Reporting System (DEERS). Coincident with that gender marker, the Army applies, and Soldiers are expected to meet, all standards for uniforms and grooming, body composition assessment, physical readiness testing, participation in the Military Personnel Drug Abuse Testing Program, and other military standards applied with consideration of the member's gender. For facilities subject to regulation by the Army, a Soldier uses those billeting, bathroom, and shower facilities associated with the Soldier's gender marker in DEERS.

3. This directive establishes policies and procedures for gender transition in the Army. Gender transition in the Army begins when a Soldier receives a diagnosis from a military medical provider (or a civilian medical provider if the Soldier is ineligible for military medical care) indicating that gender transition is medically necessary. Gender transition ends when the Soldier's gender marker in DEERS is changed to show the Soldier's preferred gender.

SUBJECT:  Army Directive 2016-35 (Army Policy on Military Service of Transgender Soldiers)

    a.  Any Soldier with a diagnosis indicating that gender transition is medically necessary must ensure that his or her chain of command is informed of the diagnosis and projected schedule for medical treatment that is part of the Soldier's medical treatment plan, including an estimated date for a change in the Soldier's gender marker, and must request that the chain of command approve the timing of the medical treatment.  The Soldier must notify his or her chain of command of any change to the medical treatment plan, the projected schedule for such treatment, or the estimated date for the change in the Soldier's gender marker.

    b.  The exact procedures Soldiers, military medical providers, and commanders are to follow in relation to a Soldier's gender transition depend on the Soldier's duty status and eligibility for military medical care.  Procedures for Soldiers on active duty and eligible for military medical care are in enclosure 2.  Procedures for Soldiers serving in the Selected Reserve in the U.S. Army Reserve or Army National Guard, including Individual Mobilization Augmentees, are in enclosure 3.  Procedures for Soldiers serving in the Standby Reserve or Individual Ready Reserve are in enclosure 4.  Procedures for Soldiers serving in the Inactive National Guard are in enclosure 5.

    c.  When the Soldier is stable in his or her preferred gender, as determined or confirmed by a military medical provider, the Soldier may request approval of a change to their gender marker in DEERS through the procedures identified in enclosures 2 through 5.  The request for a change in gender marker must be supported by a medical diagnosis from a military medical provider (or a civilian medical provider if the Soldier is ineligible for military medical care) indicating that gender transition is medically necessary; confirmation from a military medical provider that the Soldier is stable in the preferred gender; and legal documentation supporting a gender change, consisting of a certified copy of a State birth certificate, a certified copy of a court order, or a U.S. passport showing the Soldier's preferred gender.

    d.  Within 30 days after receiving a request for a change to a Soldier's gender marker and all required documentation (within 60 days for reserve component Soldiers), the applicable approval authority identified in enclosures 2 through 5 will approve a change to the Soldier's gender marker in DEERS to show the Soldier's preferred gender.  The approval will be in writing and state the effective date of the change to the Soldier's gender marker.

    e.  The Soldier's gender marker will be changed upon submission of the written approval to the Commander, U.S. Army Human Resources Command.  Human Resources Command will make the change in the Army personnel information systems, which in turn will update the gender marker in DEERS.

SUBJECT: Army Directive 2016-35 (Army Policy on Military Service of Transgender Soldiers)

    f. After the gender marker in DEERS is changed to show a Soldier's preferred gender, the Soldier will be expected to adhere to Army standards applicable to the preferred gender, as described in paragraph 2c.

    g. The change to the gender marker in DEERS does not preclude additional medically necessary care.

4. Commanders are responsible and accountable for the overall readiness of their command. Commanders are also responsible for the collective morale, welfare, good order, and discipline of their unit; for the command climate; and for ensuring that all members of the command are treated with dignity and respect.

    a. Commanders should approach a Soldier undergoing gender transition in the same way they would approach a Soldier undergoing any medically necessary treatment. Commanders will continue to minimize effects to the mission and ensure continued unit readiness. Commanders will balance the needs of the individual transitioning Soldier and the needs of the command in a manner that is comparable to the actions available to the commander in addressing comparable medical circumstances unrelated to gender transition. Commanders may consider the following actions:

        (1) Adjusting the date on which the Soldier's gender transition, or any component of the gender transition process, will begin.

        (2) Advising a Soldier of the availability of options for extended leave status or participation in other voluntary absence programs during the gender transition process, in accordance with Army Regulation (AR) 600-8-10 (Leaves and Passes).

        (3) Processing requests for exceptions to policy (ETPs) associated with gender transition in accordance with paragraph 5.

        (4) Establishing or adjusting local policies on the use of billeting, bathroom, and shower facilities subject to regulation by the military during the gender transition process, consistent with paragraphs 4b and 4c.

        (5) Referring the Soldier for a determination of fitness in the disability evaluation system in accordance with DoD Instruction 1332.18 (Disability Evaluation System (DES)) and AR 40-501 (Standards of Medical Fitness).

        (6) Taking other actions, including the initiation of administrative or other proceedings, comparable to actions that could be initiated for other Soldiers whose ability to serve is similarly affected for reasons unrelated to gender transition.

SUBJECT: Army Directive 2016-35 (Army Policy on Military Service of Transgender Soldiers)

    b. Soldiers must accept living and working conditions that are often austere, primitive, and characterized by little or no privacy. All Soldiers will use the billeting, bathroom, and shower facilities associated with their gender marker in DEERS. However, commanders have discretion to employ reasonable accommodations to respect the modesty or privacy interests of Soldiers, including discretion to alter billeting assignments or adjust local policies on the use of bathroom and shower facilities, in accordance with Army policy, in the interest of maintaining morale, good order, and discipline and consistent with performance of the mission. Nevertheless, no commander may order a Soldier on the basis of his or her gender identity or transitioning status to use a billeting, bathroom, or shower facility not required of other Soldiers with the same gender marker.

    c. Facilities will not be designated, modified, or constructed to make transgender-only areas. If modifications are made to accommodate the modesty or privacy concerns of a Soldier, they must be made available for all Soldiers to use. Commanders will accommodate privacy concerns using existing facilities and furnishings where possible and will modify facilities only when other options are ineffective.

    d. Commanders should remain mindful of the privacy of personal or health-related information concerning the Soldiers in their command. Personal information regarding transgender Soldiers should be safeguarded to the same extent as comparable information regarding any other Soldier.

    e. The Assistant Secretary of the Army (Manpower and Reserve Affairs) (ASA (M&RA)) has established a Service Central Coordination Cell composed of medical, legal, and military personnel experts to provide advice and assistance to commanders, address their inquiries, and process requests for ETPs in connection with gender transition for decision by the ASA (M&RA).

5. In general, Soldiers are expected to comport with the standards of their gender marker in DEERS. In the event that a Soldier undergoing gender transition is unable to meet a particular Army standard as a result of medical treatment or other aspects of the Soldier's gender transition, the Soldier's chain of command, together with the Soldier and/or the military medical provider, should consider options (for example, adjusting the date of a physical fitness test or extended leave options) other than requesting an ETP to depart from Army standards. If submitted, a request for an ETP to depart from the standards of a Soldier's gender marker in DEERS must be processed according to the procedures outlined in this paragraph and will be evaluated on a case-by-case basis.

    a. An active duty or Selected Reserve Soldier should submit the ETP request through the Soldier's chain of command. An Individual Ready Reserve or Standby Reserve Soldier should submit the ETP request to the Commander, Human Resources

SUBJECT: Army Directive 2016-35 (Army Policy on Military Service of Transgender Soldiers)

Command. An Inactive National Guard Soldier should submit the ETP request to the Director, Army National Guard.

    b. When submitting an ETP request, the Soldier must identify the specific policy for which the Soldier is seeking an exception and explain the reason for the request. The request must be accompanied by a medical diagnosis from a military medical provider (or a civilian medical provider if the Soldier is ineligible for military medical care), an approved medical treatment plan identifying medically necessary treatment and a projected schedule for such treatment, and an estimated date for completion of the treatment pursuant to the medical treatment plan.

    c. As soon as practicable, but no later than 60 days after receipt of an ETP request, the recipient of the request (as identified in paragraph 5a) must forward the request through the first general officer in the chain of command to the Service Central Coordination Cell or, if disestablished, to the relevant policy proponent in Headquarters, Department of the Army. Informed, as appropriate, by advice from a military medical provider, the recipient must provide a recommendation for action on the ETP request and an assessment of the expected effects, if any, the ETP will have on mission readiness and the good order and discipline of the unit. Commanders should include in their assessment a discussion of what other actions not requiring deviation from Army policies they considered or used and why the actions were ineffective or inadequate.

    d. The ASA (M&RA) has withheld the authority to decide requests for ETPs in relation to a Soldier's gender transition.

6. Effective immediately, the following regulations will be revised in accordance with the language in enclosure 6: AR 40-501, AR 135-178, AR 600-20, AR 600-85, AR 635-200, and AR 638-2. The Deputy Chief of Staff (DCS), G-1, the proponent of AR 601-270 and AR 670-1, will review those regulations for consistency with this directive and references a and b and update those regulations as necessary. In addition, the Army will take the following actions:

    a. Training and educating the force is necessary to sustain readiness. No later than 1 November 2016, the Army will develop the necessary training and education to ensure that all members of the force understand the core principles of Army policy on the military service of transgender Soldiers. Training and education via chain teaching across the Army will be completed no later than 1 July 2017. In addition, by 1 July 2017, the Army will adjust existing blocks of instruction throughout the Army to sustain the training and education of the Army policy concerning transgender military service.

    b. This directive does not alter Army accessions policy. No later than 1 July 2017, the Under Secretary of Defense (Personnel and Readiness) will update the policies and procedures governing accessions for transgender applicants in DoD Instruction 6130.03

5

SUBJECT: Army Directive 2016-35 (Army Policy on Military Service of Transgender Soldiers)

(Medical Standards for Appointment, Enlistment, or Induction in the Military Services). No later than 60 days after those policies and procedures are published, the Army will update its accessions policy.

    c. No later than 1 October 2017, the ASA (M&RA) will provide the Secretary of the Army with an assessment of whether the Service Central Coordination Cell should be continued, disestablished, or become a permanent body. At that time, the ASA (M&RA) will also reassess whether the ASA (M&RA) should continue to retain approval authority for ETPs associated with gender transition or should delegate the authority to the proponents of the underlying policy.

    d. No later than 1 October 2018, The Inspector General will provide the Secretary of the Army with a report of inspection on the Army's compliance with reference b and this directive. This report will be used for assessing and overseeing compliance; identifying compliance deficiencies, if any; initiating timely corrective action, as appropriate; and identifying best practices and lessons learned.

    e. All Army activities will review local regulations and policies for consistency with this directive and references a and b and update those regulations and policies as necessary.

7. The provisions of this directive are effective immediately and apply to all personnel in the Active Army, Army National Guard/Army National Guard of the United States, and Army Reserve. The directive will be rescinded upon publication of revised issuances and updated to governing regulations. The ASA (M&RA) is the proponent for this policy. The point of contact is Chief, Accessions Division, DCS, G-1, 703-695-7693, DSN 312-225-7693.

Encls

Eric K. Fanning

DISTRIBUTION:
Principal Officials of Headquarters, Department of the Army
Commander
   U.S. Army Forces Command
   U.S. Army Training and Doctrine Command
   U.S. Army Materiel Command
   U.S. Army Europe
   U.S. Army Central
   U.S. Army North
   (CONT)

SUBJECT: Army Directive 2016-35 (Army Policy on Military Service of Transgender Soldiers)

DISTRIBUTION: (CONT)
U.S. Army South
U.S. Army Pacific
U.S. Army Africa/Southern European Task Force
U.S. Army Special Operations Command
Military Surface Deployment and Distribution Command
U.S. Army Space and Missile Defense Command/Army Strategic Command
U.S. Army Cyber Command
U.S. Army Medical Command
U.S. Army Intelligence and Security Command
U.S. Army Criminal Investigation Command
U.S. Army Corps of Engineers
U.S. Army Military District of Washington
U.S. Army Test and Evaluation Command
U.S. Army Installation Management Command
Superintendent, United States Military Academy
Director, U.S. Army Acquisition Support Center
Executive Director, Arlington National Cemetery
Commander, U.S. Army Accessions Command
Commander, U.S. Army War College
Commander, Second Army

CF:
Director, Army National Guard
Director of Business Transformation
Commander, Eighth U.S. Army

7

## REFERENCES

a. Department of Defense (DoD) Directive-type Memorandum (DTM) 16-005 (Military Service of Transgender Service Members), June 30, 2016.

b. DoD Instruction 1300.28 (In-Service Transition for Transgender Service Members), July 1, 2016.

c. DoD Instruction 1332.18 (Disability Evaluation System (DES)), August 5, 2014.

d. DoD Instruction 6130.03 (Medical Standards for Appointment, Enlistment, or Induction in the Military Services), April 28, 2010, Incorporating Change 1, September 13, 2011.

e. Army Directive 2016-30 (Army Policy on Military Service of Transgender Soldiers), 1 July 2016.

f. Army Regulation (AR) 40-501 (Standards of Medical Fitness), 14 December 2007, Including Rapid Action Revision Issued 4 August 2011.

g. AR 135-178 (Enlisted Administrative Separations), 18 March 2014.

h. AR 600-8-10 (Leaves and Passes), 15 February 2006, Including Rapid Action Revision Issued 4 August 2011.

i. AR 600-20 (Army Command Policy), 6 November 2014.

j. AR 600-85 (The Army Substance Abuse Program), 28 December 2012.

k. AR 601-270 (Army Retention Program), 1 April 2016.

l. AR 635-200 (Active Duty Enlisted Administrative Separations), 6 June 2005, Including Rapid Action Revision Issued 6 September 2011.

m. AR 638-2 (Army Mortuary Affairs Program), 23 June 2015.

n. AR 670-1 (Wear and Appearance of Army Uniforms and Insignia), 10 April 2015.

## GENDER TRANSITION FOR ACTIVE DUTY SOLDIERS

1. The gender transition process for a Soldier serving on active duty and eligible for military medical care begins when the Soldier receives a diagnosis from a military medical provider indicating that gender transition is medically necessary. The Soldier must ensure that his or her brigade-level commander is informed, through command channels, of the diagnosis and projected schedule for medical treatment that is part of the Soldier's medical treatment plan, including an estimated date for a change in the Soldier's gender marker. The Soldier must request that the brigade-level commander approve the timing of the medical treatment. The Soldier must also notify his or her brigade-level commander of any change to the medical treatment plan, the projected schedule for such treatment, or the estimated date for the change in the Soldier's gender marker.

2. Upon establishing a diagnosis indicating that gender transition is necessary, the military medical provider is responsible for developing a medical treatment plan and presenting the plan through command channels to the Soldier's brigade-level commander. The provider must advise the brigade-level commander on the medical diagnosis applicable to the Soldier, including the provider's assessment of medically necessary care and treatment, the urgency of the proposed care and treatment, the likely effect of the care and treatment on the individual's readiness and deployability, and the extent of the human and functional support network needed to support the individual.

3. The Soldier's brigade-level commander is responsible for approving the timing, or adjustments to the timing, of medical treatment associated with gender transition and must:

- consider the Soldier's individual facts and circumstances, including the Soldier's medical treatment plan;

- ensure military readiness by minimizing effects to the mission (including deployment, operational, training, and exercise schedules, and critical skills availability); and

- maintain the morale, welfare, good order, and discipline of the unit.

Upon receipt of the Soldier's request, the brigade-level commander will notify the Service Central Coordination Cell (SCCC) and consult the SCCC in responding to the request. The brigade-level commander will approve the timing of the medical treatment in writing. The timing of the treatment may be adjusted, after consulting with the medical provider, based on unscheduled requirements.

4. The medical provider, in consultation with the Soldier, must advise the brigade-level commander when the Soldier has completed the medical treatment necessary to achieve stability in the preferred gender and recommend to the brigade-level commander when the Soldier's gender marker should be changed in the Defense

Enrollment Eligibility Reporting System (DEERS).  At that point, the Soldier may request that the brigade-level commander approve a change to the Soldier's gender marker.

    a.  In support of the request, the Soldier must ensure that the brigade-level commander receives:

- a medical diagnosis from a military medical provider indicating that gender transition is medically necessary;

- confirmation from the military medical provider that the Soldier is stable in the preferred gender; and

- legal documentation supporting a gender change, consisting of a certified copy of a State birth certificate, a certified copy of a court order, or a U.S. passport showing the Soldier's preferred gender.

    b.  Upon receipt of the Soldier's request for a change to his or her gender marker, the brigade-level commander will notify the SCCC and consult the SCCC in responding to the request.  The brigade-level commander will return incomplete requests to the Soldier with written notice of the identified deficiencies as soon as practicable, but no later than 30 days after receipt.  Within 30 days after receiving all required information from the Soldier, the brigade-level commander will approve the request, including the date when the Soldier's gender marker should be changed in Army personnel information systems, which will initiate the gender marker change in DEERS.

    c.  A Soldier's gender marker will be changed when his or her brigade-level commander submits written approval to the Commander, U.S. Army Human Resources Command (HRC-PDF), 1600 Spearhead Division Avenue, Fort Knox, Kentucky  40122.  Human Resources Command will make the change in Army personnel information systems, which will update the gender marker in DEERS.

# GENDER TRANSITION FOR U.S ARMY RESERVE AND ARMY NATIONAL GUARD SELECTED RESERVE SOLDIERS

1. The gender transition process for a Soldier serving in the Selected Reserve in the Army Reserve or Army National Guard (ARNG), including Individual Mobilization Augmentees, who is not eligible for military medical care begins when the Soldier receives a diagnosis from a civilian or military medical provider indicating that gender transition is medically necessary. The Soldier must submit the diagnosis through command channels to his or her brigade-level commander, accompanied by a projected schedule for medical treatment and an estimated date for a change in the Soldier's gender marker, and request that the commander approve the timing of the medical treatment. The Soldier must also notify the brigade-level commander in the event of any change to the medical treatment plan, the projected schedule for such treatment, or the estimated date for the change in the Soldier's gender marker.

2. The Soldier's brigade-level commander is responsible for approving the timing, or adjustments to the timing, of medical treatment associated with gender transition and must:

- consider the Soldier's individual facts and circumstances, including the Soldier's expected medical treatment schedule;

- ensure military readiness by minimizing effects to the mission (including deployment, operational, training, and exercise schedules, and critical skills availability); and

- maintain the morale, welfare, good order, and discipline of the unit.

Upon receipt of the Soldier's request, the brigade-level commander will inform the Service Central Coordination Cell (SCCC) and consult the SCCC in responding to the request. Before approving the request, the brigade-level commander will submit the Soldier's request and diagnosis to, as appropriate, U.S. Army Reserve Command's Command Surgeon or the Chief Surgeon, ARNG, who will confirm any civilian medical diagnosis that gender transition is medically necessary. The brigade-level commander's approval of the timing of medical treatment will be in writing. The timing of the treatment may be adjusted, after consulting with the medical provider, based on unscheduled requirements.

3. After the brigade-level commander approves the timing of medical treatment and once the Soldier's medical provider determines that the Soldier has completed medical treatment necessary to achieve stability in the preferred gender, the Soldier may request, through command channels, that the brigade-level commander approve a change to the Soldier's gender marker.

   a. In support of the request, the Soldier must include:

   - the medical diagnosis indicating that gender transition is medically necessary;

- confirmation from a medical provider that the Soldier's medical treatment plan is complete and that the Soldier has achieved stability in the preferred gender; and

- legal documentation supporting a gender change, consisting of a certified copy of a State birth certificate, a certified copy of a court order, or a U.S. passport showing the Soldier's preferred gender.

    b.  Upon receipt of the Soldier's request for a change to his or her gender marker, the brigade-level commander will inform the SCCC and consult the SCCC in responding to the request.  Before taking action, the brigade-level commander will submit the Soldier's request to, as appropriate, Reserve Command's Command Surgeon or the Chief Surgeon, ARNG for confirmation of the medical determination that the Soldier has achieved stability in the preferred gender.

    c.  The brigade-level commander will return incomplete requests to the Soldier with written notice of the identified deficiencies as soon as practicable, but no later than 30 days after receipt.  Within 60 days after receiving all required information from the Soldier, the brigade-level commander will approve the request, including the date when the Soldier's gender marker should be changed, and will submit the written approval to the Commander, U.S. Army Human Resources Command (HRC-PDF), 1600 Spearhead Division Avenue, Fort Knox, Kentucky  40122. Human Resources Command will make the change in Army personnel information systems, which will cause the gender marker in the Defense Enrollment Eligibility Reporting System to change as well.

## GENDER TRANSITION FOR SOLDIERS SERVING IN THE STANDBY RESERVE OR INDIVIDUAL READY RESERVE

1. The gender transition process for a Soldier serving in the Standby Reserve or Individual Ready Reserve begins when the Soldier receives a diagnosis from a civilian or military medical provider indicating that gender transition is medically necessary. The Soldier must submit the diagnosis to the Commander, Human Resources Command (HRC), accompanied by a projected schedule for medical treatment with an estimated date for a change in the Soldier's gender marker, and request that the Commander, HRC approve the timing of the medical treatment. The Soldier must also notify the Commander, HRC in the event of any change to the projected schedule for such treatment or the estimated date for the change in the Soldier's gender marker.

2. Upon receipt of a request, the Commander, HRC is responsible for approving the timing, or adjustments to the timing, of medical treatment associated with gender transition. Factors the Commander, HRC should consider when reviewing the request include the likelihood of the Soldier's return to active service as well as any military necessity that may warrant the mobilization or activation of the Soldier. Upon receipt of the Soldier's request, the Commander, HRC will inform the Service Central Coordination Cell (SCCC) and consult the SCCC in responding to the request. Before approving the timing of any medical treatment, the Commander, HRC will also ensure that the HRC Command Surgeon confirms any civilian medical diagnosis that gender transition is medically necessary. The timing of the approval will be noted in a memorandum HRC provides to the Soldier. The Commander, HRC may adjust the timing, after consulting with the medical provider, based on unscheduled requirements.

3. After the Commander, HRC approves the timing of medical treatment and the Soldier's medical provider determines that the Soldier has completed medical treatment necessary to achieve stability in the preferred gender, the Soldier may ask the commander to approve a change to the Soldier's gender marker.

    a. In support of the request, the Soldier must include:

    - the medical diagnosis indicating that gender transition is medically necessary;

    - confirmation from a medical provider that the Soldier's medical treatment plan is complete and the Soldier has achieved stability in the preferred gender; and

    - legal documentation supporting a gender change, consisting of a certified copy of a State birth certificate, a certified copy of a court order, or a U.S. passport showing the Soldier's preferred gender.

    b. Upon receipt of the Soldier's request for a change to his or her gender marker, the Commander, HRC will inform the SCCC and consult the SCCC in responding to the request. Before taking action, the Commander, HRC will ensure that the HRC

Command Surgeon confirms the medical diagnosis that the Soldier has achieved stability in the preferred gender.

    c.  The Commander, HRC will return incomplete requests to the Soldier with written notice of the identified deficiencies as soon as practicable, but no later than 30 days after receipt.  Within 60 days after receiving all required information from a Soldier, the Commander, HRC will approve the request, including the effective date of the gender marker change, and change the Soldier's gender marker in Army personnel information systems.  This will cause the gender marker in the Defense Enrollment Eligibility Reporting System to change as well.

## GENDER TRANSITION FOR SOLDIERS SERVING IN THE INACTIVE NATIONAL GUARD

1. The gender transition process for a Soldier serving in the Inactive National Guard begins when the Soldier receives a diagnosis from a civilian or military medical provider indicating that gender transition is medically necessary. The Soldier must submit the diagnosis to the Director, Army National Guard (ARNG), accompanied by a projected schedule for medical treatment and an estimated date for a change in the Soldier's gender marker, and request that the Director, ARNG approve the timing of the medical treatment. The Soldier must also notify the Director in the event of any change to the projected schedule for the treatment or the estimated date for the change in the Soldier's gender marker.

2. Upon receipt of a request, the Director, ARNG is responsible for approving the timing, or adjustments to the timing, of medical treatment associated with gender transition. Factors the Director, ARNG should consider when reviewing the request include the likelihood of the Soldier's return to active status or active duty, as well as any military necessity that may warrant the mobilization or activation of the Soldier. Upon receipt of the Soldier's request, the Director, ARNG will inform the Service Central Coordination Cell (SCCC) and consult the SCCC in responding to the request. Before approving any treatment plan, the Director, ARNG will also ensure that the Chief Surgeon, ARNG confirms any civilian medical diagnosis that gender transition is medically necessary. The Director may adjust the timing of the treatment, after consulting with the medical provider, based on unscheduled requirements.

3. After the Director, ARNG approves the timing of the medical treatment and after the Soldier's medical provider determines that the Soldier has completed medical treatment necessary to achieve stability in the preferred gender, the Soldier may ask the Director, ARNG to approve a change in the Soldier's gender marker.

   a. In support of the request, the Soldier must provide:

   - the medical diagnosis indicating that gender transition is medically necessary;

   - confirmation from a medical provider that the Soldier's medical treatment plan is complete and the Soldier has achieved stability in the preferred gender; and

   - legal documentation supporting a gender change, consisting of a certified copy of a State birth certificate, a certified copy of a court order, or a U.S. passport showing the Soldier's preferred gender.

   b. Upon receipt of the Soldier's request for a change to his or her gender marker, the Director, ARNG will inform the SCCC and consult the SCCC in responding to the request. Before taking action, the Director will ensure that the Chief Surgeon, ARNG confirms the medical diagnosis that the Soldier has achieved stability in the preferred gender.

Army Directive 2016-35                                                                                                    Enclosure 5

    c. The Director, ARNG will return incomplete requests to the Soldier with written notice of the identified deficiencies as soon as practicable, but no later than 30 days after receipt. Within 60 days after receiving all required information from a Soldier, the Director, ARNG will approve the request, including the effective date of the gender marker change, and submit the written approval to the Commander, U.S. Army Human Resources Command (HRC-PDF), 1600 Spearhead Division Avenue, Fort Knox, Kentucky 40122. HRC will make the change in Army personnel information systems, which will cause the gender marker in the Defense Enrollment Eligibility Reporting System to change as well.

## PROPOSED REVISIONS TO ARMY REGULATIONS

### AR 40-501 (Standards of Medical Fitness), 14 December 2007:

*Contents, page iii, line 15 should be revised to read:*

Personality, psychosexual conditions, ~~transsexual, gender identity,~~ exhibitionism, transvestism, voyeurism, other paraphilias, or factitious disorders; disorders of impulse control not elsewhere classified • 3–35, page 33

*Paragraph 2-14a(5) should be revised to read:*

   (5)  History of major abnormalities or defects of the genitalia such as ~~change of sex (P64.5),~~ hermaphroditism, pseudohermaphroditism, or pure gonadal dysgenesis (752.7), or dysfunctional residuals from surgical correction of these conditions does not meet the standard.

*Paragraph 2-14d should be revised to read:*

d.  History of major abnormalities or defects of the genitalia, such as ~~a change of sex (P64.5),~~ hermaphroditism, pseudohermaphroditism, or pure gonadal dysgenesis (752.7), or dysfunctional residuals from surgical correction of these conditions does not meet the standard.

*Paragraph 2-27n should be revised to read:*

   n.  Current or history of psychosexual conditions (302), including, but not limited to ~~transsexualism,~~ exhibitionism, transvestism, voyeurism, and other paraphilias, do not meet the standard.

*Paragraph 3-35 should be revised to read:*

**3-35. Personality, psychosexual conditions, ~~transsexual, gender identity,~~ exhibitionism, transvestism, voyeurism, other paraphilias, or factitious disorders; disorders of impulse control not elsewhere classified**
   a.  A history of, or current manifestations of, personality disorders, disorders of impulse control not elsewhere classified, transvestism, voyeurism, other paraphilias, or factitious disorders, psychosexual conditions~~transsexual, gender identity disorder to include major abnormalities or defects of the genitalia such as change of sex or a current attempt to change sex~~, hermaphroditism, pseudohermaphroditism, or pure gonadal dysgenesis or dysfunctional residuals from surgical correction of these conditions render an individual administratively unfit.

Army Directive 2016-35                                                                                      Enclosure 6

**AR 135-178 (Enlisted Administrative Separations), 18 March 2014:**

Lines 25-26 on the Summary of Change should be revised to read:

~~o Adds transsexualism/gender transformation in accordance with AR 40-501 as a basis for separation. (para 6-7a).~~

Paragraph 6-7a should be revised to read:

    a. *Criteria.* The separation authority (para 1–10, of this regulation) may approve discharge under this paragraph on the basis of other physical or mental conditions not amounting to disability (AR 635–40) that potentially interfere with assignment to or performance of military duty.  Such conditions may include, but are not limited to, chronic airsickness or seasickness, enuresis, sleepwalking, dyslexia, severe nightmares, claustrophobia, personality disorder, transvestism, ~~gender identity disorder or gender dysphoria,~~ and other related conditions in accordance with AR 40–501, paragraph 3–35. ~~Transsexualism/gender transformation in accordance with AR 40–501,~~ and other disorders manifesting disturbances of perception, thinking, emotional control or behavior sufficiently severe that the Soldier's ability to perform military duties effectively is significantly impaired.

**AR 600-20 (Army Command Policy), 6 November 2014**

Replace all references to discrimination based on sex or gender with "sex (including gender identity)."

**AR 600–85 (The Army Substance Abuse Program), 28 December 2012**

Appendix E, paragraph E-4b(2) should be revised to read:

    (2)  Optional wide mouth collection cup ~~(for females)~~.

Appendix E, paragraph E-5h should be revised to read:

    h.  If the Soldier ~~is female~~ requires use of the optional wide mouth collection cup, the ~~optional wide mouth collection~~ cup will be issued to the Soldier at this time.

Appendix E, paragraph E-5m should be revised to read:

    m.  The following procedure applies to ~~female~~ Soldiers who us~~etilize~~e the wide mouth collection cups:

**AR 635-200 (Active Duty Enlisted Administrative Separations), 6 June 2005**

Paragraph 5-17a should be revised to read:

    a. Commanders specified in paragraph 1–19 may approve separation under this paragraph on the basis of other physical or mental conditions not amounting to disability (AR 635–40) and excluding conditions appropriate for separation processing under paragraph 5–11 or 5–13 that potentially interfere with assignment to or performance of duty. Such conditions may include, but are not limited to—
      (1) Chronic airsickness.
      (2) Chronic seasickness.
      (3) Enuresis.
      (4) Sleepwalking.
      (5) Dyslexia.
      (6) Severe nightmares.
      (7) Claustrophobia.
      (8) ~~Transsexualism/gender transformation in accordance with AR 40-501 paragraph 3-35.~~
      ~~(9)~~ Other disorders manifesting disturbances of perception, thinking, emotional control, or behavior sufficiently severe that the Soldier's ability to effectively perform military duties is significantly impaired. Soldiers with 24 months or more of active duty service may be separated under this paragraph based on a diagnosis of personality disorder. For Soldiers who have been deployed to an area designated as an imminent danger pay area, the diagnosis of personality disorder must be corroborated by the MTF Chief of Behavioral Health (or an equivalent official). The corroborated diagnosis will be forwarded for final review and confirmation by the Director, Proponency of Behavioral Health, Office of the Surgeon General (DASG-HSZ). Medical review of the personality disorder diagnosis will consider whether PTSD, Traumatic Brain Injury (TBI), and/or other comorbid mental illness may be significant contributing factors to the diagnosis. If PTSD, TBI, and/or other comorbid mental illness are significant contributing factors to a mental health diagnosis, the Soldier will not be processed for separation under this paragraph, but will be evaluated under the physical disability system in accordance with AR 635-40.

**AR 638–2 (Army Mortuary Affairs Program), 23 June 2015**

Paragraph 2-9b(1) should be revised to read:

    (1) No uniform is authorized; dark suit only or equivalent for females ~~and transgenders~~.