The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

COMMANDER EMILY SHILLING, et al.,

*Plaintiffs*,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, et al.,

*Defendants*.

Case No. 2:25-cv-00241-BHS

**DECLARATION OF GILBERT R. CISNEROS, JR. IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

I, Gilbert R. Cisneros, Jr., declare as follows:

1. I am over 18 years of age, of sound mind, and in all respects competent to testify.

2. I have actual knowledge of the matters stated herein. If called to testify in this matter, I would testify truthfully and competently as to the matters stated herein.

3. I served as the Under Secretary of Defense for Personnel and Readiness from August 24, 2021 – September 8, 2023. In this role, I served as the principal staff assistant and advisor to the Secretary of Defense for force readiness; force management; health affairs; National Guard and Reserve component affairs; education and training; and military and civilian personnel requirements and management, including equal opportunity, morale, welfare, recreation, and quality of life matters. It was my responsibility to be aware of unit cohesion,

DECLARATION OF GILBERT R. CISNEROS, JR. IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 1

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Lambda Legal Defense and Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

Human Rights Campaign Foundation
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

military readiness, medical readiness, deployability, and lethality. As a Department of Defense official and naval veteran, I can attest to the importance of non-discriminatory policies in bolstering military preparedness and to the adverse impact of excluding qualified individuals from military service because they are transgender.

## PROFESSIONAL BACKGROUND

4. I attended the George Washington University on a Navy Reserve Officer Training Corps scholarship and obtained an undergraduate degree in political science in 1994. I later attended Regis University, earning a Master of Business Administration in 2002, and Brown University, earning a master's degree in urban education policy in 2015.

5. After college, I was commissioned as an officer in the United States Navy in 1994 and served as a Supply Officer until 2004. After I left the Navy, I worked as a logistics manager for Frito-Lay. In 2010, I co-founded the Gilbert & Jacki Cisneros Foundation, focused on helping students find a path to higher education with scholarships and college access programs. In 2015, I founded the Cisneros Hispanic Leadership Institute at my alma mater, the George Washington University, which provides scholarships for Latino students and is becoming a leading institute for policy issues that affect the Latino community.

6. In 2018, I ran for California's 39th Congressional District and was elected to the U.S. House of Representatives. I served on both the Armed Services and Veterans' Affairs Committees. I championed language in the National Defense Authorization Act to foster greater diversity in our military officer corps, while also supporting military families on issues of housing, child abuse, and exceptional family members. As the co-founder of the Military Transition Assistance Pathway (MTAP) Caucus, I supported and advocated on behalf of military service members returning to civilian life.

7. On August 24, 2021, I was confirmed by the Senate to be the Under Secretary of Defense for Personnel and Readiness. In this role, I served as the principal staff assistant and advisor to the Secretary of Defense for force readiness; force management; health affairs; National Guard and Reserve component affairs; education and training; and military and civilian

DECLARATION OF GILBERT R. CISNEROS, JR. IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 2

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Lambda Legal Defense and Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

Human Rights Campaign Foundation
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

personnel requirements and management, including equal opportunity, morale, welfare, recreation, and quality of life matters.

8. In September 2023, I resigned from my position as Under Secretary of Defense for Personnel and Readiness to run for California's 31st Congressional District. I was elected to the U.S. House of Representatives in 2024.

## THE NON-DISCRIMINATORY POLICY

9. On January 25, 2021, President Joseph R. Biden overturned the first Trump Administration's restrictive ban with Executive Order (EO) 14004, entitled *Enabling All Qualified Americans To Serve Their Country in Uniform*. The EO directed the Secretary of Defense and Secretary of Homeland Security to take all necessary steps "to ensure that all transgender individuals who wish to serve in the United States military and can meet the appropriate standards shall be able to do so openly and free from discrimination." In setting this policy, President Biden relied on "substantial evidence that allowing transgender individuals to serve in the military does not have any meaningful negative impact on the Armed Forces," including "a meticulous, comprehensive study requested by the Department of Defense," 2018 testimony by "the then- serving Chief of Staff of the Army, Chief of Naval Operations, Commandant of the Marine Corps, and Chief of Staff of the Air Force [who] all testified publicly to the Congress that they were not aware of any issues of unit cohesion, disciplinary problems, or issues of morale resulting from open transgender service," and a statement by a "group of former United States Surgeons General . . . that 'transgender troops are as medically fit as their non-transgender peers and that there is no medically valid reason—including a diagnosis of gender dysphoria—to exclude them from military service or to limit their access to medically necessary care."

10. On April 30, 2021, the DoD implemented the non-discriminatory policy through the issuance of DoD Instruction 1300.28, entitled *In-Service Transition for Transgender Service Members* ("DoDI 1300.28"). DoDI 1300.28 applies to all military departments and sets forth guidance to ensure service by transgender service members, including details regarding medical

Declaration of Gilbert R. Cisneros, Jr. in support of plaintiffs' motion for preliminary injunction - 3

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Lambda Legal Defense and Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

Human Rights Campaign Foundation
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

treatment provisions. This guidance is "based on the conclusion that open service by transgender persons who are subject to the same high standards and procedures as other Service members with regard to medical fitness for duty, physical fitness, uniform and grooming standards, deployability, and retention is consistent with military service and readiness."

11. DoDI 1300.28 provides guidance on the in-service transition process for transgender service members: "Gender transition begins when a Service member receives a diagnosis from a military medical provider indicating that gender transition is medically necessary, and then completes the medical care identified or approved by a military mental health or medical provider in a documented treatment plan as necessary to achieve stability in the self-identified gender. It concludes when the Service member's gender marker in [the Defense Enrollment Eligibility Reporting System ("DEERS")] is changed and the Service member is recognized in his or her self- identified gender. Care and treatment may still be received after the gender marker is changed in DEERS as described in Paragraph 3.2.c. of this issuance, but at that point, the Service member must meet all applicable military standards in the self-identified gender."

12. DoDI 1300.28 explicitly addresses military readiness considerations with respect to in- service transitions: "Unique to military service, the commander is responsible and accountable for the overall readiness of his or her command. The commander is also responsible for the collective morale, welfare, good order, and discipline of the unit, and establishing a command climate that creates an environment where all members of the command are treated with dignity and respect. When a commander receives any request from a Service member that entails a period of nonavailability for duty (e.g., necessary medical treatment, ordinary leave, emergency leave, temporary duty, other approved absence), the commander must consider the individual need associated with the request and the needs of the command in making a decision on that request."

13. DoD Instruction 6130.03 ("DoDI 6130.03") outlines the medical standards for appointment, enlistment, or induction. Individuals with a history of gender dysphoria are eligible

DECLARATION OF GILBERT R. CISNEROS, JR. IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

for accession if they have been stable in their gender for at least 18 months, and individuals who have received transition-related health care are likewise eligible for accession if they meet certain medical stability criteria.

14. As Under Secretary of Defense for Personnel and Readiness, my responsibilities included implementing the policy permitting service by transgender troops, including evaluating any proposed new Military Department and Military Service regulations, policies, and guidance related to military service by transgender persons and persons with gender dysphoria, and revisions to such existing regulations, policies, and guidance, to ensure consistency with policy. In implementing this policy, I observed the benefits of non-discriminatory policies for America's military capabilities.

15. The non-discriminatory policy fosters openness and trust among team members, thereby enhancing unit cohesion. This unit cohesion is vital in protecting America's national security interests around the world. Unit cohesion is especially important given the ongoing challenge of recruitment and the need to recruit individuals who can perform the broad range of roles and capabilities required for our military to operate effectively. Everyone deserves a fair opportunity to be able to serve their country based on their own merit and without regard to their racial, ethnic, sexual orientation, or transgender status.

16. The non-discriminatory policy further enables our military to retain highly trained and experienced service members by enabling transgender service members to serve and to obtain needed medical care on the same terms as other service members rather than discharging them simply because they are transgender. There are no special rules or considerations for a person who is diagnosed with gender dysphoria, including those who may require surgery. I had hernia surgery while I was in the military and had three weeks off to recover for this. My experience is no different from a transgender servicemember taking time off related to gender transition surgery. There are no special circumstances or other considerations outside the ordinary time off given for all other surgeries.

Declaration of Gilbert R. Cisneros, Jr. in support of Plaintiffs' Motion for Preliminary Injunction - 5

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Lambda Legal Defense and Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

Human Rights Campaign Foundation
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

17. The RAND Corporation's 2016 report, entitled *Assessing the Implications of Allowing Transgender Personnel to Serve Openly* (the "RAND Report"), predicted that allowing transgender individuals to serve would have no significant impact on healthcare costs. As part of my role as Under Secretary of Defense for Personnel and Readiness, I oversaw provision of health services to the Joint Force, which includes 2.1 million active duty, reserve, and National Guard service members as well as their dependents, and retired military members and their dependents, a total of approximately 9.6 million Americans. Transgender service members make up a very small proportion of the Joint Force, such that the cost of providing transgender health care is trivial when compared with the cost of providing other health care. Providing transgender health care did not require any significant changes to the DoD health care system, and any additional costs related to providing transgender health care have been insignificant, as the RAND Report predicted.

18. The RAND Report was also correct in predicting that allowing transgender individuals to serve would not have a negative impact on readiness or unit cohesion. The military has successfully integrated individuals from a very wide array of different backgrounds, and our ability to do so is a central foundation of our strength and effectiveness. The military is an intensely meritocratic institution: what counts is a person's ability to do the job and to lead; their identity is irrelevant. Transgender service members have more than proven themselves and are serving honorably, ably, and, in many cases, with distinction throughout the military. I am not aware of any complaints regarding unit cohesion or anything else resulting from the service of transgender individuals.

19. If there were complaints or problems about transgender service members, I would have known of them through my role as Under Secretary of Defense for Personnel and Readiness. This is true even though in my role I would not necessarily be apprised of the daily goings on of individual units with respect to morale or discipline problems. In that role, I did hear complaints about some other issues, but I never received or heard about a single complaint relating to transgender service members.

DECLARATION OF GILBERT R. CISNEROS, JR. IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

20. Personnel policies that allow transgender service members to be evaluated based on skill and merit, rather than transgender status, do not jeopardize the military's mission of protecting the United States, but strengthen it.

## RECENT REVERSAL OF POLICY

21. On January 20, 2025, President Trump issued an executive order reversing the non- discriminatory policy and banning transgender individuals from joining or continuing to serve in our nation's Armed Forces.

22. This mode of making military policy is highly atypical. As a general rule, military policies are developed carefully, based on a structured process that involves a comprehensive gathering and review of relevant facts and data, input from multiple stakeholders and sectors, and multiple drafts and iterations based on input and review.

23. The abrupt reversal of an existing policy that was adopted after just such a thorough and comprehensive review, and that has been working extremely well, is unprecedented in my experience. This is an extreme departure from how military policy is typically made.

24. The executive order claims that transgender people are inherently unfit to serve and that they undermine readiness and lethality. There is absolutely no factual basis for these claims, which are refuted by more than three years of experience under the non-discriminatory policy. They are also refuted by the nearly ten years of performance of those transgender service members who transitioned under the original Obama Administration policy, serving successfully, earning multiple promotions and performing in roles of increasing importance and responsibility. The U.S. military is a merit-based organization, and individuals move through the ranks based on fitness and aptitude; there are no diversity-based promotions in the U.S. military. Transgender service members must meet the same standards as other service members. The success of transgender service members under the non-discriminatory policy is a testament to their skill and fitness for service.

DECLARATION OF GILBERT R. CISNEROS, JR. IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

25. Prohibiting transgender individuals from serving in the military is harmful to the military and to the public interest for several reasons.

26. First, banning qualified individuals simply because they are transgender would undermine military readiness and capabilities. Many transgender service members have undergone extensive training and education, have specialized skills, are in critical positions, or are performing at high levels. Separating these service members will deprive our military and our country of their skills and talents which took years of training and experience—and significant investment from the military—to acquire. The military makes an investment in each individual; when you remove an individual, it is not plug and play. It takes time to fill positions, and this negatively impacts readiness. It is senseless to discharge service members who are meeting standards because they are transgender; the only impact of such a policy is to exclude qualified personnel.

27. Second, baselessly excluding transgender persons from service would needlessly narrow the pool of applicants from which the military could recruit service members. There is no credible reason to exclude transgender persons from opportunities within the military, especially given the military's acute need to recruit qualified individuals with specialized skills.

28. Third, the sudden and arbitrary reversal of the DoD policy allowing transgender personnel to serve is disruptive and erodes trust in leadership. Transgender service members relied on statements from their commanders that they are permitted to serve based on the same rules and standards applied to others. Breaking that commitment sends a message that leadership cannot be trusted and that the military as an institution will not honor its own rules. Furthermore, removing transgender personnel for reasons unrelated to their performance will undermine the military's merit-based culture, which will negatively impact morale, as I have seen firsthand. I served in the Navy during Don't Ask, Don't Tell. Early in my service, a sailor was removed from the ship after his sexual orientation was discovered. He was a valued member of the crew, and his abrupt removal dampened morale.

DECLARATION OF GILBERT R. CISNEROS, JR. IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

29. Fourth, in addition to the breach of transgender service members' trust resulting in the deprivation of their careers and livelihood, President Trump's policy reversal will cause service members who belong to other groups to question whether they may be subjected to the same type of arbitrary discrimination based on who they are rather than their ability to do the job.

30. Fifth, military service already demands challenging and hazardous duties from personnel. By changing the existing policy, transgender service members, their commanding officers, and their fellow service members all face unnecessary additional pressure and burden in carrying out their responsibilities.

31. President Trump's reversal of the policy permitting military service by transgender individuals will have a deleterious effect on readiness, force morale, and trust in the chain of command in the military.

I declare under the penalty of perjury that the foregoing is true and correct.

DATED: February 16, 2025

_____
Gilbert R. Cisneros, Jr.

DECLARATION OF GILBERT R. CISNEROS, JR. IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669