The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| COMMANDER EMILY SHILLING, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, et al.,<br><br>*Defendants*. | Case No. 2:25-cv-00241-BHS<br><br>**DECLARATION OF SHAWN G. SKELLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

I, Shawn G. Skelly, declare as follows:

1. I am over 18 years of age, of sound mind, and in all respects competent to testify.

2. I have actual knowledge of the matters stated herein. If called to testify in this matter, I would testify truthfully and competently as to the matters stated herein.

3. I performed the duties of the Deputy Under Secretary of Defense for Personnel and Readiness from September 11, 2023 – January 20, 2025. In this role, I oversaw U.S. force readiness and management, health affairs, and military and civilian personnel requirements related to equal opportunity, welfare, and quality of life matters. As a Department of Defense official and United States Navy veteran, I can attest to the importance of rigorous, merit-based

DECLARATION OF SHAWN G. SKELLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY 10005-3919
Telephone: 212.809.8585

**Human Rights Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

1

policies in bolstering military preparedness and to the harms to the military and to national security caused by banning qualified transgender individuals who meet rigorous standards from military service.

## PROFESSIONAL BACKGROUND

4. I attended the University of South Carolina and obtained an undergraduate degree in history in 1988. After college, I attended the U.S. Naval War College and earned a master's degree in national security and strategic studies in 2002.

5. I began my military career in the United States Navy as a Naval Flight Officer, working in various combat and management positions, with a focus on global counter-terrorism operations, Southeast and Oceania policy, and training Naval Flight Officers. From 2003 to 2006, I was the U.S. Pacific Command's Deputy Division Chief for South Asia, Southeast Asia, and Oceania Policy. After twenty years, I retired with the rank of Commander.

6. After a period in industry with defense contractor ITT Exelis, I joined the Obama Administration in 2013. During the Obama Administration, I served first as Special Assistant to the Under Secretary of Defense for Acquisition, Technology, and Logistics at the U.S. Department of Defense, and ultimately as the Director of the Office of the Executive Secretariat at the U.S. Department of Transportation.

7. In 2017, President Obama appointed me to serve as a Commissioner on the National Commission on Military, National, and Public Service, which delivered its final report to Congress, Inspired to Serve, in March 2020. This Commission undertook a review of the military selective service process and recommended methods to increase military participation.

8. On July 22, 2021, I was confirmed by the Senate to be the Assistant Secretary of Defense for Readiness where I served as the principal advisor to the Secretary of Defense and the Under Secretary of Defense for Personnel and Readiness on all matters related to the readiness of the Total Force. In this role, I developed policies and plans, provided advice, and made

DECLARATION OF SHAWN G. SKELLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

2

recommendations for Total Force Readiness programs, reporting, and assessments of readiness to execute the National Defense Strategy.

9. From September 11, 2023, through January 20, 2025, I performed the Duties of the Deputy Under Secretary of Defense for Personnel and Readiness. In this role, I served as the primary assistant to the Under Secretary of Defense for Personnel and Readiness in formulating and directing policy for force readiness; force management; health affairs; National Guard and Reserve Component affairs; education and training; and military and civilian personnel requirements and management to include equal opportunity, morale, welfare, recreation, and quality of life matters.

## THE BIDEN ADMINISTRATION TRANSGENDER SERVICE POLICY

10. In 2021, President Biden overturned the prior administration's policy barring military service by transgender individuals, as announced in 2017 and implemented in 2019. Through DoD Instruction ("DoDI") 1300.28, entitled *In-Service Transition for Transgender Service Members* (the "Austin Policy"), which applies to all military departments, guidance was set forth to allow military service by qualifying transgender service members. As Assistant Secretary of Defense for Readiness, I observed the benefits of rigorous, merit-based policies for America's military capabilities.

11. The transgender service policy fosters openness and trust among team members, thereby enhancing unit cohesion. Ensuring a strong, cohesive team is a selling point of military service and is especially important given the need to recruit individuals who can perform the broad range of roles and capabilities required for our military to operate effectively. Everyone deserves a fair opportunity to be able to serve their country based on their own merit.

12. The transgender service policy further enables our military to retain highly trained and experienced service members by applying the same standards to transgender service members that are applied to others, including standards relating to medical care.

DECLARATION OF SHAWN G. SKELLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

3

13. The transgender service policy has not negatively impacted readiness. The RAND Corporation's 2016 report, entitled *Assessing the Implications of Allowing Transgender Personnel to Serve Openly* (the "RAND Report"), accurately predicted that allowing transgender individuals to serve would not undermine military readiness. The RAND Report predicted that less that 0.0015 percent of total labor-years would likely be affected by permitting transgender individuals to serve, and that the total proportion of the force that would seek treatment would be less than 0.1 percent. Importantly, those seeking transgender health care are required to go through a formal process that includes seeking a referral from their medical provider and undergoing review by command. An individual who seeks transgender health care does not abruptly disappear from the ranks, but rather must adhere to timelines and reporting procedures that ensure readiness is not adversely impacted.

14. As part of my role, I managed and oversaw the provision of health services to the Total Force, which includes 3.4 million active duty, reserve, and National Guard service members and civilian employees and contractors. To address the health care needs of this large population, the DoD health care system provides access to medical providers across a comprehensive array of specialties, as well as a wide variety of medical services. Transgender health care is not unique and is provided by specialists—like endocrinologists—already embedded in the DoD health care system using medications and procedures that are the same as or substantially similar to those already provided to non-transgender service members. Providing transgender health care therefore did not require any significant changes to the DoD health care system, and any additional costs related to providing transgender health care have been negligible. The real-world increase in health care spending is thus consistent with the RAND Report's predictions.

15. The RAND Report also predicted that allowing transgender individuals to serve would have little or no effect on unit cohesion. Consistent with the military's experience integrating other disadvantaged groups into the ranks, an individual's ability to do the job in

DECLARATION OF SHAWN G. SKELLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

4

front of them has proven to be more important to unit cohesion than any concerns regarding identity. Transgender service members have proven themselves able to perform and are serving ably throughout the military. I am not aware of any complaints regarding unit cohesion resulting from the Austin policy. To the extent the Austin policy has had any appreciable impact on unit cohesion, it has improved unit cohesion by fostering increased trust among team members.

16. Personnel policies that allow transgender service members to be evaluated based on skill and merit, rather than transgender status, do not jeopardize the military's mission of protecting the United States, but strengthen it.

## RECENT REVERSAL OF POLICY

17. On January 27, 2025, President Trump issued an executive order reversing the Biden Administration's policy that allows transgender people to serve. In contrast to the 2017 ban, the policy mandated by this new executive order requires the exclusion both of transgender service members who are currently serving as well those seeking to accede.

18. Such an abrupt reversal of established military personnel policy is highly unusual. Typically, military policies are developed through a systematic and evidence-based process that involves multiple steps and input from various sectors and that addresses a documented issue, problem, or need within the military context. This may arise from operational experiences, strategic assessments, or evolving threats. Once the issue is recognized, a thorough analysis is conducted, gathering relevant data and evidence to understand the scope and implications of the problem. This evidence-based approach ensures that decisions are grounded in factual information and best practices. Input from diverse stakeholders is typically integral to the policy development process and often includes military personnel at various levels, subject matter experts, government officials, and sometimes civilian advisors. Engaging different sectors helps to ensure that a wide range of perspectives and expertise are considered, fostering a more comprehensive and effective policy outcome. The development process is typically orderly and structured, often involving several phases such as drafting, reviewing, and revising the policy

DECLARATION OF SHAWN G. SKELLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

5

proposals. This may also include public consultations or discussions with key stakeholders to refine the proposed policies. Finally, once the policy is finalized, it undergoes full coordination through the appropriate military and Office of the Secretary of Defense approval authorities before implementation. This collaborative and comprehensive approach aims to create military policies that are responsive, effective, and aligned with broader national security objectives.

19. The abrupt policy reversal mandated by the new executive order bears none of these hallmarks. It was not prompted by any problem or issue with the service of transgender troops. It was not developed through a systematic or evidence-based process, did not include input from stakeholders, and was not based on a structured or iterative process. In my experience, this is not only unusual, but (apart from the similarly abrupt imposition of a ban in 2017) unprecedented.

20. The executive order claims that transgender people are inherently dishonest and unfit to serve and that permitting them to serve hinders military effectiveness and lethality and disrupts unit cohesion. This purported rationale is unfounded and refuted by more than three years of experience under the Austin policy.

21. Transgender service members have served honorably and met the same standards and expectations as other service members. I am unaware of any evidence that transgender individuals are dishonest or morally unfit.

22. Prohibiting transgender individuals from serving in the military is harmful to the military and to our national security for several reasons.

23. First, a prohibition on service by transgender individuals would degrade military readiness and capabilities. Many military units include transgender service members who are highly trained and skilled and who perform outstanding work. Separating these service members will deprive our military and our country of their skills and talents.

24. Second, banning military service by transgender persons would impose significant costs that far outweigh the minimal cost of permitting them to serve.

DECLARATION OF SHAWN G. SKELLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Lambda Legal Defense and Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

Human Rights Campaign Foundation
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

6

25. Third, the sudden and arbitrary reversal of the Austin Policy allowing transgender personnel to serve will cause significant disruption and thereby undermine military readiness and lethality. This policy bait-and-switch, after many transgender service members relied on statements from the highest levels of the chain of command, conveys to service members that command cannot be relied upon to follow its own rules or maintain consistent standards.

26. Fourth, in addition to the breach of transgender service members' trust resulting in the deprivation of their careers and livelihood, President Trump's policy reversal will cause other historically disadvantaged groups in the military, including religious minorities, women, gay and lesbian people, and people belonging to diverse racial and ethnic communities, to question whether their careers and ability to serve as equal members of the military may also be sacrificed for reasons unrelated to their ability to serve.

27. Fifth, those serving in our military are expected to perform difficult and dangerous work. The reversal of policy puts tremendous additional and unnecessary stress on transgender service members, their command leaders, and those with whom they serve.

28. President Trump's reversal of the policy permitting military service by transgender individuals will have a deleterious effect on readiness, force morale, and trust in the chain of command in the military.

## CONCLUSION

29. The President's statements and reversal of the Biden Administration is not only extremely painful to thousands of transgender service members, but also risks public safety and military preparedness at a time of heightened international turmoil.

I declare under the penalty of perjury that the foregoing is true and correct.

DATED: February 11, 2025

_____
Shawn G. Skelly

DECLARATION OF SHAWN G. SKELLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Lambda Legal Defense and Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

Human Rights Campaign Foundation
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

7