

**OFFICE OF THE UNDER SECRETARY OF DEFENSE**
1500 DEFENSE PENTAGON
WASHINGTON, D.C. 20301-1500

FEB 28 2025

**MANPOWER AND RESERVE AFFAIRS**

MEMORANDUM FOR SENIOR PENTAGON LEADERSHIP
    COMMANDERS OF THE COMBATANT COMMANDS
    DEFENSE AGENCY AND DOD FIELD ACTIVITY DIRECTORS

SUBJECT: Clarifying Guidance on Prioritizing Military Excellence and Readiness

    This memorandum provides clarifying guidance to implement the requirements of the attached Performing the Duties of the Under Secretary of Defense for Personnel and Readiness Memorandum, "Additional Guidance on Prioritizing Military Excellence and Readiness," February 26, 2025.

    While the Secretaries of the Military Departments establish procedures and implement steps to identify Service members as required in the attachment, DoD personnel shall take no action to identify Service members pursuant to the attachment until March 26, 2025, to include the use of medical records, periodic health assessments, ad hoc physical assessments, or any other diagnostic mechanism, unless otherwise directed by an appropriate official in the Office of the Secretary of Defense for Personnel and Readiness.

    Principal Staff Assistants, DoD Component Heads, and their subordinates shall not direct or request that Service members self-identify as having a current diagnosis or history of, or exhibiting symptoms consistent with, gender dysphoria.

    Service members subject to the requirements in the attachment are encouraged to elect to separate voluntarily by March 26, 2025.

    This clarifying guidance does not apply to medical qualification determinations for applicants for military service, including eligibility determinations for individuals preparing to ship to initial entry training.

    This office will provide additional guidance prior to March 26, 2025, concerning identification processes and procedures.

                                     Tim Dill
                                     Performing the Duties of the Assistant
                                     Secretary of Defense for Manpower and
                                     Reserve Affairs

Attachments:
As stated
cc:
Director, Defense Health Agency
Deputy Assistant Secretary of Defense for Health Services Policy & Oversight (HSP&O)
Deputy Assistant Secretary of Defense for Military Personnel Policy
Deputy Chief of Staff, G-1, U.S. Army
Deputy Commandant for Manpower and Reserve Affairs, U.S. Marine Corps
Chief of Naval Personnel, U.S. Navy
Deputy Chief of Staff for Personnel, U.S. Air Force
Deputy Chief of Space Operations, Personnel
Director for Manpower and Personnel, J1
Surgeon General of the Army
Surgeon General of the Navy Surgeon General of the Air Force



**OFFICE OF THE UNDER SECRETARY OF DEFENSE**
4000 DEFENSE PENTAGON
WASHINGTON, D.C. 20301-4000

PERSONNEL AND
READINESS

FEB 2 6 2025

MEMORANDUM FOR SENIOR PENTAGON LEADERSHIP
        COMMANDERS OF THE COMBATANT COMMANDS
        DEFENSE AGENCY AND DOD FIELD ACTIVITY DIRECTORS

SUBJECT: Additional Guidance on Prioritizing Military Excellence and Readiness

  As directed by the Secretary of Defense in his February 7, 2025, memorandum, "Prioritizing Military Excellence and Readiness," it is Department policy that, pursuant to Executive Order 14183, "Prioritizing Military Excellence and Readiness," the medical, surgical, and mental health constraints on individuals who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria are incompatible with the high mental and physical standards necessary for military service.

  The attachment to this memorandum provides supplemental policy guidance and establishes a reporting mechanism to ensure Department compliance. The policy guidance in the attachment: (1) supersedes any conflicting policy guidance in Department of Defense issuances and other policy guidance and memoranda; and (2) is effective immediately and will be incorporated into respective Department issuances, as appropriate.

  The following DoD issuances will be updated to reflect guidance in this attachment, as appropriate:

- Department of Defense Instruction (DoDI) 6130.03, Volume 1, "Medical Standards for Military Service: Appointment, Enlistment, or Induction," May 6, 2018, as amended

- DoDI 6130.03, Volume 2, "Medical Standards for Military Service: Retention," September 4, 2020, as amended

- DoDI 1327.06, "Leave and Liberty Policy and Procedures," June 16, 2009, as amended

- DoDI 1322.22, "Military Service Academies," September 24, 2015, as amended

- DoDI 1215.08, "Senior Reserve Officers' Training Corps (ROTC) Programs," January 19, 2017, as amended

- DoDI 6025.19, "Individual Medical Readiness Program," July 13, 2022

Effective immediately, the following issuances, policies, and memoranda are cancelled:

- DoDI 1300.28, "In-Service Transition for Transgender Service Members," April 30, 2021, as amended

- Defense Health Agency Procedural Instruction 6025.21, "Guidance for Gender-Affirming Health Care of Transgender and Gender-Diverse Active and Reserve Component Service Members," May 12, 2023

- Acting Assistant Secretary of Defense for Health Affairs Memorandum, "Guidance for Treatment of Gender Dysphoria for Active and Reserve Component Service Member," July 29, 2016

- Principal Deputy Assistant Secretary of Defense for Health Affairs Memorandum, "Guidance for Medical Care in Military Treatment Facilities for Service Members Diagnosed with Gender Dysphoria," March 18, 2019

The Assistant Secretary of Defense for Manpower and Reserve Affairs will be responsible for all data collection and reporting. The first report is due March 26, 2025. All Department of Defense and Military Service policy recissions and updates must be completed no later than June 25, 2025.

Service members being processed for separation in accordance with this policy will be afforded all statutorily required rights and benefits.

*[Signature]*

Darin S. Selnick
Performing the Duties of the Under Secretary of
Defense for Personnel and Readiness

Attachments:
As stated

cc:
Commandant of the Coast Guard
Assistant Secretary of Defense for Health Affairs
Assistant Secretary of Defense for Manpower and Reserve Affairs
Director, Defense Health Agency
Deputy Chief of Staff, G-1, U.S. Army
Deputy Commandant for Manpower and Reserve Affairs, U.S. Marine Corps
Chief of Naval Personnel, U.S. Navy
Deputy Chief of Staff for Personnel, U.S. Air Force
Deputy Chief of Space Operations, Personnel
Director for Manpower and Personnel, J1
Surgeon General, Public Health Service
Administrator, National Oceanic and Atmospheric Administration

# ATTACHMENT
## Service Members and Applicants for Military Service who Have a Current Diagnosis or History of, or Exhibit Symptoms Consistent with, Gender Dysphoria

1. **Policy.** It is DoD policy that:

   a. Service in the Military Services is open to all persons who can meet the high standards for military service and readiness without special accommodations.

   b. It is the policy of the United States Government to establish high standards for Service member readiness, lethality, cohesion, honesty, humility, uniformity, and integrity. This policy is inconsistent with the medical, surgical, and mental health constraints on individuals with gender dysphoria or who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria.

   c. Military service by Service members and applicants for military service who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria is incompatible with military service. Service by these individuals is not in the best interests of the Military Services and is not clearly consistent with the interests of national security.

   d. Individuals who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria are no longer eligible for military service, except as set forth in sections 4.1.c. and 4.3.c. of this attachment.

   e. Service members who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria will be processed for separation from military service in accordance with section 4.4. of this attachment. Characterization of service under these procedures will be honorable except where the Service member's record otherwise warrants a lower characterization.

   f. The Department only recognizes two sexes: male and female. An individual's sex is immutable, unchanging during a person's life. All Service members will only serve in accordance with their sex, defined in Executive Order 14168, "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government," as "an individual's immutable biological classification as either male or female."

   g. Where a standard, requirement, or policy depends on whether the individual is a male or female (e.g., medical fitness for duty, physical fitness and body fat standards; berthing, bathroom, and shower facilities; and uniform and grooming standards), all persons will be subject to the standard, requirement, or policy associated with their sex.

   h. Pronoun usage when referring to Service members must reflect a Service member's sex. In keeping with good order and discipline, salutations (e.g., addressing a senior officer as "Sir" or "Ma'am") must also reflect an individual's sex.

i. Absent extraordinary operational necessity, the Military Services will not allow male Service members to use or share sleeping, changing, or bathing facilities designated for females, nor allow female Service members to use or share sleeping, changing, or bathing facilities designated for males.

j. No funds from the Department of Defense will be used to pay for Service members' unscheduled, scheduled, or planned medical procedures associated with facilitating sex reassignment surgery, genital reconstruction surgery as treatment for gender dysphoria, or newly initiated cross-sex hormone therapy.

k. Consistent with existing law and Department policy, commanders shall protect the privacy of protected health information they receive under this policy in the same manner as they would with any other protected health information. Such health information shall be restricted to personnel with a specific need to know; that is, access to information must be necessary for the conduct of official duties. Personnel shall also be accountable for safeguarding this health information consistent with existing law and Departmental policy.

**2. Applicability.** This policy guidance applies to the Office of the Secretary of Defense, the Military Departments, the Office of the Chairman of the Joint Chiefs of Staff, the Joint Staff, the Combatant Commands, the Office of Inspector General of the Department of Defense, the Defense Agencies, the DoD Field Activities, and all other organizational entities within the DoD.

**3. Responsibilities.**

3.1. Under Secretary of Defense for Personnel and Readiness (USD(P&R)).

The USD(P&R) will:

a. Update or rescind existing DoD issuances, or publish new issuances, as necessary pursuant to this guidance.

b. Ensure all Military Department and Military Service regulations, policies, and guidance are consistent with this attachment.

3.2. Assistant Secretary of Defense for Manpower and Reserve Affairs (ASD(M&RA)).

Under the authority, direction, and control of the USD(P&R), the ASD(M&RA) will:

a. Coordinate with the Assistant Secretary of Defense for Health Affairs (ASD(HA)) in the management and implementation of this guidance, and issue clarifying guidance, as appropriate.

b. Serve as the primary point of contact, through the Deputy Assistant Secretary of Defense for Military Personnel Policy (DASD(MPP)), for those responsibilities assigned in sections 3.3. through 3.6. of this attachment and provide reports in accordance with section 7 of this attachment, until a determination is made and notification provided to the Secretaries of the Military Departments that the reports may be cancelled.

c. Oversee the recission and updates to applicable DoD issuances, policy memoranda, and other guidance documents in accordance with this guidance.

3.3. ASD(HA).

Under the authority, direction, and control of the USD(P&R), the ASD(HA) will:

a. Coordinate with the ASD(M&RA) in the management and implementation of health care matters associated with this guidance, and issue clarifying guidance, as appropriate.

b. Oversee the recission of, and updates to, applicable DoD issuances, Defense Health Agency issuances, and other policy memoranda or guidance documents in accordance with this guidance.

c. Consider requests submitted by the Secretaries of the Military Departments, on a case-by-case basis, for an exception to section 1.j.. The ASD(HA) may authorize an exception to section 1.j. of this attachment for non-surgical care if required to protect the health of Service members. This authority may not be further delegated.

d. Submit to the DASD(MPP) a report in accordance with section 7 of this attachment.

3.4. Secretaries of the Military Departments.

The Secretaries of the Military Departments will:

a. Adhere to all provisions of this guidance.

b. Update or publish new regulations, policies, and guidance to implement the provisions of this attachment.

c. Ensure the protection of personally identifiable information, protected health information, and personal privacy considerations, consistent with existing law and DoD policy.

d. Implement processes for the assessment and oversight of compliance with DoD, Military Department, and Military Service regulations, policies, and guidance applicable to Service members and applicants for military service who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria.

e. Establish procedures and implement steps to identify Service members who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria within 30 days of this memorandum.

f. Within 30 days of identification pursuant to section 3.4.e. of this attachment, begin separation actions, in accordance with section 4.4. of this attachment, for Service members who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria and are not granted a waiver pursuant to section 4.3.c. of this attachment.

3

g. Ensure all Service members who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria and are assigned to the Office of the Secretary of Defense, Defense Agencies, DoD Field Activities, Combatant Commands, and other Joint assignments are reassigned to their respective Military Services for the purpose of initiating administrative separation processes.

h. Ensure all personnel systems accurately reflect each Service member's sex.

i. Submit to the DASD(MPP) a report in accordance with section 7 of this attachment.

3.5. <u>Chairman of the Joint Chiefs of Staff</u>.

The Chairman of the Joint Chiefs of Staff will:

a. Adhere to all provisions of this guidance.

b. Ensure the Commanders of the Combatant Commands adhere to all provisions of this guidance.

c. Consolidate and submit to the DASD(MPP) a report on Combatant Command compliance with section 5 of this attachment, in accordance with section 7 of this attachment.

d. Submit to the DASD(MPP) a report in accordance with section 7 of this attachment.

3.6. <u>Defense Agency and DoD Field Activity Directors</u>.

The Defense Agency and DoD Field Activity Directors will:

a. Ensure compliance with section 5 of this attachment.

b. Submit to the DASD(MPP) a report in accordance with section 7 of this attachment.

## 4. **Procedures.**

4.1. <u>Appointment, Enlistment, or Induction into the Military Services</u>.

a. Applicants for military service and individuals in the Delayed Training/Entry Program who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria are disqualified for military service.

b. A history of cross-sex hormone therapy or sex reassignment or genital reconstruction surgery as treatment for gender dysphoria or in pursuit of a sex transition, is disqualifying.

c. Applicants disqualified pursuant to sections 4.1.a. and 4.1.b. of this attachment may be considered for a waiver on a case-by-case basis, provided there is a compelling Government interest in accessing the applicant that directly supports warfighting capabilities. The applicant

4

must be willing and able to adhere to all applicable standards, including the standards associated with the applicant's sex.

    d. Applicants disqualified pursuant to sections 4.1.a. and 4.1.b. of this attachment and not granted a waiver pursuant to section 4.1.c. of this attachment shall not ship to Initial Entry Training.

    e. Offers of admission to a Military Service Academy or the Senior Reserve Officers' Training Corps to individuals disqualified pursuant to sections 4.1.a. and 4.1.b. of this attachment shall be rescinded except where the individual is granted a waiver pursuant to section 4.1.c. of this attachment. Senior Reserve Officers' Training Corps students otherwise disqualified pursuant to sections 4.1.a. and 4.1.b. of this attachment may still participate in classes taught or coordinated by the Senior Reserve Officer's Training Corps that are open to all students at the college or university concerned. All individuals enrolled or participating in the Senior Reserve Officers' Training Corps, whether under contract or not contracted, will follow standards for uniform wear consistent with the individual's sex in accordance with section 5 of this attachment.

    f. Individuals disqualified pursuant to sections 4.1.a. and 4.1.b. of this attachment are subject to separation from a Military Service Academy in accordance with DoDI 1322.22, or from the Senior Reserve Officers' Training Corps in accordance with DoDI 1215.08, unless the individual is granted a waiver consistent with section 4.1.c. of this attachment. Absent any other basis for separation or disenrollment, such individuals will not be subject to monetary repayment of educational benefits (i.e., recoupment) nor subject to completion of a military service obligation.

4.2. <u>Medical Care</u>.

    a. In accordance with DoDI 6025.19 and DoDI 1215.13, Service members have a responsibility to maintain their health and fitness, meet individual medical readiness requirements, and report any medical and health (including mental health) issues that may affect their readiness to deploy or fitness to continue serving in an active status.

    b. All unscheduled, scheduled, or planned surgical procedures associated with facilitating sex reassignment for Service members diagnosed with gender dysphoria are cancelled.

    c. Cross-sex hormone therapy for Service members who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria that began prior to the date of this memorandum may, if recommended by a DoD health care provider (HCP) in order to prevent further complications, be continued until separation is complete.

    d. Service members may consult with a DoD HCP concerning a diagnosis of gender dysphoria and receive mental health counseling for a diagnosis of gender dysphoria. The retention or processing for separation of such Service members will follow procedures in section 4.3. or section 4.4. of this attachment, as appropriate.

4.3. <u>Retention</u>.

a. Service members who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria are disqualified from military service.

b. Service members who have a history of cross-sex hormone therapy or a history of sex reassignment or genital reconstruction surgery as treatment for gender dysphoria or in pursuit of a sex transition, are disqualified from military service.

c. Service members disqualified pursuant to sections 4.3.a. and 4.3.b. of this attachment may be considered for a waiver on a case-by-case basis, provided there is a compelling Government interest in retaining the Service member that directly supports warfighting capabilities and the Service member concerned meets the following criteria:

    1. The Service member demonstrates 36 consecutive months of stability in the Service member's sex without clinically significant distress or impairment in social, occupational, or other important areas of functioning; and

    2. The Service member demonstrates that he or she has never attempted to transition to any sex other than their sex; and

    3. The Service member is willing and able to adhere to all applicable standards, including the standards associated with the Service member's sex.

4.4. <u>Separation</u>.

a. Service members who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria and are not granted a waiver pursuant to section 4.3. of this attachment will be processed for administrative separation in accordance with, and afforded all applicable administrative processing protections in, DoDI 1332.14 and DoDI 1332.30. The Secretaries of the Military Departments will direct the administrative separation of (1) any enlisted Service member prior to the expiration of the member's term of service following a determination that doing so is in the best interest of the relevant Military Service; or (2) any officer whose retention is not clearly consistent with the interests of national security.

    1. Service members are ineligible for referral to the Disability Evaluation System (DES) when they have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria, not constituting a physical disability pursuant to DoDI 1332.18.

    2. Service members may be referred to the DES if they have a co-morbidity, or other qualifying condition, that is appropriate for disability evaluation processing in accordance with DoDI 1332.18, prior to processing for administrative separation.

    3. Service members who are processed for separation pursuant to this policy will be designated as non-deployable until their separation is complete.

4. Service members who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria may elect to separate voluntarily in the 30 days following signature of this guidance. Such Service members may be eligible for voluntary separation pay in accordance with 10 U.S.C. § 1175a and DoDI 1332.43. Service members eligible for voluntary separation pay will be paid at a rate that is twice the amount the Service member would have been eligible for involuntary separation pay, in accordance with DoDI 1332.29.

5. Service members separated involuntarily pursuant to this policy may be provided full involuntary separation pay in accordance with 10 U.S.C. § 1174 and DoDI 1332.29.

6. All enlisted Service members who are involuntarily separated pursuant to this policy will, if desired by the Service member, be afforded an administrative separation board.

7. All officers who are involuntarily separated pursuant to this policy will be afforded a Board of Inquiry, if desired by the officer, in accordance with 10 U.S.C. § 1182.

8. Service members identified pursuant to section 3.4.e. of this attachment with over 18 but less than 20 years of total active duty service are eligible for early retirement under the Temporary Early Retirement Authority in accordance with DoDI 1332.46.

9. Eligible Service members (including active duty Service members and Reserve or National Guard members when on active duty orders for 30 or more consecutive days) who are processed for separation pursuant to this policy, and their covered dependents, remain eligible for TRICARE for 180 days in accordance with 10 U.S.C. § 1145.

10. Service members choosing voluntary separation will not have to repay any bonuses received prior to the date of this memorandum, even if they have a remaining service obligation, pursuant to 37 U.S.C. § 373(b)(1). The Military Departments may recoup any bonuses received prior to the date of this memorandum for Service members choosing to be involuntarily separated.

11. The Secretaries of the Military Departments shall waive any remaining military service obligation for Service members who are separated pursuant to this policy.

  b. Separation proceedings for individuals identified pursuant to section 3.4.e. of this attachment will be initiated after the Secretaries of Military Departments complete the requirements in section 3.4.e. of this attachment.

  c. Nothing in this attachment precludes appropriate administrative or disciplinary action for Service members who refuse orders from lawful authority to comply with applicable standards or otherwise do not meet standards for performance and conduct.

## 5. Sex.

5.1. Military Records. All military records will reflect the Service member's sex.

5.2. Military Standards.

    a. Access to intimate spaces will be determined by Service members' or applicants for military service's sex. The Military Services will apply all standards that involve consideration of the Service members' sex, to include, but not limited to:

        1. Uniforms and grooming.

        2. Body composition assessment.

        3. Medical fitness for duty.

        4. Physical fitness and body fat standards.

        5. Berthing, bathroom, and shower facilities.

        6. Military personnel drug abuse testing program participation.

    b. All such shared intimate spaces will be clearly designated for either male, female, or family use.

    c. Exceptions to this requirement may be made only in cases of extraordinary operational necessity. During deployments, or in austere environments where space is limited, commanders will prioritize unit cohesion and readiness while adhering to this policy.

## 6. Administrative Absence for Service Members with a Current History or Diagnosis of, or Symptoms Consistent with, Gender Dysphoria.

6.1. Administrative Absence.

    a. In order to maintain good order and discipline in accordance with section 5 of this attachment, the Secretary of the Military Department concerned may place Service members being processed for separation under the criteria in section 4.4.a. of this attachment in an administrative absence status, with full pay and benefits, until their separation is complete.

    b. Service members in an administrative absence status in accordance with this section will be designated as non-deployable until their separation is complete.

    c. Service members in an administrative absence status in accordance with this section will complete the Transition Assistance Program in accordance with DoDI 1332.35.

8

## 7. **Reporting.**

7.1. Report Requirements.

 a. No later than March 26, 2025, and every 30 days thereafter, submit via a Correspondence and Task Management System (CATMS) tasker a memorandum to the DASD(MPP) providing the following:

  1. Identification of all DoD, Military Department, and Military Service issuances, regulations, policy memoranda, and other guidance where the content of which relate to, or may be affected by, guidance provided in this attachment.

  2. Status of updates to the aforementioned DoD, Military Department, and Military Service issuances, regulations, policy memoranda, and other guidance.

  3. Draft revisions to the aforementioned DoD, Military Department, and Military Service issuances, regulations, policy memoranda, and other guidance.

  4. Status of system of records updates.

  5. Status of, and progress on, separations of Service members who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria in accordance with section 4.4. of this attachment.

  6. Status of, and progress on, compliance with section 5 of this attachment.

# GLOSSARY

## G.1. Acronyms

| Acronym | Meaning |
|---|---|
| ASD(HA) | Assistant Secretary of Defense for Health Affairs |
| ASD(M&RA) | Assistant Secretary of Defense for Manpower and Reserve Affairs |
| CATMS | Correspondence and Task Management System |
| DASD(MPP) | Deputy Assistant Secretary of Defense for Military Personnel Policy |
| DES | Disability Evaluation System |
| DoDI | DoD Instruction |
| U.S.C. | United States Code |
| USD(P&R) | Under Secretary of Defense for Personnel and Readiness |

## G.2. Definitions

Unless otherwise noted, these terms and their definitions are for the purposes of this attachment.

| Term | Definition |
|---|---|
| **cross-sex hormone therapy** | The use of feminizing hormones by a male or the use of masculinizing hormones by a female. |
| **gender dysphoria** | A marked incongruence between one's experienced or expressed gender and assigned gender of at least 6 months' duration, as manifested by conditions specified in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders: Fifth Edition, page 452, which is associated with clinically significant distress or impairment in social, occupational, or other important areas of functioning. |
| **gender identity** | Defined in Executive Order 14168 as a fully internal and subjective sense of self, disconnected from biological reality and sex and existing on an infinite continuum, that does not provide a meaningful basis for identification and cannot be recognized as a replacement for sex. |
| **sex** | Defined in Executive Order 14168 as an individual's immutable biological classification as either male or female. |

# REFERENCES

Executive Order 14168, "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government," January 20, 2025
Executive Order 14183, "Prioritizing Military Excellence and Readiness," January 27, 2025
DoDI 1215.08, "Senior Reserve Officers' Training Corps (ROTC) Programs," January 19, 2017, as amended
DoDI 1215.13, "Ready Reserve Member Participation Policy," May 5, 2015
DoDI 1322.22, "Military Service Academies," September 24, 2015, as amended
DoDI 1327.06, "Leave and Liberty Policy and Procedures," June 16, 2009, as amended
DoDI 1332.14, "Enlisted Administrative Separations," August 1, 2024
DoDI 1332.18, "Disability Evaluation System," November 10, 2022
DoDI 1332.29, "Involuntary Separation Pay (Non-Disability)," March 3, 2017
DoDI 1332.30, "Commissioned Officer Administrative Separations," May 11, 2018, as amended
DoDI 1332.35, "Transition Assistance Program (TAP) for Military Personnel," September 26, 2019
DoDI 1332.43, "Voluntary Separation Pay (VSP) Program for Service Members," November 28, 2017
DoDI 1332.46, "Temporary Early Retirement Authority (TERA) for Service Members," December 21, 2018
DoDI 6025.19, "Individual Medical Readiness Program," July 13, 2022
DoDI 6130.03, Volume 1, "Medical Standards for Military Service: Appointment, Enlistment, or Induction," May 6, 2018, as amended
DoDI 6130.03, Volume 2, "Medical Standards for Military Service: Retention," September 4, 2020, as amended
American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders: Fifth Edition, May 18, 2013
Title 10, United States Code
Title 37, United States Code