

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

COMMANDER EMILY SHILLING;
COMMANDER BLAKE DREMANN;
LIEUTENANT COMMANDER GEIRID
MORGAN; SERGEANT FIRST CLASS
CATHRINE SCHMID; SERGEANT FIRST
CLASS JANE DOE; SERGEANT FIRST
CLASS SIERRA MORAN; STAFF SERGEANT VIDEL
LEINS; MATTHEW MEDINA; and GENDER
JUSTICE LEAGUE,

*Plaintiffs*,

v.

DONALD J. TRUMP, in his official capacity as
President of the United States; UNITED STATES
OF AMERICA; PETER HEGSETH, in his official
capacity as Secretary of Defense; UNITED
STATES DEPARTMENT OF DEFENSE;
DANIEL P. DRISCOLL, in his official capacity as
Secretary of the Army; UNITED STATES
DEPARTMENT OF THE ARMY; TERENCE
EMMERT, in his official capacity as Acting
Secretary of the Navy; UNITED STATES
DEPARTMENT OF THE NAVY; GARY
ASHWORTH, in his official capacity as Acting

Case No. 2:25-cv-241-BHS

**FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF**

**CAPTION CONTINUED ON NEXT PAGE**

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF
CASE NO. 2:25-CV-241

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

1  Secretary of the Air Force; UNITED STATES
2  DEPARTMENT OF THE AIR FORCE,

3          *Defendants*.

4

5                    **NATURE OF ACTION**

6        1.      This action challenges the constitutionality of Executive Order No. 14183,

7  *Prioritizing Military Excellence and Readiness* (the "2025 Military Ban"), which President Donald

8  J. Trump issued on January 27, 2025,[1] and related official federal policy and directives, which

9  together ban a group of Americans—transgender people—from serving their Country in the

10  military simply because of who they are.

11       2.      There are currently thousands of transgender people selflessly and patriotically

12  serving in our Nation's armed services across myriad roles, and many others seek to follow the

13  same noble path. Transgender service members take the same oath as every other service member

14  to serve our Nation and place themselves in harm's way—potentially paying the ultimate price—

15  in service of our Country. And to be clear, our country *needs* ready, able, and willing service

16  members to stand up and protect our freedoms. But the 2025 Military Ban turns them away and

17  kicks them out—for no legitimate reason. Rather, it baselessly declares **all** transgender people unfit

18  to serve, insults and demeans them, and cruelly describes every one of them as incapable of "an

19  honorable, truthful, and disciplined lifestyle, even in one's personal life," based solely because

20  they are transgender. These assertions are, of course, false.

21       3.      Nevertheless, the 2025 Military Ban denies the existence of transgender people

22  altogether, branding all people whose gender identities differ from the sex assigned to them at birth

23  as a "falsehood" and lacking the "humility and selflessness required of a service member." 2025

24  Military Ban § 1.  It incorporates the definitions of another executive order (the "Gender Identity

25

26  ────────────────
     [1] Exec. Order No. 14183, *Prioritizing Military Excellence and Readiness*, 90 Fed. Reg.
     8,757 (Feb. 3, 2025), https://www.govinfo.gov/content/pkg/FR-2025-02-03/pdf/2025-02178.pdf.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

Executive Order")[2] which proclaims that having a gender identity incongruent with one's sex designated at birth is a "false belief." 2025 Military Ban § 3; Gender Identity Executive Order § 2(f).

4.    The 2025 Military Ban directs the Secretary of Defense to adopt and execute a policy establishing that a person being transgender is incompatible with military service, thereby preventing existing service members who are transgender from continuing to serve and preventing transgender people from enlisting in, or acceding to, the armed forces in the future. 2025 Military Ban § 4(a)–(c). It further directs the Secretary of Homeland Security to adopt and execute the same with respect to the Coast Guard. 2025 Military Ban § 4(e).

5.    The 2025 Military Ban and related federal policy and directives undermine military readiness, endanger our safety, and violate the United States Constitution. IT also represents an abrupt and misguided change from current military policy.

6.    Plaintiffs are seven existing service members who have served honorably and openly as transgender in the military for years; one transgender person who, were it not for 2025 Military Ban and related policy and directives, meets the requirements to serve and who wishes to enlist; and an organizational Plaintiff with transgender military members.

7.    Three Plaintiffs are senior officers. Commander Shilling, Commander Dremann, and Lieutenant Commander Morgan are senior Naval officers. Each has an impressive military record. Commander Shilling has flown 60 combat missions. Commander Dremann has supervised hundreds of personnel maintaining United States Marine Corps aircraft and repairing submarines for deployment. And Lieutenant Commander Morgan manages a substantial science and technology funding portfolio.

8.    Four Plaintiffs are senior enlisted service members in the Army and the Air Force with equally admirable service records. Sergeant First Class Doe works as a satellite

---

[2] Exec. Order No. 14168, *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, 90 Fed. Reg. 8,615 (Jan. 30, 2025), https://www.govinfo.gov/content/pkg/FR-2025-01-30/pdf/2025-02090.pdf.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

communications operator, Sergeant First Class Schmid holds the military occupational specialty of Signals Intelligence Analyst, Sergeant First Class Moran coordinates planning and operations for her battalion, and Staff Sergeant Videl Leins works on high voltage power plants.

9.      One Plaintiff, Matthew Medina, seeks to enlist in the United States Marine Corps in order to serve his country and simultaneously escape generational poverty. And the organization, Gender Justice League, seeks to protect its members who are or aspire to be service members from discrimination.

10.     By categorically excluding transgender people, the 2025 Military Ban and related federal policy and directives violate the equal protection and due process guarantees of the Fifth Amendment and the free speech guarantee of the First Amendment. They lack any legitimate or rational justification, let alone the compelling and exceedingly persuasive ones required. Accordingly, Plaintiffs seek declaratory, and preliminary and permanent injunctive, relief.

**PARTIES**

**<u>Plaintiffs</u>**

11.     Plaintiff **Commander Emily "Hawking" Shilling** is a 42-year-old woman who resides in Maryland. She has served for more than 19 years in the United States Navy and is currently stationed in Maryland. Commander Shilling is transgender.

12.     Plaintiff **Commander Blake Dremann** is a 43-year-old man who is stationed in Guam. He has served for more than 19 years in the United States Navy. Commander Dremann is transgender.

13.     Plaintiff **Lieutenant Commander Geirid Morgan** is a 45-year-old woman who resides in Maryland. She has served for more than 14 years in the United States Navy and is currently stationed in Maryland. Lieutenant Commander Morgan is transgender.

14.     Plaintiff **Sergeant First Class Cathrine Schmid** is a 40-year-old woman who resides in Baltimore, Maryland. She has served in the United States Army for more than 20 years

1  and is currently stationed at Fort George G. Meade in Maryland. Sergeant First Class Schmid is
2  transgender.

3      15.    Plaintiff **Sergeant First Class Jane Doe** is a 37-year-old woman who resides in
4  Olympia, Washington. She has served in the United States Army for over 17 years and is currently
5  stationed at Joint Base Lewis-McChord (JBLM) in the State of Washington.  Sergeant First Class
6  Doe is transgender.

7      16.    Plaintiff **Sergeant First Class Sierra Moran** is a 31-year-old woman who resides
8  in Tacoma, Washington. She has served in the U.S. Army for almost 10 years and is currently
9  stationed at Joint Base Lewis-McChord in the State of Washington. Sergeant First Class Moran is
10  transgender.

11      17.    Plaintiff **Staff Sergeant Videl Leins** is a 34-year-old woman who resides in Las
12  Vegas, Nevada. She has served in the United States Air Force for 16 years. Staff Sergeant Leins
13  is transgender.

14      18.    Plaintiff **Mr. Matthew Medina** is a 23-year-old man who resides in New Jersey.
15  He wishes to serve in the military. Mr. Medina is transgender.

16      19.    Commander Shilling, Commander Dremann, Lieutenant Commander Morgan,
17  Sergeant First Class Schmid, Sergeant First Class Doe, Staff Sergeant Leins, and Mr. Medina are
18  referred to collectively as the "Individual Plaintiffs."

19      20.    Plaintiff **Gender Justice League** is a Washington State-based gender and sexuality
20  civil and human rights organization. Gender Justice League's principal place of business is in
21  Seattle, Washington. Gender Justice League brings its claims on behalf of its members. Gender
22  Justice League is referred to as the "Organizational Plaintiff."  Multiple Individual Plaintiffs are
23  members of Gender Justice League.

24  **Defendants**

25      21.    Defendant **Donald J. Trump** is the President of the United States of America and
26  Commander in Chief of the U.S. military. On January 27, 2025, President Trump signed and issued

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
CASE NO. 2:25-CV-241 - 4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

1  the 2025 Military Ban.  He is responsible for the actions and decisions that Plaintiffs challenge in

2  this action.  He is sued in his official capacity.

3       22.     Defendant **United States of America** encompasses all federal agencies and

4  departments, including the United States Department of Defense and United States Department of

5  Homeland Security, that are responsible for implementing the 2025 Military Ban.

6       23.     Defendant **Peter Hegseth** is the Secretary of the United States Department of

7  Defense. Secretary Hegseth is responsible for all aspects of the operation and management of the

8  Department of Defense, including the implementation of the 2025 Military Ban.  He is sued in his

9  official capacity.

10      24.     Defendant **United States Department of Defense** is a cabinet-level department of

11 the United States federal government. The Department of Defense is composed of the office of the

12 Secretary of Defense; the Joint Chiefs of Staff; the Joint Staff; America's Defense Agencies; the

13 Department of Defense Field Activities; the Departments of the Army, Navy, and Air Force; the

14 unified and specified combatant commands, such other offices, agencies, activities, and commands

15 as may be established or designated by law or by the President; and all offices, agencies, activities,

16 and commands under any of their control or supervision. Under the direction of Secretary Hegseth,

17 the Department of Defense is responsible for administration and enforcement of the 2025 Military

18 Ban.

19      25.     Defendant **Daniel P. Driscoll** is the Secretary of the United States Department of

20 the Army. He is the leader of Department of the Army and is responsible for its administration and

21 operation.  He is sued in his official capacity.

22      26.     Defendant **Department of the Army** is one of three military departments of the

23 Department of Defense and is responsible for the administration and operation of the United States

24 Army.

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

27.    Defendant **Terence Emmert** is the Acting Secretary of the United States Department of the Navy. He is the leader of Department of the Navy and is responsible for its administration and operation.  He is sued in his official capacity.

28.    Defendant **Department of the Navy** is one of three military departments of the Department of Defense and is responsible for the administration and operation of the United States Navy and the United States Marine Corps.

29.    Defendant **Gary Ashworth** is the Acting Secretary of the Air Force. He is the leader of Department of the Air Force and is responsible for its administration and operation.  He is sued in his official capacity.

30.    Defendant **Department of the Air Force** is one of three military departments of the Department of Defense and is responsible for the administration and operation of the United States Air Force and the United States Space Force.

31.    Defendants Defense Secretary Hegseth, Department of Defense, Secretary of the Army Driscoll, Department of the Army, Acting Secretary of the Navy Emmert, Department of the Navy, Acting Secretary of the Air Force Ashworth, and Department of the Air Force are referred to collectively as the "Agency Defendants."

## JURISDICTION AND VENUE

32.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the laws of the United States and the United States Constitution; 28 U.S.C. § 1346, as a civil action against the United States founded upon the Constitution, an Act of Congress, or an executive regulation; and 28 U.S.C. § 1361, as an action to compel an officer or employee of the United States or an agency to perform a duty owed to a plaintiff..

33.    Venue is proper in the Western District of Washington under 28 U.S.C. §§ 1391(b)(2) and 1391(e) because each defendant is an agency of the United States or an officer of the United States sued in their official capacity, Defendants Department of the Army and Department of the Air Force and Plaintiff Jane Doe reside at Joint Base Lewis–McChord in Pierce

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

County within this District, Plaintiff Gender Justice League resides in King County within this District, and a substantial part of the events or omissions giving rise to this action occurred and continue to occur in this District because Defendants Department of the Army and Department of the Air Force and Plaintiff Jane Doe reside in this District and Defendants Department of the Army and Department of the Air Force are among the federal agencies that have been instructed to implement, administer, and enforce the 2025 Military Ban.

34.    An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a), and this Court may grant declaratory, injunctive, and other relief pursuant to 28 U.S.C. §§ 2201–2202 and Rules 57 and 65 of the Federal Rules of Civil Procedure.

35.    This Court has personal jurisdiction over each of the Defendants because their enforcement of the 2025 Military Ban occurs within Washington.

## FACTUAL ALLEGATIONS

**Background Information Regarding Transgender People**

36.    Gender identity is a person's fundamental, internal sense of belonging to a particular gender. It is a core characteristic of human identity that everyone possesses. Gender identity is innate and has a biological basis.

37.    Although most people have a gender identity that matches their sex assigned at birth, this is not the case for transgender people, who are defined as transgender because their gender identity is incongruent with the sex they were assigned at birth. Transgender people have existed throughout human history, although understanding of transgender people has grown in modern times.

38.    A person's sex is generally designated at birth based on external genitalia. But other sex-related characteristics can include chromosomes, hormone levels, internal reproductive organs, and also gender identity.

39.    When someone's sex-related characteristics are not in typical alignment with each other, gender identity is the critical determinant of sex.

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
CASE NO. 2:25-CV-241 - 7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

40.     Attempts to change an individual's gender identity to bring it into alignment with the sex that the individual was assigned at birth are ineffective and potentially harmful.

41.     For transgender people, the incongruence between their gender identity and sex assigned at birth can cause clinically significant distress, which is known as gender dysphoria.

42.     According to the American Psychiatric Association's *Diagnostic & Statistical Manual of Mental Disorders, Fifth Edition, Text Revision*, "gender dysphoria" is the diagnostic term for the condition experienced by some transgender people of clinically significant distress resulting from the lack of congruence between their gender identity and the sex assigned to them at birth.

43.     Gender dysphoria can be treated in accordance with widely recognized, well-established, and evidence-based clinical practice guidelines. Treatment for gender dysphoria aims to resolve the distress associated with the incongruence between a transgender person's assigned sex at birth and their gender identity.

44.     The health and wellbeing of all people, including those who are transgender, depends on their ability to live in a manner consistent with their gender identity. As such, living in a manner consistent with one's gender identity is a key aspect of treatment for gender dysphoria.

45.     The process by which transgender people come to live in a manner consistent with their gender identity, rather than the sex they were assigned at birth, is known as transition.

46.     The steps that transgender people take to transition are not identical for every individual, but they generally include social, legal, and medical transition.

47.     Social transition entails the adoption of a gender role matching one's gender identity. This can include using a new name, pronouns that correspond to a person's gender identity, and adopting dress or grooming styles that more authentically reflect a person's gender.

48.     Legal transition involves steps to conform one's legal identity to one's gender identity, such as legally changing one's name and updating the name and gender marker on one's driver's license and birth certificate.

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
CASE NO. 2:25-CV-241 - 8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

49.    Medical transition includes treatment that brings one's body into alignment with one's gender identity, such as hormone therapy. Whether any particular treatment is medically necessary or even appropriate, however, depends on the needs of the individual.

50.    These various components associated with transition—social, legal, and medical transition—do not change an individual's gender but instead bring the individual's social presentation, legal identity, and physical appearance into greater typical alignment with their gender.

**The Individual Plaintiffs' Military Service**

**Commander Emily "Hawking" Shilling**

51.    Commander Shilling has served in the Navy for over 19 years. She commissioned as an officer in November 2005.

52.    Commander Shilling has served as a combat aviator. She was deployed to Afghanistan and Iraq on board an aircraft carrier, from which she conducted 60 combat missions, leading to the award of three Air Medals for her meritorious service. During this time, she was also awarded the Daedalian Award for Superior Airmanship During an Emergency in which, through her calm execution and superior flying skills, she saved both her aircraft and its four crew members from imminent ejection and destruction over the Pacific Ocean. Commander Shilling has earned one meritorious Service Medal, two Navy Commendations and three United States Navy and United States Marine Corps Achievement Medals.

53.    Commander Shilling then served as a United States Navy Test Pilot, where she conducted high-risk flight tests to advance aviation technology and improve aircraft capabilities.

54.    Commander Shilling currently serves as an Aerospace Engineering Duty Officer, charged with leading large Naval acquisition programs. Her work directly impacts the future of naval aviation, ensuring that the fleet remains operationally effective, technologically advanced, and mission-ready,

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

55. The Navy has invested over 20 million dollars in Commander Shilling's training and flight experience.

56. Commander Shilling is transgender. She was assigned the sex of male at birth, but her gender identity is female.

57. Commander Shilling began to come to terms with her gender approximately six years ago in 2019 and began living openly as female outside of work at that time.

58. In 2021, once military policy allowed, Commander Shilling transitioned socially and medically within the military.

59. Commander Shilling has taken legal steps to transition. She legally changed her first name to Emily. She also changed her name and gender marker to female on her driver's license, birth certificate, social security card and records, and passport.

60. The military updated Commander Shilling's gender marker in the Defense Enrollment Eligibility Reporting System ("DEERS") in Fall 2021.

61. In consultation with healthcare professionals, Commander Shilling has taken clinically appropriate steps to transition.

62. In Spring 2023, Commander Shilling regained her flight clearance post-transition to fly high-performance jets. The Naval Aerospace Medical Institute, after extensive evaluations, determined there was no medical reason to deny her flight clearance.

63. Commander Shilling has engaged in speech and conduct disclosing her transgender status and expressing her gender identity, including within the Navy, and wants to continue to be able to do so without fear of retaliation or discharge.

64. Being able to serve openly as a transgender person has made Commander Shilling an even more productive, healthy member of her command. Being able to lead with authenticity and integrity has only strengthened her relationships with fellow service members.

65. Since the 2025 Military Ban was issued, Commander Shilling has felt deeply unsettled, betrayed, and fearful for her future in the military and her bodily autonomy. After

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Lambda Legal Defense and
Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

Human Rights
Campaign Foundation
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

1  dedicating her entire adult life to the Navy, her ability to continue serving is now in jeopardy solely

2  because of her identity as a transgender woman.

3  Commander Shilling and her partner have built their lives around military service, and they have

4  three children who depend on her continued employment. If she is forcibly discharged, her

5  family will face immediate financial and personal instability, as well as the loss of essential

6  benefits like health care, housing allowances, and retirement security.

7  **Commander Blake Dremann**

8  66.    Commander Blake Dremann has served in the Navy for over 19 years. Commander

9  Dremann currently serves on the USS Frank Cable in Guam as a supply officer. As part of his

10  duties, he supervises 40 sailors and five junior officers working to repair submarines for forward

11  deployment. Prior to his current assignment, he served as a supply officer at the aviation

12  maintenance depot in North Carolina, and numerous other assignments, including service on a

13  submarine from 2011 to 2015.

14  67.    Commander Dremann has received two Defense Meritorious Service Medals, two

15  Meritorious Service Medals, a Joint Service Commendation Medal, a Navy and Marine Corps

16  Commendation Medal, a Joint Service Achievement Medal and four Navy and Marine Corps

17  Achievement Medals.

18  68.    In 2015, Commander Dremann was awarded the Vice Admiral Robert F.

19  Batchelder Award, the Navy League's award to junior officers who gave significant contributions

20  to the operational readiness of the fleet.

21  69.    Commander Dremann is preparing for his 12th career deployment.

22  70.    Commander Dremann is transgender. He was assigned the sex of female at birth,

23  but his gender identity is male.

24  71.    Commander Dremann has changed his legal name and other identity documents

25  and gender marker in DEERS. Mr. Dremann was the first person in the Navy to amend their gender

26  in DEERS.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

72.    Commander Dremann has engaged in speech and conduct disclosing his transgender status and his gender identity, including by coming out to his chain of command and fellow service members, taking steps to transition, and living openly as male, and wants to continue to be able to do so without fear of retaliation or discharge.

73.    While being able to live openly has made him a better person, sustained and superior performance and merit is why he continues to serve in the United States Navy.

74.    Since the 2025 Military Ban was issued, Commander Dremann has been deeply concerned about his future in the U.S. Navy and he is worried about his retirement eligibility, being pulled from going on deployment, and leaving his department with a hole in it.

**Lieutenant Commander Geirid Morgan**

75.    Lieutenant Commander Morgan has served in the U.S. Navy for 14 years. She initially served as an enlisted service member from 1998 to 2002, and after earning her Ph.D. from the University of Utah, she commissioned as an Officer and reentered active service in 2015.

76.    Lieutenant Commander Morgan's initial occupational specialty was as an enlisted Navy diver where she supported mission critical security operations following the September 11, 2001 attacks.

77.    Lieutenant Commander Morgan currently works as a Program Officer with the Office of Naval Research where she manages a science and technology funding portfolio that invests in fundamental and applied human physiology research efforts to fill current and projected operational capability gaps in the U.S. Navy and the United States Marine Corps.

78.    Lieutenant Commander Morgan is transgender. She was assigned the sex of male at birth, but her gender identity is female.

79.    Lieutenant Commander Morgan has changed her legal name and gender and other identity documents and has changed her name and gender marker in DEERS.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

80.     Being able to serve openly as who she is has made Lieutenant Commander Morgan a stronger asset to the military. She is able to forge stronger relationships through increased trust, which has led to two of her most productive years as a working professional in the military.

81.     Since the 2025 Military Ban was issued, Lieutenant Commander Morgan has felt deeply devalued and attacked by the 2025 Military Ban. The language in the 2025 Military Ban Executive Order is particularly difficult for Lieutenant Commander Morgan to absorb given its dehumanizing and genuine antipathy towards who she is, and its contempt for her military service and complete disregard for her family's well-being as military dependents.

82.     Involuntary separation from the Navy would cause Lieutenant Commander Morgan measurable and immediate harm by upending her retirement and long-term economic prospects and eliminating the substantial personal investment she has made in her military-specific professional development, one that does not translate into civilian life. It would also cause great harm to her family, who relies on her health care coverage to provide care for Lieutenant Commander Morgan's son, who suffers from a complex metabolic disease that requires treatment.

**Plaintiff Sergeant First Class Cathrine "Katie" Schmid**

83.     Plaintiff Sergeant First Class Cathrine "Katie" Schmid is a 40-year-old woman who resides in Baltimore, Maryland. She has served in the United States Army for more than 20 years and is currently stationed at Fort George G. Meade in Maryland.

84.     Sergeant First Class Schmid was born at K.I. Sawyer Air Force Base in Michigan, and was raised in Portland, Oregon. She has always been a patriotic American with a desire to serve others and was drawn to opportunities presented by serving in the Army. She is proud to put on her uniform each day and serve her country.

85.     Sergeant First Class Schmid holds the military occupational specialty of Signals Intelligence Analyst within the Army and currently performs duties as a Brigade Equal Opportunity Advisor. She has previously performed duties as a Multi-Domain Intelligence Non-Commissioned Officer in Charge, Senior Technical Intelligence Sergeant, Platoon Sergeant,

Signals Intelligence Sergeant, Squad Leader, Multifunction Team Leader, Brigade Land and Ammunition NCO, Brigade Current Operations NCO, Signals Intelligence Analyst, All-Source Analysis System Master Analyst, Human Intelligence Collector, and Counterintelligence Agent. She joined the Army in 2005.

86.     Sergeant First Class Schmid is transgender. She was assigned the sex of male at birth but has a female gender identity. She knew from a young age in life that she was female.

87.     Sergeant First Class Schmid began to come to terms with her gender identity approximately eleven years ago. At that time, she started to see a mental health professional who diagnosed her with gender dysphoria.

88.     Sergeant First Class Schmid began living openly as a woman in 2014.

89.     In consultation with health care professionals, Sergeant First Class Schmid has taken clinically appropriate steps to transition.

90.     Sergeant First Class Schmid has taken legal steps to transition. She legally changed her first name to Cathrine. She also changed her name and changed her gender marker to female on her driver's license, passport, and social security records.

91.     Sergeant First Class Schmid has worked with her chain of command throughout her transition, and both they and other enlisted personnel have been supportive of her throughout that process. Her gender marker in DEERS reflects that she is female.

92.     Sergeant First Class Schmid is recognized and treated as female in all aspects of military life, including in social interactions and in her compliance with women's grooming, facilities use, and physical training requirements.

93.     The fact that Sergeant First Class Schmid is transgender has not prevented her from doing her job in the military, nor has it prevented others from doing their jobs in the military. Sergeant First Class Schmid performs valuable services for the Army, and her performance of those duties strengthen our nation's military readiness.

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
CASE NO. 2:25-CV-241 - 14

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Lambda Legal Defense and
Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

Human Rights
Campaign Foundation
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

94.     Sergeant First Class Schmid has received numerous awards and decorations for her service and has been promoted since coming out as transgender to her chain of command.

95.     Being able to serve openly as a transgender woman has made Sergeant First Class Schmid a stronger asset for the military. She is able to function as a productive, healthy member of the military, and she is able to forge stronger relationships with others in her unit.

96.     Sergeant First Class Schmid has engaged in speech and conduct disclosing her transgender status and expressing her gender identity, including within the Army, by coming out to her chain of command and her fellow service members, taking steps to transition, and living openly as a woman in military life. She wants to continue to be able to engage in speech and conduct disclosing her transgender status and expressing her gender identity.

97.     The 2025 Military Ban has caused Sergeant First Class Schmid great fear and anxiety, as it risks her ability to fulfill her remaining service requirements, her continued employment in the Army, and her retirement benefits. Her intent and desire are to finish her current term of service in 2026 and then to apply for another position in her unit before retiring.

98.     Sergeant First Class Schmid also relies on her employment with the military to provide continuity of critical health care to her disabled wife.

99.     In addition to her concerns about loss of employment and benefits, the 2025 Military Ban also causes Sergeant First Class Schmid distress because it tells her fellow soldiers— for whom she would lay down her life—that her very existence is a threat to them.

**Plaintiff Sergeant First Class Jane Doe**

100.    Plaintiff Sergeant First Class Jane Doe is 37 years old. She is actively serving in the United States Army and has served for over 17 years.

101.    Sergeant First Class Doe has worked as a satellite communications operator and maintainer for more than ten years. She was deployed to Iraq for most of 2009 and then again to Iraq in 2011, and she also served nine months in Kuwait.

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
CASE NO. 2:25-CV-241 - 15

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Lambda Legal Defense and
Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

Human Rights
Campaign Foundation
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

1      102.    Sergeant First Class Doe has received numerous awards and decorations for her

2  service in the Army.

3      103.    Sergeant First Class Doe is transgender. She was assigned male at birth, but her

4  gender identity is female.

5      104.    Since coming out as transgender, Sergeant First Class Doe has been selected for

6  positions of increased responsibility and trust, completed a nine-month assignment to Kuwait,

7  and was promoted into senior leadership. She is currently preparing for two international

8  missions this year in key leadership positions.

9      105.    Sergeant First Class Doe came out about her gender identity in 2021 and has lived

10  as female since then. She has updated her gender marker in DEERS, on her passport, and on her

11  state identification.

12      106.    In consultation with health care professionals, Sergeant First Class Doe has taken

13  clinically appropriate steps to transition.

14      107.    Sergeant First Class Doe and her family recently relocated to a location with a

15  higher cost of living for her military job. Her military job provides the majority of the income

16  and health benefits for her family, which includes her wife and child. She plans to pass her GI

17  Bill education benefits to her child and has planned on receiving retirement benefits from the

18  military. The 2025 Military Ban has caused Sergeant First Class Doe to fear for her and her

19  family's future and safety.

20      108.    Sergeant First Class Doe wishes to continue her service. If she is forced to leave

21  military service before reaching 20 years of service, she risks losing the retirement benefits and

22  GI bill benefits that she has worked to establish over the past 17 years.

23

24

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

1    **Plaintiff Sergeant First Class Sierra Moran**

2    109.    Sergeant First Class Sierra Moran is 31 years old. She is actively serving in the

3    United States Army and has served almost 10 years.

4    110.    Sergeant First Class Moran helps lead the planning and operations for her battalion.

5    She organizes training and helps plan overseas deployments.

6    111.    Sergeant Moran holds a top-secret clearance.

7    112.    Prior to her current role, Sergeant First Class Moran was deployed to Korea where

8    she monitored networks for the Korean peninsula for all military operations. Sergeant First Class

9    Moran has received three U.S. Army commendations medals, and two U.S. Army achievement

10    medals, one earned while on an air defense artillery mission in Korea in 2017.

11    113.    Sergeant First Class Moran is transgender. She was assigned the sex of male at birth

12    but has a female gender identity.

13    114.    Sergeant First Class Moran began coming to terms with her gender identity in 2019.

14    115.    Sergeant First Class Moran obtained a legal name change and began medical care

15    in 2021.

16    116.    Sergeant First Class Moran wishes to continue her service. If she is forced to leave

17    the military due to the Ban, she would be deprived of being able to serve her country openly and

18    honestly, and it difficult to provide for her family. She would lose a sense of purpose.

19    **Plaintiff Staff Sergeant Videl Leins**

20    117.    Plaintiff Staff Sergeant Leins is 34-years-old. She is actively serving in the United

21    States Air Force and has served for 16 years.

22    118.    Staff Sergeant Leins works on various electrical systems including high voltage

23    power plants, interior wiring, fire alarms, and airfield lighting.

24    119.    Staff Sergeant Leins joined the military to develop her career and gravitated

25    towards the Air Force to follow in her grandfather's footsteps.

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

120.    Staff Sergeant Leins has been deployed overseas five times—she volunteered for her first deployment to Iraq, served back-to-back deployments in Kuwait, and was deployed to Korea twice. She is currently stationed at Nellis Air Force Base in Las Vegas, Nevada.

121.    Staff Sergeant Leins is transgender. She was assigned the sex of male at birth but has a female gender identity.

122.    Staff Sergeant Leins began coming to terms with her gender identity in 2016. She began living openly as a woman in 2022.

123.    In consultation with healthcare professionals, Staff Sergeant Leins has taken clinically appropriate steps to transition.

124.    Staff Sergeant Leins has taken legal steps to transition. She has changed her name and gender marker on her driver's license. She has amended her birth certificate.

125.    The 2025 Military Ban has left Staff Sergeant Leins uncertain about her future, which has taken a toll on her mental and emotional wellbeing. It has created a sense of distance and unease.

126.    Staff Sergeant Leins relies on her military-provided healthcare to provide services to her child. The 2025 Military Ban not only threatens her military career but also her family's well-being.

**Plaintiff Matthew Medina**

127.    Plaintiff Mr. Matthew Medina is a 23-year-old man who was born in California and currently resides in New Jersey.

128.    Mr. Medina was raised under difficult circumstances, and he hopes to rise above the adverse circumstances he experienced as a youth to deliver his family from generational poverty and to find role models and support in the brotherhood of the Marines. He has been preparing to join the military for the past year, including by consulting with a recruiter, completing his application documents, and working to meet tattoo removal and physical fitness requirements.

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Lambda Legal Defense and
Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

Human Rights
Campaign Foundation
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

1  Mr. Medina chose the Marines because the Marines consider themselves the best and brightest,

2  and he wants to be counted among their ranks.

3      129.    Mr. Medina was raised in a single parent household and had hoped to enlist in order

4  to help support his mother and his 12-year-old sister, and invest in his future family. Without the

5  military's assistance, Mr. Medina will be unable to afford the higher education he was planning to

6  pursue, which upends his career goals and his future earning potential. Mr. Medina feels that

7  transgender people should be able to serve their country and avail themselves of the opportunities

8  provided by the military to create a foundation for themselves and their families.

9      130.    Mr. Medina is transgender. He was assigned the sex of female at birth, but his

10 gender identity is male.

11     131.    Mr. Medina has known since he was young that he is a male.

12     132.    Mr. Medina has taken clinically appropriate steps as part of his medical transition,

13 has changed the gender marker on his identity documents, and lives in all ways as a man.

14     133.    Mr. Medina believes that the 2025 Military Ban seeks to erase his identity and

15 declare his identity as something dishonorable. This has caused him to feel discomfort and pain,

16 akin to being bullied, as the 2025 Military Ban denies him the right to be treated with dignity and

17 respect as he serves his country.

18 **The Organizational Plaintiff: Gender Justice League**

19     134.    Founded in 2012, Gender Justice League is a civil and human rights membership

20 organization that, as relevant here, advocates on behalf of transgender individuals in the State of

21 Washington and across the country. It has offices in Seattle, Washington and Alexandria, Virginia.

22 It seeks to create a community for transgender people and to empower them to combat the

23 structural oppression, discrimination, and violence they face in their daily lives.

24     135.    Gender Justice League sues on behalf of its members, including multiple Individual

25 Plaintiffs, and other prospective and current transgender service members who are currently

26 adversely affected by the 2025 Military Ban.

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
CASE NO. 2:25-CV-241 - 19

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

**Prior Military Service by Transgender Individuals**

136.    There are thousands of transgender service members in the United States Armed Forces.

137.    Though there has never been a federal statute excluding transgender people from military service, prior to 2016, the military appears to have had a practice of excluding transgender people from service based on Department of Defense and service-specific rules and regulations.

138.    This earlier military exclusionary policy was based on an inaccurate, historical, pathological view that regarded transgender people as deviants. This view was discredited long ago following psychological and medical advances in the understanding of gender identity and of transgender people.

139.    Despite this earlier practice of exclusion, transgender people have always served in the military.

140.    As noted by former Secretary of Defense Ash Carter ("Secretary Carter"), transgender people "often had to serve in silence alongside their fellow comrades in arms."

141.    Transgender people have played essential, mission-critical roles in the military, even when they have not had the ability to serve openly.

142.    According to a study conducted by the Williams Institute at the University of California, Los Angeles, an estimated 134,300 transgender people are veterans or are retired from guard or reserve service.

143.    It is a statistical certainty that transgender people have sacrificed their lives during military service to the United States.

**After Study and Deliberation, the Military Explicitly Permits Transgender People to Serve**

144.    The military's prior exclusionary policy barring transgender people from serving was the subject of extensive research and study, which concluded that it lacked any valid justification.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

145.    For example, in March 2014, the Transgender Military Service Commission (the "Commission") issued a report analyzing the military's prior exclusionary policy. The Commission, which was co-chaired by a former U.S. Surgeon General, was convened to determine whether the ban was based on medically sound reasons. The Commission found that there was "no compelling medical rationale" for banning military service by transgender people.

146.    In May 2014, then-Secretary of Defense Chuck Hagel publicly stated that he was receptive to reviewing and reassessing the rules that govern service by transgender people. He explained that "[e]very qualified American who wants to serve our country should have an opportunity if they fit the qualifications and can do it."

147.    In July 2015, then-Secretary Carter admitted that Department of Defense regulations regarding transgender service members "[were] outdated and [were] causing uncertainty that distracted commanders from our core missions." He also recognized the many transgender people who were already serving in the military: "We have transgender soldiers, sailors, airmen and Marine—real, patriotic Americans—who I know are being hurt by an outdated, confusing, inconsistent approach that's contrary to our value of service and individual merit."

148.    Accordingly, Secretary Carter announced the creation of a working group to study for six months the policy and readiness implications of permitting transgender individuals to serve openly. This working group was chaired by the Under Secretary of Defense for Personnel and Readiness and comprised senior representatives from each of the military services, the Joint Staff, and relevant components from the Office of the Secretary of Defense.

149.    In addition to creating a working group, Secretary Carter also directed that, effective July 13, 2015, no service member could be involuntarily separated or denied reenlistment or continuation of active or reserve service based on their gender identity without the approval of the Under Secretary of Defense for Personnel and Readiness.

150.    On information and belief, separations of service members on the basis of their gender identity fell sharply after July 2015, and there were very few, if any, service members who

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Lambda Legal Defense and
Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

Human Rights
Campaign Foundation
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

1    were separated on that basis from July 2015 to June 2016. In effect, transgender people served

2    without issue in the military from July 2015 to June 2016, as well as likely before that period,

3    albeit under the threat of separation.

4        151.    In or around July 2015, Secretary Carter also directed the commencement of a study

5    to evaluate the implications of allowing transgender people to serve openly in the military. The

6    Department of Defense commissioned the RAND Corporation, a non-profit, non-partisan research

7    organization, to conduct the study. The Department asked RAND to (1) identify the health care

8    needs of the transgender population and the costs associated with providing transition-related care

9    to transgender service members, (2) assess the readiness implications of allowing transgender

10   service members to serve openly, and (3) review the experiences of foreign militaries that permit

11   transgender individuals to serve openly. The findings from the study, which reflected the

12   culmination of months of research and spanned 91 pages, were publicly released in May 2016.

13       152.    As detailed further below, the RAND study demonstrated that the cost of providing

14   transition-related care is exceedingly small relative to the Department of Defense's overall health

15   care expenditures, that there are no readiness implications that prevent transgender members from

16   serving openly, and that foreign militaries have successfully permitted open service without a

17   negative effect on effectiveness, readiness, or unit cohesion.

18       153.    The leadership of the Armed Services—including the Joint Chiefs of Staff, the

19   Service Secretaries, and Secretary Carter—together with personnel, training, readiness, and

20   medical specialists from across the Department of Defense, studied the available data, including

21   the findings and analysis from RAND. They also received input from transgender service

22   members, from outside expert groups, and from medical professionals outside the Department of

23   Defense. They looked carefully at what lessons could be learned from outside the U.S. military,

24   including from allied militaries that permit transgender people to serve openly, as well as from the

25   private sector.

26

154.    As a result of this deliberative process and year-long study, on June 30, 2016, Secretary Carter announced that the military was ending the ban on open service by transgender people. The conclusion was supported by, among other things, the need to recruit and retain the individuals most highly qualified to serve. Effective immediately, transgender service members were permitted to serve openly and could no longer be discharged or otherwise separated from the military solely for being transgender. Department of Defense materials explained that "[t]his policy change was crafted through a comprehensive and inclusive process that included the leadership of the Armed Services, medical and personnel experts across the Department, transgender Service members, outside medical experts, advocacy groups, and the RAND Corporation."

155.    In the accompanying directive-type memorandum regarding the policy change, Secretary Carter explained that the policies and procedures permitting open service were premised on the conclusion that "open service by transgender Service members . . . is consistent with military readiness and with strength through diversity."

156.    The policy change was announced through a press conference held by Secretary Carter as well as through a section of the Department of Defense website titled "Department of Defense Transgender Policy." That website lists the highlights of the policy change, links to various Department of Defense resources related to the policy change, and includes a video that assures transgender individuals:  "Transgender Members Can Now Serve Openly."

157.    The Department of Defense planned a 12-month implementation process that would proceed in stages, beginning with the needs of current service members and their commanders, followed by training for the entire force, and concluding with the accession of transgender recruits.

158.    On September 30, 2016, within 90 days after the lifting of the ban, the Department of Defense issued a training handbook for commanders, transgender service members, and the force, titled "Transgender Service in the U.S. Military: An Implementation Handbook." The 71-

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

1   page handbook was designed to help transgender service members in their transition, help

2   commanders with their duties and responsibilities, and help all service members understand the

3   new policies allowing open service by transgender service members. The handbook illustrates that

4   open service has been workable and practicable.

5        159.    Also, within 90 days of the lifting of the prior ban, the Department of Defense

6   issued medical guidance for providing transition-related care to transgender service members, who

7   were also able to begin the process to officially change their gender marker in the military's

8   personnel management systems.

9        160.    Over the next nine months following the lifting of the ban (i.e., from October 2016

10  to June 2017), the services conducted training of the force based on detailed guidance and training

11  materials regarding the policy change.

12  **The 2017 Ban on Transgender Military Service Members**

13       161.    Through a series of three tweets on July 26, 2017, President Trump unilaterally

14  reversed the U.S. military's policy of permitting open service by transgender individuals and

15  dismantled the years of work that led to the development and implementation of that policy.

16       162.    The "process" that led to the "2017 Ban"—to the extent there was any meaningful

17  process at all—was the antithesis of the deliberative, comprehensive, and inclusive process that

18  led to the rescission of the prior ban.

19       163.    President Trump's unilateral decision to bar transgender individuals from the

20  military was met with widespread opposition and condemnation. Attorneys general from 17 states

21  and the District of Columbia joined a letter denouncing the President's exclusion of transgender

22  individuals from the military as "blatant discrimination" that violates "fundamental constitutional

23  and American values." The states included California, Connecticut, Delaware, Illinois, Iowa,

24  Maine, Maryland, Massachusetts, Minnesota, New Mexico, New York, Oregon, Pennsylvania,

25  Rhode Island, Vermont, Virginia and Washington.

26

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
CASE NO. 2:25-CV-241 - 24

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

164.    Fifty-six retired generals and admirals issued a public statement on August 1, 2017, warning that the proposed ban on transgender service members would downgrade military readiness. The statement noted that two four-star generals and former chairmen of the Joint Chiefs of Staff—Army General Martin Dempsey and Navy Admiral Mike Mullen—have publicly supported open service by transgender individuals.

165.    In response to the 2017 Ban, a lawsuit, *Karnoski v. Trump*, was filed in the Western District of Washington alleging that the 2017 Ban was unconstitutional, which led to a nationwide preliminary injunction in 2017. After entry of the preliminary injunction, the military altered its policy in significant respects. The injunction was subsequently stayed by the U.S. Supreme Court while the government appealed the decision to the United States Court of Appeals for the Ninth Circuit. The appeals court issued a ruling holding that heightened scrutiny must apply to classifications singling out transgender people for discrimination, including within the military context. The appeals court sent the case back to the district court to apply heightened scrutiny and consider whether the court's preliminary injunction should continue in light of the military's changes to its policies relating to the 2017 Ban. The appeals court emphasized that although the military is entitled to deference, such deference "does not mean abdication," and defendants bear the burden of establishing that they reasonably determined the policy significantly furthers the government's important interests, which "is not a trivial burden."

166.    Similar challenges were filed in *Doe v. Trump*, a lawsuit filed in the District of Columbia, *Stockman v. Trump*, filed in the Central District of California, and *Stone v. Trump*, filed in the District of Maryland. Each of these challenges also led to preliminary injunctive relief against the 2017 Ban.

**President Biden Enables All Qualified Americans to Serve Their Country in Uniform, Rescinds the 2017 Ban, and Opens Up the Armed Forces to More Soldiers**

167.    On January 25, 2021, after carefully considering the conclusions made by the Secretary of Defense in 2016 as well as the public testimony of then-serving Chiefs of Staff of the

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

Army, Naval Operations, Commandant of the United States Marine Corps, and Chief of Staff of the Air Force in 2018 that transgender service did not create any issues with regard to unit cohesion or morale, President Joseph R. Biden issued Executive Order No. 14004, *Enabling All Qualified Americans to Serve Their Country in Uniform*, directing the Secretary of Defense and Secretary of Homeland Security to ensure that transgender service members could serve free from discrimination.[3]

168.    Under Executive Order 14004, transgender service members were held to the exact same rigorous standards as every other service member. They were no longer arbitrarily barred from service because they are transgender.

169.    The Chiefs of Staff to each military branch have testified that there have been no negative effects on readiness due to transgender individuals serving in the U.S. military. Additionally, data obtained by the Pentagon has shown that the cost of providing medical care to transgender troops has been miniscule.

170.    The American Medical Association, American Psychological Association, and American Psychiatric Association all oppose the banning of transgender people from the military, agreeing that there is no medical reason transgender troops should be barred from serving.

171.    Executive Order No. 14004 thus furthered the goals of the U.S. military. It opened up the military ranks to additional individuals who met the readiness qualifications to serve in the armed forces.

**The 2025 Ban on Transgender Military Service Members**

172.    On August 8, 2023, President Trump announced that he would "restore the Trump ban on transgender [sic] in the military," adding, "we had it banned, we had it banned." He then impersonated a General asking, "what do you think of transgender?" and responding "Uh, I don't like it, sir."

---

[3] Exec. Order No. 14004, *Enabling All Qualified Americans to Serve Their Country in Uniform*, 86 Fed. Reg. 7,471 (Jan. 28, 2021), https://www.govinfo.gov/content/pkg/FR-2021-01-28/pdf/2021-02034.pdf.

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
CASE NO. 2:25-CV-241 - 26

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Lambda Legal Defense and
Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

Human Rights
Campaign Foundation
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

173.    On December 22, 2024, then-President-Elect Trump declared that "I will sign Executive Orders to . . . get transgender [sic] out of the military and out of our elementary schools and middle schools and high schools."

174.    On January 27, 2025, barely one week into office, President Trump upended the lives of thousands of transgender service members by issuing the 2025 Military Ban. The executive order rescinds President Biden's Executive Order No. 14004 and bans transgender people from military service, stating that transgender status is incompatible with military service and directing the Secretary of Defense to update the standards for retention and accession to reflect this policy.

175.    The 2025 Military Ban expresses a demeaning and disparaging viewpoint about transgender people throughout. The Executive Order asserts that having a gender identity that is inconsistent with one's sex assigned at birth "conflicts with a soldier's commitment to an honorable, truthful, and disciplined lifestyle, even in one's personal life. A man's assertion that he is a woman, and his requirement that others honor this falsehood is not consistent with the humility and selflessness required of a service member." 2025 Military Ban § 1.

176.    The 2025 Military Ban directs the Secretary of Defense to "update DoDI 6130.03 Volume 1 (Medical Standards for Military Service: Appointment, Enlistment, or Induction (May 6, 2018) Incorporating Change 5 of May 28, 2024) and DoDI 6130.03 Volume 2 (Medical Standards for Military Service: Retention (September 4, 2020), Incorporating Change 1 of June 6, 2022) to reflect the purpose and policy of this Order" within 60 days. 2025 Military Ban § 4(a).

177.    The 2025 Military Ban has immediate effect, ordering that "the Armed Forces shall neither allow males to use or share sleeping, changing, or bathing facilities designated for females, nor allow females to use or share sleeping, changing, or bathing facilities designated for males." 2025 Military Ban § 4(d).

178.    The 2025 Military Ban incorporates the definitions from the Gender Identity Executive Order, stating that they "shall apply" to the 2025 Military Ban. 2025 Military Ban § 3.

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Lambda Legal Defense and
Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

Human Rights
Campaign Foundation
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

179.    These definitions express a disparaging, demeaning, idiosyncratic, and unscientific viewpoint about transgender people and gender identity. Together, the definitions deny the existence of gender identities that differ from a person's sex assigned at birth and deny the existence of people who are transgender.

180.    Specifically, the Gender Identity Executive Order says that it is the "policy of the United States to recognize two sexes, male and female," which "are not changeable and are grounded in fundamental and incontrovertible reality." Gender Identity Executive Order § 2 ("Policy and Definitions").

181.    The Gender Identity Executive Order further defines "Female" to mean "a person belonging, at conception, to the sex that produces the large reproductive cell," Gender Identity Executive Order § (d); and "Male" to mean "a person belonging, at conception, to the sex that produces the small reproductive cell," *id.* § 2(e).

182.    The Gender Identity Executive Order also adopts the following definition of what it terms "Gender ideology" and "Gender identity":

(f) "Gender ideology" replaces the biological category of sex with an ever-shifting concept of self-assessed gender identity, permitting the false claim that males can identify as and thus become women and vice versa, and requiring all institutions of society to regard this false claim as true. Gender ideology includes the idea that there is a vast spectrum of genders that are disconnected from one's sex. Gender ideology is internally inconsistent, in that it diminishes sex as an identifiable or useful category but nevertheless maintains that it is possible for a person to be born in the wrong sexed body.

(g) "Gender identity" reflects a fully internal and subjective sense of self, disconnected from biological reality and sex and existing on an infinite continuum, that does not provide a meaningful basis for identification and cannot be recognized as a replacement for sex.

Gender Identity Executive Order § 2(f), (g).

183.    The 2025 Military Ban further requires the Secretary of Defense promptly to issue directives preventing the use of pronouns that accord with the gender identities of transgender service members. 2025 Military Ban § 4(b).

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

184.    On February 26, 2025, DoD released further guidance implementing the 2025 Military Ban ("February 26 Guidance"), which restates a complete ban of transgender individuals from military service. February 26 Guidance § 1.

185.    Service members and applicants for military service, including those with admission offers to a military service academy, who have a gender dysphoria diagnosis, a history of having gender dysphoria, a history of attempting to transition, or exhibit symptoms of having gender dysphoria are disqualified for military service. February 26 Guidance §§ 4.1, 4.3.

186.    To make its policy abundantly clear, DoD declared on its X account (@DODResponse) the next day that, "Transgender troops are disqualified from service without an exemption."

187.    The establishment of procedures for identifying servicemembers who are transgender for purposes of separation begins immediately. February 26 Guidance §§ 1(e), 3.4(e), 4.4. Separations commence by March 28, 2025, 30 days from issuance of the February 26 Guidance. *Id.* §§ 1(e) 3.4(f), 4.4(b).

188.    Until the separations are completed, transgender service members must serve in their sex assigned at birth for purposes of use of honorifics and self-identification, military records, uniform and grooming, medical and physical fitness standards, restrooms, and housing. February 26 Guidance §§ 1(h)–(i), 5.

189.    Service members being processed for separation are deemed non-deployable and may be placed on administrative absence status. February 26 Guidance §§ 4.4(a)(3), 6.1.

190.    All surgical procedures for treating gender dysphoria are immediately cancelled and servicemembers who require hormone therapy but have not yet initiated treatment will no longer be provided with such care. February 26 Guidance §§ 1(j), 4.2.

191.    To expedite the purge of transgender service members from the military, DoD seeks to pressure transgender servicemembers into voluntary separation by March 26, 2025 with financial inducements and penalties. February 26 Guidance §§ 4.4(a)(4), (10).

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
CASE NO. 2:25-CV-241 - 29

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

192.    There is no exception for a transgender individual to serve under the 2025 Military Ban as they can only do so by proving that they are not transgender. February 26 Guidance §§ 4.1(c), 4.3(c). Both active-duty service members and accession candidates are required to serve under the "standards associated with the[ir] … [birth] sex." *Id.* §§ 4.1(c), 4.3(c)(3). No service member can serve in the military if they have ever "attempted to transition to any sex other than their sex," *i.e.*, identified with any gender other than their sex assigned at birth. *Id.* § 4.3(c)(2).

193.    DoD has acknowledged as much, stating that retention of transgender service members is "unlikely." *Talbott v. Trump*, 25-cv-00240-ACR (Dkt. No. 66) at 5. And under clarifying guidance issued on February 28, 2025, DoD again encourages transgender service members to voluntarily separate from the military by March 26, 2025. February 28 Clarifying Guidance at 1.

194.    In light of the 2025 Military Ban and related federal policy and directives, transgender service members are now no longer able to serve openly on the same terms as before the order. Any present-day speech or conduct that "openly" discloses a transgender individual's gender identity or transgender status while serving in the military or even in their private lives places them in violation of the 2025 Military Ban, subjecting them to discharge and other "action . . . against [them]."

195.    Defendants are responsible for implementing and enforcing the 2025 Military Ban and related policy and directives.

196.    Banning ready, willing, and able service members does not further the objectives of the United States Armed Forces. The military needs more recruits to maintain readiness and fill its ranks. But the 2025 Military Ban turns them away and forces current decorated service members to hide their identity, quit, or be separated from the military.

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
CASE NO. 2:25-CV-241 - 30

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**EQUAL PROTECTION VIOLATION**

197.    Plaintiffs incorporate paragraphs 1 through 196 as though fully set forth herein.

198.    Plaintiffs Shilling, Dremann, Morgan, and Medina state this claim against Defendants Trump, United States, Hegseth, Department of Defense, Emmert, and United States Department of the Navy.

199.    Plaintiffs Schmid, Moran, and Doe state this claim against Defendants Trump, United States, Hegseth, Department of Defense, Driscoll, and United States Department of the Army.

200.    Plaintiff Leins states this claim against Defendants Trump, United States, Hegseth, Department of Defense, Ashworth, and United States Department of the Air Force.

201.    Plaintiff Gender Justice League states this claim against all Defendants.

202.    Plaintiffs state this cause of action against individual Defendants in exclusively their official capacities for purposes of seeking declaratory and injunctive relief and challenge the 2025 Military Ban and related federal policy and directives both facially and as applied to them or, as to the Gender Justice League, as applied to its members.

203.    The Fifth Amendment to the United States Constitution provides that no person shall be deprived of life, liberty, or property without due process of law. The Due Process Clause of the Fifth Amendment includes within it a prohibition against the denial of equal protection by the federal government, its agencies, or its officials or employees that is commensurate with the Equal Protection Clause of the Fourteenth Amendment.

204.    The Equal Protection Clause of the Fourteenth Amendment, which is incorporated into the Fifth Amendment, protects individuals from discrimination based on sex and transgender status.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

205.   The 2025 Military Ban and Defendants' conduct in implementing, administering, and enforcing the 2025 Military Ban and related official federal policy and directives has resulted in a ban on transgender people serving in the military that discriminates against Individual Plaintiffs and the transgender members of Gender Justice League based on sex and transgender status.

206.   Defendants' disparate treatment of transgender people facially and intentionally discriminates against transgender people based on sex and transgender status in violation of the equal protection guarantee, without even a legitimate justification, let alone the important, exceedingly persuasive, or compelling one required.

207.   The 2025 Military Ban and related federal policy and directives reflect and are based on impermissible animus towards transgender people, which renders them invalid as a whole.

208.   Defendants have violated the equal protection rights of transgender people, including Individual Plaintiffs and members of Gender Justice League, under the Fifth Amendment.

## SECOND CAUSE OF ACTION
## FREE SPEECH VIOLATION

209.   Plaintiffs incorporate paragraphs 1 through 196 as though fully set forth herein.

210.   Plaintiffs Shilling, Dremann, Morgan, and Medina state this claim against Defendants Trump, United States, Hegseth, Department of Defense, Emmert, and United States Department of the Navy.

211.   Plaintiffs Schmid, Moran, and Doe state this claim against Defendants Trump, United States, Hegseth, Department of Defense, Driscoll, and United States Department of the Army.

212.   Plaintiff Leins states this claim against Defendants Trump, United States, Hegseth, Department of Defense, Ashworth, and United States Department of the Air Force.

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Lambda Legal Defense and
Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

Human Rights
Campaign Foundation
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

1    213.    Plaintiff Gender Justice League states this claim against all Defendants.

2    214.    Plaintiffs state this cause of action against Defendants in exclusively their official

3    capacities for purposes of seeking declaratory and injunctive relief and challenge the 2025 Military

4    Ban and related federal policy and directives both facially and as applied to them or, as to the

5    organizational plaintiffs, as applied to their members.

6    215.    The 2025 Military Ban and related federal policy and directives violate the Free

7    Speech Clause of the First Amendment because they impermissibly burden and chill the exercise

8    of the Individual Plaintiffs' and of Gender Justice League's transgender members' constitutionally

9    protected speech, expression, and expressive conduct based on the content and viewpoint of their

10    speech, even in their private lives.

11    216.    All Individual Plaintiffs and many transgender members of Gender Justice League

12    have been open about their status as transgender either in the context of seeking to join the military

13    or in the course of their military service.

14    217.    All Individual Plaintiffs and transgender members of Gender Justice League want

15    to continue being open about their status as transgender and to continue expressing and conducting

16    themselves consistently with their gender.

17    218.    The gender expression of the Individual Plaintiffs and of transgender members of

18    Gender Justice League, the conduct of those individuals that is consistent with their gender, and

19    those individuals' disclosure of their transgender status, all constitute protected First Amendment

20    activity.

21    219.    In issuing the 2025 Military Ban and related federal policy and directives, the

22    government created a bizarre, idiosyncratic, and unscientific definition of so called "gender

23    ideology," and then used it to engage in impermissible viewpoint and content discrimination by

24    penalizing Plaintiffs' speech and expression that conflicts with the government's viewpoint,

25    explicitly restricting such speech and expression even in their private lives.

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

220. The viewpoint discrimination memorialized in the 2025 Military Ban relates both to the text of this particular executive order and the way it incorporates by reference the Gender Identity Executive Order.

221. Viewpoint and content discrimination are presumptively unconstitutional.

222. The 2025 Military Ban and related federal policy and directives violate the Free Speech Clause of the First Amendment in many ways, including the following respects:

a. First, the 2025 Military Ban and related federal policy directives impermissibly burden and chill the exercise of constitutionally protected speech, expression, and expressive conduct of the Individual Plaintiffs and of the Gender Justice League's transgender members based on the content and viewpoint of their speech, even in their private lives.

b. Second, Defendants intend the 2025 Military Ban and related federal policy directives to coerce the Individual Plaintiffs and Gender Justice League's transgender members to adopt, endorse, and comply with the government's own idiosyncratic viewpoint as if it were their own, even in their private lives.

c. Third, as to those Individual Plaintiffs and Gender Justice League's transgender members who refuse to be chilled or coerced to adopt the government's preferred message, the 2025 Military Ban and related federal policy and directives discriminate against them for engaging in protected core speech and expressing their own viewpoint.

223. The government lacks even a legitimate justification for its viewpoint and content restrictions, let alone a compelling one.

224. To the contrary, the purpose and effect of the 2025 Military Ban and related federal policy and directives is to chill, coerce, and punish the Individual Plaintiffs, and transgender members of Gender Justice League, for their speech and gender expression—constitutionally protected First Amendment activity—even in their private lives.

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
CASE NO. 2:25-CV-241 - 34

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

225.    Indeed, the 2025 Military Ban on its face labels transgender peoples' expressions of their own identities as inconsistent with "a soldier's commitment to an honorable, truthful, and disciplined lifestyle, even in one's personal life. A man's assertion that he is a woman, and his requirement that others honor this falsehood, is not consistent with the humility and selflessness required of a service member."

226.    The reach of the 2025 Military Ban and related federal policy and directives extends to First Amendment activity of a person of ordinary firmness who is transgender by requiring such persons either to attempt to deny who they are and suppress expression of their gender or be denied military service on the same terms as others.

227.    The Individual Plaintiffs and Gender Justice League's transgender members are harmed by being denied the opportunity to serve in the military on the same terms as other service members.

228.    Thus, the 2025 Military Ban and related federal policy and directives inflict current, direct First Amendment injury on all current and prospective transgender service members, including Individual Plaintiffs and Gender Justice League's transgender members. Further, they face a realistic danger of sustaining ongoing and future injuries.

## THIRD CAUSE OF ACTION
## PROCEDURAL DUE PROCESS VIOLATION

229.    Plaintiffs incorporate paragraphs 1 through 196 as though fully set forth herein.

230.    Plaintiffs Shilling, Dremann, and Morgan state this claim against Defendants Trump, United States, Hegseth, Department of Defense, Emmert, and United States Department of the Navy.

231.    Plaintiffs Schmid, Moran, and Doe state this claim against Defendants Trump, United States, Hegseth, Department of Defense, Driscoll, and United States Department of the Army.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

232.    Plaintiff Leins states this claim against Defendants Trump, United States, Hegseth, Department of Defense, Ashworth, and United States Department of the Air Force.

233.    Plaintiff Gender Justice League states this claim against all Defendants.

234.    Defendants have violated the procedural due process rights of the Individual Plaintiffs and Gender Justice League's transgender members. Plaintiffs relied detrimentally on the military's policy from 2021 to the present of welcoming open service by transgender people.

235.    Plaintiffs who are current service members have a protectible liberty interest in their continued military service. They deserve not to be branded as inferior and unworthy of service based simply on who they are.

236.    Plaintiffs who are current service members have a protectible property interest in their continued military service and benefits upon retirement that they have earned. The 2025 Military Ban would deprive them of their careers and the related current and future benefits that they have earned as a result of their military service.

237.    Defendants have provided no adequate procedural protections for Plaintiffs or indeed any avenue for redress. The 2025 Military Ban decrees that all transgender people are considered categorically unfit for service, rendering futile any procedures that otherwise might apply to protect service members from arbitrary separation.

238.    The 2025 Military Ban directs agencies to pre-judge people categorically as unfit, undermining and rendering futile any procedural protections or process that might otherwise apply. Consequently, the 2025 Military Ban and related federal policy and directives violate the procedural due process rights of Plaintiffs under the Fifth Amendment.

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
CASE NO. 2:25-CV-241 - 36

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

**FOURTH CAUSE OF ACTION**
**EQUITABLE ESTOPPEL**

239.    Plaintiffs incorporate paragraphs 1 through 196 as though fully set forth herein.

240.    Plaintiffs Shilling, Dremann, and Morgan state this claim against Defendants Trump, United States, Hegseth, Department of Defense, Emmert, and United States Department of the Navy.

241.    Plaintiffs Schmid, Moran, and Doe state this claim against Defendants Trump, United States, Hegseth, Department of Defense, Driscoll, and United States Department of the Army.

242.    Plaintiff Leins states this claim against Defendants Trump, United States, Hegseth, Department of Defense, Ashworth, and United States Department of the Air Force.

243.    Plaintiff Gender Justice League states this claim against all Defendants.

244.    The 2025 Military Ban and related federal policy and directives punish Plaintiff current service members for doing precisely what the prior policy invited and induced them to do — disclose their transgender status and take medical and other steps to transition.

245.    Plaintiffs Shilling, Dremann, Morgan, Schmid, Doe, Leins, and members of Gender Justice League who are current service members had settled expectations based on the prior policy and reasonably relied on it when they came out as transgender and underwent medical and social transition.

246.    Plaintiffs Shilling, Dremann, Morgan, Schmid, Doe, Leins, and members of Gender Justice League who are current service members were induced to disclose their transgender status and would be deprived of both a property and liberty interest due to the effects of the 2025 Military Ban and related federal policy and directives on their continued employment and educational opportunities, and the stigma of having been labeled as presumptively unworthy of continued service.

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Lambda Legal Defense and
Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

Human Rights
Campaign Foundation
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

247.   The 2025 Military Ban and related federal policy and directives works a serious injustice on Plaintiff current service members, including Plaintiffs Shilling, Dremann, Morgan, Doe, Schmid, Leins, and members of Gender Justice League who are currently serving, by punishing them for doing what the government explicitly induced them to do.

248.   Defendants therefore should be equitably estopped from implementing the 2025 Military Ban and related federal policies and directives as applied to Plaintiff current service members.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A.    Issue a declaratory judgment, pursuant to 28 U.S.C. §§ 2201–2202, declaring Executive Order No. 14183 (the "2025 Military Ban") and related federal policy and directives unconstitutional on their face and as applied to the Individual Plaintiffs and transgender members of Gender Justice League, for the reasons set forth above;

B.    Issue preliminary and permanent injunctive relief enjoining Agency Defendants, their agents, employees, representatives, successors, and any other person or entity subject to their control or acting directly or indirectly in concert with them from implementing, administering, or enforcing Executive Order No. 14183 (the "2025 Military Ban") and related federal policy and directives, including by enjoining any separation, discharge, adverse action, retaliation, or denial of promotion, reenlistment, continuation of service, accession, or appointment because an individual is transgender;

C.    Waive the requirement for the posting of a bond of security for the entry of temporary and preliminary relief;

D.    Award Plaintiffs their reasonable fees, costs, and expenses, including attorneys' fees, pursuant to 28 U.S.C. § 2412 and any other applicable laws; and

E.    Grant any injunctive or other relief that this Court deems just, equitable, and proper.

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
CASE NO. 2:25-CV-241 - 38

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

March 4, 2025

By:  *s/ Matthew P. Gordon*
     Matthew P. Gordon, WSBA No. 41128
     MGordon@perkinscoie.com

By:  *s/Abdul Kallon*
     Abdul Kallon, WSBA No. 60719
     AKallon@perkinscoie.com

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

Danielle Sivalingam (Admitted *pro hac vice*)
Perkins Coie LLP
505 Howard Street, Suite 1000
San Francisco, CA 94105-3204
Telephone: 415.344.7000
Facsimile: 415.344.7050
Email: DSivalingam@perkinscoie.com

Mary Grace Thurmon (Admitted *pro hac vice*)
Bo Yan Moran (Admitted *pro hac vice*)
Perkins Coie LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone: 650.838.4300
Facsimile: 650.838.4350
Email: MThurmon@perkinscoie.com
Email: BMoran@perkinscoie.com

Gabriella Romanos Abihabib (Admitted *pro hac vice*)
Perkins Coie LLP
1155 Avenue of the Americas, 22nd Floor
New York, NY 10036-2711
Telephone: 212.262.6900
Facsimile: 212.977.1649
Email: GRomanos@perkinscoie.com

Attorneys for Plaintiffs

1
2
3
4
5

Sasha Buchert (Admitted *pro hac vice*)
Lambda Legal Defense and Education Fund, Inc.
815 16th St. NW, Suite 4140
Washington, DC 20006
Telephone: 202.804.6245
Facsimile: 855.535.2236
Email: SBuchert@lambdalegal.org

6
7
8
9

Jennifer C. Pizer (Admitted *pro hac vice*)
Lambda Legal Defense and Education Fund, Inc.
800 South Figueroa Street, Suite 1260
Los Angeles, CA 90017
Telephone: 213.382.7600
Facsimile: 855.535.2236
Email: JPizer@lambdalegal.org

10
11
12
13
14
15

Camilla B. Taylor (Admitted *pro hac vice*)
Kenneth Dale Upton, Jr. (Admitted *pro hac vice*)
Lambda Legal Defense and Education Fund, Inc.
3656 N Halsted St.
Chicago, IL 60613
Telephone: 312.663.4413
Facsimile: 855.535.2236
Email: CTaylor@lambdalegal.org
Email: KUpton@lambdalegal.org

16
17
18
19
20

Omar Gonzalez-Pagan (Admitted *pro hac vice*)
Lambda Legal Defense and Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585
Facsimile: 855.535.2236
Email: OGonzalez-Pagan@lambdalegal.org

21
22
23
24

Kell Olson (Admitted *pro hac vice*)
Lambda Legal Defense and Education Fund, Inc.
3849 E Broadway Blvd, #136
Tucson, AZ 85716
Telephone: 323.370.6915
Facsimile: 855.535.2236
Email: KOlson@lambdalegal.org

25

Attorneys for Plaintiffs

26

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
CASE NO. 2:25-CV-241 - 40

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669

Sarah Warbelow (Admitted *pro hac vice*)
Cynthia Weaver (Admitted *pro hac vice*)
Ami Patel (Admitted *pro hac vice*)
Human Rights Campaign Foundation
1640 Rhode Island Ave. N.W.
Washington, DC 20036
Telephone: 202.527.3669
Facsimile: 202.347.5323
Email: Sarah.Warbelow@hrc.org
Email: Cynthia.Weaver@hrc.org
Email: Ami.Patel@hrc.org

Attorneys for Plaintiffs

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights
Campaign Foundation**
1640 Rhode Island Ave NW
Washington, D.C. 20036
Phone: 202.527.3669