The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

COMMANDER EMILY SHILLING; *et al.*,

    *Plaintiffs*,

DONALD J. TRUMP, in his official capacity as President of the United States; *et al.*,

    *Defendants*.

No. 2:25-cv-241-BHS

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

**ORAL ARGUMENT REQUESTED**

**NOTE ON MOTION CALENDAR: MARCH 19, 2025**

PLS.' SUPPL. BRIEF IN SUPP. OF MOT. FOR PRELIM. INJ.
CASE NO. 2:25-CV-241

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212-809-8585

**Human Rights Campaign Foundation**
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762

# TABLE OF CONTENTS

Page(s)

I. Introduction ................................................................................................................. 1

II. Background. ............................................................................................................... 1

    A. The Department of Defense's latest guidance implementing the Military Ban further demonstrates that the Military Ban is a complete bar on military service by transgender people. ............................................................... 2

    B. The February 26 Guidance imposed immediate impacts on active-duty transgender servicemembers and transgender Americans desiring to serve their country desiring to serve their country. ............................................................ 4

III. Argument ................................................................................................................... 6

    A. The Department of Defense's February 26 Guidance cements Plaintiffs' likelihood to succeed on the merits of all four of their claims. .............................. 6

        1. The February 26 Guidance suffers from the same constitutional infirmities as the Military Ban under the equal protection guarantee, and warrants no deference. .......................................................... 6

        2. The February 26 Guidance violates the First Amendment for the same reasons as the Military Ban. ............................................................... 7

        3. The February 26 Guidance doubles down on the violations of Plaintiffs' procedural due process rights. ....................................................... 8

        4. The February 26 Guidance and Military Ban should be equitably estopped. ............................................................................................................... 9

    B. Plaintiffs will suffer irreparable harm absent immediate injunctive relief. .......... 10

IV. Conclusion ............................................................................................................... 10

PLS.' SUPPL. BRIEF IN SUPP.
OF MOT. FOR PRELIM. INJ.
CASE NO. 2:25-CV-241

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212-809-8585

**Human Rights Campaign Foundation**
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*El Rescate Legal Servs., Inc. v. Exec. Off. of Immigr. Rev.*,
    959 F.2d 742 (9th Cir. 1991) .................................................................................................. 8

*Karnoski v. Trump*,
    926 F.3d 1180 (9th Cir. 2019) ................................................................................................ 6

*Karnoski v. Trump*,
    No. C17-1297-MJP, 2017 WL 6311305 (W.D. Wash. Dec. 11, 2017) ................................... 8

PLS.' SUPPL. BRIEF IN SUPP.
OF MOT. FOR PRELIM. INJ. - ii
CASE NO. 2:25-CV-241

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212-809-8585

**Human Rights Campaign
Foundation**
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762

## I. INTRODUCTION

Plaintiffs seek a preliminary injunction to protect their First, Fifth, and Fourteenth Amendment rights, and to prevent irreparable injury to themselves and to others by enjoining the Military Ban and halting the impending purge of honorably serving transgender servicemembers from the United State Armed Forces. Last week, the Department of Defense issued guidance implementing that ban, continuing to disparage transgender people, and making it clear that none who are transgender may accede to the armed forces and those already serving must be discharged.

Plaintiffs file this Supplemental Brief to address the effect of the recent guidance on their claims.

## II. BACKGROUND

On February 26, 2025, pursuant to the Military Ban and Secretary Hegseth's February 7, 2025 memo, the Under Secretary of Defense for Personnel and Readiness for the Department of Defense ("DoD") issued a memorandum titled "Additional Guidance on Prioritizing Military Excellence and Readiness" (hereafter, "the February 26 Guidance" or "the Guidance"). (Supplemental Declaration of Matthew Gordon ("Gordon Suppl. Decl.") **Exhibit 25**.) The February 26 Guidance, which implements the Military Ban, superseded any prior conflicting guidance and became "effective immediately." The February 26 Guidance executes the Military Ban but provides no additional policy, analysis or study. Instead, the February 26 Guidance merely provides additional details on its extraordinarily rapid implementation of a ban on accession to the armed services and the separation of active-duty transgender servicemembers, as well as the immediate treatment of transgender servicemembers with regards to the terms and standards under which they serve as they are separated. The February 26 Guidance thus effectuates and accelerates the effect of the Military Ban.

PLS.' SUPPL. BRIEF IN SUPP.
OF MOT. FOR PRELIM. INJ. - 1
CASE NO. 2:25-CV-241

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Lambda Legal Defense and
Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212-809-8585

Human Rights Campaign
Foundation
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762

**A. The Department of Defense's latest guidance implementing the Military Ban further demonstrates that the Military Ban is a complete bar on military service by transgender people.**

The February 26 Guidance makes clear beyond peradventure that the Military Ban constitutes a complete bar on transgender people serving in our country's military. Mirroring the Military Ban's language, the February 26 guidance declares that any person who identifies as transgender cannot meet the "high standards for Service member readiness, lethality, cohesion, honesty, humility, uniformity, and integrity" required for service in our armed services. February 26 Guidance, § 1(b). It categorically declares that "[i]ndividuals who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria are no longer eligible for military service." *Id.* § 1(d).

By barring service by anyone who has ever exhibited symptoms consistent with gender dysphoria, the February 26 Guidance bars anyone who is transgender. Indeed, the Guidance states that "[a]ll service members will only serve in accordance with their [birth] sex," and incorporates the definitions set forth in the Gender Order, which repudiate the existence of transgender people altogether, specifically exclude gender identity from sex, and deem it a "false claim" for anyone to identify with a gender other than one's sex assigned at birth. February 26 Guidance, § 1(f); Gender Order §§ 2(a), (f). And lest there be any doubt of the Military Ban's scope and categorical nature, following the issuance of the February 26 Guidance, the DoD announced to the world that "Transgender troops are disqualified from service without an exemption."

PLS.' SUPPL. BRIEF IN SUPP.
OF MOT. FOR PRELIM. INJ. - 2
CASE NO. 2:25-CV-241

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Lambda Legal Defense and
Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212-809-8585

Human Rights Campaign
Foundation
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762

> **Post**
>
> **DOD Rapid Response** ✓
> @DODResponse
>
> Transgender troops are disqualified from service without an exemption.
>
> > **CBS News** ✓ @CBSNews · 3h
> > The U.S. will begin removing transgender troops from the military within 30 days unless they obtain a waiver on a case-by-case basis, the Pentagon said in a Wednesday memo. cbsn.ws/4id6UNQ
>
> 12:08 PM · Feb 27, 2025 · 200.8K Views

Gordon Suppl. Decl., **Exhibit 26**. This is all consistent with the Military Ban's categorical declaration that "expressing a false 'gender identity' divergent from an individual's [birth] sex cannot satisfy the rigorous standards necessary for military service" and that "[b]eyond the hormonal and surgical medical interventions involved, adoption of a gender identity inconsistent with an individual's sex conflicts with a soldier's commitment to an honorable, truthful, and disciplined lifestyle, even in one's personal life." Military Ban § 1; *see also* Dkt. 31-17 (Hegseth February 7 Memo).

While the February 26 Guidance purports to have possible "exemptions" for accessions and retentions, they are illusory. Under both the Military Ban and the February 26 Guidance, there is no exemption for any person who identifies as transgender to serve in the military. Both active-duty servicemembers as well as accession candidates are required to serve under the "standards associated with the[ir] … [birth] sex." February 26 Guidance, §§ 4.1(c), 4.3(c)(3). And the February 26 Guidance makes clear that no servicemember can serve in our military services if they have ever "attempted to transition to any sex other than their sex," i.e., identified with any gender other than their sex assigned at birth. *Id.* § 4.3(c)(2).

PLS.' SUPPL. BRIEF IN SUPP. OF MOT. FOR PRELIM. INJ. - 3
CASE NO. 2:25-CV-241

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Lambda Legal Defense and Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212-809-8585

Human Rights Campaign Foundation
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762

Thus, the DoD's latest guidance, by memo and tweet, cements the Military Ban's scope that no transgender person may serve in our country's military services, without exception and without regard to their record of honorable service. February 26 Guidance, § 4.1(a); *see also* Military Ban § 1; Dkt. 31-17 (February 7 Hegseth Memo); Gordon Suppl. Decl., Exhibit 26.

**B. The February 26 Guidance imposed immediate impacts on active-duty transgender servicemembers and transgender Americans desiring to serve their country.**

As noted by Plaintiffs in their complaint and motion for a preliminary injunction, the Military Ban's effects are clear and immediate. *See* Dkt. 01, ¶¶ 168, 170, 174-75; Dkt. 23, at 19, 35-36. The February 26 Guidance further calcifies the immediate effect and corresponding harms imposed by the Military Ban.

Active-duty transgender servicemembers will be identified for separation actions beginning March 26, 2025. February 26 Guidance, § 3.4(e); *see also* Dkt. No. 55-3 (February 28 Clarifying Guidance). Once identified, which could occur as early as March 26, 2025, an active-duty servicemember who is transgender is to be processed for separation. February 26 Guidance, §§ 3.4(f), 4.4(a). Immediately upon the initiation of separation procedures, active-duty transgender servicemembers are deemed "non-deployable" and may be placed on "administrative absence status." *Id.* § 4.4(a)(3), 6.1(a)-(b).

To encourage their separation more quickly, the February 26 Guidance seeks to coerce active-duty servicemembers who are transgender to opt for "voluntary separation" through financial inducements, including doubling their separation pay and not having to pay back bonuses, "even if they have a remaining service obligation." *Id.* §§ 4.4(a)(4), (10). However, to do so, servicemembers must opt for "voluntary separation" by March 26, 2025. *Id.* § 4.4(a)(4); *see also* February 28 Clarifying Guidance.

Finally, the February 26 Guidance further illustrates the immediate effects of the Military Ban on transgender servicemembers even while they are being processed for separation. The Guidance changes the standards under which active-duty transgender servicemembers serve.

PLS.' SUPPL. BRIEF IN SUPP. OF MOT. FOR PRELIM. INJ. - 4
CASE NO. 2:25-CV-241

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Lambda Legal Defense and Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212-809-8585

Human Rights Campaign Foundation
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762

February 26 Guidance, §§ 1(g), 5.2. It also requires immediate changes to the military records of transgender servicemembers and requires them to identify in accordance with their birth sex, including with regards to pronouns and honorifics. *Id.* §§ 1(h), 5.1; Military Ban § 4(b). The February 26 Guidance further cements the immediate cessation of transition-related health care services, other than pre-existing hormone prescriptions. It mandates the immediate cancellation of "[a]ll unscheduled, scheduled, or planned surgical procedures associated with facilitating sex reassignment," as well as prohibits the initiation of hormone therapy. February 26 Guidance, §§ 1(j), 4.2(b)-(c). This is consistent with the express terms of the Military Ban and the subsequent February 7 Hegseth Memo. Military Ban § 2; Dkt. 31-17.

Military officials have wasted no time implementing the Military Ban and February 26 Guidance. For example, consistent with the directive that transgender servicemembers "will be designated as non-deployable," a Special Forces Medical Sergeant, currently serving outside the United States in an active combat zone with Alpha Company, 2nd Battalion, 5th Special Forces Group, has already been placed on emergency leave, booked for a flight back to the United States, and informed that her "out-processing" from the Army will begin no later than March 26 as a result of the Military Ban and February 26 Guidance. Declaration of Sergeant Morgan ("Morgan Decl.") ¶23. Sergeant Morgan, a member of Plaintiff Gender Justice League, was asked to sign a counseling form to this effect, and she was removed from her forward operating base in a combat zone and will be transported to Fort Campbell for out-processing from the Army.

Being discharged in this manner is profoundly disruptive to Sergeant Morgan's life and it will deprive her of income and healthcare, subjecting her to severe financial and personal hardship. It will also deprive her unit of a highly qualified Special Forces Medic, impacting their readiness and mission capability. *Id.* ¶¶25-27. Thus, the Military Ban and February 26 Guidance not only have had an immediate impact on active-duty servicemembers, but they also have negatively impacted military readiness.

PLS.' SUPPL. BRIEF IN SUPP.
OF MOT. FOR PRELIM. INJ. - 5
CASE NO. 2:25-CV-241

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212-809-8585

**Human Rights Campaign Foundation**
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762

In sum, the February 26 Guidance further demonstrates the categorical nature of the Military Ban, its immediate effects, and the corresponding harms it imposes on Plaintiffs and other transgender Americans.

## III.    ARGUMENT

The Military Ban and February 26 Guidance violate Plaintiffs' constitutional rights to equal protection, due process, and free speech, and should be equitably estopped.

**A.  The Department of Defense's February 26 Guidance cements Plaintiffs' likelihood to succeed on the merits of all four of their claims.**

    **1.  The February 26 Guidance suffers from the same constitutional infirmities as the Military Ban under the equal protection guarantee, and warrants no deference.**

As Plaintiffs explained in the motion for a preliminary injunction, the Military Ban purposely discriminates based on transgender status and sex. Dkt. 23, at 21-24. The February 26 Guidance simply restates this discrimination and implements it without the exercise of any independent professional military judgment, analysis, research, or study. Consequently, the February 26 Guidance suffers from the same constitutional infirmities as the Military Ban. *Id.* Because the Military Ban and February 26 Guidance constitute status-based classifications of persons solely to disadvantage the class of people singled out—transgender people—they serve an unconstitutional purpose and violate the equal protection guarantee. *Id.* Moreover, because the Military Ban and February 26 Guidance discriminate based on transgender status and sex, they also warrant heightened scrutiny. *Id.* at 20. They cannot survive any level of review, let alone the heightened one required. *Id.* at 24-28.

Moreover, because the February 26 Guidance is not the product of a meaningful exercise of independent military judgment, but a mere implementation of the Military Ban that itself was issued within a week of President Trump's inauguration, no military deference is due. *Karnoski v. Trump*, 926 F.3d 1180, 1201-02 (9th Cir. 2019). The February 26 Guidance reflects no substantive change whatsoever from the Military Ban, let alone a "significant change." *Id.* Put

PLS.' SUPPL. BRIEF IN SUPP.
OF MOT. FOR PRELIM. INJ. - 6
CASE NO. 2:25-CV-241

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Lambda Legal Defense and
Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212-809-8585

Human Rights Campaign
Foundation
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762

simply, the February 26 Guidance cements the purposeful and facial discriminatory nature of the Military and further illustrates its lack of justification.

### 2. The February 26 Guidance violates the First Amendment for the same reasons as the Military Ban.

As explained in the motion for preliminary injunction, the Military Ban constitutes content-based and viewpoint-based policies that plainly violate Plaintiffs' First Amendment rights to freedom of speech. Dkt. 23, at 28. The Military Ban commanded the DoD to implement guidance consistent with its animus toward transgender people, and the February 26 Guidance does not deviate from its charge. For the reasons explained, the February 26 Guidance and Military Ban therefore violate the First Amendment because they prohibit transgender people, and only transgender people, from disclosing or expressing their gender identity. Dkt. 23, at 28-30.

If anything, the February 26 Guidance even goes further than the Military Ban in chilling expression and speech. For example, it seeks to punish service members who "exhibit symptoms consistent with" gender dysphoria. The February 26 Guidance gives no hint of what "symptoms consistent" with gender dysphoria means, but the potentially expansive scope exacerbates the chilling effect of the Ban. February 26 Guidance §4.4(a)(4). Furthermore, the February 26 Guidance also clarifies that it will provide an exemption only if the servicemember has never attempted to transition. *Id.* §4.3(c)(2). Again, it is unclear what is meant by "attempt to transition," but such vague language will invariably further chill the expression of transgender servicemembers.

The February 26 Guidance also clarifies that the Military Ban's requirement that "[p]ronoun use when referring to Service members must reflect a Service member's sex" has immediate effect. February 26 Guidance §1(h). As explained, this specifically targets the "assertion" of an identity and "use of pronouns that inaccurately reflect an individual's sex [designated at birth]" Military Ban §§ 1-2; Dkt. 23, at 28. Because the February 26 Guidance not only carries out the mandate of the Military Ban but also accelerates and potentially broadens its

PLS.' SUPPL. BRIEF IN SUPP. OF MOT. FOR PRELIM. INJ. - 7
CASE NO. 2:25-CV-241

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Lambda Legal Defense and Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212-809-8585

Human Rights Campaign Foundation
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762

impact—perhaps quite significantly—it is an even more impermissible content-based restriction on speech. *See Karnoski v. Trump*, No. C17-1297-MJP, 2017 WL 6311305, at *9 (W.D. Wash. Dec. 11, 2017).

### 3. The February 26 Guidance doubles down on the violations of Plaintiffs' procedural due process rights.

The February 26 Guidance doubles down on the aspects of the Military Ban that violate Active-Duty Plaintiffs' procedural due process rights. *See* Dkt. 23, at 31-33. First, the Guidance reiterates the Military Ban's stigmatizing labels of dishonesty and dishonor, causing reputational harm to Active-Duty Plaintiffs in connection with the Ban's direction to end their military careers. February 26 Guidance, § 1(b). Second, the February 26 Guidance, conforming to the Military Ban's direction, violates the settled, reasonable expectations of openly transgender servicemembers by punishing them retroactively for following military policy and taking steps to transition according to plans pre-approved by their chain of command. Dkt. 23, at 32 (citing cases describing bedrock principles of notice that prohibit retroactive retribution).

Although the Guidance cites certain "administrative processing protections," *see* February 26 Guidance § 4.4, these cannot cure the constitutional deficiencies of the Ban and its implementing guidance. Active-Duty Plaintiffs challenge the use of transgender identity as an unsupported categorical basis for separation—not whether the military has established that basis by a preponderance of the evidence as to any individual. For servicemembers like Active-Duty Plaintiffs, who have already served openly and taken steps to transition, the result of any administrative proceeding to determine whether they fit within Ban's scope is pre-determined. *See El Rescate Legal Servs., Inc. v. Exec. Off. of Immigr. Rev.*, 959 F.2d 742, 747 (9th Cir. 1991) (where agency's position is already set and result is very likely, recourse would be futile and prudential exhaustion requirement does not apply); *see also* cases cited at Dkt. 23, at 32-33. By prescribing that these servicemembers cannot qualify for an exemption *even if* there is a

PLS.' SUPPL. BRIEF IN SUPP.
OF MOT. FOR PRELIM. INJ. - 8
CASE NO. 2:25-CV-241

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Lambda Legal Defense and
Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212-809-8585

Human Rights Campaign
Foundation
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762

"compelling Government interest" in retaining them, February 26 Guidance, § 4.3(c)(2), the Guidance violates their basic right to meaningful process.

### 4. The February 26 Guidance and Military Ban should be equitably estopped.

For similar reasons, the February 26 Guidance highlights a drastic shift that calls for the government to be equitably estopped from punishing Active-Duty Plaintiffs who transitioned under previous military policy. See Dkt. 23, at 33-35. The Guidance disregards the longstanding service of Active-Duty Plaintiffs and evidence from the last four years showing that transgender members can and do serve honorably, and often with distinction, while meeting the same standards as other servicemembers. *See id.* at 32-36 & 38.

But the February 26 Guidance is not only a shift from recent policy. The Guidance's callous treatment of servicemembers who transitioned with the pre-approval of their command stands in stark contrast to the 2018 Mattis Policy under the first Trump Administration. The 2018 Mattis Policy provided a categorical reliance exception for currently serving members, who could "continue to serve in their preferred gender and receive medically necessary treatment for gender dysphoria. Dkt. 31-10, at 3 (Gordon Decl. Ex. 10). That policy decision was based on a 2018 Report ordered by Secretary Mattis, which found that the "reasonable expectation of these Service members that the Department would honor their service on the terms that then existed cannot be dismissed" and also found that "the Department believes that its commitment to these Service members, including the substantial investment it has made in them, outweigh the risks identified in this report." *Id.* at 48. By now issuing guidance that ousts without exception any servicemember who has ever "attempted to transition," and by ordering that those servicemembers not have access to basic facilities in the meantime, the Military Ban and its implementing guidance shred that previous commitment to "honor[ing] the[] service" of those that trusted a system they reasonably believed to be based on fairness and merit. Because justice and fair play compel it, the government should be estopped here.

PLS.' SUPPL. BRIEF IN SUPP. OF MOT. FOR PRELIM. INJ. - 9
CASE NO. 2:25-CV-241

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Lambda Legal Defense and Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212-809-8585

Human Rights Campaign Foundation
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762

**B. Plaintiffs will suffer irreparable harm absent immediate injunctive relief.**

The motion for preliminary injunction demonstrated that Plaintiffs face serious, immediate, and irreparable harms as a consequence of the Ban. Dkt. 23, at 36. The February 26 Guidance has only accelerated this threat. Because the February 26 Guidance and Military Ban cause irreparable harm to Plaintiffs, including by violating their constitutional rights to equal protection, due process and free speech, and threaten the loss of Plaintiffs' careers, healthcare coverage for themselves and their families, and reputational harms, the Military Ban and February 26 Guidance must be enjoined.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion for a preliminary injunction.

Pursuant to Local Rules W.D. Wash. LCR 7(e)(6), I certify that this memorandum contains 2,798 words, in compliance with the word limit set forth in the Court's order.

Dated this 4th day of March 2025.

Respectfully submitted,

By: s/ *Matthew P. Gordon*
Matthew P. Gordon, WSBA No. 41128
MGordon@perkinscoie.com

By: *s/Abdul Kallon*
Abdul Kallon, WSBA No. 60719
AKallon@perkinscoie.com

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

PLS.' SUPPL. BRIEF IN SUPP. OF MOT. FOR PRELIM. INJ. - 10
CASE NO. 2:25-CV-241

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Lambda Legal Defense and Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212-809-8585

Human Rights Campaign Foundation
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762

Danielle Sivalingam (*pro hac vice*)
Perkins Coie LLP
505 Howard Street, Suite 1000
San Francisco, CA 94105-3204
Telephone: 415.344.7000
Facsimile: 415.344.7050
Email: DSivalingam@perkinscoie.com

Mary Grace Thurmon (*pro hac vice*)
Bo Yan Moran (*pro hac vice*)
Perkins Coie LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone: 650.838.4300
Facsimile: 650.838.4350
Email: MThurmon@perkinscoie.com
Email: BMoran@perkinscoie.com

Gabriella Romanos Abihabib (*pro hac vice*)
Perkins Coie LLP
1155 Avenue of the Americas, 22nd Floor
New York, NY 10036-2711
Telephone: 212.262.6900
Facsimile: 212.977.1649
Email: GRomanos@perkinscoie.com

Attorneys for Plaintiffs

Sasha Buchert (*pro hac vice*)
Lambda Legal Defense and Education Fund, Inc.
815 16th St. NW, Suite 4140
Washington, DC 20006
Telephone: 202.804.6245
Facsimile: 855.535.2236
Email: SBuchert@lambdalegal.org

Jennifer C. Pizer (*pro hac vice*)
Lambda Legal Defense and Education Fund, Inc.
800 South Figueroa Street, Suite 1260
Los Angeles, CA 90017
Telephone: 213.382.7600
Facsimile: 855.535.2236
Email: JPizer@lambdalegal.org

PLS.' SUPPL. BRIEF IN SUPP.
OF MOT. FOR PRELIM. INJ. - 11
CASE NO. 2:25-CV-241

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212-809-8585

**Human Rights Campaign Foundation**
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762

Camilla B. Taylor (*pro hac vice*)
Kenneth Dale Upton, Jr. (*pro hac vice*)
Lambda Legal Defense and Education Fund, Inc.
3656 N Halsted St.
Chicago, IL 60613
Telephone: 312.663.4413
Facsimile: 855.535.2236
Email: CTaylor@lambdalegal.org
Email: KUpton@lambdalegal.org

Omar Gonzalez-Pagan (*pro hac vice*)
Lambda Legal Defense and Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585
Facsimile: 855.535.2236
Email: OGonzalez-Pagan@lambdalegal.org

Kell Olson (*pro hac vice*)
Lambda Legal Defense and Education Fund, Inc.
3849 E Broadway Blvd, #136
Tucson, AZ 85716
Telephone: 323.370.6915
Facsimile: 855.535.2236
Email: KOlson@lambdalegal.org

Attorneys for Plaintiffs

Sarah Warbelow (*pro hac vice*)
Cynthia Weaver (*pro hac vice*)
Ami Patel (*pro hac vice*)
Human Rights Campaign Foundation
1640 Rhode Island Ave. N.W.
Washington, DC 20036
Telephone: 202.527.3669
Facsimile: 202.347.5323
Email: Sarah.Warbelow@hrc.org
Email: Cynthia.Weaver@hrc.org
Email: Ami.Patel@hrc.org

Attorneys for Plaintiffs

PLS.' SUPPL. BRIEF IN SUPP. OF MOT. FOR PRELIM. INJ. - 12
CASE NO. 2:25-CV-241

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights Campaign Foundation**
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762