

**SECRETARY OF THE ARMY**
WASHINGTON

0 6 MAR 2025

MEMORANDUM FOR SEE DISTRIBUTION

SUBJECT: Prioritizing Military Excellence and Readiness Implementation Guidance

1. References.

    a. Office of the Secretary of Defense Memorandum, "Prioritizing Military Excellence and Readiness," 7 February 2025

    b. Office of the Under Secretary of Defense for Personnel and Readiness (USD(P&R)) Memorandum, "Additional Guidance on Prioritizing Military Excellence and Readiness," 26 February 2025

    c. Office of the Assistant Secretary of Defense for Manpower and Reserve Affairs Memorandum, "Clarifying Guidance on Prioritizing Military Excellence and Readiness," 28 February 2025

2. Purpose. To prescribe guidance for Army implementation of requirements directed by Executive Order 14183, "Prioritizing Military Excellence and Readiness," and accompanying Department of Defense policy and guidance.

3. Applicability. The provisions of this guidance apply to the Regular Army, Army National Guard/Army National Guard of the United States, and the U.S. Army Reserve.

4. Guidance.

    a. Service in the Army is open to all persons who can meet the high standards for military service and readiness without special accommodations.

    b. It is the policy of the United States Army to establish high standards for Soldier readiness, lethality, cohesion, honesty, humility, uniformity, and integrity. The medical, surgical, and mental health constraints on individuals with gender dysphoria or who have a current diagnosis or history of, or exhibit symptoms consistent with gender dysphoria, is inconsistent with Army policy.

    c. Soldiers and applicants for service in the Army who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria are incompatible with military service. Service by these individuals is not in the best interests of the Army and is not clearly consistent with the interests of national security.

    d. Soldiers who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria are no longer eligible for military service, except as set forth in paragraph 5.

SUBJECT: Prioritizing Military Excellence and Readiness Implementation Guidance

e. Soldiers who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria will be processed for separation from the Army as set forth in the policy below. Characterization of service under these procedures will be honorable except where the Soldiers' record otherwise warrants a lower characterization.

f. The Army only recognizes two sexes:  male and female. An individual's sex is immutable, unchanging during a person's life. All Soldiers will only serve in accordance with their sex, defined in Executive Order 14168, "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government," as "an individual's immutable biological classification as either male or female."

g. Where a standard, requirement, or policy depends on whether the individual is a male or female (e.g., medical fitness for duty, physical fitness, and body fat standards; berthing, bathroom, and shower facilities; and uniform and grooming standards), all persons will be subject to the standard, requirement, or policy associated with their sex.

h. Pronoun usage when referring to Soldiers must reflect a Soldier's sex. In keeping with good order and discipline, salutations (e.g., addressing a senior officer as "Sir" or "Ma'am") must also reflect an individual's sex.

i. Absent extraordinary operational necessity, the Army will not allow male Soldiers to use or share sleeping, changing, or bathing facilities designated for females, nor allow female Soldiers to use or share sleeping, changing, or bathing facilities designated for males.

j. No DoD funds will be used to pay for Soldiers' unscheduled, scheduled, or planned medical procedures associated with facilitating sex reassignment surgery, genital reconstruction surgery as treatment for gender dysphoria, or newly initiated cross-sex hormone therapy.

k. Consistent with existing law, DoD, and Army policy, commanders shall protect the privacy of protected health information they receive under this policy in the same manner as they would with any other protected health information. Such health information shall be restricted to personnel with a specific need to know; that is, access to information must be necessary for the conduct of official duties. Personnel shall also be accountable for safeguarding this health information consistent with existing law, DoD, and Army policy.

5. Procedures.

a. Appointment. Enlistment, or Induction into the Army.

(1) Applicants for Army service and individuals in the Delayed Training/Entry Program who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria are disqualified from accession.

SUBJECT: Prioritizing Military Excellence and Readiness Implementation Guidance

(2) A history of cross-sex hormone therapy or sex reassignment or genital reconstruction surgery as treatment for gender dysphoria or in pursuit of a sex transition, is disqualifying.

(3) This office will consider waivers on a case-by-case basis, provided there is a compelling Government interest in accessing the applicant that directly supports warfighting capabilities. The applicant must be willing and able to adhere to all applicable standards, including the standards associated with the applicant's sex. Waivers will be routed through the Assistant Secretary of the Army for Manpower and Reserve Affairs (ASA M&RA).

(4) Applicants disqualified pursuant to this policy and not granted a waiver shall not ship to Initial Entry Training.

(5) Offers of admission to the United States Military Academy or Army Senior Reserve Officers' Training Corps programs to individuals disqualified pursuant to paragraphs 5a(1) and 5a(2) of this guidance shall be rescinded except where the individual is granted a waiver pursuant to paragraph 5a(3) of this guidance. Senior Reserve Officers' Training Corps students otherwise disqualified pursuant to sections 5a(1) and 5a(2) of this guidance may still participate in classes taught or coordinated by the Senior Reserve Officers' Training Corps that are open to all students at the college or university concerned. All individuals enrolled or participating in the Senior Reserve Officers' Training Corps, whether under contract or not contracted, will follow standards for uniform wear consistent with the individual's sex in accordance with this guidance.

(6) Individuals disqualified pursuant to paragraphs 5a(1) and 5a(2) of this guidance are subject to separation or disenrollment from the United States Military Academy pursuant to AR 150-1, or from the Senior Reserve Officers' Training Corps pursuant to AR 145-1, unless the individual is granted a waiver. Absent any other basis for separation or disenrollment, such individuals will not be subject to monetary repayment of educational benefits (i.e., recoupment) nor subject to completion of a military service obligation.

b. Retention

(1) Soldiers who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria are disqualified from Army service.

(2) Soldiers who have a history of cross-sex hormone therapy or a history of sex reassignment or genital reconstruction surgery as treatment for gender dysphoria or in pursuit of a sex transition, are disqualified from Army service.

(3) Soldiers disqualified pursuant to paragraphs 5a(1) and 5b(2) of this guidance may be considered for a waiver on a case-by-case basis, provided there is a compelling Government interest in retaining the Soldier that directly supports warfighting capabilities and the Soldier concerned meets the following criteria:

3

SUBJECT: Prioritizing Military Excellence and Readiness Implementation Guidance

(a) The Soldier demonstrates 36 consecutive months of stability in the Soldier's sex without clinically significant distress or impairment in social, occupational, or other important areas of functioning; and

(b) The Soldier demonstrates that he or she has never attempted to transition to any sex other than their sex; and

(c) The Soldier is willing and able to adhere to all applicable standards, including the standards associated with the Soldier's sex.

(4) Waivers will be routed through ASA M&RA to this office for consideration.

c. Separation

(1) Soldiers who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria and are not granted a waiver will be processed for administrative separation in accordance with, and afforded all applicable administrative processing protections outlined in, existing Army policy found in AR 600-8-24, AR 635-200, AR 135-175, and AR 135-178. Enlisted Soldiers subject to separation pursuant to this guidance will be separated prior to their expiration of term of service following a determination that doing so is in the best interest of the Army. Officers subject to separation pursuant to this guidance will be separated if their retention is not clearly consistent with the interests of national security.

(2) Soldiers are ineligible for referral to the Disability Evaluation System (DES) solely for a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria as it does not constitute a physical disability pursuant to DoDI 1332.18.

(3) Soldiers may be referred to the DES if they have a co-morbidity, or other qualifying condition, that is appropriate for disability evaluation processing in accordance with AR 635-40, prior to completion of their separation physical.

(4) Soldiers who are processed for separation pursuant to this policy will be designated as non-deployable until their separation is complete.

(5) Soldiers who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria may elect to separate voluntarily until 26 March 2025. Such Soldiers may be eligible for voluntary separation pay in accordance with 10 U.S.C. § 1175a and DoDI 1332.43. Soldiers eligible for voluntary separation pay will be paid at a rate that is twice the amount the Soldier would have been eligible for from involuntary separation pay, in accordance with DoDI 1332.29 and AR 637-2.

4

SUBJECT: Prioritizing Military Excellence and Readiness Implementation Guidance

(6) Soldiers separated involuntarily pursuant to this policy may be provided full involuntary separation pay in accordance with 10 U.S.C. § 1174, DoDI 1332.29, and AR 637-2.

(7) All enlisted Soldiers who are initiated for involuntary separation pursuant to this policy will, if desired by the Soldier, be afforded an administrative separation board in accordance with AR 635-200 and AR 135-178.

(8) All officers who are initiated for elimination or separation pursuant to this policy will be afforded a Board of Inquiry or Board of Officers, if desired by the officer, in accordance with 10 U.S.C. § 1182, AR 600-8-24, and AR 135-175.

(9) Soldiers who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria with over 18 but less than 20 years of total active-duty service are eligible for early retirement under the Temporary Early Retirement Authority in accordance with DoDI 1332.46.

(10) Eligible Soldiers (including active-duty Soldiers and Reserve or National Guard members when on active-duty orders for 30 or more consecutive days) who are processed for separation pursuant to this policy, and their covered dependents, remain eligible for TRICARE for 180 days in accordance with 10 U.S.C. § 1145.

(11) Soldiers choosing voluntary separation will not have to repay any bonuses received prior to the date of this memorandum, even if they have a remaining service obligation, pursuant to 37 U.S.C. § 373(b)(l). The Army may recoup any bonuses received prior to the date of this memorandum for Soldiers choosing to be involuntarily separated.

(12) All military service obligations for Soldiers separated pursuant to this policy are waived.

(13) To maintain good order and discipline all Soldiers being processed for separation pursuant to the guidance will be placed in an administrative absence status, with full pay and benefits, until their separation is complete. Soldiers undergoing concurrent DES processing must attend their medical appointments as stated in existing Army policy. Soldiers in an administrative absence status will complete the Transition Assistance Program in accordance with AR 600-81.

(14) Nothing in this guidance precludes investigation of or appropriate administrative or disciplinary action for Soldiers who refuse orders from lawful authority to comply with applicable standards or otherwise do not meet standards for performance and conduct.

d. Additional Guidance.

(1) ASA M&RA is directed to establish procedures to identify Soldiers who have a current diagnosis or history, of, or exhibit symptoms consistent with, gender dysphoria prior to

SUBJECT: Prioritizing Military Excellence and Readiness Implementation Guidance

26 March 2025 consistent with the requirements of the USD(P&R) guidance. Further, the ASA(M&RA) will ensure all reporting requirements in the USD(P&R) guidance are met.

(2) Army personnel and employees will take no action to identify Soldiers subject to this guidance until 26 March 2025, to include the use of medical records, periodic health assessments, ad hoc physical assessments, or any other diagnostic mechanism, unless otherwise directed by the proponent of this guidance. Further guidance will be provided by the proponent on actions to take regarding identification of Soldiers subject to this guidance on or prior to 26 March 2025.

(3) Army personnel and employees will not direct or request Soldiers to self-identify as having a current diagnosis or history of, or exhibiting symptoms consistent with, gender dysphoria, unless otherwise directed by the proponent of this guidance.

(4) Paragraphs 5a(1) and 5b(2) of this guidance do not apply to medical qualification determinations for applicants for military service, including eligibility determinations for individuals preparing to ship to initial entry training.

(5) Soldiers subject to this guidance are encouraged to elect to separate voluntarily by 26 March 2025.

6. Proponent. The ASA(M&RA) is the proponent of this guidance and authorized to provide additional clarifying guidance as necessary and rescind existing policy that conflicts with this memorandum. The Deputy Chief of Staff, G-1, will incorporate the provisions of this guidance into regulation.

Daniel Driscoll

DISTRIBUTION:
Principal Officials of Headquarters, Department of the Army
Commander
U.S. Army Forces Command
U.S. Army Training and Doctrine Command
U.S. Army Materiel Command
U.S. Army Futures Command
U.S. Army Pacific
U.S. Army Europe and Africa
U.S. Army Central
U.S. Army North
U.S. Army South
(CONT)

DISTRIBUTION: (CONT)
    U.S. Army Special Operations Command
    Military Surface Deployment and Distribution Command
    U.S. Army Space and Missile Defense Command/Army Strategic Command
    U.S. Army Cyber Command
    U.S. Army Medical Command
    U.S. Army Intelligence and Security Command
    U.S. Army Corps of Engineers
    U.S. Army Military District of Washington
    U.S. Army Test and Evaluation Command
    U.S. Army Human Resources Command
    U.S. Army Corrections Command
    U.S. Army Recruiting Command
Superintendent, U.S. Military Academy
Director, U.S. Army Criminal Investigation Division
Commandant, U.S. Army War College
Director, U.S. Army Civilian Human Resources Agency
Executive Director, Military Postal Service Agency
Director, Civilian Protection Center of Excellence
Director, U.S. Army Joint Counter-Small Unmanned Aircraft Systems Office
Superintendent, Arlington National Cemetery
Director, U.S. Army Acquisition Support Center

CF:
Principal Cyber Advisor
Director of Enterprise Management
Director, Office of Analytics Integration
Commander, Eighth Army