


# FY2025 NDAA: TRICARE Coverage of Gender-Affirming Care

Updated January 10, 2025

## Background

The Department of Defense (DOD) administers a statutory health entitlement (under Title 10, Chapter 55, of the U.S. Code), through the Military Health System (MHS). The MHS offers health care benefits and services through its TRICARE program to approximately 9.5 million beneficiaries composed of servicemembers, military retirees, and dependent family members. Congress often specifies certain TRICARE coverage parameters (e.g., how health care services may be delivered, and whether beneficiaries may be subject to cost-sharing requirements) through an annual National Defense Authorization Act (NDAA).

During deliberations on an FY2025 NDAA, some Members of Congress expressed interest in TRICARE coverage policies for gender-affirming care. Defense Health Agency (DHA) Procedural Instruction 6025.21 defines gender-affirming care as "clinical services that support an individual's physical and [behavioral health] as they define, explore, and align with their gender identity." Gender-affirming care includes nonsurgical care (e.g., hormone therapy and psychotherapy) and surgical care (e.g., gender-affirming surgery).

The TRICARE Policy Manual stipulates that "medically or psychologically necessary and appropriate medical care (as defined in 32 C.F.R. §199.2), including nonsurgical treatments for [gender dysphoria], are covered [for all beneficiaries] when provided by a TRICARE-authorized provider." The TRICARE Policy Manual also clarifies that hormone therapy is a covered service for an adult or adolescent beneficiary diagnosed with gender dysphoria and who meets the eligibility criteria outlined in the Endocrine Society's clinical practice guideline for treatment of gender dysphoria. Under 10 U.S.C. §1079(a)(11), TRICARE is explicitly prohibited from covering gender-affirming *surgical* care for beneficiaries except to treat individuals with an intersex condition due to congenital malformations or chromosomal abnormalities.

This statutory prohibition applies only to health care services covered by the TRICARE program for beneficiaries; DOD may pay for gender-affirming surgical care through the Supplemental Health Care Program (SHCP) for "active duty members of the uniformed services." DOD uses its authority under 10

CRS INSIGHT
Prepared for Members and
Committees of Congress

U.S.C. §1074(c) to administer SHCP. Title 32, Part 199.6, of the *Code of Federal Regulations*, Health Affairs (HA) Policy 12-002, and the TRICARE Operations Manual describe SHCP requirements and procedures. HA Policy 12-002 stipulates that SHCP "provides an avenue to lawfully cover otherwise non-covered services for Service members in circumstances that will enable them to return to full duty/worldwide deployable status, or to reach their maximum rehabilitative potential." Examples of noncovered services include certain emerging medical therapies and services, fertility services, and unique rehabilitative services.

DHA policy and supplemental guidance outline the process for providing gender-affirming surgical care to an active duty servicemember diagnosed with gender dysphoria, which includes requirements for the servicemember to obtain endorsements from their respective transgender care team and their chain of command prior to being authorized care.

**Table 1** lists the proposed or enacted gender-affirming care-related provisions included in the House-passed (H.R. 8070, 118th Congress), Senate Armed Services Committee (SASC)-reported (S. 4638, 118th Congress), or enacted (P.L. 118-159) versions of the FY2025 NDAA.

**Table 1. FY2025 NDAA Legislative Proposals**

| House-passed H.R. 8070 | Senate Armed Services Committee-reported S. 4638 | Enacted P.L. 118-159 |
|---|---|---|
| Section 579C would have prohibited an Exceptional Family Member Program from providing "gender transition procedures" or providing referrals for "gender transition services" to a minor dependent child. The provision would also prohibit the approval of a change of duty station due to a minor dependent child having a lack of access to gender transition services. | No similar provision. | Not enacted. |
| Section 713 would have amended Title 10, Chapter 55, of the *U.S. Code* to prohibit DOD from providing or paying for gender-affirming surgical care and hormone therapy for all beneficiaries. | Section 708 would have amended Title 10, Chapter 55, of the *U.S. Code* to prohibit the use of DOD funds for performing or facilitating "sex change surgeries." | Not enacted. |
|  | Section 709 would have amended 10 U.S.C. §1079(a) to prohibit TRICARE coverage of gender-affirming hormone therapy "that could result in sterilization" for beneficiaries under 18 years of age. | Section 708 adopts the Senate provision with an amendment to prohibit TRICARE coverage of "medical interventions for the treatment of gender dysphoria that could result in sterilization" for beneficiaries under 18 years of age. |

**Source:** CRS analysis of legislation on Congress.gov.

# Discussion

Between January 1, 2016, and May 14, 2021, DOD reportedly spent approximately $15 million to provide gender-affirming care (surgical and nonsurgical care) to 1,892 active duty servicemembers. DOD has not publicly reported any cost or utilization data of gender-affirming care for nonactive duty beneficiaries. Some studies have described utilization rates of TRICARE-covered gender-affirming care for certain

nonactive duty beneficiaries. For example, a 2019 study stated that "between October 2009 and April 2017, 2,533 youth received" gender-affirming care through the MHS. Of those, 834 individuals received gender-affirming prescriptions (e.g., pubertal suppression or hormone therapy).

Congress continues to debate whether federal health programs, including TRICARE, should cover gender-affirming care and related support services for servicemembers and their dependents. Some observers argue that federal taxpayer funds should not be used to pay for gender-affirming care that they perceive as "costly and controversial" and that such care could affect a servicemember's ability to be "combat-ready" or "deployable." Other observers argue that there is a "growing consensus" among medical experts that gender-affirming care is medically necessary and that health payers should ensure coverage of these services.

Section 708 of the FY2025 NDAA adopts Senate Section 709 with an amendment that revises 10 U.S.C. §1079(a) to prohibit TRICARE from covering "medical interventions for the treatment of gender dysphoria that could result in sterilization" for beneficiaries under 18 years of age. It remains to be seen how DOD is to implement this statutory change. Implementation may include changes to Title 32, Part 199, of the *Code of Federal Regulations* and revisions to the TRICARE Policy Manual.

The FY2025 NDAA did not include Section 713 of H.R. 8070, which would have amended Title 10, Chapter 55, of the *U.S. Code* by adding a new section that prohibits DOD from providing or paying for gender-affirming surgical care and hormone treatment used to treat gender dysphoria under TRICARE and SHCP. The FY2025 NDAA did not include Senate Section 708, which would have amended Title 10, Chapter 55, of the *U.S. Code* by adding a new section that prohibits the use of DOD funds for performing or facilitating "sex change surgeries."

In certain instances, a dependent family member diagnosed with a "current and chronic" mental health condition requiring "inpatient or intensive (i.e., greater than one visit monthly for more than 6 months) outpatient mental health service" may access coordination and support services through the Exceptional Family Member Program (EFMP). Dependent family members diagnosed with gender dysphoria as a mental health condition, per the Diagnostic and Statistical Manual of Mental Disorders (DSM-V) definition, may be eligible to enroll in EFMP.

DOD policy also allows EFMP-enrolled servicemembers to request a reassignment to another duty station before meeting the minimum time-on-station requirement, and to be afforded certain housing flexibilities during their relocation to another duty station. The FY2025 NDAA did not include House Section 579C, which would have prohibited the provision of, or referral for gender transition services through an EFMP. The provision would have also prohibited the military services from approving a servicemember's request for early reassignment to another duty station due to lack of access to gender transition services for a minor dependent child.

# Author Information

Bryce H. P. Mendez
Specialist in Defense Health Care Policy

## Disclaimer

This document was prepared by the Congressional Research Service (CRS). CRS serves as nonpartisan shared staff to congressional committees and Members of Congress. It operates solely at the behest of and under the direction of Congress. Information in a CRS Report should not be relied upon for purposes other than public understanding of information that has been provided by CRS to Members of Congress in connection with CRS's institutional role. CRS Reports, as a work of the United States Government, are not subject to copyright protection in the United States. Any CRS Report may be reproduced and distributed in its entirety without permission from CRS. However, as a CRS Report may include copyrighted images or material from a third party, you may need to obtain the permission of the copyright holder if you wish to copy or otherwise use copyrighted material.