# EXHIBIT 35

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NICOLAS TALBOTT *et al.*,            )
                                     )
    Plaintiffs,                       )
                                     )
v.                                   )   Civil Action No. 1:25-cv-00240 (ACR)
                                     )
UNITED STATES OF AMERICA *et al.*,   )
                                     )
    Defendants.                       )
                                     )

## DECLARATION OF MARTHA SOPER

I, Martha Soper, declare as follows:

1.     I served as Assistant Deputy, Health Policy in the Office of the Deputy Assistant Secretary of the Air Force, Reserve Affairs & Airman Readiness from October 2014 to September 2020. In this role, I served as the principal advisor in all matters pertaining to the development and management of Air Force-wide and DoD-wide health policy. This included the development and oversight of total force strategic plans and policies pertaining to a full range of direct and indirect health care programs. I also served as the principal advisor to senior leaders in all matters pertaining to reorganizing and integration of programs for support and care of wounded Service members and their families. I also oversaw the medical incentive programs to include retention and special bonus pays and appraised senior leaders of the effectiveness of the programs in maintaining, retaining and providing a quality force in the medical fields. From September 2020 to November 2022, I served as Deputy Director of the Discharge Appeal Review Board ("DARB"), which is an administrative board constituted by the Secretary of Defense and vested with the authority to conduct a final review of a request for an upgrade in the characterization of a discharge or dismissal. In this role, I was responsible for managing the DARB's day-to-day

- 2 -

operations.  As a former Department of Defense official and a former Department of the Air Force official, I can attest that subjecting service members to administrative separation due to treatable medical conditions is a departure from standard practices and will result in immediate and severe career harm regardless of the outcome of the proceedings.

## PROFESSIONAL BACKGROUND

2.      I attended Touro University and obtained a Bachelor of Science in Health Sciences in 2005 and a Master of Science in Health Sciences in 2007.

3.      From February 2007 to April 2021, I served as an officer in the U.S. Air Force in various positions, culminating in my service as Commander of the Aeromedical Evacuation Formal Training Unit.

4.      From May 2012 to October 2014, I served as Director, Reserve Medical Programs in the Office of the Secretary of Defense, Reserve Affairs developing and reviewing policy guidance pertaining to National Guard and Reserve medical personnel, force structure equipment and training to include analysis of medical defense planning guidance and POM instructions, analysis of service POME and budgets, analysis of manpower requirements, and development of proposals for Reserve Corps medical incentives for accession and retention programs.

5.      From October 2014 to September 2020, I served as Assistant Deputy, Health Policy in the Office of the Deputy Assistant Secretary of the Air Force, Reserve Affairs & Airman Readiness.  In this role, I served as the principal advisor in all matters pertaining to the development and management of Air Force-wide and DoD-wide health policy.  This included the development and oversight of total force strategic plans and policies pertaining to a full range of direct and indirect health care programs.  I also served as the principal advisor to senior leaders in all matters pertaining to reorganizing and integration of programs for support and care of wounded

Service members and their families. I also oversaw the medical incentive programs to include retention and special bonus pays and appraised senior leaders of the effectiveness of the programs in maintaining, retaining and providing a quality force in the medical fields.

6. From September 2020 to November 2022, I served as Deputy Director of the Discharge Appeal Review Board ("DARB"), which is an administrative board constituted by the Secretary of Defense and vested with the authority to conduct a final review of a request for an upgrade in the characterization of a discharge or dismissal. In this role, I was responsible for managing the DARB's day-to-day operations.

## THE FEBRUARY 26, 2025 MEMORANDUM

7. Under the February 26, 2025, memorandum, transgender service members who cannot secure a waiver will be directed for administrative separation.

8. These administrative separation proceedings (or "Administrative Board") are governed by DoDI 1332.14 for enlisted personnel and DoDI 1332.30 for officers, along with Service-specific implementing policies. A true and correct copy of DoDI 1332.14 is attached as **Exhibit A** and a true and correct copy of DoDI 1332.30 is attached as **Exhibit B**.

9. The Administrative Board is ordered to follow Department of Defense (DoD) and Service branch instructions. While the outcome is not predetermined, it is rare for a board to disregard DoD policy directives in arriving at its recommendation.

10. Once the Administrative Board makes a recommendation to the separation authority, the only options available are to follow the recommendation of the Administrative Board or to refer the case to the member's Service secretary. Only the Secretary of the relevant Service has authority to overturn the Administrative Board's decision.

11. Administrative separation is typically based on misconduct or failure to meet standards. It is unusual for administrative separation to be used for medical conditions, particularly

for a treatable medical condition where the service member was able to meet all military standards.

12. To my knowledge, there is no precedent for using administrative separation to remove service members with a medical condition that was previously authorized for service, then prohibited, and then authorized again, as is the case with continued service for transgender service members with gender dysphoria or a history of gender dysphoria.

13. In the typical circumstance, when a service member presents with a medical condition, they go through the Medical Evaluation Board (MEB) process at the wing level. From there, they would be referred to the Disability Evaluation System (DES), which allows the military to consider how a person's medical condition impacts their service and potential deployability. A true and correct copy of DoDI 1332.18 is attached as **Exhibit C**.

14. Being placed in administrative separation proceedings can cause immediate and severe career harm. Service members in administrative separation proceedings are designated as non-deployable and cannot be promoted.

15. Moreover, because the entire premise of the February 26 memorandum is that having gender dysphoria is "incompatible with military service," I do not believe that any service member subjected to this process will be able to continue in service.

16. Administrative separation is normally reserved for misconduct or failure to meet standards. This sends a message to service members that those with gender dysphoria are unable to standards. The harm to a service member's ability to continue to serve from initiating this process alone, regardless of outcome, is harmful to a military career.

17. Under generally applicable accessions criteria, all prospective military service members must undergo a rigorous examination to identify any preexisting physical or mental health diagnoses that would preclude accessions.

18. Any individual with a history of suicidality is screened as part of this standard

process. This screening applies to everyone who seeks to access, regardless of gender identity or transgender status.

19. There is no rational basis to single out transgender people for categorical exclusion based on claims of elevated suicide risk. The military's existing screening procedures are designed to identify individuals who may pose a risk, regardless of demographic group.

20. Anyone with a history of anxiety or depression—whether transgender or not—is barred from accessing unless they meet generally applicable criteria to demonstrate those conditions will not limit their ability to serve.

21. The irrationality of excluding otherwise fit applicants based solely on demographic characteristics is why the military does not adopt a categorical approach to other demographic groups who have or may have disproportionate rates of depression, suicidality, anxiety, or other mental health conditions.

22. The policy at issue irrationally excludes transgender people from universal deployment standards that already mandate the discharge of service members who are nondeployable for extended periods of time.

23. Subjecting people with a current or past diagnosis of gender dysphoria, or with symptoms of gender dysphoria to administrative separation proceedings represents a significant departure from the current process for evaluating a person's fitness for continued service when they experience a health condition.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 3, 2025

Martha Soper

4