The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

COMMANDER EMILY SHILLING; *et al.*,

       *Plaintiffs*,

       v.

DONALD J. TRUMP, in his official capacity as President of the United States; *et al.*,

       *Defendants*.

No. 2:25-cv-00241 BHS

**SUPPLEMENTAL DECLARATION OF SHAWN G. SKELLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

I, Shawn G. Skelly, hereby declare as follows:

1.     I am over 18 years of age, of sound mind, and in all respects competent to testify.

2.     I have actual knowledge of the matters stated herein. If called to testify in this matter, I would testify truthfully and competently as to the matters stated herein.

3.     I have reviewed the February 26, 2025, memorandum titled "Additional Guidance on Prioritizing Military Excellence and Readiness" issued by the Office of the Under Secretary of Defense for Personnel and Readiness. I have significant concerns about the immediate and long-term harms this guidance will cause to transgender service members and the ways in which it conflicts with established military policy and practices.

4.     This categorical approach to administratively separate an entire class of people who demonstrate their ability to serve and meet military standards represents a significant departure from standard military practice. There are no other circumstances where service members with a

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212-809-8585

**Human Rights Campaign Foundation**
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762

1    treatable condition that allows them to deploy and meet all readiness standards are nevertheless

2    deemed categorically incapable of service.

3    5.    The policy makes transgender service members ineligible for the Disability

4    Evaluation System (DES), which is both punitive and based on animus. This approach effectively

5    declares that transgender service members are useless and cannot serve despite their demonstrated

6    ability to do so successfully. The guidance separates these service members not based on any

7    independent evaluation of their ability to meet service obligations, which is standard military

8    policy, but solely based on their transgender status.

9    6.    I am aware of many transgender and non-transgender service members who have

10   successfully deployed while on hormone therapy, and I know of no problems that arose because

11   of these circumstances. Transgender and non-transgender service members have proven their

12   ability to meet all deployment and readiness standards while receiving hormone therapy in austere

13   conditions.

14   7.    The administrative separation procedures will severely disrupt the chain of

15   command and erode unit cohesion and trust. This guidance will interfere with appointments,

16   promotions, and assignments as commanders will be unwilling and unable to assign

17   responsibilities to transgender service members they perceive will be subject to imminent

18   separation.

19   8.    The damage to transgender service members began immediately upon the issuance

20   of this guidance. Their career progression is already being negatively affected as their future

21   viability within the military is foreclosed. This will undoubtedly interfere with deployments,

22   assignments, leadership opportunities, and unit cohesion.

23   9.    Service members are currently losing educational and professional development

24   opportunities as their commands anticipate separation.

25   10.   The waiver provisions in sections 4.1(c) and 4.3(c) of the implementing guidance

26   are designed to exclude transgender service members both from accessions and retention rather

SUPPLEMENTAL DECLARATION
OF SHAWN G. SKELLY - 2
CASE NO. 2:25-CV-00241 BHS

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212-809-8585

**Human Rights Campaign
Foundation**
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762

1  than provide genuine pathways for continued service. The requirements for waivers in both

2  contexts bar transgender service members from receiving them.

3        11.     This guidance goes beyond mere exclusion; it actively inflicts harm. No medical

4  professional with expertise in this field could reasonably find this policy to be anything but harmful

5  to transgender service members.

6        12.     By disqualifying transgender service members from treatments for gender

7  transition and ongoing care for gender dysphoria, the guidance cuts off access to medically

8  necessary care. Based on my observations and experience throughout my military career, it is

9  harmful for individuals with gender dysphoria not to obtain appropriate medical treatment.

10       13.     The guidance's approach is cruel in its implementation, particularly in immediately

11 cancelling "all unscheduled, scheduled, or planned surgical procedures associated with facilitating

12 sex reassignment for Service members diagnosed with gender dysphoria."

13       14.     I am aware of no other medical condition for which service members are prohibited

14 from receiving the only known and established means of treatment.

15       15.     The implementing guidance includes financial incentives designed to pressure

16 transgender service members to leave voluntarily, despite the trust and reliance service members

17 have placed in the military's commitment to allow them to serve following gender transition. While

18 financial incentives have previously been used during reductions in force or for elimination of

19 military programs, to my knowledge, they have not been used for separation due to a group-based

20 characteristic or due to a medical condition.

21       16.     Medical costs cannot justify this policy. During my time as Deputy Undersecretary,

22 I was briefed by the Assistant Secretary for Health Affairs and Defense Health Agency staff

23 regarding provision of medical care for transgender service members. In that context, I would have

24 heard of problems, if there were any, including any concerns about costs. In those briefings, no

25 one reported that there were cost issues associated with medical treatment for transgender service

26 members. It was never brought to my attention, nor did I hear anything that suggested this

SUPPLEMENTAL DECLARATION
OF SHAWN G. SKELLY - 3
CASE NO. 2:25-CV-00241 BHS

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212-809-8585

**Human Rights Campaign
Foundation**
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762

1    particular course of care was impactful on the military health system or involved any costs that

2    weren't lost in the wash.

3         17.     The rollout of this policy is unprecedented in the chaos and confusion associated

4    with it. For one, Section 3.4(e) of the February 26 implementing guidance instructs that

5    transgender service members are to be identified within 30 days of the memorandum. Then, two

6    days later on February 28, a clarification was sent out stating that DoD personnel are not to identify

7    affected service members. And an FAQ posted on the DoD website answers a question about how

8    to identify affected personnel by saying that instructions are forthcoming. It is highly unusual to

9    direct the Department to identify service members within 30 days for administrative separation

10   and provide no guidance about how to do that. At the same time, directives have issued halting

11   deployments, halting medical treatments, and directing service members to return from combat

12   posts, all alongside directions not to identify affected service members. Such a process is chaotic

13   and harmful and unprecedented in its lack of clarity and manifestation of confusion.

14        18.     Based on my professional experience in military personnel and readiness, I

15   conclude that this guidance will cause immediate and lasting harm to transgender service members

16   currently serving in the military. The policy disrupts ongoing medical treatment, creates

17   unjustifiable barriers to continued service, and damages the careers and well-being of capable

18   service members who have demonstrated their ability to serve effectively.

19        19.     Rather than enhancing military readiness, this guidance undermines it by removing

20   qualified personnel from service based solely on their transgender status, regardless of their

21   demonstrated ability to meet all service requirements.

22        20.     I have also reviewed Secretary Hegseth's February 7, 2025, Memorandum for

23   Senior Pentagon Leadership entitled, "Prioritizing Military Excellence and Readiness." In that

24   Memorandum, Secretary Hegseth states: "The Under Secretary of Defense for Personnel

25   Readiness is authorized and delegated the authority to provide additional policy implementation

26   guidance outside of the normal DoD issuance process[.]" In the three-and-one-half (3.5) years I

SUPPLEMENTAL DECLARATION
OF SHAWN G. SKELLY - 4
CASE NO. 2:25-CV-00241 BHS

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212-809-8585

**Human Rights Campaign
Foundation**
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762

1   served in the DoD, I never saw an authorization of this sort. It is ahistorical, in terms of doing

2   away with the normal issuance of policy. The reason the DoD has its standard issuance process is

3   to ensure that the potential impacts are considered, including potential harms, costs, and

4   implementation considerations and are as fully understood as could possibly be determined. As a

5   part of this review, the DoD gets comments from all the various stakeholders including uniformed

6   services, military departments, military health, joint staff with respect to impact on combat

7   readiness. General Counsel in DoD, and others would all have a chance to review as well. Then

8   we would submit a document that listed both our recommendations for improving implementation

9   of proposed policy, as well as things we would change based on what we learned from the review.

10  A policy change as significant as the one currently being undertaken by the Administration, would

11  take over a year and should involve a review of the longitudinal data that DoD has from the ten

12  years in which transgender service members have been serving, as well as three-and-a-half years

13  of data related to service members who transitioned under existing policy. Rather than consult with

14  stakeholders and review and consider the data, what Secretary Hegseth authorized allows someone

15  to act by fiat, without any review or consultation whatsoever.

16

17

18                    [REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

19

20

21

22

23

24

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212-809-8585

**Human Rights Campaign
Foundation**
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762

1    I declare under penalty of perjury under the laws of the United States that the foregoing is

2    true and correct.

3        Dated: March 16, 2025.

4                                                          _____

5                                                          Shawn G. Skelly

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212-809-8585

**Human Rights Campaign
Foundation**
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762