THE HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| COMMANDER EMILY SHILLING; *et al.*,<br><br>                      *Plaintiffs*,<br><br>            v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; *et al.*,<br><br>                     *Defendants*. | No. 2:25-cv-241 (BHS)<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF IN RESPONSE TO COURT ORDER (DKT. 95) AND IN FURTHER SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**NOTE ON MOTION CALENDAR: MARCH 25, 2025** |

PLAINTIFFS' SUPPLEMENTAL BRIEF IN RESPONSE TO COURT ORDER
(CASE NO. 2:25-CV-241 BHS)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212-809-8585

**Human Rights Campaign Foundation**
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762

# TABLE OF CONTENTS

Page(s)

I. Introduction ................................................................................................................... 1

II. Argument ...................................................................................................................... 2

    a. The March 21 Guidance Reifies that the Military Ban Categorically Bars Transgender Persons from Military Service. .......................................................... 2

    b. The March 21 Guidance Documents Defendants' Ever-Shifting Attempts to *Post-Hoc* Justify the Animus-based Ban. ............................................................. 5

    c. The March 21 Guidance Shows the Lack of Justifications for the Ban ................. 6

    d. The Ban Has Already Adversely Impacted Plaintiffs Shilling and Dremann ................................................................................................................. 7

III. Conclusion .................................................................................................................... 8

PLAINTIFFS' SUPPLEMENTAL BRIEF IN RESPONSE TO COURT ORDER
(CASE NO. 2:25-CV-241 BHS)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212-809-8585

**Human Rights Campaign Foundation**
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762

## I. INTRODUCTION

On March 21, 2025, the person performing the duties of the Under Secretary of Defense for Personnel and Readiness issued a new memorandum, titled "Prioritizing Military Excellence and Readiness: Military Department Identification" (Dkt. 92-1, "March 21 Guidance"), providing further guidance on the implementation of Executive Order 14183 (the "Military Ban"). The March 21 Guidance reasserts the incredibly broad and categorical nature of the Ban, including the "Department policy that Service members who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria are no longer eligible for military service and will be processed for separation." Dkt. 92-1 at 1.

That same day, Defendants sought to dissolve the preliminary injunction issued in *Talbott v. United States*, No. 1:25-cv-00240-ACR, arguing that the March 21 Guidance "confirms that the phrase 'exhibit symptoms consistent with gender dysphoria' refers to the diagnostic criteria outlined in the Diagnostic and Statistical Manual of Mental Disorders," and that therefore the Ban and its implementing guidance do not represent a categorical bar on transgender people serving in the military. *See* Defs' Mot. to Dissolve, *Talbott v. United States*, No. 1:25-cv-00240-ACR (D.D.C. filed Mar. 21, 2025), at 2. This is not the case.

The March 21 Guidance does not undermine Plaintiffs' arguments in support of a motion for a preliminary injunction. It does nothing to cure the animus-laden nature of the Ban. Indeed, if anything, the guidance provides further support for Plaintiffs' arguments that the Ban and its implementing guidance are unconstitutional. The March 21 Guidance demonstrates the categorical nature of the Ban. It also provides further proof that the Ban is not the product of "a meaningful exercise of military judgment," *Karnoski v. Trump*, 926 F.3d 1180, 1201 (9th Cir. 2019), but rather a rush to judgment to excise from the military any person who expresses a "'gender identity' divergent from [their] [birth] sex" because expressing such an identity is purportedly "false" and "cannot satisfy the rigorous standards necessary for Military service." Dkt. 58-4 (February 7 Hegseth Memo, quoting Executive Order 14183).

PLAINTIFFS' SUPPLEMENTAL BRIEF
IN RESPONSE TO COURT ORDER - 1
(CASE NO. 2:25-CV-241 BHS)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Lambda Legal Defense and
Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212-809-8585

Human Rights Campaign
Foundation
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762

Accordingly, the Court should, like the court in *Talbott* and the court in *Ireland v. Hegseth*, No. 1:25-cv-01918-CPO-AMD (D.N.J. Mar. 24, 2025),[1] enjoin the implementation, administration, and enforcement of the Ban and its related guidance and directives.

## II.  ARGUMENT

### A. The March 21 Guidance Reifies that the Military Ban Categorically Bars Transgender Persons from Military Service.

In their motion to dissolve in *Talbott*, Defendants misleadingly argued that the March 21 Guidance clarified the ban on military service is based on gender dysphoria and not transgender status.  This is untrue; it is also a distinction without a difference.

The March 21 Guidance uses the same language as the February 26 Guidance, which the Department of Defense ("DoD") stated meant that "*[t]ransgender* troops are disqualified from service."  Dkt. 61-2 (emphasis added).  Defendants have not disavowed such characterization. Nor does the March 21 Guidance supplant the Ban's and Secretary Hegseth's proclamation that "expressing a false 'gender identity' divergent from an individual's sex cannot satisfy the rigorous standards necessary for military service."  Military Ban § 1 (Purpose); *see also* Dkt. 58-4.

As Plaintiffs argue in their briefing, the Military Ban and its related guidance categorically bar any transgender person from serving in the military.  Indeed, Defendants concede that even taking the March 21 Guidance into account, it is the policy of the DoD, pursuant to Executive Order 14183, to exclude from military service anyone who will not live in accordance with their birth sex. **Exhibit 38**, 31:11-17 ("THE COURT: But the policy also requires them to live in their biological sex; right? So you would cover anyone who has transitioned. That would cover anyone who has transitioned or has attempted to transition even non-medically. MS. LIN: Yes."), 31:18-22 ("THE COURT: Okay. I just want to make sure that the DoD policy, the Hegseth policy, putting

---

[1] On March 24, 2025, the district in *Ireland* granted the temporary restraining order (TRO) request by plaintiffs, two transgender men currently serving in the Air Force, enjoining defendants from "initiating administrative separation proceedings against Plaintiffs based on their transgender status" and "from enforcing or implementing any aspect of the Orders as to Plaintiffs."  *See* Gonzalez-Pagan Decl., **Exhibit 37** ("*Ireland* Order").

PLAINTIFFS' SUPPLEMENTAL BRIEF IN RESPONSE TO COURT ORDER - 2
(CASE NO. 2:25-CV-241 BHS)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Lambda Legal Defense and Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212-809-8585

Human Rights Campaign Foundation
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762

the exemption aside, excludes from military service anyone who won't live in their biological sex; right? It's one of the criteria. MS. LIN: Correct.").[2] And as Dr. Ettner has testified, "[b]y purporting to allow only those individuals who never acknowledge or act upon their identity incongruent with their birth-assigned sex to remain in service, the policy ensures that any openly transgender individual will ultimately be pushed out from or be unable to join the military." Dkt. 85, ¶12. "This is not a meaningful distinction—it is simply an indirect way of achieving the same result." *Id.* Indeed, the Supreme Court has "declined to distinguish between status and conduct" in analogous contexts. *Christian Legal Soc'y Chapter of the Univ. of California, Hastings Coll. of the L. v. Martinez*, 561 U.S. 661, 689 (2010); *see also Lawrence v. Texas*, 539 U.S. 558, 583 (2003) (O'Connor, J., concurring) (Where "the conduct targeted by th[e] law … is closely correlated" with the status of being gay, the law "is targeted at more than conduct," "[i]t is instead directed toward gay persons as a class."); *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 270 (1993); *cf. Castaneda v. Partida*, 430 U.S. 482, 495 (1977).

The March 21 Guidance reasserts the Ban and the February 26 Guidance by declaring that anyone who has "a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria" is barred from military service. This is a categorical ban on transgender people serving in the military. As Defendants have conceded, only people who are transgender can have gender dysphoria, and therefore every person barred on the basis of a gender dysphoria diagnosis is a transgender person. *See* **Exhibit 38**, 23:18-22 ("THE COURT: Okay. … you would agree with me that everyone with gender dysphoria is transgender; right? MS. LIN: Yes."), 24:11-17 ("THE COURT: People with gender dysphoria are a subset of transgender people; right? MS. LIN: Yes. THE COURT: Okay. So when you are getting rid of everybody with gender dysphoria, everybody that you are getting rid of is transgender; right? MS. LIN: That they're trans identifying, yes.").

---

[2] A copy of the transcript of the March 21, 2025 hearing pertaining to Defendants' motion to dissolve in *Talbott* is attached as **Exhibit 38** to the Declaration of Omar Gonzalez-Pagan. Unless otherwise noted, all exhibits referenced herein are attached to the Declaration of Omar Gonzalez-Pagan.

PLAINTIFFS' SUPPLEMENTAL BRIEF IN RESPONSE TO COURT ORDER - 3
(CASE NO. 2:25-CV-241 BHS)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Lambda Legal Defense and Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212-809-8585

Human Rights Campaign Foundation
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762

*See also* Dkt. 82, at 6 (citing *Kadel v. Folwell*, 100 F.4th 122, 149 (4th Cir. 2024) (en banc); *C.P. ex rel. Pritchard v. Blue Cross Blue Shield of Ill.*, 2022 WL 17788148, at *6 (W.D. Wash. Dec. 19, 2022) (Bryan, J.)).

Moreover, by referencing "symptoms consistent with[] gender dysphoria," the March 21 Guidance (and other guidance implementing the Ban) casts a very wide net. That is because even "[t]he mere acknowledgment of being transgender inherently reveals a disconnect between one's gender identity and assigned birth sex, which would be considered a 'symptom' of gender dysphoria and implies the potential for transition." Dkt. 85, ¶10. Defendants nonetheless try to argue this is somehow narrower because it is limited to the diagnostic criteria contained in the DSM-5. Not so. The DSM-5's diagnostic criterion for gender dysphoria of "[a] marked incongruence between one's experienced/expressed gender and natal gender" can be "manifested by," *inter alia*, "[a] strong desire to be treated as the other gender," "[a] strong desire to be of the other gender," or "[a] marked incongruence between one's experienced/expressed gender and primary and/or secondary sex characteristics." Dkt. 92-1 (Attachment 2, "DSM-5 Criteria for Gender Dysphoria").[3]

Simply put, the March 21 Guidance does not alter the scope of the Ban. Rather, it reifies that the Ban and its implementing guidance cast aspersions and bar transgender people from military service because of their transgender status. Even taking into account the March 21 Guidance, no transgender person can openly serve in the military, and every one of the individual

---

[3] Evincing the lack of care and deliberation that characterizes the Ban and its related guidance, the March 21 Guidance misstates the DSM-5's diagnostic criteria for gender dysphoria, stating that the criteria are "a marked incongruence and clinically significant distress or impairment for at least 6 months." Dkt. 92-1, at 1 n.1. Again, this is incorrect. The six-month duration requirement pertains solely to the marked incongruence criterion and not the distress or impairment criterion. As the DSM-5 criteria attached to the March 21 Guidance show, a gender dysphoria diagnosis is applicable when there is "[a] marked incongruence between one's experienced/ expressed gender and natal gender of <u>at least 6 months in duration</u>" and "[t]he condition is associated with clinically significant distress or impairment in social, occupational, or other important areas of functioning." Dkt. 92-1 (Attachment 2) (emphasis added).

PLAINTIFFS' SUPPLEMENTAL BRIEF IN RESPONSE TO COURT ORDER - 4
(CASE NO. 2:25-CV-241 BHS)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Lambda Legal Defense and Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212-809-8585

Human Rights Campaign Foundation
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762

Plaintiffs would be barred from military service, regardless of their records of distinction and honorable service.

### B. The March 21 Guidance Documents Defendants' Ever-Shifting Attempts to *Post-Hoc* Justify the Animus-based Ban.

As Plaintiffs have demonstrated in their briefing, and as the *Talbott* court held, the Ban is based on animus towards transgender people. Nothing in the March 21 Guidance changes the fact that the Ban is based on the premise that being transgender is inconsistent with "honesty, humility, … and integrity." Military Ban §2; Dkt. 58-7, §1(b). And as the Supreme Court has articulated, "identif[ying] persons by a single trait and then den[ying] them protection across the board," constitutes "a denial of equal protection of the laws in the most literal sense." *Romer v. Evans*, 517 U.S. 620, 633-34 (1996).[4]

If anything, the March 21 Guidance further demonstrates that even at this late stage, Defendants are still searching for a justification for the Ban they are implementing. It is, in other words, just part of "a biased effort to justify a predetermined outcome, not a fair analysis of the evidence." *Dekker v. Weida*, 679 F. Supp. 3d 1271, 1281 (N.D. Fla. 2023), *appeal pending*, No. 23-12155 (11th Cir.). The Court should not countenance this exercise in throwing spaghetti at the wall to see what sticks. As the Ninth Circuit recognized in *Karnoski*, under our Constitution, the justifications proffered by the government for a policy that discriminates against a class of people "'must be genuine, not hypothesized or invented *post hoc* in response to litigation.'" *Karnoski*, 926 F.3d at 1200 (quoting *United States v. Virginia*, 518 U.S. 515, 533 (1996)).

Indeed, the March 21 Guidance evinces the haphazard nature with which this animus-laden Ban is being implemented. It is further proof that the Ban is not the product of reasoned independent military judgment, but rather a rushed directive to remove from the military anyone

---

[4] The court can also take note of the Secretary of Defense's own statements, which further demonstrate the animus that motivates the Ban. On March 22, 2025, in response to a news story about the preliminary injunction in *Talbott*, Defendant Hegseth tweeted that "Since "Judge" Reyes is now a top military planner, she/they can report to Fort Benning at 0600," derisively misgendering Judge Reyes and mocking the use pronouns. *See* **Exhibit 39**.

PLAINTIFFS' SUPPLEMENTAL BRIEF IN RESPONSE TO COURT ORDER - 5
(CASE NO. 2:25-CV-241 BHS)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Lambda Legal Defense and Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212-809-8585

Human Rights Campaign Foundation
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762

who is transgender. To be clear, the March 21 Guidance is not based on any new studies, reports, panels, or surveys; it is based on the same stale and speculative misinformation as the Ban's prior guidance. And like the February 26 Action Memo (Dkt. 71-1), it ignores unrefuted evidence undermining the Ban's antagonistic contentions about transgender people's fitness for service: years of experience and numerous declarations demonstrating that transgender servicemembers like Plaintiffs enhance rather than undermine military readiness and unit cohesion.

One need only take stock of Defendants' concessions after the issuance of the March 21 Guidance. For example, Defendants concede that they do not even know how many people in the military have gender dysphoria. **Exhibit 38**, 17:6-10 ("THE COURT: Okay. So you don't know today how many people have gender dysphoria in the military; right? MS. LIN: That's correct. THE COURT: Because you don't track that; right? MS. LIN: Correct."). And they have not investigated whether there are any complaints pertaining to servicemembers with a "diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria" that relate to military readiness or unit cohesion. *Id.*, 17:11-24. Indeed, they have presented no such evidence in this case either generally or as it pertains to any of the Active-Duty Plaintiffs. *Id.*, 18:16-21 ("THE COURT: In any event, you can't tell me right now, there's nothing in the record right now that tells me how many complaints there have been with respect to unit cohesion and military readiness, right, with respect to gender dysphoria? MS. LIN: It's not in the record.").

**C. The March 21 Guidance Shows the Lack of Justifications for the Ban.**

Following the issuance of the March 21 Guidance, Defendants conceded that the March 21 Guidance had no effect on the Defendants' justifications for the Ban based on military readiness, unit cohesion, or costs. For example, Defendants conceded that they still have no evidence that people with gender dysphoria are inherently unfit to serve in the military. **Exhibit 38**, 19:17-20. They also conceded that they have no evidence that having gender dysphoria is inconsistent with honesty, humility, and integrity. *Id.*, 19:21-24. Indeed, Defendants have admitted that the March 21 Guidance has no bearing on the analysis on military readiness of excising potentially thousands

PLAINTIFFS' SUPPLEMENTAL BRIEF IN RESPONSE TO COURT ORDER - 6
(CASE NO. 2:25-CV-241 BHS)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Lambda Legal Defense and Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY 10005-3919
Telephone: 212-809-8585

Human Rights Campaign Foundation
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762

of transgender people from the military. *Id.*, 22:20-25. And Defendants have admitted that the March 21 Guidance provides no evidence refuting the numerous declarations from former military officials who were involved in openly integrating transgender people into the military. *Id.*, 23:4:9.

In addition, the March 21 Guidance illustrates how costs and the impact on the public fisc do not provide a justification for the Ban. Under the March 21 Guidance, the true purpose of which is to delineate the ways in which Defendants will go about the task of *identifying* transgender people for involuntary separation from the military, Defendants will undertake a review of the medical records of millions of servicemembers in order to try to identify the transgender servicemembers who have been diagnosed with (or exhibited symptoms of) gender dysphoria at any point. Such an extensive review of records would be no small or inexpensive task. Nor would discharging thousands of servicemembers: As Judge Pechman previously observed, "the cost to discharge transgender service members is estimated to be *more than 100 times greater* than the cost to provide transition-related healthcare." *Karnoski v. Trump*, No. C17-1297-MJP, 2017 WL 6311305, at *8 (W.D. Wash. Dec. 11, 2017).

**D. The Ban Has Already Adversely Impacted Plaintiffs Shilling and Dremann.**

Consistent with the Court's March 4, 2025 Minute Order requiring "the Government to immediately notify Plaintiffs and the Court before any changes are made to Plaintiffs' status quo in any respect," Dkt. 57, and with counsel's duties to the Court, Plaintiffs hereby inform the Court that Plaintiffs Commander Emily Shilling and Commander Blake Dremann have already been negatively affected by the Ban.

Because the Ban and its implementing guidance remain in effect and the impending deadline of March 28, 2025 set by Defendants for voluntary separation is fast approaching, Plaintiffs Shilling and Dremann felt compelled to preemptively file for so-called "voluntary" separation under the Temporary Early Retirement Authority (TERA) set by the February 26 Guidance. *See* Shilling Suppl. Decl. ¶ 8; Dremann Suppl. Decl. ¶ 7. This election was not voluntary but rather forced and coerced because neither Plaintiff Shilling nor Plaintiff Dremann

PLAINTIFFS' SUPPLEMENTAL BRIEF IN RESPONSE TO COURT ORDER - 7
(CASE NO. 2:25-CV-241 BHS)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Lambda Legal Defense and Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212-809-8585

Human Rights Campaign Foundation
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762

want to separate or retire from the United States Navy at this time, and both hope and desire that a preliminary injunction in this case would toll their separation date and, should the courts ultimately find in their favor, intend to withdraw their applications for early retirement under TERA. *See* Shilling Suppl. Decl. ¶¶ 6, 11-12; Dremann Suppl. Decl. ¶¶ 5, 10-11.

As a result of their forced filing, Commanders Shilling and Dremann are now considered non-deployable under the Ban's implementing guidance. *See* Exhibit A to Dremann Suppl. Decl. Both Plaintiffs have chosen the latest possible retirement date allowed by Defendant United States Navy (June 1, 2025) and have only opted for this option because not doing so would result in their involuntary separation, if the Ban were not enjoined, and loss of benefits and discharge status available through so-called "voluntary separation." *See* Shilling Suppl. Decl. ¶¶ 9-10; Dremann Suppl. Decl. ¶¶ 8-9.

In light of these developments, Plaintiffs are submitting an amended proposed order asking the Court to order (1) such applications for voluntary separation be held in abeyance; (2) that Plaintiffs Shilling and Dremann not be placed in administrative non-deployable status; and (3) that any chosen separation or retirement date pursuant to their applications be tolled during the pendency of this case.[5]

### III.  CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion for a preliminary injunction.

Pursuant to Local Rules W.D. Wash. LCR 7(e)(6), I certify that this memorandum contains 2,848 words.

Dated this 25th day of March 2025.

---

[5] The Amended Proposed Order also adds Plaintiff Sierra Moran, who was added in the Amended Complaint (Dkt. 59) to the relief requested.

PLAINTIFFS' SUPPLEMENTAL BRIEF IN RESPONSE TO COURT ORDER - 8
(CASE NO. 2:25-CV-241 BHS)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Lambda Legal Defense and Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212-809-8585

Human Rights Campaign Foundation
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762

Respectfully submitted,

By: s/ *Matthew P. Gordon*
    Matthew P. Gordon, WSBA No. 41128
    MGordon@perkinscoie.com

By: *s/Abdul Kallon*
    Abdul Kallon, WSBA No. 60719
    AKallon@perkinscoie.com

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

By: s/ *Omar Gonzalez-Pagan*
    Omar Gonzalez-Pagan (*pro hac vice*)
    ogonzalez-pagan@lambdalegal.org

**Lambda Legal Defense and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585
Facsimile: 855.535.2236

*Attorneys for Plaintiffs*


Danielle Sivalingam (*pro hac vice*)
Perkins Coie LLP
505 Howard Street, Suite 1000
San Francisco, CA 94105-3204
Telephone: 415.344.7000
Facsimile: 415.344.7050
Email: DSivalingam@perkinscoie.com

Mary Grace Thurmon (*pro hac vice*)
Bo Yan Moran (*pro hac vice*)
Perkins Coie LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone: 650.838.4300
Facsimile: 650.838.4350
Email: MThurmon@perkinscoie.com
Email: BMoran@perkinscoie.com

PLAINTIFFS' SUPPLEMENTAL BRIEF IN RESPONSE TO COURT ORDER - 9
(CASE NO. 2:25-CV-241 BHS)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212.809.8585

**Human Rights Campaign Foundation**
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762

Gabriella Romanos Abihabib (*pro hac vice*)
Perkins Coie LLP
1155 Avenue of the Americas, 22nd Floor
New York, NY 10036-2711
Telephone: 212.262.6900
Facsimile: 212.977.1649
Email: GRomanos@perkinscoie.com

*Attorneys for Plaintiffs*


Sasha Buchert (*pro hac vice*)
Lambda Legal Defense and Education Fund, Inc.
815 16th St. NW, Suite 4140
Washington, DC 20006
Telephone: 202.804.6245
Facsimile: 855.535.2236
Email: SBuchert@lambdalegal.org

Jennifer C. Pizer (*pro hac vice*)
Lambda Legal Defense and Education Fund, Inc.
800 South Figueroa Street, Suite 1260
Los Angeles, CA 90017
Telephone: 213.382.7600
Facsimile: 855.535.2236
Email: JPizer@lambdalegal.org

Camilla B. Taylor (*pro hac vice*)
Kenneth Dale Upton, Jr. (*pro hac vice*)
Lambda Legal Defense and Education Fund, Inc.
3656 N Halsted St.
Chicago, IL 60613
Telephone: 312.663.4413
Facsimile: 855.535.2236
Email: CTaylor@lambdalegal.org
Email: KUpton@lambdalegal.org

Kell Olson (*pro hac vice*)
Lambda Legal Defense and Education Fund, Inc.
3849 E Broadway Blvd, #136
Tucson, AZ 85716
Telephone: 323.370.6915
Facsimile: 855.535.2236
Email: KOlson@lambdalegal.org

PLAINTIFFS' SUPPLEMENTAL BRIEF IN RESPONSE TO COURT ORDER - 10
(CASE NO. 2:25-CV-241 BHS)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212-809-8585

**Human Rights Campaign Foundation**
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762

1
2  *Attorneys for Plaintiffs*
3
4  Sarah Warbelow (*pro hac vice*)
   Cynthia Cheng-Wun Weaver (*pro hac vice*)
5  Ami Rakesh Patel (*pro hac vice*)
   Human Rights Campaign Foundation
6  1640 Rhode Island Ave. N.W.
   Washington, DC 20036
7  Telephone: 202.527.3669
   Facsimile: 202.347.5323
8  Email: Sarah.Warbelow@hrc.org
   Email: Cynthia.Weaver@hrc.org
9  Email: Ami.Patel@hrc.org

10 *Attorneys for Plaintiffs*
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

PLAINTIFFS' SUPPLEMENTAL BRIEF IN RESPONSE TO COURT ORDER - 11
(CASE NO. 2:25-CV-241 BHS)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212-809-8585

**Human Rights Campaign Foundation**
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762