THE HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| COMMANDER EMILY SHILLING, et al., | No. 2:25-cv-241-BHS |
| Plaintiffs, | DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING APPEAL FROM PRELIMINARY INJUNCTION |
| v. | |
| UNITED STATES OF AMERICA, et al., | NOTE ON MOTION CALENDAR: August 22, 2025 |
| Defendants. | |

Defendants respectfully request a stay of proceedings in this Court pending appeal from the Court's preliminary injunction.

Pursuant to Local Rules W.D. Wash. LCR 7(e)(6), I certify that this memorandum contains 3,037 words, in compliance with the Local Civil Rules.

///

MOTION TO STAY
PROCEEDINGS
CASE NO. 2:25-CV-241-BHS

U.S. DEPARTMENT OF
JUSTICE
1100 L Street NW
Washington, DC 20530

1

**INTRODUCTION**

2    On March 27, 2025, this Court issued a universal preliminary injunction barring the

3    Department of Defense (the "Department") from implementing its February 26, 2025 policy on

4    service by persons with gender dysphoria (the "Hegseth Policy"). *See Shilling v. United States*,

5    773 F. Supp. 3d 1069 (W.D. Wash. 2025).    The following day, Defendants appealed the

6    preliminary injunction to the Court of Appeals. *See* 25-2039 (9th Cir.). The appeal is fully briefed,

7    and the Ninth Circuit will hear argument October 20–24, 2025, or November 3–7, 2025, in

8    Portland, Oregon. *See* Notice, *Shilling v. United States*, No. 25-2039 (9th Cir. June 2, 2025).

9    Defendants respectfully request that this Court stay further proceedings in this matter pending final

10    resolution of Defendants' preliminary injunction appeal.

11    As discussed below, it is possible that the Ninth Circuit could find that Plaintiffs are

12    unlikely to succeed on the merits of any of their claim, thus significantly narrowing the case. At

13    a minimum, the Ninth Circuit's forthcoming decision will provide helpful guidance on the legal

14    framework governing Plaintiffs' claims, which is likely to affect the factual scope and further

15    proceedings in this case. Continuing forward with district court proceedings in this posture would

16    result in needlessly duplicative litigation, potentially unnecessary motion practice, and requests

17    for Court intervention to resolve disputes regarding the administrative record and/or discovery. A

18    stay of further proceedings, until the parties and the Court receive appellate guidance, would

19    therefore conserve resources of both the Court and the parties.

20    Moreover, a stay is particularly appropriate here because (1) the appeal presents "great

21    issues[,] great in their complexity, great in their significance," that have "far-reaching importance

22    to the parties and the public," *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936), and (2) since the

23    time of the preliminary injunction, the Supreme Court has issued three decisions that undermined

24    Plaintiffs' claims. As discussed more below, the Supreme Court stayed this Court's injunction

25    pending disposition of the Ninth Circuit appeal and disposition of a petition for writ of certiorari

26    if one is timely sought, *United States v. Shilling*, No. 24A1030, 2025 WL 1300282 (U.S. May 6,

MOTION TO STAY
PROCEEDINGS
CASE NO. 2:25-CV-241-BHS

U.S. DEPARTMENT OF
JUSTICE
1100 L Street NW
Washington, DC 20530

2025); in *United States v. Skrmetti*, 145 S. Ct. 1816 (2025), the Supreme Court held that rational basis review applies to equal protection challenges like the one Plaintiffs allege in this case; and in *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2550 (2025), the Supreme Court barred universal injunctions like the one issued here.

In these circumstances, staying the district court proceedings pending resolution of the preliminary injunction appeal makes eminent sense because it would support judicial economy, would allow the parties to address the relevant issues with the benefit of the Ninth Circuit's ruling, and would avoid expending resources that later may prove to be unnecessary. In the interests of maintaining an "orderly course of justice," this Court should grant a stay until the Ninth Circuit issues its decision that very likely will "simplify[]" the "issues, proof, and questions of law" for moving forward and will do so in relatively short order as the appeal is fully briefed and scheduled for argument this fall. *See CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

## BACKGROUND

Because the Court is already familiar with the background of this case, *see Shilling*, 773 F. Supp. 3d at 1079–87, Defendants will only repeat the salient details here.

On January 27, 2025, President Trump signed Executive Order 14,183. *Id.* at 1081. One month later, the Department implemented the Executive Order by issuing the Hegseth Policy. *See* ECF No. 58-7. Plaintiffs—who had already sued to challenge Executive Order 14,183—amended their complaint (ECF No. 59) to challenge the Hegseth Policy. After Plaintiffs supplemented their prior motion for preliminary injunction (ECF No. 60), the Court held a hearing on March 25, 2025 (ECF No. 100), and entered a preliminary injunction two days later, 773 F. Supp. 3d 1069.

Defendants immediately appealed the injunction (ECF No. 105) and filed an emergency motion for an administrative stay from the Ninth Circuit (ECF No. 109). After the Ninth Circuit denied that stay, Defendants sought a stay from the Supreme Court. *See* Appl. for a Stay of the Injunction, *United States v. Shilling*, No. 24A-1030 (U.S. Apr. 25, 2025). On May 6, 2025, the Supreme Court stayed this Court's preliminary injunction "pending the disposition of the appeal

MOTION TO STAY
PROCEEDINGS
CASE NO. 2:25-CV-241-BHS

U.S. DEPARTMENT OF
JUSTICE
1100 L Street NW
Washington, DC 20530

1    in the United States Court of Appeals for the Ninth Circuit and disposition of a petition for a writ

2    of certiorari, if such a writ is timely sought."  ECF No. 115.

3        As noted above, the merits are fully briefed and argument is scheduled for either October

4    20–24, 2025, or November 3–7, 2025.

5                              **LEGAL STANDARD**

6        The "power to stay proceedings is incidental to the power inherent in every court to control

7    the disposition of the causes on its docket with economy of time and effort for itself, for counsel,

8    and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936); *see also Clinton v.*

9    *Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as

10   an incident to its power to control its own docket.").  "Especially in cases of extraordinary public

11   moment, the individual may be required to submit to delay not immoderate in extent and not

12   oppressive in its consequences if the public welfare or convenience will thereby be promoted."

13   *Landis*, 299 U.S. at 256.  That is the case here, where this matter involves "great issues[,] great in

14   their complexity, great in their significance," that have "far-reaching importance to the parties and

15   the public." *Id.*

16       "Where it is proposed that a pending proceeding be stayed, the competing interests which

17   will be affected by the granting or refusal to grant a stay must be weighed." *CMAX, Inc. v. Hall*,

18   300 F.2d 265, 268 (9th Cir. 1962).  "Among these competing interests are the possible damage

19   which may result from the granting of a stay, the hardship or inequity which a party may suffer in

20   being required to go forward, and the orderly course of justice measured in terms of the simplifying

21   or complicating of issues, proof, and questions of law which could be expected to result from a

22   stay." *Id.*  Accordingly, "[d]istrict courts often stay proceedings where resolution of an appeal . . .

23   is likely to provide guidance to the court in deciding issues before it." *Washington v. Trump*, Civ.

24   A. No. 17-0141 (JLR), 2017 WL 2172020, at *2 (W.D. Wa. May 17, 2017) (staying district court

25   proceedings where a separate pending appeal "involves many issues that overlap with the present

26   litigation"); *see also Farris v. Seabrook*, Civ. A. No. 11-5431 (RJB), 2011 WL 3665123, at *2

MOTION TO STAY
PROCEEDINGS
CASE NO. 2:25-CV-241-BHS

U.S. DEPARTMENT OF
JUSTICE
1100 L Street NW
Washington, DC 20530

1   (W.D. Wa. Aug. 19, 2011) (granting stay of proceedings until Ninth Circuit decides preliminary

2   injunction appeal where "the Court and the parties would benefit from direction from the Ninth

3   Circuit on the issues raised in this case").  A stay of district court proceedings "to await a federal

4   appellate decision that is likely to have a substantial or controlling effect on the claims and issues

5   in the stayed case" is "at least a good, if not an excellent" reason to stay district court proceedings.

6   *Miccosukee Tribe of Indians of Fla. v. S. Fla. Water Mgmt. Dist.*, 559 F.3d 1191, 1998 (11th Cir.

7   2009).

8                                                    **ARGUMENT**

9           The Court should stay further proceedings until the Ninth Circuit decides the appeal

10  because the Ninth Circuit's decision will foster "the orderly course of justice measured in terms of

11  the simplifying or complicating of issues, proof, and questions of law," without any significant

12  ensuing damage or hardship from the stay.  *CMAX*, 300 F.2d at 268.  A stay is particularly

13  appropriate here where the appeal presents "great issues[,] great in their complexity, great in their

14  significance," that have "far-reaching importance to the parties and the public," *Landis*, 299 U.S.

15  248, 254 (1936), and where the Supreme Court has issued three decisions since the time of the

16  preliminary injunction that relate to both the merits of Plaintiffs' claims and the available relief—

17  all of which are at issue on appeal with the Ninth Circuit.

18          *First*, on May 6, 2025, the Supreme Court stayed this Court's injunction pending

19  disposition of the Ninth Circuit appeal and disposition of a petition for writ of certiorari if one is

20  timely sought.  *Shilling*, No. 24A1030, 2025 WL 1300282.  Although the Court did not issue an

21  opinion, the stay itself means that at least five Justices, in consideration of the four factors that

22  "substantial[ly] overlap" with the preliminary injunction factors, including the likelihood of

23  succeeding on the merits factor, deemed a stay appropriate.  *See Nken v. Holder*, 556 U.S. 418,

24  434 (2009) (holding that for a stay application to be granted in the Supreme Court, the applicant

25  must make "'a strong showing that [it] is likely to succeed on the merits'").  Only three Justices

26  indicated that they would deny the stay application.  *Shilling*, No. 24A1030, 2025 WL 1300282.

MOTION TO STAY
PROCEEDINGS
CASE NO. 2:25-CV-241-BHS

U.S. DEPARTMENT OF
JUSTICE
1100 L Street NW
Washington, DC 20530

*Second*, the Supreme Court decided *Skrmetti*, 145 S. Ct. 1816, a case involving an equal protection challenge to a state law's prohibition on certain medical interventions for gender dysphoria and related disorders in minors. Like Plaintiffs here, the *Skrmetti* plaintiffs argued that the state law discriminated on the basis of sex and "transgender status" and could not withstand intermediate scrutiny. *Id.* at 1829, 1832–33. The Supreme Court rejected those arguments and upheld the law under rational basis review, which requires only the existence of any conceivable state of facts that could provide a rational basis for the classification. *Id.* at 1835.

This Court previously held that "discriminating against a person for being transgender inherently discriminates against that individual based on sex." *Shilling*, 773 F. Supp. 3d at 1092. Putting aside that the Hegseth Policy does not discriminate against anyone "for being transgender," *Skrmetti* affirms that "sex-based classification[]" means "prohibit[ing] conduct for one sex that it permits for the other." 145 S. Ct. at 1831. Like the Tennessee law in *Skrmetti*, the Hegseth Policy does not treat anyone differently on the basis of sex and applies evenhandedly to men and women alike. Also like *Skrmetti*, the Hegseth Policy turns on the diagnosis of a medical condition and related interventions, not sex or transgender status. At a minimum, the Ninth Circuit's forthcoming decision on the application of *Skrmetti* to this case will provide helpful guidance on the governing legal framework for Plaintiffs' claims that will likely affect the factual scope and further proceedings in this case.

Notably, this Court relied on the Supreme Court's interpretation of Title VII of the Civil Rights Act of 1964 in *Bostock v. Clayton County*, 590 U.S. 644 (2020), in concluding that the Hegseth Policy discriminates on the basis of sex. *See Shilling*, 773 F. Supp. 3d at 1092. *Skrmetti*, however, recognized that "Title VII's 'because of' test incorporates the traditional but-for causation standard, which 'directs [the court] to change one thing at a time and see if the outcome changes[,]'" and if it does, there is a "but-for cause." 145 S. Ct. at 1834 (quoting *Bostock*, 590 U.S. at 656). As Justices Thomas and Alito explained in their concurring opinions in *Skrmetti*, the "but-for cause" analysis in *Bostock*—derived from "the specific language employed in Title

MOTION TO STAY
PROCEEDINGS
CASE NO. 2:25-CV-241-BHS

U.S. DEPARTMENT OF
JUSTICE
1100 L Street NW
Washington, DC 20530

1  VII"—has no application "in cases in which a law is challenged as an unconstitutional sex

2  classification." *Id.* at 1859 (Alito, J., concurring in part and concurring in the judgment); *see id.*

3  at 1838 (Thomas, J., concurring) ("Extending the *Bostock* framework here would depart

4  dramatically from this Court's Equal Protection Clause jurisprudence."); *see also Students for Fair*

5  *Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 308 (2023) (Gorsuch, J.,

6  concurring) (explaining that *Bostock* does not apply to the Equal Protection Clause because the

7  fact "[t]hat such differently worded provisions should mean the same thing is implausible on its

8  face"); *cf. Dep't of Educ. v. Louisiana*, 603 U.S. 866, 867 (2024) (per curiam) (unanimously

9  holding that "preliminary injunctive relief" was warranted to enjoin a rule extending *Bostock*'s

10 reasoning to Title IX of the Education Amendments of 1972. Indeed, in rejecting Defendants'

11 argument that *Bostock* is inapplicable in the equal protection context, this Court relied on *Fowler*

12 *v. Stitt*, 104 F.4th 770 (10th Cir. 2024), which the Supreme Court has since vacated and remanded

13 "for further consideration in light of *United States v. Skrmetti*, 605 U.S. ---- (2025)." *Stitt v.*

14 *Fowler*, No. 24-801, 2025 WL 1787695, at *1 (June 30, 2025).

15    *Third*, the Supreme Court decided *CASA*, 145 S. Ct. at 2550 (2025), which held that "[a]

16 universal injunction can be justified only as an exercise of equitable authority, yet Congress has

17 granted federal courts no such power." This Court, however, entered a universal injunction—

18 barring Defendants from implementing the Hegseth Policy against *anyone*, plaintiff or not—

19 because the Hegseth Policy "would impact all branches of the military nationwide." *Shilling*, 773

20 F. Supp. 3d at 1107. *CASA* reveals that to have been an overstep. Instead, federal courts may only

21 provide (at most) "complete relief to each plaintiff with standing to sue." *Id.* at 2563. Thus, at a

22 minimum, the Ninth Circuit's forthcoming decision will provide helpful guidance as to the proper

23 scope of available relief in this case.

24    In light of these intervening Supreme Court decisions, it is entirely possible that the Ninth

25 Circuit could significantly narrow this case. Consistent with the Supreme Court's stay of the

26 injunction, the Ninth Circuit may find that Plaintiffs are unlikely to succeed on the merits of the

MOTION TO STAY
PROCEEDINGS
CASE NO. 2:25-CV-241-BHS

U.S. DEPARTMENT OF
JUSTICE
1100 L Street NW
Washington, DC 20530

1   equal protection claim because (1) rational-basis review applies to Plaintiffs' equal protection

2   claim, per *Skrmetti*; and (2) the Hegseth Policy is supported by a conceivable rational basis.  That

3   would all but dispose of Plaintiffs' equal protection claim, making any further factual development

4   unnecessary.  And even if the Ninth Circuit held that intermediate scrutiny applied, the "great

5   deference to the professional judgment of military authorities concerning the relative importance

6   of a particular military interest" makes Defendants likely to prevail. *Goldman v. Weinberger,* 475

7   U.S. 503, 507 (1986).  Either way, the Ninth Circuit may make a likelihood of success

8   determination as to the constitutionality of the Hegseth Policy in a manner that leaves little for the

9   parties or the Court to do on remand, and at the very least, will define the contours of any factual

10  development that is needed.

11         The same is true for Plaintiffs' other claims.  To take Plaintiffs' due process claim, for

12  example, Defendants have long maintained that Plaintiffs have no constitutionally protected liberty

13  or property interest in their continued military service. *Shilling*, 773 F. Supp. 3d at 1101.  This

14  Court rejected that argument on the ground that Plaintiffs assert a "stigma-plus" claim. *Id.*  But if

15  the Ninth Circuit disagrees, that will effectively foreclose Plaintiffs' due process claim—and any

16  factual development sought to support that claim—on remand.

17         The legal questions that will ultimately govern further proceedings this case are presently

18  on appeal: the standard of review, which will govern everything from the scope of discovery to

19  summary judgment; the relevance (if any) of collateral statements by the President or Secretary of

20  Defense; whether gender dysphoria is a proxy for trans-identifying persons as a class; whether

21  trans-identifying persons are a suspect or quasi-suspect class; whether the Hegseth Policy

22  unconstitutionally burdens speech; and whether an estoppel claim can run against the government

23  in circumstances such as these.  No immediate factual development is needed to resolve any of

24  those legal questions.  Rather, everything on which the Hegseth Policy relies is already part of the

25  record on appeal. *See* Addendum, *Shilling v. United States*, No. 25-2039 (9th Cir. Mar. 28, 2025),

26  ECF No. 9.1 at 34–206.

MOTION TO STAY
PROCEEDINGS
CASE NO. 2:25-CV-241-BHS

U.S. DEPARTMENT OF
JUSTICE
1100 L Street NW
Washington, DC 20530

1    Given that many (if not all) of the critical legal issues presented in Plaintiffs' case are now

2    before the Ninth Circuit, it makes little sense for this Court and the parties to expend the resources

3    necessary for a full presentation of those issues at this time.  Because the preliminary injunction

4    standard will require the Ninth Circuit to consider whether Plaintiffs are "likely to succeed on the

5    merits," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008), it would be far more efficient

6    for the parties to await a decision from the Ninth Circuit, at which point most (if not all) of the

7    legal issues may be clarified and potentially narrowed, affecting the potential scope of any further

8    litigation.  Further litigation of any remaining legal issues would, moreover, be better informed by

9    having the benefit of the Ninth Circuit's guidance.

10    There can be no question, therefore, that a stay would "simplify[]" the "issues, proof, and

11    questions of law" presented in this case.  *CMAX*, 300 F.2d at 268.  Indeed, further proceedings

12    could prove unnecessary depending on how the Ninth Circuit rules in the upcoming appeal, and

13    as noted above, in circumstances where the court of appeals will "provide guidance" on the issues

14    in the district court, courts in this district have found that a stay is appropriate.  *Washington*, 2017

15    WL 2172020, at *2; *see also Farris*, 2011 WL 3665123, at *2.

16    In contrast to the significant waste of resources that may occur if this case proceeds and

17    the benefits that would be gained from waiting for the Ninth Circuit's decision, Plaintiffs will not

18    suffer any imminent harm from a stay of proceedings because the Supreme Court has already

19    indicated that Plaintiffs' case is unlikely to succeed on the merits.  *See Shilling*, No. 24A1030,

20    2025 WL 1300282 (staying the injunction).  Additionally, any potential harm from a stay is

21    minimized because Defendants' proposed stay is of reasonable duration.  The preliminary

22    injunction was fully briefed as of July 13, 2025, and the Ninth Circuit has scheduled oral argument

23    for late October, early November 2025, at which time the appeal will be ripe for disposition.

24                                   **CONCLUSION**

25    Defendants respectfully request that the Court stay the proceedings until Defendants'

26    appeal is resolved.  Defendants propose that the parties confer on further proceedings in this case

MOTION TO STAY
PROCEEDINGS
CASE NO. 2:25-CV-241-BHS

U.S. DEPARTMENT OF
JUSTICE
1100 L Street NW
Washington, DC 20530

1    once any appellate proceedings are concluded and propose a schedule for such proceedings within

2    fourteen days of the conclusion of the appellate proceedings.

3    DATE:  August 1, 2025              Respectfully submitted,

4                                      BRETT A. SHUMATE
                                       Assistant Attorney General
5                                      Civil Division

6                                      ALEXANDER K. HAAS
                                       Director, Federal Programs Branch
7
                                       JEAN LIN
8                                      Special Litigation Counsel

9                                      */s/ M. Jared Littman*
                                       M. JARED LITTMAN
10                                     ELIZABETH B. LAYENDECKER
                                       ROBERT C. BOMBARD
11                                     Trial Attorneys
                                       United States Department of Justice
12                                     Civil Division, Federal Programs Branch
                                       1100 L Street NW
13                                     Washington, DC 20005
                                       Telephone: (202)514-5578
14                                     Jared.Littman2@usdoj.gov
                                       Elizabeth.b.layendecker@usdoj.gov
15                                     Robert.Bombard2@usdoj.gov
                                       *Attorneys for Defendants*
16

17

18

19

20

21

22

23

24

25

26

MOTION TO STAY
PROCEEDINGS
CASE NO. 2:25-CV-241-BHS

U.S. DEPARTMENT OF
JUSTICE
1100 L Street NW
Washington, DC 20530