THE HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| COMMANDER EMILY SHILLING, et al., <br><br> *Plaintiffs,* <br><br> v. <br><br> UNITED STATES OF AMERICA; et al., <br><br> *Defendants.* | No. 2:25-cv-241-BHS <br><br> **DECLARATION OF SASHA BUCHERT IN SUPPORT OF LCR 37 JOINT SUBMISSION ON PLAINTIFFS' MOTION TO COMPEL DISCOVERY** |

I, Sasha Buchert, hereby declare as follows:

1.      I am an attorney with Lambda Legal Defense and Education Fund, Inc. and counsel for Plaintiffs in the above-captioned matter.  I make this declaration based on personal knowledge about which I am competent to testify.

2.      I submit this declaration in support of Plaintiffs' Motion to Compel Discovery, which is being submitted in accordance with the Court's Expedited Joint Motion Procedure as set forth in LCR 37.

3.      On December 10, 2025, Plaintiffs served upon Defendants their First Set of Requests for Production, First Set of Interrogatories, and First Set of Requests for Admissions. *See* Gordon Decl., Exhs. 1, 2, 3.

DECLARATION OF
SASHA BUCHERT
CASE NO. 2:25-CV-241-BHS

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212-809-8585

**Human Rights Campaign
Foundation**
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762

4. On February 9, 2026, Defendants served their answers and objections to the aforementioned discovery requests. *See* Gordon Decl., Exhs. 4, 5, 6. However, Defendants did not produce any documents on that date, pending the entry of a protective order.

5. On March 13, following the conclusion of negotiations regarding the protective order, Plaintiffs filed a Stipulated Motion for a Protective Order. *See* Dkt. 140. On March 17, the Court entered the Protective Order. *See* Dkt. 141.

6. On March 17, counsel for Defendants emailed counsel for Plaintiffs to set up access via box.com to Defendants' document production. Said access was ultimately provided on March 20.

7. The production consisted of 125 documents. More specifically, the production is comprised of twenty (20) documents dated between January 20, 2025, and the present or which are referenced therein, and 105 documents dated no later than 2018 that Defendants have represented constitute the administrative record for the Mattis Report.

8. The twenty (20) documents produced by Defendants beyond what they have represented constitute the administrative record for the Mattis Report are the following:

    a. A copy of Executive Order 14183, which is titled "Prioritizing Military Excellence and Readiness" and dated January 27, 2025;

    b. A copy of Executive Order 14168, which is titled "Defending Women From Gender Ideology Extremism and Restoring Biological Truth to Federal Government" and is dated January 20, 2025;

    c. Secretary Hegseth's Memorandum titled "Prioritizing Military Excellence and Readiness" and dated February 7, 2025;

    d. A single page OUSD(P&R) Coordination Sheet regarding "Additional Guidance on Prioritizing Military Excellence and Readiness," which is dated February 10, 2025, and is marked CONFIDENTIAL;

DECLARATION OF
SASHA BUCHERT - 2
CASE NO. 2:25-CV-241-BHS

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212-809-8585

**Human Rights Campaign
Foundation**
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762

e.  The February 26, 2025 Memorandum, "Additional Guidance on Prioritizing Military Excellence and Readiness";

f.  The February 26, 2025 Action Memo titled "Implementing Guidance for Prioritizing Military Excellence and Readiness Executive Order (EO)";

g.  The thirteen (13) documents referenced in the February 26, 2025, Action Memo (*i.e.*, Tabs 1-13); and

h.  A single page OGC Coordination document regarding "Additional Guidance on Prioritizing Military Excellence and Readiness," which is dated February 26, 2025, is marked CONFIDENTIAL, and is redacted in full.

9.  Following review of Defendants' responses and objections to Plaintiffs' discovery requests, as well as Defendants' document production, Plaintiffs sent Defendants a letter regarding deficiencies in Defendants' discovery responses and requesting to meet and confer regarding the discovery dispute, consistent with LCR 37(a)(1).  A true and accurate copy of the letter is attached hereto as *Exhibit 1*.

10.  Counsel for Plaintiffs and Defendants met and conferred via Teams on April 6, 2026.  Jared Littman, Robert Bombard, and Elizabeth Layendecker were present for Defendants, and Omar Gonzalez-Pagan, Kell Olson, Sarah Grant, Anna Thompson-Lanners, Ami Patel, and I were present for Plaintiffs.

11.  During the April 6 meet-and-confer, counsel for Defendants reiterated that they stood on their objections.

12.  After counsel for Plaintiffs (Mr. Gonzalez-Pagan) asked whether any searches had occurred to determine whether there were any responsive documents beyond the documents listed on the face of the February 26, 2025, Action Memo and the documents Defendants had determined constituted the administrative record for the Mattis Policy, counsel for Defendants (Mr. Littman) answered in the negative.  And when asked whether Defendants were willing to

DECLARATION OF
SASHA BUCHERT - 3
CASE NO. 2:25-CV-241-BHS

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212-809-8585

**Human Rights Campaign
Foundation**
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762

search for any additional documents or communications, counsel for Defendants responded in the negative.

13.    During the April 6 meet-and-confer, counsel for the parties agreed to utilize the Expedited Joint Motion Procedure set forth LCR 37.

14.    Attached as **Exhibit 2** is an excerpt of the transcript of the hearing in *Talbott v. Trump*, No. 1:25-cv-00240-ACR, in the U.S. District Court for the District of Columbia that occurred on March 16, 2026.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 17th day of April 2026, at Washington, DC.

By:    */s/ Sasha Buchert*
Sasha Buchert (pro hac vice)
**Lambda Legal Defense
and Education Fund, Inc.**
815 16th St. NW, Suite 4140
Washington, DC 20006
Telephone: 202.804.6245
Facsimile: 855.535.2236
E-mail: SBuchert@lambdalegal.org

DECLARATION OF
SASHA BUCHERT - 4
CASE NO. 2:25-CV-241-BHS

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: 206.359.8000
Fax: 206.359.9000

**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY. 10005-3919
Telephone: 212-809-8585

**Human Rights Campaign
Foundation**
1640 Rhode Island Avenue NW
Washington, D.C. 20036
Telephone: (202) 568-5762

Exhibit 1

**Perkins Coie**

Perkins Coie LLP
1301 Second Avenue
Suite 4200
Seattle, WA 98101-3804

T. +1.206.359.8000
F. +1.206.359.9000
perkinscoie.com

April 1, 2026

Matthew P. Gordon
MGordon@perkinscoie.com
D.  +1.206.359.3552
F.  +1.206.359.4552

**VIA EMAIL AND U.S. MAIL**

M. Jared Littman
Elizabeth B. Layendecker
Robert C. Bombard
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Telephone: (202)514-5578
Jared.Littman2@usdoj.gov
Elizabeth.b.layendecker@usdoj.gov
Robert.Bombard2@usdoj.gov

**Re:**   ***Shilling, et al. v. United States, et al.*, Case No. 2:25-cv-00241-BHS (United States District Court for the Western District of Washington), Deficiencies in Defendants' Discovery Responses**

Dear Counsel:

We write to follow up regarding deficiencies in your written responses to Plaintiffs' First Request for Production to Defendants ("RFPs"), Plaintiffs' First Request for Admission to Defendants ("RFAs"), and Plaintiffs' First Request for Interrogatories to Defendants ("Interrogatories") (collectively, "Discovery Requests"). We hope to resolve these issues without the Court's involvement, but if they are not resolved, Plaintiffs will file a motion to compel and seek costs and attorneys' fees in connection with that motion. **We are available to confer regarding these issues on Thursday, April 2nd at 4pm ET or on Friday, April 3rd at 1pm ET**. Please let us know which of these times work for you.

As you know, the scope of discovery under the Federal Rules is extremely broad, and responses must be made in good faith. Moreover, "[a] relevant matter is 'any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.'" *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see also FTC v. Amazon.com, Inc.*, 2024 WL 3924583, at *2 (W.D. Wash. Aug. 22, 2024) (same). Under this liberal standard, "discovery should be allowed unless the information sought has *no conceivable bearing* on the case." *Soto*, 162 F.R.D. at 610 (emphasis added & quotation marks omitted). Accordingly, Defendants' objections to the relevance and scope of many of the Discovery Requests, as detailed herein, are improper. Furthermore, the "discovery process is subject to the overriding limitation of good faith." *Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1246 (9th Cir. 1981). An "evasive or meritless" response does not fulfill a party's obligations under the Federal Rules,

April 1, 2026
Page 2

and response obligations cannot be made into a "mere semantic exercise," as Defendants repeatedly attempt to do in their responses. *See id.* at 1246–47. Specifically, Defendants cannot use their evasive parsing of the terms "gender dysphoria" and "transgender" to avoid responding in good faith.

Please produce all responsive materials by **April 10, 2026**.

Plaintiffs expressly reserve the right to raise other discovery concerns in addition to those discussed herein.

**I. Discovery Regarding Executive Order 14183 and Secretary of Defense Hegseth's February 7, 2025, Memorandum, "Prioritizing Military Excellence and Readiness"**

Plaintiffs challenge Executive Order (EO) 14183 and the Department of Defense's ("DoD") implementation of the policy set forth therein and seek discovery accordingly. Nonetheless, Defendants repeatedly interpose objections based on what they want this lawsuit to be about, consistent with their longstanding efforts to divert attention from EO 14183. ("At bottom, this case is a challenge to agency action…not the Executive Order.") But discovery is not bounded by Defendants' desires, and Defendants may not unilaterally narrow the scope of Plaintiffs' challenge as it suits them and then use that narrowed scope as a basis for objecting to Plaintiffs' discovery requests. Moreover, it is irrelevant to the scope of that challenge that the President has been dismissed from the suit.

EO 14183 directed DoD to implement a ban on transgender Americans from military service, and subsequent DoD directives expressly reflect that they *implement* the Executive Order. Indeed, Secretary of Defense Hegseth's February 7, 2025, memorandum, "Prioritizing Military Excellence and Readiness," explicitly adopts the view in the Executive Order that: "Expressing a false 'gender identity' divergent from an individual's sex"—i.e., being transgender—"cannot satisfy the rigorous standards necessary for Military Service." Furthermore, the February 26, 2025, memorandum, "Additional Guidance on Prioritizing Military Excellence and Readiness," expressly implements and supplements—and does not in any way depart from or supersede—EO 14183 and Secretary Hegseth's February 7 memorandum: "As directed by the Secretary of Defense in his February 7, 2025, memorandum, 'Prioritizing Military Excellence and Readiness,' it is Department policy that, *pursuant to Executive Order 14183*, 'Prioritizing Military Excellence and Readiness,'…". Similarly, the subject of the "Action Memo" is "Implementing Guidance for Prioritizing Military Excellence and Readiness Executive Order (EO)," and the purpose is "*to implement EO 14183*, 'Prioritizing Military Excellence and Readiness,' January 27, 2025, *consistent with SecDef guidance provided on February 7, 2025*." These and other implementing documents were not issued in a vacuum; rather, by their own terms they carry out the Commander-in-Chief's intent conveyed in EO 14183 and Secretary Hegseth's intent conveyed in the February 7 memorandum.

Accordingly, Plaintiffs request that Defendants withdraw their objections based on discovery about EO 14183 and Secretary Hegseth's February 7 memorandum and provide a

April 1, 2026
Page 3

complete response to the following: **RFPs #1, 15, 16, 19, 22, 23, and 24; RFAs #1, 2, 3, and 8; Interrogatories 1, 2, and 8.**

## II. Discovery Regarding Transgender Servicemembers

Plaintiffs challenge EO 14183 and DoD's implementation of the policy set forth therein on the basis that the Administration has enacted a total ban on transgender servicemembers, consistent with the directive in EO 14183. Plaintiffs are therefore entitled to discovery relevant to this challenge, regardless of the parties' terminological dispute. But instead of responding to Plaintiffs' requests in good faith, Defendants now claim that the "policy at issue addresses servicemembers with a current diagnosis or history of, or [who] exhibit symptoms consistent with, gender dysphoria, not 'transgender servicemembers.'" Defendants' post-hoc attempt to characterize the ban as directed at people with gender dysphoria rather than transgender people, and this case as being about "a specific policy addressing servicemembers with gender dysphoria" cannot limit the scope of discovery. Again, the scope of discovery is not limited by how Defendants wish to characterize the case.

For purposes of their discovery requests, Plaintiffs define "transgender" to refer to "a person whose gender identity differs from the sex the person was identified as having at birth." This definition identically captures the set of persons EO 14183 and the February 7 Hegseth memo deem incapable of "satisfy[ing] the rigorous standards necessary for Military Service": those who express a gender identity divergent from what the Administration views as their "sex," as defined in EO 14168. All subsequently-issued guidance and action steps implement this policy determination that such persons are categorically unfit for military service, and as such Plaintiffs are entitled to discovery probing how Defendants came to and implemented this conclusion.

Accordingly, Plaintiffs request that Defendants withdraw their objections based on "transgender issues," "transgender servicemembers," and "transgender people," and renew their request for a complete response to the following: **RFPs #1, 18, 19, 20, 21, 26, and 27.**

## III. Discovery Regarding Executive Order 14168

Plaintiffs seek discovery regarding EO 14168, "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government," issued on January 20, 2025. This policy is plainly relevant to Plaintiffs' case, as evidenced by the fact that Defendants cite it as the basis for the disparaging contentions that being transgender—or having gender dysphoria—is inconsistent with the military's standards of honesty, humility, and integrity. *See, e.g.*, Responses to RFPs #9–14.

Accordingly, Plaintiffs renew their request for a complete response to the following: **RFP #2.**

April 1, 2026
Page 4

## IV. Officials Involved in the Development of the Ban

Defendants' response to Interrogatory #3 identifies numerous "[i]ndividuals involved in the develop of the Policy," but only by title and without specifying what each individual's role was, as requested in the Interrogatory. Please identify, by name, each of the individuals referenced in that response, along with a description of the role each played in the development of the policy. Please also specify the role of each of the offices identified in the response in development of the ban.

## V. Sources Relied Upon

Plaintiffs understand that the references to "sources informing the Policy" in Defendants' responses to RFPs #1–8, 15, 17, 26, and 27, RFAs #1–3, and Interrogatories #1 and 4 to refer to the four sources specifically cited in the Action Memo: SecDef Memorandum, "Military Service by Transgender Individuals," February 22, 2018 (the "Mattis Report"); a 2021 review conducted by DoD's Psychological Health Center of Excellence and the Accession Medical Standards Analysis and Research Activity; a 2025 medical literature review conducted by the Office of the Assistant Secretary of Defense for Health Affairs; and a review of cost data by the Office of the Assistant Secretary of Defense for Health Affairs covering 2015 to 2024.

Please confirm this is correct or, if not, please clarify and identify each and every additional source relied upon.

## VI. Assertions of Privilege

Finally, Defendants assert privilege as a basis for not responding to the following requests: **RFPs #1, 17, 24, 25, and 26; RFAs #1, 2, 3, and 4; and Interrogatories #2 and 5.** However, no privilege log was provided.

Plaintiffs request that Defendants provide a privilege log disclosing the responsive materials they are withholding based on such claimed privileges.

Plaintiffs ask that Defendants supplement their responses to address these deficiencies and produce all responsive documents no later than **April 10, 2026**. If Defendants do not intend to do so, Plaintiffs will seek relief from the Court. Again, please let us know when you are available to confer.

Matthew P. Gordon

MPG

Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


NICOLAS TALBOTT, et al.,

                                  Civil Action
            Plaintiffs,           No. 1:25-cv-00240-ACR

     vs.                          March 16, 2026
                                  2:30 p.m.
UNITED STATES OF AMERICA, et al,

            Defendants.           Via Videoconference
_____


                  TRANSCRIPT OF THE PROCEEDINGS
              BEFORE THE HONORABLE ANA C. REYES
                 UNITED STATES DISTRICT JUDGE




APPEARANCES:

For the Plaintiffs:    Joseph J. Wardenski, Esq.
                       WARDENSKI P.C.
                       134 West 29th Street
                       Suite 709
                       New York, NY 10001

                       Michael R. Haley, Esq.
                       Jennifer Levi, Esq.
                       GLBTQ LEGAL ADVOCATES & DEFENDERS
                       18 Tremont Street
                       Suite 950
                       Boston, MA 02108

                       Shannon P. Minter, Esq.
                       NATIONAL CENTER FOR LESBIAN RIGHTS
                       1401 21st St.
                       Suite #11548
                       Sacramento, CA 95811




                       --Continued--

Appearances Continued:


For the Defendants:      M. Jared Littman, Esq.
                         Elizabeth Brooke Layendecker, Esq.
                         Jean Lin, Esq.
                         U.S. DEPARTMENT OF JUSTICE
                         CIVIL, FEDERAL PROGRAMS
                         1100 L Street NW
                         Washington, DC 20005

Court Reporter:          Stacy Johns, RPR, RCR

                         Official Court Reporter



  Proceedings recorded by mechanical stenography, transcript
         produced by computer-aided transcription

**P R O C E E D I N G S**

DEPUTY CLERK:  This is Civil Action 25-240, Nicolas Talbott, et al. versus United States of America, et al.

Would the parties please identify themselves for the record, beginning with plaintiff's counsel.

MR. WARDENSKI:  Good afternoon.  Joseph Wardenski for plaintiffs.

MR. HALEY:  Good afternoon, Your Honor.  Michael Haley for plaintiffs.

MR. LITTMAN:  Thank you, Your Honor.  Jared Littman for the government.  I also have Jean Lin --

THE COURT:  Hold on.  Where's everybody else from the plaintiffs?  Where's Ms. Levi?  Where's Mr. Whoever that usually argues here, too?

MR. WARDENSKI:  Mr. Haley and I traveled to D.C. to cover this conference.  I believe at least one of our co-counsel may be listening in, but we're here to cover the conference, given counsel's availability.

THE COURT:  All right.  Well, my courtroom standing order says lead trial counsel has to appear for every hearing. And I would expect in a case of this magnitude for counsel to appear, and if they couldn't travel down here to have gotten on the phone.  So I'm quite surprised, I have to say.

Who's lead trial counsel in this case?

MR. WARDENSKI:  I am the D.C. counsel.

which is relevant even under a rational basis review.  Those are the sort of things we would be probing in discovery.

And having conferred with my co-counsel, we can and are prepared to move for class certification, and so if --

THE COURT:  All right.  I want a certification briefing within 30 days.

MR. WARDENSKI:  Okay.

THE COURT:  You guys work out a briefing period with the government.  I think they should get at least 30 days.  And then figure out a briefing schedule and then get an argument date on the calendar for two weeks after the briefing schedule is done, more or less, with my courtroom deputy.

Then, Mr. Littman, I'm going to give you-all 45 days to get a formal administrative record together here for this case.

MR. LITTMAN:  Thank you, Your Honor.  That administrative record will be the same content as the production that went out in Shilling.  So I know Your Honor said also give the discovery.  We're probably talking about the same thing.  So is 45 days adequate?  And also, with respect to discovery, I just want to make sure we're talking about the document production.

THE COURT:  Yes.  We're just talking about -- yes.  I'm not opening up depositions any time soon.

File a formal administrative record, whatever the

administrative record would have been if there had been no litigation.  I mean, obviously, you know what I mean.  If there are additional documents that were in Shilling that were also produced, then also produce those.  Does that make sense?

MR. LITTMAN:  Understood, Your Honor.  I just want to make sure we're not referring to interrogatories.

THE COURT:  No interrogatories, no depositions, no nothing.  Just the administrative record and whatever else is being produced in Shilling, and that should go going forward.  If the Court orders more in Schilling, just go ahead and assume that you're going to be copying these guys.  Okay?

MR. LITTMAN:  Okay.

THE COURT:  A class certification hearing -- I think we should be able to have the class certification briefing done in mid-June or so, and so a hearing in the first week or so of July, first or second week of July.  You guys figure that out with Ms. White.

In the meantime, I'm otherwise going to not move forward on the case.  I don't think plaintiffs have shown any change in circumstances that would warrant a departure from the stance that they have taken from the last year, which is we'll just wait for the Appellate Courts.

And for whatever reason you-all made that decision, you're stuck with the consequences of that decision.  If something happens and someone's literally about to get kicked

out and we need to deal with a TRO on an individual-by-individual basis, I don't know that I have the ability to do anything, given the current stay that's in place from the D.C. Circuit, but you-all can brief that if you want.

In the meantime, I will see you guys in July. Anything else?

MR. LITTMAN:  No, Your Honor.  I just wanted to provide one clarification.  My understanding is the Mattis administrative record was not part of the AR in this.  We produced the AR and then we produced the Mattis administrative record through the court-ordered discovery.

THE COURT:  Yes.  Just let them know what's in -- because, obviously, it's important for my purposes and their purposes, what's part of the AR and what's extra discovery. Just make sure that's clear to them.

MR. LITTMAN:  Understood, Your Honor.

THE COURT:  Anything else from plaintiffs?

MR. WARDENSKI:  No, thank you, Your Honor.

THE COURT:  Mr. Minter, Ms. Levi, if either of you fail to show up to one of my hearings again and you haven't been excused, there are going to be serious consequences.  I do not set these status conferences for my health.  You-all are lead counsel on this case.  I expect you to act like it. Anything else?

MR. MINTER:  Understood, Your Honor.  Thank you.

THE COURT:  All right.  Thank you.

(Proceedings concluded at 3:03 PM)

C E R T I F I C A T E


I, Stacy Johns, certify that the foregoing is an

accurate transcription of the proceedings in the

above-entitled matter.


Please note: This hearing occurred via Zoom and is

therefore subject to the technological limitations of

reporting remotely.



/s/ Stacy Johns                 Date: March 16, 2026

Stacy Johns, RPR, RCR
Official Court Reporter