

**DEPARTMENT OF THE AIR FORCE**
**WASHINGTON DC**

**OFFICE OF THE ASSISTANT SECRETARY**

DAFI36-3211_DAFGM2026-02

18 February 2026

MEMORANDUM FOR DISTRIBUTION
             MAJCOMs/FLDCOMs/FOAs/DRUs

FROM: SAF/MR
       1800 Air Force Pentagon
       Washington, DC  20330-1665

SUBJECT: Department of the Air Force Guidance Memorandum (DAFGM) to DAFI 36-3211,
          *Military Separations*

By order of the Secretary of the Air Force, this Department of the Air Force Guidance Memorandum (DAFGM) implements changes to DAFI 36-3211, *Military Separations.* Compliance with this memorandum is mandatory. To the extent its directions are inconsistent with other DAF publications, the information herein prevails, in accordance with Department of the Air Force Instruction (DAFI) 90-160, *Publications and Forms Management*.

This publication applies to the United States Space Force, Regular Air Force, the Air Force Reserve, and the Air National Guard.  This guidance reissues and changes instruction from DAFI36-3211_DAFGM 2026_01 to clarify Air Reserve Component timelines and status in paragraphs A1.3.2.6; A1.4.1.4; A2.4.8; A2.5; A4.1.4; A4.5.1.6; and A4.6.3.2. Additionally, paragraph A3.23 is deleted.

As directed by the Secretary of Defense in his February 7, 2025 memorandum, *Prioritizing Military Excellence and Readiness*, it is Department policy that, pursuant to Executive Order 14183, *Prioritizing Military Excellence and Readiness*, the medical, surgical, and mental health constraints on individuals who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria are incompatible with the high mental and physical standards necessary for military service.

As further directed by Performing the Duties of the Under Secretary of Defense for Personnel and Readiness (OUSD) [P&R] Memorandum, *Additional Guidance on Prioritizing Military Excellence and Readiness*, dated 26 February 2025, Service members who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria and are not granted a waiver will be processed for administrative separation in accordance with, and afforded all applicable administrative processing protections in DoDI 1332.14, *Enlisted Administrative Separations* or DoDI 1332.30, *Commissioned Officer Administrative Separations*. Further, the Secretaries of the Military Departments are directed to initiate the administrative separation of such Service members under the following bases: (1) any enlisted Service member

prior to the expiration of the member's term of service following a determination that doing so is in the best interest of the relevant Military Service; or (2) any officer whose retention is not clearly consistent with the interests of national security.

Pursuant to this guidance, DAF enlisted members will be separated under the Secretary of the Air Force's Plenary Authority to Direct Discharge. DAF officers will be separated on the basis that their retention is not clearly consistent with national security.  Special processing requirements for members of the Air Force Reserve and Air National Guard are addressed in Attachment 3. The Judge Advocate General is authorized to promulgate additional operating procedures and implementation guidance in furtherance of this memorandum for the purpose of ensuring fair, accurate, and timely proceedings and processing.

Service members are ineligible for referral to the Disability Evaluation System (DES) solely on the basis of a current diagnosis or history of, or exhibiting symptoms consistent with, gender dysphoria, as this does not constitute a physical disability pursuant to DoDI 1332.18, *Disability Evaluation System*. Prior to processing for administrative separation, service members may be referred to the DES if they have a co-morbidity, or other qualifying condition, that is appropriate for disability evaluation processing in accordance with DoDI 1332.18.

Service members who are processed for separation pursuant to this policy will be designated as non-deployable until their separation processing is complete.

Service members separated involuntarily pursuant to this policy may be provided full involuntary separation pay in accordance with Title 10 United States Code (U.S.C.) Section (§) 1174, *Separation pay upon involuntary discharge or release from active duty;* and DoDI 1332.29, *Involuntary Separation Pay* (Non-Disability).

All enlisted Service members who are involuntarily separated pursuant to this policy will, if desired by the Service member, be afforded an administrative separation board. All officers who are involuntarily separated pursuant to this policy will be afforded a Board of Inquiry, if desired by the officer, in accordance with 10 U.S.C. § 1182, *Boards of inquiry*.

United States Air Force Academy (USAFA) cadets who are disqualified for military service will be disenrolled and discharged under the provisions of DAFI 36-3501, *United States Air Force Academy Operations*.  USAFA Cadets will be afforded a Board of Inquiry under the provisions of DAFI 36-3501, paragraph 4.2.6.8 as modified by Attachment 4.

Cadets in other commissioning programs and other accessions disqualified from military service will be disenrolled and discharged under the provisions of DAFMAN 36-2032, *Military Recruiting and Accessions*.

Discharge boards for members involuntary separated pursuant to this policy will be carried out under the procedures contained in DAFI 36-3211 and DAFMAN 51-507, *Enlisted Discharge Boards and Boards of Officers,* as supplemented by Attachment 4. References to officers in this guidance include both commissioned and warrant officers, in accordance with Air Force Guidance Memorandum (AFGM)2025-36-2033, *Reimplementing Warrant Officers*.

The Department of the Air Force may recoup, as appropriate, any bonuses received prior to the date of this memorandum for Service members who are involuntarily separated.

Nothing in this guidance memorandum or its attachments preclude appropriate administrative or disciplinary action for DAF service members who refuse orders from lawful authority to comply with applicable standards or otherwise do not meet standards for performance and conduct.

The policy guidance contained herein and in the attachments: (1) supersede any conflicting policy guidance in Department of the Air Force issuances and other policy guidance and memoranda; and (2) is effective immediately and will be incorporated into respective Department issuances, as appropriate. To request a waiver of non-tiered compliance items in this memorandum and its attachments, submit requests to the SAF/MR Executive Order Tiger Team at SAF.mreo.readinessTigerTeam@us.af.mil.

Ensure all records generated as a result of processes prescribed in this publication adhere to Air Force Instruction (AFI) 33-322, *Records Management and Information Governance Program*, and are disposed in accordance with the Air Force Records Disposition Schedule which is located in the Air Force Records Information Management System. This instruction requires the collection and/or maintenance of information protected by the Privacy Act of 1974 authorized by 10 U.S.C. § 1169, *Regular enlisted members; Limitations on Discharge*; and Executive Order 9397, *Numbering System for Federal Accounts Relating to Individual Persons*; and Executive Order 13478, *Amendments to Executive Order 9397 Relating to Federal Agency Use of Social Security Numbers*. The applicable SORNs F036 AFPC P, Separation Case Files, (Officer and Airman); F033 ARPC B, Locator or Personnel Data; and DoD-0020, Military Human Resource Records (MHRR) are available at http://dpclo.defense.gov/Privacy/SORNs.aspx.

The following regulations will be used to ensure appropriate procedures are being followed when actions are initiated. These protections are required when transmitting medical examinations and supporting documents: DoDI 6025.18, *Health Insurance Portability and Accountability Act (HIPAA) Privacy Rule Compliance in DoD Health Care Programs*; DoDM 6025.18, *Implementation of the Health Insurance Portability and Accountability Act (HIPAA) Privacy Role in DoD Health Care Program*.

This memorandum becomes void after one year has elapsed from the date of this memorandum, or upon publication of an interim change (IC) or rewrite of the affected publication, whichever is earlier.

The point of contact for this publication is AF/A1PP, af.a1pp.workflow@us.af.mil.

RICHARD L. ANDERSON
Assistant Secretary of the Air Force for
Manpower and Reserve Affairs

3

4

Attachments:
1. Separation of Enlisted Members
2. Separation of Commissioned Officers
3. ARC Specific Guidance
4. Board Procedures

**Attachment 1**

**SEPARATION OF ENLISTED MEMBERS**

A1.1.  General Provisions.

A1.1.1.  Relationship with Other Guidance.

A1.1.1.1.  This attachment pertains to the separation of enlisted members with a current diagnosis or history of, or exhibiting symptoms consistent with, gender dysphoria.  It should be read in conjunction with the guidance memorandum on this topic.  If other DAF policy contradicts the guidance memorandum and this attachment, the guidance memorandum and this attachment prevail.

A1.1.1.2.  This attachment supplements Part 2 of DAFI 36-3211.  Processes and procedures in Part 2 may be used to supplement the guidance in this attachment. However, if there is conflict between this attachment and Part 2, this attachment prevails.

A1.1.1.3.  The SecAF retains all discretionary authority authorized by 10 U.S.C. § 1169 or DoDI 1332.14 even if not specifically addressed in this guidance.

A1.1.2.  Separation Authority.

A1.1.2.1.  SecAF is the Separation Authority for any involuntary separations pursuant to Executive Order (EO) 14183, *Prioritizing Military Excellence and Readiness*.  SecAF may delegate separation authority under this provision to an official with a Presidential Appointment and Senate Confirmation (PASC), but no lower. If delegated, all references to the SecAF in this guidance include the delegee.

A1.1.2.2.  Probation and rehabilitation is not authorized under this provision.

A1.1.2.3.  Entry-level separation policies under paragraph 3.16.1 of DAFI 36-3211 do not apply to separations under this provision.

A1.1.2.4.  Separations under this provision are not eligible for joint processing under Section 8F – Joint Processing.  Commanders may use existing authorities to initiate separate involuntary discharge for any other qualifying reason.

A1.1.3.  The Consolidated Disposition Authority (CDA).

A1.1.3.1.  The Consolidated Disposition Authority (CDA) is the initiating authority for enlisted discharges.

A1.1.4.  Collateral Determinations.

A1.1.4.1.  The SecAF retains authority over any collateral determination associated with an involuntary separation under this provision. "Collateral determinations" include, but are not limited to, whether to recoup from the member the unearned portion of special

pays, bonuses, and/or the cost of advanced education or training. SecAF may choose to delegate authority over these collateral determinations.

A1.1.4.2.  Recoupment and Continued Payment of Advanced Educational Assistance, Special Pay, or Bonuses.

A1.1.4.2.1.  The SecAF retains the discretion to render a case-by-case determination concerning recoupment of all, or a portion of, advanced education assistance, special pay, or bonuses received.

A1.1.4.2.2.  In processing actions under this guidance, the recoupment procedures in DAFI 36-3211 may be considered, but are not binding. Failure to follow those processes will not limit the SecAF's ability to impose recoupment in appropriate cases.

A1.1.4.2.3.  The Consolidated Disposition Authority (CDA) will comment on and provide a recommendation to the SecAF on requests for whole or partial relief from recoupment.

A1.1.5.  Requests for Voluntary Separation.  Requests for voluntary separation while pending involuntary separation under this guidance are not normally approved.  However, this does not limit the Separation Authority's ability to approve certain voluntary separations, such as an unconditional board hearing waiver.

A1.1.6.  Separation Physical and Medical Holds. Members who are pending separation under this provision receive medical examinations (see guidance in DAFMAN 48-123, *Medical Examinations and Standards*).

A1.1.6.1.  Schedule members for physical examination within 10 calendar days from initiation of discharge action.

A1.1.6.2.  In some cases, execution of a member's administrative separation may be held in abeyance to permit continued disability processing (see guidance in DAFI 36-3212). Additionally, medical conditions (other than gender dysphoria) may warrant delayed administrative separation to allow for continued treatment before separation IAW DAFMAN 48-108, *Physical Evaluation Board Liaison Officer (PEBLO) Functions:  Pre-disability Evaluation System (DES) and Medical Evaluation Board (MEB) Processing*, paragraph. 3.1.1.7.

A1.1.6.3.  Commanders ensure separation processing continues and remains on schedule even when a member's medical examination is incomplete. However, unless a medical examination is not required as identified elsewhere in this publication, ensure the discharge is not executed before the medical examination has been completed and the member is medically cleared for discharge.

A1.1.6.4.  The commander notifies the CDA when the member is undergoing a medical or disability evaluation. The commander monitors the disability processing and advises the CDA as appropriate.

A1.1.7.  Dual Action Processing.  Dual action processing involves referral of both an administrative separation action under this guidance and a disability action to the SecAF for final determination. It is required when a member subject to involuntary administrative discharge is also eligible for disability separation or retirement.

A1.1.7.1.  Service members are ineligible for referral to the Disability Evaluation System (DES) solely on the basis of a current diagnosis or history of, or exhibiting symptoms consistent with, gender dysphoria, not constituting a physical disability pursuant to DoDI 1332.18.

A1.1.7.2.  Service members may be referred to the DES if they have a co-morbidity, or other qualifying condition, that is appropriate for disability evaluation processing in accordance with DoDI 1332.18, prior to processing for administrative separation.

A1.1.7.3.  If a member is recommended for medical retirement and separation under this guidance the CDA will send both to the Separation Authority for final decision.

A1.1.8.  Reports Requiring Special Handling. Comply with DAFMAN 48-123 in handling or releasing reports of medical examinations and physical or psychiatric evaluations.

A1.1.9.  Extension of Enlistment When Involuntary Discharge is Pending.  Do not retain members beyond ETS involuntarily for completion of involuntary discharge processing. Typically, enlisted members with an ETS before 30 November 2025 or with an approved separation under other provisions should not be processed for involuntary separation under this guidance and instead be allowed to separate at ETS. Do not approve reenlistments or voluntarily extend such members for the purpose of initiating separation under this guidance.

A1.1.10.  Separation Pay. Members separated pursuant to this provision may be provided full involuntary separation pay in accordance with 10 U.S.C. § 1174 and DoDI 1332.29.

A1.2.  Separation Basis:  Plenary Authority of the SecAF to Direct Discharge.

A1.2.1.1.  The Separation Authority may direct the separation of any enlisted member with a current diagnosis or history of gender dysphoria, or who exhibits symptoms consistent with gender dysphoria, following:

A1.2.1.1.1.  The Secretary of War's (SecWAR) determination that administrative separation of members with a current diagnosis or history of gender dysphoria, or who exhibit symptoms consistent with gender dysphoria, is in the best interest of the USAF or USSF; and

A1.2.1.1.2.  A determination that the individual member has a current diagnosis or history of gender dysphoria, or exhibits symptoms consistent with gender dysphoria.

A1.2.1.2.  "Exhibits symptoms consistent with gender dysphoria" refers to the diagnostic criteria, including primary Gender Dysphoria diagnoses, encompassing all specifics and subtypes outlined in the *Diagnostic and Statistical Manual of Mental Disorders*, version

7

5. This language applies only to individuals who exhibit such symptoms as would be sufficient to constitute a diagnosis (i.e., a marked incongruence and clinically significant distress for at least 6 months).

A1.2.1.3.  Characterization of service for a Service member separated solely on the basis of having a current diagnosis or history of, or exhibiting symptoms consistent with, gender dysphoria, will be Honorable.

A1.3.  Initiating Action.

A1.3.1. Commanders must refer a member in their command who is identified for processing under this guidance to the Airman Medical Readiness Optimization (AMRO) Board and notify the CDA.  The primary method of identifying Service members for involuntary administrative separation processing is managed through the Individual Medical Readiness (IMR) program.

A1.3.1.1.  The AMRO Board will review a member's case and issue a written determination if a member is deemed incompatible with further military service based on gender dysphoria. The AMRO Board will ensure the written determination is provided to the member's unit commander.

A1.3.2.  Upon receipt of the written determination from AMRO, the commander, in consultation with the Staff Judge Advocate and the CDA, will provide written notification to the member that they are subject to involuntary separation processing.  The letter of notification will contain the following:

A1.3.2.1.  Evidence to be provided to the administrative discharge board.

A1.3.2.2.  A statement that the member has a right to military counsel.

A1.3.2.3.  A statement that the member has the right, within 10 workdays (45 calendar days for Air Reserve Component members and 45 calendar days for all members known to be in civilian confinement), to submit any statements or documents to be considered in the disposition of the case.

A1.3.2.4.  A statement that within 10 workdays (45 calendar days for Air Reserve Component members and 45 calendar days for all members known to be in civilian confinement) after receipt of the letter of notification, the respondent must, in writing:

A1.3.2.4.1.    Acknowledge receipt of the letter of notification and attachments;

A1.3.2.4.2.    Elect or waive the right to counsel and right to respond to the letter of notification; and

A1.3.2.4.3.    Elect or waive a board hearing;

A1.3.2.5.  A statement that failure to acknowledge receipt or to respond regarding selection of rights within 10 workdays (45 calendar days for Air Reserve Component

8

members and 45 calendar days for all members known to be in civilian confinement) after receipt of the letter of notification constitutes a waiver of all rights and the case is processed based on the information available and without further notice to the member.

A1.3.2.6. A statement that, for good cause, the commander may grant an extension of the time to reply of up to 10 workdays (45 calendar days for Air Reserve Component members and 45 calendar days for all members known to be in civilian confinement). Extensions greater than 10 workdays (45 calendar days for Air Reserve Component members or members in civilian confinement) may only be approved by the CDA. Extension requests must be made in writing and state the reasons for the request and how much time is needed.

A1.3.2.7. A statement advising the member where a copy of this publication may be found for use while the case is being processed.

A1.3.2.8. A statement that when there is evidence respondent received advanced educational assistance money or special pay or bonuses, they may be required to repay the United States for these funds under 10 U.S.C. § 2005, *Advanced education assistance: active duty agreement; reimbursement requirements*.

A1.3.2.9. A statement that the member is required to complete a comprehensive medical examination and the date and time of the scheduled medical examination.

A1.3.3. The commander also takes the following actions:

A1.3.3.1. Prior to discharge, permanently decertifies individuals under the personnel reliability program.

A1.3.3.2. Completes a Performance Brief if required under AFI 36-2406, *Officer and Enlisted Evaluations Systems*.

A1.3.3.3. Schedules the member for a medical examination and informs the medical facility of the reason for the recommended discharge. **Note:** Commanders may schedule the member for a separation physical upon receiving the initial notification from AMRO, prior to serving the member with a letter of notification of discharge.

A1.3.3.4. Notifies the local financial services office, in writing, as soon as the discharge is initiated. The letter should request the financial services office notify the referring commander if the member is indebted to the government and what action is taken to collect the debt. Use DAFMAN 36-2102, *Base-Level Relocation Procedures,* to notify local base agencies of discharge initiation. If discharge is disapproved, re-notify appropriate agencies.

A1.4. Action by the Member.

A1.4.1. The member will:

A1.4.1.1.  Acknowledge receipt of the letter of notification.  If the member does not respond or responds without signing the memorandum, the commander will make an appropriate notation on the statement regarding the member's failure to do so.

A1.4.1.2.  Report for the medical examination as directed.

A1.4.1.3.  Be given the opportunity to consult with military legal counsel.

A1.4.1.4.  Submit statements within 10 workdays (45 calendar days for Air Reserve Component members and 45 calendar days for all members known to be in civilian confinement) of receipt of the notification, or decline the opportunity to do so.

A1.4.2.  Procedural Rights.

A1.4.2.1.   A member recommended for discharge under this provision has the right to:

A1.4.2.1.1.   Receive written notice of the reasons for discharge, including the circumstances upon which each reason is based, and the least favorable type of separation authorized.

A1.4.2.1.2.   Receive copies of the documents to be forwarded to the CDA and separation authority in support of the recommendation for discharge.

A1.4.2.1.3.   Consult with and be represented by military counsel (of their choice, if reasonably available) or to obtain civilian counsel at their own expense.

A1.4.2.1.4.   Request a hearing before an administrative discharge board. All enlisted members who are involuntarily separated due to gender dysphoria will, if elected by the member, be afforded an administrative discharge board. It is DoW policy that the limitation on administrative boards contained within DoDI 1332.14, paragraph 3.14.c, does not apply.

A1.4.2.1.5.   Present written statements in addition to, or in lieu of, the board proceedings.

A1.4.2.1.6.   Be represented before the board by counsel.

A1.4.2.2.  A member may waive, in writing, any of the above rights.

A1.4.2.2.1.  A member may submit for consideration by the SecAF a Retention Waiver in accordance with USD(P&R) Memorandum, *Additional Guidance on Prioritizing Military Excellence and Readiness*, 26 February 2025; USD(P&R) Memorandum, *Clarifying Guidance on Prioritizing Military Excellence and Readiness: Retention and Accession Waivers*, 4 March 2025; OSW (P&R) Memorandum, *Prioritizing Military Excellence and Readiness: Additional Implementation Guidance on Administrative Separations*, 8 October 2025; and SAF/MR Memorandum, *DAF Guidance on Retention and Accessions Waivers*, 23 May 2025.  This Retention Waiver is not the same as a Board Waiver (discussed

10

in Attachment 4).   DAF members requesting a board should not submit a retention waiver request until after the board has made its findings and the Separation Authority has approved, changed, or disapproved the board's recommendations. Such request must be submitted no later than 15 days from the date of the Separation Authority's action.  A member may submit for consideration by the SecAF information concerning recoupment and continued payment of advanced education assistance, special pay, or bonuses, if applicable. Such requests for recoupment are not relevant to the board proceedings and should be submitted and processed separately. Members may submit for SecAF consideration (addressed to the SecAF through the CDA) requests for whole or partial relief from recoupment.  This may be submitted with a board waiver request or after they have received an authenticated copy of a board record in which discharge was recommended.

A1.4.2.3.  An enlisted member eligible for retirement, including Temporary Early Retirement, may, at any time before the Separation Authority takes final action, apply for retirement when eligible.

A1.5.  Forwarding to the CDA. Within 10 workdays (45 calendar days for Air Reserve Component) of receiving the member's response, if any, the commander refers the matter to the CDA. The commander sends, through such means as the CDA shall direct, the following:

A1.5.1.  The notification letter with attachments.

A1.5.2.  The member's response, if any.  If the member did not respond, the commander provides a memorandum to the CDA explaining the member did not respond.

A1.5.3.  The member's medical examination (if available).

A1.5.4.  Other documents as needed.

A1.6.  Action by the CDA.

A1.6.1.  If the member does not elect a board hearing, the CDA sends the complete separation package to the Separation Authority for final action.

A1.6.2.  If the member elects a board hearing, the CDA convenes a board hearing following the procedures in Attachment 4 and provides written notification to the member.

A1.7.    Action by the Administrative Discharge Board.

A1.7.1.  The primary question for the board is whether the member has a current diagnosis or history of gender dysphoria, or exhibits symptoms consistent with gender dysphoria.

A1.7.2.  If the board finds the member has a diagnosis or history of gender dysphoria, or exhibits symptoms consistent with gender dysphoria, the board must recommend separation, unless the member meets all DoW retention criteria, in which case the board may recommend retention and that a retention waiver be processed.

11

A1.7.3.  If the sole basis for separation is a diagnosis, history, or symptoms of gender dysphoria, the board must recommend an Honorable service characterization.

A1.7.4.  If the board finds there is a basis for separation under this provision, the board may only recommend retention of the member under the following conditions, as established in the USD P&R Memorandum, *Additional Guidance on Prioritizing Military Excellence and Readiness,* dated 26 February 2025; and USD (M&RA) Memorandum, *Clarifying Guidance on Prioritizing Military Excellence and Readiness: Retention and Accession Waivers*, dated 4 March 2025:

A1.7.4.1.  First, the board must find by a preponderance of the evidence that the member meets the medical criteria for retention:

A1.7.4.1.1.  That the member has demonstrated 36 months of stability in their birth sex without clinically significant distress or impairment in social, occupational, or other important areas of functioning;

A1.7.4.1.2.  That the member has demonstrated that they have never attempted to transition to any sex other than their birth sex; and

A1.7.4.1.3.  That the member is willing and able to adhere to all applicable standards, including the standards associated with the member's birth sex.

A1.7.5. If the board finds that the member meets all three medical criteria, the board must then determine whether there is a compelling Government interest in retaining the member that directly supports warfighting capabilities.

A1.7.5.1.  A compelling Government interest that directly supports warfighting capabilities includes special experience, special training, and advanced education in a highly technical career field designated as mission critical and hard to fill by the Secretary of a Military Department, if such experience, training, and education is directly related to the operational needs of the Military Service concerned.

A1.7.5.2.  If the board determines that the member meets all three threshold medical criteria, and that there is a compelling Government interest in retaining the member, the board may recommend that the SecAF process a waiver to retain the member.

**Attachment 2**

**SEPARATION OF COMMISSIONED OFFICERS
AND WARRANT OFFICERS**

A2.1.  General Provisions

A2.1.1.  Relationship with other guidance.

A2.1.1.1.  This attachment pertains to the separation of officers with a current diagnosis or history of, or exhibiting symptoms consistent with, gender dysphoria.  It should be read in conjunction with the Guidance Memorandum on this topic.  If other DAF policy contradicts the Guidance Memorandum and this attachment, the Guidance Memorandum and this attachment prevail.

A2.1.1.2.  This attachment supplements Part 3 of DAFI 36-3211.  Processes and procedures in Part 3 may be used to supplement the guidance in this attachment.  However, if there is conflict between this attachment and Part 3, this attachment prevails.

A2.1.1.3.  The SecAF retains all discretionary authority authorized by 10 U.S.C. § 1182 or DoDI 1332.30, even if not specifically addressed in this guidance.

A2.1.2.  Separation Authority and Consolidated Disposition Authority (CDA).

A2.1.2.1.  The SecAF is the Separation Authority for any involuntary separations pursuant to Executive Order (EO) 14183, *Prioritizing Military Excellence and Readiness*. SecAF may delegate separation authority under this provision to a Politically Appointed, Senate Confirmed official.  If delegated, all references to the SecAF in this guidance include the delegee.

A2.1.2.2.  The Consolidated Disposition Authority (CDA) is the Show Cause Authority.

A2.1.2.3.  Separations under this provision are not eligible for joint processing under Section 8F – Joint Processing.  Commanders may use existing authorities to initiate separate involuntary discharge for any other qualifying reason.

A2.1.3.  Collateral Determinations.

A2.1.3.1.  The SecAF retains authority over any collateral determination associated with an involuntary separation under this provision. "Collateral determinations" include, but are not limited to, whether to recoup from the member the unearned portion of special pays, bonuses, and/or the cost of advanced education or training. SecAF may choose to delegate authority over these collateral determinations.

A2.1.3.2.  Recoupment and Continued Payment of Advanced Educational Assistance, Special Pay, or Bonuses.

13

A2.1.3.2.1.    The SecAF retains the discretion to render a case-by-case determination concerning recoupment of all, or a portion of advanced education assistance, special pay, or bonuses received.

A2.1.3.2.2.    In processing actions under this attachment, the recoupment procedures in DAFI 36-3211 may be considered, but are not binding. Failure to follow those processes will not limit the SecAF's ability to impose recoupment in appropriate cases.

A2.1.3.2.2.1.   All separation actions processed under this guidance will include a notification that recoupment of unearned portion of any bonus, incentive pay, educational assistance or similar benefit may be sought.

A2.1.4.2.2.2.  Officers may submit for SecAF consideration (addressed to the SecAF through the CDA) requests for whole or partial relief from recoupment. This may be submitted with a resignation or Board of Inquiry (BOI) waiver request or after they have received an authenticated copy of a BOI record in which discharge was recommended.

A2.1.4.2.3.  The CDA will comment on and provide a recommendation to the SecAF on requests for whole or partial relief from recoupment.

A2.1.4.  Requests for Voluntary Separation.  Requests for voluntary separation while pending involuntary separation under this guidance are not normally approved.  However, this does not limit the Separation Authority's ability to approve an officer's request to resign and/or unconditional BOI waiver.

A2.1.5.  Separation Physical and Medical Holds. Members pending separation under this guidance receive medical examinations (see guidance in DAFMAN 48-123). Schedule physical examinations following guidance provided in DAFI 36-3211, part 3, DAFMAN 48-123, and medical examination requirements.

A2.1.5.1.  Schedule officers for physical examination within 10 calendar days from initiation of discharge action.

A2.1.5.2.  In some cases, execution of a member's administrative separation may be held in abeyance to permit continued disability processing (see guidance in DAFI 36-3212, *Physical Evaluation for Retention, Retirement and Separation*).  Additionally, medical conditions (other than gender dysphoria) that do not result in disability processing may warrant delayed administrative separation to allow for continued treatment before separation.

A2.1.5.3.  Commanders ensure separation processing continues and remains on schedule even when an officer's medical examination is incomplete. However, unless a medical examination is not required as identified elsewhere in this publication, ensure the discharge is not executed before the medical examination has been completed and the officer is medically cleared for discharge.

A2.1.5.4.  The commander notifies the CDA when the officer is undergoing a medical or disability evaluation. The commander monitors the disability processing and advises the CDA authority as appropriate.

A2.1.6.  Dual Action Processing.  Dual action processing involves referral of both an administrative separation action under this guidance and a disability action to the SecAF for final determination. It is required when an officer subject to involuntary administrative discharge is also eligible for disability separation or retirement.

A2.1.6.1.  Service members are ineligible for referral to the Disability Evaluation System (DES) solely on the basis of a current diagnosis or history of, or exhibiting symptoms consistent with, gender dysphoria, not constituting a physical disability pursuant to DoDI 1332.18.

A2.1.6.2.  Service members may be referred to the DES if they have a co-morbidity, or other qualifying condition, that is appropriate for disability evaluation processing in accordance with DoDI 1332.18.

A2.1.6.3.  If a member is recommended for medical retirement and separation under this guidance the CDA will send both to the Separation Authority for final decision.

A2.1.7.  Reports Requiring Special Handling. Comply with DAFMAN 48-123 in handling or releasing reports of medical examinations and physical or psychiatric evaluations.

A2.1.8.  Existing Mandatory Separation Date (MSD).  The CDA shall be notified immediately when an officer subject to involuntary discharge under this guidance has an existing MSD.  Typically, officers with an MSD on or before 30 November 2025 or with an approved separation under other provisions should not be processed for involuntary separation under this guidance.  Officers with an MSD on or after 1 December 2025 are normally processed for involuntary separation under this guidance.  However, officers should normally not be involuntarily retained beyond an MSD for completion of involuntary discharge processing under this guidance.

A2.1.9.  Separation Pay. Members separated pursuant to this provision may be provided full involuntary separation pay in accordance with 10 U.S.C. § 1174 and DoDI 1332.29.

A2.2.  Separation Basis:  Current Diagnosis or History of, or Exhibits Symptoms Consistent with, Gender Dysphoria.

A2.2.1.  It is DoW policy that:

A2.2.1.1.  The retention of officers with a current diagnosis or history of, or exhibiting symptoms consistent with, gender dysphoria is not clearly consistent with the interests of national security.  Officers will be processed for separation on the basis that their continued service is not clearly consistent with the interests of national security.

A2.2.1.2.  Separation of officers under this guidance does not require adjudication or revocation of a security clearance.  Therefore, DODI 1332.30, *Commissioned Officer*

15

*Administrative Separations*, paragraph 3.3, or DODM 5200.02, *Procedures for the DOD Personnel Security Program*, are not applicable to separations under this guidance.

A2.2.2.  "Exhibits symptoms consistent with gender dysphoria" refers to the diagnostic criteria, including primary Gender Dysphoria diagnoses, encompassing all specifics and subtypes outlined in the *Diagnostic and Statistical Manual of Mental Disorders*, version 5. This language applies only to individuals who exhibit such symptoms as would be sufficient to constitute a diagnosis (i.e., a marked incongruence and clinically significant distress for at least 6 months).Characterization of service for a Service member separated on the basis of having a current diagnosis or history of, or exhibiting symptoms consistent with, gender dysphoria, will be Honorable.

A2.3.  Initiating Action.

A2.3.1.  Commanders must refer a member in their command who is identified for processing under this guidance to the Airman Medical Readiness Optimization (AMRO) Board and notify the CDA.

A2.3.1.1.  The primary method of identifying Service members for involuntary administrative separation processing is managed through the Individual Medical Readiness (IMR) program.

A2.3.1.2.  The AMRO Board will review a member's case and issue a written determination if a member is deemed incompatible with further military service based on gender dysphoria. The AMRO Board will ensure the written determination is provided to the member's unit commander.

A2.3.1.3.  Upon receipt of the written determination from AMRO, the commander, in consultation with the Staff Judge Advocate, sends the CDA a recommendation and draft statement of reasons for discharge.

A2.3.2.  The CDA:

A2.3.2.1.  Reviews the commander's recommendation and draft statement of reasons.

A2.3.2.2.  Evaluates all Service information about the case under consideration and takes action, as necessary, to ensure completeness and accuracy.

A2.3.2.3.  May return a case to the commander for further fact finding or documentation without terminating the case.

A2.3.2.4.  Initiates action to separate the officer from active duty if a preponderance of the evidence, in the CDA's judgment, shows the officer has a current diagnosis or history of, or exhibits symptoms consistent with, gender dysphoria.

A2.3.2.5.  The authority to withdraw a case referred to the CDA is reserved to the SecAF, or designee.

16

A2.3.3.  Notifying Officer to Show Cause.

A2.3.3.1.  The CDA signs the show cause letter of notification.  The show case letter must include:

A2.3.3.1.1.    The reason for the discharge action,

A2.3.3.1.2.    The worst characterization of discharge authorized and characterization recommended,

A2.3.3.1.3.    The officer's rights and options, and

A2.3.3.1.4.    The evidence that supports initiation of the discharge action. (**Note:** The BOI is not restricted to considering only that evidence and may receive additional evidence IAW the procedures of the BOI as detailed in Attachment 4.)

A2.3.3.2.  The show cause letter is provided to the officer no less than 30 days prior to the convening of a BOI.  The officer may waive in writing any portion of the 30 days.

A2.3.3.3.  The show cause letter is normally served on the officer by the unit commander. If the officer is not reasonably available for personal service of notification, notification is made by electronic means, registered mail, or certified mail, with return receipt (or by an equivalent form of notice if such service by US mail is not available for delivery at an address outside the US, or if certified mail was returned) to the officer's last known address.

A2.4.  Action by the Officer.

A2.4.1.  Upon receipt of the show cause letter, the officer will, in writing:

A2.4.1.1.  Acknowledge receipt of the letter of notification and attachments;

A2.4.1.2.  Elect or waive the right to counsel and right to respond to the letter of notification; and

A2.4.1.3.  Elect or waive a board hearing;

A2.4.2.  An officer recommended for discharge under this guidance has the right to:

A2.4.2.1.  Receive written notification of the reasons for discharge, the least favorable characterization of separation authorized, and recommended characterization of discharge.

A2.4.2.2.  Receive copies of documents attached to the initiation notification as well as any documents the CDA intends to furnish to a BOI, unless restricted by other law or policy.

A2.4.2.3.  Consult with and be represented by military counsel (of their choice, if reasonably available) or to obtain civilian counsel at their own expense.

A2.4.2.4.  Submit statements in rebuttal or matters to the commander for the CDA's consideration within 10 workdays (45 calendar days for Air Reserve Component members and for all members known to be in civilian confinement) of receipt of the Show Cause notification.

A2.4.2.5.  Request a BOI or waive BOI proceedings within 10 workdays (45 calendar days for Air Reserve Component members and for all members known to be in civilian confinement) of receipt of the Show Cause notification.

A2.4.3.  An officer may waive, in writing, any of the above rights.

A2.4.4.  An officer may submit for consideration by the SecAF, a Retention Waiver in accordance with USD(P&R) Memorandum, *Additional Guidance on Prioritizing Military Excellence and Readiness*, 26 February 2025; USD(P&R) Memorandum, *Clarifying Guidance on Prioritizing Military Excellence and Readiness: Retention and Accession Waivers*, 4 March 2025; USD(P&R) Memorandum, *Additional Guidance on Prioritizing Military Excellence and Readiness: Retention and Accession Waivers*, 8 October 2025; and SAF/MR Memorandum, *DAF Guidance on Retention and Accessions Waivers*, 23 May 2025. This Retention Waiver is not the same as a Board Waiver (discussed in Attachment 4).  DAF members requesting a board should not submit a retention waiver request until after the board has made its findings and the Separation Authority has approved, changed, or disapproved the board's recommendations. Such request should be submitted no later than 15 days from the date of the Separation Authority's action.

A2.4.5.  An officer may submit to the CDA for consideration by the SecAF information concerning recoupment and continued payment of advanced education assistance, special pay, or bonuses, if applicable. See paragraph A2.1.4.2.2.

A2.4.6.  An officer eligible for retirement may, at any time before the SecAF decides the officer's administrative discharge case, apply for retirement when eligible under DAFI 36-3203, *Service Retirements*.  To the extent consistent with this guidance, follow the process outlined in DAFI 36-3211, paragraphs 19.9.6 and 19.9.7.

A2.4.7.  An officer may request to resign.  To the extent consistent with this guidance, follow the process outlined in DAF 36-3211.

A2.4.8.  For good cause, the commander may grant an extension of the time to reply of up to 10 workdays (45 calendar days for Air Reserve Component members and for all members known to be in civilian confinement).  Extensions greater than 10 workdays (45 calendar days for Air Reserve Component members and for all members known to be in civilian confinement) may only be approved by the CDA.  Extension requests must be made in writing and state the reasons for the request and how much time is needed.

A2.5.  Forwarding to the CDA. Within 10 workdays (45 calendar days for Air Reserve Component) of receiving the member's response, if any, the commander sends, through such means as the CDA shall direct, the following:

A2.5.1.  The show cause letter with attachments.

A2.5.2.  The member's response, if any.  If the member did not respond, the commander provides a memorandum to the CDA explaining the member did not respond.

A2.5.3.  The member's medical examination (if available).

A2.5.4.  Other documents as needed.

A2.6.  Action by the CDA.

A2.6.1.  If the member does not elect a board hearing, the CDA sends the complete separation package to the Separation Authority for final action.

A2.6.2.  If the member elects a board hearing, the CDA convenes a board hearing following the procedures in Attachment 4 and provides written notification to the member.

A2.7.  Action by the Board of Inquiry.

A2.7.1  The primary question for the board is whether the member has a current diagnosis or history of gender dysphoria, or exhibits symptoms consistent with, gender dysphoria.

A2.7.2.  If the board finds the member has a diagnosis or history of gender dysphoria, or exhibits symptoms consistent with gender dysphoria, the board must recommend separation, unless the member meets all DoW retention criteria, in which case the board may recommend retention and that a retention waiver be processed.

A2.7.3.  If the sole basis for separation is a diagnosis, history, or symptoms of gender dysphoria, the board must recommend an Honorable service characterization.

A2.7.4.  If the board finds there is a basis for separation under this provision, the board may only recommend retention of the member under the following conditions, as established in the USD P&R Memorandum, *Additional Guidance on Prioritizing Military Excellence and Readiness*, dated 26 February 2025:

A2.7.4.1.  First, the board must find by a preponderance of the evidence that the member meets the medical criteria for retention:

A2.7.4.1.1.  That the member has demonstrated 36 months of stability in their birth sex without clinically significant distress or impairment in social, occupational, or other important areas of functioning;

A2.7.4.1.2.  That the member has demonstrated that they have never attempted to

transition to any sex other than their birth sex; and

A2.7.4.1.3.  That the member is willing and able to adhere to all applicable standards, including the standards associated with the member's birth sex.

A2.7.4.2.  If the board finds that the member meets all three medical criteria, the board must then determine whether there is a compelling Government interest in retaining the member that directly supports warfighting capabilities.

A2.7.4.3.  A compelling Government interest that directly supports warfighting capabilities includes special experience, special training, and advanced education in a highly technical career field designated as mission critical and hard to fill by the Secretary of a Military Department, if such experience, training, and education is directly related to the operational needs of the Military Service concerned.

A2.7.4.4.  If the board determines that the member meets all three threshold medical criteria, and that there is a compelling Government interest in retaining the member, the board may recommend that the SecAF process a waiver to retain the member.

20

**Attachment 3**

**ARC SPECIFIC GUIDANCE**

A3.1.  General Information.  The general provisions for discharge of ARC officers and enlisted members shall follow the requirements of DAFI 36-3211.  Provisions in Attachments 1 (enlisted) or 2 (officers) of this memorandum as applicable, as well as this Attachment, shall otherwise supersede conflicting provisions of DAFI 36-3211 and DAFMAN 51-507.

A3.2.  Membership in the AFR and ANG is not a Right. Members not qualified or not able to properly fulfill their obligation to serve may be separated or discharged from the Air Force Reserve (AFR) or Air National Guard (ANG). Individuals discharged for any reason outlined in this publication cease to be members of AFR or ANG. (**Note:** ANG members only: All questions concerning discharge, separation and retirement of ANG personnel are addressed to the Air National Guard Readiness Center, Force Management Division, NGB/A1P.  The term "State" or "States" includes all 50 states and territories; to include Puerto Rico, the Virgin Islands, Guam, and the District of Columbia.)  Continued retention in an Active Guard Reserve (AGR) position is similarly not a right.  Continued employment in a dual civilian/military Air Reserve Technician (ART) or Air National Guard Technician position is similarly not a right, and loss of military affiliation will result in termination of civilian employment in a counterpart civilian ART billet.

A3.3.  ARC Enlisted Separations.  ANG and AFR enlisted members are to be separated under Secretarial plenary authority.  (See DAFI 36-3211, Table 13.1, Rule 1).

A3.4.  ARC Officer Separations.  ANG and AFR officers are to be separated on the basis that their retention is clearly inconsistent with the interests of national security.  (See DAFI 36-3211, Table A19.1, Rule 48)

A3.5.  Gender Dysphoria and Reserve Service.  As directed by the Secretary of War, members who are found to have a current diagnosis or history of diagnosis of Gender Dysphoria or otherwise exhibited symptoms of Gender Dysphoria are ineligible for continued service in the Reserve Component.

A3.6.  Consolidated Disposition Authority (CDA).  The CDA shall serve as the Show Cause Authority (SCA) for AFR and ANG members. The CDA shall consult with HQ Air Force Reserve Command Commander (HQ AFRC/CC) for reserve members and the Director, Air National Guard (NGB/CF), adjutant general (TAG), or commanding general (CG) for ANG members to determine the appropriate process for discharging an ARC member in accordance with this guidance.

A3.7.  Disposition of ARC Board Cases. Forward the original copy of the board proceedings to the CDA for SecAF, or designee, action. Copies of Air Force Reserve board proceedings sent to SecAF will be sent to AF/REP. Copies of ANG board proceedings sent to SecAF will be sent to NGB/A1PP.

A3.8.  The authority to separate ARC members under this guidance, whether officer or enlisted, AFR or ANG, is withheld to the Secretary of the Air Force.

A3.9.  In evaluating the separation of reserve officers, these proceedings will consider the removal of the officer from the active status list in accordance with 10 U.S.C. § 14905.

A3.10.  For ANG separations, SecAF's authority is limited to withdrawal of federal recognition or termination of federal status.  The authority to separate ANG assigned members from state status rests with TAG or CG.

A3.11.  When the respondent is an officer of the ANG, a Board under these proceedings shall be considered a Withdrawal of Federal Recognition Board.

A3.12.  For AFR officers, the applicable provisions of DAFI 36-3211, Chapter 23, continue to apply unless contrary to this guidance, which controls.

A3.13.  When the respondent is a member of a Reserve Component, at least one voting member of the Board must be an officer in a Reserve Component in active status.

A3.14.  All voting members must be an officer on the Active-Duty List (ADL), or on the Reserve Active Status List (RASL) of the same military service as the respondent.  IAW 32 U.S.C. § 323, *Withdrawal of Federal recognition* for ANG separations, the members must be either Regular Air Force (REGAF) or Air National Guard of the United States (ANGUS) officers. A General Officer shall serve as the board president in all cases, and the remaining members shall be in the grade of O-6 or above, in accordance with paragraph A4.2.3.2.

A3.15.  If the respondent, legal advisor, recorder, or any board members are members of a Reserve Component, those members must be on official orders (Title 10) at all times during the board hearing and any deliberations.  No member of the board shall take any official action on a case (voting, deliberations, or other substantive decisions affecting the rights of the respondent) while in civilian status.

A3.16.  Board members who are dual civilian/reserve technicians should only take official actions while in military status; no technician should act on a case while in civilian status.

A3.17.  The recorder, legal advisor, and respondent's counsel may conduct administrative taskings (review of evidence, pre-hearing preparation of documents) while not in military status in consultation with their supervising attorneys.

A3.18.  The respondent may complete administrative acknowledgements (acknowledgement of notification of discharge proceedings, waiver of hearing, etc.) while in civilian status.

A3.19.  The board members, legal advisor, and recorder(s) may be appointed from the Regular Air Force as appropriate.

A3.20. Sanctuary determinations.  If the respondent qualifies for sanctuary under any statutory provision (e.g., 10 U.S.C. § 1176, *Enlisted members:  retention after completion of 18 or more, but less than 20 years of service*; 10 U.S.C. § 12686, *Reserves on active duty within two years of*

22

*retirement eligibility: limitation on release from active duty*, or 10 U.S.C. § 12646, *Commissioned officers: retention of after completing 18 or more, but less than 20, years of service*), such eligibility shall not factor into argument before the board hearing or in the board's findings. Eligibility for and applicability of sanctuary protections shall be determined independently of the board hearing by the respondent's chain of command, NGB A1 (if applicable), and servicing personnel center.

A3.21. The requirement for a verbatim transcript (DAFI 36-3211, Table 10.2, Note 1) shall not apply in these cases. An abbreviated transcript shall be used instead. Reports of proceedings in officer cases shall still be reviewed and authenticated consistent with DAFI 36-3211, paragraph 23.15.

A3.22. Eligible respondents may apply for transfer to the retired reserve at any time before the separation authority approves the findings of the board. To the extent consistent with this guidance, follow the process outlined in DAFI 36-3211, Table 8.13, and paragraph 23.10.2.

A3.23. DELETED

A3.24. Members eligible for discharge under these proceedings are not eligible for PALACE CHASE and similar programs (PALACE FRONT, PALACE SPORT, etc.) under DAFI 36-3211 unless the SecAF as determined that the member meets the criteria for a retention waiver and the government has a compelling interest, as determined by the SecAF, in retaining the member in a Reserve Component, duty, and position.

A3.25. All ARC members, officer and enlisted, who are being considered for discharge pursuant to this memorandum are eligible to elect an administrative discharge board hearing or Board of Inquiry. Consult Attachments 1, 2, and 4 for required notifications to the member and the member's procedural rights under this guidance.

A3.26. Consult Attachments 1 and 2 for action required by the administrative discharge board or Board of Inquiry.

A3.27. Commander's Actions and Disposition of Board Cases. The sole authority to finalize the Board's findings and recommendations is SecAF.

**Attachment 4**

**BOARD PROCEDURES**

A4.1.  Overview.

A4.1.1.  This attachment contains supplemental guidance to DAFI 36-3211 and DAFMAN 51-507 for conducting administrative discharge boards for enlisted members and boards of inquiry for officers who are being separated due to a current diagnosis or history of, or exhibiting symptoms consistent with, gender dysphoria.

A4.1.2.  The guidance contained herein: (1) supersedes any conflicting policy guidance in Department of the Air Force issuances, policy guidance, and memoranda; and (2) is effective immediately and will be incorporated into respective Department issuances, as appropriate.

A4.1.3.  The guidance contained in DAFMAN 51-507 will be utilized except as modified by the guidance in this Attachment.  The Consolidated Disposition Authority may further request that the Judge Advocate General modify the provisions of DAFMAN 51-507 as necessary to execute assigned responsibilities for the execution of Gender Dysphoria discharges.

A.4.1.4.  For RegAF respondents, the respondent's General Court Martial Convening Authority will fund all costs incurred to facilitate Respondent's presence at their administrative discharge board or Board of Inquiry as well as any other approved respondent-associated costs. The Chief, Air Force Reserve and the Director, Air National Guard, will fund these same costs for AFR and ANG respondents, respectively.

A4.2.  The Consolidated Disposition Authority.

A4.2.1.  The Consolidated Disposition Authority (CDA) is the officer show cause authority and the enlisted separation initiating authority for all DAF Service members identified for involuntary separation pursuant to this guidance. The CDA serves as the Convening Authority for all boards under this guidance.

A4.2.2.  SAF/MR will ensure designation of a General Officer in a non-operational, non-joint assignment outside the chain of command of the Surgeon General and Judge Advocate General to serve as the CDA. SAF/MR will ensure the CDA has sufficient support staff detailed to carry out the CDA's duties. The Judge Advocate General will separately ensure sufficient legal personnel are detailed or otherwise made available to support the board's legal functions.

A4.2.3.  The DAF will provide sufficient personnel and resources, including the following:

A4.2.3.1.  Sufficient support staff to the CDA;

A4.2.3.2.  Sufficient Service members in the grade of O-6 or above to serve on administrative boards or boards of inquiry, including a General Officer to serve as the board president in all cases.

24

A4.2.3.2.1.  Each member of the board shall be an officer of the same armed force as the respondent.

A4.2.3.2.2.  When the respondent is a Reserve Component member, one or more of the voting members will be a Reserve Component officer, preferably of the same component.

A4.2.3.3.  Sufficient resources to The Judge Advocate General to ensure the legal functions of the proceedings are accomplished.

A4.2.4.  The CDA may develop the necessary processes to execute involuntary separation actions under this guidance. This includes the authority to establish centralized administrative discharge boards or Boards of Inquiry, if the CDA determines this is the most expeditious means through which to accomplish the CDA's duties.

A4.2.5.  The CDA schedules all administrative discharge boards and Boards of Inquiry conducted under this guidance, and resolves any scheduling or logistical conflicts among the parties to the board and counsel. The CDA shall have wide discretion in adjudicating delay requests and other scheduling and logistical matters.

A4.2.6.  Counsel or respondent route any requests for delay to the CDA for resolution. The CDA shall consider the basis for the request, the length of the requested delay, and the impact to the DAF and the respondent of granting or denying the request.

A4.2.7.  The CDA will provide a weekly report to the Assistant Secretary for Manpower and Reserve Affairs (SAF/MR) that includes the number of cases referred to the CDA for processing, the status of ongoing administrative separation boards, and the number of completed boards referred to SAF/MR.

A4.2.8.  The CDA serves as the convening authority in all boards convened on the basis of gender dysphoria. As convening authority, the CDA is responsible for the composition of the board, any special processing required based on the specifics of a respondent's case, and forwarding cases to the Separation Authority after the board has closed.

A4.2.9.  The CDA appoints three voting members and may appoint as many alternate voting members as the CDA deems appropriate.  They will be experienced, unbiased persons of mature judgment.  The voting members will make themselves familiar with this Attachment and the procedures they are to follow in conducting the board.

A4.2.10.  Refer to Attachments 1 and 2 for guidance on the CDA's role as the enlisted separation initiating authority and officer Show Cause Authority.

A4.3.  Detailing of Non-Voting Members.  The Judge Advocate General (TJAG) shall ensure sufficient counsel is made available to serve as Recorders, Respondent's Counsel, Legal Advisors, and counsel to the CDA. Such members must meet the qualifications described in DAFI 36-3211. The Legal Advisor will be senior in rank to any counsel detailed to the case and

the respondent. However, in no case shall this provision be construed to require a Legal Advisor be above the grade of O-6.

A4.4.  Board Hearing or Board Waiver

A4.4.1.  Respondents facing an administrative discharge board or a Board of Inquiry on the basis of gender dysphoria have the procedural rights outlined in Attachments 1 and 2.

A4.4.2.  Right to Counsel.

A4.4.2.1.  A respondent may be represented before the board by detailed military defense counsel. A respondent may request military counsel of the member's own choice (e.g. individual military defense counsel) if the counsel of choice is reasonably available. Board proceedings will not be unreasonably delayed because of the availability of counsel of choice.

A4.4.2.2.  A respondent may also be represented before the board by civilian counsel. Civilian counsel will be employed at the member's own expense.  Board proceedings will not be unreasonably delayed because of the availability of civilian counsel.

A4.4.2.3.  Either military or civilian counsel may represent a respondent who waives the right to appear.

A4.4.3.  The board will be responsible for making a finding as to whether the criteria in Attachment 1 or Attachment 2 of this guidance is met. If the board makes the finding of fact that there is a basis for separation, the board must recommend separation of the member, unless it appears the member meets all DoW retention criteria, in which case the board may recommend retention and that a retention waiver be processed.

A4.4.3.1.  DoW policy on separation of members with gender dysphoria establishes the service characterization. As such, if the sole basis for separation is that a member has a current diagnosis or history of, or exhibits symptoms consistent with, gender dysphoria, the board must recommend an Honorable service characterization.

A4.4.3.2.  The board will not make a recommendation as to the recoupment of any unearned portions of any bonuses, incentive pay, special pay, educational benefits or stipends, continuation pay, or similar pay. DAFMAN 51-507, paragraph 4.4.3, shall not apply, and a Board of Inquiry or administrative separation board shall not receive evidence pertaining to recoupment.

A4.4.3.3.  If the respondent intends to present evidence or witnesses relevant to the retention criteria, notice must be provided to the Recorder and Legal Advisor no later than 5 duty days prior to the start of the board hearing.

A4.4.4.  If the board finds there is a basis for separation under this provision, the board may only recommend retention of the member under the following conditions, as established in

26

the OUSD P&R Memorandum, *Additional Guidance on Prioritizing Military Excellence and Readiness*, dated 26 February 2025:

A4.4.4.1.  First, the board must find by a preponderance of the evidence that the member meets the medical criteria for retention:

A4.4.4.1.1.  That the member has demonstrated 36 consecutive months of stability in their birth sex without clinically significant distress or impairment in social, occupational, or other important areas of functioning; and

A4.4.4.1.2.  That the member has demonstrated that they have never attempted to transition to any sex other than their birth sex; and

A4.4.4.1.3.  That the member is willing and able to adhere to all applicable standards, including the standards associated with the member's birth sex.

A4.4.4.2.  If the board finds that the member meets all three medical criteria, the board must then determine whether there is a compelling Government interest in retaining the member that directly supports warfighting capabilities. This includes special experience, special training, and advanced education in a highly technical career field designated as mission critical and hard to fill by SecAF if such experience, training, and education is directly related to the operational needs of the Air Force or Space Force.

A4.4.4.3.  If the board determines that the member meets all three threshold medical criteria, and that there is a compelling Government interest in retaining the member, the board may recommend that SecAF process a waiver to retain the member.

A4.4.5.  Probation and rehabilitation is not authorized under this provision.

A4.4.6.  Board hearings will not be recorded.  No member, witness, or any other person present for the hearing will record any portion of the proceedings.

A4.4.7.  Board Waivers. Members may request to waive their board proceedings at any time between notification and the beginning of the board. Such requests will be unconditional.

A4.4.7.1.  The CDA may approve the waiver request.  An approved waiver will be forwarded with the discharge package to the Separation Authority for final action.

A4.4.7.2.  Members who have waived the right to a board hearing may request withdrawal of the waiver in writing. The member must state the reason and submit a written request to the CDA. If the CDA has not forwarded the request to the Separation Authority, the CDA may approve or disapprove the waiver withdrawal request. If the CDA has forwarded the waiver request to the Separation Authority, only the Separation Authority may approve or disapprove the withdrawal request.

A4.5.  Board Procedures.

A4.5.1.  General Information.

A4.5.1.1.  An enlisted separation board is an Administrative Discharge Board.

A4.5.1.2.  An officer separation board is a Board of Inquiry or a "show cause board."

A4.5.1.3.  For Air National Guard officers, this is also a Withdrawal of Federal Recognition board.

A4.5.1.4.   The functions and duties of an administrative discharge board or BOI are purely administrative, not judicial.  The board hears sworn testimony and considers other evidence to determine whether a preponderance of the evidence supports the basis alleged.  If the voting members find the respondent has a current diagnosis or history of, or has exhibited symptoms consistent with Gender Dysphoria, the board must recommend separation, unless it appears the member meets all DoW retention criteria, in which case the board may recommend retention and that a retention waiver be processed.

A4.5.1.5.  All boards are closed proceedings. A closed proceeding means that all spectators will be excluded from the boardroom. A "spectator" is defined as someone who is neither listed on the Convening Order nor otherwise directly assisting counsel. Discharge clerks, paralegals, or other legal personnel assisting the government or respondent are not considered spectators.

A4.5.1.6.  Delay in Convening the Board.  Within 10 workdays (14 calendar days for Air Reserve Component) of receiving notice of the place and date for the board, the respondent may request a delay by sending a written request to the legal advisor with copies to the recorder and CDA.  The CDA determines if the delay is approved or denied. If a Legal Advisor has been detailed, the Legal Advisor may grant a delay of 10 workdays or less.

A4.5.1.7.  Uniform and Grooming Standards. All DAF members attending separation hearings under this provision, whether in person or virtually, must conform to the uniform and grooming standards associated with their sex in accordance with OUSW (P&R) Memorandum, *Prioritizing Military Excellence and Readiness: Additional Implementation Guidance on Administrative Separations*, dated 8 October 2025. Waivers to permit civilian attire or a uniform not associated with a member's sex will not be authorized or considered. Should a member not conform to uniform and grooming standards, board proceedings will continue with the member in absentia and may, as appropriate, take the member's failure to comply with standards into consideration when determining whether the basis for separation has been established. Wear of Service dress (Class A) is preferred for separation boards convened under this guidance, but wear of the Occupational Camouflage Pattern (OCP) uniform or equivalent flight duty uniform will not be adversely considered in any board decision.

A4.5.1.8.  The CDA will remind members that their appearance in uniform should not be used to imply official approval or support for any particular viewpoint, and that they are prohibited from participating in activities such as unofficial public speeches, interviews,

picket lines, marches, rallies, or public demonstrations while in uniform, in accordance with OUSW (P&R) Memorandum, *Prioritizing Military Excellence and Readiness: Additional Implementation Guidance on Administrative Separations*, dated 8 October 2025.

A4.5.2.  Composition of the Board.

A4.5.2.1.  Voting Members.

A4.5.2.1.1.  Voting members are detailed to the board IAW the procedures above.

A4.5.2.1.2.  When the respondent is a Reserve Component member, one or more of the voting members will be a Reserve Component officer, preferably of the same component.

A4.5.2.1.3.  Officers may not serve on a board if they:

A4.5.2.1.3.1.  Are witnesses in the case.

A4.5.2.1.3.2.  Appeared as witnesses before any previous board convened under this publication to review the record of the respondent.

A4.5.2.1.3.3.  Served as members of any previous board convened under this publication to review the record of the respondent.

A4.5.2.1.3.4.  Served as members or convening or reviewing authority of a court-martial where the respondent was the accused.

A4.5.2.1.3.5.  Previously recommended a discharge in the case or administered nonjudicial punishment pursuant to Article 15, Uniform Code of Military Justice (UCMJ) or an administrative action, such as Letter of Admonishment or Letter of Reprimand, denial of reenlistment, demotion action, or other adverse personnel actions to the respondent.

A4.5.2.1.3.6.  Have rated the respondent.

A4.5.2.1.3.7.  Cannot perform duties fairly and impartially (e.g. predetermined opinions about the government's or the respondent's case and are unable to make findings and recommendations based on the evidence).  (**Note:**  Advanced knowledge of the case does not, in itself, render an officer unable to serve.)

A4.5.2.1.3.8.  A voting member detailed to the hearing will identify to the CDA if they meet any of the above criteria.

A4.5.2.1.4.  If, during a hearing, the board does not have a quorum or qualifying composition, the board is recessed until new voting members are detailed.  New voting members will review any documentary evidence admitted during the

proceeding and the Legal Advisor will inform them of any pertinent developments or rulings.

A4.5.2.1.5.  The president presides over the hearing and may require the recorder to perform administrative duties.

A4.5.2.2.  Nonvoting Members:

A4.5.2.2.1.    The recorder assists the board and presents the government's case.

A4.5.2.2.2.    The legal advisor, a judge advocate, presides in all open sessions.

A4.5.2.3.  Excusal and Challenges.

A4.5.2.3.1.  Only the CDA may excuse or remove voting or nonvoting members.

A4.5.2.3.2.  Voting and nonvoting members who do not believe they possess the requisite qualifications will immediately inform the legal advisor.

A4.5.2.3.3.  The voting and nonvoting members are only subject to challenge by the respondent or recorder for cause. Written questions to, or *voir dire* of, the voting and nonvoting members is not permitted at the hearing.  Written questions and challenges will be accomplished in advance of the hearing. The respondent, respondent's counsel, or recorder may submit written challenges to the CDA through the legal advisor no later than 10 duty days before the board hearing is scheduled to begin.

A4.5.2.3.4.  The legal advisor will forward all requests for excusal or removal to the CDA for a decision.

A4.5.3.  Duties of the Legal Advisor. The legal advisor:

A4.5.3.1.  Does not have authority to dismiss an allegation or to terminate the proceedings.

A4.5.3.2.  Is not a passive "legal referee" but has an affirmative responsibility to ensure that the evidence is fully, fairly, impartially, and professionally developed and to assist the president in the conduct of the board to that end.  The legal advisor may question witnesses if the legal advisor believes relevant matters remain undeveloped by the recorder or the respondent.

A4.5.3.3.  Consults, as necessary, with the recorder and the respondent's counsel at any time prior to or after the convening of the board.

A4.5.3.4.  Prepares for the hearing.

A4.5.3.5.  Clarifies the issues to include scheduling matters within the legal advisor's authority.

A4.5.3.6.  Rules on disclosure and admissibility of evidence, production of witnesses, and other issues not requiring the presence of the voting members or the action of the CDA or Separation Authority.

A4.5.3.7.  Instructs the board on its functions, duties, and procedures in open session only.

A4.5.3.8.  Advises the board at any and all stages of the proceedings, as appropriate, on request of the board, or on the legal advisor's own initiative.

A4.5.3.9.  Makes rulings on procedural matters.

A4.5.3.10.  Authenticates the record of the board proceedings.

A4.5.4.  Duties of the Recorder.  The recorder:

A4.5.4.1.  Assists the president of the board and the legal advisor as required.

A4.5.4.2.  Is not a prosecutor and should not act like one.  This does not preclude the recorder from ensuring an adequate presentation of the government's case during the board hearing.

A4.5.4.3.  Reviews the case file as soon as it is received to ensure that the respondent was properly notified, the notice provided was accurate, and all necessary documentation was included and prepared for the hearing.  If more investigation, documentation, or information is needed for proper evaluation of the case, the recorder will ask for it at this time.

A4.5.4.4.  Arranges for the respondent and counsel to review all the documents to be submitted in evidence and to have access to guidance that governs the proceedings.

A4.5.4.5. Provides the respondent and counsel the names, contact information or addresses, and statements of all witnesses.

A4.5.4.6.  Interviews prospective witnesses and ensures their availability for the hearing.

A4.5.4.7.  Takes affidavits or collects statements from those who are not available for the hearing.

A4.5.4.8.  Gives the respondent and counsel for the respondent and all board members timely notice of the time and place of the hearing.  Includes in the notice that the respondent's failure to appear without good cause at the hearing constitutes a waiver of the respondent's right to be present at the hearing.

A4.5.4.9.  Calls to the attention of the legal advisor any matters that might warrant a pre-hearing conference and attends, along with respondent or respondent's counsel, any such pre-hearing conference.

A4.5.4.10.  Attempts to bring to the attention of the board and make a matter of record all pertinent information favorable as well as unfavorable to the respondent.

A4.5.4.11.  Makes other necessary preparations for an orderly and proper board hearing.

A4.5.4.12.  The recorder may: present an opening statement; present evidence and call witnesses; examine any witnesses called by the respondent, including the respondent, if the respondent chooses to testify; make objections; present rebuttal witnesses or evidence; and make a final argument based on all evidence submitted at the board hearing.

A4.5.4.13.  Ensures an abbreviated transcript of the board hearing is completed.

A4.5.5.  Reviewing the Case.

A4.5.5.1.  Upon receipt of the case file, the recorder:

A4.5.5.1.1.  Reviews the case before the board convenes to determine which areas may need exploration and explanation at the hearing and whether the evidence in the case file is sufficient to accomplish that end.  As government representative, the recorder is under an affirmative obligation to obtain and develop the best available evidence relevant to the issue before the board.  To that end, the recorder may request that the CDA direct further fact-finding or supply additional documentation.

A4.5.5.1.2.  Gathers and reports to the appropriate decision authority information about availability of requested and other prospective witnesses.

A4.5.5.1.3.  Submits the names of requested witnesses (both those requested by the respondent or counsel and those that the recorder is requesting to testify for the government) to the legal advisor for a decision.

A4.5.5.1.4.  Not later than 5 duty days before the board is to convene, provides the respondent or counsel with a copy of any releasable records or other documentary material not previously furnished to the respondent that the recorder proposes to offer in evidence at the board hearing. Upon a showing of good cause, the legal advisor may allow a recorder to submit documents after this deadline.

A4.5.5.1.5.  Attends any prehearing conference called by the legal advisor, along with the respondent and counsel.

A4.5.5.1.6.  Not later than 3 duty days prior to the board convening date, provides to each board member a copy of the initiation notification and this chapter.

A.4.5.5.1.7.  Makes any other necessary preparations to assure a proper venue for the board and those necessary for the orderly, expeditious, and proper presentation of the case at the board hearing.

A4.5.5.2. The legal advisor also reviews the file before the board convenes and may convene pre-hearing conferences to advise the recorder and respondent of any matters that require attention to ensure a fair and complete hearing.

A4.5.5.3. The Voting Members do not review the file before the board convenes.

A4.5.6. Respondent's Rights at the Board.

A4.5.6.1. Personal Appearance. The respondent may appear in person, with or without counsel, at all open proceedings of the board. The CDA has discretion to direct virtual or other alternate means of appearing before the board, within the limitations of 10 U.S.C. § 1185. Members electing to appear virtually must do so from their local or closest installation legal office.

A4.5.6.2. A respondent who cannot be present, or one who waives presence, may be represented by counsel in their absence during the board.

A4.5.6.3. Presentation of Witnesses. The respondent or counsel may question any witness who appears before the board. Additionally, if the government does not invite a requested witness and the legal advisor does not approve production of the witness (see paragraph DAFI 36-3211, paragraph 10.9.2), a respondent may arrange for the presence of any witness at no cost to the government that the legal advisor determines is relevant, competent, material, and not unduly repetitious.

A4.5.6.4. The respondent's rights regarding self-incrimination under Article 31, UCMJ (10 U.S.C. § 831, Art 31, *Compulsory Self-incrimination Prohibited*) apply. The respondent is not required to testify before a BOI, but should the respondent choose to do so, such testimony is sworn (under oath) and the respondent is subject to cross-examination. The respondent is entitled to make or submit an unsworn statement directly. The board may not draw any adverse inference from the respondent's election not to testify and should regard the respondent as having elected to show cause for the respondent's retention by means of other than personal testimony.

A4.5.6.5. Submission of Evidence. The respondent may, at any time before the board convenes, or during the proceedings, submit material for the board to consider. It may consist of sworn or unsworn statements, affidavits, certificates, or stipulations. This includes, but is not limited to, depositions of witnesses not deemed reasonably available, or unwilling to appear voluntarily. Evidence submitted to the board must be otherwise relevant, competent, material, and not unduly repetitious. The legal advisor shall ensure that only evidence relevant to the limited purpose of the board is admitted.

A4.5.7. Arranging for Witnesses.

A4.5.7.1. The recorder acts for the board to invite witnesses both for the government and for the respondent. The requesting party shows that the desired witness' testimony is relevant and can contribute materially to the case. The legal advisor determines if the witness' testimony is relevant, material, and not cumulative.

33

A4.5.7.2. In Person Testimony.  Normally, virtual or remote testimony will be sufficient for purposes of the board. Only in rare circumstances should a witness be authorized to travel at Government expense to testify before the board.  Only the CDA may authorize use of government funds to travel a witness for in-person testimony.

A4.5.7.2.1.    A party requesting a particular witness to testify in person must submit in writing the name, address, and telephone number, if known, of the expected witness, a summary of the expected testimony of the witnesses, and an explanation why written, telephonic, video teleconference, or recorded testimony of the witnesses could not be presented to the board hearing for a fair determination of the case.

A4.5.7.2.2. Delays in Proceedings Concerning Witnesses.  Once convened, the Legal Advisor may approve a delay of proceedings for no more than 24 hours to secure the presence of a witness essential to the proceeding.  Delays longer than 24 hours may only be approved by the CDA.  Normally, a board proceeding will not be delayed to secure in-person witness testimony when remote testimony is available.  If the legal advisor finds the in-person testimony of the witness is essential to the proceeding, the Legal Advisor may approve a delay of proceedings for no more than 24 hours.  Delays longer than 24 hours may only be approved by the CDA.

A4.5.8.  Hearing Procedures.  The president of the board is the ranking member and presides when the board meets in closed session.  Only the voting members are present in closed session.

A4.5.8.1.  Burden of Proof.  The burden is on the government to establish that a basis for discharge exists by a preponderance of the evidence.  A preponderance of the evidence means simply the greater weight of credible evidence.  There is no requirement to prove that the basis exists beyond a reasonable doubt. If a respondent argues that they meet the OSW (P&R) retention criteria, the burden shifts to the respondent to prove they meet such criteria by a preponderance of the evidence.  **Note:** Without limiting the respondent's right to a full and fair hearing, the legal advisor may impose reasonable restrictions on evidence introduced by the respondent that conflicts with previously adjudicated matters.

A4.5.8.2.  Oaths.  The recorder administers the oaths to the legal advisor, the interpreter (if one is used), and the board's voting members and witnesses.  The legal advisor administers the oath to the recorder.

A4.5.8.3.  Instructing the Board.  The legal advisor instructs the board in open session in the presence of the respondent and respondent's counsel.  When the respondent is not present for the hearing, give the instructions in the presence of the respondent's counsel.

A4.5.8.3.1.  Give the introductory instructions before the taking of the evidence starts. They include an explanation of the board member, recorder, and legal advisor responsibilities.

34

A4.5.8.3.2.  Give the closing instructions before the board goes into closed session to arrive at findings and recommendations.  The instructions summarize the requirements for establishing a basis for the proposed discharge and lists the options available to the board.  The legal advisor gives the instructions to fit the case at hand.

A4.5.9.  Opening Statements and Presenting Evidence.

A4.5.9.1.  The recorder may make an opening statement outlining the allegations, the evidence to support them, and the outcome the recorder intends to seek.

A4.5.9.2.  The respondent (ordinarily through counsel unless the respondent is representing himself or herself) may make an opening statement immediately following the recorder's opening statement or at the conclusion of the recorder's evidence.

A4.5.9.3.  The recorder provides evidence in support of the notification of discharge with documentary evidence, through witnesses, or both.  Submission of one or more of the following documents is ordinarily sufficient to establish by a preponderance of the evidence a member has a current diagnosis or history of, or exhibits symptoms consistent with, gender dysphoria:

A4.5.9.3.1.    Medical records indicating a previous or current diagnosis of gender dysphoria or documented symptoms of gender dysphoria.

A4.5.9.3.2.    A member's prior request for an exception to policy to adhere to sex-based military standards (e.g., uniform, grooming, fitness) different from their birth sex, associated with a documented diagnosis of gender dysphoria.

A4.5.9.3.3.    A member's prior request for a change to the sex-marker in DEERS, as a means of sex transition.

A4.5.9.3.4.    A member's medical treatment plan, placement on medical profile, or applicable deployment waiver associated with a documented diagnosis of gender dysphoria.

A4.5.9.3.5.    A member's voluntary self-identification via written administrative remarks to their chain of command that they have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria.

A4.5.9.4.  The respondent may offer evidence refuting the respondent's diagnoses, history of, or exhibition of symptoms consistent with Gender Dysphoria.  The respondent may also offer evidence pertaining to the OSW (P&R) retention criteria, subject to the notice and relevance requirements of this guidance.

A4.5.9.5.  Strict rules of evidence need not be observed; however, the legal advisor may only admit evidence that is relevant, competent, material, and not unduly repetitious, keeping in mind the limited purpose of the board.  The recorder and the respondent must be sensitive to the need to avoid unnecessarily redundant or cumulative evidence.

A4.5.9.6. Admissibility of character evidence or of evidence of the history and character of a respondent's service will be considered on a case-by-case basis based on relevancy. The determination of relevancy will be made by the legal advisor who will ensure any evidence is relevant, material, competent, and not unduly cumulative of other evidence before admitting it. Such evidence must be relevant to a question properly before the board before it may be admitted. Examples where such evidence may be relevant could include the character for truthfulness or untruthfulness of a testifying respondent, or records of a respondent's deployments introduced to demonstrate that the respondent has special experience that directly supports warfighting capabilities (after a respondent has raised the three medical retention criteria). The legal advisor may require the use of written documents, virtual testimony, and other means to avoid unnecessary delay or lengthy proceedings. Because Gender Dysphoria will be the sole basis for discharge in proceedings under these provisions, character evidence or evidence of the history and character of a respondent's service admitted for purposes of characterization of service is not relevant, given the requirement that the respondent receive an Honorable service characterization.

A4.5.9.7. New or additional evidence may be developed at the hearing. The board may, on its own or the recorder's motion, amend or supplement the notification letter to conform to the new evidence. In considering the new or additional evidence, the board is bound by the same rules of evidence and procedure generally applicable in the hearing.

A4.5.9.8. The recorder and the respondent may present evidence in rebuttal, as authorized by the legal advisor.

A4.5.10. Examining Witnesses.

A4.5.10.1. The recorder administers the oath to each witness who appears before the board.

A4.5.10.2. The recorder, respondent and respondent's counsel may examine and cross-examine witnesses to assist the board in making a complete record.

A4.5.10.3. Any member of the board and the legal advisor may question witnesses for clarification. However, they must refrain from questioning witnesses until the recorder and the respondent have finished. The legal advisor only allows questions that are necessary to clarify a significant issue bearing on the board's purpose. Any questions must be relevant to the issue before the board.

A4.5.10.4. The board may call witnesses as necessary.

A4.5.11. The board considers all relevant material, not only the information in the notification or Statement of Reasons. The recorder ensures that all information favorable to the respondent that bears on the issue before the board comes to the attention of the board.

A4.5.12. Amending the Statement of Reasons or Notification Letter.

A4.5.12.1.  The board may amend the Statement of Reasons or Notification Letter to:

A4.5.12.1.1.  Correct errors;

A4.5.12.1.2.  Ensure it conforms to the evidence (including new or additional evidence);

A4.5.12.1.3.  If the board amends the Statement of Reasons or Notification Letter, the president informs the parties in open session before making its findings, determination, or recommendation.

A4.5.12.1.4.  If the board amends the Statement of Reasons or Notification Letter, the respondent may be given additional time to prepare.  This pertains only to major changes such as adding new reasons and not minor changes such as correcting formatting errors.  Delays of less than 24 hours may be approved by the legal advisor.  Delays longer than 24 hours may only be approved by the CDA.  The respondent may waive the right to additional time.  In such cases the waiver is included in the record.

A4.5.13. Closing Arguments.  The respondent or counsel for the respondent and the recorder may present arguments before the board.  After closing arguments, the legal advisor gives instructions to the board, as necessary.

A4.5.14.  Deliberations and Voting in Closed Session.

A4.5.14.1.  The board then enters closed session, attended only by voting members.

A4.5.14.2.  The board:

A4.5.14.2.1.  Judges the case on the evidence based on their experience in and knowledge of the USAF or USSF.

A4.5.14.2.2.  Judges the facts considering the instructions given by the legal advisor.

A4.5.14.2.3. Weighs all the evidence and arrives at their findings based on the standard of preponderance of the evidence.

A4.5.14.3.  Legal Assistance.  If the board requires advice of the legal advisor during the deliberations, the board president opens the board and obtains the advice in open session.

A4.5.15. Findings and Recommendations:

A4.5.15.1.  After considering and evaluating all the evidence, the board arrives at findings and recommendations through secret, written ballot.

A4.5.15.2.  The board makes a specific finding as to whether the factual basis for discharge exists.

A4.5.15.2.1.  The written finding accurately reflects the board's evaluation of the evidence.

A4.5.15.2.2.  The findings and recommendations should be reviewed by the legal advisor in open session for administrative sufficiency prior to the announcement.

A4.5.15.3.  The board's primary responsibility is assessing whether a basis for discharge exists. If a basis for discharge exists, the only permissible recommendation is separation with an honorable characterization, unless the member meets each of the DoW retention criteria.  If the basis is not found, the only permissible recommendation is retention. Any recommendation must be consistent with the findings.  The board shall not make recommendations on recoupment or other ancillary matters; such requests are processed separately.

A4.5.15.4.  Before announcing the results in open session, the board president ensures the vote of each member is accurately recorded.  A majority vote determines each issue.

A4.5.16. Announcing Results.

A4.5.16.1.1.   After the board has reached is findings and recommendations, the president opens the board and announces the findings and recommendations to the respondent in open session.

A4.5.16.1.2.   The board's findings and recommendations are carefully recorded and included in the abbreviated transcript.

A4.5.16.1.3.   After the results have been announced, and if there are no other legal matters to discuss, the board is adjourned.

A4.6.  Post-Board Procedures.

A4.6.1.  The Board Report

A4.6.1.1.  The Board Report includes the following:

A4.6.1.1.1.  The Convening Order,

A4.6.1.1.2.  An abbreviated transcript of the hearing. In accordance with DoDI 1332.30, the CDA is responsible for preparing a "record of the proceeding in summarized form." For purposes of this guidance, a record of the proceeding in summarized form requires an abbreviated transcript,

A4.6.1.1.3.  The documentary evidence submitted during the hearing, and

A4.6.1.1.4.  The signed finding and recommendation of the voting members.

A4.6.1.2.  The Recorder ensures an abbreviated transcript of the hearing is prepared and compiles the documentary evidence admitted in the board.

A4.6.1.2.1.  Prior to adjournment of the board, the legal advisor ensures that all board members have signed a certification on the worksheet from which the board president announced the findings and a majority of the voting members concurred in the findings and recommendations. Board members who do not concur in one or more finding or in the recommendations may, in their sole discretion, provide the recorder with a statement and explanation for inclusion in the case record.

A4.6.1.2.2.  The legal advisor authenticates the Board Report by certifying its accuracy and the fact that a majority of voting members concurred in the findings and recommendations.

A4.6.1.2.2.1.  If the legal advisor is not reasonably available to authenticate the report, the board president and the recorder authenticate the report and state in writing the reason for the substitution.

A4.6.1.2.2.2.  If the board president is not reasonably available to authenticate the report, a voting member authenticates in the president's absence, stating in writing, the reason for the substitution.

A4.6.1.2.3.  After authentication of Board Report, the legal advisor sends the completed Board Report to the CDA.

A4.6.2.  The Case File

A4.6.2.1.  The Case File includes the following:

A4.6.2.1.1.    The letter of notification;

A4.6.2.1.2.    The member's pre-board submissions, if any;

A4.6.2.1.3.    The Board Report;

A4.6.2.1.4.    A recommendation on the respondent's retirement request, if any;

A4.6.2.1.5.    Report of Medical Assessment (this is the medical clearance memorandum; DD Form 2807-1, *Report of Medical History*, and DD Form 2808, *Report of Medical Examination*, are not included in record).

A4.6.3.  Distributing the Board Report and Case File.

A4.6.3.1.  The CDA ensures the respondent receives the Board Report and Case File (an electronic copy is sufficient).

A4.6.3.2.  Within 5 workdays (15 calendar days for Air Reserve Component) after receiving or having access to the Board Report and Case File, the respondent may send the CDA:

A4.6.3.2.1.  Suggested corrections to the report.  The CDA, after consultation with the legal counsel to the CDA, determines what corrections are allowable and informs the respondent or counsel accordingly;

A4.6.3.2.2.  Brief argument assigning error or raising new matters;

A4.6.3.2.3.  Newly discovered evidence not earlier available that could materially affect the board's findings and recommendations;

A4.6.3.2.4.  A request for an extension in taking one or more of these actions.  The respondent provides reasons for requesting the delay.  The CDA may grant such delay if satisfied that denying the request would prejudice the respondent's rights.

A4.6.3.3.  The CDA will cause a copy of the Board Report and Case File to be sent to AFPC (or ARC servicing personnel offices for ARC members) to be retained for a minimum of one year.

A4.6.4.  Forwarding for Action by the Separation Authority.

A4.6.4.1.  The CDA sends the following to the Separation Authority:

A4.6.4.1.1.  The Board Report;

A4.6.4.1.2.  The Case File, including the respondent's submissions, if any, post board;

A4.6.4.1.3.  Single-sided copies of the member's performance reports; and

A4.6.4.1.4.  Brief comment on the board proceedings, specific to the individual member, and a recommendation on the Separation Authority's final action.

A4.6.4.2.  A legal review of the Board Report and Case File will be completed prior to forwarding to the Separation Authority.  The legal review is not provided to the respondent.

A4.6.5.  After the board has made its findings and the Separation Authority has approved, changed, or disapproved the board's recommendations, the member may submit a request for a retention waiver in accordance with the OUSW (P&R) Memorandum, *Prioritizing Military Excellence and Readiness: Additional Implementation Guidance on Administrative Separations*, dated 8 October 2025; the OUSD (P&R) Memorandum, *Additional Guidance on Prioritizing Military Excellence and Readiness*, dated 26 February 2025; and the Office of the Undersecretary of Defense for Manpower and Reserve Affairs Memorandum, *Clarifying Guidance on Prioritizing Military Excellence and Readiness: Retention and Accession Waivers*, dated 4 March 2025.

*BY ORDER OF THE*
*SECRETARY OF THE AIR FORCE*

*DEPARTMENT OF THE AIR FORCE*
*INSTRUCTION 36-3211*



*24 JUNE 2022*

*Incorporating Change 1, 20 November 2023*
Certified Current 20 November 2023

*Personnel*

*MILITARY SEPARATIONS*

## COMPLIANCE WITH THIS PUBLICATION IS MANDATORY

**ACCESSIBILITY:**  Publications and forms are available for downloading or ordering on the e-Publishing website at **www.e-Publishing.af.mil**.

**RELEASABILITY:**  There are no releasability restrictions on this publication.

OPR:  AF/A1P

Supersedes:  AFI36-3204, 6 April 2017
AFI36-3205, 10 October 2003
AFI36-3206, 9 June 2004
AFI36-3207, 9 July 2004
AFI36-3208, 9 July 2004
AFI36-3209, 14 April 2005

Certified by: SAF/MR
Pages: 512

This publication implements Department of the Air Force Policy Directive (DAFPD) 36-32, *Military Retirements and Separations.*  This publication was written through collaboration with the Chief of Air Force Reserve (AF/RE), the Director of the Air National Guard (NGB/CF), the Deputy Chief of Space Operations for Human Capital (SF/S1), and the Deputy Chief of Staff for Manpower, Personnel, and Services (AF/A1) and applies to the Regular Air Force, the Air Force Reserve (AFR), and the Air National Guard (ANG).  This instruction is a Department of the Air Force (DAF) instruction and applies to U.S. Space Force (USSF) members until such time as separate service guidance is published. **Note:** All references to United States Air Force (USAF) terminology, units, grades, and positions will also apply to the equivalent in the USSF, as appropriate. For example, references to Airmen will also apply to Guardians. References to Major Commands (MAJCOMs) or Numbered Air Forces (NAFs) will also apply to Field Commands (FLDCOM). References to wings will also apply to deltas. Air Staff roles and responsibilities (i.e., AF/A1) also apply to the equivalent Office of the Chief of Space Operations (Space Staff) office (i.e., SF/S1), as appropriate.  This publication provides guidance on the execution of voluntary and involuntary separations.  This Instruction requires the collection and or maintenance of information protected by the Privacy Act of 1974 authorized by Title 10 U.S.C. § 9013, Secretary of the Air Force, and E.O. 9397 (SSN). The applicable SORNs F036 AF PC C, Military Personnel Records

System, and F036 AF PC Q, Personnel Data System (PDS) are available at **http://dpcld.defense.gov/Privacy/SORNs.aspx**. Ensure all records generated as a result of processes prescribed in this publication adhere to Air Force Instruction 33-322, *Records Management and Information Governance Program*, and are disposed in accordance with the Air Force Records Disposition Schedule, which is in the Air Force Records Information Management System. Refer recommended changes and questions about this publication to the office of primary responsibility (OPR) using the DAF Form 847, *Recommendation for Change of Publication.* Route DAF Forms 847 from the field through the appropriate functional chain of command. This publication may not be supplemented, further implemented, or extended. The authorities to waive wing/delta/unit level requirements in this publication are identified with a Tier ("T-0, T-1, T-2, T-3") number following the compliance statement. See Department of the Air Force Manual (DAFMAN) 90-161, *Publishing Processes and Procedures,* Table A10.1, for a description of the authorities associated with the Tier numbers. Submit requests for waivers through the chain of command to the appropriate Tier waiver approval authority, or alternately, to the requestor's commander for non-tiered compliance items. Compliance with the attachments in this publication is mandatory.

## *SUMMARY OF CHANGES*

This document has been substantially revised and needs to be completely reviewed. Changes include updates to the Entry Level Separation policy, changing the timeframe from 180 days to 365 days, changes for higher tenure (HYT), and updated board member guidance, among other changes. A margin bar (|) indicates newly revised material.

**Part 1—OVERVIEW, ROLES, AND RESPONSIBILITIES**                                    **27**

**Chapter 1—OVERVIEW**                                                              **27**

    1.1.    Overview................................................................................................    27

    1.2.    Roles and Responsibilities. .....................................................................    27

    1.3.    Separation of Enlisted Members..............................................................    27

    1.4.    Separation of Commissioned Officers. ....................................................    27

    1.5.    PALACE CHASE Programs. ...................................................................    27

    1.6.    Procedures for Applying as a Conscientious Objector. ...........................    27

**Chapter 2—ROLES AND RESPONSIBILITIES**                                            **28**

    2.1.    Separation of Enlisted Members (Reference Part 2)...............................    28

    2.2.    Separation of Commissioned Officers (Part 3). ......................................    30

    2.3.    PALACE CHASE Programs (Part 4). .....................................................    38

    2.4.    Procedures for Applying as a Conscientious Objector (Part 5). ..............    46

**Part 2—SEPARATION OF ENLISTED MEMBER**    48

**Chapter 3—INFORMATION APPLICABLE TO ALL SEPARATION**    48

Section 3A—General Procedures.    48

3.1.    Statutory Authority, Approval Authority, and Reasons for Separation. .................    48

3.2.    Plenary Authority of the SecAF to Direct Discharge. ...........................................    49

3.3.    Waivers or Exceptions. ...........................................................................................    50

3.4.    How to Apply Separation Provisions: ....................................................................    50

3.5.    How a Military Service Obligation (MSO) Affects Separation. .............................    50

3.6.    Processing Cases Involving Access to Special Access Programs Other Than
         Sensitive Compartmented Information. ...................................................................    51

3.7.    How An Incomplete Action Under the Uniform Code of Military Justice (UCMJ)
         Affects Separation: ................................................................................................    51

3.8.    What to do if members are not medically qualified for separation. ........................    52

3.9.    Executing Approved Separations: ...........................................................................    53

3.10.    In Absentia Separation. ..........................................................................................    53

3.11.    Separation Obtained by Fraud. ...............................................................................    54

3.12.    Handling Serious Misconduct While Separation is Pending. .................................    55

3.13.    Other Factors Affecting Eligibility: .......................................................................    55

Section 3B—Guidelines for Characterizing Service or Describing Separation.    56

3.14.    Authorized Types of Separation: ............................................................................    56

3.15.    What to Consider When Characterizing Service: ...................................................    57

3.16.    Separation without Service Characterization: .........................................................    57

3.17.    Period Considered in Characterizing Service. ........................................................    58

3.18.    Limitations on Service Characterization. ................................................................    59

3.19.    How the Type of Separation Affects the Individual. ..............................................    61

3.20.    Periodic Explanation of the Types of Separation: ..................................................    61

Section 3C—Other Requirements and Procedures.    62

3.21.    Separation Documents. ...........................................................................................    62

3.22.    Reports Requiring Special Handling: ......................................................................    62

3.23.    Aliens Seeking Naturalization and Naturalized Personnel Separated UOTHC. ......    62

3.24.    Disposition of Correspondence. ..............................................................................    62

3.25.    High Level Inquiries. ..............................................................................................    62

3.26.    Disposition of Cases Pending. ................................................................................    62

3.27.     Special Processing for Members Diagnosed with or Reasonably Asserting Post-Traumatic Stress Disorder or Traumatic Brain Injury (DoDI 1332.14, Enclosure 9) (T-0)................................................................................................... 63

3.28.     Special Processing for Enlisted Members Receiving Pre-Separation Medical Examinations. ......................................................................................... 63

3.29.     Special Processing for Members Who Have Made an Unrestricted Report of a Sexual Assault.......................................................................................... 64

3.30.     Special Processing for Discharge of Members for Personality Disorder or Other Mental Disorder Not Constituting a Physical Disability (paragraph 7.11) when the member has served or is currently serving in an imminent danger pay area or when a member has filed an unrestricted report of sexual assault or who has self-disclosed that they are a victim of a sex-related offense, an intimate partner violence-related offense, or a spousal abuse offense during service. ...................... 65

Table   3.1.     Disposition of Correspondence.................................................................. 67

Chapter 4—REQUIRED SEPARATIONS                                                          68

Section 4A—Expiration of Term of Service (ETS).                                         68

4.1.     Eligibility for Separation........................................................................ 68

4.2.     ETS Separation. ..................................................................................... 68

4.3.     Retention to Make Good Time Lost. ....................................................... 68

4.4.     Retention for Action by Court-Martial. .................................................. 69

4.5.     Retention to Complete Separation Processing. ....................................... 70

4.6.     Retention for Medical Treatment or Evaluation. .................................... 70

4.7.     Members Awaiting Disposition by Foreign Courts. ................................ 70

4.8.     Extension of Enlistment When Discharge for Cause is Pending. ............ 71

Section 4B—Changes in Service Obligation.                                               72

4.9.     Determining Eligibility. ......................................................................... 72

4.10.    Type of Separation................................................................................. 72

4.11.    Completion of Officer Training. ............................................................. 72

4.12.    Immediate Reenlistment. ....................................................................... 72

4.13.    Service with an ANG or an AFR Unit (PALACE CHASE)..................... 72

4.14.    Entering an Air Force Reserve Officer Training Corps (AFROTC) Program......... 72

4.15.    Insufficient Retainability for Permanent Change of Station (PCS). ........ 73

4.16.    Early Separation of Members. ................................................................ 73

4.17.    Elimination from the United States Air Force Academy (USAFA) Preparatory School. .................................................................................................. 73

4.18.    Release from Void Enlistment. ............................................................................    73

4.19.    Separation for being a Minor. .............................................................................    74

Table    4.1.    Reasons and Authority for Required Separation. .....................................................    75

Figure    4.1.    Sample Format for Request for Retention for Medical Treatment or Evaluation. ....    75

Figure    4.2.    Sample Format for Request for Separation without Retention for Medical
Treatment or Evaluation. ......................................................................................    76

Figure    4.3.    Sample Format for Request Pending Foreign Court Disposition. ...........................    77

**Chapter 5—VOLUNTARY SEPARATION PRIOR TO EXPIRATION OF TERM OF
SERVICE (ETS)**                                                                                          78

Section 5A—Processing Applications. ......................................................................................    78

5.1.    How Members Apply for Prior-to-ETS Separation. ................................................    78

5.2.    Action by the Separation Authority. ......................................................................    78

5.3.    Withdrawing Separation Applications or Approved Separations. ..........................    78

5.4.    Type of Separation. ...............................................................................................    78

Section 5B—Reasons for Voluntary Convenience of the Government (COG) Separation. .......    78

5.5.    Entering an Officer Training Program. ..................................................................    78

5.6.    Early Release to Further Education. .......................................................................    79

5.7.    Elimination from Officer Training School. ............................................................    80

5.8.    USAF or USSF Nonfulfillment of Enlistment or Reenlistment Agreement. ............    80

5.9.    Survivorship. .........................................................................................................    80

5.10.    Early Release from Extension. ...............................................................................    81

5.11.    Conscientious Objection. .......................................................................................    81

5.12.    Pregnancy or Childbirth. ........................................................................................    82

5.13.    Early Release for Holidays. ...................................................................................    83

5.14.    Miscellaneous Reasons. .........................................................................................    84

Section 5C—Dependency or Hardship. .....................................................................................    85

5.15.    Conditions for Discharge. ......................................................................................    85

5.16.    Evidence Required. ................................................................................................    85

5.17.    Red Cross Assistance. ............................................................................................    86

5.18.    Special Procedures and Considerations: ................................................................    86

5.19.    Final Action on Applications. ................................................................................    87

5.20.    Applications Submitted at Other Than the Base of Assignment. ............................    87

Table    5.1.    Options of the Separation Authority. .....................................................................    87

Table   5.2.    Applying for Dependency or Hardship Discharge.................................................    88

Table   5.3.    Reasons and Authority for Voluntary Separation. ...............................................    88

**Chapter 6—REQUEST FOR DISCHARGE IN LIEU OF TRIAL BY COURT-MARTIAL**    **90**

    6.1.    Basis for Discharge. .........................................................................................    90

    6.2.    Types of Discharge Authorized. .......................................................................    90

    6.3.    How Members Request Discharge in Lieu of Trial: ..............................................    90

    6.4.    Processing the Request for Discharge: ................................................................    91

    6.5.    ANG and AFR Members. ................................................................................    91

    6.6.    Service Member..............................................................................................    92

    6.7.    Medical Examination for Separation. ................................................................    92

    6.8.    Special Processing Requirements. ....................................................................    93

    6.9.    Additional Misconduct. ...................................................................................    93

    6.10.    Withdrawal of Request for Discharge................................................................    93

    6.11.    Who Can Approve Discharge. ..........................................................................    94

    6.12.    Action by the GCMCA. ..................................................................................    94

Figure   6.1.    Sample Request for Discharge in Lieu of Trial by Court-Martial. ..........................    94

Figure   6.2.    Sample Commander's Recommendation. ............................................................    96

Table   6.1.    How a Request for Discharge Affects the Processing of Charges. .........................    98

**Chapter 7—REASONS FOR INVOLUNTARY SEPARATION**    **99**

Section 7A—Preprocessing Considerations.    99

    7.1.    Choosing a Course of Action:....................................................................    99

    7.2.    Preprocessing Rehabilitation. .........................................................................    99

    7.3.    Determining the Basis of the Action:.................................................................    100

    7.4.    Limitations on Discharge Action. .....................................................................    101

    7.5.    Members in TDY Status: .................................................................................    102

    7.6.    Reassignment for Processing. ..........................................................................    102

Section 7B—Involuntary Discharge for the Convenience of the Government.    103

    7.7.    Instruction and Type of Separation....................................................................    103

    7.8.    Preprocessing Actions......................................................................................    103

    7.9.    Parenthood. ....................................................................................................    103

    7.10.    Insufficient Retainability or Lack of Qualifications for Required Retraining: ........    103

    7.11.    Conditions that Interfere with Military Service. .................................................    104

7.12.    Action by the SPCMCA. ............................................................................................    106

Section 7C—Defective Enlistments.                                                            106

7.13.    Types of Defects. ........................................................................................................    106

7.14.    Basis for Discharge for Erroneous Enlistment. ..........................................................    108

7.15.    Basis for Discharge for Fraudulent Entry. .................................................................    108

7.16.    Action Required of the Commander: ..........................................................................    108

7.17.    Concealment of Prior Service. ....................................................................................    109

7.18.    Concealment of Other Bars to Enlistment: .................................................................    110

7.19.    Waiver of Discharge for Fraudulent Entry or Erroneous Enlistment. ......................    110

7.20.    Discharge for Another Reason. ...................................................................................    111

7.21.    Types of Separations Authorized and Approval Authority. .......................................    112

Figure   7.1.    Sample Format for Request for Civilian Court Record Concealed at Time of
Enlistment. .................................................................................................................    112

Section 7D—Entry Level Performance or Conduct.                                               113

7.22.    Eligibility and Criteria. ..............................................................................................    113

7.23.    Preprocessing Counseling and Rehabilitation. ...........................................................    113

7.24.    Procedures, Type of Separation, and Approval Authority: ........................................    114

Section 7E—Unsatisfactory Performance.                                                       114

7.25.    Eligibility. ...................................................................................................................    114

7.26.    Criteria. .......................................................................................................................    114

7.27.    Preprocessing Actions: ...............................................................................................    115

7.28.    Separation Authority and Type of Separation: ..........................................................    116

7.29.    Suspension of Discharge. ............................................................................................    116

Section 7F—Substance Abuse Treatment Failure.                                                116

7.30.    Commander's Options. ................................................................................................    116

7.31.    Failure in Drug Abuse Treatment. ..............................................................................    117

7.32.    Failure in Alcohol Abuse Treatment. .........................................................................    117

7.33.    Type of Separation and Separation Authority. ...........................................................    117

7.34.    Suspension of Discharge. ............................................................................................    118

Section 7G—Misconduct.                                                                       118

7.35.    Members in all DAF components are required to maintain, both on and off duty,
the high standards of personal conduct set for USAF and USSF members. ............    118

7.36.    Types of Misconduct. .................................................................................................    118

7.37.    Type of Separation:................................................................................................    119

7.38.    Minor Disciplinary Infractions. ..........................................................................    119

7.39.    A Pattern of Misconduct. ....................................................................................    119

7.40.    Commission of a Serious Offense.........................................................................    120

7.41.    Civilian Conviction:.............................................................................................    123

7.42.    Human Immunodeficiency Virus (HIV). ..............................................................    124

7.43.    Drug Abuse...........................................................................................................    124

7.44.    Sexual Assault.......................................................................................................    126

7.45.    Separation Authority:............................................................................................    128

Section 7H—Discharge in the Interest of National Security. ..................................................    129

7.46.    Criteria for Discharge. .........................................................................................    129

7.47.    Required Processing. ............................................................................................    129

7.48.    Types of Separation. ............................................................................................    129

7.49.    Separation Authority. ...........................................................................................    130

Section 7I—Failure in Prisoner Retraining or Rehabilitation. ................................................    130

7.50.    Applicability and Separation Authority. ..............................................................    130

7.51.    Eligibility for Discharge. .....................................................................................    130

7.52.    Characterization of Service...................................................................................    130

7.53.    Processing Discharge Action. ..............................................................................    130

7.54.    Separation Authority and the Type of Separation.................................................    131

Table    7.1.    Action after Concealment of Prior Service is Verified. ........................................    131

Table    7.2.    Disposition of Case Involving Concealment of Mental Illness or Disorder. ...........    132

Table    7.3.    Disposition Entering Fraudulently Concealing Medical Disqualification (See
Note 1). ..............................................................................................................    133

Table    7.4.    Type of Separation and Approval Authority--Erroneous Enlistment or Fraudulent
Entry. ..................................................................................................................    133

Table    7.5.    Reasons and Authority for Involuntary Separation................................................    134

**Chapter 8—PROCEDURES FOR INVOLUNTARY DISCHARGE**                              **136**

Section 8A—Processing Guidelines. ......................................................................................    136

8.1.    Separation or Retention. ......................................................................................    136

8.2.    Procedural Requirements:.....................................................................................    137

8.3.    Medical Examinations. .........................................................................................    138

8.4.    EPB and Letter of Evaluation: ..............................................................................    138

8.5.      Information Received After Discharge Action Starts: ................................. 138

8.6.      Preparation of Recommendations for Discharge. ...................................... 140

8.7.      Processing Time Goals. ............................................................................. 140

8.8.      Notification Procedures. ........................................................................... 140

8.9.      Action by the Initiating Commander. ....................................................... 141

8.10.     Action by the Member. ............................................................................. 143

8.11.     Action by the FSS/MPF. ........................................................................... 144

8.12.     Action by the SPCMCA. ........................................................................... 144

Section 8B—Board Hearing or Board Waiver.                                                             145

8.13.     Procedural Rights: .................................................................................... 145

8.14.     The Initiating Commander will: ................................................................ 146

8.15.     The member will: ...................................................................................... 147

8.16.     Action by the MPF. ................................................................................... 148

8.17.     Action by the Administrative Discharge Board. ........................................ 148

8.18.     The Wing Commander (for ANG) or Convening Authority will: ............... 149

8.19.     Actions by the Separation Authority ......................................................... 149

8.20.     Withdrawal of the Board Waiver. .............................................................. 149

8.21.     Referral to a New Board. ........................................................................... 150

8.22.     Members Not Present for the Board Hearing: ........................................... 150

8.23.     Witnesses for the Board Hearing. ............................................................. 151

Section 8C—Conditional Waiver of Board Hearing.                                                       151

8.24.     Options Explained ..................................................................................... 151

8.25.     Offer by the Member. ................................................................................ 151

8.26.     Acceptance or Rejection: ........................................................................... 152

8.27.     Withdrawal of a Conditional Waiver. ....................................................... 152

8.28.     Action After a Conditional Waiver is Rejected: ........................................ 152

8.29.     Action When a Conditional Waiver is Accepted. ....................................... 152

Section 8D—Dual Action Processing.                                                                    153

8.30.     What Makes a Case Dual Action. .............................................................. 153

8.31.     Members Not Qualified for Worldwide Duty. ............................................ 153

Section 8E—Members with Lengthy Service.                                                              154

8.32.     Procedures Explained. ............................................................................... 154

| 8.33. | Referral Required. | 154 |
| 8.34. | MAJCOM, FLDCOM, or Equivalent Review and Processing. | 155 |
| 8.35. | Disposition of the Case.  SecAF, or designee, can direct: | 155 |
| 8.36. | Notifying Members of Lengthy Service or Sanctuary Probation. | 155 |
| 8.37. | Revocation of Lengthy Service or Sanctuary Probation. | 155 |
| 8.38. | Unfavorable Information. | 156 |
| 8.39. | Favorable Information Received After Separation Authority Approval | 156 |
| 8.40. | Nothing in paragraph 8.41 affects SAFPC's ability to review a member's personnel records when making probation decisions. | 157 |

Section 8F—Joint Processing.                                                                     157

| 8.41. | Reasons for Joint Processing. | 157 |
| 8.42. | Supplemental Procedures for Joint Processing: | 157 |
| 8.43. | Separation Authority for Cases Processed Jointly. | 157 |
| 8.44. | Reporting Separation for More Than One Reason. | 157 |
| 8.45. | Execution of Discharge Involving Civilian Conviction. | 157 |

Section 8G—Processing Members Dropped from the Rolls of the Air Force or Space Force or for Discharge in Absentia When Not Under Military Control.                         158

| 8.46. | Dropping ARC Enlisted Members from the Rolls of the USAF or USSF | 158 |
| 8.47. | Eligibility for In Absentia Processing. | 159 |
| 8.48. | Notice to the Absentee. | 159 |
| 8.49. | Return to Military Control. | 159 |
| 8.50. | Alien Absentees. | 160 |

Section 8H—Procedures for Cases Involving Civilian Conviction.                          160

| 8.51. | Commander's Responsibilities. | 160 |
| 8.52. | Waiver of Discharge: | 160 |
| 8.53. | Processing Recommendations for Waiver: | 160 |
| 8.54. | Notice to Civilian Authorities. | 161 |
| 8.55. | Civilian Court Actions Under Appeal. | 162 |
| 8.56. | Execution of Discharge Based on Civilian Conviction When Member is Not Under Military Control: | 163 |
| 8.57. | Cases Involving Foreign Courts. | 164 |

Section 8I—Waiver Processing Requirements in Drug Abuse Cases.                          164

| 8.58. | Waiver of Discharge. | 164 |

8.59.     Processing Recommendations for Waiver. ...............................................................    164

Section 8J—Waiver Processing Requirements in Sexual Assault Cases.    165

8.60.     Waiver of Discharge. ...............................................................................................    165

8.61.     Processing Recommendations for Waiver. ...............................................................    165

Section 8K—Waiver Processing Requirements in Cases Involving Unprofessional Relationships
            with Prospective Members of the Armed Forces or New Members During
            Recruiting, Entry-Level Processing, or Initial Skills Training.    166

8.62.     Waiver of Discharge. ...............................................................................................    166

8.63.     Processing Recommendations for Waiver. ...............................................................    166

Section 8L—Processing for Retirement Eligible Members.    167

8.64.     Service Retirement Eligibility ...................................................................................    167

8.65.     Action When the Respondent Does Not Apply. ........................................................    167

Figure  8.1.    Sample Letter of Notification—Entry Level Separation. ........................................    168

Figure  8.2.    Sample Letter of Notification—No Board Entitlement (Honorable or Under
                Honorable Conditions (General) Discharge) (See Note 7). ...................................    170

Figure  8.3.    Sample Memorandum Member's Statement—No Board Entitlement. ....................    173

Figure  8.4.    Sample Memorandum Recommendation for Discharge (See Note 10). ...................    174

Figure  8.5.    Sample Letter of Notification—Board Hearing. ........................................................    177

Figure  8.6.    Sample Letter Member's Statement of Board Hearing or Unconditional Waiver
                (see Note 1). .........................................................................................................    181

Figure  8.7.    Sample Letter Member's Conditional Waiver Statement (See Note 1) ...................    183

Figure  8.8.    Sample Paragraph Format Notice to Retirement-Eligible or Lengthy Service
                Review Eligible Members .....................................................................................    184

Figure  8.9.    Sample Separation Authority Discharge Memorandum. ...........................................    185

Figure  8.10.   Sample Memorandum Request for Information about Civilian Conviction. ...........    186

Figure  8.11.   Fact Sheet for Lengthy Service or Sanctuary Probation. ........................................    186

Table  8.1.     Special Processing. ................................................................................................    188

Table  8.2.     Referral to a New Board. ......................................................................................    189

Table  8.3.     Regular Component Average Processing Time Goals ...............................................    189

Table  8.4.     Action by the Special Court-Martial Convening Authority (SPCMCA). ................    189

Table  8.5.     Action by the Administrative Discharge Board. ........................................................    190

Table  8.6.     Options of the Separation Authority—Convenience of the Government
                Discharge. .............................................................................................................    191

Table  8.7.     Options of the Separation Authority—Discharge for Fraudulent Entry. ................    191

Table   8.8.     Options of the Separation Authority—Unsatisfactory Performance or Failure in
                 Drug or Alcohol Abuse Rehabilitation. .......................................................    192

Table   8.9.     Options of the Separation Authority—Discharge for Misconduct. .......................    193

Table   8.10.    Options of the Separation Authority—Discharge in the Interest of National
                 Security. .......................................................................................    193

Table   8.11.    Processing Cases Requiring Medical Evaluation....................................................    194

Table   8.12.    Dual Action Processing Involving Disability Separation. ....................................    194

Table   8.13.    Processing Cases Involving Service Retirement.......................................................    195

Table   8.14.    Disposition of Cases After SecAF Action. .................................................    196

## Chapter 9—PROBATION AND REHABILITATION (P&R)                                         197

Section 9A—The Probation and Rehabilitation Program.                                      197

        9.1.     Program Objectives...............................................................................    197

        9.2.     Rehabilitation Procedures:.....................................................................    197

        9.3.     Criteria for Suspension of Discharge..........................................................    198

        9.4.     Documenting Consideration of Probation and Rehabilitation. ...............................    198

Section 9B—Probation and Rehabilitation Procedures.                                      198

        9.5.     Authority To Suspend Execution of Discharge. ........................................    198

        9.6.     Action by the Separation Authority. .........................................................    198

        9.7.     Action by the Immediate Commander. ......................................................    199

        9.8.     Members Undergoing Rehabilitation...........................................................    200

        9.9.     Completion of Rehabilitation....................................................................    201

        9.10.    Other Options During Rehabilitation..........................................................    201

        9.11.    Failure to Meet Goals of Rehabilitation.......................................................    202

        9.12.    Vacating the Suspension of Discharge: .......................................................    203

        9.13.    Unauthorized Absence During Probation and Rehabilitation.................................    204

Figure  9.1.     Sample Memorandum Authorization for Probation and Rehabilitation. .................    204

Figure  9.2.     Fact Sheet for Members Undergoing Probation and Rehabilitation. ......................    205

Figure  9.3.     Member's Statement. ...........................................................................    206

## Chapter 10—ADMINISTRATIVE DISCHARGE BOARDS                                           207

Section 10A—Regular Air Force and Space Force Administrative Discharge Board Procedures.   207

        10.1.    Purpose, Function, and Duties. ................................................................    207

        10.2.    Convening Authority. ...........................................................................    207

        10.3.    Composition of the Board........................................................................    207

10.4.     Reporter and Interpreter:................................................................................  208

10.5.     Replacing Board Members. .............................................................................  208

10.6.     Legal Advisor. ................................................................................................  208

10.7.     Duties of the Recorder: ...................................................................................  209

10.8.     Review Before the Board Convenes. ...............................................................  209

10.9.     Respondent's Rights. ......................................................................................  209

10.10.   Arranging for Witnesses. ................................................................................  210

10.11.   Hearing Procedures. .......................................................................................  212

10.12.   Presenting Evidence to the Board. ..................................................................  213

10.13.   Burden of Proof. .............................................................................................  213

10.14.   Voting in Closed Session. ...............................................................................  213

10.15.   Findings and Recommendations: .....................................................................  213

10.16.   Recording the Board Proceedings: ..................................................................  214

Table   10.1.    Composition of the Administrative Discharge Board (See Note 1) .........................  215

Table   10.2.    Recording the Board Proceedings .................................................................  216

Section 10B—ARC General Information on Administrative Discharge Boards.               216

10.17.   General Instructions. ......................................................................................  216

Section 10C—ARC Administrative Discharge Boards.                                     216

10.18.   Special Provisions for the ARC. ......................................................................  216

10.19.   Functions and Duties. .....................................................................................  217

10.20.   Legal Review. .................................................................................................  217

10.21.   Commander's Actions. ....................................................................................  217

10.22.   Disposition of Chapter 13 Cases. ....................................................................  217

10.23.   Reporting Separation for More Than One Reason. .............................................  218

10.24.   Guidelines for Separation and Service Characterization. ...................................  218

Section 10D—Rights of a Victim at an Administrative Discharge Board.               219

10.25.   Rights of a Victim at an Administrative Discharge Board. ..................................  219

**Chapter 11—SEPARATION PAY (REGULAR COMPONENT ONLY)**                                 **221**

11.1.     General Procedures. .......................................................................................  221

11.2.     Full Separation Pay (Non-disability). ..............................................................  222

11.3.     Half Separation Pay (Non-disability) ...............................................................  222

11.4.     Computation of Active Service and Separation Pay. ..........................................  223

| | 11.5. | Repayment of Separation Pay: .................................................................... | 223 |
| | 11.6. | SecAF Determination: ............................................................................... | 224 |
| Figure | 11.1. | Sample Individual Ready Reserve Statement, Conditional for Enlisted Separation Pay. ................................................................................................................. | 224 |
| Table | 11.1. | Types of Regular Air Force and Space Force Separations Authorized Payment (member must meet all qualifying criteria) (see Notes 1 & 2). ............................... | 225 |

**Chapter 12—E-4 AND BELOW HIGH YEAR OF TENURE SEPARATION PROCEDURES**                                                                        **227**

Section 12A—Policy and Procedures.                                                             227

| | 12.1. | High Year of Tenure (HYT) .................................................................... | 227 |

Section 12B—E-4 and Below Assigned to Base Closures or Unit Inactivations.                     227

| | 12.2. | Assigned to an Overseas Closure Base or Unit Inactivation. ................................. | 227 |

Section 12C—Demotion and Cancelation of Promotion Sequence Number Actions.                     228

| | 12.3. | Demotion and Cancelation of Promotion Actions: .................................................. | 228 |

Section 12D—Members on Terminal Leave and Promoted.                                            229

| | 12.4. | Members on Terminal Leave When Promotion List is Released. ............................ | 229 |

Section 12E—Members Not Entitled to Separation Pay (See Table 11.1) (Regular Component Only).                                                                              230

| | 12.5. | A member involuntarily separated from the regular component on their HYT date. ................................................................................................................. | 230 |
| | 12.6. | Self-initiated actions to cause the separation. .......................................................... | 230 |

Section 12F—Separating Early Without Loss of Separation Pay (Regular Component Only).          230

| | 12.7. | Separating Early Under High Year of Tenure (HYT) Program Without Loss of Separation Pay. ........................................................................................................... | 230 |

Section 12G—HYT Extensions and Waivers.                                                        231

| | 12.8. | Extending To HYT Date. ........................................................................... | 231 |
| | 12.9. | High Year of Tenure Waiver Request. ................................................................. | 231 |

**Chapter 13—VOLUNTARY OR INVOLUNTARY SEPARATION OR DISCHARGE OF ARC ENLISTED MEMBERS**                                                             **233**

Section 13A—General Information.                                                               233

| | 13.1. | General Instructions. .............................................................................. | 233 |
| Table | 13.1. | Voluntary and Involuntary Discharge or Separation of Enlisted Personnel. ........... | 233 |

Section 13B—Preprocessing Considerations.                                                           239

    13.2.    Expiration of Enlistment. ..................................................................................  239

    13.3.    Initiation of Action. .........................................................................................  239

    13.4.    Enlisted Sanctuary and Eligibility to Transfer to Retired Reserve. .........................  240

    13.5.    Notification Documentation. ..............................................................................  241

    13.6.    Separation. .....................................................................................................  241

    13.7.    Personnel on EAD or in TDY Status. .................................................................  241

Section 13C—Voluntary Separation or Discharge.                                                      241

    13.8.    How Members Apply for Separation. ..................................................................  241

Section 13D—Involuntary Discharge or Separation.                                                    245

    13.9.    Reasons for Discharge or Separation. .................................................................  245

Part 3—SEPARATION OF COMMISSIONED OFFICERS                                                   **250**

Chapter 14—GENERAL GUIDANCE                                                                      **250**

    14.1.    Membership in the Regular Component, AFR, and ANG is Not a Right. ...............  250

    14.2.    Relationship of Actions Under this publication to UCMJ Actions and Civilian
           Criminal Actions. ............................................................................................  250

    14.3.    Single Integrated Operational Plan - Extremely Sensitive Information (SIOP-ESI)
           or Other Special Access Programs, and the Personnel Reliability Program (PRP).  250

    14.4.    Reports Requiring Special Handling. ..................................................................  251

    14.5.    Records Withheld in the Interest of National Security. ..........................................  251

    14.6.    Recoupment and Continued Payment of Advanced Educational Assistance,
           Special Pay, or Bonuses. ..................................................................................  251

    14.7.    Service (Discharge) Characterization. .................................................................  254

    14.8.    Aliens Seeking Naturalization. ..........................................................................  255

    14.9.    Members Identified as Missing. .........................................................................  255

    14.10.   Death. ............................................................................................................  256

    14.11.   Evidentiary Limitations in Drug or Alcohol Abuse Cases. ....................................  256

    14.12.   Separation Pay, Severance Pay, or Readjustment Pay. ..........................................  256

    14.13.   Veterans Rights and Benefits; Reentering the Service. ..........................................  256

    14.14.   Evaluating Officers of Other Services. ................................................................  256

    14.15.   Reassigning Officers for Show Cause Action. ......................................................  257

    14.16.   Separation Physical and Medical Holds. .............................................................  257

14.17.  Dual Action Processing – Actions Under This Publication and Medical/Physical
Separation Actions. .....................................................................................    257

14.18.  Exceptions to Dual Action Processing. .....................................................    258

14.19.  Separation Actions Involving Victims of Sexual Assault. ..........................    259

14.20.  Officers Referred for Show Cause Consideration by Central Selection Boards. .....    259

14.21.  Separation Under Normal Conditions. .......................................................    259

14.22.  Forwarding Cases. ....................................................................................    259

14.23.  Effecting Discharge. ................................................................................    259

14.24.  Processing Pending Cases. .......................................................................    260

14.25.  Reserve Disposition of Pending Cases. .....................................................    260

14.26.  Secretarial Substitution of Administrative Discharge for Dismissal. ...........    260

14.27.  War and Mobilization Separation Guidance. .............................................    260

14.28.  Extending Active Duty Involuntarily for Court-Martial or Administrative
Discharge. .................................................................................................    261

14.29.  Releasing Officer from an Involuntary Extension of Active Duty for Court-
Martial or Administrative Discharge. .........................................................    261

14.30.  Retention for Medical Treatment or Evaluation. .......................................    262

14.31.  Extending Active Duty for Pregnancy or Family Member's Medical Care. ...........    262

14.32.  Extending Regular Health Professions and Chaplain Officers Beyond Maximum
Age or Maximum Years of Commissioned Service. ...................................    263

14.33.  Keeping Officers Who Are Near Qualification for Retirement. ..................    263

14.34.  Reserve Retention to Qualify for Retired Pay (Sanctuary). .......................    263

14.35.  Reserve Loss Management Provisions. ......................................................    264

14.36.  Reenlistment in the Regular Component After Service as an Officer. ..........    265

Table   14.1.   Future Veterans Rights and Benefits—Reentry into the Service. .............    265

14.37.  General Information for Separating Reserve Officers: ...............................    266

**Chapter 15—VOLUNTARY SEPARATIONS**                                            **269**

Section 15A—Voluntary Separation Reasons. ....................................................    269

15.1.   Reasons for Voluntary Separation. ...........................................................    269

Section 15B—Voluntary Separation General Information. .................................    275

15.2.   Commander or Supervisor Counseling. .....................................................    275

15.3.   How Officers Apply for Voluntary Separation (and Other DOS Adjustments). .....    275

15.4.   Indorsing Applications. .............................................................................    276

15.5.  Limitations on Separation Applications.................................................................... 276

15.6.  Effective DOS................................................................................................................ 277

15.7.  Deferring Processing of Applications. ........................................................................ 277

15.8.  Disapproving Applications. ......................................................................................... 277

15.9.  Effect of MSO................................................................................................................ 277

Section 15C—Requesting Withdrawal, Acceleration or Extension of an Approved or Pending
        DOS.                                                                                                                        278

15.10.  Requesting Withdrawal of Separation Applications................................................. 278

15.11.  Accelerating an Approved Separation Date............................................................... 278

15.12.  Extending an Approved Separation Date.................................................................... 278

Table   15.1.  Resignation or Request for Release from Active Duty.................................... 279

Table   15.2.  Approval, Disapproval, Suspension, or Revocation of a Requested or Approved
              DOS Guidance. ................................................................................................. 281

Table   15.3.  Effect of Fulfilled or Unfulfilled MSO on Resignations. ............................ 283

Section 15D—Officer Resignations for the Reserve and ANG.                                                    283

15.13.  General Instructions. ................................................................................................... 283

15.14.  Approving or Disapproving Applications................................................................. 284

15.15.  Resubmitting a TOR. ................................................................................................... 286

15.16.  Permissible Basis for Resignation. ............................................................................ 286

Section 15E—Transfer of Non-Extended Active Duty (Non-EAD) Members to a National Guard
        or Reserve Component of Another Uniformed Service or Public Health Service.     286

15.17.  Applying for Conditional Release. ............................................................................ 286

15.18.  Transfer to the AFR Retired List. .............................................................................. 287

Chapter 16—MISCELLANEOUS INVOLUNTARY SEPARATION PROVISIONS             288

16.1.  Miscellaneous Separation Provisions General Guidance.......................................... 288

16.2.  Officers Who Are Not Selected for Promotion.......................................................... 288

16.3.  O-1s Found Not Qualified for Promotion (NQP). ..................................................... 288

16.4.  Officers Who Are Not Continuing on Active Duty. .................................................. 289

16.5.  Officers Who Reach the Age Limit or Who Have Reached Their Maximum
        Years of Commissioned Service or Service Based on Grade. ................................ 289

16.6.  Strength or Force Management Adjustments. ............................................................ 289

16.7.  Officers Serving with the Selective Service System.................................................. 289

16.8.  Chaplains and Chaplain Candidates............................................................................ 289

Section 16A—Termination or Vacation of Appointment for the AFR and ANG.                291

    16.9.    General Instructions. ...................................................................................    291

Section 16B—Involuntary Discharge for the AFR and ANG.                                 292

    16.10.  Instructions.................................................................................................    292

    16.11.  Discharge for Position, Grade, and Age. ....................................................    292

Table  16.1.    Discharge for Position, Rank and Age.........................................................    292

    16.12.  General Officers Who Cease to Occupy General Officer Positions. .......................    293

    16.13.  O-1s NQP (ANG only). .................................................................................    294

    16.14.  Effect of Failure of Selection for Promotion. ............................................    294

    16.15.  Elimination for Length of Service. ..............................................................    294

Table  16.2.    ARC Only:  Elimination for Length of Service (See Note 6). ...............................    296

    16.16.  Selective Early Removal from the RASL. .....................................................    297

    16.17.  Failure to Reply to Official Correspondence. ............................................    297

    16.18.  Inability to Locate. ......................................................................................    298

    16.19.  Elimination from ISLRS. .............................................................................    298

    16.20.  Physical Disqualification. ............................................................................    298

    16.21.  Failure to Comply with Requirements for a Medical Examination. ........................    299

    16.22.  Accepting Civil Employment with a Foreign Government or Concern. .................    299

    16.23.  Entrance or Service in an Armed Force of a Foreign Country. ...............................    299

    16.24.  Loss of Nationality.......................................................................................    299

    16.25.  Withdrawal from Military Medical Educational Assistance Programs. ..................    300

    16.26.  Officers Declining Voluntary EAD. ............................................................    300

    16.27.  Accelerated Appointments...........................................................................    300

Section 16C—Other Involuntary Discharge Provisions.                                   300

    16.28.  Officers Who Do Not Complete Medical Education or Training Programs............    300

    16.29.  Officers Who Fail the National Council Licensure Examination for Registered Nurses. ....................................................................................................    301

    16.30.  Officers Who Do Not Complete the USAF Nurse Transition Program...................    301

    16.31.  Unlicensed Medical Officers. .....................................................................    301

Chapter 17—SPECIAL INVOLUNTARY SEPARATIONS LIMITED TO PROBATIONARY OFFICERS                                                     302

    17.1.    Discharge Characterization.........................................................................    302

    17.2.    General Guidance. ......................................................................................    302

17.3.    Bases for Separation of Probationary Officers. ........................................................    302

**Chapter 18—INVOLUNTARY SEPARATIONS FOR CAUSE (SHOW CAUSE ACTIONS – REASONS)**    **304**

18.1.    General Guidance. ....................................................................................................    304

Section 18A—Separation for Cause:  Substandard Performance of Duty.    304

18.2.    Discharge Characterization. ....................................................................................    304

18.3.    Substandard Performance can be documented in the following ways: ....................    304

18.4.    Reinitiation of Action. .............................................................................................    304

18.5.    Reasons for Separation. ..........................................................................................    304

Section 18B—Separation for Cause: Misconduct, Moral or Professional Dereliction, or In the Interest of National Security.    307

18.6.    Discharge Characterization. ....................................................................................    307

18.7.    Show Cause Action Notification Memorandum. .....................................................    307

Section 18C—Foreign Court Convictions.    317

18.8.    Additional Guidance Regarding Foreign Court Convictions. ..................................    317

Section 18D—Involuntary Discharge Specific to AFR and ANG.    318

18.9.    Unsatisfactory Participation. ...................................................................................    318

18.10.    Substandard Performance of Duty. ........................................................................    318

18.11.    Failure to Comply with Requirements for a Medical Examination. ........................    319

18.12.    ANG Unique Separations. ......................................................................................    319

Section 18E—Discharge of Officers for Misconduct, Moral or Professional Dereliction, or in the Interest of National Security Specific to the Reserve and Air National Guard.    320

18.13.    ANG Officers. .........................................................................................................    320

18.14.    Misconduct, Moral, or Professional Dereliction. ...................................................    320

18.15.    Civilian Conviction. ...............................................................................................    320

**Chapter 19—SHOW CAUSE ACTIONS –GENERAL PRINCIPLES AND PROCEDURES**    **323**

Section 19A—General Guidance.    323

19.1.    General Instructions. ...............................................................................................    323

19.2.    Officers Entitled to a BOI. ......................................................................................    323

Section 19B—Commanders.    323

19.3.    Immediate (Unit) Commander's Responsibilities. ..................................................    323

19.4.    Documentation (Supporting Evidence). .................................................................    325

Section 19C—Initiating Action.                                                    326

    19.5.   Preparing the Recommending Action and Show Cause Letter of notifications and
the Statements of Reasons (Grounds) for Discharge. ................................................    326

    19.6.   Forwarding the Recommending Action Memorandum. ..........................................    327

    19.7.   Show Cause Authority (SCA) Responsibilities. ......................................................    327

    19.8.   Notifying Officer to Show Cause for Retention. ......................................................    327

Section 19D—Officer's Rights When Notified to Show Cause for Retention.          330

    19.9.   Officer's Rights...............................................................................................    330

Section 19E—Post-Initiation Notification Matters Not Including BOI Processing.    335

    19.10.  Requests for Delay in Responding to the Show Cause Letter of notification..........    335

    19.11.  Amending the Show Cause Letter of notification......................................................    335

    19.12.  New Information...............................................................................................    336

    19.13.  SCA Referral and Transmittal to SecAF, or Designee, of Show Cause Actions
Not Referred to a BOI........................................................................................    336

    19.14.  AFPC Separations Actions. ......................................................................................    337

    19.15.  Action by SecAF, or designee. .................................................................................    337

Section 19F—Additional ARC Guidance related to Promotion Boards.               338

    19.16.  Show Cause....................................................................................................    338

**Chapter 20—SHOW CAUSE ACTIONS—BOARDS OF INQUIRY (BOI)**                      **340**

Section 20A—General Responsibilities and Information.                            340

    20.1.   Definition.......................................................................................................    340

    20.2.   Cases Requiring Referral to a Board of Officers. ...................................................    340

    20.3.   Processing Time Guidelines. ...................................................................................    340

Section 20B—Pre-BOI Administrative Functions.                                    340

    20.4.   Referring Case to a BOI......................................................................................    340

    20.5.   Officer's Rights When Notified to Show Cause for Retention Before a BOI. ........    340

    20.6.   Withdrawing a Case..............................................................................................    342

Section 20C—The Board of Inquiry—General.                                        342

    20.7.   Functions and Duties. ..............................................................................................    342

    20.8.   BOI Membership. ...................................................................................................    342

    20.9.   Who May Not Be BOI Members. .............................................................................    343

    20.10.  Appointment of a BOI. .............................................................................................    343

20.11.   Time and Place for Convening BOI...................................................................    344

20.12.   Delay in Convening the BOI...........................................................................    344

20.13.   Witnesses. .....................................................................................................    345

20.14.   Reviewing the Case. ......................................................................................    345

Section 20D—The Hearing.                                                                                             346

20.15.   Who Conducts Hearings. ...............................................................................    346

20.16.   Hospitalized Respondent. ..............................................................................    347

20.17.   Presence of Respondent, Counsel, or Witnesses...........................................    347

20.18.   Calling the Board to Order..............................................................................    348

20.19.   Absent Respondent or Counsel—Postponing the Board. ..............................    348

20.20.   Explaining Rights to Respondent...................................................................    348

20.21.   Challenging Voting Members.........................................................................    348

20.22.   Opening Statements and Presenting Evidence................................................    349

20.23.   Examining Witnesses......................................................................................    349

20.24.   Accepting Additional Evidence and Amending the Statement of Reasons. ...........    349

20.25.   Appearance of Witnesses................................................................................    350

20.26.   Respondent's Election Not to Testify. ...........................................................    350

20.27.   Deliberations...................................................................................................    350

20.28.   Specific Findings. ..........................................................................................    351

20.29.   Recommendations...........................................................................................    351

20.30.   Announcing Results........................................................................................    352

20.31.   Classified or Controlled Information. ............................................................    352

Section 20E—Post-BOI Administrative Functions.                                                                      352

20.32.   Preparing BOI Report. ...................................................................................    352

20.33.   Distributing the BOI Report...........................................................................    353

20.34.   Action by Respondent.....................................................................................    353

20.35.   Excess Leave...................................................................................................    354

20.36.   Action by SCA on BOI Report. .....................................................................    354

20.37.   AFPC Separations Actions. ............................................................................    355

20.38.   Action by SecAF on BOI Report. ..................................................................    355

20.39.   Reconvening the BOI.......................................................................................    355

Section 20F—Post-BOI Matters—Matters After the SCA Forwards Actions to the SecAF.          356

    20.40.  Reinitiating Actions. ..................................................................................          356

    20.41.  Limitations on Reinitiating. ......................................................................          356

Section 20G—Rights of a Victim.                                                                     356

    20.42.  Victim Rights. ............................................................................................          356

**Chapter 21—DROPPING OFFICERS FROM THE ROLLS OF THE AIR FORCE OR
SPACE FORCE**                                                                                       **358**

Section 21A—Regular Air Force or Space Force Procedures.                                             358

    21.1.   Dropping from the Rolls of the USAF or USSF Distinguished from For Cause
        Discharge and Separation Actions. ..............................................................          358

    21.2.   Reasons. .....................................................................................................          358

    21.3.   Dropping a qualifying officer from the rolls of the USAF or USSF. ......................          359

    21.4.   Immediate (Unit) Commander's Responsibilities....................................................          359

    21.5.   SCA Actions. ..............................................................................................          360

    21.6.   AFPC Separations Actions. ..........................................................................          360

    21.7.   Decision Authority.......................................................................................          360

Section 21B—AFR and ANG Procedures.                                                                 361

    21.8.   Dropping Officers from the Rolls of the AF...........................................................          361

    21.9.   Conviction by Foreign Court. ........................................................................          362

    21.10.  ANG Conviction by State Court-Martial.................................................................          362

**Chapter 22—AIR FORCE PERSONNEL BOARD (AFPB) ACTIONS**                                              **363**

    22.1.   Functions and Duties. ...................................................................................          363

    22.2.   Composition..................................................................................................          363

    22.3.   Procedures....................................................................................................          363

    22.4.   Processing Cases............................................................................................          363

    22.5.   Personal Appearances. ..................................................................................          363

    22.6.   AFPB Recommendations to the SecAF, or designee, for Final Action in
        Probationary Officer Cases Not Involving a BOI. ....................................................          363

    22.7.   AFPB Recommendations to the SecAF, or designee, for Final Action in BOI
        Cases. ..........................................................................................................          364

    22.8.   Final Action of the SecAF, or designee. ................................................................          364

**Chapter 23—(ARC ONLY) NOTIFICATION PROCEDURES AND ADMINISTRATIVE DISCHARGE BOARDS**                                                                    **365**

Section 23A—General Information.                                                            365

    23.1.    Instructions.................................................................................    365

    23.2.    Resignations for the Good of the Service (Review-in-lieu-of Court-Martial). ........    365

    23.3.    Action in Lieu of Administrative Discharge Board. ...............................    365

    23.4.    Multiple Reasons for Separation.....................................................    366

    23.5.    Delivery of the SCNM. ................................................................    366

    23.6.    Failure or Declination to Respond. .................................................    366

    23.7.    Processing Time Goals. ...............................................................    367

Section 23B—(ARC Only) Rights of Officers in Separation Cases.                              367

    23.8.    SCNM for Probationary Officers.....................................................    367

    23.9.    SCNM for Officers – Board Eligible. ...............................................    368

Section 23C—(ARC Only) Board of Inquiry (BOI).                                              370

    23.10.   Special Provisions.......................................................................    370

    23.11.   Board Appointment and Membership.................................................    372

    23.12.   Board Functions and Duties. .........................................................    372

    23.13.   Attendance of Witnesses................................................................    374

    23.14.   Findings and Recommendations. ....................................................    375

    23.15.   Reporting of Administrative Discharge Board Proceedings....................................    376

    23.16.   Legal Review. ...........................................................................    377

    23.17.   Directing a New BOI. ..................................................................    377

    23.18.   Commander's Actions. .................................................................    378

    23.19.   Disposition of Board Cases............................................................    378

    23.20.   Reporting Separation for More Than One Reason..................................    379

    23.21.   Dual Action Case Processing..........................................................    379

    23.22.   Guidelines for Separation and Service Characterization. ........................    379

    23.23.   Disposition of Correspondence.......................................................    380

**Part 4—PALACE CHASE PROGRAMS**                                                            **381**

**Chapter 24—OFFICER PALACE CHASE PROGRAM**                                                 **381**

    24.1.    Program Description. ...................................................................    381

    24.2.    PALACE CHASE Officer eligibility.................................................    381

24.3.      PALACE CHASE Officer Application. ...................................................  381

24.4.      Reserve Active Status List, Federal Recognition and Temporary Federal
           Recognition. ..........................................................................................  382

24.5.      DOS selection requested DOS and final approved DOS. .......................  383

24.6.      PALACE CHASE Contract. ...................................................................  384

24.7.      Application Recommendations and Comments. .....................................  385

24.8.      Application Decisions.  SAFPC: ............................................................  387

24.9.      Recoupment. ..........................................................................................  387

24.10.     Separation Actions. ...............................................................................  388

24.11.     Applicant Reporting Procedures. ...........................................................  389

Table   24.1.     Eligibility Criteria for Officer PALACE CHASE Applications. ............................  390

**Chapter 25—ENLISTED PALACE CHASE PROGRAM**                           **394**

25.1.      Program Description. .............................................................................  394

25.2.      PALACE CHASE Enlisted eligibility. ...................................................  394

25.3.      PALACE CHASE Enlisted Application. .................................................  394

25.4.      DOS Selection, Requested DOS, Final Approved DOS, and DOS Changes. .........  395

25.5.      PALACE CHASE Contract. ...................................................................  397

25.6.      Application Recommendations and Comments. .....................................  397

25.7.      Application Decisions. ...........................................................................  398

25.8.      Recoupment. ..........................................................................................  399

25.9.      Separation Actions. ...............................................................................  399

25.10.     Applicant Reporting Procedures. ...........................................................  400

Table   25.1.     Eligibility Criteria for Enlisted PALACE CHASE Applications. ...........................  401

**Chapter 26—PALACE FRONT PROGRAM**                                    **405**

26.1.      Program Description. .............................................................................  405

26.2.      PALACE FRONT Eligibility. .................................................................  405

26.3.      PALACE FRONT Application. ...............................................................  405

26.4.      Separation Actions. ...............................................................................  406

26.5.      Applicant Reporting Procedures. ...........................................................  407

**Chapter 27—PALACE CHASE SPECIAL PROGRAMS**                           **408**

27.1.      Program Description. .............................................................................  408

27.2.      PALACE SPORT Program. ....................................................................  408

27.3.      PALACE PA Program. ...........................................................................  410

27.4.    PALACE BLESSING Program. ...................................................................... 411

Table   27.1.    Eligibility Criteria for PALACE CHASE Special Programs Applications. ............ 412

Table   27.2.    List of Approved Professional Sports Organizations................................................ 416

**Chapter 28—PALACE CHASE PROGRAMS RECALL**                                                   **418**

28.1.    PALACE CHASE programs participants may be recalled to EAD when: .............. 418

28.2.    Applicant Reporting........................................................................................ 418

28.3.    Unauthorized Absence. ................................................................................... 418

28.4.    Failure to report to the gaining ARC. .......................................................... 418

28.5.    Unsatisfactory participation. ......................................................................... 419

28.6.    Unsatisfactory Performance or Behavior..................................................... 420

28.7.    Recall of PALACE CHASE Participants. ..................................................... 422

28.8.    Administrative Discharge of PALACE CHASE participants.................................. 422

28.9.    Recall of PALACE SPORT or PALACE PA participants. ..................................... 423

**Part 5—CONSCIENTIOUS OBJECTOR**                                                             **424**

**Chapter 29—PROCEDURES FOR APPLYING AS A CONSCIENTIOUS OBJECTOR**                            **424**

29.1.    Preparing Conscientious Objector Applications. ......................................... 424

29.2.    Installation Processing Procedures. ............................................................... 425

Table   29.1.    Forwarding Application. ................................................................................. 430

29.3.    Investigating Officer. ...................................................................................... 431

29.4.    Guidelines for Approving or Disapproving Applications..................................... 433

29.5.    Final Disposition............................................................................................. 435

**Attachment 1—GLOSSARY OF REFERENCES AND SUPPORTING INFORMATION**                          **438**

**Attachment 2—REQUIRED INFORMATION TO BE SUPPLIED BY APPLICANT FOR
          DISCHARGE OR NONCOMBATANT SERVICE**                                                 **467**

**Attachment 3—STATEMENT (COUNSELING CONCERNING DESIGNATION AS
          CONSCIENTIOUS OBJECTOR)**                                                           **470**

**Attachment 4—STATEMENT (COUNSELING CONCERNING VETERANS
          ADMINISTRATION BENEFITS)**                                                          **471**

**Attachment 5—STATEMENT (COUNSELING CONCERNING APPLICATION AS A
          CONSCIENTIOUS OBJECTOR NONCOMBATANT TRAINING AND
          SERVICE)**                                                                          **472**

**Attachment 6—ADMINISTRATIVE DISCHARGE FACT SHEET (ENLISTED)**                               **474**

**Attachment 7—FORMAT FOR VOLUNTARY REQUEST FOR DISCHARGE OR SEPARATION (ENLISTED--ARC ONLY)**                                                      476

**Attachment 8—FORMAT FOR MEMORANDUM OF RECOMMENDATION FOR DISCHARGE ACTION UNDER DAFI 36-3211 (FOR ARC MEMBERS ONLY)**                                                                              478

**Attachment 9—FORMAT FOR RESERVE COMPONENT SWORN AFFIDAVIT OF SERVICE BY MAIL**                                                             482

**Attachment 10—MEMORANDUM OF NOTIFICATION (ARC ENLISTED - NOT BOARD ELIGIBLE)**                                                                483

**Attachment 11—SAMPLE MEMORANDUM MEMBER'S STATEMENT (ARC ENLISTED - NOT BOARD ELIGIBLE)**                                                      487

**Attachment 12—MEMORANDUM OF NOTIFICATION (ARC ENLISTED - BOARD ELIGIBLE)**                                                                     488

**Attachment 13—SAMPLE LETTER MEMBER'S STATEMENT OF BOARD HEARING OR UNCONDITIONAL WAIVER (ARC ENLISTED - BOARD ELIGIBLE)**                                                                          493

**Attachment 14—PRIVACY ACT STATEMENT FOR ENLISTED MEMBERS SUBJECT TO INVOLUNTARY SEPARATION**                                                 495

**Attachment 15—SAMPLE POSTMASTER MEMORANDUM**                                     496

**Attachment 16—SAMPLE MEMORANDUM OF VOLUNTARY EXTENSION OF ENLISTMENT**                                                                        497

**Attachment 17—SEPARATION PAY, READJUSTMENT PAY, AND SEVERANCE PAY**              498

**Attachment 18—RECOUPMENT STATEMENT**                                            502

**Attachment 19—VOLUNTARY AND INVOLUNTARY SEPARATION OR DISCHARGE AND DROPPING COMMISSIONED OFFICERS FROM THE ROLLS OF THE AIR FORCE (ARC OFFICERS)**                                             504

**Attachment 20—RESIGNING WHEN NOT ELIGIBLE FOR AN HONORABLE DISCHARGE**                                                                         511

## Part 1

## OVERVIEW, ROLES, AND RESPONSIBILITIES

## Chapter 1

## OVERVIEW

**1.1.  Overview.**  This publication is divided into five parts.  **Part 1** gives a brief overview of the programs contained in this publication and defines the roles and responsibilities for those programs.  **Part 2** and **Part 3** contain information on the discharge and separation of enlisted members and officers.  **Part 4** and **Part 5** address programs that allow service members to transition within various career stages, units, and components of the DAF based on goals, objectives, or beliefs.  Unless otherwise noted, all actions that specify timeline requirements are measured in calendar days.

**1.2.  Roles and Responsibilities.  Chapter 2** outlines responsibilities of the Secretary of the Air Force (SecAF), Regular Air Force (RegAF), USSF, ANG, AFR, and other agencies involved with the programs contained within this publication.

**1.3.  Separation of Enlisted Members.  Part 2** details procedures for involuntary and voluntary separation of enlisted members, including eligibility, types of separation, service characterization, separation authority, special processing requirements, and options for retention.

**1.4.  Separation of Commissioned Officers.  Part 3** establishes commissioned officer criteria and procedures for applying for voluntary separation from the USAF or USSF. It also outlines procedures for involuntary discharge for substandard performance of duty, misconduct, moral or professional dereliction, in the interest of national security, or for other reasons.  It contains guidance for conducting boards of inquiry (BOI) and includes criteria for recoupment of advanced educational assistance, special pay, or bonuses; for processing officers who tender resignations; for dropping officers from the rolls of the USAF or USSF; and for SecAF substitution of administrative discharge for a dismissal.

**1.5.  PALACE CHASE Programs.  Part 4** establishes separation procedures for the PALACE CHASE programs.  The PALACE CHASE program is an early release program which allows active Air Force officers and enlisted members to request to transfer from the Active Component to the Reserve Component. **Note:** For the Air Reserve Component (ARC), the PALACE CHASE program is an accession program. Guidance for assessing PALACE CHASE program members into the ARC can be found in **Part 4.**

**1.6.  Procedures for Applying as a Conscientious Objector.  Part 5** details USAF and USSF procedures for establishing conscientious objector status.

**Chapter 2**

**ROLES AND RESPONSIBILITIES**

**2.1.  Separation of Enlisted Members (Reference Part 2).**

2.1.1.  Assistant Secretary of the Air Force (Manpower and Reserve Affairs) (SAF/MR):  Is responsible for military retirement and separation policy matters as delegated by the SecAF as described in DAFPD 36-32, *Military Retirements and Separations*.

2.1.2.  Secretary of the Air Force Personnel Council (SAFPC):  Makes recommendations to the Director, Air Force Review Boards Agency, or makes final decisions under its delegated authority in certain enlisted separations as outlined in Headquarters Air Force Mission Directive (HAFMD) 1-24, Addendum B, *Re-Delegation of Authority for Individual Personnel Actions HAFMD 1-24, Assistant Secretary of the Air Force (Manpower and Reserve Affairs)*.

2.1.3.  The Deputy Chief of Staff for Manpower, Personnel, and Services (AF/A1) and the Deputy Chief of Space Operations for Personnel (SF/S1):  Are responsible for policy oversight and advocacy of their respective Service's retirement and separation programs and interfaces with the office of the Secretary of Defense (SecDef) staff concerning development of Department of Defense (DoD) policy and legislative initiatives.

2.1.4.  AF/A1 and the Air National Guard Bureau Directorate of Manpower, Personnel, Recruiting, and Services (NGB/A1):  Oversee the execution and development of procedural guidance for the AF retirement and separation programs for their respective components.

2.1.5.  The Office of the Chief, Air Force Reserve (AF/RE):

2.1.5.1.  Collaborates with the AF/A1, SF/S1 and NGB/A1 in developing Total Force (TF) policy and guidance for reserve separation programs affecting enlisted members.

2.1.5.2.  Oversees the Headquarters Air Force, Air Force Reserve Directorate of Personnel (AF/REP) in developing guidance to implement reserve separation programs affecting enlisted members.

2.1.6.  Headquarters Air Force, Air Force Reserve Directorate of Personnel (AF/REP): Provides the AFR Human Capital Management (HCM) enterprise and the TF with perspectives and information that ensure integrated strategy, policy management, resource management, and oversight across the HCM domain. The AF/REP:

2.1.6.1.  Coordinates with the Office of the Secretary of Defense (OSD), SAF/MR, AF/A1, SF/S1 and NGB/CF, to develop TF separation program policies and guidance affecting enlisted members.

2.1.6.2.  Influences the TF centralization, standardization, and integration of human capital laws, policies, business processes, structures, and information technologies relating to reserve separation programs affecting enlisted members.

2.1.7.  Major Commands (MAJCOM), Field Commands (FLDCOM), Field Operating Agencies (FOA), and Direct Reporting Units (DRU):  Monitor the administrative discharge and separation process in accordance with (IAW) this instruction, providing reviews and recommendations as required for applicable actions. **Note**: Not applicable to the Air Force Reserve Command.

2.1.8.  Headquarters Air Force Reserve Command Personnel Division (AFRC/A1K):

2.1.8.1.  Serves as the AFR business process owner (BPO) for reserve separation programs affecting enlisted members in the grades of senior master sergeant and below.

2.1.8.2.  Serves as the AFR BPO for administrative discharge programs affecting enlisted members.

2.1.8.3.  Receives and processes completed applications for reserve members in training and retirement categories "A" and "B" and for participating individual ready reserve (PIRR) who wish to apply for conscientious objection for final approval. **Note:**  AFR members assigned to the individual ready reserve (IRR) who are non-participating cannot claim or request conscientious objector status.

2.1.8.4.  Issues the Department of Defense Form (DD Form) 256, *Honorable Discharge Certificate*, for those individuals who are in reserve status at the time of discharge. **Note:** This includes individuals who were in the ANG and transferred back to the AFR.

2.1.9.  Headquarters Air Reserve Personnel Center Directorate of Total Force Services (ARPC/DPT).  Serves as the AFR BPO for reserve separations for cause programs affecting enlisted members.

2.1.10.  Unit Commanders:

2.1.10.1.  Voluntary separations.  Unit Commanders do not have approval or disapproval authority and must forward an enlisted member's separation request together with their recommendation to the Air Force Personnel Center (AFPC) or Air Reserve Personnel Center (ARPC) separations.

2.1.10.2.  Involuntary separations.  Commanders are responsible for determining whether to initiate involuntary separation action under this instruction.

2.1.11.  Staff Judge Advocate (SJA):  The servicing legal office advises commanders on all aspects of involuntary discharge actions, particularly regarding evidentiary and procedural sufficiency and options regarding appropriate procedural considerations.

2.1.12.  Force Support Squadron (FSS), Force Support Unit, and Military Personnel Flight (MPF):

2.1.12.1.  Ensure member has completed physical examinations (for guidance see Department of the Air Force Manual (DAFMAN) 48-123, *Medical Examinations and Standards,* and Department of Defense Instruction (DoDI) 6040.46, *The Separation History and Physical Examination (SHPE) for the DoD Separation Health Assessment (SHA) Program*) and has provided the required medical clearance documentation.

2.1.12.2.  Ensure compliance with processing procedures and system updates.

2.1.12.3.  Ensure any action to retain a member beyond an approved date of separation (DOS) is coordinated with the servicing legal office.

2.1.12.4.  Advise AFPC/ARPC Separations immediately when a condition exists, which requires an adjustment to the member's DOS.

2.1.12.5.  Monitor local out-processing requirements for compliance and execute separation on the date specified in the order.

2.1.13. Airman Support and Transition Branch (AFPC/DP3SA), Air Reserve Personnel Center Separations (ARPC/DPPRS), and the Air National Guard Bureau Military Force Management Programs (NGB/A1PP):  Establish procedures to execute this publication.

2.1.13.1. Advise commanders, MPFs, SJAs, separation authorities, and MAJCOMs/FLDCOMs on policy and requirements.

2.1.13.2. Provide guidance and implement special separation programs pertaining to strength or force management adjustments authorized by SecAF.

2.1.14. AFPC Military Transition Operations Branch (Retirements and Separations) (AFPC/DPMSSR), (ARPC/DPT), AFRC Military Justice/Adverse Actions Division (AFRC/JAM), AFPC Total Force Service Center (TFSC):

2.1.14.1. Advise members, commanders, MPFs, SJAs, and separation authorities on administrative procedures and requirements.

2.1.14.2. Process voluntary separation requests and involuntary discharges.

2.1.14.3. Provide instructions to MPFs for processing voluntary or involuntary separations.

2.1.14.4. Update voluntary and involuntary DOSs or DOS changes and other system-related updates.

2.1.14.5. Publish separation orders for separating members to include amendments, rescissions, or revocations of orders (see Department of the Air Force Manual (DAFMAN) 36-2102, *Base-Level Relocation Procedures*) when applicable, and prepare separation documents (see AFI 36-3202, *Certificate of Release or Discharge from Active Duty (DD Form 214/5 Series* and ANGI 36-3210, *Air National Guard Separation Documents*.)

2.1.15. AFPC Medical Standards Branch (AFPC/DPMNP) (Air National Guard Bureau Surgeon General (NGB/SG) for ANG):  Places members on medical hold (see AFMAN 41-210, *Tricare Operations and Patient Administration*), when requested by installation medical treatment facilities if appropriate criteria are met.  Advises AFPC Separations when a member is placed on and removed from medical hold. For ANG, NGB/SG will advise NGB/A1 when a member is placed on and removed from medical hold.

**2.2.  Separation of Commissioned Officers (Part 3).**

2.2.1. SecAF:  Various provisions of Title 10 United States Code (USC) grant the SecAF, or the SecAF's designee, authority to discharge or separate commissioned officers.  The Director, Air Force Review Boards Agency, is delegated the authority to act on behalf of the SecAF in certain cases as outlined in **paragraph 22.1** of this instruction. (See HAFMD 1-24, Addendum B).

2.2.2.  AF/RE:

2.2.2.1. Collaborates with the AF/A1, SF/S1 and NGB/A1 in developing TF policy and guidance for reserve separation programs affecting officers.

2.2.2.2. Oversees the AF/REP in developing guidance to implement reserve separation programs affecting officers.

2.2.2.3. Oversees the Headquarters Air Force, Air Force Reserve Senior Leader Management office (AF/REG) in administering reserve separation programs affecting reserve members in the rank of general officer and colonels selected but not yet promoted to the rank of general officer.

2.2.3.  The AF/REP provides the AFR Human Capital Management (HCM) enterprise and the TF with perspectives and information that ensure integrated strategy, policy management, resource management, and oversight across the HCM domain. The AF/REP will:

2.2.3.1.  Coordinate with OSD, SAF/MR, AF/A1, SF/S1 and NGB/CF, to develop TF separation program policies and guidance affecting officers.

2.2.3.2.  Influence the TF centralization, standardization, and integration of human capital laws, policies, business processes, structures, and information technologies relating to reserve separation programs affecting officers.

2.2.4.  The AF/REG administers reserve separation programs affecting reserve members in the rank of general officer and colonels selected but not yet promoted to the rank of general officer.

They advise commanders, MPFs, and MAJCOMs regarding general officer-specific administrative procedures and requirements.

2.2.5.  AFRC/A1K

2.2.5.1.  Serves as the AFR BPO for reserve separation programs affecting officers in the grade of lieutenant colonel and below.

2.2.5.2.  Serves as the AFR BPO for administrative discharge programs affecting officers.

2.2.5.3.  Receives and processes completed applications for reserve members in training and retirement categories "A" and "B" and for PIRR who wish to apply for conscientious objection for final approval. **Note:**  AFR members assigned to the IRR who are non-participating cannot claim or request conscientious objector status.

2.2.5.4.  Issues the DD Form 256, *Honorable Discharge Certificate,* for those individuals who are in reserve status at the time of discharge. **Note:**  This includes individuals who were in the ANG and transferred back to the AFR.

2.2.6.  ARPC/DPT serves as the AFR BPO for reserve separations for cause programs affecting officers.

2.2.7.  Major Commands (MAJCOM), Field Commands (FLDCOM), Field Operating Agency (FOA), and Direct Reporting Units (DRU):  Monitor the administrative discharge and separation process IAW this instruction, exercising show cause authority (SCA) as necessary.

2.2.8.  Show Cause Authority:  Usually MAJCOM, FLDCOM, or DRU commanders for the RegAF or USSF and AFR members on Voluntary Limited Period of Active Duty (VLPAD) or assigned to HQ on extended active duty (EAD), HQ Air Force Reserve Command Commander (HQ AFRC/CC) for reserve members not on EAD and for those assigned to AFR units on EAD, and the adjutant general (TAG) or commanding general (CG) for ANG.

2.2.8.1. MAJCOM  Commanders  (MAJCOM/CCs)  and  FLDCOM  Commanders (FLDCOM/CCs) may delegate SCA to subordinate general court-martial convening authorities, wing commanders who are general officers, and vice commanders or deputies

who are O-8 and above.  **Note:**  A proliferation of SCAs is generally not in the best interest of the USAF or USSF.  MAJCOMs, FLDCOMs and DRUs may submit exceptionally well-justified requests for additional SCAs to the SecAF (through the Air Force Legal Office, (Air Force Military Justice and Discipline Directorate [AF/JAJ]) in turn).

2.2.8.2.  Unless a host-tenant agreement provides otherwise, when a host command general court-martial convening authority (GCMCA) and a tenant command GCMCA have jurisdiction over an officer, the tenant command GCMCA normally acts as SCA.  The tenant command SCA may defer to the host command SCA or may reassign the officer to the host command.  In any event, the case file should document the basis for a particular SCA initiating action for cases involving officers who are under the jurisdiction of more than one SCA (a comment in the SCA SJA legal review would suffice, but lack of such documentation does not affect legal or procedural sufficiency).

2.2.8.3. SCAs ensure that the processing options and discharge characterizations appropriate to the case, not just the expedient ones, are utilized.  To this end, SCAs and, as they determine appropriate, MAJCOM and FLDCOM commanders, establish processing standards for administration of this publication.

2.2.8.4.  The SCA is responsible for administering and processing the discharge action and derivative actions, such as resignations in lieu of administrative discharge, directly to the SecAF, or designee (through AFPC Separations), for final action.  For the ANG, TAGs and the CG are responsible for ensuring NGB/A1PP receives officer discharge and derivative actions for processing through NGB/CF to the SecAF or designee for final action.

2.2.8.5.  The SCA determines, ordinarily based on information from subordinate levels of command, whether an officer should be separated for reasons under **Chapter 17** or **Chapter 18**.  If so, the SCA initiates discharge action.

2.2.8.6. For discharge, separation, and related situations requiring SecAF action, (including associated tender of resignation (TOR) and board waivers) provide the complete case file with legal reviews to the SecAF (or designee) through AFPC/DPMSSR and AF/JAJ in turn.  **Note:**  The authority of MAJCOM/CCs, FLDCOM/CCs, and direct reporting unit commander (DRU/CCs) to require that actions from the SCA to the SecAF (or designee) flow through them is not restricted.  However, unless otherwise specifically required in writing by this DAFI, detailed legal reviews are not required by MAJCOMs or FLDCOMs, and MAJCOM/CCs and FLDCOM/CCs are not required to provide recommendations.

2.2.9.  Commanders:

2.2.9.1.  Voluntary separations (see **Chapter 15**).  Commanders do not have approval or disapproval authority and must forward an officer's voluntary separation request together with their recommendation to AFPC Separations.  For ANG officers, requests and recommendations are forwarded to the TAG or CG.  Commanders should ensure officers under their command are counseled on the benefits of an USAF or USSF career before voluntarily separating.

2.2.9.2.  Involuntary separations.  Commanders are responsible for determining whether officers under their command should be involuntarily separated for reasons set forth in

**Chapter 17** and sections within **Chapter 18** of this DAFI, and if so, to recommend initiation of action.

2.2.9.3.  Secretary's Officer Quality Force Mandate. The commander who forwards cases for SecAF action (the SCA in most cases) includes a detailed chronology with the file, including an explanation for significant delays.

2.2.10.  SJA:  The servicing legal office advises commanders on all aspects of involuntary discharge actions, particularly regarding evidentiary and procedural sufficiency and options regarding appropriate procedural considerations.

2.2.11.  Air Force General Officer Management Office (AF/A1LG) (regular component only), Space Force General Officer Management Office (SF/S1LG), National Guard Bureau Senior Leadership Management Office (NGB-SL) and see **paragraph 2.2.4** for Air Force Reserve General Officer Management Office (AF/REG) responsibilities:

2.2.11.1.  Provide guidance and implement special separation programs pertaining to regular component general officers (GOs) authorized by SecAF IAW **paragraph 16.6**.

2.2.11.2.  Advise commanders, MPFs, servicing legal offices, SCAs, and MAJCOMs or FLDCOMs regarding GO-specific administrative procedures and requirements.  **Note**: Regular Component: Servicing legal offices should contact AF/JAJ before contacting AF/A1LG or S1/S1LG.  AF/A1LG and S1/S1LG should coordinate with AF/JAJ prior to contacting servicing legal offices.  ANG: Servicing legal offices should contact Air National Guard Bureau Legal Office (NGB/JA) prior to contacting NGB-SL.

NGB-SL should contact NGB/JA prior to contacting ANG servicing legal offices.

2.2.11.3.  Process GOs (and GO select) separation requests.

2.2.11.4.  Update voluntary and involuntary DOS or DOS changes and other system-related updates.

2.2.11.5.  Ensure cases are reviewed for any information that indicates the member would be considered for separation or discharge.  Consult with NGB/A1, ANGRC/JA, and the supporting SJA to ensure actions required by the unit and member are met prior to sending the separation documents to AF/JAJ (or SAFPC, as applicable). In the event the requirements have not been met, notify the servicing Force Support unit (and AFRC/DPT (Air Force Reserve Command Directorate of Total Force Services) for reserve personnel) and return the separation package to the SCA for action. Once cases meet all requirements, send them to either AF/JAJ or SAFPC as applicable (e.g., Generals Group).

2.2.11.6.  DoDI 1332.29, *Involuntary Separation Pay (Non-Disability),* provides guidance to make the determination on whether a member is entitled to separation pay, readjustment pay, or severance pay. Inform MPFs of an officer's eligibility for full or half separation pay, readjustment pay, or severance pay (see **Attachment 17**).

2.2.11.7.  Determine whether an officer has an active duty service commitment (ADSC) for which recoupment is appropriate and forward such documents with the case file.

2.2.11.8.  Obtain recoupment amount and notify appropriate agencies (e.g., local finance office or Defense Finance and Accounting Service (DFAS)) to effect recoupment.

2.2.11.9.  Retract approved completion of ADSC DOS when it is determined the officer has an ADSC beyond the approved DOS.

2.2.11.10.  Retract or extend an officer's DOS when the officer is involuntarily retained under **paragraph 14.30**.

2.2.12.  Air Force Colonel Management Office (AF/A1LO) (regular component only) and Space Force Colonel Management Office (SF/S1LO):

2.2.12.1.  Processes officer voluntary separation requests and involuntary discharges for regular component O-6s and O-6 selects.

2.2.12.2.  Provides guidance and implements special separation programs pertaining to O-6s and O-6 selects authorized by SecAF IAW **paragraph 16.6**.

2.2.12.3.  Advises commanders, MPFs, servicing legal offices, SCAs, and MAJCOMs or FLDCOMs regarding O-6-specific administrative procedures and requirements.  **Note**: Servicing legal offices should contact AF/JAJ before contacting AF/A1LO or S1/S1LO, and AF/A1LO and S1/S1LO should coordinate with AF/JAJ prior to contacting servicing legal offices.

2.2.12.4.  Updates voluntary and involuntary DOSs or DOS changes and other system-related updates.

2.2.12.5.  Ensures cases meet the administrative requirements of this publication before sending them to either AF/JAJ or SAFPC as applicable (e.g., Colonels Group).

2.2.12.6.  Submits requests to the SecAF, or the SecAF's designee, for waivers of, or exceptions to, procedural requirements.

2.2.12.7.  DoDI 1332.29 provides guidance to make the determination on whether a member is entitled to separation pay, readjustment pay, or severance pay. Informs MPFs of an officer's eligibility for full or half separation pay, readjustment pay, or severance pay (see **Attachment 17**).

2.2.12.8.  Determines whether an officer has an ADSC for which recoupment is appropriate, (see AFMAN 36-2100, *Military Utilization and Classification*), and forwards such documents with the case file.

2.2.12.9.  Obtains recoupment amount and notifies appropriate agencies (e.g., local financial services office and DFAS) to effect recoupment.

2.2.12.10.  Retracts approved completion of ADSC DOS when it is determined the officer has an ADSC beyond the approved DOS.

2.2.12.11.  Retracts or extends an officer's DOS when involuntarily retained under **paragraph 14.30**.

2.2.13.  AFPC/DPMSSR, ARPC/DPT, AFRC/JAM (for officers in the ranks of O-5 and below):

2.2.13.1.  Advise commanders, MPFs, SJAs, SCAs, and MAJCOMs and FLDCOMs on actions and required documentation needed to process separations.

2.2.13.2.  Process officer voluntary separation requests and involuntary discharges.

2.2.13.3. Provide guidance and implement special separation programs pertaining to strength or force management adjustments authorized by SecAF IAW **paragraph 16.6**.

2.2.13.4. Provide instructions to MPFs for processing voluntary or involuntary separations.

2.2.13.5. Update voluntary and involuntary DOSs or DOS changes and other system-related updates.

2.2.13.6. Publish separation orders for all separating officers to include amendments, rescissions, or revocations of orders (see DAFMAN 36-2102) when applicable and prepare separation documents (see AFI 36-3202).

2.2.13.7. Ensure cases are reviewed for any information that indicates a member should be considered for separation or discharge. Consult with NGB/A1, ANGRC/JA, and the supporting SJA to ensure actions required by the unit and member are met prior to sending the separation documents to AF/JAJ (or SAFPC, as applicable). In the event the requirements have not been met, notify the servicing Force Support unit (and AFRC/DPT for reserve personnel) and return the separation package to the SCA for action. Once cases meet all the requirements send them to either AF/JAJ or SAFPC as applicable. **Note**: AFPC/DPMSSR or ARPC may return to the SCA case files that do not meet the administrative requirements of this publication and require corrective action.

2.2.13.8. Submit requests to the SecAF (or designee) for waivers of or exceptions to procedural requirements.

2.2.13.9. DoDI 1332.29 provides guidance to make the determination on whether a member is entitled to separation pay, readjustment pay, or severance pay. Inform MPFs of an officer's eligibility for full or half separation pay, readjustment pay, or severance pay (see **Attachment 17**).

2.2.13.10. Determine whether an officer has an ADSC for which recoupment is appropriate and forward such documents, including initial recoupment amount, with the case file.

2.2.13.11. Obtain recoupment amount and notify appropriate agencies (e.g., local financial services office and DFAS) to effect recoupment.

2.2.13.12. Retract approved completion of ADSC DOS when it is determined the officer has an ADSC beyond the approved DOS.

2.2.13.13. Retract or extend an officer's DOS when involuntarily retained under **paragraph 14.30**.

2.2.14. Force Support Squadron (FSS), Force Support Unit, and Military Personnel Flight (MPF):

2.2.14.1. The processing of a case starts when the MPF receives an application for voluntary discharge or when written notice of the proposed discharge has been given or mailed to the respondent.

2.2.14.2. Ensure member has completed physical examinations (see guidance in DAFMAN 48-123) and has provided the required medical clearance documentation.

2.2.14.3. Ensure compliance with processing procedures and system updates. See additional guides on this process, which can be found on myFSS.

2.2.14.4. Before separating an officer, ensure the commander or other authority reviews and audit the accounts and public property the officer managed.

2.2.14.5. Ensure any action to retain an officer beyond an approved DOS is coordinated with the servicing legal office IAW **paragraph 14.28**.

2.2.14.6. Advise AFPC (RegAF or USSF) or ARPC separations (ARC) immediately when a condition exists, which requires an adjustment to the officer's DOS for any of following reasons:

2.2.14.6.1. Failure to settle an account.

2.2.14.6.2. Placement on medical hold.

2.2.14.6.3. Pending court-martial or initiation of involuntary separation or other adverse action.

2.2.14.6.4. Awaiting final approval of a request to continue active duty. This includes officers who are awaiting a special selection board decision for promotion.

2.2.14.7. Advise AFPC Separations when the condition for retaining the officer no longer exists.

2.2.14.8. Monitor local out-processing requirements for compliance and effect separation on the date specified in the order.

2.2.15. AFPC Medical Standards Branch (AFPC/DPMNP):  Places officers on medical hold (see guidance in AFMAN 41-210), when requested by installation medical treatment facilities if appropriate criteria are met. Advises AFPC Separations when an officer is placed on and removed from medical hold.

2.2.16. Air National Guard:

2.2.16.1. Discharge Authority:  Refer to **Table A19.1** for the appropriate discharge authority.

2.2.16.2. Separation authority for ANG members:

2.2.16.2.1. Separation authorities for AF appointments rests with the SecAF and are delegated to TAG or CG of the state, territory, or the District of Columbia for members of the ANG.

2.2.16.2.2. When ANG officer cases are processed under this publication, the states, territories, or the District of Columbia do not separate or discharge the officers from state status until the processes are completed, to include SecAF approval (as indicated in **Table A19.1**, column G), which result in loss of active status. This does not preclude a state from discharging officers from state status pursuant to a process provided for in state law, which is independent of federal law and regulation. Guidance for officer separation provisions can be found in 32 USC § 323(b), *Withdrawal of Federal Recognition,* and Title 10 United States Code HAFMD 1-24, Addendum B, 14907(b), *Army National Guard and Air National Guard of the United States: Discharge and withdrawal of Federal Recognition of Officers Absent Without Leave, Discharge from*

*Reserve Appointment*. **Note:** Title 10 United States Code Section 14905(b)(2), *Officer Considered for Removal: Retirement or Discharge,* does not apply to ANG officers – only AFR.

2.2.16.3. In cases involving mandatory separation or discharge where notification procedures and an administrative discharge board is not required (such as mandatory separation dates [MSD] or inactive status list reserve section [ISLRS] for officers), the separation or discharge authority publishes orders and issues separation documents.

2.2.16.4. In cases involving separation or discharge where notification procedures or an administrative discharge board are required (except for physical disqualification), use the following procedures.

2.2.16.4.1. The unit commander (or equivalent) will:

2.2.16.4.1.1. Examine and evaluate any information received that indicates a member should be considered for separation or discharge. Consult with NGB/A1, Air National Guard Bureau, Office of the General Counsel (NGB-GC), and the supporting SJA.

2.2.16.4.1.2. Ensure that investigations properly and completely develop, substantiate, and document all facts. See DAFMAN 1-101, *Commander Directed Investigations,* for Guidance.

2.2.16.4.1.3. Forward recommendation with supporting evidence to the discharge authority.

2.2.16.4.2. Discharge Authority's Responsibilities:

2.2.16.4.2.1. Refer to **Table A19.1** for separation or discharge authority for the ANG.

2.2.16.4.2.2. Review the case to ensure proper substantiation of all facts and determine appropriate action.

2.2.16.4.2.3. If discharge action is not warranted, return the case to the appropriate unit and close the case.

2.2.16.4.2.4. When involuntary administrative discharge action is warranted, process the case IAW **Chapter 23** of this publication. When an officer tenders a resignation in lieu of board action, suspend processing and refer to **Section 19D** of this publication.

2.2.16.4.2.5. Guidance for assembling a Board of Officers is provided in DAFMAN 51-507, *Enlisted Discharge Boards and Boards of Officers.*

2.2.16.4.2.6. Forward discharge case files requiring SecAF approval to NGB/A1PP for further processing to SecAF, or designee, for final action with the following recommendation criteria: (1) A recommendation the officer be removed from an active status and transferred to the retired reserve or a recommendation the officer be discharged. If the recommendation is to transfer the officer to the retired reserve, a proposed officer grade determination (OGD) must be included. And (2) A recommended characterization of service.

2.2.16.4.2.7. When the officer is retained, the discharge authority advises the respondent that the SecAF's decision terminates the action initiated under this publication. If appropriate, the officer may be reassigned.

2.2.16.4.2.8. When SecAF directs other action, the discharge authority issues instructions IAW the SecAF direction.

**2.3. PALACE CHASE Programs (Part 4).**

2.3.1. Assistant Secretary of the Air Force for Manpower and Reserve Affairs (SAF/MR):

2.3.1.1. Authorizes AFPC/DPMSSR, ANG, and AFR personnel to adjudicate enlisted PALACE CHASE applications. For officer PALACE CHASE applications, the Director, SAFPC has delegated authority to AFPC to approve, but not deny, officer PALACE CHASE applications, regardless of the length of the ADSC at issue. AFPC Military Transition Operations must refer any officer PALACE CHASE case where a recoupment determination is required to SAFPC. Any case where AFPC recommends denial must be referred to SAFPC for final decision.

2.3.1.2. Authorizes AFPC/DPMSSR, ANG, and AFR personnel to adjudicate enlisted PALACE CHASE applications and make recommendations on officer PALACE CHASE applications.

2.3.1.3. Authorizes transfer to a drill status guardsman (DSG), traditional reservist (TR), individual reservist (IR), air reserve technician (ART), active guard and reserve (AGR), or Title 32 military technician position.

2.3.2. Air Force Deputy Chief of Staff for Manpower, Personnel, and Services (AF/A1) and Deputy Chief of Space Operations for Human Capital (SF/S1):

2.3.2.1. In collaboration with AF/RE and NGB/CF, develops personnel policy for Air Force and Space Force accessions programs. This includes intraservice transfer of officer and enlisted personnel.

2.3.2.2. Suspends the PALACE CHASE programs during full mobilizations of the ARC.

2.3.3. SAFPC: SAFPC adjudicates personnel actions under the authority of SAF/MR and is comprised of the Air Force Personnel Board, Air Force Discharge Review Board, Air Force Decorations Board, and DoD Civilian/Military Service Review Board. Refer to AFI 36-2023, *The Secretary of the Air Force Personnel Council (SAFPC)* and HAFMD 1-24, Addendum B and HAFMD 1-24, Addendum C, *Re-Delegation of Direction and Authority to Act on Certain Applications and Complaints HAFMD 1-24, Assistant Secretary of the Air Force (Manpower and Reserve Affairs)*.

2.3.3.1. May delegate specific authority through outright delegations of authority to AFPC; NGB; Commander, Headquarters Air Reserve Personnel Center (ARPC/CC), etc., or by appointing special assistants to the Director, SAFPC. The special assistants may only act on specific categories of cases and in a limited scope as outlined by the current appointment letter.

2.3.3.2. The purview of the Air Force Personnel Board (AFPB) includes involuntary discharge of officers and requests by officers for voluntarily release from active duty for

miscellaneous reasons, hardship, or inter- and intra-service transfers (including PALACE CHACE) where the officer has an unfulfilled ADSC.

2.3.3.2.1. The Director or Deputy Director, SAFPC may approve or disapprove the applicant's request to resign the current commission. Additionally, the Director or Deputy Director, SAFPC may conditionally approve the officer's resignation request with an alternate DOS.

2.3.3.2.2. Acts on behalf of the SecAF and may direct the recoupment of a pro-rata share of the cost of any benefit based on the period of unfulfilled active duty service (see guidance in Title 37 United States Code Section 303a, *Special Pay: General Provisions*).

2.3.3.2.3. Provides AFPC/DPMSSR with the action of the SecAF memorandum for each application after SAFPC adjudicates the case.

2.3.4. Air National Guard Manpower, Personnel, Services, and Recruiting Directorate (NGB/A1).

2.3.4.1. Implements the PALACE CHASE programs within the ANG.

2.3.4.1.1. Provides AFPC Sustainment and Transition Operations Division (AFPC/DPMS) with sufficient staff to manage PALACE CHASE programs. ANG maintains administrative control of ANG personnel assigned to PALACE CHASE office.

2.3.4.1.2. Air National Guard Bureau Officer Programs Branch (NGB/A1PO):

2.3.4.1.2.1. Selects and appoints officer applicants nominated by the various adjutants general for all categories of officers, from all sources, to fill ANG vacancies. Before appointment, they obtain (AF/JA) (for judge advocates) and Air National Guard Bureau Chief of Chaplains (NGB/HC) (for chaplains) approval for all appointments in these two categories.

2.3.4.1.2.2. Receives and processes an officer's request to be placed on the reserve active status list (RASL) after the officer has received temporary federal recognition from the state, territory, or the District of Columbia to which the officer was transferred.

2.3.4.1.3. Air National Guard Bureau Recruiting and Retention Operations (NGB/A1YO):

2.3.4.1.3.1. Ensures current accession policy allows the seamless transition of active duty, PALACE CHASE program participants to the ANG.

2.3.4.1.3.2. Creates, updates, and reviews component-specific procedures.

2.3.5. AFRC/A1K:

2.3.5.1. Serves as the AFR BPO for PALACE CHACE programs. **Note:** PALACE CHASE programs are administered as accessions programs in the AFR as members in this program transition from the Regular component to the AFR.

2.3.5.2. Collaborates with AF/REP to develop policy and guidance for AFR PALACE CHASE programs.

2.3.5.3.  Implements the PALACE CHASE program within the AFR.

2.3.5.4.  Ensures AFPC/DPMS is adequately supported with AFR personnel. **Note:** AFPC maintains administrative control of AFR personnel assigned to administer the PALACE CHASE programs.

2.3.5.5.  Ensures accession guidance allows for the seamless transition of active duty, PALACE CHASE program participants to the AFR.

2.3.6.  AFRC Recruiting Service (AFRC/RS):

2.3.6.1.  Serves as the AFR BPO for enlisted accessions.

2.3.6.2.  Collaborates with AFRC/A1K to administer PALACE CHASE programs for enlisted personnel.

2.3.7.  The HQ ARPC/CC suspends the PALACE CHASE programs when directed by the SecAF or during a full mobilization of the reserve component.

2.3.8.  HQ ARPC/DPA serves as AFR BPO for officer accession programs.

2.3.9.  HQ ARPC Accessions Division (HQ ARPC/DPAR):

2.3.9.1.  Processes officer applicant requests for addition to the RASL.

2.3.9.2.  Builds an officer's scroll nomination package when the officer applies for AFR positions and submits the request to the AF Accessions and Training Management Division (AF/A1PT). *2.3.9.3. Notifies the ARC In-Service Recruiter (ISR) and AFPC/DPMSSR when an applicant's RASL submission receives approval.

2.3.10.  ARPC/DPT oversees operations affecting PALACE CHASE programs at the Total Force Service Center. The Total Force Service Center will:

2.3.10.1.  Address PALACE CHASE applicant inquiries once the member has been assessed into the AFR.

2.3.10.2.  Notify AFPC/DPMSSR when any PALACE CHASE participant does not meet participation requirements (see guidance in AFMAN 36-2136, *Reserve Personnel Participation*). **Note:**  AFPC/DPMSSR must be notified before taking action to discharge or reassign the member out of the selected reserve.

2.3.10.3.  Functions as a support personnel activity through ARPC/DPA for all PALACE CHASE personnel assigned to the participating IRR.

2.3.11. AFPC    Military    Transition    Operations    (Retirements    and    Separations) (AFPC/DPMSSR) PALACE CHASE Programs Office:

2.3.11.1. Serves as the functional point of contact (POC) for all PALACE CHASE programs.  PALACE CHASE programs include the standard programs of PALACE CHASE and PALACE FRONT and the special programs of PALACE SPORT, PALACE BLESSING, and PALACE PA.

2.3.11.1.1. Establishes,  updates,  and  reviews  administrative  procedures  and implements policy concerning the PALACE CHASE programs.

2.3.11.1.2.  Develops and publishes process procedures for application submissions.

2.3.11.2.  Provides guidance and assistance to ARC recruiting services on the operation of the PALACE CHASE programs.

2.3.11.3.  Advises AF/RE and NGB/A1Y on force management programs affecting the PALACE CHASE programs.

2.3.11.4.  Provides guidance to ARC ISRs concerning application submission.

2.3.11.5.  Reviews ARC recruiting and accessions policies and procedures to ensure a seamless transition for PALACE CHASE program participants.

2.3.11.6.  Maintains statistical data and advises other agencies on the health of the PALACE CHASE programs.

2.3.11.7.  Reviews, processes, adjudicates, or coordinates adjudication for all application packages.

2.3.11.7.1.  Coordinates all application packages for the appropriate recommendations and to the correct approval authority.

2.3.11.7.2.  Adjudicates enlisted applications by either approving or disapproving the application.

2.3.11.8.  Computes the PALACE CHASE contract date; the date to which a PALACE CHASE participant must serve in the selected reserve.

2.3.11.9.  Assigns final approved DOS and projects the member's record to the gaining ARC unit in the Military Personnel Data System (MilPDS).

2.3.11.10.  Administers recall actions when PALACE CHASE participants violate the PALACE CHASE contract.

2.3.11.11.  Coordinates on application withdrawal, cancelation, and DOS change requests.

2.3.11.12.  Updates application when PALACE CHASE program applicants withdraw a request to participate in any PALACE CHASE program.

2.3.12.  AFPC Total Force Service Center (TFSC): Generates separation documents from guidance provided in AFI 36-3202 and current PALACE CHASE program information located on myFSS.

2.3.13.  Gaining ANG Wing or Geographically Separated Unit (GSU) Recruiting and Retention Staff:

2.3.13.1.  ANG recruiting and retention staff interviews each applicant and determines eligibility.

2.3.13.1.1.  Ensures PALACE CHASE applicant meets applicable accession standards as defined in DAFMAN 36-2032, *Military Recruiting and Accessions.*

2.3.13.1.2.  Ensures all applicants meet all accession medical standards as defined by DAFMAN 48-123.

2.3.13.2.  Serves as the applicant's reporting official.  Refer to **paragraph 2.3.18**, for ARC reporting official responsibilities.

2.3.13.3.  Reports PALACE CHASE participants who fail to report to the unit, complete enlistment, or complete appointment within the 10 days of concurrent service.

2.3.13.4.  Assists PALACE CHASE participants with completing initial enlistment or appointment (see guidance in DAFMAN 36-2032).  The effective date of enlistment or appointment must be the day following separation from the regular component.

2.3.14.  Regular component Wing Commander (WG/CC), Delta Commander, or equivalent. For officer PALACE CHASE and all PALACE SPORT, PALACE BLESSING, and PALACE PA applications, provides recommendation on separation application.  Coordination guidance can be found with the PALACE CHASE program information on myFSS.

2.3.15.  Regular component Military Personnel Flight (MPF):

2.3.15.1.  Supports the applicant and ARC ISRs by reviewing established policy governing the PALACE CHASE programs.

2.3.15.2.  Assists PALACE CHASE applicants in locating the assigned ARC ISRs.  When an ARC ISR is not assigned to the MPF, information related to the AFR and ANG recruiters can be located at their websites.

2.3.15.3.  Authorizes each ARC ISR to work within the MPF or adjoining office space and provides required support.

2.3.15.3.1.  Provides separate office space for the AFR and ANG ISR within the MPF.

2.3.15.3.2.  Provides appropriate office equipment, copiers, internet access, administrative and information technology support to each ISR.

2.3.15.3.3.  Ensures separate phone service for each ARC ISR with at least Defense Switching Network (DSN), local, and long-distance calling capability.

2.3.15.3.4.  Provides both ANG and AFR ISR a schedule of separation briefings and rosters.  Rosters should identify both officer and enlisted members assigned against the MPF and have a pending expiration of term of service (ETS), expiring ADSC, or an approved separation within 6 months.

2.3.15.4.  Supports applicant separation and out-processing actions.

2.3.15.4.1.  When required, ensures each PALACE CHASE program participant receives an evaluation prior to the member completing final out-processing (see guidance in DAFI 36-2406, *Officer and Enlisted Evaluation System*).

2.3.15.4.2.  When the participant is otherwise eligible to reenlist (reenlistment eligibility code 3C or 1M), processes participants for early selective reenlistment program consideration (see guidance provided in AFI 36-2606, *Reenlistment and Extension of Enlistment in the United States Air Force)*.

2.3.15.4.3.  Provides the ARC ISR with applicant separation documents and other records when requested.

2.3.15.4.4.  Does not approve an applicant's request for terminal leave prior to the applicant completing all required separation processing.

2.3.15.4.5. Does not terminate PALACE CHASE program participant's security clearance in system.

2.3.15.4.6. Curtails date eligible for return from overseas (DEROS) (see guidance provided in DAFI 36-2110, *Total Force Assignments)*, when a participant has been assigned a final approved PALACE CHASE DOS that is prior to the participant's current DEROS.

2.3.15.4.7. Conducts final out-processing action with the member regardless of their location. **\***2.3.15.4.8. Mails a copy of the member's record to AFPC/DPSOR, 550 C Street West Suite 21, Randolph AFB, TX 78150-4713.

2.3.16. Gaining ARC FSS/MPF Personnel (the gaining MPF for Individual Mobilization Augmentees (IMAs) is ARPC):

2.3.16.1. The respective Readiness Integration Organization (RIO) detachment completes the second endorsement of the AF Form 1288, *Application for Ready Reserve Assignment,* (see guidance provided in the PALACE CHASE program procedures available on myFSS).

2.3.16.1.1. Ensures each PALACE CHASE program applicant is medically qualified prior to completing the second endorsement of the AF Form 1288.

2.3.16.1.2. Gives PALACE CHASE placements priority (see guidance provided in DAFI 36-2110).

2.3.16.1.3. Returns AF Form 1288 with the second endorsement completed to the ARC ISR within 60 days.

2.3.16.1.4. Will not use the prior service AF Recruiting Information Support System - Total Force Interface application to gain PALACE CHASE special program participant records.

2.3.16.2. Gains record of PALACE CHASE program participants within the MilPDS.

2.3.16.2.1. Gains the PALACE CHASE participant effective the day after the member's final DOS as listed on the member's separation orders, DAF Form 100, *Request and Authorization for Separation*.

2.3.16.2.2. Returns member to the regular component duty file for recall or administrative action when the PALACE CHASE participant fails to report to the ARC unit. Refer to **Part 4** of this publication and the PALACE CHASE program procedures located on myFSS.

2.3.16.3. In-processes PALACE CHASE program participants (see guidance provided in DAFMAN 36-2102 and the PALACE CHASE program procedures located on myFSS).

2.3.16.4. May transfer PALACE CHASE participants only when: the member returns to the regular component, transfers to a DSG, TR, IMA, AGR or a Title 5 military technician position.

2.3.16.4.1. DELETED

2.3.16.4.2. DELETED

2.3.16.5.  Ensures participants that violate the PALACE CHASE contract after the member has been gained to the ARC unit will be processed IAW **Part 4** of this publication.  Ensures participants maintain satisfactory participation throughout the entire PALACE CHASE contract period.   Refer to the DAF Form 2631, *Palace Chase Statement of Understanding/Contract,* AFMAN 36-2136, and **Part 4** of this publication.

2.3.16.6.  **(HQ AFRC Force Support Units Only)**  a full time (AGR or ART) member of the gaining AFRC Force Support Unit will be assigned as the reporting official. See **paragraph 2.3.19** for ARC reporting official responsibilities.

2.3.17. ARC Unit Commander or Civilian Director (refer to **Attachment 1, Terms**, for definition of Unit Commander or Civilian Director):

2.3.17.1.  When unit commanders are not available, coordination is directed to the next higher-level commander.   ARC flight or section commanders are not ARC unit commanders and may not coordinate on recall packages.

2.3.17.2.  Notifies AFPC/DPMSSR when any PALACE CHASE participant violates the PALACE CHASE contract.  Participants who violate the PALACE CHASE contract after the member has been gained to the ARC unit are processed IAW **Part 4** of this publication.

2.3.17.3.  Notifies AFPC/DPMSSR when any PALACE CHASE participant requests reassignment to the participating IRR.

2.3.17.4.  May request recall of PALACE SPORT or PALACE PA participants, when the participant is no longer under a contract or binding agreement with a professional sports team or when the participant's unique talents no longer provide a positive benefit to the USAF or USSF recruiting and public affairs efforts.

2.3.18.  ARC ISR:

2.3.18.1.  Serves as the applicant's POC throughout the application process.  Prescreens all applicants to determine if they are eligible to participate in PALACE CHASE programs and accession into the ARC.  Advises and assists applicants on the current application procedures as outlined in this publication.

2.3.18.1.1.  Conducts initial face-to-face interview.  ARC ISR screens applicants for any potentially disqualifying factors, (e.g., history of an unfavorable information file [UIF], domestic violence conviction, felony conviction, government travel card misuse, drugs, conduct, medical) IAW the applicable recruiting instructions.  A complete prequalification should be accomplished during the initial interview with the applicant and before the applicant submits the PALACE CHASE application.

2.3.18.1.2.  Ensures PALACE CHASE program applicant meets applicable accession standards as defined in DAFMAN 36-2032.

2.3.18.1.3.  Ensures all applicants meet all accession medical standards as defined by DAFMAN 48-123.

2.3.18.1.4.  Enters all applicants into AF Recruiting Information Support System-Total Force following the initial interview and prior to application submission.

2.3.18.2.  When required by law, coordinates all officer scroll nomination packages for officers projected to the ARC.

2.3.18.3.  Submits RASL packages to ARPC/DPAR.

2.3.18.4.  Advises applicant on specific ARC unit locations and mission.

2.3.18.5.  Initiates the AF Form 1288 and DAF Form 2631, utilizing AF Recruiting Information Support System - Total Force.

2.3.18.6.  Mails all source documents, including the member's medical record to the gaining unit's servicing MPF.  Refer to the member's completed AF Form 1288 for gaining ARC FSS/MPF information.

2.3.19.  ARC Reporting Official:

2.3.19.1.  Serves as the PALACE CHASE program participant's primary POC for reporting to the unit.

2.3.19.1.1.  ANG units will assign a wing recruiting and retention manager as the reporting official.

2.3.19.1.2.  AFR units will assign a full time (AGR, ART, or unit reserve coordinator (URC) for IMAs assigned to RegAF units) member of the MPF as the reporting official.

2.3.19.1.3.  RIO detachment commander will assign the URC as the reporting official.

2.3.19.2.  Ensures all participants report to and are gained by the ARC unit no later than (NLT) 10 days after the member's final approved PALACE CHASE DOS.  ARC units are not authorized to delay enlistment or appointment action until the unit's next unit training assembly (UTA) or regularly scheduled drill.

2.3.19.3.  Contacts all PALACE CHASE program participants prior to their final DOS. Provides the PALACE CHASE participant with the reporting instructions and requirements to ensure the member is prepared to complete the enlistment or appointment efficiently.

2.3.19.4.  Serves as the primary POC when a PALACE CHASE participant fails to report to the assigned unit.  Reporting officials are required to follow notification process outlined in **Part 4**.  Recruiting personnel should annotate contacts and contact attempts in AF Recruiting Information Support System - Total Force.

2.3.20.  Regular component Unit Commander or Civilian Director (refer to **Attachment 1, Terms**, for definition of Unit Commander or Civilian Director):

2.3.20.1.  Flight or section commanders are not unit commanders and may not coordinate on separation applications.  When unit commanders are not available, coordination is directed to the next higher-level commander.

2.3.20.2. (Enlisted PALACE CHASE applications only) Unit commanders or civilian directors are required to complete the first endorsement of the AF Form 1288.

2.3.20.2.1.  DELETED

2.3.20.2.2.  DELETED

2.3.20.3. (Officer applicants only) Unit commander or civilian directors conduct a voluntary separation briefing prior to the applicant submitting a new voluntary separation application.

2.3.20.4. Ensures terminal leave is not approved until all separation processing is completed.

2.3.20.5. Approves or disapproves application withdrawal requests and DOS changes for all PALACE CHASE applications.

2.3.20.6. Conducts early selective reenlistment program consideration for members who have not previously received formal selective reenlistment program consideration. Refer to AFI 36-2606.

2.3.20.7. Ensures each PALACE CHASE program participant receives an evaluation prior to the member completing final out-processing as outlined in DAFI 36-2406.

2.3.21. ARPC:

2.3.21.1. Notifies AFPC/DPMSSR when a PALACE CHASE participant is transferred into the IR program from an ANG unit or from an AFR position within the selected reserve.

2.3.21.2. Functions as a support personnel activity for PALACE CHASE participants assigned to the participating IRR.

2.3.21.3. Notifies AFPC/DPMSSR when any PALACE CHASE participant violates the PALACE CHASE contract. Participants who violate the PALACE CHASE contract after the member has been gained to the IR program will be processed IAW **Part 4** of this publication.

2.3.21.4. Notifies AFPC/DPMSSR when any PALACE CHASE participant requests reassignment to the participating IRR. Does not authorize reassignment of contracted PALACE CHASE personnel to the participating IRR without approval from AFPC.

2.3.21.4.1. DELETED

2.3.21.4.2. DELETED

2.3.22. PALACE CHASE Program Applicant:

2.3.22.1. Contacts an ARC ISR to initiate the prescreen process prior to starting a PALACE CHASE application. Information regarding AFR and ANG recruiters is located at their websites.

2.3.22.2. Follows all current application procedures as outlined in this publication.

**2.4. Procedures for Applying as a Conscientious Objector (Part 5).**

2.4.1. SecAF: Establishes policy concerning the processing and disposition of conscientious objector applications for the DAF.

2.4.2. SAFPC: Receives applications and makes a recommendation to the Director, Air Force Review Boards Agency, to approve or disapprove, on behalf of the SecAF.

2.4.3. Air National Guard Bureau, Force Management Division (NGB/A1P): Receives and processes completed applications from individuals assigned to the ANG who wish to apply for conscientious objection for final approval.

2.4.4. HQ ARPC/DPT receives and processes applications from reserve members in training and retired category designators "A" and "B".

2.4.5.  AFPC/DP3SA:  Implements established policy, provides policy guidance, and serves as office of primary responsibility (OPR) for the conscientious objector program.

2.4.6.  AFPC/DPMSSR:  Receives completed applications for conscientious objection and processes the applications for final approval.  Provides additional guidance to the MPF on assisting customers with applications.

2.4.7.  Unit Commander:  Reviews applications and makes a recommendation to the next level approval authority.  Ensures that an investigating officer is appointed to conduct an investigation and hearing on the application.  Takes necessary steps to remove a conscientious objector applicant from combatant duties and training until the conclusion of the application.

2.4.8.  Force Support Squadron, MPF:

2.4.8.1.  Executes established policy on conscientious objection and provides training to individuals assigned to the career development section on processing conscientious objector applications.

2.4.8.2.  Force Support Squadron (FSS), MPF, Career Development (FSS/FSMPD):  Counsels and assists applicants with conscientious objector applications (**paragraph 29.2.7**.).

2.4.9.  Investigating Officer: Investigates the conscientious objector application (**paragraph 29.3**.).

2.4.10.  Chaplain: Conducts a personal interview with the conscientious objector applicant (**paragraph 29.2.8.1**.).

2.4.11.  Mental Health Professional:  Conducts a personal interview with the conscientious objector applicant (**paragraph 29.2.8.2**.).  The evaluation is completed by an appropriately credentialed mental health professional, such as a clinical psychologist, psychiatrist, licensed clinical social worker, or psychiatric advanced practice registered nurse.

## Part 2

## SEPARATION OF ENLISTED MEMBER

## Chapter 3

## INFORMATION APPLICABLE TO ALL SEPARATION

*Section 3A—General Procedures.*

**3.1.  Statutory Authority, Approval Authority, and Reasons for Separation.**

3.1.1. Statutory Authority.  Laws, DoD issuances, and policies announced by the SecAF authorize the separation of members.  No member may be discharged or released before expiration of term of service except as prescribed by the SecAF, by sentence of court-martial, or as otherwise prescribed by law.

3.1.2. Approval Authority.  Each part of this publication authorizing separation tells who is authorized to approve or disapprove the separation.  Except when action by the special court-martial convening authority (SPCMCA) or general court martial convening authority (GCMCA) is specifically required, the commander exercising separation authority may designate, in writing, a staff officer to act on the matter.  The authority may not be further delegated.  For ARC discharge and separation authority, see **Chapter 13** for involuntary discharge and separation authority guidance.  Commanders who may exercise separation authority are:

3.1.2.1.  General officers who command units.

3.1.2.2.  Wing and Delta Commanders.

3.1.2.3.  SPCMCA or GCMCA.

3.1.2.4. Others specifically designated by AFPC, separations and retirements section (DPMSSR).

3.1.3. The Air Force Personnel Board (AFPB) of SAFPC adjudicates discharges in the following cases (see HAFMD 1-24, Addendum B):

3.1.3.1.  Discharge of members eligible for and who have applied for retirement or transfer to the retired reserve (**Section 8L**).

3.1.3.2. Administrative discharge of members eligible for disability separation or retirement (**Section 8D**).  **Note**:  Per AFI 36-3212, *Physical Evaluation for Retention, Retirement and Separation*, the GCMCA or CG is the decision authority for regular and reserve component enlisted members with less than 16 years total active federal military service (TAFMS), who are pending involuntary administrative discharge under provisions that authorize a characterization of service of under other than honorable conditions or satisfactory service.  For ANG enlisted members who are pending involuntary administrative discharge under provisions that authorize a characterization of service of under other than honorable conditions or satisfactory service, SAF is the discharge authority.

3.1.3.3.  Members entitled to consideration for lengthy service or sanctuary probation (**Section 8E**).

3.1.3.4.  Discharge for civilian conviction while appeal of the conviction is pending or the time for appeal has not passed, and the member has not requested discharge (**Section 8H**).

3.1.3.5.  Execution of recommendation to drop from the rolls of the USAF or USSF and ARC enlisted member (**Section 8G**).

3.1.3.6.  Under Other Than Honorable Conditions (UOTHC) service characterization and separation in which a member was tried by court-martial in a venue where a punitive discharge was authorized (See **paragraph 3.18.3**) or for a member of an ARC when recommended by the discharge authority for an administrative discharge.

3.1.3.7.  Classification, retention, or discharge based on a member's application as a conscientious objector (see guidance provided in DoDI 1300.06. *Conscientious Objectors)*.

3.1.3.8.  An Air Force Academy cadet's resignation for the good of the service.

3.1.3.9.  The disenrollment or resignation of an Air Force Academy cadet in any case in which decision authority is not delegated to the Superintendent.

3.1.3.10.  Release from active duty, under Title 10 United States Code Section 12686, *Reserves on Active Duty within Two Years of Retirement Eligibility: Limitation on Release from Active Duty,* any reserve member who is within 2 years of qualifying for retirement.

3.1.3.11.  Termination of active guard/reserve status of a guardsman who is within 2 years of qualifying for retirement under the provisions of Title 10 United States Code Section 9311, *Twenty Years or More: Regular or Reserve Commissioned Officers,* or Title 10 United States Code Section 9314, *Twenty to Thirty Years: Enlisted Members*, (active duty retirement).

3.1.3.12.  Discretionary denial of separation pay, severance pay, or readjustment pay.

3.1.3.13.  Involuntary administrative discharge of an enlisted member under the Secretary of the Air Force's plenary authority (see guidance provided in DoDI 1332.14, *Enlisted Administrative Separations)*.

**3.2.  Plenary Authority of the SecAF to Direct Discharge.**

3.2.1.  The SecAF may direct the separation of any member before their ETS if the SecAF determines that such separation is in the best interest of the USAF or USSF.  This authority is delegated to SAF/MR. Guidance on this delegation is provided in HAFMD 1-24, Addendum B (paragraph 6.).  Recommendation of the AFPB of SAFPC is required.  Characterize separation under this provision as honorable or general unless an entry level separation is authorized. Guidance on entry level separation is provided in DoDI 1332.14.

3.2.2. Separation authorities recommending action under this paragraph will notify the member in writing via official memorandum delivered digitally or physically of the proposed action and the reason for the recommendation.  **(T-1)** Give the member 3 workdays (30 calendar days for ARC members not in a full-time status) to submit a rebuttal with the assistance of military legal counsel.

3.2.3. Separation authorities send cases, through command channels, to the MAJCOM/FLDCOM of the commander exercising SPCMCA over the member. MAJCOM/FLDCOM commanders who concur with the recommendation for discharge send the original case to AFPC/DPMSSR for referral to SAFPC.  The MAJCOM/FLDCOM commander or vice commander, if delegated, must sign the recommendation for action under this paragraph.  **(T-1)** ANG cases are forwarded through the National Guard Bureau (NGB) for referral to SAFPC.

**3.3.  Waivers or Exceptions.**  Members and commanders cannot submit waivers or exceptions to appeal the decisions made under this publication.

**3.4.  How to Apply Separation Provisions:**

3.4.1.  Separate members of the regular component and ARC under this publication.

3.4.2.  Refer to **Chapter 13** for directive guidance unique to the ANG and AFR.  **Note**: Release members of the ANG from active duty status and return them to the ANG unit of assignment for discharge processing.

3.4.3.  Notwithstanding **paragraph 3.5.5.1** and **paragraph 3.5.5.2**, all members who are subject to trial by court-martial have the right to ask for discharge in lieu of trial by court-martial if charges have been preferred such that a punitive discharge is authorized.  Process such requests under **Chapter 6.**

3.4.4.  Commanders of technical schools may discharge an AFR member with a personal hardship or relieve the member from inactive duty training and return to home unit if they are expected to continue reserve participation, with concurrence of the AFR member's unit commander.

**3.5.  How a Military Service Obligation (MSO) Affects Separation.**  A member of an armed force incurs an MSO (Refer to Title Section United States Code Section 651, *Members: Required Service*).

3.5.1.  Normally, members with unfulfilled MSOs are released and transferred to a reserve component at separation.  Members released from active duty revert to their unit of assignment. ANG members separated from the ANG are separated from state status only and are transferred to the IRR for the duration of any unfulfilled MSO.  AFPC/DPMSSR may direct the discharge of any member without regard to an unfulfilled MSO.

3.5.2.  A member will be discharged if the member has no remaining MSO, or the MSO will expire within 120 days after DOS. **(T-1)**

3.5.3.  A female member who has an MSO will be discharged if the reason for separation is pregnancy. **(T-1)**

3.5.4.  (AFR) If the member has a remaining MSO, forward the complete case file including, all evidence and proof of all administrative steps taken to ARPC/DPTTS when the member is transferred to the personnel accounting symbol code S7 with a memorandum of explanation on action taken or pending.  ARPC/DPTTS will review the case with the servicing legal office for possible administrative discharge action. **(T-1)**

3.5.5.  The first character of the reenlistment eligibility code determines if the member is released or discharged.  Regardless of the separation reason, if:

3.5.5.1.  The member receives a reenlistment eligibility code of 1, 3, or N/A, the member is released and transferred to the AFR; or

3.5.5.2.  The member receives a reenlistment eligibility code of 2 or 4, the member is discharged.

**3.6.  Processing Cases Involving Access to Special Access Programs Other Than Sensitive Compartmented Information.** Comply with Department of Defense Manual (DoDM) 5200.02_AFMAN 16-1405, *Air Force Personnel Security Program*, prior to initiating separation action for guidance on protecting and safeguarding classified information that may become part of discharge proceedings.

**3.7.  How An Incomplete Action Under the Uniform Code of Military Justice (UCMJ) Affects Separation:**

3.7.1.  Once court-martial charges have been preferred, do not execute an administrative discharge of a member until:

3.7.1.1.  The charges have been withdrawn or dismissed. **(T-1)**; or

3.7.1.2.  A request for discharge in lieu of court-martial is approved. **(T-1)**; or

3.7.1.3.  The member is acquitted (see **paragraph 7.4.1.3**). **(T-1)**; or

3.7.1.4.  After conviction, the appellate review is final.  **(T-1)**

3.7.2.  Exceptions to **paragraph 3.7.1** may be authorized by:

3.7.2.1.  The GCMCA, if the member was convicted at a special court-martial and the sentence, as approved, does not include a bad conduct discharge.

3.7.2.2.  AF/JA in other cases.  Send requests for exceptions, with full justification, through judge advocate channels to AF/JAJ, with an information copy to AFPC/DPMSSR.  For guidance in cases involving court-martial convictions, consult DAFI 51-201, *Administration of Military Justice*, or contact AF/JA.

3.7.3.  Completing punishment after conviction is not enough to end the administrative discharge restriction.  **Note**:  A reversal of the conviction on appeal may cause serious problems if the member has been discharged.

3.7.4.  Remit any unserved or suspended portion of a sentence (except confinement or a fine) before a discharge, but this is not a prerequisite to discharge.  Do not retain a member solely to serve restriction, hard labor without confinement, or to satisfy a forfeiture.  **Note**:  This also applies to all punishments under Article 15, UCMJ, including correctional custody.

3.7.4.1.  Remitting an unserved portion of a sentence to confinement at the time of discharge is a matter of discretion based on the merits of the case.  A member discharged with unserved, unsuspended confinement must finish serving the sentence.  **(T-1)** While confined after discharge, the individual is a military prisoner and no longer a DAF member.

3.7.4.2.  A member being discharged and sentenced to pay an outstanding fine, remains liable to pay the fine after discharge.

3.7.5. ARC members may be released from active duty at the conclusion of nonjudicial punishment proceedings or final adjournment of a court-martial.  Refer to DAFI 51-201 for additional guidance.

3.7.5.1.  Unserved punishments may be carried over to subsequent periods of inactive duty training or active duty.

3.7.5.2.  An ARC member recalled to active duty with SecAF approval remains on active duty orders for the duration of confinement or other restriction on liberty the member serves.

**3.8. What to do if members are not medically qualified for separation.**  Members who are pending separation under this publication receive medical examinations (see guidance in DAFMAN 48-123) to identify medical conditions requiring attention and to document current medical status.  In some cases, execution of a member's administrative separation may be held in abeyance to permit continued disability processing (see guidance in AFI 36-3212).  In addition, medical reasons that do not result in disability processing may sometimes warrant delayed administrative separation to allow for continued treatment before separation.  For information regarding dual action processing see **paragraph 14.17**.

3.8.1.  Expiration of Term of Service (ETS).  Revoke or rescind the separation orders before effective date if retention beyond ETS is authorized.  See **paragraph 4.6**.

3.8.2.  Approved Prior-to-ETS Separation Pending.  Delay the execution of an approved prior to ETS separation for medical reasons that became known after the separation was approved.  Medical hold under **paragraph 4.6** does not apply unless the member's date of ETS is near or likely to arrive before medical evaluation is completed.

3.8.2.1.  The medical facility tells the FSS/MPF office whether:

3.8.2.1.1.  A member needs extensive medical treatment; or

3.8.2.1.2.  The member's medical qualifications have changed substantially.

3.8.2.2.  The FSS/MPF reports the facts of the case to the approval authority and to the headquarters that issued the separation orders.

3.8.2.3.  The applicable issuing agency revoke or rescind separation orders on or before their effective date when more time is needed to resolve questions about the member's medical status.  **(T-1)**

3.8.3. Decision Pending on Voluntary or Involuntary Prior-to-ETS Separation.  If the separating member is not medically qualified for worldwide duty, process under DAFMAN 48-123.  Do not use medical hold IAW **paragraph 4.6** unless the member's ETS date is near or likely to arrive before medical evaluation is completed.  The FSS/MPF gives the Director of Base Medical Services information about the pending separation.  If a member who is pending a voluntary discharge prior-to-ETS separation meets the criteria for a disability separation or retirement, separate under AFI 36-3212.

3.8.3.1.  If a member who is pending an involuntary prior-to-ETS separation or has applied for a discharge in lieu of court-martial meets the criteria for a disability separation or retirement, process under **Section 8D**, and **Table 8.12** of this publication.

3.8.3.2.  If a member is returned to duty under AFI 36-3212, resume processing under this publication.

3.8.3.3.  For other involuntary separation actions, use the instructions in **Chapter 8**.

**3.9.  Executing Approved Separations:**

3.9.1. Method.  Issue separation orders for regular component and AFR members (see guidance in DAFMAN 36-2102) and other separation documents as prescribed by AFI 36-3202.  Separation documents for ANG members are prescribed by both AFI 36-3202 and Air National Guard Instruction (ANGI) 36-3201, *Air National Guard Separations Documents*.

3.9.2. Effective Date.  The member will be notified of the separation date and this date will be stated on the separation order.  **(T-2)** Execute involuntary discharges as soon as possible, but within 10 calendar days after the separation authority makes the final decision (within 30 calendar days for ARC members).  **Note**:  There must be a bona fide military reason for establishing a DOS beyond 10 days.  For example, the Traffic Management Organization (TMO) may not be capable of completing required actions in time, which is at no fault to the member.  Unused accrued leave is not a valid reason for a separation extension.

3.9.3. Effective Time.  Separation is effective at 2400 hours on DOS; however, for UCMJ purposes, separation is effective upon receipt of a discharge certificate issued under proper authority, a final accounting of pay, and completion of the clearing process established by the USAF or USSF.

3.9.4.  Notice of Separation may be:

3.9.4.1.  Actual, by giving a copy of the separation order, DD Form 214, *Certificate of Uniformed Service* or NGB Form 22, *Report of Separation and Record of Service* to the member.

3.9.4.2.  Constructive, when actual delivery cannot be made (see guidance in AFI 36-3202).

3.9.5.  Refusal to Accept Separation.  Tell members of the fact, date, and cause of separation.  Order them to leave the base.  Place separation documents with a letter giving the facts of the case in the Automated Records Management System (ARMS).

**3.10.  In Absentia Separation.**  The release or discharge of a member not under military control or not present to take part in the action.  As a rule, do not separate in absentia members absent without authority.  In most cases, once a member separates, the USAF or USSF loses jurisdiction for offenses committed before the discharge.  If trial by court-martial is appropriate, do not separate the member in absentia.  The GCMCA, or a higher authority, must approve in absentia discharge processing.  **(T-1)** See **Chapter 13** for additional ARC separation procedures.

3.10.1.  To process a member for discharge in absentia, secure prior authorization from the GCMCA (RegAF) or the HQ AFRC/CC (ARC). (**Note**:  The document signed by the separation authority must state that the member is absent without authority and that separation in absentia is authorized). **(T-1)**:

3.10.1.1.  Release a person from a void enlistment if the person is a deserter from another military service.

3.10.1.2. If the member requested discharge in lieu of trial by court-martial or acknowledged receipt of the notice of involuntary discharge processing before the unauthorized absence began, complete the processing IAW the provision under which the member was notified.  Coordinate with the servicing legal office prior to completing the discharge action.

3.10.1.3. Separate members in civil confinement, (while pending trial or post-conviction) if a punitive discharge would be authorized for the same or closely related offense under the UCMJ or state military code for ANG civilian conviction (see **paragraph 3.1.3.4**), or fraudulent enlistment.  Commanders should consult the servicing SJA when a member is in civilian confinement.  For more information, see **Section 7C** and **Section 7G**.

3.10.1.4. Process the separation if the GCMCA or ARC separation authority directs vacation, or cancelation of suspension of an approved administrative discharge IAW **Chapter 9**.  **(T-1)**

3.10.2.  Do not separate members in absentia if:

3.10.2.1.  Confined in a foreign penal institution; or

3.10.2.2.  Whereabouts are unknown and they are absent without authority from an overseas base.

3.10.3.  Reporting in absentia separations:

3.10.3.1.  DD Form 553, *Deserter/Absentee Wanted by the Armed Forces*, may have been sent out in connection with the member's absence.  In those cases, send DD Form 616, *Report of Return of Absentee*, to all those who received the DD Form 553.  The DD Form 616 shows that the member has been discharged and that the USAF or USSF does not want the member returned to military control.

3.10.3.2.  MPF career development section shall forward two copies of the discharge order to AFPC/DPMSSR or ARPC/DPTTS when a member who has been taken off the unit rolls is discharged in absentia.  **(T-2)** AFPC/DPMSSR or ARPC/DPTTS makes the requisite MilPDS entries to drop the member from the strength of the USAF or USSF.

3.10.4.  FSS or MPF career development section sends the separation documents to members by certified mail, return receipt requested:

3.10.4.1.  At the penal institution if they are in civil confinement.

3.10.4.2.  At the home of record if their whereabouts are unknown.  If the documents are returned unclaimed, FSS or MPF career development section sends them to ARMS.  For more information, see AFI 36-2608, *Military Personnel Records Systems.*

**3.11.  Separation Obtained by Fraud.**  Federal civilian courts (see guidance in Title 18 United States Code Section 287, *False, Fictitious or Fraudulent Claims,* and Title 10 United States Code Section 1001, *Statements or Entries Generally*) may prosecute a person who receives a separation from military service by misrepresentation, concealment, or fraud.  The decision to revoke a discharge is an administrative determination based on consideration of all the facts of the case.  If revocation is appropriate, send the case to the GCMCA of the last unit assigned or, if it no longer exists, to the AF District of Washington commander for Airmen and the Space Operations Command (SpOC) Commander for Guardians for final decision.

**3.12.  Handling Serious Misconduct While Separation is Pending.**

3.12.1.  The initiating commander must formally report, in writing, serious misconduct by the member to the separation authority immediately.  **(T-1)** This includes misconduct that occurs at any time after the member applies, or is recommended, for separation.

3.12.2.  The separation authority may withhold execution of a separation and, upon review of additional evidence, may withdraw approval of a voluntary or involuntary separation (see **paragraph 8.5**.).

3.12.3.  The squadron commander may then take appropriate action to address the misconduct (for example, issue a letter of counseling, a letter of admonishment, a letter of reprimand, offer nonjudicial punishment, prefer charges), depending on the facts of the case.  **Note**:  Separate members at ETS unless this publication otherwise authorizes their retention.

3.12.4.  Extension of Enlistment When Separation for Cause Is Pending.  Do not involuntarily retain a member beyond ETS for the processing of an administrative discharge action. However, an enlistment may be involuntarily or administratively extended for the purpose of allowing sufficient time for processing or conclusion of a trial or investigation for an alleged violation of the UCMJ or disposition of criminal proceedings by a foreign jurisdiction.  See **Attachment 16** and AFI 36-2606.

3.12.5. (ARC Only) Extension of Enlistment When Separation for Cause or Physical Disqualification Is Pending.  If a member's ETS will not afford sufficient time to complete involuntary administrative discharge action, the commander will:

3.12.5.1.  Provide the member the opportunity to voluntarily extend the enlistment for the time needed to complete the case. **(T-1)** They may request an extension of the enlistment under AFI 36-2606.

3.12.5.2.  (AFR Only) Tell the member that, if separation takes place on ETS while the involuntary discharge is pending, the member is not eligible to reenlist.  **(T-1)**

3.12.5.3.  Allow the member time to consult military legal counsel before deciding whether to extend the enlistment.  **(T-1)**

3.12.6.  Time spent in confinement is considered "lost time" or non-creditable service if the member is currently serving on an original enlistment, reenlistment, or a voluntary extension of an enlistment. The member's ETS date will be adjusted to reflect either the amount of time the member spent in confinement, or the amount of time from date of confinement until the member reached their ETS in confinement, thereby extending the member's ETS. (See DAFI 51-201).

**3.13.  Other Factors Affecting Eligibility:**

3.13.1. Indebtedness.  Indebtedness to the government or to a person does not bar the separation of a member who is otherwise eligible for separation.

3.13.2. Pending Involuntary Discharge.  A member is ineligible for voluntary separation prior to ETS while the involuntary action is pending.

*Section 3B—Guidelines for Characterizing Service or Describing Separation.*

**3.14. Authorized Types of Separation:**

3.14.1. Each part of this publication that authorizes separation tells whether to characterize service with the separation. Guidance on characterization is provided in DoDI 1332.14, Enclosure 4. Characterization of service may be:

3.14.1.1. Honorable. The quality of the member's service generally has met DAF standards of acceptable conduct and performance of duty or when a member's service is otherwise so meritorious that any other characterization would be inappropriate.

3.14.1.2. General (Under Honorable Conditions). If a member's service has been honest and faithful, this characterization is warranted when negative aspects of the member's conduct or performance of duty outweigh positive aspects of the member's military record.

3.14.1.3. Under Other Than Honorable Conditions (UOTHC). This is used when basing the reason for separation on a pattern of behavior or one or more acts or omissions that constitute a significant departure from the conduct expected of members. The member must have an opportunity for a hearing by an administrative discharge board or request discharge in lieu of trial by court-martial. **(T-0)** Examples of such behavior, acts, or omissions include, but are not limited to:

3.14.1.3.1. The use of force or violence to produce serious bodily injury or death.

3.14.1.3.2. Abuse of a special position of trust.

3.14.1.3.3. Disregard by a superior of customary superior - subordinate relationships.

3.14.1.3.4. Acts or omissions that endanger the security of the United States.

3.14.1.3.5. Acts or omissions that endanger the health and welfare of other members of the DAF.

3.14.1.3.6. Deliberate acts or omissions that seriously endanger the health and safety of other persons.

3.14.1.3.7. Rape, sexual assault, aggravated sexual contact, abusive sexual contact, rape of a child, sexual abuse of a child, sexual harassment, and attempts to commit these offenses. **Note**: Conduct in the civilian community of a member not on active duty or active duty for training may form the basis for characterization as UOTHC only if such conduct directly affects the performance of the member's military duties. Such conduct may form the basis of characterization as General only if such conduct has an adverse impact on the overall effectiveness of the service, including military morale and efficiency. Commanders should discuss with their supporting legal office. Opinions of the AF/JA provide clarification.

3.14.2. If the separation authority does not characterize service with the separation, describe the separation as:

3.14.2.1. Entry level separation.

3.14.2.2. Release from the custody and control of the USAF or USSF by reason of void enlistment; or

3.14.2.3.  Dropped from the rolls of the USAF or USSF.

3.14.3.  For more information about separation without characterizing service, see **paragraph 3.17**.

**3.15.  What to Consider When Characterizing Service:**

3.15.1.  Base this on the quality of the member's service as reflected in the military record of the current enlistment or period of service including personal conduct, performance of duty, and the reason for separation.  Determine the quality of service IAW standards of acceptable personal conduct and performance of duty for members.  Standards can be found in the UCMJ, DAF directives and instructions, and the time-honored customs and traditions of military service.  For more guidance, see **paragraph 3.19**.

3.15.2.  Commanders may consider conduct in the civilian community in characterizing service at separation.  Such conduct need not be subject to UCMJ jurisdiction.  Conduct in the civilian community that brings discredit on the DAF, or conduct prejudicial to good order and discipline, adversely affects the quality of a member's service.  The member may provide evidence to show that such conduct did not adversely affect the member's service.

3.15.3.  Usually, base service characterization on a pattern of behavior rather than an isolated incident.  Evaluate the frequency and seriousness of the disciplinary infractions and consider total service in the current enlistment.  Consider the member's age, length of service, grade, aptitude, physical and mental condition, and the standards of acceptable conduct and performance of duty for members.  There are circumstances, however, in which the conduct or performance of duty reflected by a single incident, particularly in a misconduct case, may provide the basis for characterizing the service.

**3.16.  Separation without Service Characterization:**

3.16.1.  Entry Level Separation (ELS).  Members are in entry level status during the first 365 days of continuous active military service or the first 365 days of continuous active military service following a break of more than 92 days of active service.  ARC Only:  For members of the ARC who have not completed 365 days of continuous active military service and are not on active duty, entry-level status begins upon enlistment in the ARC (including a period of assignment to a delayed entry program).  For example, a member may be at fault when offered BMT dates and refuses them all and a member may not be at fault when no seats are available for the member to attend.  Entry-level status ends 365 days after beginning a period of initial active duty training.  Thus, a member may be in entry-level status for more than 365 days after enlistment.  The date of notification is used to determine the member's status.  If the member is in entry level status when initiating the separation action, it should be described as an entry level separation unless:

3.16.1.1.  A service characterization of UOTHC is authorized under the reason for discharge and is warranted by circumstances of the case; or

3.16.1.2.  If the SecAF determines, that characterization as honorable is clearly warranted by unusual circumstances of personal conduct and performance of military duty, the separation authority forwards a recommendation for an honorable characterization to AFPC/DPMSSR, 550 C Street West, Suite 11, JBSA-Randolph AFB TX 78150-4713.  For

ARC personnel send to HQ ARPC/DPTTS, Buckley AFB, CO 80011-9502, via applicable electronic system for review and further processing.

3.16.1.3.  Use an honorable characterization if the reason for separation is:

3.16.1.3.1.  A change in military status IAW **Section 4A**.

3.16.1.3.2.  For the convenience of the government IAW **Section 13D**.

3.16.1.3.3.  For disability see guidance in AFI 36-3212; or

3.16.1.3.4.  Directed by the SecAF IAW **paragraph 3.2**.

3.16.2.  Release from the Custody and Control of the USAF or USSF.  Describe separation from a void enlistment as an order of release from the custody and control of the USAF or USSF.  A person released from a void enlistment does not receive a discharge or a service characterization.  For more information about void enlistments, see **Section 7C**.

3.16.3.  Dropping from the Rolls of the USAF or USSF.  This is a type of separation action that generally terminates service without a DD Form 214, or similar record of release from reserve service.  It is distinct from an action to drop a member from unit rolls but retain military status IAW **paragraph 8.46.7**.

3.16.3.1.  Regular Component Enlisted Members (see guidance in DoDI 1332.14 and Title 10 United States Code Section 1169, *Regular enlisted members: limitations on discharge*). On a case-by-case basis, AFPC/DPMSSR may authorize termination of an enlisted member's military status by dropping from the rolls of the USAF or USSF.  In these cases, do not use service characterization or another description of separation.  As a rule, AFPC/DPMSSR will authorize separation by dropping from the rolls of the USAF or USSF only if:

3.16.3.1.1.  A member has been away without official leave for 30 days or more and reported as a deserter or is confined by civilian authorities for at least 6 months.  **(T-1)**

3.16.3.1.2.  Return to military control would serve no useful purpose.  **(T-1)**

3.16.3.1.3.  Authorization has been coordinated with AFPC/JA **(T-1)**; and

3.16.3.1.4.  Authorization has been provided by the SecAF, or delegate (HAFMD 1-24, Addendum B, paragraph 6(c)).  **(T-1)**

3.16.3.2.  Reserve members guidance is provided in Title 10 United States Code Section 12684, *Reserves: Separation for Absence Without Authority or Sentence to Imprisonment*. See **paragraph 8.46**.

3.16.3.3.  Dropping from the Rolls of the USAF or USSF (see guidance in Title 5 United States Code Section 8319, *Removal of Members of the Uniformed Services from Rolls; Restoration; Reappointment* (Hiss Act)).  Any member may also be dropped from the rolls of the USAF or USSF based on conviction of espionage crimes specified in the Hiss Act. Presidential approval is needed.  **Note**: This paragraph is not normally used for members in civilian confinement if the USAF or USSF knows the member's whereabouts and sufficient evidence exists to involuntarily separate the member.

**3.17.  Period Considered in Characterizing Service.**  Except as provided in **paragraph 3.17.2**, determine characterization of service solely by the member's military record during the current

enlistment or period of service to which the separation pertains, plus any extensions of the enlistment prescribed by law or regulation, or made with the consent of the member.  In the event the basis for discharge occurred in a prior enlistment, that conduct cannot be considered for service characterization.  Service characterization remains limited to the member's military record during the current enlistment.  Do not consider:

3.17.1.  For prior service activities, including but not limited to records of conviction by court-martial, records of absence without leave, or commission of other offenses for which punishment was not imposed.  The separation authority may consider this information for retention or separation, but the record of the proceedings must show it was not used for characterization.  **(T-1)**

3.17.2.  Pre-service activities, except in a case based on fraudulent enlistment.  In fraudulent entry cases, consider evidence of pre-service misrepresentations about matters that would have precluded, postponed, or otherwise affected the member's eligibility for enlistment.

**3.18.  Limitations on Service Characterization.**  In some cases, evidence in the member's record used to show that a basis for discharge exists, may not be considered to determine how the member's service should be characterized.  If questions arise, contact the legal office for assistance.  If the separation authority mandates the issuance of a General (Under Honorable Conditions) or UOTHC discharge in a case containing such evidence, the instrument (or documentation) that directs discharge must state the other circumstances of the member's military record warranting such a service characterization.  **(T-1)** In addition to the restrictions imposed by this paragraph, the following limitations apply:

3.18.1.  Do not consider conduct that has been the subject of judicial proceedings resulting in an acquittal or action having the effect thereof on the issue of characterization except when:

3.18.1.1.  Such action is based on a judicial determination not going to the guilt or innocence of the respondent; or

3.18.1.2.  A state or foreign court conducted the judicial proceeding and the SecAF approves the discharge.

3.18.2.  Do not consider on the issue of characterization, conduct that has been the subject of a prior administrative board where the board entered an approved finding that the evidence did not sustain the factual allegations concerning the conduct, except:

3.18.2.1.  When there is subsequent conduct or performance forming the basis, in whole or in part, for a new proceeding.

3.18.2.2.  When there is new or newly discovered evidence that was not reasonably available at the time of the prior proceeding; or

3.18.2.3.  When the conduct is the subject of a rehearing ordered based on fraud or collusion.

3.18.3.  Do not discharge a member under other than honorable conditions if the sole basis for discharge is a serious offense that resulted in a conviction by a court-martial authorized to impose a punitive discharge, but the sentence did not include a punitive discharge, unless such characterization is approved by SAF/MRB.  The following courts-martial are not authorized to impose a punitive discharge, and are thus not limited by this paragraph:

3.18.3.1.  Summary courts-martial.

3.18.3.2.  Cases referred to a special court-martial by military judge alone pursuant to Article 16(c)(2)(A) of Title 10 United States Code Chapter 47, *Uniform Code of Military Justice*.

3.18.3.3.  Any court-martial where the military judge accepts a pretrial agreement or plea agreement provision whereby the accused and the convening authority agree the accused will not be sentenced to a punitive discharge. **(T-1)**

3.18.4.  If the provisions of AFI 44-121, *Alcohol and Drug Abuse Prevention and Treatment (ADAPT) Program*, are met, do not consider**: (T-1)**

3.18.4.1.  The member's voluntary self-identification for treatment for drug abuse. Disclosure is not voluntary if the member has previously been:

3.18.4.1.1.  Apprehended for drug involvement.  **(T-1)**

3.18.4.1.2.  Placed under investigation for drug abuse.  The determination of "placed under investigation" status is made on the circumstances of each individual case. Consult with appropriate medical legal consultant, if one is available, or other legal and/or investigative authorities regarding any questions.  **(T-1)**

3.18.4.1.3.  Ordered to give a random urine sample as part of the drug demand reduction program.  **(T-1)**

3.18.4.1.4.  Advised of a recommendation for administrative separation for drug abuse. **(T-1)**

3.18.4.1.5.  Involuntarily directed into treatment for drug abuse.  **(T-1)**

3.18.4.2.  The evidence the member voluntarily provides in connection with the self-identification.

3.18.5.  Do not use the results of mandatory drug testing for controlled substances if:

3.18.5.1.  The testing was conducted during a command-directed examination or command-directed referral of a specific member to determine the member's competency for duty and/or need for counseling, treatment; or other medical treatment when there is a reasonable suspicion of drug abuse; or

3.18.5.2.  During an examination of a specified member in conjunction with the member's participation in a drug treatment program.  **Note**:  Evidence obtained from an examination ordered for a valid medical purpose under Military Rules of Evidence 312 (f) may be considered on the issue of characterization.

3.18.6.  The limitations on service characterization in **paragraph 3.18** do not apply in the following matters:

3.18.6.1.  The introduction of such evidence to impeach or rebut evidence of drug abuse (or the lack thereof) first introduced by the respondent.

3.18.6.2.  The use of independently derived evidence, including the results of mandatory drug testing not specifically excluded from consideration and evidence of drug abuse after the member's first entry into the substance abuse treatment program.

**3.19.  How the Type of Separation Affects the Individual.**  It is recommended every member visit the US Department of Veterans Affairs (VA) benefit website (**https://www.benefits.va.gov/benefits/character_of_discharge.asp**) to view up-to-date information.  General information is listed below:

3.19.1.  Separations with service characterization of honorable or under honorable conditions (General) are usually treated the same with respect to benefits administered by the Veteran's Administration (VA) or other federal and state agencies. As a rule, either entitles the veteran to full rights and benefits.

3.19.2.  Discharge UOTHC may deprive a veteran of benefits based on military service.  The agency that administers the benefits makes a determination in each case.  With respect to administrative matters not governed by this directive and requiring a service characterization as Honorable or General (Under Honorable Conditions), treat an entry level separation as the required characterization.  This provision does not apply to administrative matters that expressly require different treatment of an entry level separation.

3.19.3.  Failure to complete at least 2 years of continuous active duty (AD) may make members ineligible for certain benefits.  These members include those who originally enlisted after 8 September 1980, who reentered AD after 16 October 1981, who had not previously completed 24 months of continuous AD or were discharged or released from AD under Title 10 United States Code Section 1171, *Regular Enlisted Members: Early Discharge.*  This restriction does not apply to members discharged for hardship, separated for physical disability under AFI 36-3212, or discharged under Title 10 United States Code Section 1171, within 3 months of their ETS.  For more information, see Title 38 United States Code Section 5303A, *Minimum Active duty Service Requirement.*

3.19.4.  Discharge for some reasons may affect entitlement to veteran's benefits without regard to the type of separation.  For example, Title 38 United States Code Section 5303, *Certain Bars to Benefits,* provides that a discharge UOTHC based wholly, or in part, on a continuous unauthorized absence that lasts 180 days or more is a conditional bar to eligibility for VA benefits.

**3.20.  Periodic Explanation of the Types of Separation:**

3.20.1.  Briefings required under Title 10 United States Code Section 937, Art. 137*, Articles to be Explained,* shall include:

3.20.1.1.  Types of punitive and administrative discharges; **(T-0)**

3.20.1.2.  Basis for characterizing service; **(T-0)**

3.20.1.3.  The benefits, disadvantages, and possible future effects of each type of service characterization; and **(T-0)**

3.20.1.4.  The denial of certain benefits to most persons who fail to complete at least 2 years of an original enlistment (38 USC § 5303A).  **(T-0)**

3.20.2.  A written fact sheet that may accompany the Article 137 briefing is at **Attachment 6**.

3.20.3.  A member's failure to receive or to understand this explanation is not considered a defense in, or a bar to, an administrative proceeding under this publication.

*Section 3C—Other Requirements and Procedures.*

**3.21.  Separation Documents.**  Members separated under this publication receive documents as prescribed by AFI 36-3202.

**3.22.  Reports Requiring Special Handling:**

3.22.1.  AFI 71-101, Volume 1, *Criminal Investigations Program,* provides guidance on reports furnished through the Office of Special Investigations (OSI) channels.

3.22.2.  Comply with DAFMAN 48-123 in handling or releasing reports of medical examinations and physical or psychiatric evaluations.

3.22.3.  Hold Defense Investigative Service reports that contain unfavorable information in the special security file for the member as required by DoDM 5200.02_AFMAN 16-1405, Section 5. 3.22.4. Refer to DoDM 5200.02_AFMAN 16-1405, Section 8, for guidance on protecting and safeguarding classified information that may become part of any discharge proceedings.

**3.23.  Aliens Seeking Naturalization and Naturalized Personnel Separated UOTHC.**

3.23.1.  Some alien members may qualify for naturalization based on their military service under the *Immigration and Nationality Act of 1952* (Title 8 United States Code Section 1440, *Naturalization Through Active duty Service in the Armed Forces During World War I, World War II, Korean Hostilities, Vietnam hostilities, or Other Periods of Military Hostilities*).  They need to serve at least 3 years.  **(T-1)** A combination of full-time active service and inactive reserve time meets this requirement.  Separation authorities ensure that aliens who want to qualify for naturalization are not voluntarily discharged even a few days short of 3 years.

3.23.2.  Individuals acquire US citizenship through service in the US armed forces during specified periods (8 USC § 1440).  Such individuals may have their citizenship revoked if they are separated UOTHC.  When a naturalized member is separated UOTHC, the servicing MPF notifies the Immigration and Customs Enforcement.  **(T-0)** On the memorandum reporting the separation, show the member's full name, date and place of separation, future home address, certificate of naturalization number, name under which naturalized (if different from name at separation), date and place of birth, date and place of naturalization, and service characterization.  **(T-0)**

**3.24.  Disposition of Correspondence.**  Comply with AFI 33-322 and AFI 36-2608.  Additional instructions for disposition of case files are found in **Table 3.1**.

**3.25.  High Level Inquiries.**  When AFPC, ARPC, or NGB asks for facts to use in replying to a high-level inquiry about a separation case, the servicing FSS/MPF responds by email.  Reply within 24 hours if the inquiry does not set another suspense.  If the first reply does not give the final action on the case, send another report when final action is taken.

**3.26.  Disposition of Cases Pending.**  Process cases to completion IAW the directives in effect at the time the processing starts.  Apply this rule to the implementation of this publication and subsequent changes to it.  The processing of a case starts when the FSS/MPF receives an application for voluntary discharge or when written notice of the proposed discharge has been given or mailed to the respondent.

**3.27. Special Processing for Members Diagnosed with or Reasonably Asserting Post-Traumatic Stress Disorder or Traumatic Brain Injury (DoDI 1332.14, Enclosure 9) (T-0).**

3.27.1.  Certain members facing discharge under **Chapter 7** of this publication are entitled to special processing.  Members are eligible for consideration for Disability Evaluation System (DES) processing (see guidance in AFI 36-3212) if they have deployed overseas in support of a contingency operation or have been sexually assaulted during the previous 24 months.  Additionally, these members must have been diagnosed as experiencing post-traumatic stress disorder (PTSD) or traumatic brain injury (TBI), or must reasonably allege, based on the member's service while deployed, or based on the sexual assault, the influence of such a medical condition.  **(T-0)** A physician, clinical psychologist, psychiatrist, licensed clinical social worker, or psychiatric advanced practice registered nurse will make the diagnosis.  **(T-0)**

3.27.2.  An enlisted member must receive a medical examination, IAW **paragraph 8.3** and **paragraph 8.9.3** of this publication, to assess whether the effects of PTSD or TBI constitute matters in extenuation that relate to the basis for administrative separation, if the member meets all the following criteria **(T-0)**:

3.27.2.1.  The enlisted member is being administratively separated under a characterization that is not Honorable or General (Under Honorable Conditions).

3.27.2.2.  The enlisted member was deployed overseas to a contingency operation or sexually assaulted during the previous 24 months.

3.27.2.3.  The enlisted member has been diagnosed by a physician, clinical psychologist, psychiatrist, licensed clinical social worker, or psychiatric advanced practice registered nurse as experiencing PTSD or TBI, or reasonably alleges the influence of PTSD or TBI based on deployed service to a contingency operation or based on a sexual assault that occurred during the previous 24 months.  **Note**:  In a case involving PTSD, the medical examination shall be performed by a physician, clinical psychologist, psychiatrist, licensed clinical social worker, or psychiatric advanced practice registered nurse.  **(T-0)** In a case involving TBI, the medical examination must be performed by a physician, clinical psychologist, psychiatrist, or other health care professional, as appropriate; and **(T-0)**

3.27.2.4.  The enlisted member is not being separated under a sentence of a court-martial, or other proceeding conducted pursuant to the UCMJ.  **Note**:  An administrative separation in lieu of court-martial under **Chapter 6** of this publication does not constitute "a court-martial, or other proceeding conducted pursuant to the UCMJ" for purposes of this paragraph.  Therefore, compliance with **paragraph 3.29** is required for discharges processed pursuant to **Chapter 6** of this publication.  **(T-0)**

**3.28. Special Processing for Enlisted Members Receiving Pre-Separation Medical Examinations.**  (IAW **paragraph 3.30** of this publication.)

3.28.1.  A member will not be separated until the result of the medical examination has been reviewed by appropriate authorities responsible for evaluating, reviewing, and approving the separation action, to include (if applicable):  the initiating commander, administrative discharge board, SPCMCA, GCMCA, separation authority, TAG or CG (for ANG), Air Force Review Boards Agency and/or SecAF.  **(T-0)**

3.28.2. Although specific comments are not required; the commander and other reviewing authorities identified in this paragraph must indicate the medical examination was reviewed. **(T-1)**

3.28.3. This provision does not change any other processing requirements of this publication to include, but not limited to, dual action processing, service retirement eligibility, and members with lengthy service or sanctuary under **Chapter 8**.

**3.29. Special Processing for Members Who Have Made an Unrestricted Report of a Sexual Assault.** An enlisted member who made an unrestricted report of sexual assault and who is recommended for separation from the USAF or USSF under **Chapter 7** of this publication and who is within 1 year of final disposition of their sexual assault allegation has the right to request a general officer review of the circumstances and grounds for the involuntary separation. **Note**: For purposes of this requirement, the general officer review, if requested, is conducted by the GCMCA or, if the GCMCA is not a general officer, the first general officer in the member's chain of command. For ANG, TAG or CG conducts the review.

3.29.1. Notification Requirement. An enlisted member entitled to GCMCA review under **paragraph 3.30**, is notified of the right to request the review in the separation letter of notification.

3.29.2. Request for GCMCA review. If entitled under **paragraph 3.29**, an enlisted member may request review by the GCMCA of the recommendation for discharge in response to the letter of notification or at any time prior to the approval of the discharge by the applicable separation authority. The request must be in writing. **(T-1)**

3.29.2.1. A qualified member who submits a timely request may not be separated until the GCMCA conducting the review concurs with the circumstances of and grounds for the involuntary separation.

3.29.2.2. Requests submitted after final separation action is complete will not be acted upon for GCMCA review, but the separated member may apply to the Air Force Discharge Review Board, under DAFI 36-2023. **(T-1)** If the application is for review of a discharge more than 15 years before the request date, or if the Air Force Discharge Review Board has already rendered a decision, the separated member may apply to the Air Force Board for Correction of Military Records (AFBCMR), under DAFI 36-2603, *Air Force Board for Correction of Military Records (AFBCMR),* for final administrative review. **(T-1)**

3.29.2.3. Notwithstanding any other provision of this publication that requires GCMCA review of a separation action, separation actions under **paragraph 3.29** will not be reviewed by the GCMCA unless the member submits a written request for review prior to the final separation action. **(T-1)**

3.29.3. Review and Recommendation by Initiating Commander.

3.29.3.1. Per guidance provided in DAFI 90-6001, *Sexual Assault Prevention and Response (SAPR) Program*, paragraph 6.6.2, a commander who is aware, or is made aware, that the member is alleged to have been the victim of a sexual assault must notify the separation authority that the discharge proceeding involves the victim of a sexual assault. **(T-1)**

3.29.3.1.1.  The commander must include a statement indicating that the member has reported being a past victim of sexual assault in the recommendation for discharge memorandum (**Figure 8.4**. or **Attachment 8** for ARC personnel).  **(T-1)**

3.29.3.1.2.  The commander must also include a statement indicating that the member is qualified for GCMCA review under **paragraph 3.29**.  **(T-1)**

3.29.3.1.3.  If the member qualifies for review under **paragraph 3.29** and requests review, the following additional information is included in the discharge recommendation (**Figure 8.4**. or **Attachment 8** for ARC personnel):

3.29.3.1.4.  The commander recommending discharge must provide sufficient information to the separation authority concerning the alleged assault and the respondent's status to ensure a full and fair consideration of the member's military service and particular situation.  **(T-1)** As necessary, the commander may include information by reference with corresponding attachments.

3.29.3.2.  Commanders should consult with OSI and the servicing legal office for guidance on the sufficient level of information to provide to the separation authority.

3.29.4.  GCMCA review.

3.29.4.1.  When a member requests review, the GCMCA must review the circumstances of, and grounds for, the proposed involuntary separation.  **(T-1)**

3.29.4.2.  If the GCMCA determines the recommendation for discharge was made in retaliation for the report of sexual assault, the GCMCA will terminate the discharge.  **(T-1)** In such cases, the GCMCA may refer the retaliation determination to the appropriate inspector general for additional consideration and possible investigation.

3.29.4.3.  If the GCMCA determines the recommendation for discharge was not made in retaliation for the report of sexual assault, the GCMCA may execute the discharge at the GCMCA's level, if there is sufficient evidence to support separation and separation is warranted; terminate the discharge at the GCMCA's level; or return the discharge to the SPCMCA's level for a discharge decision.  The GCMCA must indicate that the recommendation for discharge was not made in retaliation for the report of sexual assault.  **(T-1)**

3.29.4.4.  In any case where the GCMCA terminates a discharge based solely upon a finding that the recommendation for discharge was made in retaliation for the report of sexual assault, the GCMCA can refer the case to an impartial commander for a new determination of whether separation should be initiated based on the facts of the case independent of the report of sexual assault.  Such referral is permitted regardless of the restrictions on separation in cases resulting in retention set forth in **paragraph 7.4.3**.

**3.30. Special Processing for Discharge of Members for Personality Disorder or Other Mental Disorder Not Constituting a Physical Disability (paragraph 7.11) when the member has served or is currently serving in an imminent danger pay area or when a member has filed an unrestricted report of sexual assault or who has self-disclosed that they are a victim**

**of a sex-related offense, an intimate partner violence-related offense, or a spousal abuse offense during service.**

3.30.1.  Enlisted members who have served or are currently serving in an imminent danger pay area or who have filed an unrestricted report of sexual assault, a diagnosis of a personality disorder, or other mental disorder not constituting a physical disability will:

3.30.1.1.  Be corroborated by a peer or higher-level mental health professional. **(T-1)**

3.30.1.2.  Be endorsed by the AF Surgeon General (AF/SG), Air Force Reserve Surgeon General (HQ AFRC/SG) or Air National Guard Surgeon General (NGB/SG) (or designee). **(T-1)**; and *3.30.1.3. Address PTSD and other mental illness co-morbidity.  **Note**: Separation under **paragraph 7.11** will not be initiated if there is a diagnosis of service-related PTSD, unless the member is subsequently found fit for duty under the DES (see guidance in AFI 36-3212).

3.30.2.  Procedure.

3.30.2.1.  The evaluating mental health professional (see **Attachment 1** for definition) will consult with the enlisted member's commander to determine if separation under this provision is appropriate.  **(T-1)**

3.30.2.2.  When, in the opinion of the enlisted member's commander and evaluating mental health professional, separation under **paragraph 7.11** is appropriate, the local military treatment facility (MTF) will forward the diagnosis with supporting documentation through appropriate channels for corroboration by a peer or higher-level mental health professional and indorsement from the AF/SG (or designee).  **(T-0)** (**Note**:  HQ AFRC/SGO will review mental health cases prior to discharge for the AFR, and NGB/SG will review cases for ANG members.)

3.30.2.3.  The MTF must forward the documentation to the AF Medical Operations Agency to obtain AF/SG indorsement. **(T-1)** In such cases where the AF/SG does not concur in the diagnosis of a personality disorder, no further action will be taken to separate the enlisted member under **paragraph 7.11**.  **(T-1)** NGB/SG handles all ANG cases.

3.30.2.4.  Upon receipt of the AF/SGO, HQ AFRC/SGO or NGB/SG review concurring in the diagnosis of a personality disorder or other mental disorder not constituting a physical disability, the MTF will notify the enlisted member's commander of the decision.  **(T-3)** If all requirements of **paragraph 7.11** have been met, separation processing is initiated IAW **Chapter 8** of this publication.  **(T-1)**

**DAFI36-3211  24 JUNE 2022**                                                                 **67**

**Table 3.1.  Disposition of Correspondence.**

|   | If final action results in | Then |
|---|---|---|
| A | a voluntary separation. | The original to AFPC (RegAF or USSF) or ARPC (AFR) to be placed in ARMS. |
| B | an involuntary discharge. | 1) The original to AFPC (RegAF or USSF) or ARPC (AFR) to be placed in ARMS. 2) Hold a copy of the file in the organizational file of the convening authority when board hearing or waiver is involved. 3) Give the member a copy of the case file on request. (See **Note 2**) |
| C | disapproval of request for voluntary separation. | Return the application to the member through the squadron commander. |
| D | disapproval of recommendation for involuntary discharge. | Return the recommendation to the squadron commander when board entitlement is not involved. |
| E | an approved discharge with probation and rehabilitation. | 1) The original to AFPC (RegAF or USSF) or ARPC (AFR) to be placed in ARMS. 2) Give the member a copy of the case file on request. (See **Note 2**) |
| F | an exception of discharge delayed pending release from civil confinement. | 1) The original to AFPC (RegAF or USSF) or ARPC (AFR) to be placed in ARMS. 2) Keep a copy of the case file in the MPF unit the discharge is executed. |
| G | an approved waiver of discharge (see **Note 1**). | 1) Give the member a copy of the case file on request. (See **Note 2**) 2) Hold a copy in ARMS until the member is discharged or reenlists. |

**Notes**:
1.  A copy of approved waiver of discharge for fraudulent entry (excludes waivers for concealment of prior service) is retained in field records group permanently IAW the Air Force Records Disposition Schedule.
2.  Ensure compliance with Title 5 United States Code Section 552a, *Records Maintained on Individuals* (hereafter referred to as "The Privacy Act of 1974").  The legal review must not be provided to the member as it is protected by attorney/client privilege and work-product.  Any evidence contained within the case file also must be appropriately redacted of Personally Identifiable Information (PII) before being released to the member.

## Chapter 4

## REQUIRED SEPARATIONS

*Section 4A—Expiration of Term of Service (ETS).*

**4.1. Eligibility for Separation.**  Members are entitled to separation at their ETS unless there is a specific authority for their retention.  ETS occurs when a member completes a regular component or ARC enlistment, or the term of active service required by the active duty orders for members of the ARC.  The USAF and USSF sets terms of service according to guidance in DoDI 1332.14, DAFMAN 36-2032, and AFI 36-2606, Chapter 5, set terms of enlistment.

4.1.1. As a rule, separate members on the date ETS occurs, but their separation is not automatic.  They are members of the USAF or USSF until they are separated by administrative action. 4.1.2. Retain members only when their enlistments are extended by law or when one of the conditions described in **paragraph 4.3** through **paragraph 4.5** exists.  **Paragraph 4.6** through **paragraph 4.8** describe other conditions where an ETS can be adjusted with the member's consent.

**4.2. ETS Separation.**  Base separation authorities (BSA) separate members at ETS under this paragraph.  For ANG, base initiates the separation action to be sent to ARPC.  The service of a member separated at ETS is characterized as honorable.  To find whether to discharge, release or transfer a member who has an unfulfilled MSO, see **paragraph 3.5**.  To find when an ETS separation may take place before ETS, see **paragraph 4.2.1** and **paragraph 4.2.2**.  See **Table 4.1** for an itemized list of reasons and authority for required separations.

4.2.1.  A separation is an ETS separation if the member is within 30 days of ETS and is serving overseas or is a non-continental US resident serving outside the home state, territory, or possession.  For example, a person who is a resident of Alaska, Hawaii, or Guam serving in the continental United States (CONUS) is considered to be serving overseas.  **Exception**: If the member has been approved for involuntary separation or separation in lieu of court-martial, the separation is not considered an ETS separation.

4.2.2.  A member of the regular component may ask for separation on the last workday before ETS if the ETS falls on Saturday, Sunday, or a holiday.  This workday is the effective DOS. Place the request for early separation in ARMS for permanent retention.  Separate members who do not ask for ETS separation on the last workday before their ETS on the ETS date.

4.2.3.  A member's ETS will not be extended involuntarily to process an administrative separation under **Chapter 7** of this publication.  **(T-1)**

**4.3. Retention to Make Good Time Lost.**  Members who are unable to perform duty for 1 day or more for a reason listed in Title 10 United States Code Section 972, *Members: Effect of Time Lost*, are liable to make up the time lost. **(T-0)** If they want to reenlist, they first make up the time lost.  For more information, see AFI 36-2606.  **(T-0)**

4.3.1.  For members who are ineligible, or who do not intend to reenlist, separation at the original ETS may be in the best interest of the USAF or USSF.

4.3.2.  As a rule, commanders should start action to waive the liability to make good the time lost at least 30 days before the original ETS.  The separation authority may waive liability to

make good 180 days or less.  AFPC/DPMSSR may waive liability of more than 180 days.  For example, if a commander recommends a waiver in the case of a member who had 230 days of time lost, the separation authority may:

4.3.2.1.  Waive 180 days or less and require the member to make up the remainder; or

4.3.2.2.  Waive 180 days and refer the case to AFPC/DPMSSR with a recommendation for waiver of all or part of the remainder.  **Note**:  Members are not liable to make good time lost for periods of involuntary retention under **paragraph 3.7** and **paragraph 4.4**.

**4.4.  Retention for Action by Court-Martial.**  For information about how incomplete court-martial action affects separation from the regular component, see **paragraph 3.7**.  These restrictions also apply to ETS separations.  This paragraph authorizes the retention of a member beyond ETS when an investigation or action is commenced with a view to trying such member by court-martial.

4.4.1.  The servicing legal office determines what type of appropriate action is sufficient to authorize retention pending the referral of charges.  The servicing legal office will notify AFPC/DPMSSR in writing to involuntarily extend the member's ETS.  **(T-1)**

4.4.2.  Members who have an unspecified DOS do not require a hold memorandum.  Once a DOS is established (i.e., in conjunction with a high year of tenure (HYT)) a hold memorandum is required.  For ANG members in a Title 10 status, the servicing legal office will work with the home station FSS to involuntarily extend the member as needed.  **(T-1)**

4.4.3.  Verbally notify when time does not permit written notification, but written confirmation of the verbal notice shall be provided within 5 workdays.  **(T-1)**

4.4.4.  AFPC/DPMSSR will generally only involuntarily extend the member's ETS/DOS in the MilPDS until such time as the member's duty status is changed to other than present for duty.  **(T-1)**

4.4.5.  A member's ETS/DOS is not further adjusted once placed in a confinement status. **(T-1)** Upon release from confinement, continue to extend the member's ETS/DOS until the conditions set forth in **paragraph 3.7** are satisfied.

4.4.6.  ARC members on Title 10 orders are subject to the provisions of Title 10 United States Code Section 802, *Article 2, Persons Subject to This Chapter*, and Title 10 United States Code Section 1168, *Discharge or Release from Active Duty: Limitations*, and may be either retained on active duty pending disposition of offenses or be released to reserve status and recalled as necessary for preferral of charges, pretrial investigation, and trial by court-martial.  Prior consultation with the member's reserve component chain of command through judge advocate channels is required.  Refer to DAFI 51-201 for jurisdiction over ARC members while in active status.

4.4.6.1.  Prior to initiating continuation or release from active duty for ANG members subject to court-martial proceedings, coordinate with the Commander, 201st Mission Support Squadron, 3501 Fetchet Avenue, Joint Base Andrews, MD 20762-5157 (COM 1-240-612-8001 or DSN 612-8001).

4.4.6.2.  For AFR members, coordinate involuntary discharge actions with HQ AFRC/A1K, 155 Richard Ray Blvd, Robins AFB, GA 31098-1635 (COM 1-478-327-1243 or DSN 497-1243).

4.4.7.  Release from an Involuntary Retention for Action by Court-Martial.

4.4.7.1.  Base legal office advises AFPC/DPMSSR when a member's retention on active duty is no longer required.  Memorandums are forwarded by the base legal office to AFPC/DPMSSR immediately upon decision not to pursue trial by court-martial or, if charges have been preferred, the conditions set forth in **paragraph 3.7** are satisfied.  The member may not continue to be involuntarily held past ETS/DOS solely for the purposes of completing an administrative action.  The memorandum must state the reason the member is no longer required to be retained on active duty.  **(T-1)**

4.4.7.2.  Set the member's DOS for no more than 30 days from the date of release from hold.

**4.5.  Retention to Complete Separation Processing.** (Does not apply to the ANG) Retain members beyond ETS for the convenience of the government to complete separation processing if they:

4.5.1.  Are enroute to the place of separation.

4.5.2.  Decline to reenlist as scheduled or complete an extension of their current enlistment.  Members scheduled for reenlistment within 7 calendar days of their DOS sign a statement agreeing to be retained beyond DOS if they do not reenlist.  See AFI 36-2606 for more information.  Retain for separation processing only.

**4.6.  Retention for Medical Treatment or Evaluation.**  Retain members beyond ETS with their consent (medical hold) for evaluation for possible disability processing when they are not medically qualified for retirement or separation.  The medical facility sends the request to the Air Force Personnel Center Medical Career Management Division (AFPC/DPMN).  AFPC/DPMN (or NGB/SG for ANG) approves medical hold (see guidance provided in AFMAN 41-210).

4.6.1.  For ARC members retained in Title 10 status with an approved medical hold, the physical evaluation board liaison officer coordinates action with the member's component SG's office and FSS/MPF.

4.6.2.  Refer to AFI 36-2606 for authorized extension procedures.  Do not retain members beyond ETS without their consent.  **(T-2)** Exception:  When members are physically incapable of expressing consent and have no guardian to act for them, they may be retained without their consent.  Make sure members (or their guardians) understand the advantages and disadvantages of retention for evaluation for possible disability separation.  It is the responsibility of the member's chain of command to ensure the member understands the implications of not extending for situations like these.  See **Figure 4.1** and **Section 4A**.

4.6.3.  File the statement in ARMS.  Make a written report of the circumstances if the member or guardian does not sign one of the statements.  Separate the member on ETS if retention for evaluation for possible disability processing has not been authorized.

4.6.4.  Comply with DAFMAN 48-123 to arrange for post separation treatment of a member who has been hospitalized.

**4.7.  Members Awaiting Disposition by Foreign Courts.**  With their consent, retain members beyond ETS while they wait for disposition of criminal charges by civilian authorities in a foreign country.  Commanders and personnel officers should start their action at least 1 month before the member's ETS or as soon as they have information showing that civilian court disposition may not

be complete by ETS.  The commander informs the FSS/MPF of the facts of the case and the need for retention. See **Figure 4.3** for a sample format for requesting pending foreign court disposition.

4.7.1.  If a member's ETS passes while the civil charges are still pending:

4.7.1.1.  The squadron commander, through the servicing legal office reports the facts of the case to AF/JA Operations and International Law Directorate (AF/JAO), and AFPC/DPMSSR with an informational copy to the affected MAJCOM's/FLDCOM's information addressees.

4.7.1.2.  The commander tells the foreign officials the member's ETS is near and asks them to give the member permission to leave the country permanently.

4.7.1.3.  If the foreign officials do not grant such permission, try to get the member to ask for retention.  See **Figure 4.3**.  Be sure the member understands how their status before the court may be affected by separation from the USAF or USSF in a foreign country.  The commander makes sure the member is given a chance to consult military counsel before signing either the request for retention or the statement declining to do so.  Place the member's statement in ARMS for permanent retention.

4.7.2. The squadron commander notifies AF/JAO, AFPC/DPMSSR, and the affected MAJCOMs/FLDCOMs if:

4.7.2.1.  The member refuses to request retention; and

4.7.2.2.  The foreign authorities do not consent to the member's departure while charges are pending.

4.7.3.  For ANG members, coordinate all actions with the Commander, 201st Mission Support Squadron, Joint Base Andrews, MD 20762 (COM 1-240-612-8001 or DSN 612-8001).

4.7.4.  For AFR members, call the TFSC (Commercial 1-800-525-0102 or DSN 665-0102) to coordinate all actions with the ARPC, Separations Branch (ARPC/DPTSA).

**4.8.  Extension of Enlistment When Discharge for Cause is Pending.**  Do not retain members beyond ETS involuntarily for completion of involuntary discharge processing.  They may request an extension of the enlistment under DAFI 36-2606, DAFI 36-3212, or DAFMAN 36-2032.  If ETS is near and the involuntary action cannot be completed by ETS, the following must happen:

4.8.1.  The Commander will give the member a chance to voluntarily extend the enlistment for the time needed to complete the case.  **(T-1)**

4.8.2.  The Commander will tell the member that if separation takes place on ETS while the involuntary discharge is pending, the member is not eligible to reenlist.  **(T-1)**

4.8.3.  The Commander will allow the member time to consult military legal counsel before deciding whether to extend the enlistment.  **(T-1)**

4.8.4.  However, if the member declines to extend, the member will be separated, on ETS. **(T-1)** Note:  Members who are entitled to and request lengthy service or sanctuary consideration and who decline to extend their enlistment for lengthy service or sanctuary consideration processing, constructively waive further processing and are separated pursuant to the approved involuntary discharge at ETS.

*Section 4B—Changes in Service Obligation.*

**4.9. Determining Eligibility.** Eligibility for separation under this section is based on a change, or a proposed change, in a member's obligation to serve the full term of an enlistment contract.

4.9.1. A member may be separated for the following reasons:

4.9.1.1. General demobilization or reduction in authorized strength.

4.9.1.2. Early separation of personnel under a program established by the SecAF.

4.9.1.3. Acceptance of a regular component or ARC commission or appointment, or acceptance into a program leading to such commission or appointment in any branch of the Military Services.

4.9.1.4. Immediate enlistment or reenlistment.

4.9.2. AFPC/DPMSSR, NGB, and ARPC will provide separate guidance when changes in service obligations are authorized by the SecAF. **(T-1)** Refer to **paragraph 4.10** through **paragraph 4.19** for specific guidance on other authorized changes in service obligation.

**4.10. Type of Separation.** Characterize the service of members separated for a reason in **paragraph 4.11** through **paragraph 4.18** as honorable unless an entry level separation is needed IAW **paragraph 3.17**. Separation from a void enlistment under **paragraph 4.18** is by order of release from custody and control of the USAF or USSF. Describe separation under **paragraph 4.19** for minors as an entry level separation.

**4.11. Completion of Officer Training.** Discharge graduates of officer training contingent on their acceptance of appointment as commissioned officers. Make the discharge effective the day before they take the oath of office as USAF or USSF officers. Do not deliver the discharge documents until after the oath of office has been executed. See **Table 4.1** for an itemized list of reasons and authority for required separations. For more information about these separations, see DAFMAN 36-2032.

**4.12. Immediate Reenlistment.** Discharge members contingent on their reenlistment without a break in service. Make the discharge effective the day before the member reenlists. **(T-1)**

**4.13. Service with an ANG or an AFR Unit (PALACE CHASE).** Members may ask for separation from the regular component to serve with an ANG or an AFR unit. **Part 4** of this publication gives the eligibility criteria and procedures for selection. Separate members whose applications are approved under this provision.

**4.14. Entering an Air Force Reserve Officer Training Corps (AFROTC) Program.** Members are eligible for discharge if they are accepted for the AFROTC Airman Education and Commissioning Program or the AFROTC Professional Officer Course Early Release Program. Discharge members contingent on their enlistment in the AFR Obligated Reserve Section to enter the AFROTC Professional Officer Course program in contract status. DAFMAN 36-2032 governs these programs. Members must show evidence of acceptance for a specific AFROTC program. **(T-1)** Discharge from regular component is no earlier than 30 calendar days before class start date at the educational institution the member attends. Make the discharge effective the day before the member enlists in the AFR Obligated Reserve Section. Do not deliver separation documents until after the enlistment in the AFR Obligated Reserve Section is complete. **Note**: For entering an officer training program with another armed service, see **paragraph 5.5**.

**4.15. Insufficient Retainability for Permanent Change of Station (PCS).** Separate prior to ETS members who are considered for PCS in a mandatory move status such as during base closure, unit deactivation, or when it is determined to be in the best interest of the USAF or USSF and are found ineligible because they do not have 12 months retainability.  Use this provision if they have fewer than 12 months retainability and refuse to obtain the retainability or are ineligible to obtain retainability for a PCS.  If there are less than 30 days remaining until ETS, see **paragraph 4.2**. Members who have their ETS/DOS involuntarily adjusted due to high year of tenure or denial of reenlistment and who are otherwise eligible for separation pay (**Chapter 11**) are given an appropriate separation program designator that ensures payment.  This does not apply to the ANG.

**4.16. Early Separation of Members.** USAF Military Policy Division (AF/A1PP), USSF Policy Division (SF/S1P), NGB/A1, or AF/REP may approve or direct the early separation of members. AFPC/DPMSSR announces the programs and gives the eligibility criteria and processing instructions. These separations include:

4.16.1.  General demobilization, reduction in strength, or by an order applicable to all the members of a group specified in the order.

4.16.2.  The early separation of members under various programs and circumstances.

4.16.3.  Other reasons approved by the SecAF.  See **Table 4.1** for an itemized list of reasons and authority for required separations.

**4.17. Elimination from the United States Air Force Academy (USAFA) Preparatory School.** For more information about elimination from the USAFA preparatory school, see DAFMAN 36-2032.

**4.18. Release from Void Enlistment.**  A person whose status or condition barred the creation of a valid enlistment may be found to be serving in a void enlistment if the condition still exists.  This includes, but is not limited to, persons diagnosed with a disqualifying psychiatric disorder, minors still under the legal age for enlistment, or deserters from another service.  For more information, see **Section 7C**. Describe separation under this paragraph as a release from custody and control of the USAF or USSF.

4.18.1.  The enlistment of a person who is under 17 years old is a nullity and is void from its inception.  The base separation authority orders the release of a person under age 17 as soon as it is practical to do so after the facts of the case are known.  The parent or guardian does not need to apply for release.  For information about how to verify the member's age, see **paragraph 4.19.3.1**. If the member was under age 17 at the time of enlistment but is 17 years old at the time the facts become known, discharge for minor may be requested.  For more information, see **paragraph 4.19**.

4.18.2.  When the evidence shows an enlistment may be void for a reason other than the member being a minor, send the case to AFPC/DPMSSR or ARPC/DPTTS for decision. Include a full report of the facts and circumstances.

4.18.2.1.  Act promptly in these cases to avoid retaining a person whose military status is void.  The finding of a court-martial that it lacks jurisdiction because of a defective enlistment does not void the enlistment.

4.18.2.2.  Administrative action is necessary to find whether a specific enlistment is void, voidable, or valid.  The evidence needed in these cases varies with the conditions involved.

It shows how the creation of a valid enlistment was barred at the time it was attempted. There is also evidence to show the condition is still present. For example, when a psychiatric disorder is an issue, the medical statements must address the person's mental competency at the present and at the time of enlistment. **(T-1)**

4.18.3. Neither indebtedness to the government nor civil confinement bars the release required under this provision. In absentia processing and release is authorized. For more information, see **paragraph 3.10**.

**4.19. Separation for being a Minor.**

4.19.1. A person under the age of 17 is serving in a void enlistment and is separated IAW **paragraph 4.18**.

4.19.2. A member who is 17 years old is eligible for separation IAW this paragraph if the parent or guardian did not give written consent to the enlistment and applies for the member's discharge within 90 days of the enlistment.

4.19.3. An application for separation under this paragraph includes evidence:

4.19.3.1. Proving Age. This proof may be:

4.19.3.1.1. An authenticated copy of a birth certificate;

4.19.3.1.2. A statement from the State Registrar of Vital Statistics or a similar official charged with the responsibility for such records; or

4.19.3.1.3. An affidavit of the parent or legal guardian. The affidavit tells why the official record of birth cannot be obtained. It is accompanied by a certified or authenticated record from the first school the member attended and shows the date of birth or age at the time of admission.

4.19.3.2. Of Parental Custody. If the parents are legally separated or divorced, only the parent having legal custody or control may ask for separation; or

4.19.3.3. Of Guardianship. A guardian's application for the separation of a member includes proof of guardianship. Usually, recognize only a guardian who has been officially appointed. However, in some cases, a person who supported a minor and acted as a guardian for some years after the parents' deaths need not have been officially appointed. Support this type of claim to guardianship by a notarized affidavit. Consult the servicing legal office to ensure the guardianship complies with all legal requirements.

4.19.3.4. Identifying a member who enlisted under an assumed name, as compared to the person named on the record of birth. **Note**: Look carefully at birth certificates to make sure there are no alterations other than those made officially.

4.19.4. If the conditions of **paragraph 4.19.2** and **paragraph 4.19.3** are met, process the member for discharge following the procedures in **paragraph 8.8**. If the separation authority finds the requirements of **paragraph 4.19.1**. or **paragraph 4.19.2** are met, discharge the member except when retaining the member for the purposes of trial by court-martial. For more information about pending UCMJ action, see **paragraph 3.7**.

4.19.5.  Do not separate minors in the overseas area.  Exceptions may be authorized if the place of entry was an overseas area, and the separation takes place in the same area.  For information about discharge in absentia, see **paragraph 3.10**.

**Table 4.1.  Reasons and Authority for Required Separation.**

| LINE | A | B |
| :---: | --- | :---: |
| | **Reason** | **Authorizing Paragraph** |
| 1 | Expiration of term of service | **4.2** |
| 2 | Completion of required service | |
| 3 | Completion of officer training | **4.11** |
| 4 | Immediate reenlistment or enlistment of required service | **4.12** |
| 5 | Service with ANG or AFR unit (PALACE CHASE) | **4.13** |
| 6 | Entering an AFROTC Program | **4.14** |
| 7 | Insufficient retainability for PCS | **4.15** |
| 8 | Early Separation of Members | **4.16** |
| 9 | Elimination from USAFA Preparatory School | **4.17** |
| 10 | Release from Void Enlistment | **4.18** |
| 11 | Minor | **4.19** |

**Note**:  Members in entry level status will be given an entry level separation.  Members not in entry level status will be given an honorable separation.  **(T-1)** Separation from a void enlistment is described as a release from the custody and control of the USAF or USSF.

**Figure 4.1.  Sample Format for Request for Retention for Medical Treatment or Evaluation.**

<div style="border:1px solid">

(Appropriate Letterhead)

(Date)


MEMORANDUM FOR  (Force Support Squadron) or (Military Personnel Flight / Career Enhancements) (squadron commander) IN TURN

FROM: (member)

SUBJECT:  Request for Retention Beyond Expiration of Term of Service

I want to be retained in the active military service beyond, the date my term of service expires, for medical evaluation for possible disability processing.  I understand I will be subject to the obligations of military service in the same manner and to the same extent as if my (enlistment)

</div>

(period of required service) had not expired.

(Signature)
(Name, grade), USAF/USSF (unit of assignment)

OR

I, (full name), as the guardian of (full name), want (him) (her) to be retained in the active military service beyond the date (his) (her) term of service expires for medical evaluation for possible disability processing.  I understand that retention makes (him) (her) subject to the obligations of military service in the same manner and to the same extent as if (his) (her) term of service had not expired.

(Signature) (Name)

**Figure 4.2.  Sample Format for Request for Separation without Retention for Medical Treatment or Evaluation.**

(Appropriate Letterhead)

(Date)

MEMORANDUM FOR:  (Force Support Squadron) or (Military Personnel Flight / Career Enhancements) (squadron commander) IN TURN

FROM: (member)

SUBJECT:  Request for Separation at Expiration of Term of Service

I want to be separated on the date my (enlistment) (period of required service) expires.  I do not want to be retained in the active military service beyond that time for medical evaluation. The advantages of retention for evaluation and possible separation or retirement for disability have been explained to me.  Furthermore, I have been briefed that I may be forfeiting significant monetary compensation and/or a possible medical retirement by declining to be placed on Medical Hold to extend my Active duty Service in order to complete military disability evaluation processing.

(Signature)
(Name, grade,) USAF/USSF
(Unit of assignment)

OR

I, (full name), as the guardian of, (full name), do not want (him) (her) to be retained in the active military service for medical evaluation.  The advantages of retention for evaluation and possible separation or retirement for disability have been explained to me.  Furthermore, I have been briefed that (he) (she) may be forfeiting significant monetary compensation and/or a possible medical retirement by declining to be placed on Medical Hold to extend (his) (her)

**DAFI36-3211  24 JUNE 2022**                                                                            77

| |
|---|
| Active duty Service in order to complete military disability evaluation processing.<br><br>(Signature) (Name) |

**Figure 4.3.  Sample Format for Request Pending Foreign Court Disposition.**

| |
|---|
| I, (full name, grade, organization), am being subjected to the exercise of criminal jurisdiction by the government of<br>I am now:<br><br>(Waiting for disposition of the charges by the authorities of the foreign government.)<br><br>(Being tried in a court of the foreign government (Country).<br><br>(Waiting for a decision on my appeal of my conviction and sentence by a court of the foreign government.)<br><br>I request that I be retained in the (Insert USAF or USSF) beyond the expiration date of my term of service, until such time as final action on charges against me by the foreign government have been completed.  I understand that my retention in the military service for this purpose makes me subject to the obligations of military service in the same way and to the same extent as if my term of service had not expired.  I acknowledge that I am still subject to the Uniform Code of Military Justice. (**Note**:  Prosecution in a foreign court is not a legal bar to a later prosecution in a federal court based on the same act or omission.)  As a general rule, I understand that the (Insert USAF or USSF) does not court-martial or punish under Article 15, Uniform Code of Military Justice, members for substantially the same act or omission for which a foreign court tried the member.  I certify that this request for retention in the service is not the result of coercion, force, or threat of harm. (See **Note** below.)<br><br>(Member's signature)<br><br>**Note**: Members who sign this statement do not sign AF Form 1411, *Extension of Enlistment in the Air Force*. |

**Chapter 5**

**VOLUNTARY SEPARATION PRIOR TO EXPIRATION OF TERM OF SERVICE (ETS)**

*Section 5A—Processing Applications.*

**5.1. How Members Apply for Prior-to-ETS Separation.** Each paragraph in this chapter authorizing separation describes the items needed to show a basis for separation exists.

**5.2. Action by the Separation Authority.** To find what action the separation authority may take on an application, see **Table 5.1**. For disapprovals, give rationale detailing why the application is being disapproved and return the application to the member. **(T-2)**

**5.3. Withdrawing Separation Applications or Approved Separations.** A member who has applied for voluntary separation may ask the commander, in writing, to withdraw the application. The separation authority may approve or disapprove a request for withdrawal, for which the separation authority can approve IAW **Table 5.1**. AFPC/DPMSSR is the approval or disapproval authority for all other requests.

  5.3.1. Members may request withdrawal of an approved voluntary separation for the following reasons only:  hardship, best interests of the USAF or USSF, or to accept a promotion. Members must submit justification with indorsement from their commander. **(T-1)**

  5.3.2. Refer to **paragraph 3.12** for withdrawal of an approved separation when a member is pending administrative action under **Chapter 6** or **Chapter 7** or when there has been a report of misconduct while separation is pending.

**5.4. Type of Separation.** Characterize separation under this chapter as honorable unless **paragraph 3.17** applies. **Note**: Reference **Table 5.3**. Enlisted members serving on an unspecified DOS must apply for separation no later than 180 days prior to desired DOS or include a waiver request with justification for a DOS less than 180 days from date of application. **(T-1)** All requests for voluntary separation by members with an unspecified DOS must be submitted to AFPC/DPMSSR for final decision. **(T-1)**

*Section 5B—Reasons for Voluntary Convenience of the Government (COG) Separation.*

**5.5. Entering an Officer Training Program.** Discharge members who are selected for officer training with another armed service. For members applying for discharge to enter an AFROTC program, see **paragraph 4.14**. The training must lead to an appointment or a commission and active service in the officer grade. **(T-0)** This includes enlistment in the reserve of another service for enrollment in certain AFROTC scholarship and 2-year non-scholarship programs. For more information, see Title 10 United States Code Section 2107, *Financial Assistance Program for Specially Selected Members* and Title 10 United States Code Section 2104, *Advanced Training; Eligibility For*. Applications must include documents confirming program participation. **(T-0)** **Note**: Title 10 United States Code Section 516, *Effect Upon Enlisted Status of Acceptance of Appointment as Cadet or Midshipman*, provides that an enlistment is not terminated by acceptance of an appointment to a service academy. Discharge occurs at ETS. The separation authority sends supporting documentation to AFPC/DPMSSR or ARPC recommending approval or disapproval and why. If approved, the discharge is:

5.5.1.  Effective on the day before enlistment in the other service; and

5.5.2.  Contingent on such enlistment.

**5.6.  Early Release to Further Education.** Separate members up to 90 calendar days prior to ETS to enter or return to school; however, the DOS will not be earlier than 30 days before the class start date. **(T-2)** Under no circumstances will the DOS be after the class start date.  Members may apply any time during the last 9 months of their service. Applications may be approved if the educational program meets the requirements in **paragraph 5.6.1** and the member meets the eligibility criteria in **paragraph 5.6.2**.  Disapprove applications if in the best interest of the USAF or USSF.

5.6.1.  Educational Program Requirements.  Applicants must show acceptance to a full-time course of instruction in one of the accredited institutions as follows:

5.6.1.1. Institution of higher education in a program leading to an associate, a baccalaureate, or a higher degree.  This means the person must take the minimum number of credit hours for the semester, quarter, or term the school requires to be classified as a full-time student.  It does not include less than full time enrollment.  **(T-0)** The institution must be accredited in the Education Directory of Colleges and Universities published by the Department of Education. **(T-0)** The Superintendent of Documents, US Government Printing Office, Washington DC 20402-1575, sells copies of the directory or it can be found at the following website:  **https://www.ed.gov/accreditation**.  **(T-0)**

5.6.1.2.  Vocational or technical school in a course that starts with a specific school term and lasts at least 3 months.  Attendance in less than full time enrollment does not qualify.  The school must be approved by the appropriate State Board for Vocational Education; or, it must be accredited by one of the following: **(T-0)**

5.6.1.2.1.  Accrediting Commission for Business Schools.  **(T-0)**

5.6.1.2.2.  National Association for Practical Nurse Education and Service, Incorporated.

5.6.1.2.3.  National League for Nursing, Incorporated.  **(T-0)**

5.6.1.2.4.  National Association of Trade and Technical Schools.  **(T-0)**

5.6.1.2.5.  Committee on Occupational Education of the Southern Association of Colleges and Schools.  **(T-0)**

5.6.1.3.  Medical Education:  members may request separation under this provision to enter accredited schools for training as physicians, dentists, osteopaths, veterinarians, optometrists, or clinical psychologists.  The application must show the member has completed the required undergraduate training.  **(T-0)**

5.6.2.  Eligibility Criteria.  ARC members ordered to active duty for training, for unsatisfactory participation in a reserve assignment, or AFROTC contract violators are not eligible for separation under this provision.  Other members are eligible if they:

5.6.2.1. Have been accepted for a program and meet the requirements of **paragraph 5.6.1.1.**, **paragraph 5.6.1.2**, or **paragraph 5.6.1.3**.

5.6.2.2.  Show that it would be a hardship if the member were required to complete their current service requirement.  As an example, the member can explain how entry in the specific school term for which they have been accepted is academically the best time to enter or return to school. 5.6.2.3. Have paid, or show they are able to pay, entry fees or received a waiver of this requirement.

**5.7.  Elimination from Officer Training School.**  For information about elimination from Officer Training School, see DAFMAN 36-2032.  Discharge members if they:

5.7.1.  Request discharge at the time of their elimination; and

5.7.2.  Were enlisted specifically for Officer Training School.

**5.8.  USAF or USSF Nonfulfillment of Enlistment or Reenlistment Agreement.**  If the USAF or USSF fails to fulfill its commitments recorded on enlistment or reenlistment agreements, the member may apply for a voluntary separation.  **Note**: Use of this paragraph to request discharge does not necessarily require an action or failure to act on the part of the USAF or USSF.  For example: if consistent with the terms of the enlistment or reenlistment agreement, members can request discharge under this paragraph when medical disqualification, through no fault of the member, causes reassignment or reclassification.

5.8.1.  When to Apply for Discharge.  Members must apply for discharge within 30 days after notification of an assignment, reassignment, classification, reclassification, or other action that violates their agreement with the USAF or USSF.  **(T-1)** If they fail to do so, they waive entitlement to this provision.

5.8.2.  Requesting Separation.  Include in the request for discharge copies of the:

5.8.2.1.  Documents that show the enlistment or reenlistment agreements; and

5.8.2.2.  Correspondence showing the alleged failure of the USAF or USSF to meet the terms of the enlistment or reenlistment agreement that have not been changed or supplemented.

**5.9.  Survivorship.**  Members who become sole surviving sons or daughters or surviving sons or daughters may apply for and promptly be discharged or separated.  See DoDI 1315.15, *Separation Policies for Survivorship*.

5.9.1.  Definitions.

5.9.1.1.  Sole Surviving Son or Daughter.  A member who is the only surviving child in a family in which the father or mother or one or more siblings meet one of the following criteria (**Note**:  A sole surviving son or daughter is entitled to benefits under the *Hubbard Act*):

5.9.1.1.1.  Have been killed in action or have died when serving in the US Armed Forces from wounds, accident, or disease.

5.9.1.1.2.  Are in a captured or missing-in-action status.

5.9.1.1.3.  Have a permanent 100 percent service-related disability (including 100 percent mental disability), as determined by the VA or one of the military services and are not gainfully employed because of the disability.

5.9.1.2.  Surviving Son or Daughter.  A member in a family in which the father or mother or one or more siblings meet at least one of the criteria in **paragraph 5.9.1.1.1**., **paragraph 5.9.1.1.2**, or **paragraph 5.9.1.1.3**.

5.9.2.  Discharge a member who becomes a sole surviving son or daughter (**paragraph 5.9.1.1**) after enlistment on request, unless:

5.9.2.1.  The member has waived the right to discharge either automatically (**paragraph 5.9.3**) or in writing; or

5.9.2.2.  The member is under criminal investigation or has court-martial charges pending against the member; has been convicted by court-martial with appellate review in process; or is serving a sentence to confinement (or is otherwise undergoing punishment) imposed by court-martial.  Process the request for administrative discharge, but do not discharge until the court-martial action is complete.  For more information, see **paragraph 3.7**; or

5.9.2.3.  The member is being processed for involuntary separation for cause; or

5.9.2.4.  The death, disability, hospitalization, or captured- or missing-in-action status resulted from the intentional misconduct or willful neglect of the parent or sibling or was incurred during a period of unauthorized absence.

5.9.3.  If members are told of the criteria listed under **paragraph 5.9.1**, but enlist (in another service), reenlist, or extend their periods of active service in any way, they waive the right to this discharge provision.

5.9.4.  A member who has waived the right to separation as provided in **paragraph 5.9.2** and **paragraph 5.9.3** may request reinstatement of that status at any time through the chain of command.  Consider requests for reinstatement on a case-by-case basis for merit.

**5.10. Early Release from Extension.** When members extend enlistments, they obligate themselves to serve the full term of the extension.  For more information, see AFI 36-2606.  However, they may still separate prior to ETS under any provision of this chapter if they qualify.  They may ask for early release from an extension when:

5.10.1.  It would be unjust to force members to serve the extension because the USAF or USSF, through no fault of the members, could not keep the agreement on which the extension was based.

5.10.2.  Early separation would serve the best interest of both the members and the USAF or USSF.

**5.11. Conscientious Objection.** Members apply for discharge under this paragraph when they ask for conscientious objector status under **Chapter 29** of this publication.

5.11.1.  The appropriate authority may direct the discharge of members found to be class 1-A-0 conscientious objectors if they cannot be used effectively as noncombatants and class 1-0 conscientious objectors.  See **Chapter 13** and **Table 13.1** for ARC Members.  SAFPC is the approval authority for all applications.

5.11.2.  Recommendations for disapprovals are forwarded to the SAFPC for consideration.  Only SecAF, or designee, may disapprove a conscientious objector application.  See **Chapter 13** of this publication.

**DAFI36-3211  24 JUNE 2022**

**5.12.  Pregnancy or Childbirth.**  A female member may request voluntary separation based on pregnancy or childbirth if the member finds pregnancy or childbirth incompatible with continued military service.  The separation request may be made before or after childbirth.

5.12.1.  If the member requests separation before childbirth, the separation date will be before delivery.  **(T-1)** If the member requests separation after childbirth, the application is submitted no later than 12 months after the date of delivery, and the requested DOS can be no more than 12 months after the date of the application.

5.12.2.  Members who separate prior to childbirth are not entitled to continued medical or maternity care (unless approved for Secretarial Designated Status (see guidance provided in AFMAN 41-210)) or authorized health care benefits in the military health care system.

5.12.3.  Members will not be retained or extended on active duty for the sole purpose of taking convalescent/maternity leave or to attend routine follow-up medical appointments.  **(T-2)**

5.12.4.  Members who desire to separate after childbirth must return to a present for duty status before they can separate.  **(T-1)**

5.12.5.  Members who were pregnant at the time of enlistment or entry into active service are not eligible for separation under this paragraph but may be subject to discharge for erroneous enlistment (**paragraph 7.14**), see **Table 7.4**.  In addition, members who were pregnant at the time of enlistment or entry into active service and separate are not entitled to maternity care in military facilities after separation.

5.12.6.  Requests for separation for pregnancy must:

5.12.6.1.  Be supported by an AF Form 469, *Duty Limiting Condition Report,* confirming the pregnancy.  If requesting to separate post-delivery, be supported by documentation (e.g., doctor's memo, birth certificate) confirming the delivery date.  **(T-1) For** ARC members:  Any other document such as a letter from a physician providing the same information, may be substituted for the AF Form 469.

5.12.6.2.  Provide preferred DOS:

5.12.6.2.1.  CONUS: Pre-delivery:  give a preferred DOS which is no earlier than 90 days, and not later than 30 days from the expected date of delivery.  Post-delivery; give a preferred date which is no earlier than the day following return to duty from leave and no later than 12 months from the date of application.  **(T-1)**

5.12.6.2.2.  Outside the Continental United States (OCONUS):  Pre-delivery; give a preferred DOS prior to 25 weeks due to travel restrictions.  Post-delivery; give a preferred date which is no earlier than the day following return to duty from leave and no later than 12 months from the date of application. **(T-1)**

5.12.6.3.  Acknowledge the understanding that, if the application is approved, the separation authority sets the separation date.  **(T-1)**

5.12.6.4.  Regular Component Only:  State whether discharge or release from active duty is requested, if the member has an unfulfilled MSO, and is qualified for transfer to the ARC.  **(T-1)** 5.12.6.5. If within 12 months after giving birth a member accepts an assignment, the service member is no longer eligible for a childbirth separation.  **(T-1)**

5.12.7.  If the immediate commander recommends approval for separation, there is a further recommendation as to the DOS.  Approval for the requested date, a later date, or an earlier one may be recommended.  In making this recommendation, the commander looks at the impact of the member's loss to the duty section and considers whether the members can be effectively employed during the pregnancy.

5.12.8.  The separation authority may take one of these actions:

5.12.8.1.  Recommend approval for separation on the date requested.

5.12.8.2.  Recommend approval for separation on a later date, usually one that is at least 60 days before the date of delivery, but no later than 12 months from the date of application.

5.12.8.3.  Recommend approval for separation on a date before the requested one.  In such a case, the separation date is at least 30 days after the member is notified of the separation authority's decision.

5.12.8.4.  Recommend disapproval and forward the case to AFPC/DPMSSR or ARPC/DPTTS for decision.

5.12.9.  Cases where the member has an approved pre-delivery separation.  In some cases, pregnancy may be completed after separation is approved but before separation takes place.  If the pregnancy is completed:

5.12.9.1.  By the birth of a living child, the approved discharge is executed as soon as the member is medically qualified for separation.

5.12.9.2.  Other than by the birth of a living child, the member may separate as scheduled or request withdrawal of the application.  The separation authority may approve the request for withdrawal or recommend disapproval and refer it to AFPC/DPMSSR or ARPC/DPTTS for final action.

**5.13. Early Release for Holidays.** A member whose established DOS falls on or after 9 December, and before 8 January the following year, may ask for separation any time during that period.

5.13.1.  The requested DOS must be earlier than the established DOS. **(T-1)**

5.13.2.  The base separation authority may deny the request of an eligible member only if the early loss of the member would have a critical and adverse impact on the unit's mission capability.

5.13.3.  Place the written request for early separation in ARMS.

5.13.4.  Members Excluded.  Members are not eligible for early release under this provision if they are:

5.13.4.1.  ARC members serving on inactive duty training, active duty for training, or involuntary EAD tours.

5.13.4.2.  In a formal probation or rehabilitation program.

5.13.4.3.  Being processed for involuntary discharge.

5.13.4.4.  Under investigation or on international hold.

5.13.4.5.  Awaiting trial, the result of trial, or the outcome of the appellate review of a conviction by court-martial.

5.13.4.6.  Separating under the PALACE CHASE program.

5.13.5. Overseas Returnees.  Members scheduled for separation in the US for lack of retainability for reassignment are eligible if the scheduled return date falls within the period. Members returning for ETS separation within 30 days of ETS (**paragraph 4.2.1**) are also eligible.

5.13.6.  Members Scheduled for Prior-to-ETS Separation.  Members approved for prior to ETS separation are eligible for earlier release under this provision if the adjusted DOS falls within the period.  Further adjustment of the DOS under this provision does not change the authority for separation.

5.13.7.  ETS Separation.  If this provision is the only reason.

**5.14. Miscellaneous Reasons.** Members who do not qualify for separation for another reason may ask for separation under this provision.  Normally, the separation authority may approve applications when the member's early separation serves the best interest of the USAF or USSF. For members desiring to voluntarily separate in lieu of administrative separation under provisions of **paragraph 7.10.1**, the requested DOS is limited to 120 days from the date of application. Members serving on an unspecified DOS must apply for separation no later than 180 days prior to desired DOS or include a waiver request with justification for a DOS less than 180 days from date of application.  (RegAF Only) Requests for voluntary separation by members with an unspecified DOS must be submitted to AFPC/DPMSSR for final decision.  **(T-1)**

5.14.1. Regular Component Only: PALACE CHASE Consideration.  CONUS-based members must first apply for PALACE CHASE separation if:

5.14.1.1.  The requested DOS is more than 12 months before the current DOS.  **(T-1)**

5.14.1.2.  The eligibility criteria for PALACE CHASE separation are met.  **(T-1)** For more information, see **paragraph 4.13** and **Part 4** of this publication.

5.14.1.3.  Members may request an exception to **paragraph 5.14.1** if the reason(s) for the requested separation would be incompatible with service in the ARC.

5.14.2.  Evaluating the Application.  Each application is evaluated on its own merits.  This includes consideration of the:

5.14.2.1.  Reason for separation and the supporting documents, if any.

5.14.2.2.  Other factors that may have a bearing on the case.

5.14.2.3.  Length of service since completion of the last training or PCS.

5.14.2.4.  Pending assignment, if any.

5.14.2.5.  Current and projected manning in the Air Force Specialty Code (AFSC) or Space Force Specialty Code (SFSC).

5.14.2.6.  Retraining potential.

5.14.3.  Action by the Separation Authority.  The separation authority will:

5.14.3.1. Approve applications with merit for members when requested DOS is within 12 months of the member's normal DOS. **(T-1) Note**: Applications by members serving on an unspecified DOS will be submitted to AFPC/DPMSSR for final decision. **(T-1)**

5.14.3.2. Recommend approval when the requested DOS is more than 12 months from the member's normal DOS and forward application to AFPC/DPMSSR for final disposition. **(T-1)** 5.14.3.3. Disapprove applications found to lack merit. **(T-1)**

*Section 5C—Dependency or Hardship.*

**5.15. Conditions for Discharge.** Members may request discharge when genuine dependency or undue hardship exists.

5.15.1. A basis for discharge may exist when:

5.15.1.1. The dependency or hardship is not temporary.

5.15.1.2. Conditions have arisen or have been aggravated to an excessive degree since the member entered the military.

5.15.1.3. The member has made every reasonable effort to remedy the situation.

5.15.1.4. Separation eliminates or materially alleviates the conditions.

5.15.1.5. There are no other means of alleviation readily available other than the separation.

5.15.2. Undue hardship or dependency does not necessarily exist because:

5.15.2.1. Of altered present or expected income; or

5.15.2.2. The family is separated or suffers the inconveniences usually incident to military service.

**5.16. Evidence Required.** FSS/MPF personnel counsel members about the conditions for, and evidence needed to support separation for hardship or dependency. Written statements of the facts of the case support the application for discharge. The original, signed statements accompany the application.

5.16.1. In some cases, specific types of statements are needed. If the application is based on a condition that is:

5.16.1.1. Due to the death of a family member, a death certificate or other proof of death is required.

5.16.1.2. Caused by the disability of a family member, a physician's statement tells what the disability is, when it occurred, and prognosis.

5.16.1.3. A financial hardship and there is evidence of prospective civilian employment with income that would exceed the member's military pay. Applications under this provision must include a statement that details the current financial hardship and how prospective civilian employment alleviates the hardship. **(T-2)**

5.16.2. In all cases, the application must:

5.16.2.1. State specifically the hardship or dependency condition. **(T-2)**

5.16.2.2.  Give specific dates of events. **(T-2)**

5.16.2.3.  List other family members with their ages, occupations, incomes, and locations. **(T-2)**

5.16.2.4.  Tell why the other family members cannot give the care or support needed.  **(T-2)**

**5.17. Red Cross Assistance.** On request, the American Red Cross helps obtain, or verify, information about circumstances that may be a basis for discharge for hardship or dependency due to illness, injury, or death.

5.17.1.  If it seems that an application should be approved, but if more information is needed, the separation authority asks the local Red Cross representative to obtain it.

5.17.2.  Members or their dependents may ask local Red Cross chapters to help them get evidence they need to support an application for discharge.  In these cases, the Red Cross does not make a formal report to the USAF or USSF, unless it is requested (see **paragraph 5.17.1**.).

**5.18.  Special Procedures and Considerations:**

5.18.1.  For information about where members apply for discharge under this section, see **Table 5.2**.

5.18.2.  Commanders, FSS/MPF personnel, and other support agencies should:

5.18.2.1.  Prioritize applications for discharge under this provision and process them quickly.

5.18.2.2.  Assist the member in creating a complete application that contains all requirements mentioned in **paragraph 5.16**.

5.18.2.3.  Not delay or disapprove discharge for dependency or hardship because the member's services are needed in the organization.  Indebtedness to the government is not a bar to separation.

5.18.3.  If the member is under court-martial charges or investigation that may result in the preferring of charges, an application for discharge under this section may be processed.  If it is approved, the member may not be discharged while the investigation or charges are pending except as provided in **paragraph 3.7**.  A member whose involuntary administrative separation or discharge action was initiated prior to submission of an application for hardship separation or discharge, is not eligible for separation or discharge under this paragraph until the final disposition of the administrative proceedings.  This restriction may be waived by the separation authority.

5.18.4.  An application for discharge may show the member had dependents who were not acknowledged at the time of enlistment.  If so, consider the possibility of discharge for fraudulent or erroneous enlistment, see **Table 7.4**.  The fraud or error may be waived IAW procedures outlined in **paragraph 7.19** to permit discharge under this section.

5.18.5.  If a request for discharge is received from a member's family, counsel the member about how to apply for discharge.  Do not approve a discharge until the member has applied in writing.

5.18.6.  Members separated for hardship or dependency are discharged.

5.18.7.  DAFMAN 36-2032 restricts enlistment of prior service persons previously discharged for dependency or hardship.  Counsel the applicant about this restriction, get a signed statement reflecting understanding of the policy, and add it to the case file.

**5.19.  Final Action on Applications.**  AFPC/DPMSSR or ARPC/DPTTS (as applicable) are the approval and disapproval authorities for all hardship separations.  The separation authority:

5.19.1.  Approves the application for the DOS requested; or

5.19.2.  Approves an alternate DOS contingent on the acceptance of the members; or

5.19.3.  Disapproves the application and advises member that a new application may be submitted if circumstances change.  In such cases, new supporting evidence is necessary.

**5.20.  Applications Submitted at Other Than the Base of Assignment.**  FSSs/MPFs give extra help to members who apply for discharge while they are on leave or enroute PCS.  The FSS/MPF that processes the application (**Table 5.2**) will:

5.20.1.  Ask the applicant's commander to grant an extension of leave if more time is needed for processing.  **(T-2)**

5.20.2.  Communicate with the aerial port if a port call is changed or canceled.  **(T-2)**

5.20.3.  If the separation authority decides that the application warrants approval, a message must be sent to the member's servicing FSS/MPF.  **(T-2)** The servicing FSS/MPF determines if there are any actions pending or reasons that would preclude approval and execution of the member's hardship discharge.  If there are none, the servicing FSS/MPF will immediately reassign the member PCS without permanent change of assignment for separation and furnish the processing FSS/MPF the special order number by return message.  **(T-2)**

**Table 5.1.  Options of the Separation Authority.**

| RULE | A Reason for separation (see Note 1) | B Paragraph | C BSA Approve | D BSA Disapprove | E Recommend disposition to AFPC/ARPC Approval | F Recommend disposition to AFPC/ARPC Disapproval |
|---|---|---|---|---|---|---|
| 1 | Entering an Officer Training (OT) Program | 5.5 | | | X | X |
| 2 | Early release to further education (see **Note 2**) | 5.6 | X | X | | |
| 3 | Elimination from Officer Training School | 5.7 | X | X | | |
| 4 | USAF or USSF Non-fulfillment of enlistment agreement (see **Note 2**) | 5.8 | X | X | | |
| 5 | Survivorship (see **Note 2**) | 5.9 | X | X | | |
| 6 | Early Release from extension (see **Note 2**) | 5.10 | | X | | |

| 7 | Conscientious Objection | 5.11 | | | X (see Note 4) | X (see Note 4) |
|---|---|---|---|---|---|---|
| 8 | Pregnancy or childbirth | 5.12 | X | | | X |
| 9 | Early release for Holidays (see **Note 2**) | 5.13 | X | X | | |
| 10 | Miscellaneous reason (see **Note 3**) | 5.14 | X | X | X | X |
| 11 | Dependency or hardship | 5.15 | X | | X | X |

**Notes**:
1. A Staff officer may be designated, in writing, to act on these matters.  The authority may not be further delegated.
2. AFPC/ARPC retain final authority to disapprove if the application doesn't meet the criteria of the separation provision.
3. See **paragraph 5.14.3** for applications that can be approved by the base separation authority.
4. Only SecAF, or designee, may approve or disapprove a conscientious objector application.

**Table 5.2.  Applying for Dependency or Hardship Discharge.**

| R U L E | A | B | C |
|---|---|---|---|
| | **If the Member is** | **then the application is accepted and processed by the Military Personnel Flight** | **and is approved or disapproved by the separation authority for** |
| 1 | On duty with the unit of assignment | servicing the unit of assignment | the unit of assignment. |
| 2 | On temporary duty | servicing the unit of attachment | the unit of attachment. (See **Note 1**) |
| 3 | Enroute to a new assignment (see **Note 2**) | at the nearest base having separation facilities (see **Note 3** and **4**) | the base where the application is processed. (See **Note 1**) |

**Notes**:
1. The separation authority also decides whether the member is separated at this base or returned to the base of assignment for execution of the approved separation.
2. The circumstances that are the basis for the application must have arisen since departure from the old assignment. **(T-2)**
3. The base to which member goes for help is presumed to be the nearest or most convenient base.
4. For information about processing these cases, see **paragraph 5.18**.

**Table 5.3.  Reasons and Authority for Voluntary Separation.**

| R U L E | A | B | C | D | E | F |
|---|---|---|---|---|---|---|
| | | | **Member's Status** | | **Type of Separation** | |
| | **Reason** | **Authorizing Paragraph** | **Entry Level** | **Other** | **Entry Level** | **Honorable** |
| 1 | Entering an Officer training | | X | | X | |

| # | Reason | Para | | | | |
|---|--------|------|---|---|---|---|
|   | program | 5.5 | | X | | X |
| 2 | Early Release to Further Education | 5.6 | | X | | X |
| 3 | Elimination from Officer Training School | 5.7 | X | | X | |
|   |  |  | | X | | X |
| 4 | AF Nonfulfillment of Enlistment Agreement | 5.8 | X | | X | |
|   |  |  | | X | | X |
| 5 | Survivorship | 5.9 | X | | X | |
|   |  |  | | X | | X |
| 6 | Early Release from Extension | 5.10 | | X | | X |
| 7 | Miscellaneous Reasons | 5.14 | X | | X | |
|   |  |  | | X | | X |
| 8 | Conscientious Objection (see **Note 1**) | 5.11 | X | | X | |
|   |  |  | | X | | X |
| 9 | Pregnancy or Childbirth | 5.12 | X | | X | |
|   |  |  | | X | | X |
| 10 | Early Release for Holidays | 5.13 | | | | X |
| 11 | Dependency or Hardship | 5.15 | X | | X | |
|   |  |  | | X | | X |
| 12 | In lieu of trial by court- martial (see **Note 1**) | 6.1. | X | | (See **Note 2**) | (See **Note 2**) |

**Notes**:
1.  Before processing any individual for separation for this reason, comply with requirements of **paragraph 3.6**, if applicable.
2.  Discharge UOTHC is authorized and is usually warranted.  For more information, see **paragraph 6.2**.

## Chapter 6

## REQUEST FOR DISCHARGE IN LIEU OF TRIAL BY COURT-MARTIAL

**6.1.  Basis for Discharge.**

6.1.1.  Members may be discharged under this provision if they:

6.1.1.1.  Are subject to trial by court-martial; and

6.1.1.2.  Request discharge in lieu of trial.

6.1.2. Members may request discharge if charges have been preferred with respect to an offense for which a punitive discharge is authorized.  If Rule for Courts-Martial (RCM) 1003(d) (3), *Manual for Courts-Martial*, is the sole basis for a punitive discharge, members may not request discharge in lieu of trial unless the charges have been referred to a court-martial empowered to adjudge a punitive discharge.

**6.2.  Types of Discharge Authorized.**

6.2.1.  A summary court-martial may not adjudge a bad-conduct or dishonorable discharge.  If the charges are referred to a summary court-martial, the member may request to be discharged in lieu of trial by summary court-martial.  The member's service may not be characterized as UOTHC unless the member's request for discharge in lieu of trial by summary court-martial specifically states the member understands trial by summary court-martial cannot result in a punitive discharge.  Because the member is requesting to be discharged in lieu of trial by summary court-martial, the member's discharge can still be characterized as UOTHC.  For guidance in determining the type of separation, see **Section 3A**.  Generally, characterize the service of members discharged under this provision as UOTHC.

6.2.2.  If the member is in entry level status, and discharge UOTHC is not warranted, the separation is described as an entry level separation.

6.2.3.  For other members who are not entry level, the separation may be characterized as: 6.2.3.1. General (Under Honorable Conditions), when such a characterization is warranted under the guidelines in **Section 3A**; or **6.2.3.2** Honorable, only if the member's record has been so meritorious that any other service characterization would be inappropriate.

**6.3.  How Members Request Discharge in Lieu of Trial:**

6.3.1. Members applying for discharge in lieu of trial by court-martial acknowledge understanding of:

6.3.1.1.  The elements of the offense or offenses charged.

6.3.1.2.  The fact that a summary court-martial cannot impose a punitive discharge, but that the discharge in lieu of trial by summary court-martial can result in discharge with an UOTHC service characterization (required only if charges are or will be referred to a summary court-martial).

6.3.1.3.  The fact that characterization of service as UOTHC is authorized; and

6.3.1.4.  The adverse nature of such a characterization and the possible consequences; and

6.3.1.5.  The fact that any special pay, bonuses, and education assistance funds, may be subject to recoupment.

6.3.2.  Submit applications to the squadron commander any time after the criteria in **paragraph 6.1** are met but submit before trial is complete.  For more information about how the request for discharge affects the trial by court-martial, see **Table 6.1**.

6.3.3.  Before a member applies for discharge under this provision, the commander gives the member the opportunity to consult legal counsel.  If a member refuses to consult counsel, the member's application is updated, and the appointed counsel prepares a statement noting the refusal and adds the statement to the case file.  Statements the member or counsel for the member make in connection with a request for discharge under this chapter are not admissible in courts-martial except as authorized by *Manual for Courts-Martial*, Military Rule of Evidence 410.

6.3.4.  For a format of the application, use **Figure 6.1**.

**6.4.  Processing the Request for Discharge:**

6.4.1.  Action by the squadron commander.

6.4.1.1.  Send the application through the FSS/MPF to the SPCMCA recommending approval or disapproval.  For a format of the letter, use **Figure 6.2**.

6.4.1.2.  Include information for use in determining how the service should be described or characterized.

6.4.1.3.  Attach copies of the charge sheet, investigation reports, statements, and legal reviews.

6.4.1.4.  Notify the local finance office, in writing as soon as the discharge is initiated.  Request the finance office notify commanders if member is indebted to the government and what action is taken to collect the debt.  If disapproved, re-notify appropriate agencies.

6.4.2.  Action by the SPCMCA. The SPCMCA personally acts on these cases.  Authority may not be delegated.  Recommendations for approval sent to the GCMCA include a recommendation as to the type of separation.  Include specific reason for the recommendation if the type recommended is not UOTHC.

6.4.2.1.  If the Article 32, UCMJ, preliminary hearing report has been forwarded to the GCMCA, the SPCMCA sends the case to the GCMCA recommending approval or disapproval.

6.4.2.2.  If the Article 32, UCMJ, preliminary hearing report has not been forwarded to the GCMCA, the SPCMCA may:

6.4.2.2.1.  Disapprove the request and return it to the squadron commander; or

6.4.2.2.2.  Send it to the GCMCA recommending approval.

6.4.3.  Processing Time Goal:  25 workdays after submission.

**6.5.  ANG and AFR Members.**  Refer to DAFI 51-201 for jurisdiction over ARC members while in active status.  Process requests to completion IAW this section.  Actions affecting ANG members are coordinated with the Commander, 201st Mission Support Squadron 3501 Fetchet

Avenue, Joint Base Andrews MD 20762-5157. If the regular component GCMCA approves the request:

6.5.1.  An ANG member is released from active duty and returned to the unit of assignment. Send the approved request for discharge to the TAG or CG with an information copy to NGB/A1PP and the 201st Mission Support Squadron.  The member is then discharged from the ANG and the reserve of the AF.  Prior consultation with the member's ANG chain of command through judge advocate channels is needed to ensure TAG or CG concurs and will execute the separation.  **(T-1)**

6.5.2.  An AFR member is discharged by the Commander of the regular component unit of attachment for court-martial jurisdiction.  Send copies of the discharge order to ARPC, Records Processing Section (ARPC/DPTAR), ARPC/DPTTS, and the reserve MPF servicing the unit of assignment. Send the discharge case file to ARPC, Master Records Management Division (ARPC/DSMMA).

**6.6. Service Member.** Tenants, temporary duty (TDY) members, and non-EAD reserve members send copies of all the correspondence to the parent organization, if the member requesting discharge is:

6.6.1.  Assigned to a tenant unit.

6.6.2.  Performing TDY under the jurisdiction of the SPCMCA.

6.6.3.  A member of an ARC unit on active duty for training or on a special tour or tour of active duty (see guidance provided in AFMAN 36-2136).

**6.7. Medical Examination for Separation.** Separating members must take a comprehensive separation history and physical examination (SHPE). DAFMAN 48-123 provides guidance on SHPEs. **(T-0)** The application of the requirement for a comprehensive SHPE to ARC personnel is limited to certain criteria as detailed in DAFMAN 48-123, Chapter 9. **(T-0)**

6.7.1.  A commander who receives a request for discharge IAW this chapter:

6.7.1.1.  Ensures the member is scheduled for a medical examination and, if there is evidence of mental illness, a determination of mental responsibility and capacity. Guidance on medical examinations is provided in AFI 44-172, *Mental Health*.  If time permits, the member may elect to have the SHPE accomplished through a DoD MTF or through the VA. (see **Table 8.11**.).

6.7.1.1.1.  The MTF uses the applicable guidance to determine the scope of the medical examination and, if necessary, coordinates with the VA to ensure all required documentation is recorded in the member's record prior to separation. **Note**: The SHPE is recorded in the member's record before the MTF clears the member for departure.

6.7.1.1.2.  The FSS or MPF ensures the member is cleared by the MTF prior to out-processing.  **(T-0)**

6.7.1.2.  Tells the medical facility why the examination is needed.  **(T-0)**

6.7.1.3.  Gives the medical facility all the information about the case that may be helpful. **(T-0)**

6.7.1.4.  Makes sure that the member reports for the examination.  **(T-0)**

6.7.1.5.  Continues processing the case.  **(T-0)**

6.7.2.  The Director of Base Medical Services sends the medical clearance memorandum to FSS or MPF Career Development Section.  **(T-0)**

6.7.3.  The FSS or MPF Career Development Section adds the medical clearance memorandum to the case file.  If the medical examination results in a finding the member is:

6.7.3.1.  Qualified for worldwide duty, an approved separation is executed without delay.

6.7.3.2.  Not qualified for worldwide duty and separation under AFI 36-3212 is also approved, dual action processing IAW **Section 8D**, is required.

6.7.3.3.  Not qualified for worldwide duty and not subject to disability processing under AFI 36-3212, an approved separation is executed without delay.

**6.8.  Special Processing Requirements.**  If the applicant:

6.8.1.  Is qualified for retirement (see guidance provided in DAFI 36-3203, *Service Retirements*), at the time the application is submitted, processing IAW **Section 8L**, is needed upon request of the member.

6.8.2.  Has at least 16 years of active service (18 years of creditable service for ARC) at the time the application is submitted, lengthy service or sanctuary consideration IAW **Section 8E**, is needed upon request of member.

6.8.3.  Is to be tried before a summary court-martial and the separation authority believes a UOTHC is warranted, the case file and legal review includes:

6.8.3.1.  A complete review of the facts in the case.

6.8.3.2.  A discussion of each offense charged with the maximum punishment for each.

6.8.3.3.  Documentation showing the member is aware that a summary court-martial could not impose a punitive discharge.

6.8.3.4.  An explanation why a UOTHC is warranted.

**6.9.  Additional Misconduct.**  After forwarding the case, additional misconduct may occur or be discovered.  If this happens, the commander will report the misconduct to the SPCMCA at once.  **(T-1)**

6.9.1.  If the case has been sent to the GCMCA IAW **paragraph 6.4**, the SPCMCA sends the report to the GCMCA immediately.  The SPCMCA tells the GCMCA if, due to the additional misconduct, there is a change in the previous recommendation.

6.9.2.  If the case has been sent to AFPC/DPMSSR IAW **paragraph 6.8.1**, or **paragraph 6.8.2**, the GCMCA immediately sends the report to AFPC/DPMSSR and tells that office whether the recommended disposition has changed.  The report can be made by telephone and confirmed by message or letter.  Be sure the parent organization receives copies if **paragraph 6.6** applies.

**6.10.  Withdrawal of Request for Discharge.**  A member may ask to do this any time before the decision of the GCMCA or SecAF authority.  The squadron commander sends the request to the SPCMCA through the FSS or MPF Career Development Section to be referred to the GCMCA or

SecAF authority for final approval or disapproval.  Both the squadron commander and SPCMCA give recommendations in the forwarding correspondence.  The GCMCA adds the recommendation to cases being referred to SecAF.

**6.11.  Who Can Approve Discharge.**  The GCMCA takes final action on requests for discharge in lieu of trial by court-martial.  For retirement eligible and lengthy service or sanctuary cases, see **paragraph 6.8**.

**6.12.  Action by the GCMCA.**  The SJA for the GCMCA reviews the case for legal sufficiency before the GCMCA acts on it.  The legal review is made a part of the case file.  The guidelines in **paragraph 8.1** apply to consideration of the member's qualification for further service.

6.12.1.  If the GCMCA approves the request for discharge, the GCMCA will:

6.12.1.1.  Determine the type of discharge to be issued.  **(T-1)**

6.12.1.2.  Give the reason for the service characterization directed if it is:

6.12.1.2.1.  Not UOTHC. **(T-1)**, or

6.12.1.2.2.  Less favorable than the type recommended by the commander.  **(T-1)**

6.12.2.  If the GCMCA disapproves the request for discharge, the GCMCA will:

6.12.2.1.  Return the case to the SPCMCA with appropriate comments.  **(T-1)**

6.12.2.2.  Give disposition instructions separately.  **(T-1)**

**Figure 6.1.  Sample Request for Discharge in Lieu of Trial by Court-Martial.**

---

(Appropriate Letterhead) (See **Note 1**)

(Date)

SUBJECT:  Request for Discharge in Lieu of Trial by Court-Martial

TO: (Immediate commander)

FROM: (Member)

1.  I request that I be discharged from the United States (Insert Air Force or Space Force) in accordance with (IAW) DAFI 36-3211, Part 2, Chapter 6, in lieu of trial by court-martial.

2.  I understand the elements of the (offense) (offenses) with which I am charged.  A summary of the evidence provided to me follows:

OR

2.  I understand the elements of the (offense) (offenses) with which I am charged.  I have received copies of the following documents pertaining to the (offense) (offenses) with which I am charged: (See **Note 2.**)

---

3.  I understand that if this request is approved, I may be discharged Under Other Than Honorable Conditions (UOTHC), regardless of your recommendation.  I am aware of the adverse nature of such a discharge and the possible consequences thereof.  I know that it may deprive me of veteran's benefits.

4.  I understand that if I were tried by a summary court-martial, I could not receive a punitive discharge from that court, but discharge could be UOTHC based on my request for discharge in lieu of court-martial.

5.  I have been afforded the opportunity to consult legal counsel.  I was counseled by (name, grade of military lawyer) (name and address of civilian lawyer).

OR

5.  I was offered an opportunity to consult legal counsel and waive the right to do so.

6.  I have received a Privacy Act Statement.

7. (**See Note 3.**)  If this discharge request is approved, I understand I am entitled to lengthy service or sanctuary probation consideration.  I have read and I understand Section 8A and (do) (do not) request lengthy service or sanctuary probation consideration in the Office of the Secretary of the Air Force IAW that section.

*8. (**See Note 4.**) If this discharge request is approved, I understand I am entitled to apply for retirement.  I have read and I understand DAFI 36-3203 and DAFI 36-3211, Section 8L and (do) (do not) request the Office of the Secretary of the Air Force process my case for retirement in lieu of discharge IAW that section. I understand that if I apply for retirement in lieu of discharge I must attain retainability if required or forfeit my eligibility to apply.

9. If this discharge request is approved, I understand I cannot be entered into, and will be removed from, the Integrated Disability Evaluation System if I have any unfitting medical conditions.

(Member's signature)
(Typed Name, Grade), (Insert USAF or USSF)

The preceding statement by (member's name) was (his) (her) voluntary decision, signed by (him) (her) after I counseled (him) (her) fully about:

a. (His) (Her) rights and privileges; and

b. The possible effects of discharge under these circumstances.

1st Ind, (counsel's signature)
(Typed name, grade), USAF/USSF or (typed name and address of civilian counsel)

**Notes**:
1. Use only words or statements that apply.
2. If the member received documents pertaining to the evidence, list them.
3. Use this paragraph when member is entitled to lengthy service or sanctuary review or sanctuary law if an ARC member (see **paragraph 8.36**).
4. Use this paragraph when member is retirement eligible (see **paragraph 8.64**).

**Figure 6.2. Sample Commander's Recommendation.**

(Appropriate Letterhead)

(Date)

MEMORANDUM FOR (special court-martial convening authority)

FROM: (Functional Address Symbol)

SUBJECT:  Request for Discharge in Lieu of Trial by Court-Martial (grade, name)

1.  I recommend that the attached request for discharge be (approved) (disapproved) for the following (reason) (reasons):

(Give factual details of reasons.)

2.  If this request for discharge is approved, I recommend that (grade, name) be furnished (type of discharge).  (If the member has been promised or led to believe that the discharge to be issued would be anything more than the least favorable service characterization authorized for the basis of discharge, the commander explains.)

(Grade, name of member)

a. (Is) (Is not) under investigation (See **Note 1.**)

b.  (Is) (Is not) awaiting action under DAFI 36-2502, *Enlisted Airman Promotion and Demotion Programs,* and AFI 36-3212, or another section of this regulation.

c. (Is) (Is not) awaiting result of trial.

d. (Is) (Is not) absent without authority.

e. (Is) (Is not) absent in hands of civil authorities.

f. (Has) (Has not) been referred to a medical facility for examination. (See **Note 2.**)

g. (Is) (Is not) in default with respect to public property or public funds.  (If the member is in this category, state the circumstances in full.)

h. (Has) (Has not) completed 16 or more years of active military service or 18 years of creditable service for Air Reserve Component (ARC).  (See **Note 3.**)

i. (Is) (Is not) accountable or responsible for public property or funds.

j. Member (has) (has not) received special pay, bonuses, or education assistance. There has (been) (not been) a report of recent misconduct.  (If there has been recent misconduct, attach the report to this letter.)

3.  Court-martial charges have been preferred.

4.  Attached are:  A copy of the charges, DD Form 458, *Charge Sheet*.  Copies of witnesses' statements.

5.  Other information or evidence pertinent to the case: (Identify)

6.  Charges (have) (have not) been referred for trial.

7.  At the time of the misconduct, the member did not have a mental disease or defect that caused (him)(her) to lack the substantial capacity either to appreciate the criminality (wrongfulness) of the acts, or to conform to the law (AFI 44-172, *Mental Health*).  The member presently has the capacity to understand the nature of the proceedings and to assist in the defense.

8. (Grade, name) (holds) (does not hold) a Reserve of the Air Force appointment as a commissioned or warrant officer. (See **Note 4.**)

9.  Other information (include information required by **paragraph 2** of commander's recommendation for discharge, see **Figure 8.4** or **Figure 8.5** or **Attachment 11** for ARC members)

10.  Action under DoDM 5200.02_AFMAN 16-1405 has been completed (include this statement if applicable; see **paragraph 3.7**).

(Commander's signature)
(Commander's name, grade), USAF/USSF

Attachment:
1.  DD Form 458
2.  Documentation of the name of the agency if the member is under investigation.
3.  Documentation of the status of the medical examination or processing if the member is not medically qualified for worldwide duty.
4.  If the member is accountable or responsible for public funds, attach a statement about the status of the accounts.  Include survey reports or other vouchers submitted to adjust shortages in the account.
5.  If applicable, documentation of the processing status in accordance with DAFI 36-3211**,**

| Part 2, Chapter 8. |
|---|
| **Notes:** <br> 1.  Use only words or statements that apply. <br> 2.  If the member received documents pertaining to the evidence, list them. <br> 3.  Use this paragraph when member is entitled to lengthy service or sanctuary review (see **paragraph 8.36**). <br> 4.  Use this paragraph when member is retirement eligible (see **paragraph 8.32**). |

**Table 6.1.  How a Request for Discharge Affects the Processing of Charges.**

| R U L E | A | B | C |
|---|---|---|---|
|  | **If formal charges have been:** | **and,** | **then usually:** |
| 1 | Preferred | have not been referred to trial (**Note**: Processing of charges continue) | Although processing of charges continues, any court-martial is delayed until final action is taken on the request for discharge. |
| 2 | Referred for trial | trial date has not been set | the GCMCA decides whether trial should proceed or be delayed until final action is taken on the request for discharge.  The GCMCA may delegate this authority to the SPCMCA. |
| 3 |  | trial date has been set. |  |
| 4 |  | the trial has begun (**Note**: Refer to DAFI 51-201, paragraph 12.32.7) | the military judge decides whether trial proceeds. |
| 5 |  | request for discharge has been denied once | trial proceeds even though reconsideration is requested. |

## Chapter 7

## REASONS FOR INVOLUNTARY SEPARATION

*Section 7A—Preprocessing Considerations.*

**7.1. Choosing a Course of Action:** a list of reasons and authority for involuntary separations is in **Table 7.5**.

7.1.1. Commanders and supervisors identify members who show a likelihood for early separation. They should make reasonable efforts to help these members meet DAF standards.

Members who do not show a potential for further service should be discharged.

7.1.2. Involuntary administrative discharge is not a substitute for disciplinary action. The commander should consult the servicing legal office and FSS/MPF when choosing a course of action.

7.1.3. For limitations on using certain information in administrative discharge action, see **paragraph 7.4**.

7.1.4. Refer to **paragraph 3.6** before starting discharge action for a member who has, or once had, access to special access programs.

7.1.5. Members recommended for administrative discharge for cause do not have a right to be tried by court-martial instead. They may not ask for discharge processing IAW a specific provision of this chapter. The commander chooses the course of action to be pursued subject to the concurrence of the separation authority.

7.1.6. To find whether a member recommended for discharge under this chapter is offered a board hearing, see **paragraph 8.2.2**. Use the procedure in **Section 8B** if the member is entitled to a board hearing. Process other cases by notification IAW **paragraph 8.8**.

7.1.7. Refer to DoDM 5210.42_AFMAN 13-501, *Nuclear Weapons Personnel Reliability Program (PRP)*, concerning the need to permanently decertify personnel reliability program members who are no longer qualified for personnel reliability program duties (e.g., being discharged for cause) prior to discharge.

7.1.8. When a member is convicted by a court-martial and does not receive a punitive discharge, consider initiating involuntary separation (**paragraph 8.9.10**.).

**7.2. Preprocessing Rehabilitation.** Members should have an opportunity to overcome their deficiencies before discharge action starts. A commander's effort to rehabilitate the member may include formal or informal counseling; control roster action; punishment under Article 15, UCMJ or state military code; a change in duty assignment; demotion; additional training or duty; retraining; or other administrative actions. Commanders should keep a record of these actions. Notwithstanding the above, a single act of misconduct can be so egregious that attempts at rehabilitation may not be appropriate.

7.2.1. Members must be formally counseled concerning their deficiencies and given an opportunity to overcome them before a commander recommends discharge for:

7.2.1.1. Parenthood, IAW **paragraph 7.9**. **(T-0)**

7.2.1.2.  Conditions that interfere with military service. **(T-0)**

7.2.1.3.  Entry level performance and conduct. **(T-0)**

7.2.1.4.  Unsatisfactory performance. **(T-0)**

7.2.1.5.  Minor disciplinary infractions. **(T-0)**

7.2.1.6.  A pattern of misconduct. **(T-0)**

7.2.2.  For more information about drug or alcohol abuse rehabilitation, see AFI 44-121. Ensure members have been referred to such a program before they are processed for discharge under **Section 7F**.

7.2.3.  An alleged or established inadequacy in a previous rehabilitative effort does not provide a bar to separation.

**7.3.  Determining the Basis of the Action:**

7.3.1.  As a rule, one or more acts or conditions on which a recommendation for discharge is based, have occurred, or existed in the current enlistment.  However, the following are exceptions to the rule:

7.3.1.1.  Before entry, if the reason for discharge is fraudulent or erroneous enlistment.

7.3.1.2.  Before entry, or in any previous enlistment, if the reason for discharge is in the interest of national security.

7.3.1.3.  During the enlistment immediately preceding the current term of service if:

7.3.1.3.1.  There has been no break in service; that is, the member's reenlistments have immediately followed discharge from the prior enlistment, and

7.3.1.3.2.  The commander who approved reenlistment did not have knowledge of the facts and circumstances pertaining to the one or more acts or conditions until after the member reenlisted.

7.3.1.4.  A commander may use instances of unsatisfactory fitness progress in the immediately preceding enlistment to establish a basis for separation when the member has had at least one instance of unsatisfactory progress in the fitness program during the current enlistment.  **Note**:  See **paragraph 3.18** and **paragraph 3.20** concerning information to be considered on the issue of service characterization.

7.3.2.  If the requirements in **paragraph 7.3.1** are met, the entire military record may be considered in deciding whether the member should be discharged or retained.

7.3.3.  Commanders look carefully at all the facts to be sure they recommend discharge for the right reason.  For example, a member whose conduct and duty performance have been unsatisfactory (**Section 7E**) may also have failed in drug or alcohol abuse treatment (**Section 7F**) or have a record of minor disciplinary infractions (**Section 7G**).  As a rule, it is best to base the recommendation on the one reason the record most completely supports.  Consult the MPF and servicing legal office for assistance.

7.3.4.  In some cases, it is preferable to cite two or more reasons as the basis for the discharge recommendation.  If one reason cited in the letter of notification entitles the member to a board

hearing, process the entire matter IAW **Section 8B**.  For special instructions applicable to cases based on more than one reason, see **Section 8F**.

**7.4.  Limitations on Discharge Action.**  A member may not be discharged administratively based on conduct that has been the subject of:

7.4.1.  Judicial proceedings, military or civilian, resulting in acquittal or action having the effect thereof unless:

7.4.1.1.  Such action is based on a judicial determination not going to the guilt or innocence of the respondent; or

7.4.1.2.  The judicial proceeding was conducted in a state or foreign court, and the discharge is approved by the SecAF.  For more information about processing, see **paragraph 3.2**.

7.4.1.3.  The acquittal from the judicial proceedings was based on a finding of not guilty only by reason of lack of mental responsibility.  Members in this category can be separated under **paragraph 3.2** unless separation for disability is appropriate.

7.4.2.  A prior board hearing in which the board entered an approved finding that the evidence did not sustain the factual allegations concerning the conduct.  **Exception**:  This limitation does not apply when the conduct is the subject of a rehearing in a case involving fraud or collusion.  Use **Table 8.2** in this instance.

7.4.3.  Administrative discharge processing resulting in retention except when:

7.4.3.1.  The new proceeding is based, in whole or in part, on subsequent conduct or performance.

7.4.3.2.  There is new, or newly discovered, evidence that was not reasonably available at the time of the prior proceeding; or

7.4.3.3.  The conduct is the subject of a new hearing ordered on the basis of fraud or collusion in the prior hearing.

7.4.4.  An approved waiver of the option to discharge for civilian court conviction or defective enlistment.

7.4.5.  Information obtained during, or as a result of, an epidemiologic assessment interview or results obtained from laboratory tests for human immunodeficiency virus (HIV) (see **paragraph 7.42**.).  Any information disclosed by a member during or as a result of an epidemiologic assessment interview may not be used to initiate administrative discharge action against the member.

7.4.5.1.  The limitation on use of information obtained from the member does not apply to the introduction of evidence for impeachment or rebuttal purposes in any administrative discharge proceeding in which the evidence of drug abuse or relevant sexual activity (or lack thereof) has been first introduced by the member.

7.4.5.2.  Also, these limitations do not preclude administrative discharge action based upon evidence derived independently of the epidemiological assessment interview.  Results obtained from laboratory tests for HIV may not, by itself, be the basis for involuntary separation of the member under this regulation.

7.4.5.3.  For disability processing, see AFI 36-3212.

**7.5.  Members in TDY Status:**

7.5.1.  Do not start involuntary discharge action against a member in TDY status.  End the TDY and return the member to the unit of assignment.  Send the commander a full report of the facts of the case. Include all available documentation.  **Exception***:*  Process the recommendation for discharge at the TDY base if the respondent is TDY with the unit of assignment or the member is TDY to a location that has ADCON over the unit of assignment. (For ANG cases; see **paragraph 7.5.4**.).

7.5.2.  Refer to DAFI 36-2110 if it appears that the member in TDY status should be reassigned for administrative discharge processing.  Reassignment may be possible for members who have not completed initial training or those who are enroute to or from overseas assignments.  Do not start discharge processing until the member is assigned to a unit under the jurisdiction of SPCMCA.

7.5.3.  For non-prior service members who are enroute for training and the squadron commander at the TDY location determines the non-prior service member should be processed for an administrative discharge, the member is assigned to the TDY location in a PCS status as follows:

7.5.3.1.  The TDY Career Development Section in the MPF requests the relocation element advise AFPC Airman Assignments, AFPC/DP3AM, that the member is to be processed for an administrative discharge and action is being taken to gain the member in PCS status to the TDY location (include in the request as an information addressee the gaining and losing MPFs, MAJCOM/JAs, FLDCOM/JAs (MAJCOM/A1s and FLDCOM/S1s).

7.5.3.2.  With concurrence of the separation authority, the MPF Career Development Section will use the unprojected gain procedure to affect the assignment.  **(T-1)** The assignment gain action cancels the projected assignment.

7.5.3.3.  The TDY location MPF will amend the member's PCS orders to reflect the change in permanent duty station and include in the remarks section of the order that the change in assignment is for the purpose of involuntary administrative discharge processing.  **(T-2)**

7.5.4.  ARC members returned to their unit of assignment and released to reserve status are recalled as necessary for preferral of charges, pretrial investigation, and trial by court-martial pending disposition.

**7.6.  Reassignment for Processing.**  Members are not reassigned from one unit to another on the same base for discharge processing.  **Exception**:  This provision does not apply to the Airman Transition Assistance Flight at JBSA-Lackland.   For information about when they may be reassigned PCS for execution of an approved discharge, see DAFI 36-2110.  If a member pending, or being considered for, discharge for cause is:

7.6.1.  Selected for reassignment by AFPC, Airman Assignments without reference to the discharge action, the MPF notifies AFPC Airman Assignments at once and stops reassignment processing until they receive more instructions.

7.6.2.  Hospitalized, or needs to be hospitalized, the MPF obtains AFPC Airman Assignments approval before reassigning the member.  See DAFI 36-2110 and AFMAN 41-210 for more information.

*Section 7B—Involuntary Discharge for the Convenience of the Government.*

**7.7. Instruction and Type of Separation.** This discharge is appropriate when discharge would serve the best interest of the USAF or USSF and discharge for cause is not warranted. The general guidelines for discharge or retention set out in **paragraph 9.1** apply to these cases. The separation of a member in entry level status is described as entry level separation. The service of other members separated under this section is characterized as honorable.

**7.8. Preprocessing Actions.** Before commanders recommend discharge for one of the reasons in this section, they look at all the facts of the case to be sure:

7.8.1. The preprocessing rehabilitation requirements of **paragraph 7.2** have been met.

7.8.2. They have complied with all the requirements of the authorizing paragraph; and

7.8.3. The circumstances do not warrant discharge for cause.

**7.9. Parenthood.** For dependent care responsibilities see DoDI 1342.19, *Family Care Plans*. This applies to all members with dependents.

7.9.1. Members may be discharged under this provision if, because of parental responsibilities, they fail to meet their military obligations or satisfactorily perform their prescribed duties, demonstrate repetitive absenteeism, or are unavailable for worldwide assignment or deployment.

7.9.2. Members in Basic Military or Technical Training. Special dependent care arrangements are needed of single member parents and military couples with dependents. At the time they enlist, single members who have minor dependents agree that their dependents cannot accompany them during their initial training period. **Note**: This restriction is contained in DAFMAN 36-2032 and is agreed to by the applicant on AF Form 3010, *USAF Statement of Understanding for Dependent Care Responsibility*, at the time of enlistment. Violation of this agreement during basic military or initial technical training makes members subject to discharge under this provision.

7.9.3. Preprocessing Actions. Before initiating separation or discharge action in these cases, the squadron commander counsels the member concerning deficiencies and voluntary actions that may help resolve the problem and give the member an opportunity to overcome the deficiencies. **(T-1)** Guidance on counseling the member is provided in DoDI 1342.19. The case file should contain a record of counseling and an explanation of the actions taken to help the member meet both parental responsibilities and DAF standards.

**7.10. Insufficient Retainability or Lack of Qualifications for Required Retraining:**

7.10.1. Criteria. The cost of retraining members for a brief period of service or retaining members ineligible to retrain into an AFSC/SFSC consistent with the needs of the USAF or USSF may not warrant their retention. Commanders will discharge members if they:

7.10.1.1. Have been disqualified for duty in all awarded AFSCs/SFSCs (AFSCs/SFSCs 1XXXX/X – 7XXXX) and have insufficient retainability for retraining. **(T-1)**

7.10.1.2. Have been disqualified for duty in all awarded AFSCs/SFSCs (AFSCs/SFSCs 1XXXX/X – 7XXXX) and decline retraining or are not selected for retraining. Guidance on retraining is provided in AFMAN 36-2100.

7.10.1.3. Are disqualified members with reporting identifiers of 9A200 or 9A300 as outlined in AFMAN 36-2100. **(T-1)**

7.10.1.4. Are serving overseas in an OCONUS or an overseas imbalance skill and are not qualified for duty or retraining in another AFSC/SFSC on return to CONUS.

7.10.1.5. Were disqualified for cause and are ineligible to retrain into an AFSC consistent with the needs of the USAF or USSF.

7.10.1.6. (IRR Only) Are a member of the IRR and have no AFSC or only a 9XXXX AFSC.

7.10.2. Members are ineligible for discharge under this provision if they:

7.10.2.1. Are designated as a wounded warrior.

7.10.2.2. Are disqualified from their AFSC/SFSC based on a medical condition. Members are not separated under this provision based solely on their inability to deploy or be reassigned because of a medical condition.

7.10.2.3. Are pending action under AFI 36-3212.

7.10.2.4. Are in the return to duty program or have successfully graduated the program once they have been offered an opportunity to complete their 1 year of probation and rehabilitation.

7.10.2.5. Discharge under this provision is inappropriate if the member's record would support discharge for another reason such as misconduct or unsatisfactory duty performance.

7.10.3. Processing. Commanders must act promptly in considering initiating discharge when a member is disqualified in all AFSCs/SFSCs, and retraining is not recommended, or recommended retraining is not approved by AFPC Military Sustainment and Transition Programs Division (AFPC/DP3S). **(T-1)** If the commander chooses not to initiate separation action, the commander must have the decision reviewed by the separation authority. **(T-1)**

7.10.3.1. Tell how the member qualifies for discharge under **paragraph 7.10.1** and comment on retraining options.

7.10.3.2. Include documents showing how the requirements of **paragraph 7.10.1** are met and state the member is not ineligible under **paragraph 7.10.2**.

**7.11. Conditions that Interfere with Military Service.** Members may be discharged based upon a physical or mental condition which a commander has determined interferes with assignment or duty performance, but which does not make them eligible for disability processing under AFI 36-3212.

7.11.1. Condition Not Constituting a Physical Disability. A recommendation for discharge under this provision must be supported by a diagnosis from a medical provider confirming the existence of the condition or disorder. **(T-0)**

7.11.1.1. Prior to the initiation of discharge, the member must be counseled in writing that the condition or disorder does not qualify as a disability or make the member eligible for disability processing under AFI 36-3212. **(T-0)**

7.11.1.2. A recommendation for discharge under this provision also includes documentation from the member's supervisory chain that the condition or disorder has resulted in an adverse effect on the member's assignment or duty performance. This explanation should detail the effects on the member's performance, conduct (on and off duty), inability to adapt to the military environment, or other reasons, that would limit the member's potential for completing their enlistment. The documentation must show that prior to initiation of discharge the member has been formally counseled concerning deficiencies and afforded an opportunity to correct those deficiencies. **(T-0) Note**: The squadron commander is responsible to ensure the counseling requirement has been met.

7.11.1.2.1. Such evidence of adverse effect may include, but is not limited to, evaluations, counseling statements, training records, statements from instructors, supervisors, or peers, or other administrative actions or documentation.

7.11.1.2.2. A physical or psychological evaluation is not itself evidence of adverse effect, nor is any other consequence solely due to such an evaluation (e.g., temporary suspension of security clearance, suspension from performance of duties).

7.11.1.2.3. Adverse effect cannot consist of a determination that the member is unsuitable for deployment or worldwide assignment because of a condition or disorder if a Physical Evaluation Board (PEB) has found the member fit for duty for the same condition or disorder, unless approved by the SecDef.

7.11.1.2.4. Adverse effects must be evidenced in the member's current enlistment or extension of enlistment. **(T-1)**

7.11.2. Personality Disorder or Mental Disorder Not Constituting a Physical Disability. In the case of a personality disorder, or other mental disorder not constituting a physical disability, separation is only authorized if:

7.11.2.1. A diagnosis by an authorized Mental Health Professional (see **Attachment 1** for definition) utilizing the *Diagnostic and Statistical Manual of Mental Disorders*, current edition, that concludes that the disorder is so severe that the member's ability to function effectively in the military environment is significantly impaired.

7.11.2.1.1. Observed behavior of specific deficiencies should be documented in appropriate counseling or personnel records.

7.11.2.1.2. Documentation should include history from supervisors, peers, and others, as necessary to establish that the behavior is persistent, interferes with assignment to or performance of duty, and has continued after the member was counseled by a medical provider and afforded an opportunity to overcome the deficiencies.

7.11.2.2. A recommendation for discharge under this provision also includes documentation from the member's supervisory chain that the condition or disorder has resulted in an adverse effect on the member's assignment or duty performance. This explanation should detail the effects on the member's performance, conduct (on and off duty), inability to adapt to the military environment, or other reasons, that would limit the member's potential for completing their enlistment. The documentation must show that prior to initiation of discharge, the member has been formally counseled concerning

deficiencies and afforded an opportunity to overcome the deficiencies.  **(T-0) Note**:  The squadron commander is responsible to ensure the counseling requirement has been met.

7.11.2.2.1. Such evidence of adverse effect may include, but is not limited to, evaluations, counseling statements, training records, statements from instructors, supervisors, or peers, or other administrative actions or documentation.

7.11.2.2.2. A physical or psychological evaluation is not itself evidence of adverse effect, nor is any other consequence solely due to such an evaluation (e.g., temporary suspension of security clearance, suspension from performance of duties).

7.11.2.2.3. Adverse effect cannot consist of a determination that the member is unsuitable for deployment or worldwide assignment because of a condition or disorder if a PEB has found the member fit for duty for the same condition or disorder, unless approved by the SecDef.

7.11.2.2.4.  Adverse effects must be evidenced in the member's current enlistment or extension of enlistment.  **(T-1)**

7.11.2.3.  The member has been counseled in writing on the diagnosis of a personality disorder, or other mental disorder not constituting a physical disability.

7.11.2.4.  If the member is, or has been, in an imminent danger pay area or has filed an unrestricted report of sexual assault and has been diagnosed with a personality disorder or other mental disorder not constituting a physical disability, special processing under **paragraph 3.29** and **paragraph 3.30** is required.

7.11.2.5.  Separation for personality disorder, or other mental disorder not constituting a physical disability, is not appropriate nor should it be pursued when separation is warranted based on unsatisfactory performance or misconduct.  In such circumstances, the member should not be separated under this paragraph regardless of the existence of a personality disorder.

7.11.3.  If the member deployed to a contingency operation during the previous 24 months and has been diagnosed with PTSD or TBI, special processing under **paragraph 3.30** is required.

7.11.4.  If the member was sexually assaulted within the previous 24 months and has been diagnosed with PTSD or TBI, special processing under **paragraph 3.30** is required.

**7.12.  Action by the SPCMCA.** The SPCMCA is the final authority to approve or disapprove discharge under this provision unless a member who has made an unrestricted report of sexual assault requests review of the discharge (see **paragraph 3.30**.).  If the initiating commander is also the SPCMCA, the case is referred to the GCMCA.  If the SPCMCA also exercises the GCMCA, the vice commander may be designated, in writing, to act personally in these cases.  For the ARC, see **paragraph 13.1.1** for involuntary discharge and separation authority guidance.

*Section 7C—Defective Enlistments.*

**7.13.  Types of Defects.** Defective enlistments fall into five groups.  The action authorized or required for each type depends on the nature of the defect.

7.13.1. Enlistment of Minors.  A person under 17 years of age is barred by law from enlistment.  **(T-0)** For more information about these void enlistments, see below.  The parent

(or parents) or guardian (or guardians) of a member who is 17 may apply for the member's discharge if the conditions in **paragraph 4.19** are met.

7.13.2.  Void Enlistments:

7.13.2.1.  An enlistment may be void because the individual is underage or for a reason other than being a minor.  For information about conditions that bar the creation of a valid enlistment, see Title 10 United States Code Section 504, *Persons Not Qualified* and Title 10 United States Code Section 505, *Regular Components: Qualifications, Term, Grade*. An enlistment must be a voluntary act by a sane, sober person.  A deserter from another service cannot enlist in the DAF.  **(T-0)**

7.13.2.2.  A constructive enlistment is one that was void but has been validated when the person:

7.13.2.2.1.  Submits voluntarily to military authority.

7.13.2.2.2.  Met the mental competency and minimum age qualifications for enlistment at the time of voluntary submission to military authority.

7.13.2.2.3.  Received military pay or allowances; and

7.13.2.2.4.  Performed military duties.  **Note**:  A person who is a deserter from another service is released from the custody and control of the USAF or USSF without regard to a subsequent constructive enlistment.

7.13.2.3.  For information about separation from a void enlistment, see **paragraph 4.19**.

7.13.2.4.  If an enlistment that was void at inception has been validated IAW **paragraph 7.13.2.2**, treat it as an erroneous enlistment.

7.13.3.  Erroneous Enlistments.  An erroneous enlistment is one the USAF or USSF should not have accepted, but it does not involve fraud, such as unintentionally leaving certain legal and or medical history events off the enlistment documents.  For discharge or waiver options, see **paragraph 7.16.2** and **paragraph 7.19**.

7.13.4.  Fraudulent Entry.  A fraudulent entry is one involving deliberate deception on the part of the member.  For discharge or waiver options, see **paragraph 7.16.2** and **paragraph 7.19**.

7.13.5.  Defective Enlistment Agreements.  A member may be discharged based on a defective enlistment, reenlistment, or extension of enlistment.

7.13.5.1.  A defective enlistment agreement exists if as a result of a material misrepresentation by recruiting personnel, upon which the member reasonably relied, the member was induced to enlist with a commitment for which the member was not qualified.

7.13.5.2.  The member received a written enlistment commitment from recruiting personnel for which the member was qualified, but which cannot be fulfilled by the regular component or ARC.

7.13.5.3.  The enlistment was involuntary as defined in the UCMJ or state military code.

7.13.5.4.  The existence of a defective enlistment agreement does not bar appropriate disciplinary action, or other separation or discharge proceedings, regardless of when the defect is raised.

7.13.5.5.  Separation or discharge for defective enlistment agreement is appropriate only if the member did not knowingly participate in the creation of the defective agreement and, if the member discovers the defect, notifies the commander, first sergeant, or MPF within 30 days of discovery, or if the member should have reasonably known of the defect, and the member requests separation or discharge instead of other authorized corrective actions.

**7.14. Basis for Discharge for Erroneous Enlistment.** Errors in the enlistment process occur when the USAF or USSF does not have the true facts or does not take the right action. A member is subject to discharge from an erroneous enlistment, reenlistment, or extension of enlistment if:

7.14.1.  It would not have occurred had the relevant facts been known by the USAF or USSF and the eligibility criteria of DAFMAN 36-2032 and AFI 36-2606, had been followed.

7.14.2.  It was not the result of fraudulent conduct on the part of the member; and

7.14.3.  The defect is unchanged in any material respect.

**7.15. Basis for Discharge for Fraudulent Entry.** A member may be discharged for fraudulent entry based on the procurement of a fraudulent enlistment or period of military service through any deliberate, material misrepresentation, omission, or concealment that, if known at the time of enlistment or entry into a period of military service, might have resulted in rejection. The fraud may occur at any time in the enlistment process; for example, when members are asked to fill out forms.

7.15.1.  Alienage. Members must be discharged if they enter the USAF or USSF fraudulently or erroneously by claiming to be a citizen of the US or claiming to be lawfully admitted to the US for permanent residence. **(T-0)** Aliens are subject to discharge for fraudulent entry if they willfully misrepresented themselves as US citizens or for erroneous enlistment if they claim US citizenship under an honest, but mistaken belief they are citizens or do not misrepresent their nationality but are allowed to enter the AFR or ANG in violation of regulations in effect at the time of entry. For discharges under this provision, the separation authority must report the case to the nearest Immigration and Customs Enforcement office. **(T-0)**

7.15.2.  Final action by the official authorized to direct the execution of an approved discharge for fraudulent entry constitutes the USAF or USSF administrative determination of the existence of a fraudulent enlistment. The option to administratively discharge for fraud does not preclude action under the UCMJ or state military code based on the fraudulent entry or other violations.

**7.16. Action Required of the Commander:**

7.16.1.  Verification of the Facts. A commander who has information that shows an enlistment may be erroneous or fraudulent must verify the information as quickly as possible. **(T-1)**

7.16.1.1.  Official correspondence from another service, copies of documents from the personnel records, security investigative agency reports, or a computer printout from the Defense Manpower and Data Center may serve as proof of prior service. MPF Career Development Section helps get information about prior service and refers questions about documentation to AFPC/DPMSSR or ARPC for ARC.

7.16.1.2.  For the format for information requests about a civilian court record, use **Figure 7.1**.

7.16.1.3.  The local OSI detachment can run a fingerprint check through the Federal Bureau of Investigation to positively identify the person.

7.16.1.4.  The MTF can review information indicating concealment of medical defects or medical history.

7.16.2.  Evaluation of the Facts.  For information about disposition of cases involving specific types of fraud, see **paragraph 7.15** and **paragraph 7.19**.  As soon as the facts of the case are verified, the commander must decide whether to recommend discharge or waiver of the fraud or error. **(T-1)** If the commander fails to act, a constructive waiver may occur.  For more information, see **paragraph 7.19**.

7.16.3.  Recommendation for Disposition.  If a member is subject to discharge for erroneous enlistment or fraudulent entry, the commander acts promptly to recommend:

7.16.3.1.  Discharge for erroneous enlistment or fraudulent entry;

7.16.3.2.  Discharge for another reason; or

7.16.3.3.  Waiver of the option to discharge IAW **paragraph 7.19**.  **Note**:  Preprocessing counseling and rehabilitation are not applicable.

**7.17.  Concealment of Prior Service.**  Use **Table 7.1** for information about the disposition of members who conceal their records of prior service.

7.17.1.  It is the general policy to discharge members who conceal:

7.17.1.1.  Records of prior military service that would have made them ineligible for entry at the time of their entry.

7.17.1.2.  Facts about their prior service that would have made them ineligible for entry.

7.17.2.  Commanders who deem such action to be in the best interest of the USAF or USSF may recommend waiver of discharge for fraud in either of the above circumstances IAW **paragraph 7.19**.

7.17.3.  Members are not subject to discharge for fraud if the prior military service concealed:

7.17.3.1.  An unterminated enlistment in a reserve component of one of the armed forces, and before entering the USAF or USSF, the member had not received orders to report:

7.17.3.1.1.  To active military service; or

7.17.3.1.2.  For a medical examination in preparation for entry on active duty.

7.17.3.2.  A period of service that was not the last period of active service, and the last period of active service:

7.17.3.2.1.  Was disclosed.

7.17.3.2.2.  Was characterized as honorable.

7.17.3.2.3.  Included at least 2 years of active duty.

7.17.3.3.  The member's enlistment was terminated under conditions that, if made known at the time of entry, would not have been a bar to entry under the regulations in effect at that time.

**7.18. Concealment of Other Bars to Enlistment:**

7.18.1.  Civilian Court Records.  Members are subject to discharge for fraudulent entry based on concealment of a conviction by civil authorities that, if it had occurred after enlistment, would be a basis for discharge for misconduct.  For specific criteria, see **paragraph 7.40**.

7.18.2.  Medical Conditions.  Disqualifying psychiatric disorders are a bar to enlistment.  A member diagnosed with a disqualifying psychiatric disorder at the time of enlistment may be serving in a void enlistment.  AFPC/DPMSSR makes the decision in these cases for regular component, and the HQ AFRC Deputy Commander or designee, or TAG, makes the decision for reserve components.  For more information, see **paragraph 4.19**.  Use **Table 7.2** and **Table 7.3** for information about disposition of other cases involving concealment of medical defects or a history of medical conditions.

7.18.3.  Minors.  Members who are minors at the time of their entry are not subject to discharge under this section if they misrepresent their age or the consent of their parents or guardians.  They may be discharged for being a minor IAW **paragraph 4.19**.

**7.19.  Waiver of Discharge for Fraudulent Entry or Erroneous Enlistment.**  Members found to be subject to discharge under this section, except for reasons of alienage, may be granted waivers to stay in the USAF or USSF.  If they seem to be good risks, their retention may serve the best interest of the USAF or USSF.

7.19.1.  Fraudulent Entry.  In deciding whether to waive this discharge option, look at the type of fraud and whether there are extenuating circumstances.  Process a discharge waiver when retention of the member seems to be appropriate.  As a rule, members who conceal acts of sexual assault, child sexual assault, unwaiverable drug abuse, or other unwaiverable offenses, will not receive waivers.  **(T-1)** Note:  Unwaiverable refers to matters that could not be waived at the time the member enlisted.

7.19.2.  Erroneous Enlistment.  Find the cause of the error and be sure it did not involve fraud on the part of the member.  Consider the training the member received, evaluate the past duty performance, and determine the potential for satisfactory service in the future.  Waiver of discharge for erroneous enlistment may be appropriate when the defect:

7.19.2.1.  No longer exists.  For example, charges pending in civilian court at the time the member enlisted have been dismissed.

7.19.2.2.  Is one that could have been waived. Guidance on waivers is provided in DAFMAN 36-2032 or AFI 36-2606.

7.19.2.3.  Consists of failure to meet physical standards for enlistment and the member is medically qualified for worldwide duty.

7.19.2.4.  Is in the best interest of the USAF or USSF.

7.19.3.  Constructive Waiver.  If a commander has the facts of the case indicating possible fraud or error and fails to act, the member may become the recipient of a constructive waiver.  Failure to exercise the option to discharge when the facts are known tends to show intent to retain the member.  The mere passage of time, standing alone, is not sufficient for a constructive waiver.  There must be other acts in conjunction with the passage of time which reflect the intent to retain the member, such as promotion or reassignment.  **(T-1)**

7.19.3.1.  The determination as to whether there is a constructive waiver is made by the discharge authority, not by a discharge board or other authority although they may make recommendations.

7.19.3.2.  Where discharge action has been initiated, the passing of time is immaterial to the issue of whether a constructive waiver has resulted.

7.19.4. Processing Waiver Recommendations.   The squadron commander sends the recommendation to the SPCMCA through the servicing MPF (see **paragraph 13.1** for ARC involuntary discharge and separation authority guidance).   The recommendation gives a detailed, documented statement of the facts of the case, tells why the member is subject to discharge, and gives the reason for recommending the waiver.  The SPCMCA approves or disapproves the waiver.  If the SPCMCA initiated the recommendation, it is sent to the GCMCA for final action.  If the waiver is:

7.19.4.1.  Approved, take no further action on the defect in the enlistment.

7.19.4.2.  Disapproved, return the case to the commander to initiate discharge processing.

7.19.5.  Credit for Service.  Members discharged for fraudulent entry do not receive credit for the service they performed.  Members receive credit if:

7.19.5.1.  They are discharged for erroneous enlistment.

7.19.5.2.  The fraud is waived, and they are discharged for another reason.

**7.20. Discharge for Another Reason.** Members found to have entered fraudulently may be discharged for other reasons if there are extenuating circumstances.  Not all cases of fraudulent entry are the same, and they do not require the same action.  Some members, although they deserve a waiver of the fraud, cannot be retained in the USAF or USSF.  The fact that they are discharged should not be a bar to a waiver of the fraud if their enlistment motives and their military records justify the waiver.  A recommendation for discharge for another reason cites the specifics of the fraud and explains why the members should be discharged for another reason.  Approval of the recommendation constitutes a waiver of the fraud.  Two examples of cases in which the fraud might be waived to permit discharge for another reason follow:

7.20.1.  Example One.  The member entered fraudulently concealing a medical defect or the history of one, which, if made known at the time of entry, would have or might have precluded the entry.  The member serves at least half of the enlistment before the fraud is found.

7.20.1.1.  Medical examination shows the disqualifying medical condition still exists and disqualifies the member for retention in the USAF or USSF.  It is further found, or it becomes evident, that the member, at the time of entry, did not hide the medical information to get retirement and monetary benefits.

7.20.1.2.  Rather, the member came into the USAF or USSF in the honest but mistaken belief that the medical condition would not be a bar to service.  The member's military record since entry has been good.  In this case, there would be no objection to a waiver of the fraud so the member could be separated under AFI 36-3212 due to a disability existing prior to entry.

7.20.2.  Example Two.  The member enters fraudulently denying the existence of dependents which, if acknowledged, would or might have been a bar to entry.  The member serves over

half of the enlistment and then acquires more dependents.  New problems at home cause the member to apply for hardship discharge and the fraudulent entry is discovered.  If the member's service has been good and the conditions for hardship are met, there may be no objection to waiving the fraud to allow the member to be discharged IAW **Section 5C**.

**7.21.  Types of Separations Authorized and Approval Authority.**  See **Table 7.5** for the types of separation authorized and the approval authority for each.

7.21.1.  Members who conceal prior service not characterized as honorable should, as a rule, be discharged UOTHC.  In addition, refer to **paragraph 3.14.1.3** of this publication for special processing procedures for a service characterization UOTHC.

7.21.2.  If fraudulent enlistment is the only reason for discharge, the member is not eligible for probation and rehabilitation under **Chapter 9**.  If discharge is approved for another reason and the fraud is waived, the member is eligible for probation and rehabilitation.  In that case, the suspension is based on the reason for which separation was approved.

**Figure 7.1.  Sample Format for Request for Civilian Court Record Concealed at Time of Enlistment.**

---

(Appropriate Letterhead)

(Date)

MEMORANDUM FOR (CLERK OF THE APPLICABLE COURT)

FROM: (functional address symbol)

SUBJECT:  Request for Civilian Court Record - ACTION MEMORANDUM
We have been advised that (full name), who is now a member of the (Insert USAF or USSF) assigned to (enter base name), has been the subject of criminal action in your court.

(Give whatever information is available about the nature of the offense and the dates of the action.)

At time of enlistment, the member failed to admit having been arrested for, or convicted of, this offense.  We will use the information in deciding whether the member should be discharged or allowed to remain in the (Insert USAF or USSF).  If your records show that member is on parole or there are charges pending, please give us the name and address of the person or agency with whom we may correspond.  Please use the attached envelope to send us a certified copy of the court record showing the disposition of the case.  A self-addressed envelope requiring no postage is enclosed for your convenience.  Thank you for your assistance.

(Signature)

1 Attachment

---

*Section 7D—Entry Level Performance or Conduct.*

**7.22. Eligibility and Criteria.** Members in entry level status should be discharged when their unsatisfactory performance or conduct shows they are not qualified to be productive members of the USAF or USSF.

7.22.1. A member may be discharged under this provision only if the discharge processing starts during the first 365 days of continuous active military service or the first 365 days of continuous active military service after a break of more than 92 days of active service. ARC Only:  For ARC members who have not completed 365 days of continuous active military service and are not on active duty, entry level status begins upon enlistment in a reserve component unit (including a period of assignment to a delayed entry program).  Entry level status ends 365 days after beginning initial active duty training.  Thus, a member may be in entry level status for more than 365 days after enlistment.

7.22.2. Unsatisfactory performance or conduct may be shown in several ways.  They may include, but are not limited to:

7.22.2.1.  Lack of aptitude for military service.

7.22.2.2.  Failure to adapt to the military environment.

7.22.2.3.  Failure to make satisfactory progress in a required training program.

7.22.2.4.  Reluctance to make the effort necessary to meet DAF standards of conduct and duty performance.

7.22.2.5.  Lack of self-discipline.

7.22.2.6.  Minor disciplinary infractions.

7.22.2.7.  Failure to meet fitness standards.

7.22.2.8.  ARC Only.  Failure to report for scheduled initial active duty training within 365 days of enlistment.  **Note**:  If the member fails to report for scheduled inactive duty training within 365 days of enlistment, due to no fault of their own, it is reflected as a voluntary separation and not involuntary.  Factors due to no fault of the member include, but are not limited to, medical emergencies, deaths in the family, natural disasters, or other similar events.

7.22.3. Eligibility for discharge under this section does not preclude separation for another reason when the separation is authorized and warranted by the circumstances of the case.  For example, if the member failed in drug abuse rehabilitation, action under **Section 7F** may be more appropriate.

**7.23. Preprocessing Counseling and Rehabilitation.** Counseling and rehabilitation efforts are most necessary for members new to the service.

7.23.1. When unsatisfactory performance or conduct is the sole reason for discharge, they may not be separated until there have been efforts to help them meet DAF standards.  For more information, **see paragraph 7.2**.  **Note**:  Successful rehabilitation is largely dependent on the member's participation and positive attitude to successfully complete training or overcome or minimize deficiencies.

7.23.2. Members who wish to self-eliminate from a required training program should be counseled that such a request to withdraw could result in discharge without further counseling or rehabilitation.  Additional training, the opportunity to retrain, or the opportunity to be reclassified are not required.

7.23.3. Training supervisors and commanders should evaluate the member's motivation and potential for continued service in determining whether further rehabilitative efforts are warranted or whether the member should be discharged.  Commanders should keep a record of these actions and include them as attachments to the letter of notification if discharge is initiated.

**7.24.  Procedures, Type of Separation, and Approval Authority:**

7.24.1.  Comply with the notification procedures in **paragraph 8.8**.  Cite the specific incidents that led to the decision to recommend discharge.  Include all records of formal counseling and rehabilitation efforts.  Note the member's response, or the lack of response, to these efforts.

7.24.2.  The records of members with very brief service do not contain all the items of information required for the commander's recommendation (**Figure 8.4**.).  The first four items in the recommendation are needed in every case.  Show the others only if they exist for the member.

7.24.3.  Discharge under this section is described as an entry level separation.

7.24.4.  The SPCMCA personally approves or disapproves discharge under this section provision unless a member who has made an unrestricted report of sexual assault requests review of the discharge (see **paragraph 3.29**.).  If the SPCMCA also exercises GCMCA, the vice commander may be designated, in writing, to act personally on these cases.  If the SPCMCA is the initiating commander, the case is referred to the GCMCA for final decision.  See **paragraph 13.1.1** for ARC involuntary discharge and separation authority guidance.

*Section 7E—Unsatisfactory Performance.*

**7.25. Eligibility.** Members should be discharged when their unsatisfactory performance or conduct shows they are not qualified for service with the USAF or USSF.  Performance in the USAF or USSF includes but is not limited to work done as assigned duties, military training, bearing, and behavior.  It necessarily includes the member's continuing responsibility for maintaining the high standards of personal behavior and conduct required of military members at all times.  Members may not be discharged under this provision:

7.25.1.  If they are in entry level status.  Unsatisfactory performance in entry level status is a basis for discharge under **paragraph 7.22**.

7.25.2.  Until they have been counseled about their deficiencies and have a chance to overcome them.

**7.26. Criteria.** Members are subject to discharge for unsatisfactory performance based on documented failure to meet DAF standards.  Commanders weigh a member's conduct, military deportment, and duty performance against those of other members of like grade, age, and length of service.  While unsatisfactory performance may be due to one flaw in a member's abilities, it is often reflected in more than one way.  When this is the case, the recommendation for discharge for unsatisfactory performance should cite all the deficiencies that were not overcome by

counseling and rehabilitation.  One or more of the following may be used as the basis for discharge under this provision:

7.26.1.  Unsatisfactory duty performance:

7.26.1.1.  Failure to perform assigned duties properly.

7.26.1.2.  A progressively downward trend in performance ratings.

7.26.1.3.  Failure to demonstrate the qualities of leadership required by the member's grade.

7.26.2.  Failure to maintain standards of dress and personal appearance (other than fitness standards) or military deportment.  See DAFI 36-2903, *Dress and Personal Appearance of United States Air Force and United States Space Force Personnel*.

7.26.3.  Failure to progress in military training required to be qualified for service with the AF or for performance of primary duties.

7.26.4.  Irresponsibility in the management of personal finances.

7.26.5.  Failure to meet minimum fitness standards.  Members who fail to meet minimum standards of fitness for reasons not amounting to disability may be discharged.  Follow the procedures for fitness management before starting discharge actions.  Make sure the case file shows the record of those actions. Guidance on fitness management is provided in DAFMAN 36-2905, *Department of the Air Force Physical Fitness Program.*

7.26.6.  Job Skill Proficiency.  Failure to attain or maintain required job skill proficiency, either by associated ineptitude or non-application.

7.26.7.  (ARC Only) Readiness.  Performance which does not contribute to unit readiness and mission accomplishment, as specifically evidenced by below average performance, or specific demonstrated incapacity to meet performance standards.

7.26.8.  (ARC Only) School Requirement.  Failure to complete a mandatory technical school requirement which was a condition of enlistment or assignment action.  A member who fails to complete or is eliminated from training is discharged from the state, territory, or the District of Columbia ANG and as a reserve of the AF.  If the member has at least a 3-skill level in an AFSC authorized on the unit manpower document, use command discretion to assign member to this authorization.

**7.27.  Preprocessing Actions:**

7.27.1.  Do not start discharge action based on unsatisfactory performance until the member has been formally counseled about the deficiencies and has had a chance to overcome them.

7.27.1.1.  The counseling and rehabilitation requirements of **paragraph 7.2** are particularly important in these cases.  A member should not be discharged for unsatisfactory performance until there have been reasonable efforts at rehabilitation.

7.27.1.2.  Document a member's performance which may assist a commander when considering a member for discharge under this provision. Guidance on documenting performance is provided in DAFI 36-2406.

7.27.2.  Differentiate between members who should be discharged for unsatisfactory performance and those who should be discharged for misconduct IAW **Section 7G**.

7.27.3. Unsatisfactory performance should not be the sole basis for a discharge recommendation if the circumstances of the case warrant consideration of discharge for failure in drug or alcohol abuse rehabilitation or misconduct.  For information about processing an action based on more than one reason, see **Section 8F**.  **Note**:  Successful rehabilitation is largely dependent on the member's participation and positive attitude to successfully complete training or overcome or minimize deficiencies.

7.27.3.1.  Members who wish to self-eliminate, to include drop on request, from a required training program should be counseled that such a request to withdraw could result in discharge without further counseling or rehabilitation. Additional training, the opportunity to retrain, or the opportunity to be reclassified are not required.

7.27.3.2.  Training supervisors and commanders should evaluate the member's motivation and potential for continued service in determining whether further rehabilitative efforts are warranted or whether the member should be discharged.  Commanders should keep a record of these actions and include them as attachments to the letter of notification if discharge is initiated.

**7.28.  Separation Authority and Type of Separation:**

7.28.1. The SPCMCA personally approves or disapproves discharge under this provision unless a member who has made an unrestricted report of sexual assault requests review of the discharge (see **paragraph 3.29**.).  If the SPCMCA also exercises GCMCA, the vice commander may be designated, in writing, to act personally on these cases.  If the SPCMCA is the initiating commander, the case is referred to the GCMCA for final decision; see **paragraph 13.1.1** for ARC involuntary discharge and separation authority guidance.

7.28.2.  The service of members discharged for unsatisfactory performance is characterized as honorable or general (instructions for service characterization in **Section 3A**, apply).  However, if the sole reason for separation is for failure to meet physical fitness standards, then only an honorable characterization may be given.

**7.29.  Suspension of Discharge.**  Members approved for discharge under this provision should be considered for probation and rehabilitation under **Chapter 9**.  If the respondent has lengthy service or sanctuary, comply with **Section 8E**.

*Section 7F—Substance Abuse Treatment Failure.*

**7.30.  Commander's Options.**  Successful treatment and return to duty of members who abuse alcohol or other drugs is the objective of the substance abuse control programs.  Before commanders start action to discharge members who abuse alcohol or other drugs, they must:

7.30.1.  Look at all the facts of the case to ensure compliance with AFI 44-121.

7.30.2.  Evaluate evidence of the member's failure to meet other DAF standards.  **(T-1)** If the military record in the current enlistment would support discharge for another reason, it may be appropriate to process the separation under another section of this chapter.

7.30.3.  Differentiate between the member who should be discharged under this section and one who should be discharged for misconduct or unsatisfactory performance.  **(T-1)** For example, illegal activity in connection with drugs may be a basis for discharge for misconduct. Deteriorating duty performance, failure to meet DAF standards, and financial irresponsibility

associated with alcohol abuse may be a basis for discharge for unsatisfactory performance. The fact that a member has been entered in a rehabilitation program does not bar discharge for other reasons.

**7.31.  Failure in Drug Abuse Treatment.**

7.31.1.  Members are subject to discharge under this provision if they:

7.31.1.1.  Are in a program of rehabilitation for personal abuse of drugs.

7.31.1.2.  Fail to successfully complete the program due to:

7.31.1.2.1.  Inability.

7.31.1.2.2.  Refusal to participate in the program.

7.31.1.2.3.  Unwillingness to cooperate.

7.31.2.  Such members should be separated if they:

7.31.2.1.  Lack the potential for continued military service.

7.31.2.2.  Need long-term treatment and are transferred to a civilian medical facility for treatment.

**7.32.  Failure in Alcohol Abuse Treatment.**

7.32.1.  Members are subject to discharge under this provision if they:

7.32.1.1.  Are in a program of treatment for alcohol abuse; and

7.32.1.2.  Fail to successfully complete the program due to:

7.32.1.2.1.  Inability.

7.32.1.2.2.  Refusal to participate in the program.

7.32.1.2.3.  Unwillingness to cooperate.

7.32.2.  Such members should be separated if they:

7.32.2.1.  Lack the potential for continued military service; or

7.32.2.2.  Need long-term treatment and are transferred to a civilian medical facility for treatment.

**7.33.  Type of Separation and Separation Authority.**

7.33.1.  Separation under this section is:

7.33.1.1.  Described as an entry level separation if the member is in entry level status.

7.33.1.2.  Characterized as honorable or general IAW **Section 3A, paragraph 3.14.1.3**, in other cases.

7.33.2.  Refer to **paragraph 3.18.6** to determine if information concerning personal alcohol or drug abuse provided by the member, or if evidence of drug abuse derived from drug testing, may be considered on the issue of characterization.

7.33.3.  The SPCMCA personally approves or disapproves discharge under this section unless a member who has made an unrestricted report of sexual assault requests review of the

discharge (see **paragraph 3.29.**).   If the SPCMCA also exercises GCMCA, the vice commander may be designated, in writing, to act personally on these cases.  If the SPCMCA is the initiating commander, the case is referred to the GCMCA for final decision.  See **paragraph 13.1.1** for ARC involuntary discharge and separation authority guidance.

**7.34. Suspension of Discharge.** Members approved for discharge under this provision are eligible for probation and rehabilitation under **Chapter 9**.  If they have lengthy service or sanctuary, the provisions of **Section 8E** apply.  In most cases, the failure in rehabilitation that is the basis for discharge makes probation and rehabilitation impractical.  In rare cases, it may be found that the particular circumstances warrant one last opportunity for probation and rehabilitation.  It should be authorized if there are good reasons to expect the member to serve satisfactorily.

*Section 7G—Misconduct.*

**7.35.  Members in all DAF components are required to maintain, both on and off duty, the high standards of personal conduct set for USAF and USSF members.  (T-1)** Unacceptable conduct at any time adversely affects military duty performance.

**7.36.  Types of Misconduct.**  Members are subject to discharge when there is evidence of one or more of the acts or patterns of misconduct described in this section.  If this requirement is met, the entire military record may be considered in deciding whether the member should be discharged or retained.

7.36.1.  For information about patterns of conduct that make a member subject to discharge, see **paragraph 7.39**.  Members in entry level status are not discharged under **paragraph 7.39**. If a pattern of minor disciplinary infractions warrants the discharge of a member in entry level status, process the case under **paragraph 7.22**.

7.36.2.  One serious military or civilian offense may be a basis for discharge for misconduct. Commanders should look closely at the specific circumstances of the offense and the guidance in **paragraph 38.1** to decide whether discharge processing is warranted.

7.36.3.  Conviction by civilian authorities is a basis for discharge under some conditions.  To find whether the action by a court makes the member subject to discharge for misconduct, see **paragraph 7.40**.

7.36.4.  Misconduct involving sexual assault is processed under **paragraph 7.44**.

7.36.5.  Misconduct involving fraudulent entry is considered under **paragraph 7.13**.

7.36.6.  Misconduct involving drug abuse is processed under **paragraph 7.43**.

7.36.7.  Do not start discharge processing for minor disciplinary infractions under **paragraph 7.38** or a pattern of misconduct, **paragraph 7.39**, until the member has been counseled about the deficiencies and given a chance to overcome them.  If the sole reason for discharge is one serious offense or a civilian court conviction, the counseling and rehabilitation requirements of **paragraph 7.2** are not applicable.

7.36.8. For guidance on how incomplete action under the UCMJ affects separation, review **paragraph 3.7**.

**7.37.  Type of Separation:**

7.37.1.  Refer to **Section 3A**, for guidelines for characterizing service.  Usually, discharges under **paragraph 7.39.**, **paragraph 7.40.**, **paragraph 7.41.**, **paragraph 7.43**, and **paragraph 7.44**, should be UOTHC if the misconduct occurred in a military status.  In addition, refer to **paragraph 3.14.1.3** of this publication for a service characterization UOTHC.

7.37.2.  If the service of a member warrants an UOTHC characterization and the sole basis for discharge is a serious offense that resulted in conviction by a court-martial authorized to impose a punitive discharge that did not impose a punitive discharge, the commander will process the case under **paragraph 8.2.2** and **paragraph 3.20.1**. **(T-1) Exception**:  Cases processed by the Commander, Security Forces Center, JBSA-Lackland TX, on members in rehabilitation or prisoners attached to an AF Correctional Facility are forwarded directly to AFPC/DPMSSR (**paragraph 3.20.1**).

7.37.3.  If discharge UOTHC does not appear to be warranted under those guidelines:

7.37.3.1.  The separation of a member in entry level status is described as an entry level separation.

7.37.3.2.  The separation of a member who has completed entry level status may be characterized as General (Under Honorable Conditions).

7.37.4.  The service of a member discharged under this section may be characterized as honorable only if:

7.37.4.1.  The member has completed entry level status.

7.37.4.2.  The member's record has been so meritorious that any other characterization would be clearly inappropriate; and

7.37.4.3.  The GCMCA or ANG separation authority approves the service characterization.

**7.38.  Minor Disciplinary Infractions.** A pattern of misconduct consisting solely of these infractions in the current enlistment makes a member subject to discharge.

7.38.1.  The infractions under this section may involve failure to comply with non-punitive regulations or minor offenses under the UCMJ or state military code.

7.38.2.  Infractions of this type result, as a rule, in informal (reduced to writing) or formal counseling, letters of reprimand, or Article 15 nonjudicial punishments.

7.38.3.  Do not discharge members in entry level status under this provision.  Process the action under **paragraph 7.22** if a member in entry level status should be discharged based on minor disciplinary infractions.

**7.39.  A Pattern of Misconduct.** (**Note**:  See **Section 8F,** the misconduct alleged does not have to be the same type of misconduct to create a pattern.)  A pattern of misconduct in the current enlistment consisting wholly or in part of misconduct more serious than that considered under **paragraph 7.38** makes a member subject to discharge.  The specific pattern or patterns of misconduct should be cited in the separation case.  See **Section 8F**, when more than one reason identified below is used.  The pattern may consist of:

7.39.1.  Discreditable Involvement with Military or Civilian Authorities.  Acts for which the member was or might have been punished under the UCMJ or state military code may be part

of the pattern. The lack of UCMJ or state military code jurisdiction over the offense is irrelevant. Civilian offenses that in and of themselves are not a basis for discharge under **paragraph 7.40** may be cited to show the pattern of misconduct.

7.39.2. Conduct Prejudicial to Good Order and Discipline. This includes conduct of a nature that tends to disrupt order, discipline, or morale within the military community. This category of misconduct usually involves causing dissent, disruption, and degradation of mission effectiveness. It also includes conduct of a nature that tends to bring discredit on the USAF or USSF in the view of the civilian community.

7.39.3. Failure to Support Dependents. An established pattern showing failure to contribute adequate support to dependents or failure to comply with orders, decrees, or judgments of a civilian court concerning support of dependents.

7.39.4. Dishonorable Failure to Pay Just Debts. An established pattern showing failure to pay just debts. This includes dishonorable failure to make timely payments on the government travel card. Dishonor is presumed when the member fails to make any payments for a period of 120 or more consecutive days, or when the member fails to keep any promise for payment specifically made on any debt. The member may rebut the presumption through the introduction of competent and relevant evidence.

**7.40. Commission of a Serious Offense.** Members are subject to discharge for misconduct based on the commission of a serious offense if a punitive discharge would be authorized for the same or a closely related offense under the UCMJ or state military or criminal code for ANG. Discharge processing should be initiated if the specific circumstances of the offense warrant separation. Discharges based on other serious offenses not specifically listed below should cite **paragraph 7.40.4**.

7.40.1. Sexual Misconduct. Members are subject to discharge for misconduct based on acts of sexual misconduct not referenced in **paragraph 7.44**, which include, but are not limited to, the following specific UCMJ offenses: stalking; indecent viewing, indecent recording, broadcasting of an indecent recording, distribution of an indecent visual recording; forcible pandering; indecent exposure; indecent conduct or other offenses. Discharge of ANG members may be based on the same or closely related provisions of the state military or criminal code.

7.40.2. Prolonged Unauthorized Absence. Members may be discharged for misconduct based on unauthorized absence continuing for 1 year or more. When a member who has been absent for 1 year or more returns to military control, the GCMCA decides whether the member is tried by court-martial. If trial for the unauthorized absence is barred, or is considered inadvisable, the member may be processed for administrative discharge. Discharge processing takes place at the base where the member returns to military control. Members who do not return to military control may not be processed for discharge for unauthorized absence without the approval of AFPC/DPMSSR. Refer to **Section 8G**, for more information.

7.40.3. Unprofessional Relationships with prospective members of the Armed Forces or new members during recruiting, Entry-Level Processing, Entry-Level Training, or initial Skills Training (Reference, AFI 36-2909, *Air Force Professional Relationships and Conduct*). members whose duties include recruiting or assessing persons for enlistment or appointment as a commissioned officer, or are assigned to a Military Entrance Processing Station, or

performing duties as faculty or staff at entry level training facility or school relationships should be professional and impartial, do not create the appearance of favoritism, and do not detract from the professional image the USAF and USSF project.  These members are subject to discharge for misconduct for:

7.40.3.1. Engaging or attempting to engage in an unprofessional relationship with a prospective member of the Armed Forces during recruiting, entry level processing, entry level training, or initial skills training.

7.40.3.2. Engaging or attempting to engage in an unprofessional relationship with new members during entry level processing, entry level training, or initial skills training.

7.40.3.3. Unprofessional Relationships Mandatory Discharge Processing.  Discharge processing must be initiated against a member identified in **paragraph 7.40.3**, for engaging or attempting to engage in any of the following prohibited activities in **paragraph 7.40.3.3.1** through **paragraph 7.40.3.3.4** with a prospective member of the Armed Forces or an USAF/USSF member undergoing entry level processing, entry level training, or initial skills training. See **paragraph 7.40.3.6** for procedural guidance. Covered enlisted members will not:

7.40.3.3.1. Develop, or conduct a personal, intimate, or sexual relationship with a prospective member, an applicant, or a recruit. This includes, but is not limited to, dating, handholding, kissing, embracing, caressing, and engaging in sexual activities. Prohibited personal, intimate, or sexual relationships include those relationships conducted in person or via cards, letters, e-mails, telephone calls, instant messaging, video, photographs, social networking, or any other means of communication.

7.40.3.3.2. Use grade or position, threats, pressure, or promise of return of favors or favorable treatment to gain sexual favors from a recruit or trainee.

7.40.3.3.3. Make sexual advances toward, or seek or accept sexual advances or favors from, a recruit or trainee.

7.40.3.3.4. Allow entry of any recruits or trainees into their dwelling. **Note**:  See Special Considerations section in AFI 36-2909 for exceptions related to command-authorized programs, activities, and events.

7.40.3.4.  Discharge processing may be initiated against a member identified in **paragraph 7.30.3** for engaging or attempting to engage in the specific prohibited relationships and activities contained in AFI 36-2909, with a prospective member of the USAF/USSF or an USAF/USSF member undergoing entry level processing, entry level training, or initial skills training not already addressed in **paragraph 7.40.3**.

7.40.3.5. Processing Procedures.  Commanders must act promptly to initiate discharge processing under this publication for the first substantiated violation of engaging or attempting to engage in any of the following prohibited activities in **paragraph 7.40.3.3.1** through **paragraph 7.40.3.3.4** by a member covered under **paragraph 7.40.3**.  **(T-1)** The requirement to initiate administrative processing does not mean that the result of that processing must be administrative discharge.  The specific facts of each individual case will determine whether administrative discharge is appropriate.  There is no time limit for initiating discharge action, and failure to do so does not at any time constitute a constructive

waiver.  Discharge action is waived only if a waiver is expressly approved under **paragraph 7.40.3.6.6** and **Section 8K**.  **(T-1)**

7.40.3.5.1.  Substantiated Violations.  Commanders must initiate discharge processing when:  an enlisted member covered under **paragraph 7.40.3** has a court-martial conviction for one of the prohibited activities identified in **paragraph 7.40.3.3.1** through **paragraph 7.40.3.3.4** of this publication, but the adjudged sentence does not include a punitive discharge or a nonjudicial punishment authority determines an enlisted member covered under **paragraph 7.40.3** committed a violation of one the prohibitions identified in **paragraph 7.40.3.3.1** through **paragraph 7.40.3.3.4** of this publication.  **(T-0)**

7.40.3.5.2.  An issuing authority determines through administrative action (e.g., letter of reprimand, admonishment, or counseling), that an enlisted member covered under **paragraph 7.40.3** committed a violation of one the prohibitions identified in **paragraph 7.40.3.3.1** through **paragraph 7.40.3.3.4** of this publication.  **(T-1)**

7.40.3.6.  Retention Criteria and Consideration.

7.40.3.6.1.  Following initiation of discharge notification for a member found to have engaged, or attempted to engage, in an unprofessional relationship with prospective members of the Armed Forces or new members during recruiting, entry level processing, entry level training, or initial skills training, an enlisted member may submit a request for retention for consideration by the separation authority.  In deciding whether to waive separation, a separation authority gives full consideration to the retention criteria contained in **paragraph 7.40.3.6**.

7.40.3.6.2.  An enlisted member found to have engaged, or attempted to engage, in an unprofessional relationship with prospective members of the Armed Forces or new members during recruiting, entry level processing, entry level training, or initial skills training, IAW **paragraph 7.40.3.3.1** through **paragraph 7.40.3.3.4**, will be discharged unless the enlisted member meets all of the following criteria:  the misconduct is a departure from the member's usual and customary behavior; **(T-1)** the misconduct is not likely to recur; **(T-1)** the misconduct did not involve the use of force, threats, or coercion; **(T-1)** the misconduct was not the result of an abuse of rank, grade, authority, or position; **(T-1)** and under the particular circumstances of the case, the enlisted member's continued presence in the USAF or USSF is consistent with the interest of the USAF or USSF in maintaining proper discipline, good order, leadership, and morale.  **(T-1)**

7.40.3.6.3.  In addition to the retention criteria, the commander, the board members, and the separation authority must all consider the impact of the misconduct on the prospective member of the Armed Forces or new member and their views on retention.  **(T-1)**

7.40.3.6.4.  The burden of proving that retention is warranted under these limited circumstances rests with the enlisted member.  Findings regarding the existence of each of the limited circumstances warranting the enlisted member's retention are required of the board or separation authority only if:  the enlisted member clearly and specifically raises such limited circumstances in their response to the discharge

notification or if the board, or in the absence of a board, the separation authority relies upon such circumstances to justify the enlisted member's retention.

7.40.3.6.5.  The enlisted member's squadron commander may support the waiver of discharge to the separation authority.  The squadron commander provides the separation authority the commander's reason(s) for recommending the waiver, to include a statement explaining how the enlisted member meets each of the retention criteria set forth in **paragraph 7.40.3.6**, rehabilitative action taken in the enlisted member's case, and any other relevant information.

7.40.3.6.6.  The separation authority determines, based on the enlisted member's retention submissions, whether the facts and circumstances of an enlisted member's case meet the retention criteria.

7.40.3.6.7.  If the separation authority approves the waiver, no further action in the case is required.  If it is disapproved, discharge processing continues.

7.40.3.7.  A member found to have engaged, or attempted to engage, in an unprofessional relationship with prospective members of the Armed Forces or new members during recruiting, entry level processing, or entry level training is not eligible for probation and rehabilitation IAW **Chapter 9**.

7.40.4.  Other Serious Offenses.  If the offense that makes the member subject to discharge under this paragraph is not covered in **paragraph 7.40.1.**, **paragraph 7.40.2**, or **paragraph 7.40.3**, cite this paragraph as the basis of the action.

## 7.41.  Civilian Conviction:

7.41.1.  Members are subject to discharge for misconduct based on conviction by civilian authorities or action equal to a finding of guilty, including similar adjudications in juvenile proceedings, when:

7.41.1.1.  A punitive discharge would be authorized for the same or a closely related offense under the UCMJ or state military code; or

7.41.1.2.  The sentence by civilian authorities includes confinement for 6 months or more without regard to suspension or probation.

7.41.2.  Action equal to a finding of guilty may occur despite the absence of a specific finding of guilty by the court.  In such case, a respondent may still be discharged although not convicted in a civilian court.  The most common example of this exists where, under statutory authority, a court or other agency of the judicial or legal system (to include a state or county prosecuting attorney in some instances) without a specific finding of guilty, and with the consent of the individual, proceeds to subject the individual to some form of deprivation or restraint of the unrestrained liberty the individual enjoyed up to that time for a period of time as a condition to some ultimate official act of grace, forgiveness, or dismissal of charges; for example, successful probation in return for a clean record.

7.41.3.  Commanders will act promptly when they have information indicating a member is subject to discharge based on a civilian conviction.  **(T-2)** They evaluate the specific circumstances of the offense, the actions of the civilian authority, the member's records, and the member's potential for future service and take prompt action to initiate discharge or waiver action.  Where there has been no action taken which is tantamount to a finding of guilty, or an

adjudication of guilty has been set aside under Federal or state laws, the unit commander may consider the member for discharge for [unsatisfactory duty] performance under **paragraph 7.26**, for a different misconduct basis under this section, or by direction of the SecAF, under **paragraph 3.2**, if otherwise appropriate.

7.41.3.1.  If it is warranted, discharge action is started promptly.  However, there is no time limit for initiating discharge action, and failure to do so does not, at any time, constitute constructive waiver.  Discharge action is waived only if waiver is expressly approved under **Section 8H** or if the limitations of **paragraph 7.41.3.3** apply.

7.41.3.2.  If the commander determines that retention is appropriate and the civilian conviction involves an offense for which a punitive discharge would be authorized for the same or closely related offense under the UCMJ or state military code, then a request for waiver of discharge must be processed.  **(T-1)**

7.41.3.3.  If the commander determines that retention is appropriate and the offense under the UCMJ or state military code does not authorize a punitive discharge, then a request for waiver of discharge is not required.

7.41.4.  For processing instructions unique to cases involving civilian conviction, see **Section 8H**.

**7.42. Human Immunodeficiency Virus (HIV).** A member with serologic evidence of HIV infection may be discharged when the member is found not to have complied with lawfully ordered preventive medicine procedures.  Guidance on preventive medicine procedures is provided in AFI 44-178, *Human Immunodeficiency Virus Program*.

**7.43. Drug Abuse.** Drug abuse is incompatible with military service and members who abuse drugs one or more times are subject to discharge for misconduct.

7.43.1.  Drug abuse for purposes of this regulation is the illegal, wrongful, or improper use, possession, sale, transfer, or introduction onto a military installation of any drug.  This includes improper use of prescription medication.  The term drug includes any controlled substance in schedules I, II, III, IV, and V of Title 21 United States Code Section 812, *Schedules of Controlled Substances*.  It also includes anabolic/androgenic steroids, and any intoxicating substance, other than alcohol or tobacco, that is inhaled, injected, consumed, or introduced into the body in any manner for purposes of altering mood or function.

7.43.2.  The presence of persons in the military environment who engage in drug abuse seriously impairs accomplishing the military mission.  Members who abuse drugs adversely affect the ability of the USAF and USSF to:

7.43.2.1.  Maintain discipline, good order, and morale.

7.43.2.2.  Foster mutual trust and confidence among members.

7.43.2.3.  Facilitate assignments and worldwide deployment.

7.43.2.4.  Recruit and retain members.

7.43.2.5.  Maintain public acceptability of military service.

7.43.2.6.  Prevent breaches of security.

7.43.3. Evidence obtained through urinalysis or evidence furnished by the member in connection with initial entry in rehabilitation and treatment may be used to establish a basis for discharge.  See **paragraph 3.18** for limits on using such evidence in characterizing service.

7.43.4.  Processing Procedures.

7.43.4.1. Action required.  Commanders act promptly when they have information indicating a member is subject to discharge for drug abuse.  They evaluate the specific circumstances of the offense, the member's records, and the member's potential for future service and take prompt action to initiate discharge or waiver action IAW the following paragraphs:

7.43.4.1.1.  If it is warranted, discharge action is started promptly.  However, there is no time limit for initiating discharge action, and failure to do so does not at any time constitute a constructive waiver.  Discharge action is waived only if waiver is expressly approved under **Section 8I** or if the limitations of **paragraph 7.3.1** apply.

7.43.4.1.2.  If the commander determines a waiver of discharge is appropriate, a request for waiver must be processed promptly.  **(T-3)** See **Section 8I**.

7.43.4.2.  Retention Criteria and Consideration.  A member found to have abused drugs is discharged unless the member meets all of the following criteria:

7.43.4.2.1.  Drug abuse is a departure from the member's usual and customary behavior.

7.43.4.2.2.  Drug abuse occurred as the result of drug experimentation (a drug experimenter is defined as one who has illegally or improperly used a drug for reasons of curiosity, peer pressure, or other similar reasons) and does not involve recurring incidents, other than drug experimentation as defined above.

7.43.4.2.3.  The member does not desire to engage in or intend to engage in drug abuse in the future.

7.43.4.2.4.  Under the circumstances of the case, the member's continued presence in the USAF or USSF is consistent with the interest of the USAF or USSF in maintaining proper discipline, good order, leadership, and morale (e.g., Noncommissioned Officers have special responsibilities by virtue of their status; fulfill an integral role in maintaining discipline; and, therefore, must exhibit high standards of personal integrity, loyalty, dedication, devotion to duty and leadership).

7.43.4.2.5.  Drug abuse did not involve drug distribution.  For the purpose of this paragraph, drug distribution means the delivery to the possession of another.  Distribution does not occur with the transfer of the drugs from one person to another while such persons are engaged in the mutual use of drugs, except those individuals who obtain, or arrange for obtaining, the drugs used by others are involved in distribution.  "Delivery" means the actual, constructive, or attempted transfer of the drugs, whether or not there exists an agency relationship.

7.43.4.3.  The burden of proving that retention is warranted under these limited circumstances rests with the member.  Findings regarding the existence of each of the limited circumstances warranting a member's retention are needed from the board or the separation authority only if:

7.43.4.3.1.  The member clearly and specifically raises such limited circumstances.

7.43.4.3.2.  The board, or in the absence of a board, the separation authority relies upon such circumstances to justify the member's retention.

7.43.4.3.3.  A member approved for discharge for drug abuse is not eligible for probation and rehabilitation IAW **Chapter 9**.

**7.44. Sexual Assault.** Sexual assault is incompatible with military service, and members who commit these offenses are subject to discharge for misconduct.

7.44.1.  Sexual assault for purposes of this publication includes a broad category of sexual offenses consisting of the following specific UCMJ offenses: rape, sexual assault, aggravated sexual contact, abusive sexual contact, or attempts to commit these offenses.  This includes sexual offenses against children consisting of the following specific UCMJ offenses: rape of a child, sexual assault of a child, and sexual abuse of a child, or attempts to commit these offenses. Discharge of ANG members may be based on the same or closely related provisions of the state military or criminal code.

7.44.2.  The presence in the military environment of persons who commit sexual assault undermines the ability of USAF/USSF members to work effectively as a team, impairs readiness, and significantly detracts from accomplishing the military mission.   The presumption is that members who commit sexual assault will be discharged.  Members who commit a sexual assault adversely affect the ability of the USAF or USSF to:

7.44.2.1.  Maintain discipline, good order, and morale.

7.44.2.2.  Foster mutual trust and confidence among members.

7.44.2.3.  Facilitate assignments and prevent disruptions in worldwide deployment.

7.44.2.4.  Recruit and retain members.

7.44.2.5.  Maintain public acceptability of military service.

7.44.3.  Processing Procedures.

7.44.3.1.  Action required. Commanders will act promptly when they have information indicating a member is subject to discharge for sexual assault.  **(T-1)** They evaluate the specific circumstances of the offense and take prompt action to initiate discharge or waiver action IAW the following paragraphs:

7.44.3.1.1.  Commanders may not consider the member's personal, family, or financial circumstances; good military character or service record; or medical or mental health condition in determining whether the facts meet the requirements for discharge action with a sexual assault basis.  **Note**: Commanders may consider the member's service record and physical and mental condition when making a recommendation on characterization of discharge.

7.44.3.1.2.  If discharge action is warranted, it is started promptly.  There is no time limit for initiating discharge action, and there is no situation in which a delay in initiating discharge will constitute a constructive waiver.  Discharge action is waived only if a waiver is expressly approved under **Section 8J**.

7.44.3.1.3.  Waiver of Discharge.   Commanders may not consider the member's personal, family, or financial circumstances; good military character or service record; or medical or mental health condition in determining whether a waiver of discharge action is appropriate.  **Note**:  Commanders may, however, consider the member's service record and physical and mental condition when making a recommendation on characterization of discharge.  If the commander determines a waiver of discharge action is appropriate, a request for waiver must be processed promptly.  **(T-1)** See **Section 8J**.

7.44.3.2.  Exceptions to Mandatory Separation.

7.44.3.2.1.  A member found to have committed sexual assault will be discharged unless the member proves all the following five criteria by a preponderance of the evidence:

7.44.3.2.1.1.  The member does not have another substantiated allegation of sexual assault or sexual harassment at any point in their history, whether before joining the military or not and regardless of whether the member was on active duty at the time of the offense.

7.44.3.2.1.2.  The sexual assault did not involve a child victim, or a sexual act as defined in Article 120, UCMJ.

7.44.3.2.1.3.  The sexual assault was not committed (1) by using or threatening such physical strength or violence as is sufficient to overcome, restrain, or injure a person, (2) by threatening or placing the other person in fear that any person will be subjected to death, grievous bodily harm, or kidnapping; (3) when the victim was incapable of consenting to the sexual contact due to impairment by a drug, intoxicant, or other similar substance, a mental disease or defect, or physical disability, and the person committing the assault knew or reasonably should have known the victim was incapable of consenting to the sexual contact due to impairment by a drug, intoxicant, or other similar substance, a mental disease or defect, or physical disability; (4) by administering to the other person by force or threat of force, or without the knowledge or consent of the person, a drug, intoxicant, or other similar substance and thereby substantially impairing the ability of the other person to appraise or control conduct; (5) by making a fraudulent representation that the sexual contact served a professional purpose; or (6) by inducing a belief by artifice, pretense, or concealment that the person committing the assault was another person.

7.44.3.2.1.4.  The sexual assault was not the result of an abuse of rank, grade, authority, or position.  The government need not present any evidence and the member is presumed to have abused his/her authority in the following circumstances: (1) the member is a recruiter or trainer providing entry-level training and the victim was a prospective member, applicant, recruit, trainer, student, or cadet, (2) the member was the superior in a direct superior-subordinate relationship with the victim, to include civilian subordinates; (3) the victim is a civilian employee/contractor in a corresponding grade lower to the member; (4) the victim was enlisted and the member was senior in grade to the victim by two or more grades; or, (5) the member was in the grade of E-5 or higher and senior in grade to

the victim.  Lack of evidence of these five enumerated circumstances does not mean the sexual assault was not the result of an abuse of rank, grade, authority, or position; rather, that the presumption of such does not exist.  Evidence may still be presented and a finding may be reached that the sexual assault was the result of an abuse of rank, grade, authority, or position.

7.44.3.2.1.5. Under the circumstances of the case, the member's continued presence in the Department of the Air Force is consistent with the interest of the Department of the Air Force in maintaining proper discipline, good order, leadership, morale, and a culture of respect for the safety, dignity, and personal boundaries of others.

7.44.3.2.2. Information concerning the member's personal, family, or financial circumstances; good military character or service record; or medical or mental health diagnoses is not relevant to the determination of whether the member meets all the criteria.  **Note**: The Member's service record and physical and mental condition may be considered when making a recommendation on characterization of discharge.

7.44.3.3. In addition to the exception criteria, the board or the separation authority considers the impact of the sexual assault on the victim and the views of the victim on retention.  The burden of proving that retention is warranted under each of these limited circumstances rests with the member.  Findings regarding the existence of each of the limited circumstances warranting a member's retention are needed from the board or the separation authority only if:

7.44.3.3.1.  The member clearly and specifically raises such limited circumstances.

7.44.3.3.2.  The board, or in the absence of a board, the separation authority relies upon such circumstances to justify the member's retention.

7.44.4.  A member approved for discharge for sexual assault is not eligible for probation and rehabilitation IAW **Chapter 9**.

**7.45. Separation Authority:**  Unless a member who has made an unrestricted report of sexual assault requests review of the discharge (see **paragraph 3.29**), the SPCMCA personally approves or disapproves recommendations for discharge under this section processed by:

7.45.1.  Notification IAW **paragraph 8.8**, and resulting in:

7.45.1.1.  Retention except in cases under **paragraph 7.43** and **paragraph 7.44**.

7.45.1.2.  General discharge under **Section 7G**.

7.45.1.3.  Entry level separation under **paragraph 7.22**.

7.45.2.  Board hearing IAW, **Section 8D** if the board recommends:

7.45.2.1.  Retention and action to request discharge IAW **paragraph 3.2** is not contemplated.

7.45.2.2.  General discharge or entry level separation and referral to the GCMCA for consideration of honorable discharge if not warranted IAW **paragraph 7.37**.

7.45.2.3.  If the SPCMCA is also the GCMCA, the vice commander may be designated, in writing, to personally act on actions listed in **paragraph 7.45.1.1** and **paragraph 7.45.1.2**.

7.45.3.  The GCMCA approves or disapproves the recommendations for discharge under this section which are not listed in **paragraph 7.45.1**.  The GCMCA approves or disapproves conditional and unconditional board hearing waivers for misconduct cases and cases when the SPCMCA is the initiating commander.  The SPCMCA has the authority to disapprove conditional board hearing waivers.

7.45.3.1.  The GCMCA must personally act on cases resulting in:

7.45.3.1.1.  Discharge UOTHC. **(T-0)**

7.45.3.1.2.  An honorable discharge based on misconduct. **(T-1)** The GCMCA may delegate to the SPCMCA to approve honorable separations when the sole evidence of misconduct is command-directed urinalysis results, which cannot be used for characterization of service, or when an administrative discharge board has recommended separation with an honorable discharge.

7.45.3.1.3.  Disapproval of a SPCMCA's recommendation for an honorable discharge for misconduct. **(T-1)**

7.45.3.1.4.  Disapproval of the SPCMCA's recommendation for action under **paragraph 3.2**. **(T-1)**

7.45.3.2.  The GCMCA may designate, in writing, the vice commander to act on all cases not requiring the personal attention of the GCMCA as listed in **paragraph 7.45.3.1**.

7.45.4.  The SPCMCA can disapprove conditional waivers.  See **paragraph 8.26**.

7.45.5.  For ARC involuntary discharge and separation authority guidance, see **paragraph 13.1.1**.

***Section 7H—Discharge in the Interest of National Security.***

**7.46.  Criteria for Discharge.**  A member whose retention is clearly inconsistent with the interest of national security may be discharged.  Discharge action IAW this paragraph is not started until:

7.46.1.  The final denial or revocation of a member's security clearance by appropriate authorities acting under DoDM 5200.02_AFMAN 16-1405 or failure of the member to apply for an initial or a reinvestigation for a clearance requires that separation be initiated.

7.46.2.  All applicable actions required by DoDM 5200.02_AFMAN 16-1405 must be completed.  **(T-0)**

7.46.3.  Only use this basis to separate members with a final denial or revocation of their secret security clearance if the underlying reason(s) for the denial or revocation is not an independent basis for discharge under this publication.  **(T-1)**

**7.47.  Required Processing.**  Process a recommendation for discharge in the interest of national security by board hearing or a waiver of board.  **(T-0)** Attach evidence of the action required by **paragraph 7.46**.  Comply with all applicable portions of **Chapter 8**.  Notify the DAF component of the DoD Central Adjudication Facility of the final decision in the case.  The preprocessing counseling and rehabilitation requirements of **paragraph 7.2** do not apply.

**7.48.  Types of Separation.**  Commanders and other officials responsible for recommending or approving discharge under this section must review and be guided by the criteria for service

characterization in **Section 3A**.  **(T-1)** The separation is described as an entry level separation if the member is in entry level status.  The service of other members may be characterized as honorable, general, or UOTHC.  In addition, refer to **paragraph 3.20** of this publication for special processing procedures for a service characterization UOTHC.

**7.49.  Separation Authority.**  The GCMCA personally takes final action on recommendations for discharge in the interest of national security.  The GCMCA's vice commander may be designated in writing to act in cases that do not involve the issuance of a discharge UOTHC.  For options of the separation authority, use **Table 8.10**.  For ARC involuntary discharge and separation authority guidance, see **paragraph 13.1.1**.

**Section 7I—Failure in Prisoner Retraining or Rehabilitation.**

**7.50.  Applicability and Separation Authority.**  This provision applies only to members in correction or rehabilitation programs conducted at the AF Security Forces Center, Corrections Division (AFSFC/SFC), JBSA-Lackland TX; Detachment 1, Fort Leavenworth KS; Detachment 2, Naval Consolidated Brig (NAVCONBRIG) Miramar, CA, or Detachment 3, Charleston Naval Brig, SC.  The Commander, AF District of Washington (USAF) and the Commander, Space Operations Command (SpOC), are authorized to take final action on recommendations for discharge under this provision for their respective services.  The authority may be delegated, in writing, to the respective vice commander.

**7.51.  Eligibility for Discharge.**  Members are not discharged under this provision if they are subject to an approved punitive discharge, whether suspended or not, or when other administrative or punitive action is more appropriate.

7.51.1.  Members may be discharged if:

7.51.1.1.  Through inability or unwillingness to cooperate they fail to satisfactorily progress in, or to complete, a prisoner retraining or rehabilitation program.

7.51.1.2.  They are not selected for a retraining or rehabilitation program.

**7.52.  Characterization of Service.**  As a rule, the service of a member discharged under this provision is characterized as General (Under Honorable Conditions).  An honorable discharge may be authorized if the member's service, apart from the reason for separation, has been so meritorious that any other characterization would be clearly inappropriate.

**7.53.  Processing Discharge Action.**  The commander will:

7.53.1.  Prepare a letter to the Commander, AF District of Washington & Space Operations Command (SPoC), recommending discharge and the type of discharge to be issued.  **(T-1)** A copy of the Prisoner Disposition Board Report with the admission and progress summary sheets is attached to the letter.  **(T-1)**

7.53.2.  Give the member a copy of the recommendation for discharge with a letter explaining:

7.53.2.1.  If the recommendation is approved, final decision as to the type of discharge to be issued rests with the separation authority.  **(T-1)**

7.53.2.2.  Statements in rebuttal to the proposed action may be submitted and are considered by the separation authority.  **(T-1)**

7.53.2.3.  Advice and assistance are provided by military legal counsel on request.  **(T-1)**

7.53.3.  Require the member to acknowledge receipt of the notice and state whether legal counsel is desired and whether a rebuttal will or will not be submitted.  **(T-1)**

7.53.4.  Send the recommendation for discharge, the member's acknowledgment, and any statements submitted by the member to the separation authority for final decision.  **(T-1)**

**7.54.  Separation Authority and the Type of Separation.**  The SPCMCA personally approves or disapproves discharge under this provision unless a member who has made an unrestricted report of sexual assault requests review of the discharge (see **paragraph 3.29**.).  If the SPCMCA also exercises GCMCA, the vice commander may be designated, in writing, to act personally on these cases.  If the SPCMCA is the initiating commander, the case is referred to the GCMCA for final decision.

**Table 7.1.  Action after Concealment of Prior Service is Verified.**

| R U L E | A<br>If verification of prior service discloses that the member | B<br>and, | C<br>then the action is to: | D<br>and, |
|---|---|---|---|---|
| 1 | Was discharged from a prior enlistment and is subject to discharge from the current enlistment because of concealment of prior service | | discharge the member or grant a waiver. | |
| 2 | Has an unterminated enlistment in a reserve component of one of the armed forces other than USAF or USSF | the member had not received orders to report for active military service or for a medical examination prior to enlistment in the USAF or USSF | advise the service concerned of the enlistment in the USAF or USSF | request that the member be discharged from the unterminated reserve enlistment. |
| 3 | | The member had received orders to report for active military service or medical examination in preparation for entry on active duty and the service concerned requests that USAF or USSF discharge the member | process the member for discharge. | |

| 4 | Is absent without leave (AWOL) or in desertion status from prior service in Army, Navy, Marine Corps or Coast Guard | the other service verifies the unauthorized absence | give the other service an opportunity to take custody | release the member from the void enlistment by reason of incompatible status. |
|---|---|---|---|---|
| 5 | Is AWOL or in desertion status from one prior service enlistment in the USAF or USSF | trial for desertion from the first enlistment is barred by the statute of limitations | discharge the member from the unterminated enlistment for prolonged un-authorized absence | dispose of the void enlistment or enlistments IAW Section **4A**. |
| 6 | Is AWOL or in desertion status from one prior service enlistment in the USAF or USSF | trial for desertion from the first enlistment is not barred by the statute of limitations | dispose of the charges by trial or other appropriate action. | |
| 7 | Is AWOL or in desertion status from more than one unterminated enlistment in the USAF or USSF | | discharge the member from the unterminated enlistment for prolonged un-authorized absence. | |

**Table 7.2.  Disposition of Case Involving Concealment of Mental Illness or Disorder.**

| R U L E | If a member enlists concealing a history of mental illness or disorder and is presently | and at the time of enlistment, the member | then the member may be |
|---|---|---|---|
| 1 | Able to understand the nature of the proceeding and help in the defense | had the substantial capacity to appreciate the illegality of the act and to conform to the law or established standards | discharged for fraudulent enlistment. |
| 2 | | because of mental illness or defect was not able to appreciate the illegality of the act and to conform to established standards (see **Note**) | discharged for erroneous enlistment. |
| 3 | Not able to understand the nature of the proceeding and help in the defense | | separated following guidance provided in AFI 36-3212. |

| | | | |
|---|---|---|---|
| 4 | | had the substantial capacity to appreciate the illegality of the act and to conform to the law or established standards | discharged for erroneous enlistment. |

**Note**:  If the member was diagnosed with a disqualifying psychiatric disorder, refer to **paragraph 4.18.**

**Table 7.3.  Disposition Entering Fraudulently Concealing Medical Disqualification (See Note 1).**

| RULE | A | B | C | D |
|---|---|---|---|---|
| | **If member enlists concealing:** | **and is now** | **then the member may be discharged for:** | **Or,** |
| 1 | Medical defects or a history of medical conditions (see **Note 2**) | medically qualified for further service | fraudulent entry | may be given a waiver of discharge. |
| 2 | | not medically qualified for further service (see **Note 3**) | | separated under Part 2 of this publication. |
| 2a | Medical defects or a history of medical conditions | not medically qualified for further service, but not subject to disability processing under **Part 2** of this publication | fraudulent entry. | |
| 3 | A record of prior service terminated by discharge for disability | | fraudulent entry based on concealment of prior service. | |

**Notes**:
1.  Members who did not enlist fraudulently and are disqualified for further service because of medical defects that existed prior to enlistment are considered for disability evaluation.
2.  For information about cases involving mental illness or disorder, see **Table 7.2**.
3.  For information about dual action cases, see **Section 8D**.

**Table 7.4.  Type of Separation and Approval Authority--Erroneous Enlistment or Fraudulent Entry.**

| RULE | A | B | C | D | E |
|---|---|---|---|---|---|
| | **If the reason for discharge** | **and the member is** | | **then the type of** | **and the authority** |

134    **DAFI36-3211  24 JUNE 2022**

| | is: | in Entry Level Status | not in Entry Level Status | separation | is |
|---|---|---|---|---|---|
| 1 | Erroneous enlistment | X | | is Entry Level Separation | the SPCMCA. |
| 2 | | | X | is honorable | |
| 3 | Fraudulent entry not involving prior service with less than an honorable discharge | X | | may be entry level separation | the SPCMCA. (See **Note 1** and **2**) |
| 4 | | | X | may be honorable or general | |
| 5 | Fraudulent entry involving prior service with less than an honorable discharge | X | | May by UOTHC | The GCMCA |
| | | | X | usually is UOTHC (see **Note 3**) | |

Notes:
1.  If the initiating commander is also the SPCMCA or a member who has made an unrestricted report of sexual assault requests review of the discharge (**see paragraph 3.29**), the case is referred to the GCMCA.
2.  If the SPCMCA is also the GCMCA, the vice commander may be designated, in writing, to personally act on this action.
3.  In rare cases a less severe type of discharge may be warranted.  In such circumstances the separation of a member from entry level status may be described as an entry level separation and other members may receive general discharges.  The separation authority's letter directing the type of separation gives the reason for the more favorable action.
4.  For ARC involuntary discharge and separation authority guidance, see **paragraph 13.1.1**.

**Table 7.5.  Reasons and Authority for Involuntary Separation.**

| RULE | A | B | C |
|---|---|---|---|
| | **Reason (see Note 1)** | **Authorizing Paragraph** | **Types of Separation/Service Characterization Authorized (see Note 2)** |
| 1 | Parenthood | **7.9** | Entry-Level Separation or Honorable discharge. |
| 2 | Insufficient retainability or unqualified for required retraining | **7.10** | Entry-Level Separation or Honorable discharge. |

**DAFI36-3211  24 JUNE 2022**                                                                      **135**

| 3 | Conditions that interfere with military service | **7.11** | Entry-Level Separation or Honorable discharge. |
|---|---|---|---|
| 4 | Erroneous enlistment | **7.14** | Entry-Level Separation or Honorable discharge. |
| 5 | Fraudulent entry (see **Note 3**) | **7.15** | Entry-Level Separation, or Honorable, General, or UOTHC discharge. |
| 6 | Entry-level performance and conduct | **7.22** | Entry-Level Separation. |
| 7 | Unsatisfactory performance | **7.25** | Honorable or General discharge. |
| 8 | Failure in drug abuse treatment | **7.31** | Entry-Level Separation, Honorable, or General discharge. |
| 9 | Failure in alcohol abuse treatment | **7.32** | Entry-Level Separation, Honorable or General discharge. |
| 10 | Misconduct (See **Note 4**) | **7.38 thru 7.44** | Entry-Level Separation, Honorable, General, or UOTHC discharge. |
| 11 | Discharge in the interest of national security | **7.46** | Entry-Level Separation, Honorable, General, or UOTHC discharge. |
| 12 | Failure in prisoner retraining or rehabilitation | **7.51** | Honorable or General discharge. |
| 13 | ARC Enlisted members dropped from rolls | **7.49** | N/A (*__Note 5__) |

**Notes**:
1. Before processing any individual for separation for these reasons, comply with requirements of **paragraph 3.7**, if applicable.
2. For guidance in determining the type of separation, see **Section 3A**.
3. Discharge UOTHC is usually appropriate if the person concealed prior service ending in a less than honorable discharge.
4. Only the GCMCA may approve an honorable or an UOTHC discharge. For ANG, SAF is the final approval for all UOTHC discharges.
5. There is no service characterization when dropped from the rolls. See **paragraph 3.16.3.1**.

## Chapter 8

### PROCEDURES FOR INVOLUNTARY DISCHARGE

*Section 8A—Processing Guidelines.*

**8.1. Separation or Retention.** If processing is not mandatory, the initiating commander, the board members, and the separation authority may evaluate the member's potential for future useful service. This is most important in a case where the member's prior service has been good. If separation is warranted, they may find that execution of the discharge should be suspended IAW **Chapter 9**. The facts and circumstances are different in each action and are judged on a case-by-case basis.

8.1.1. The decision to discharge or retain a member should be consistent with the USAF or USSF policy explained in **paragraph 3.5**. Before deciding, fully consider all the factors that make the member subject to discharge, including:

8.1.1.1. The seriousness of the circumstances that make the member subject to discharge and how the member's retention might affect military discipline, good order, and morale.

8.1.1.2. Whether the circumstances that are the basis of the discharge action continue or recur.

8.1.1.3. The likelihood that the member is a disruptive or undesirable influence in present or future duty assignments.

8.1.1.4. The member's ability to perform duties effectively in the present and in the future.

8.1.1.5. The member's potential for advancement and leadership.

8.1.1.6. Evaluation of the member's military record includes, but need not be limited to:

8.1.1.6.1. Records of nonjudicial punishment.

8.1.1.6.2. Records of individual counseling.

8.1.1.6.3. Letters of reprimand, admonition, or counseling.

8.1.1.6.4. Records of conviction by courts-martial.

8.1.1.6.5. Records of involvement with civilian authorities.

8.1.1.6.6. Past contributions to the USAF or USSF, to include deployment history.

8.1.1.6.7. Duty assignments and EPBs.

8.1.1.6.8. Awards, decorations, and letters of commendation.

8.1.1.6.9. The effectiveness of preprocessing rehabilitation as prescribed by **paragraph 7.2**. **Note**: Prior to initiating discharge of a member, special processing may be required in some cases. See **paragraph 3.29**., **paragraph 3.30**, and **paragraph 7.11**.

8.1.1.7. Medical data meriting consideration.

8.1.2.  Commanders, board members, or discharge authorities consider facts they find to be material and relevant.  Their specialized training, duties, and experience enable them to weigh such matters in making recommendations and decisions under this regulation.

8.1.3.  Isolated incidents and events that are remote in time normally have little probative value in determining whether the member should be discharged.  Cases in which the circumstances may warrant the use of records from prior enlistments are ordinarily limited to those where patterns of conduct or duty performance show up only over a long period of time.  The successful completion of a period of service is a fact that is usually evaluated without reference to material held in the Master Personnel Record.

8.1.4.  Commanders should confer on their proposed course of action with the MPF and their servicing legal office, who will review the supporting file and advise on the appropriate course of action.

**8.2.  Procedural Requirements:**

8.2.1.  Mandatory Action.  The fact that there is a basis for discharge under **Chapter 7** does not make discharge processing mandatory unless the reason is:

8.2.1.1.  Sexual assault unless there is an approved waiver under the provisions of **Section 8J**.

8.2.1.2.  Fraudulent or erroneous enlistment unless there is an approved waiver under the provisions of **Section 8D**.

8.2.1.3.  Civilian court conviction, as defined in **paragraph 7.41.1**, unless there is an approved waiver under the provisions of **Section 8H**.

8.2.1.4.  Drug abuse unless there is an approved waiver under the provisions of **Section 8I**.

8.2.1.5.  Unprofessional relationships with prospective members of the armed forces or new members during recruiting, entry level processing, entry level training or initial skills training under **paragraph 7.40.3.5.2**, unless a waiver is expressly approved under **paragraph 7.40.3.6.7** and **Section 8K**.

8.2.2.  Board Hearing.  Members recommended for discharge for a reason in **Chapter 7** are offered an opportunity for a hearing by an administrative discharge board if one or more of the conditions listed below applies:

8.2.2.1.  The respondent is a noncommissioned officer at the time discharge processing starts.  **(T-0)** Exception:  This does not apply to ANG.  **(T-0)** See DoDI 1332.14, Enclosure 5.

8.2.2.2.  The respondent has 6 years or more of either total active federal military service or satisfactory service (if ANG) at the time the discharge processing starts.  This includes service in the delayed enlistment program.  The disposition board hearing meets this requirement for cases processed under **Section 7I**.  **Note**:  Periods of desertion, absence, confinement, or inability to perform duties because of intemperate use of drugs or alcoholic liquor, or because of disease or injury resulting from their misconduct, are not included in computing length of service in determining board entitlement.  See 10 USC § 972. **(T-0)**

8.2.2.3.  An UOTHC discharge is recommended.

8.2.2.4.  Discharge in the interest of national security, per DoDM 5200.02_AFMAN 16-1405 is recommended.  **(T-0)**

8.2.2.5.  Refer to **Table 13.1** for additional AFR board entitlement.

8.2.3.  Notification Procedure.  Use the notification procedure in **paragraph 8.8** if the offer of a board is not required under **paragraph 8.2.2**.

8.2.4.  Additional Processing.  To find whether the circumstances of the case make additional processing necessary, use **Table 8.6**, before discharge processing starts.  Comply with these requirements for members who qualify at any time before discharge.  Refer to **Section 8G** and **Section 8H** if the reason for discharge is unauthorized absence or civilian conviction.  Review **paragraph 3.27.**, **paragraph 3.10**, and **paragraph 7.11** to determine if the circumstances of the case require special processing under one of these paragraphs.

**8.3.  Medical Examinations.**  In addition to health assessments required under **paragraph 3.30** and **paragraph 19.8.5**, members recommended for involuntary discharge are given an examination. Guidance on medical examinations is provided in DAFMAN 48-123, Chapter 7. If time permits, the member may elect to have the SHPE accomplished through the VA.

8.3.1.  If applicable, the examination specifically documents the medical aspects pertaining to the reason(s) for the discharge action.  **Example**:  Reference **paragraph 7.26.6**, document that there is not a medical condition that would preclude the member from meeting fitness program standards.

8.3.2.  In addition, the medical examination indicates whether the member is or is not medically qualified for worldwide service and separation.  See **Table 8.2** of this publication, DAFMAN 36-2102, and DAFMAN 48-123 for more information.

8.3.3.  Also, add the report of medical examination to the case file as soon as it is complete.

8.3.4.  In addition, refer to **paragraph 3.20** of this publication for discharge UOTHC.

8.3.5.  If discharge processing in absentia is authorized, the medical examination is not required.

**8.4.  EPB and Letter of Evaluation:**  Refer to DAFI 36-2406 for specific criteria on whether an EPB or letter of evaluation in connection with voluntary or involuntary separation is needed.

**8.5.  Information Received After Discharge Action Starts:**

8.5.1.  Unfavorable Information.  More evidence about the reason for discharge may be found after discharge action starts.  In some cases, there may be new information about the reasons for discharge.  If the evidence or information could materially affect the outcome of the case, the commander must immediately give the member an addendum to the original notification letter.  **(T-1)** The addendum states the substance of the new evidence or reasons for discharge. This letter tells the member again to consult legal counsel and that statements in rebuttal may be submitted.  The member should normally be given at least 3 workdays (30 calendar days for ARC members not in a full-time status) to consult counsel and submit statement(s) in rebuttal.

8.5.1.1. If board proceedings are not involved, the initiating commander notifies the appropriate separation authority at once and sends a copy of the addendum, the new

evidence, and any statements submitted by the respondent to the appropriate separation authority for consideration.

8.5.1.1.1. The separation authority may consider the new evidence or reason for discharge an integral part of the discharge case if a final decision has not been made. It may be a basis for returning the case to the commander to start new discharge proceedings.

8.5.1.1.2. If the final decision has been made, the separation authority may not change the decision to make it less favorable to the member. However, the separation authority may change the decision to one of retention, thus terminating the action. In such a case, the separation authority may also return the case to the initiating commander for use in a new administrative discharge action. For limitations on using the material to establish a basis for discharge, see **paragraph 7.4.3**.

8.5.1.2. If board proceedings are involved and the board has not reached its findings and recommendations, the commander notifies the appropriate separation authority at once, and then sends a copy of the addendum to the appropriate separation authority. The new evidence or additional reasons for discharge and the member's statements are included. The appropriate separation authority may:

8.5.1.2.1. Refer the new material to the board. The board may consider it if the member is given the right to defend against it. When the board has already been ordered, the legal advisor determines how much time the member should be given (typically at least 3 workdays/30 days for ARC members not in full time status) to consult counsel and prepare to defend against it (to include submitting statements in rebuttal). The same rules of evidence and procedures applicable to other evidence before the board apply to the new evidence.

8.5.1.2.2. Elect not to refer the new material to the board. If so, it may not be considered in the pending action or used later as the sole basis to start other administrative discharge proceedings.

8.5.1.3. If the board has closed after announcing its findings and recommendations, the new evidence, and additional reasons for discharge:

8.5.1.3.1. May not be referred to the board.

8.5.1.3.2. May be sent to the separation authority with the record of the board proceedings. The commander notifies the separation authority at once and sends a copy of the addendum to the notification letter and the respondent's reply. The separation authority may consider the information but may not take any administrative action less favorable to the respondent than recommended by the board and authorized for the reason for discharge. However, if the decision is to retain the member, the new material may be returned to the initiating commander for use in a new administrative action. Further, if the decision is to discharge the member, the separation authority may change the decision to one of retention; thus, terminating the separation action. In such cases, the separation authority may also return the case to the initiating commander for use in a new administrative discharge action. For limitations on using the material to establish a basis for discharge, see **paragraph 7.4.3**.

8.5.1.3.3. May be considered in a new action referred to a second board IAW **Table 8.2**.

8.5.2. Favorable Information.    The initiating commander determines whether the new information could materially affect the outcome of the case.    When the new information is material, the initiating commander gives the member an opportunity to consult counsel and submit statements (normally at least 3 workdays/30 calendar days for ARC members not in a full-time status) if the information was not provided by the member.    The initiating commander will send the new information and any statements submitted by the member to the appropriate separation authority for inclusion in the discharge case file and consideration by any remaining reviewing authorities.    **(T-1)**

**8.6.  Preparation of Recommendations for Discharge.**  Make enough copies so the original and one copy with all attachments reaches the separation authority.  Make sure a copy is available for the member (reference **Table 3.1**.).  List all the reasons or allegations on which the action is based and the circumstances upon which each is based in the body of the letter of notification signed by the initiating commander.    Use the organizational letterhead, printed, or typed, for letters recommending or approving discharge.

**8.7.  Processing Time Goals.** It is usually in the best interest of both the member and the USAF/USSF to process the case without delay.  This does not mean that the respondent's rights can be denied in any way.  Neither does it mean that the USAF or USSF case should be less than complete.  Processing time varies because of local circumstances.  It is affected by location, the availability of counsel, court reporting capability, processing a referral evaluation, the need for referral to the USAF physical disability system, or other special processing requirements.  Average total processing times are shown in **Table 8.3**.

8.7.1. The appropriate separation authority sets local processing time standards for each agency involved to make sure that all their actions are usually completed within the USAF or USSF goals.  MAJCOMs and FLDCOMs monitor the effectiveness of member separation programs under their control to make sure cases are being processed within the goals established by **Table 8.3**.  Failure to meet the suggested time standards does not affect the validity of the action.

**8.8.  Notification Procedures.**

8.8.1. Use and Purpose.  To find when a recommendation for discharge is processed by notification, see **paragraph 8.2**.  Under this procedure, the member has the right to:

8.8.1.1. Receive written notice of the reasons, including the circumstances upon which the action is based, for discharge and the least favorable type of separation authorized.

8.8.1.2. Copies of the documents to be forwarded to the separation authority in support of the recommendation.

8.8.1.3. Consult counsel.

8.8.1.4. Submit statements in rebuttal.

8.8.1.5. Waive the rights in **paragraph 8.8.1.3** and **paragraph 8.8.1.4** listed above.

**8.9. Action by the Initiating Commander.** The initiating commander takes immediate action on individuals under the personnel reliability program for their permanent decertification prior to discharge. In all separation actions, the commander will:

8.9.1. Refer to DAFI 36-2406 for specific criteria whether an EPB in connection with separation is needed. **(T-1)**

8.9.2. Give the member written notice of the proposed discharge. **(T-1)** For active component discharges use the letter of notification at **Figure 8.1**. or **Figure 8.2**. For ARC use Memorandum of Notification at **Attachment 10**. Attach documents reflecting derogatory information, such as demotions, time lost, and record of disciplinary actions, EPBs, and derogatory data, if applicable. The letter of notification will contain the following:

8.9.2.1. A statement that the member has a right to military counsel. **(T-1)** Counsel must be a judge advocate qualified and certified under UCMJ, Article 27(b). **(T-0)** ANG JAGs must be qualified under the UCMJ, Article 27(b) (1). **(T-0)** Include the name, organizational address, and telephone number of military counsel in the memorandum. The member may also consult civilian counsel, retained at the member's own expense, or request military counsel of respondent's choice if such counsel is serving in an active status in any branch of the armed forces of the US and is reasonably available. Guidance on counsel is provided in DAFI 51-201. Non-lawyers may not represent a member before a board unless **(T-1)**:

8.9.2.1.1. The member expressly declines appointment of counsel qualified and certified under Article 27(b) of the UCMJ or an ANG JAG qualified under Article 27(b)(1) and requests specific non-lawyer counsel. **(T-1)**; or

8.9.2.1.2. The separation authority assigns the non-lawyer as assistant counsel. **(T-1)**

8.9.2.2. A statement of the member's right, within three workdays (30 calendar days for ARC members not in a full-time status), to submit any statements or documents to be considered in the disposition of the case. **(T-1)**

8.9.2.3. An explanation that members may waive their rights contained in **paragraph 8.9.2.1** and **paragraph 8.9.2.2** after having the opportunity to consult with counsel. Include a statement that within three workdays (30 calendar days for ARC members not in a full-time status and 30 calendar days for all members if the commander or separation authority knows that the respondent is in civilian confinement) after receipt of the letter of notification, the respondent must return an attachment showing decisions (see **Figure 8.3**. or **Attachment 11** for ARC) on each of the rights in **paragraph 8.9.2.1** and **paragraph 8.9.2.2**. **(T-1)** The respondent or counsel must sign the attachment. **(T-1)**

8.9.2.4. A statement that the member must immediately (within 24 hours for ARC if not served in person) acknowledge receipt of the letter of notification and attachments. **(T-1)**

8.9.2.5. A statement that the commander considers granting an extension of the time to reply if additional time is needed by member or counsel. The member or counsel must submit a written request for such delay, stating the reasons and how much time is needed. **(T-1)** The decision whether to grant the additional time is discretionary with the commander.

8.9.2.6.  A statement that failure to acknowledge receipt or to respond regarding selection of rights within three days (30 calendar days for ARC members not in a full time status and 30 calendar days for all members if the commander or separation authority knows that the respondent is in civilian confinement) after receipt of the letter of notification constitutes a waiver of all rights with the result that the case is processed based on the information available and without further notice to the member.

8.9.2.7.  A statement advising the member that an involuntary discharge makes an individual ineligible for reenlistment in the USAF or USSF and probably precludes enlistment in any component of the armed forces.

8.9.2.8.  A statement advising the member where a copy of this publication may be found for use while the case is being processed.

8.9.2.9.  A statement that when there is evidence that respondents have received advanced educational assistance money or special pay or bonuses, they may be required to repay the US for these funds under the authority of 10 USC § 2005, *Advanced Education Assistance: Active Duty Agreement; Reimbursement Requirements*. **(T-0)**

8.9.2.10.  A statement that, if the member previously filed an unrestricted report of sexual assault and is recommended for discharge within 1 year of final disposition of the member's sexual assault allegation, the member can request review of their involuntary separation by the commander exercising GCMCA (or TAG or CG for ANG) or the first general officer in the member's chain of command if the GCMCA is not a general officer, whichever is higher.  See **paragraph 3.29**.

8.9.2.11.  A statement that the member is required to complete a comprehensive SHPE and the date and time of the scheduled medical examination.  **(T-0)** Note:  If time permits, the member may elect to have the SHPE accomplished through a DoD MTF or through the VA.  **Note**:  This requirement does not apply to all ARC personnel.  Refer to DAFMAN 48-123, Chapter 7.

8.9.3.  Schedule the member for a medical examination and tell the medical facility the reason for the recommended discharge.  **(T-1)** For more information, see **paragraph 8.3**.  **Note**: Commanders may schedule the member for a separation physical upon making the initial decision to initiate separation, prior to serving the member with a letter of notification of discharge.

8.9.4.  (ARC Only) For ARC members, personally deliver the Memorandum of Notification to the member, when feasible.  The delivering official obtains a written acknowledgment of receipt of the letter.  If the member refuses to acknowledge receipt, the delivering official makes an annotation to that effect on the receipt, including date and approximate time of actual delivery of the Memorandum of Notification.  The receipt is placed in the case file.

8.9.4.1.  When personal delivery of the Memorandum of Notification is not feasible, send the Memorandum of Notification by encrypted electronic mail to the member.  An electronic receipt confirming delivery is included with the file.  If an electronic mail address is not available, send the Memorandum of Notification to the member's last known address by registered or certified mail.  An equivalent form of notice may be used if such service is not available for delivery to an address outside the US.

8.9.4.2.  If the postal service returns the memorandum without indicating a more current address, file the returned envelope with the Affidavit of Service by Mail (**Attachment 9**) in the case file.   Also, consider use of procedures for locating the respondent and documenting efforts at delivery found in **paragraph 13.9.4** (Inability to Locate) of this publication.   If a returned envelope discloses a more current address, re-mail the Memorandum of Notification to the member at that address as set forth in **paragraph 8.9.4.1**.

8.9.5.  Obtain a receipt for the notification letter.  **(T-1)**

8.9.6.  Obtain the member's statement or statements within seven workdays (30 calendar days for ARC members not in a full-time status).  **(T-1)** For a sample format of the member's statement, use **Figure 8.3**. or **Attachment 11** or **Attachment 13** for ARC personnel.  **Note**: If the member does not sign this statement, the commander annotates the letter to show whether the member indicated that any of the rights would be exercised.

8.9.7.  Prepare a recommendation to the appropriate separation authority as shown in **Figure 8.4**. or **Attachment 8** for ARC.  **(T-1)** Note:  The initiating commander can elect to withdraw the discharge action if the commander no longer believes discharge action is appropriate (or required in the case of a mandatory discharge).  The withdrawal and reason(s) therefore should be documented in a memorandum and a copy provided to the member.  Such a withdrawal does not invoke the restrictions set forth in **paragraph 7.4**.

8.9.8.  Send the case file to the servicing MPF for further processing.  **(T-1)** At this point the case file should contain:

8.9.8.1.  The commander's recommendation with attachments (**Figure 6.2**.).

8.9.8.2.  A copy of the notification letter with attachments (**paragraph 8.9.2** and **Figure 8.1**. or **Figure 8.2**.).

8.9.8.3.  Addendum to notification letter (if applicable).

8.9.8.4.  Member's statement with or without attachments (see **Figure 8.3** and the **Note** in **paragraph 8.9.6**.).

8.9.8.5.  Medical examination (if available).

8.9.8.6.  Other documents, if applicable.

8.9.9.  Notify the local financial services office, in writing, as soon as the discharge is initiated. **(T-1)** The letter should request the financial services office notify the initiating commander if the member is indebted to the government and what action is taken to collect the debt.  Use DAFMAN 36-2102, to notify local base agencies of discharge initiation.  If discharge is disapproved, re-notify appropriate agencies.

8.9.10.  For members who are convicted by court-martial and do not receive a punitive discharge, consideration should be given to the initiation of involuntary separation action under this directive.

**8.10.  Action by the Member.**  The member will:

8.10.1.  Acknowledge receipt of the letter of notification in a statement made IAW **Figure 8.1** and **Figure 8.2**. (**Attachment 10** for ARC).  **(T-1)** If the member does not respond or responds

without signing the memorandum, the commander will make an appropriate notation on the statement regarding the member's failure to do so.  **(T-1)**

8.10.2.  Report for the medical examination as directed.  **(T-1)**

8.10.3.  Consult the appointed military legal counsel.

8.10.4.  Submit statements by the date set in the letter of notification or decline the opportunity to do so.  **(T-1)** The commander may give the member more time if there is good reason for the request.  Failure by the member to respond within three workdays (30 calendar days for ARC members not in a full-time status) or by the end of an approved extension constitutes a waiver of the member's rights.  For a format of the member's statement, use **Figure 8.3**. or **Attachment 11** or **Attachment 13** for ARC personnel.  If the member does not respond or responds without signing the statement provided, the commander will make an appropriate notation on the statement regarding the member's failure to do so.  **(T-1)**

**8.11.  Action by the FSS/MPF.** FSS or MPF Career Development Section makes sure the case file contains all required discharge documents and attachments, including the medical examination completion notification (the DD Form 2807-1, *Report of Medical History,* and DD Form 2808, *Report of Medical Examination,* are not included in record due to Health Insurance Portability and Accountability Act rules).  The FSS or MPF Career Development Section is provided an advance information copy of the notification letter without attachments for suspense and internal MPF coordination.  The SHPE completion notification is recorded in the member's record before the member is cleared for separation.  Ensure the SJA's legal review is included as an attachment to the separation authority's letter.  The MPF Career Development Section makes sure the separation, if approved, is not executed until the member is found qualified for worldwide duty or the processing required by **Section 8D** is complete.  ARC members, see **paragraph 13.1.1**.

**8.12.  Action by the SPCMCA.** The SPCMCA is the separation authority for cases processed by notification.  For the ARC, see **paragraph 13.1.1** for involuntary discharge and separation authority guidance.  **Exception**:  GCMCA is required when an honorable discharge is recommended for misconduct, when a member who has made an unrestricted report of a sexual assault requests review of the discharge (see **paragraph 3.29**), or when the SPCMCA wants to retain a member recommended for discharge under **paragraph 7.54**. **(T-1)**

8.12.1.  On receipt of the case the SPCMCA will:

8.12.1.1.  Obtain a review for legal sufficiency and add it to the case file.  **(T-1)** As part of the review for legal sufficiency the servicing legal office should ensure all discharge documents and attachments are included in the case file.  **Exception**:  The review for legal sufficiency is not required if the reason for discharge is entry level performance and conduct under **paragraph 7.22**.

8.12.1.2.  Determine whether the facts of the case meet the criteria for the reason cited in the letter of notification. **(T-1)** An allegation that is not supported by a preponderance of the evidence may not be used as a basis for separation.  **(T-1)**

8.12.1.3.  Package will be reinitiated for processing IAW **Section 8D** if the issuance of an UOTHC discharge may be warranted.  **(T-1)**

8.12.2. If the reason for discharge is erroneous enlistment IAW **paragraph 7.14**, the appropriate separation authority will approve or disapprove the recommended discharge or direct retention.  **(T-1)**

8.12.3.  In all other cases, the appropriate separation authority decides whether separation is warranted IAW **paragraph 8.1** and approves discharge or retention.  If discharge is approved, the appropriate separation authority also decides:

8.12.3.1.  How the service is characterized if the reason for discharge permits the issuance of a general discharge.

8.12.3.2.  Whether the member should be offered probation and rehabilitation IAW **Chapter 9**.

8.12.3.3.  Which reason is cited as the primary reason for discharge if more than one reason is involved.  The separation is reported on the reason designated as the primary reason.

8.12.4.  If the initiating commander recommends an honorable discharge and the separation authority approves a general discharge, the approval letter cites the specific aspects of the military record that warrant the general discharge.

8.12.5.  Whether execution of the discharge should be held in abeyance for any reason.

**Note**:  The separation authority's discharge memorandum should include the matters in **paragraph 8.12.3.**, **paragraph 8.12.4**, and **paragraph 8.12.5**.  For a format for the discharge memorandum see **Figure 8.4**.

***Section 8B—Board Hearing or Board Waiver.***

**8.13.  Procedural Rights:**

8.13.1.  A member recommended for discharge under **Chapter 7** and entitled to a board hearing IAW **paragraph 8.2** has the right to:

8.13.1.1.  Receive written notice of the reasons for discharge, including the circumstances upon which each reason is based, and the least favorable type of separation authorized.

8.13.1.2.  Receive copies of the documents to be forwarded to the separation authority in support of the recommendation for discharge.

8.13.1.3.  Consult counsel.  Military legal counsel is detailed to assist the respondent.

8.13.1.4.  Request a hearing before an administrative discharge board.

8.13.1.5.  Present written statements in addition to, or in lieu of, the board proceedings.

8.13.1.6.  Be represented before the board by an Area Defense Counsel or military counsel of the member's own choice (if the counsel of choice is reasonably available), but not by both.  The availability of counsel of choice.  Guidance on counsel is provided in DAFI 51-201.

8.13.1.7.  Be represented before the board by civilian counsel.  Civilian counsel will be employed at the member's own expense.  **(T-1)**

8.13.1.8.  Waive any of the above rights listed in **paragraph 8.13.1.1** through **paragraph 8.13.1.7**.

8.13.2.  The member is given written notice of these rights IAW **Figure 8.5**. (**Attachment 12** for ARC) and is required to respond indicating which rights are exercised and which, if any, are waived.  **(T-1)**

8.13.2.1.  The written notice advises that a member's failure to respond after being given seven workdays (30 calendar days for ARC members not in a full-time status and 30 calendar days for all members if the commander or separation authority knows that the respondent is in civilian confinement) to consult counsel constitutes a waiver of the rights in **paragraph 8.13.1** (except **paragraph 8.13.1.1** and **paragraph 8.13.1.2**.).

8.13.2.2.  The notice should also advise that, should a board hearing be requested, the member's failure to appear constitutes a waiver of the right to be present at the hearing. **Note**:  The failure to respond is noted on the original or copy of the written notice given to the member and in the correspondence forwarded to the separation authority for decision.

8.13.3.  A board is convened to hear the case when:

8.13.3.1.  The member requests the hearing.

8.13.3.2.  A conditional or unconditional waiver is disapproved.

8.13.3.3.  In absentia processing is allowed under this publication if the respondent is absent in civil confinement and does not submit a written waiver of the board hearing.  For more information about special procedures for these cases, see **paragraph 3.10** and **paragraph 8.22**.

**8.14.  The Initiating Commander will:**

8.14.1.  Notify the MPF if an EPB is needed. Guidance on evaluations is provided in DAFI 36-2406.

8.14.2.  Obtain military legal counsel qualified and certified under UCMJ, Article 27(b) to assist the member (ANG counsel must be qualified under UCMJ, Article 27(b)(1)).  **(T-0)**

8.14.3.  Schedule a medical examination (**paragraph 8.3**) for the member and notify the medical facility the reason for the discharge recommendation.  **(T-1)** If time permits, the member may elect to have the SHPE accomplished through a DoD MTF or through the VA.

8.14.4.  Notify the member of the proposed discharge in a letter prepared IAW the format in **Figure 8.5**. or **Attachment 12** for ARC personnel.  **(T-1)** Attach documents reflecting derogatory information, which are not listed in the notification letter, such as demotion, time lost, record of disciplinary actions, EPBs and derogatory data (use **Figure 8.5**), if applicable. Provide an advance information copy of the notification letter without attachments to MPF Career Development Section for suspense and internal MPF coordination.

8.14.5.  Advise the member that an involuntary discharge makes an individual ineligible for reenlistment in the USAF or USSF and probably denies enlistment in any component of the armed forces.

8.14.6.  Notify the local financial services office, in writing as soon as the discharge is initiated and request the financial services office notify the commander if member is indebted to the government and what action will be taken to collect the debt.  **(T-1)** Use DAFMAN 36-2102, as an example, to notify local base agencies of discharge initiation.  If the discharge is disapproved, notify appropriate agencies.

8.14.7.  Advise the member where a copy of this publication may be found for use while the case is being processed.

8.14.8.  Obtain the member's acknowledgment (use **Figure 8.5**. or **Attachment 12** for ARC personnel).  **(T-1)**

8.14.9.  Obtain the member's response with or without attachments (use **Figure 8.6**. or **Attachment 13** for ARC personnel). **(T-1), or**

8.14.10.  Obtain member's statement of conditional or unconditional waiver with or without attachments (use **Figure 8.5**., **Figure 8.6**, or **Attachment 13** for ARC).  **(T-1)** If the member does not respond or responds without signing the statement provided, the commander will make an appropriate notation on the statement regarding the member's failure to do so.  **(T-1)**

8.14.11.  Obtain application for retirement (if applicable) within seven workdays (30 calendar days for ARC members not in a full-time status) if the member elects to apply to retire in lieu of further administrative action (for the ANG, this must be the AF Form 131, *Application for Transfer to the Retired Reserve*).  **(T-1)**

8.14.12.  Prepare a recommendation to the convening authority or, for the ANG, the wing commander if the initiating commander is not the wing commander.  For a sample format, use **Figure 8.4**. (**Attachment 8** for ARC).  **(T-1)** Note:  The initiating commander can elect to withdraw the discharge action if the commander no longer believes discharge action is appropriate (or required in the case of a mandatory discharge).  The withdrawal and reason(s) therefore should be documented in a memorandum and a copy provided to the member.  Such a withdrawal does not invoke the restrictions set forth in **paragraph 7.4.3**.

8.14.13.  Send the case file through the servicing MPF or servicing legal office to the convening authority.  At this point the case file should contain:

8.14.13.1.  The commander's recommendation with attachments (listed below), and

8.14.13.2.  A copy of the letter of notification with attachments (use **Figure 8.5**. or **Attachment 12** for ARC personnel), and

8.14.13.3.  Addendum to letter of notification (if applicable), and

8.14.13.4.  Member's statement, with or without attachments (use **Figure 8.6**. or **Attachment 13** for ARC personnel), or

8.14.13.5.  Member's statement of conditional waiver with or without attachments (use **Figure 8.7**), or

8.14.13.6.  Application for retirement (if applicable), and

8.14.13.7.  Medical examination (if available), and

8.14.13.8.  Other documents (if applicable).

8.14.14.  For members who are convicted by court-martial and do not receive a punitive discharge, consider initiating involuntary separation under this directive.

**8.15.  The member will:**

8.15.1.  Acknowledge receipt of the notification letter.  For a sample format, use **Figure 8.5**. or **Attachment 12** for ARC personnel.  **(T-1)**

8.15.2.  Consult the appointed military legal counsel (unless waived).

8.15.3.  Report for the medical examination as directed. **(T-1)**

8.15.4.  Respond within seven workdays (30 calendar days for ARC members not in a full-time status) after receiving the notification letter.  **(T-1)** Failure by the member to respond within seven workdays (30 calendar days for ARC members not in a full-time status) or an approved extension constitutes a waiver of the member's rights.  The response tells the squadron commander whether the member wants a hearing before an administrative discharge board or waives this right.  Use **Figure 8.5**. or **Attachment 13** for ARC personnel, as a format for the letter.  **Note**:  A member may conditionally waive a board hearing contingent on receipt of a specific type of discharge.  Use **Figure 8.7**, as a format for this letter.  For more information about conditional waivers, see **Section 8C**.

**8.16.  Action by the MPF.**  MPF Career Development Section makes sure the case file contains all required discharge documents and attachments, including the medical examination when it is completed.  The FSS or MPF Career Development Section is provided an advance information copy of the notification letter without attachments for suspense and internal MPF coordination.  Ensure the legal review is included as an attachment to the separation authority's letter.  Do not delay processing to wait for the report of the medical examination.  The MPF Career Development Section makes sure the separation, if approved, is not executed until the member is found qualified for worldwide duty or the processing required by **Section 8D** is completed.

**8.17.  Action by the Administrative Discharge Board.**  For board procedures and authorized actions, use **Chapter 10** and **Table 8.5**.

8.17.1.  The board must:

8.17.1.1.  Decide whether each allegation set forth in the notification letter or addendums to it, is supported by a preponderance of the evidence. **(T-1)** Allegation refers to the basic act or omission cited in the notification letter and not the additional circumstances of the act or omission included in the notification letter.  **(T-1)**

8.17.1.2.  If the letter of notification cites more than one reason for separation, there is a separate determination for each reason. **(T-1)** Make a separate finding regarding each allegation. **(T-1)**

8.17.1.3.  Determine whether findings warrant separation with respect to the reasons set forth in the letter of notification.  **(T-1)** For guidance in these matters, see **paragraph 7.1** and **paragraph 8.1**.

8.17.1.4.  Recommend discharge or retention.  **(T-1)**

8.17.2.  If the board recommends discharge, it must also:

8.17.2.1.  Apply the criteria in **Section 3A** and recommend a type of separation authorized IAW **Chapter 7**.

8.17.2.2.  Make a recommendation concerning suspension of discharge in any case where it is authorized. **(T-1)** For information about probation and rehabilitation, see **Section 9A**.  A recommendation for probation and rehabilitation is not binding on the separation authority.  **(T-1)**

**8.18.  The Wing Commander (for ANG) or Convening Authority will:**

8.18.1.  On receipt of the case from the FSS or MPF, examine it and comply with **Table 8.4**. **(T-1)**

8.18.2.  On receipt of administrative discharge board proceedings:

8.18.2.1.  Ensure that any special processing requirements are met.  **(T-1)** For more information, use **Table 8.1**.  Also see **paragraph 3.27**., **paragraph 3.29**., **paragraph 3.30**, and **paragraph 7.11**.

8.18.2.2.  Obtain a review for legal sufficiency from the servicing legal office and add it to the case file.  **(T-1)** As part of the review for legal sufficiency, the servicing legal office should ensure all discharge documents and attachments are included in the case file.  **(T-1)**

8.18.2.3.  Examine the report to make sure that the findings and recommendations are appropriate.  **(T-1)**

8.18.2.4.  Take final action on the case, if referral to the GCMCA, as separation authority, is not required and further action to request discharge IAW **paragraph 3.2** is not contemplated; or

8.18.2.5.  Send the complete file to the GCMCA with a recommendation for disposition. **(T-1)** If the wing commander or convening authority does not concur with the board's recommendations, the reason for non-concurrence is explained in the forwarding correspondence.  For the ARC, see **paragraph 13.1.1** for involuntary discharge and separation authority guidance.

**8.19.  Actions by the Separation Authority.**  To determine the separation authority, refer to the authorizing section of **Chapter 7**.  For the ARC, see **paragraph 13.1.1** for involuntary discharge and separation authority guidance.  The separation authority will:

8.19.1.  Obtain a review for legal sufficiency from the servicing legal office **(T-1)**;

8.19.2.  Add the legal review to the case file **(T-1)**; and

8.19.3.  Take final action on the case IAW **Table 8.6**., **Table 8.7**., **Table 8.8**., **Table 8.9**, or **Table 8.10**.  **(T-1)**

8.19.4.  If the member is subject to discharge for more than one reason, determine which is the primary reason.  **(T-1)** The type of separation is one that is authorized for the reason named. The separation is reported on that reason.

8.19.5.  Cite the specific aspects of the military record that warrant the general or UOTHC discharge if **paragraph 3.20** applies.  **(T-1)**

8.19.6.  Indicate whether execution of the discharge should be held in abeyance for any reason. **(T-1)** Indicate a recommendation regarding lengthy service or sanctuary probation in cases where the member is eligible for and requests lengthy service or sanctuary consideration. **Note**:  The separation authority's discharge memorandum should include the matters in **paragraph 8.19.3** through this paragraph.  For a format for the discharge memorandum see **Figure 8.9**.

**8.20.  Withdrawal of the Board Waiver.**  Members who have waived the right to a board hearing may request withdrawal of the waiver in writing.

8.20.1.  The member states the reason and sends the request to the SPCMCA through the MPF Career Development Section.

8.20.2.  The SPCMCA is required to approve or recommend disapproval to the separation authority of the withdrawal of a waiver not yet referred to the separation authority.

8.20.3.  The separation authority may approve or disapprove all other requests for withdrawal regardless of the status of the case.

8.20.4.  The separation authority makes the decision on the merit, or lack of merit, in each case.

**8.21.  Referral to a New Board.**  The board convening authority, or higher authority, up to the separation authority, may set aside the findings and recommendations of a board and direct that a new board be appointed to consider a case only if the authority makes either of these determinations as referenced in **Table 8.2**.  See also **Table 8.4**.

8.21.1.  Finds legal prejudice to a substantial right of the respondent; or,

8.21.2.  Determines that the board arrived at its findings by fraud or collusion.

8.21.3.  No member of the new board may have served on a prior board that considered the case.

8.21.4.  If the board convening authority, or higher authority, up to the separation authority, directs a new board under **paragraph 8.21.1**, the successor board may read the record of the proceedings of the earlier board, excluding the findings, recommendations, and matters prejudicial to the respondent's rights.  See **Table 8.2**.

8.21.5.  In cases where the board recommended discharge, the board convening authority, or higher authority, may reconvene the board any time before the SecAF makes a final decision when the separation authority receives evidence that could materially affect its findings and recommendations.  The board convening authority, or higher authority up to the separation authority, must establish that this evidence was not reasonably available for presentation during the board hearing.  **(T-1)** New evidence includes conduct after the board adjourns.

8.21.6.  When the board convening authority, or higher authority, receives evidence before sending the board report but decides not to reconvene the board, the authority sends the evidence or a summary to AF/JAJ and SecAF, or designee, with the reasons for the decision not to reconvene the board.

8.21.7.  The board convening authority, or higher authority, up to the separation authority, gives the respondent 10 calendar days from the date of notification to submit comments or rebuttal before the separation authority acts on the new information or evidence received.

**8.22.  Members Not Present for the Board Hearing:**

8.22.1.  Whereabouts Known.  The restrictions of **paragraph 3.10** apply.  In some circumstances, members whose whereabouts are known may not be available to be present at a board hearing.  This usually occurs when the respondent is in civil confinement.  In such cases, send the notice of the proposed discharge by certified mail or personal delivery, return receipt requested.  Change the letter of notification (**Figure 8.5**. or **Attachment 12** for ARC personnel) to explain the special procedures applicable to in absentia discharge processing.

8.22.1.1.  Following guidance provided in AFI 48-123, omit instructions about a medical examination (process mandatory waiver following guidance in SHPE Guide).

8.22.1.2.  Tell the member that:

8.22.1.2.1.  If a board hearing is desired, it is held in the member's absence.

8.22.1.2.2.  Military legal counsel is appointed to represent the member before the board.

8.22.1.2.3.  If discharge is approved, it may be executed in absentia.

8.22.2.  Allow 30 calendar days from the date of delivery of notice (longer if special circumstances warrant) for a reply.

8.22.3.  Consider failure to reply within the allotted time a waiver of board hearing if there is proof of delivery of the notification letter and the member is absent without authority.

8.22.4.  Convene a board to hear the case at the end of the prescribed period if:

8.22.4.1.  There is no proof of delivery of the notification letter or

8.22.4.2.  A member in civil confinement has not replied.

**8.23.  Witnesses for the Board Hearing.**  The commander, with the help of the servicing legal office, must determine the separation or reassignment status of each prospective witness.  **(T-2)** As a rule, witnesses should not be reassigned from the jurisdiction of the MAJCOM or FLDCOM until they are no longer needed.  Take depositions from essential witnesses who are not available when the board meets.  Keep the depositions for later use in the board hearing.  For more information about how to arrange for witnesses, see **Chapter 10.**

*Section 8C—Conditional Waiver of Board Hearing.*

**8.24.  Options Explained.**  A conditional waiver is a statement made by a member who gives up the rights associated with the administrative discharge board proceedings.  The waiver is contingent on the receipt of a type of separation more favorable than the least favorable authorized for any basis for separation set forth in the letter of notification.  Only the type of separation may be addressed in a conditional waiver.

8.24.1.  For example, in a case based on unsatisfactory performance, the least favorable service characterization is General (Under Honorable Conditions).  The conditional waiver would ask for an Honorable discharge.

8.24.2.  In a misconduct case, the member could be discharged UOTHC.  The waiver might be contingent on the receipt of an Honorable or a General discharge.  It specifies one or the other. The waiver may not be conditioned on probation and rehabilitation or be conditioned on approval of discharge for a specific reason.

**8.25.  Offer by the Member.**  The member submits the conditional waiver to the squadron commander for the SPCMCA (or ARC waiver authority pursuant to **paragraph 13.1.1**) to review. The member asks for no less than a specific type of separation.  For conditional waiver format, use **Figure 8.7**.  The case file considered by the SPCMCA (or ARC waiver authority pursuant to **paragraph 13.1.1**) contains the commander's recommendation with attachments that include the conditional waiver.

**8.26.  Acceptance or Rejection:**

8.26.1.  The SPCMCA (or ARC waiver authority pursuant to **paragraph 13.1.1**) may:

8.26.1.1.  Reject the conditional waiver and tell the member that either an unconditional waiver or a request for a board hearing may be submitted.  If the member fails to respond within 3 workdays (30 calendar days for ARC members not in a full-time status) or by the end of an approved extension, a board hearing is convened (**paragraph 8.28**.).  **Note**:  The additional 3 workdays are not an extension of the initial response period and will not result in a delay of a scheduled discharge board.  **(T-1)**

8.26.1.2.  Recommend acceptance of the conditional waiver and send it to the separation authority for decision.  The letter to the separation authority tells why the waiver should be accepted.  It tells how the member's military record warrants the issuance of the type of discharge the member requests.  **Note**:  If the SPCMCA is also the separation authority, this step is omitted, and action is taken IAW **paragraph 8.26.1**.  Refer to the relevant section of **Chapter 7** or **Chapter 13** waiver.  Processing then continues IAW **Section 8B**.

8.26.1.3.  Accept the conditional waiver and approve the type of separation specified in it, or a better type.  The approval letter signed by the separation authority, tells how the member's military record warrants the type of separation approved.

**8.27.  Withdrawal of a Conditional Waiver.**  The member may send a written request for withdrawal of the conditional waiver to the SPCMCA through the servicing legal office.  The request gives the reason for the withdrawal.  The SPCMCA approves or recommends disapproval to the separation authority, of the withdrawal of a conditional waiver not yet referred to the separation authority.  The separation authority may approve or disapprove all other requests for withdrawal regardless of the status of the case.  The separation authority makes the decision on the merit, or lack of merit, in each case.

**8.28.  Action After a Conditional Waiver is Rejected:**

8.28.1.  The member requests a board hearing or submits an unconditional waiver of a board hearing.  If the member fails to respond within seven workdays (30 calendar days for ARC members not in a full-time status) or by the end of an approved extension, a board hearing is convened.  For the format of the unconditional waiver, use **Figure 8.6**. or **Attachment 13** for ARC personnel.  A second conditional waiver is not accepted.  **Note**:  The additional 3 workdays are not an extension of the initial response period and will not result in a delay of a scheduled discharge board.  **(T-1)**

8.28.2.  Processing continues without reference to, or consideration of, the rejected conditional waiver.  The fact that a conditional waiver was offered and rejected is not made a part of the record shown to the administrative discharge board.  A conditional waiver is withdrawn from the commander's recommendation for discharge.

8.28.3.  After the discharge board acts on the case, the MPF adds the conditional waiver correspondence to the file.  It shows when the waiver was submitted and when it was rejected.  This accounts for what might seem to be delays in processing.  The separation authority should not consider the rejected conditional waiver when acting on the case.

**8.29.  Action When a Conditional Waiver is Accepted.**  The acceptance of a conditional waiver of the board hearing does not change any other right of the respondent.  The case must be reviewed

for legal sufficiency by the SJA for the separation authority.  **(T-1)** The separation authority decides whether probation and rehabilitation should be offered.  The conditional waiver correspondence is part of the case file and stays with it.  **Note**: Unless it contains all matters in **paragraph 8.19**, the waiver acceptance document does not eliminate the need for the separation authority's discharge memorandum.

*Section 8D—Dual Action Processing.*

**8.30.  What Makes a Case Dual Action.**  A case is dual action when a member is concurrently processed for both disability evaluation and involuntary discharge/administrative separation.  The member's eligibility for disability separation or retirement is identified and processed following guidance provided in AFI 36-3212.  The member's involuntary discharge/administrative separation is processed IAW this publication.  Both processes run independently, and final disposition is withheld for decision by either SecAF or a GCMCA (which is the SAF for the ANG) when it involves an enlisted member with less than 16 years and eligible for possible UOTHC discharge characterization of active service (18 years of satisfactory service for ARC members) as of the date the decision authority executes their decision in the disposition document.

**8.31.  Members Not Qualified for Worldwide Duty.** When the medical examination (**paragraph 8.3**) shows that the member is not qualified for worldwide duty, the member may be eligible for evaluation under the DES under AFI 36-3212.  Comply with **Table 8.12**..  These cases should be closely monitored to ensure a discharge under this publication is not executed before the DES case has been completed.

8.31.1.  An approved involuntary discharge under this publication is held in abeyance until completion of AFI 36-3212 processing or final decisions by the SecAF, or designee.

8.31.2.  Once a complete involuntary discharge package is assembled and a member's DES case results in a determination that the member has an unfitting medical condition warranting disability separation/retirement, both actions are considered and SecAF or the GCMCA makes the final determination as to whether involuntary discharge or disability separation/retirement is more appropriate.  Reference AFI 36-3212.

8.31.3.  If the SecAF designee directs disability separation/retirement, service is generally characterized as Honorable unless (Reference DoDI 1332.14, Enclosure 3, paragraph 4):

8.31.3.1.  An entry level separation is needed IAW **paragraph 3.17**; **(T-0)** Or

8.31.3.2.  Characterization of service as general (Under Honorable Conditions) is warranted under **paragraph 3.17.2**, and evidence from the involuntary discharge case supports such a characterization is warranted under the guidelines in **Section 3A**.  **(T-0)**

8.31.4.  Members may be ineligible for referral into DES, and may be removed from the DES, if they have an approved, unsuspended punitive discharge or dismissal, or are pending separation under provisions that authorize a characterization of service of UOTHC.  However, if evaluation for disability is warranted following guidance in AFI 36-3212, paragraph 1.7, the member may be eligible.  Reference DoDI 1332.18, *Disability Evaluation System (DES)*, App 1 to Enclosure 3, paragraphs 4(a) and 4(b), AFI 36-3212 and AFMAN 41-210.  **Note**: DES eligibility is established in DoDI 1332.18, as implemented by DAFMAN 48-108 and AFI 36-3212.  DES eligibility and dual action processing is not a matter of command discretion or

authority.  **(T-0)** Administrative Actions Not Eligible for Dual Processing are Discharge in Lieu of Court-Martial.

8.31.5.  The Office of Disability Counsel is available to advise members on cases processed under AFI 36-3212.

8.31.6.  ARC Only.  When a DES case results in a determination that an ARC member has an unfitting medical condition that is not compensable under the DES (i.e., disability separation/retirement is not warranted), dual action processing under **paragraph 8.31** does not apply (see also **paragraph 13.9.16**.).

*Section 8E—Members with Lengthy Service.*

**8.32.  Procedures Explained.**

8.32.1.  Members with lengthy service or sanctuary are defined as follows:

8.32.1.1.  A regular component member who has completed at least 16 but less than 20 years of active service creditable toward a regular retirement at the time discharge action starts.  These members are entitled to special consideration for probation upon their request.

8.32.1.2.  An ARC member who has completed at least 18 but less than 20 years of service creditable toward a non-regular (reserve) retirement or an AGR member with at least 18 but less than 20 years of total active federal military service toward an active duty retirement at the time discharge action starts.  These members are entitled to special consideration for probation automatically, regardless of whether they request it.

8.32.2.  This section applies only to members nearing retirement eligibility as described above. If the separation authority directs discharge, the discharge shall not be executed until the case has been referred to SAFPC for further review IAW procedures set forth below (see **Note**). **(T-1)** If that review results in an offer of probation, the terms of the probation for each case are set out in the authorizing Secretarial Action.  **Note**:  For regular component members described in **paragraph 8.32.1.1**, an approved discharge is executed if member does not request review.

**8.33. Referral Required.** When the criteria for lengthy service or sanctuary are met IAW **paragraph 8.32.1**, withhold the execution of the approved discharge.  Forward the case file, with the separation authority's recommendation regarding lengthy service or sanctuary probation, through the MAJCOM, FLDCOM, or equivalent for SAFPC review and further action and processing if the:

8.33.1.  Separation authority cannot or does not offer probation and rehabilitation IAW **Chapter 9**.

8.33.2.  Member does not accept probation and rehabilitation offered IAW **Chapter 9**.

8.33.3.  Separation authority approves revocation of the suspension of a discharge IAW **paragraph 9.12**; or

8.33.4.  Separation authority concurs with a recommendation for revocation of a probation authorized under this section.

**8.34. MAJCOM, FLDCOM, or Equivalent Review and Processing.** The following is needed in addition to the recommendation of the separation authority.

8.34.1. Regular Component. The parent MAJCOM/A1 or FLDCOM/S1 acquires a legal review from the MAJCOM/FLDCOM servicing legal office and recommendation from the MAJCOM or FLDCOM commander. Forward the complete case file to AFPC/DPMSSR, JBSA-Randolph TX 78150-4713, for review and further processing to SAFPC.

8.34.2. Air National Guard (ANG). NGB/A1 obtains a legal review from NGB/JA and a recommendation from the Director of the Air National Guard (NGB/CF) before forwarding the complete case file to SAFPC.

8.34.3. Air Force Reserve (Unit-Assigned Reservists). HQ AFRC/A1 provides comments and a recommendation, including a legal review from HQ AFRC/JA. Forward the complete case file to SAFPC.

8.34.4. Air Force Reserve (Individual reservists i.e., individual mobilization augmentee, and participating individual ready reserve personnel). HQ ARPC/CC (or higher) provides comments and a recommendation, including a legal review from HQ ARPC/JA. Forward the complete case file to SAFPC.

**8.35. Disposition of the Case. SecAF, or designee, can direct:**

8.35.1. Probation for the time the member needs to get minimum retirement eligibility. Guidance on retirement eligibility is provided in DAFI 36-3203.

8.35.2. Execution of the discharge; or

8.35.3. Revocation of a previous grant of probation and execution of discharge; or

8.35.4. Other action.

**8.36. Notifying Members of Lengthy Service or Sanctuary Probation.** The separation authority ensures the commander and member receive the Secretarial Action if lengthy service or sanctuary probation is mandated. The Secretarial Action contains the terms and conditions of the probation. The commander gives the member the Secretarial Action with the Fact Sheet at **Figure 8.11** and the member acknowledges receipt.

**8.37. Revocation of Lengthy Service or Sanctuary Probation.** Good conduct and satisfactory duty performance are required of members on probation. Behavior similar to that for which discharge was approved or other evidence of failure to meet DAF standards shows the goals of probation are not being met. In such a case, a commander may recommend revocation of lengthy service or sanctuary probation. Lengthy service or sanctuary probation does not prevent a commander from initiating a new administrative discharge action, taking punitive action under the UCMJ, or taking some other administrative action, if such action is more appropriate than recommending revocation of lengthy service or sanctuary probation. If a new discharge action is initiated, the result could be less favorable than the one already approved and suspended through lengthy service or sanctuary probation. **Note**: The basis of the suspended discharge may not be part of the basis of a new discharge action. However, the basis of the suspended discharge can be considered in deciding whether to discharge and for service characterization if the conduct occurred in the current enlistment, and on any probation.

8.37.1.  The commander notifies the member by memorandum of the proposal to recommend revocation of lengthy service or sanctuary probation.  The memorandum gives:

8.37.1.1.  The reason or reasons for the action (attach supporting documentation).

8.37.1.2.  The name, address, and telephone number of the military counsel named to help the member.

8.37.1.3.  Advice that civilian legal counsel may be employed at the member's own expense.

8.37.1.4.  Instructions to reply within seven workdays (30 calendar days for ARC members not in a full-time status) with rebuttal or waiver of the right to rebut.

8.37.2.  The commander will send the case file through the FSS/MPF to the separation authority when the member's reply is received.  **(T-1)** The case file contains:

8.37.2.1.  A copy of the Secretarial Action authorizing lengthy service or sanctuary probation and the Fact Sheet on Lengthy Service or Sanctuary Probation with the member's acknowledgment.

8.37.2.2.  A copy of the memorandum notifying the member of the proposed revocation of probation.

8.37.2.3.  The member's rebuttal or waiver of the right to rebut.

8.37.2.4.  A legal review from the separation authority's servicing legal office.

8.37.2.5.  A copy of the original case file.

8.37.3.  The separation authority may:

8.37.3.1.  Disapprove the recommendation and direct continued probation; or

8.37.3.2.  Concur with the recommendation and refer the case IAW **paragraph 8.36** and **paragraph 8.37**.

8.37.4.  SecAF can direct:

8.37.4.1.  Continued probation;

8.37.4.2.  Revocation of probation and execution of discharge; or

8.37.4.3.  Other action.

**8.38.  Unfavorable Information.**  Unfavorable Information received after separation authority approval but before SecAF disposition can be referred for SecAF consideration following the procedures in **paragraph 8.36** and **paragraph 8.37**.  Prior to referral of information, the member is notified of the information and given the opportunity to submit statements in rebuttal.  The member gets at least 3 workdays (30 calendar days for ARC members not in a full-time status) to submit statements in rebuttal.  If information under this paragraph is not referred to SecAF and probation is granted, the information can be used later to support a recommendation to revoke lengthy service or sanctuary probation (revocation procedures in **paragraph 8.40** apply).

**8.39.  Favorable Information Received After Separation Authority Approval.**  Referral to SecAF of favorable information offered by the member after separation authority approval, but before SecAF disposition is at the discretion of the separation authority.  The separation authority

should base their determination on whether the information could materially affect the outcome of the case. Information should be referred using the procedures in **paragraph 8.36** and **paragraph 8.37**.

**8.40.  Nothing in paragraph 8.41 affects SAFPC's ability to review a member's personnel records when making probation decisions.**

*Section 8F—Joint Processing.*

**8.41.  Reasons for Joint Processing.**  A recommendation for discharge for more than one reason may be processed jointly as a single action.  A commander may do this when the member's military record in the current enlistment would support discharge for more than one reason.  Two or more of the reasons for discharge in **Chapter 7** or **Chapter 13** may be cited as the basis of a recommendation for discharge.  **Note**:  If discharge for more than one reason is approved, the separation authority's discharge memorandum cites which reason is the primary basis for discharge (see **paragraph 8.12.3.3**.).

**8.42.  Supplemental Procedures for Joint Processing:**

8.42.1.  Change the notification letter, the acknowledgment, and the member's statement to list all the reasons for discharge.  Cite the authority for each one.

8.42.2.  Process the case IAW **Section 8B** if one of the reasons cited as the basis of the action makes the member entitled to a board hearing.  The convening authority may direct that the board exclude one or more of the reasons from consideration as the basis of the discharge.  If the deletion eliminates the board entitlement, process the case IAW **paragraph 8.8**.

8.42.3. Apply the guidance on service characterization that allows the most latitude, if discharge for more than one reason is approved.  For example, if a recommendation for discharge is approved for both misconduct and unsatisfactory performance, apply the criteria for characterization of discharge for misconduct because it allows the greater latitude.

8.42.4. Resolve conflicts between a specific requirement applicable to one reason and a general requirement applicable to another by applying the specific requirement.

8.42.5.  Use the procedure most favorable to the member if a conflict in procedures cannot be resolved based on the above.

**8.43.  Separation Authority for Cases Processed Jointly.**  The GCMCA acts on the case if any part of it processed alone would have required such referral.  The SPCMCA is the separation authority in other cases.  For the ARC, see **paragraph 13.1.1** for involuntary discharge and separation authority guidance.

**8.44.  Reporting Separation for More Than One Reason.**  The separation authority complies with **paragraph 8.12.3.3** in deciding whether to approve discharge for one reason or more than one.  If the separation authority directs discharge for more than one reason, the instrument (or documentation) directing discharge must cite the primary reason.  **(T-1)** The separation is reported in MilPDS on that basis.

**8.45.  Execution of Discharge Involving Civilian Conviction.**  The restrictions on executing a discharge based on a civilian conviction under appeal, or while a member is in confinement in a foreign country, apply.  See **paragraph 8.59** and **paragraph 8.60** for more guidance.  If the

civilian conviction is overturned on appeal, send the case back to the separation authority for action IAW the other reason or reasons.

***Section 8G—Processing Members Dropped from the Rolls of the Air Force or Space Force or for Discharge in Absentia When Not Under Military Control.***

**8.46.  Dropping ARC Enlisted Members from the Rolls of the USAF or USSF.**  In rare cases, following guidance provided in 10 USC § 12684, enlisted members who have been found guilty by civilian authorities of any offense and sentenced to confinement in a federal or state penitentiary, or correctional institution may be dropped from the rolls of the USAF or USSF.

8.46.1.  Under the statutes of some states, sentence to confinement in a county jail may constitute confinement in a correctional institution.

8.46.2.  The squadron or other commander of a member who meets the criteria of civilian conviction forwards a report to the separation authority or the TAG or CG.  **(T-2)**

8.46.3.  The separation authority or TAG/CG action.  Upon receipt of the case report from the squadron (or other) commander, the separation authority or TAG/CG determines whether to forward the case to the SecAF, or designee for SecAF, for a decision on whether to drop the enlisted member from the rolls of the USAF or USSF.  If the separation authority or TAG/CG determines a dropped from rolls action is appropriate, the separation authority or TAG/CG:

8.46.3.1.  Notifies the enlisted member of the proposed action in writing.

8.46.3.2.  Allows the enlisted member a reasonable time to submit comments (normally 10 calendar days from the enlisted member's receipt of notice).

8.46.3.3.  Forwards the case to SecAF, or designee, through command channels (specifically NGB for ANG), including the following:

8.46.3.3.1.  Proof of notice to the enlisted member.

8.46.3.3.2.  The enlisted member's comments, if any.

8.46.3.3.3.  A statement whether discharge action is or has been started.

8.46.3.3.4.  Any other appropriate comments and recommendations. And

8.46.3.3.5.  The information required by civilian conviction.

8.46.4.  SecAF, or designee, announces the decision whether to drop the enlisted member from the rolls.

8.46.5.  The appropriate agency publishes orders dropping an enlisted member from the rolls of the USAF or USSF.  Issue no separation documents.  Dropping an enlisted member from the rolls of the USAF or USSF terminates the enlisted member's military status at 2400 hours on the date specified in the orders.

8.46.6.  Conviction by a Foreign Court.  Do not drop an enlisted member from rolls of the USAF or USSF based upon a conviction and sentence of a foreign court.  Members may, however, be dropped from rolls of the unit on this basis.

8.46.7.  Members dropped from the rolls of their units.  Dropping from unit rolls is an administrative action that does not change the member's status as a member of the USAF or

USSF. (Dropping from unit rolls should not be confused with separation actions to "drop from the rolls of the USAF or USSF" covered in **paragraph 3.16**.).  For information about how it applies to deserters, see DAFI 36-3802, *Force Support Readiness Programs*.  The fact that a member was dropped from rolls as a deserter does not bar a later finding under DAFI 36-3802 that the member was only absent without leave (AWOL).

8.46.8.  Nothing in this section prevents considering the removal or discharge of the enlisted member under any other provision of this publication.

**8.47.  Eligibility for In Absentia Processing.**  In addition to processing separations approved by the GCMCA pursuant to **paragraph 3.11**., AFPC/DP3SA or ARPC/DPTTS may authorize in absentia discharge processing when:

8.47.1.  Prosecution of the member is apparently barred.  For more information, see Article 43, UCMJ.

8.47.2.  The member is an alien living in a foreign country where the US lacks authority to apprehend.

**8.48.  Notice to the Absentee.**  When in absentia discharge processing is authorized, use **paragraph 8.22** for guidance in adapting procedures for in absentia processing.  If the in-absentia member is not entitled to a board hearing, adapt the guidance in **paragraph 8.22** as appropriate.

8.48.1.  Send notification by certified mail, return receipt requested, to the address of record for the member or the next of kin.  The receipt for the letter serves as proof of notification.  If the letter is returned as undeliverable, it serves as proof of the attempt to notify the member.

8.48.2.  The letter tells the member that discharge UOTHC, resulting from an unauthorized absence of 180 days or more, is a conditional bar to benefits administered by the VA, notwithstanding any action by the discharge review board.  For more information, see 38 USC § 5303.  **(T-0)**

8.48.3.  A medical examination is not required, but may be authorized when:

8.48.3.1.  Unique circumstances show the information developed in an examination might have a strong, direct bearing on the type of separation.

8.48.3.2.  The absentee is not in civil confinement. And

8.48.3.3. Facilities for the examination of a person not under military control are reasonably available.  **Note**:  If necessary to comply with **paragraph 3.30**, a medical exam is required.

**8.49.  Return to Military Control.**  As a rule, an absentee processed for discharge IAW this section is not permitted to return to military control.  It may be authorized, however, when AFPC/DPMSSR or ARPC/DPTTS finds return to military control would serve a useful purpose.  In these cases, the letter of notification tells the member:

8.49.1.  Processing is suspended for at least 30 days.  Cite a specific date.

8.49.2.  If the member does not return to military control by that date, the recommendation for discharge is referred to the GCMCA for final decision.  For the ARC, see **paragraph 13.1.1** for involuntary discharge and separation authority guidance.

**8.50.  Alien Absentees.**  As a rule, aliens discharged for prolonged unauthorized absence may not return to the US.  Comply with procedures outlined in AFI 36-3202.

*Section 8H—Procedures for Cases Involving Civilian Conviction.*

**8.51.  Commander's Responsibilities.**  When information is received indicating that a member has been the subject of action by civilian authorities, the commander gets more information about the case.  **Figure 8.10** is the format used to ask for the information a commander needs to determine whether the member is subject to discharge for misconduct due to civilian conviction.

8.51.1.  If the civilian conviction involved an offense for which a punitive discharge would be authorized for the same or closely related offense under the *Manual for Courts-Martial* or state military code, or the sentence by civilian authorities includes confinement for 6 months or more, the commander must either recommend discharge or request a waiver of discharge processing.  **(T-1)**  For other civilian court conviction cases in which the member would be subject to discharge IAW criteria in **paragraph 7.40**, see **paragraph 7.40.1**.

8.51.2.  If there is a need to determine whether there is a record of other civil convictions in prior periods of service, ask the OSI detachment to run a fingerprint check through the Federal Bureau of Investigation to find whether there have been other offenses and how they were handled.

**8.52.  Waiver of Discharge:**

8.52.1.  Some cases warrant consideration for waiver of discharge.  In deciding whether a waiver should be recommended, consider the gravity of the specific offense involved, all the circumstances surrounding it, and any matters in extenuation.  Review the member's military record before the offense was committed and the member's potential for rehabilitation.

8.52.1.1.  Find out what disposition would have been appropriate if the offense had occurred and had been resolved entirely within the USAF or USSF community.  If the penalty assessed usually would have been less than discharge, a waiver may be appropriate.

8.52.1.2.  Get a psychiatric evaluation if the offense involves moral turpitude as defined in **Attachment 1**.

8.52.2.  Process promptly a waiver recommendation IAW **paragraph 7.19.4.1**.

8.52.3.  (For ARC only) If the commander determines that retention is appropriate and the civilian conviction involves an offense for which a punitive discharge would be authorized for the same or closely related offense under the UCMJ or state military code, or the sentence imposed by civilian authorities includes confinement for 6 months or more, then a written justification must be processed to the MAJCOM, FLDCOM, TAG or CG.  **(T-2)**

**8.53.  Processing Recommendations for Waiver:**

8.53.1.  A commander who considers waiver of discharge appropriate sends a recommendation to the SPCMCA.  For the ARC, see **paragraph 13.1.1** for involuntary discharge and separation authority guidance.  The recommendation includes:

8.53.1.1.  Charges or accusations against the member.

8.53.1.2.  Any available investigation report, military or civilian, of the offense.

8.53.1.3.  Actual sentence imposed, maximum punishment possible under the jurisdiction concerned, and status of any appeal made by the member.

8.53.1.4.  If the court's action did not include sentencing, tell how the actions by the civilian authorities make the member subject to discharge under **paragraph 7.51**.

8.53.1.5.  Maximum punishment possible under the UCMJ.

8.53.1.6.  A copy of the judgment or order of the court.  If there is a delay in obtaining such copy, forward the case without it.  Send the copy to the SPCMCA when it is obtained.

8.53.1.7.  The commander may substitute a letter from the clerk of the court for the copy of the judgment, if this letter contains all the needed information.  In overseas areas, the commanders may use a copy of the military trial observer report cited below in lieu of a copy of the judgment or order of the court.

8.53.1.8.  A copy of the report of the military trial observer or other official US observer assigned to attend the trial.

8.53.1.9.  Whether any fine was imposed by the court.

8.53.1.9.1.  If a fine was imposed, tell whether the member has paid the fine or any part of it.

8.53.1.9.2.  If the fine has not been paid in full, give the approximate date the member plans to pay it.

8.53.1.10.  Whether the member is under military control or in civil confinement.

8.53.1.10.1.  If the member is under military control, say whether there is any restraint such as probation or parole status imposed by the civil jurisdiction.

8.53.1.10.2.  If the member is in civil confinement, state the earliest possible date that the member is eligible for release or for parole consideration.

8.53.1.11.  Whether the foreign jurisdiction objects to the member's return to the CONUS.  If so, give the specific reason for the objection.

8.53.1.12.  A resume of the member's military record as shown in **Figure 8.4., paragraph 2**.

8.53.1.13.  Any other relevant information.  **Note**: Omit items required by these paragraphs if they do not apply.

8.53.2.  The SPCMCA may finally approve or disapprove the waiver.  For the ARC, see **paragraph 13.1.1** for involuntary discharge and separation authority guidance.

8.53.3.  If it is approved, no further action in the case is needed.

8.53.4.  If it is disapproved, discharge processing starts at once (**Section 8A, paragraph 8.2.**).

**8.54.  Notice to Civilian Authorities.**  While action in the case is pending, commanders do not tell civilian authorities that a member may be retained in the service.  Furthermore, commanders should not ask civilian authorities to end or suspend any form of civilian custody that may exist.  If final action results in a decision to retain the member, the commander will:

8.54.1.  Notify civilian authorities that the member is retained.  **(T-3)**

8.54.2.  Advise civilian authorities that a member who is in civil confinement is returned to duty on release **(T-3)** if:

8.54.2.1.  Any form of civilian custody or restraint, such as parole or probation, ends; or

8.54.2.2.  Any form of civilian custody or restraint, such as parole or probation, is suspended for the rest of the member's service in the USAF or USSF.

8.54.3.  Explain in the request for suspension or termination of civilian custody or restraint that:

8.54.3.1.  Such custody or restraint is not compatible with the USAF or USSF need for jurisdiction over a member.

8.54.3.2.  Commanders assign the member where their services are needed without regard to a requirement to report in person to a probation officer at periodic intervals or to stay within the jurisdiction of the court.

8.54.3.3.  It is not practical for the USAF or USSF to guarantee assignment at a particular base for a specified period of time.

8.54.3.4.  The civilian authorities may consider permitting the member to report, in writing rather than in person, when the terms of the probation or parole require reporting at certain intervals.

8.54.4.  Refer the case to AFPC/DPMSSR or ARPC/DPTTS, if the problem cannot be resolved by:

8.54.4.1.  Termination or suspension of civilian custody or restraint; or

8.54.4.2.  Modification of any requirement for reporting in person to a probation or parole officer or restrictions on departure from the jurisdiction of the court.

**8.55.  Civilian Court Actions Under Appeal.**  Process a recommendation for discharge or waiver of discharge even though the conviction is under appeal.  It is, however, the general policy to withhold execution of discharge, if approved, until the outcome of the appeal is known or the time for appeal has passed.  (**Note**: If only the sentence, and not the conviction, is being appealed then discharge may be executed).  If the appeal results in the conviction being set aside, the member may not be discharged due to civilian conviction.

8.55.1.  The respondent may request execution of the approved discharge while the appeal is pending.  The respondent will make the request in writing, tell how separation would benefit the respondent and show that it was made with the advice and assistance of legal counsel. **(T-1)** The separation authority asks the SJA to comment on the validity of the reasons given and to assess the possibility that the conviction may be overturned on appeal.  The GCMCA acts on the request.  For the ARC, see **paragraph 13.1.1** for involuntary discharge and separation authority guidance.  Usually, approve the request if:

8.55.1.1.  There is an indication the respondent benefits.

8.55.1.2.  The conviction is expected to withstand the appeal.

8.55.1.3.  No other circumstances exist requiring the return to military control of a member who is in civilian confinement.

8.55.2.  A separation authority who believes that an approved discharge should be executed without waiting for the outcome of the appeal may ask for authority to do so.  Route cases to AFPC/DPMSSR or ARPC/DPTTS (as appropriate) through the servicing MAJCOM/A1, FLDCOM/S1, AFRC/A1 or NGB/A1, for comments and recommendations.  If the respondent is a member of a tenant unit of another MAJCOM or FLDCOM, the separation authority also sends a copy of the case file to the parent MAJCOM/A1, FLDCOM/S1, AFRC/A1 or NGB/A1, who sends comments and recommendations to AFPC/DPMSSR or ARPC/DPTTS (as appropriate).  AFPC/DPMSSR or ARPC/DPTTS (as appropriate) refers the request for authority to discharge while an appeal is pending to SecAF for decision.  The request includes:

8.55.2.1.  A complete review of the circumstances.

8.55.2.2.  An indication whether or not the appeal is frivolous, or unlikely to result in reversal.

8.55.2.3.  An assessment by those in the best position to judge the validity of appeal.

8.55.2.4.  An explanation of any reason why the case should be treated as an exception prior to the completion of the appellate process.

8.55.2.5.  The estimated date action on the appeal may be finalized.

**8.56.  Execution of Discharge Based on Civilian Conviction When Member is Not Under Military Control:**

8.56.1.  A member whose home of record is in the CONUS may be discharged in absentia if the member:

8.56.1.1.  Is in civilian confinement in the CONUS; or

8.56.1.2.  Has been released from confinement in the CONUS and is at home, unable to be located since release or absent without authority after having been returned to military control.

8.56.2.  A member whose home of record is in the CONUS is not discharged while in civilian confinement outside the CONUS.  The discharge case may be processed; however, if discharge is approved, it may not be executed until the member has been released from confinement and returned to the CONUS.

8.56.3.  Members involved in civilian court action outside the CONUS (for example, Alaska, Hawaii, or Puerto Rico) may be discharged in absentia if:

8.56.3.1.  The area is the member's home of record; and

8.56.3.2.  The member has requested discharge in that area.

8.56.4.  Do not discharge a member in absentia if the GCMCA determines that return to military control for trial by court-martial is appropriate.  In that case, the commander will lodge a detainer with civilian authorities to make sure the member returns to USAF or USSF custody. **(T-1)** The return of a member to military control should not be requested unless serious charges are pending. In some cases, the detainer may keep the member from being considered for parole.  Civilian authorities may be reluctant to grant parole if the inmate is subject to further confinement elsewhere.  In this case, consider the type of military offense or offenses, the age

of the member, the military record, the member's rehabilitation potential and the length of civil confinement.

8.56.5. When an exception to any of the foregoing restrictions on executing discharge in absentia is considered appropriate, the case may be referred to AFPC/DPMSSR or ARPC/DPTTS (as appropriate) for decision. The request for authority to discharge should include a complete explanation of the facts of the case. It tells why they warrant an exception to policy (ETP).

8.56.6. In some cases, the commander may decide to wait until the member returns to the base before discharge is executed. This may happen when the time of confinement is short, and the place of confinement is near the base of assignment. In other cases, where a member was AWOL before the offense and the place of confinement is far from the base, the same consideration need not be given. **Note**: The restrictions of **paragraph 8.53** apply in all civilian conviction cases.

**8.57.  Cases Involving Foreign Courts.**

8.57.1. Do not discharge a member while in a foreign penal institution. Withhold execution of an approved discharge until the member is released from confinement and is returned to the CONUS. Only AFPC/DPMSSR or higher authority may authorize exceptions. This also applies to ARC members who are in active duty status at the time they enter the foreign penal institution.

8.57.2. A member confined in a foreign penal institution for a long term may be dropped from the unit rolls. This is an administrative action. It does not change the member's status as a member of the USAF or USSF. This status continues until discharge, and if approved, is executed.

8.57.3. Commanders may retain a member beyond ETS in some cases. When a member who is present for duty is nearing ETS and is also awaiting action by foreign civil authorities, comply with **paragraph 4.7**.

*Section 8I—Waiver Processing Requirements in Drug Abuse Cases.*

**8.58.  Waiver of Discharge.** A member found subject to discharge for drug abuse under **paragraph 7.43** may warrant consideration for waiver of discharge. In deciding whether to recommend a waiver, commanders consider the nature of the offense involved, all the circumstances surrounding the offense, any matters in extenuation, the member's military record, and the member's potential for future productive service. Consideration includes evaluation of the retention criteria in **paragraph 7.43.4.2** of this publication. The commander must determine that the facts and circumstances of a member's case meet the retention criteria in this publication and therefore warrant a recommendation for waiver action. **(T-1)** Promptly process a waiver recommendation IAW **paragraph 8.59**.

**8.59.  Processing Recommendations for Waiver.**

8.59.1. A commander who initiates waiver of discharge action sends a recommendation to the SPCMCA. For the ARC, utilize **paragraph 13.1.1** for waiver authority guidance. This provides the commander's reasons for recommending the waiver and includes:

8.59.1.1.  Evidence substantiating the member's drug abuse, completed disciplinary or administrative action taken as a result of the member's drug use (e.g., courts-martial orders, Article 15 actions, letters of reprimand).

8.59.1.2.  Any available investigation report, military or civilian, of the drug offenses.

8.59.1.3.  The commander's statement explaining how the member meets each of the retention criteria set forth in **paragraph 7.43.4.2**.

8.59.1.4.  Rehabilitative action (e.g., ADAPT or similar program) taken in the member's case and results.

8.59.1.5.  Any other relevant information.

8.59.2.  The SPCMCA may disapprove the waiver.  If the SPCMCA recommends approval of the waiver action, it is sent to the GCMCA for final action.  If it is approved, no further action in the case is needed.  If it is disapproved, discharge processing starts at once (**paragraph 8.2**.). For the ARC, utilize **paragraph 13.1.1** for waiver authority guidance.

### Section 8J—Waiver Processing Requirements in Sexual Assault Cases.

**8.60. Waiver of Discharge.** A member found subject to discharge for sexual assault under **paragraph 7.44** may warrant consideration for waiver of discharge.  In deciding whether to recommend a waiver, commanders consider the victim's views on retention of the member, the nature of the offense involved, all the circumstances surrounding the offense, and an evaluation of the requirements for an exception to mandatory separation in **paragraph 7.44.3.2**.

8.60.1.  Commanders may not consider the member's personal, family, or financial circumstances; good military character or service record; or medical or mental health condition in determining whether the facts meet the requirements for discharge action with a sexual assault basis.  **Note:**  Commanders may consider the member's service record and physical and mental condition when making a recommendation on characterization of discharge.

8.60.2.  The commander must determine that the facts and circumstances of a member's case meet the requirements for an exception to mandatory separation in **paragraph 7.44.3.2** and therefore warrant a recommendation for waiver action.  **(T-1)**

8.60.3.  Promptly process a waiver recommendation IAW **paragraph 8.61**.

**8.61. Processing Recommendations for Waiver.**

8.61.1.  A commander who initiates waiver of discharge action sends a recommendation to the SPCMCA.  For the ARC, utilize **paragraph 13.1.1** for waiver authority guidance.  This provides the commander's reasons for recommending the waiver and includes:

8.61.1.1.  Evidence substantiating the member's sexual assault.  This is typically the completed disciplinary or administrative action taken as a result of the member's sexual assault (e.g., courts-martial orders, Article 15 actions, and letters of reprimand).

8.61.1.2.  Any available investigation report, military or civilian, of the sexual assault offense.

8.61.1.3.  Any victim impact statement the victim or Special Victims' Counsel provide.

8.61.1.4.  The commander's statement explaining how the member meets each of the requirements for an exception to mandatory separation set forth in **paragraph 7.44.3.2**.

8.61.1.5.  Rehabilitative action taken in the member's case, if any, and results.

8.61.1.6.  Any other relevant information.

8.61.2.  SPCMCA Action on Waiver Recommendation.

8.61.2.1.  The SPCMCA may not consider the member's personal, family, or financial circumstances; good military character or service record; or medical or mental health condition in determining whether a waiver of involuntary separation processing is appropriate.

8.61.2.2.  The SPCMCA may disapprove the waiver.  If the SPCMCA recommends approval of the waiver action, it is sent to the GCMCA for final action.  If it is approved, no further action in the case is needed.  If it is disapproved, discharge processing starts at once (**paragraph 8.2**.).  For the ARC, utilize **paragraph 13.1.1** for waiver authority guidance.

***Section 8K—Waiver Processing Requirements in Cases Involving Unprofessional Relationships with Prospective Members of the Armed Forces or New Members During Recruiting, Entry-Level Processing, or Initial Skills Training.***

**8.62.  Waiver of Discharge.**  A member found subject to discharge under **paragraph 7.40.3** for engaging, or having tried to engage, in an unprofessional relationship with, prospective members of the Armed Forces or new members during recruiting, entry level processing or entry level training under **paragraph 7.40.3** may warrant consideration for waiver of discharge.

8.62.1.  In deciding whether to recommend a waiver, commanders must consider the victim's views on retention of the member, the nature of the offense involved, all the circumstances surrounding the offense, any matters in extenuation, the member's military record, the member's potential for future productive service, and an evaluation of the retention criteria in **paragraph 7.40.3.6**.  **(T-1)**

8.62.2.  The commander must determine that the facts and circumstances of a member's case meet the retention criteria in **paragraph 7.40.3.6** and therefore warrant a recommendation for waiver action.  **(T-1)**

8.62.3.  DELETED

**8.63.  Processing Recommendations for Waiver.**

8.63.1.  A commander who initiates waiver of discharge action sends a recommendation to the SPCMCA.  For the ARC, utilize **paragraph 13.1.1** for waiver authority guidance.  This provides the commander's reasons for recommending the waiver and must include:

8.63.1.1.  Evidence substantiating the member's misconduct.  This is typically the completed disciplinary or administrative action taken as a result of the member's misconduct (e.g., courts-martial orders, Article 15 actions, letters of reprimand).  **(T-1)**

8.63.1.2.  Any available investigation report, military or civilian, of the misconduct.  **(T-1)**

8.63.1.3.  Any victim impact statement the victim or Special Victims' Counsel provide. **(T-1)**

8.63.1.4.  The commander's statement explaining how the member meets each of the retention criteria set forth in **paragraph 7.40.3.6**  **(T-1)**

8.63.1.5.  Rehabilitative action taken in the member's case, if any, and results.  **(T-1)**

8.63.1.6.  Any other relevant information.  **(T-1)**

8.63.2.  The SPCMCA may disapprove the waiver.  If the SPCMCA recommends approval of the waiver action, it is sent to the GCMCA for final action.  If it is approved, no further action in the case is needed.  If it is disapproved, discharge processing starts at once (**paragraph 8.2**.). For the ARC, utilize **paragraph 13.1.1** for waiver authority guidance.  **(T-1)**

### Section 8L—Processing for Retirement Eligible Members.

**8.64.  Service Retirement Eligibility.**  Members who are eligible for retirement or transfer to the retired reserve may be permitted to retire or transfer to the retired reserve.  DAFI 36-3203 provides additional guidance regarding service retirement eligibility and processing.

8.64.1.  If discharge action is initiated against a member who has already applied for retirement or transfer to the retired reserve, immediately notify AFPC/DPMSSR or ARPC/DPTTR. AFPC/DPMSSR or ARPC/DPTTR will suspend processing the retirement or transfer to the retired reserve action according to guidance provided in DAFI 36-3203.  **(T-1)**

8.64.2.  Members who have not applied for retirement or transfer to the retired reserve may apply for retirement in lieu of discharge if they are retirement eligible at the time discharge starts or if they attain retirement eligibility after discharge action starts (see **Table 8.13**., **Note 1** and **Table 8.14**.).

8.64.3.  The discharge notification letter tells the member the member may apply for retirement or transfer to the retired reserve, as appropriate.  For a sample of the information the commander should include in the letter of notification for regular component members, use **Figure 8.8**.  Commanders should follow the format provided in **Attachment 12** for ARC members.

**8.65. Action When the Respondent Does Not Apply.** Process the discharge action to completion if the member does not apply for retirement or transfer to the retired reserve.  If the final determination is to retain the member, no further action is necessary.  If the final determination is approval for discharge, the servicing FSS/MPF notifies AFPC/DPMSSR or ARPC/DPTTR and does not execute the discharge until they get a reply.

**Figure 8.1.  Sample Letter of Notification—Entry Level Separation.**

(Appropriate Letterhead)

(Date)

MEMORANDUM FOR (GRADE, NAME, UNIT)

FROM: (functional address symbol)

SUBJECT:  Letter of Notification

I am recommending your discharge from the (Insert USAF or USSF) for (quote the title of the applicable paragraph(s)). The authority for this action is DAFPD 36-32, *Military Retirements and Separations* and DAFI 36-3211, *Military Separations*, paragraph(s) 7.22.(XX). If my recommendation is approved, your discharge will be described as an entry level separation, and you will be ineligible for reenlistment in the (Insert USAF or USSF) (see **Note 1, 5,** and **6**).

My reasons for this action are: (Tell how the criteria of the cited paragraph(s) are met.  Give the specifics of the act or acts or condition or conditions on which the recommendation is based). Copies of the documents to be forwarded to the separation authority in support of this recommendation are attached.  The commander exercising special court-martial jurisdiction or higher authority will decide whether you will be discharged or retained in the (Insert USAF or USSF).  If you have previously made a restricted or unrestricted report of sexual assault, you have the right to seek assistance from the Sexual Assault Response Coordinator prior to discharge.

If you have made an unrestricted report of sexual assault and are being recommended for discharge within 1 year of final disposition of the sexual assault allegation, you have the right to request review of this recommendation by the commander exercising general court-martial convening authority or, if the general court-martial convening authority is not a general officer, the first general officer in your chain of command.  If you request this review, the commander exercising general court-martial convening authority or higher authority will review the circumstances of, and grounds for, this recommendation for discharge and decide whether you will be discharged or retained in the (Insert USAF or USSF).

You have the right to consult counsel.  Military legal counsel has been obtained to assist you.  I have made an appointment for you to consult (grade, name) at (place) on (date) at (time). You may consult civilian counsel at your own expense.

You have the right to submit statements on your own behalf.  Any statements you want the separation authority to consider must reach me by (allow 3 workdays or 30 calendar days if needed for Air Reserve Component (ARC) members) unless you request and receive an extension for good cause shown.  I will send them to the separation authority.

(For Air Force Reserve (AFR) Only) You have the opportunity to voluntarily extend your Expiration of Term of Service (ETS) to allow the separation process to run its course.  If separation takes place on ETS while involuntary discharge is pending, then you are not eligible to reenlist.  See DAFI 36-3211, paragraph 3.12.4.

If you fail to consult counsel or to submit statements on your own behalf, your failure will constitute a waiver of your right to do so.

You are required to complete a comprehensive Separation History and Physical Examination. You have been scheduled for a medical examination. You must report to (medical facility) at (time) on (date) for the examination. (See **Note 2**). **Note**: If time permits, the member may elect to have the Separation History and Physical Examination accomplished through a DoD Military Treatment Facility (MTF) or through the Department of Veterans Affairs.

Any personal information you furnish in rebuttal is covered by the Privacy Act of 1974. A copy of DAFI 36-3211, is available for your use at the e-Publishing website.

Execute the acknowledgment below and return it to me immediately.


(Commander's signature)
(Commander's name, grade), USAF/USSF


Attachment(s): (see **Note 3**)

1. Documents supporting discharge action


Member's Receipt: (see **Note 4**)

I received this letter of notification (date of memorandum), at (hours) on (date of receipt), informing me of processing in accordance with DAFPD 36-32 and DAFI 36-3211, *Military Separations,* DAFI 36-3211, paragraph(s) 7.22.(XX) on which discharge is based).

I understand that I have the right to: Consult counsel.

Submit statements on my own behalf.  Waive either of the above rights.

I acknowledge that:

I have received copies of the documents to be forwarded to the separation authority in support of the recommendation for my discharge.

I have been given an appointment to consult military legal counsel.  I understand that:

This action may result in my discharge from the (insert USAF or USSF) with (enter the least favorable type of separation).

That my failure to consult counsel or to submit statements will constitute a waiver of my right to do so.

(Member's signature)
(Typed name, grade), USAF/USSF

**Notes**:
1.  Substitute "will" for "may" if Reenlistment Eligibility Code 3A applies.  Add required statement that condition does not qualify as a disability for discharges based on **paragraph 7.11.**
2.  Omit this paragraph if the enlistment physical is still valid.
3.  List each document individually as an attachment.
4.  Withdraw member's receipt of notification letter for attachment to the commander's recommendation for discharge (**Figure 8.4**).
5.  In discharge cases where the member has received special pay, a bonus, or education assistance, include the following: "and any special pay, bonus, or education assistance funds may be subject to recoupment."
6. Add the following paragraph only in cases involving recoupment of education assistance funds, under 10 USC § 2005: "The separation authority will make the findings and recommendations required to the Secretary of the Force if such person does not complete the period of active duty specified in the agreement, or does not fulfill any term or condition prescribed, such person shall be subject to the repayment provisions of 37 USC § 303a(e); and (4) to such other terms and conditions as the Secretary concerned may prescribe to protect the interest of the US (10 USC § 2005, (a) (3))."

**Note:** For the ARC, utilize **paragraph 13.1.1** for involuntary discharge and separation authority guidance.

**Figure 8.2.  Sample Letter of Notification—No Board Entitlement (Honorable or Under Honorable Conditions (General) Discharge) (See Note 7).**

(Appropriate Letterhead)

(Date)

MEMORANDUM FOR (GRADE, NAME, UNIT)

FROM: (functional address symbol)

SUBJECT: Letter of Notification

I am recommending your discharge from the (insert USAF or USSF) for (quote the title of the applicable paragraph or paragraphs).  The authority for this action is DAFPD 36-32, *Military Retirements and Separations* and DAFI 36-3211, *Military Separations*, Part 2, Separation of Enlisted Members.  The least favorable service characterization you could receive is (honorable) (honorable or general).  I am recommending that your service be characterized as (See **Note 1**).

My reasons for this action are: (Tell how the criteria of the cited paragraph or paragraphs are

met.  Give specifics of the act or acts or condition or conditions on which the recommendation is based).  Copies of the documents to be forwarded to the separation authority in support of this recommendation are attached.  The commander exercising special court-martial jurisdiction, or a higher authority will decide whether you will be discharged or retained in the (USAF or USSF) (See **Note 2**).  If you are discharged, you will be ineligible for reenlistment in the (USAF or USSF) (See **Notes 4** and **5** about potential recoupment statement).

If you have previously made a restricted or unrestricted report of sexual assault, you have the right to seek assistance from the Sexual Assault Response Coordinator prior to discharge.

If you have made an unrestricted report of sexual assault, are being recommended for discharge within 1 year of final disposition of the sexual assault allegation, and believe this recommendation for discharge was initiated in retaliation for making that report, you have the right to request review of this recommendation by the commander exercising general court-martial convening authority or, if the general court-martial convening authority is not a general officer, the first general officer in your chain of command.  If you request this review, the commander exercising general court-martial convening authority or higher authority will review the circumstances of, and grounds for, this recommendation for discharge and decide whether you will be discharged or retained in the (insert USAF or USSF).

You have the right to consult counsel.  Military legal counsel has been obtained to assist you.  I have made an appointment for you to consult (grade, name) at (place) on (date) at (time).  You may consult civilian counsel at your own expense.

You have the right to submit statements on your own behalf.  Any statements you want the separation authority to consider must reach me by (allow 3 workdays) unless you request and receive an extension for good cause shown.  I will send them to the separation authority.

If you fail to consult counsel or to submit statements on your own behalf, your failure will constitute a waiver of your right to do so.

You are required to complete a comprehensive Separation History and Physical Examination.  You have been scheduled for a medical examination.  You must report to (medical facility) at (time) on (date) for the examination.  **Note**: If time permits, the member may elect to have the Separation History and Physical Examination accomplished through a DoD Military Treatment Facility or through the Department of Veterans Affairs.

Any personal information you furnish in rebuttal is covered by the Privacy Act of 1974.  A copy of DAFI 36-3211, Part 2, is available for your use at the e-Publishing website.  Execute the acknowledgment below and return it to me immediately.


(Typed name, grade) USAF/USSF
Commander

Attachment(s): (see **Note 3**)

1.  Documents supporting discharge action


Member's Receipt: (see **Note 6**)

I received this letter of notification (date of memorandum), at (hours) on (date of receipt), informing me of processing in accordance with DAFPD 36-32 and DAFI 36-3211, paragraph (paragraph(s) on which discharge is based).

I understand that I have the right to: Consult counsel.

Submit statements on my own behalf.  Waive either of the above rights.

I acknowledge that:

I have received copies of the documents to be forwarded to the separation authority in support of the recommendation for my discharge.

I have been given an appointment to consult military legal counsel.  I understand that:  This action may result in my discharge from the (insert USAF or USSF) with (enter the least favorable type of separation).

That my failure to consult counsel or to submit statements will constitute a waiver of my right to do so.


(Member's signature)
(Typed name, grade), USAF/USSF


**Notes**:
1.  Omit this sentence if the reason requires the issuance of an Honorable discharge.  Add required statement that condition does not qualify as a disability for discharges based on **paragraph 7.11.**
2.  If the issuance of an honorable discharge is not required add "and, if you are discharged, how your service will be characterized."
3.  List each document individually as an attachment and indicate the number of pages for each attachment.
4.  In discharge cases where the member has received special pay, a bonus, or education assistance, include the following: "and any special pay, bonus, or education assistance funds may be subject to recoupment."
5.  Add the following paragraph only in cases involving recoupment of education assistance funds, under 10 USC § 2005:  "The separation authority will make the findings and recommendations required to the Secretary of the Force if such person does not complete the period of active duty specified in the agreement, or does not fulfill any term or condition prescribed, such person shall be subject to the repayment provisions of 37 USC § 303a(e); and (4) to such other terms and conditions as the Secretary concerned may prescribe to protect the interest of the US (10 USC § 2005, (a) (3))."

**DAFI36-3211  24 JUNE 2022** 173

6.  Withdraw member's receipt of notification letter for attachment to the commander's recommendation for discharge (**Figure 8.4**).
7.  See **Attachment 8** through **Attachment 14** to this publication for ARC samples.

**Figure 8.3.  Sample Memorandum Member's Statement—No Board Entitlement.**

(Appropriate Letterhead)

(Date)

MEMORANDUM FOR (COMMANDER)

FROM: "Member's Name"

SUBJECT: Discharge Under DAFI 36-3211

I have been notified that you are recommending me for discharge for (reason) (reasons) cited in the letter of notification in accordance with DAFPD 36-32, *Military Retirements and Separations* and DAFI 36-3211, *Military Separations*, Part 2, Separation of Enlisted Members, (paragraph) (paragraphs) X.XX and of the specific basis of the proposed discharge.

Military legal counsel was made available to me.  I (have consulted) (hereby waive my option to consult) counsel.

(**Note**:  Include the following statement if the member is eligible for paragraph 3.29 provisions and subsequently invokes those provisions: "I am entitled to and request general court-martial convening authority review of this separation action under DAFI 36-3211, paragraph 3.29")

I (am submitting the attached statements for your consideration) (hereby waive my right to submit statements.)


(Member's signature)
(Typed name, grade), USAF/USSF

Attachments:
1. Statements (if any).
2. See Attachment 11 through Attachment 14 to this publication for Air Reserve Component samples.

**Note**: Delete inapplicable words or statements

**Figure 8.4.  Sample Memorandum Recommendation for Discharge (See Note 10).**

(Appropriate Letterhead)

(Date)

MEMORANDUM FOR (SPECIAL COURT-MARTIAL CONVENING AUTHORITY)

FROM:  CC

SUBJECT:  Recommendation for Discharge (name, grade)

I recommend that (grade, name) be discharged from the (insert USAF or USSF) for (quote the applicable section title).  The authority for my recommendation is DAFPD 36-32, *Military Retirements and Separations* and DAFI 36-3211, *Military Separations*, Part 2, Separation of Enlisted Members, paragraph X.X.X.  I recommend (type of characterization).  The specific (reason) (reasons) for the proposed discharge and (act) (acts) or (condition) (conditions) on which the recommendation is based are contained in Attachment 1, and letter of notification (give date of memorandum).

The following information from the military record follows or is found at Attachments 1 or 3 (see **Notes 1, 2 and 3**).

a. Date and term of enlistment and date this period of continuous active duty started, pay-date, Total Active Federal Military Service date, and dates of prior service.

b. Date of birth.

c. Test Scores.

d. Formal training (see **Note 4**).

e. Date assigned unit.

f. Current grade and effective date.

g. Demotions, if any, reasons, and dates thereof.

h. Time lost.  Give reason or reasons and dates.

i. Record of disciplinary actions.  Include action under Article 15, UCMJ, and conviction by court-martial.  Specify offenses, findings, sentence.

j. Overall rating or ratings on Enlisted Performance Brief (EPB)s as reflected on the reports at Attachment 5 or 8. (Attach copies of the EPBs from the Automatic Records Management System.  Do not re-type the rating(s) in the recommendation)

k. Favorable communications, citations, or awards.

l. Derogatory data, other than action by court-martial or under Article 15, UCMJ.

m. Medical or other data meriting consideration.

n. The respondent, (grade and name) reported being a sexual assault victim (see **Note 7**).

Actions required under DoDM 5200.02_AFMAN 16-1405, *Air Force Personnel Security Program*, are complete (see **Note 5**).

I (do) (do not) recommend probation and rehabilitation in accordance with Part 2.  Specific reasons must be given if probation and rehabilitation is not recommended.

(I am aware that the member is alleging or has alleged that (he) (she) was the victim of sexual assault but (he) (she) is not entitled to request review of this separation action by the general court-martial convening authority or the first general officer in the chain of command, whichever is higher, per DAFI 36-3211, paragraph 3.29.)

(I am aware that the member is within 1 year of the of the final disposition of (his)(her) sexual assault case and entitled to request review of this separation action by the general court-martial convening authority or the first general officer in the chain of command, whichever is higher, per DAFI 36-3211, paragraph 3.29.  The member has been properly notified of (his) (her) right to request review.  (The member has requested general court-martial convening authority review and I have attached documents to justify this separation action in accordance with the requirements of DAFI 36-3211, paragraph 3.29.)   (The member did not request general court-martial convening authority review.)

(Type name grade) USAF/USSF
Commander


No board entitlement - example of attachments
Attachments: (See **Note 9**)
1.  Copy of Letter of notification with attachments
2.  Addendum to Letter of notification (if applicable)
3.  Member's Single Uniform Retrieval Form (automated career brief)
4.  Member's Statement (Figure 8.3) with or without attachments
5.  Medical Examination
6.  EPBs
7.  Other documents, if applicable (See **Notes 6** and **8**)


Board Action - Example of attachments
Attachments: (See **Note 9**)
1.  Copy of Letter of notification with attachments
2.  Addendum to Letter of notification (if applicable)
3.  Member's Single Uniform Retrieval Form (automated career brief)
4.  Member's Statement with or without attachments or
5.  Member's Statement of Conditional Waiver (**Figure 8.7**) with or without attachments or
6.  Application for Retirement (if applicable)
7.  Medical Examination

8.  EPBs

9.  Other documents, if applicable (See **Notes 6** and **8**)


**Notes:**

1.  Air Force Personnel Center provides copies of documents from, or information about prior service on request.

2.  Documents containing derogatory information will be attached to the letter of notification. If a document is attached to the letter of notification, do not repeat the information in this figure, paragraph 2, indicate its attachment number to the letter of notification.

3.  Information contained in the Member's Single Uniform Retrieval Form does not need to be repeated in this figure, paragraph 2.

4.  If the respondent has not completed initial training (basic or technical), summarize progress, or describe failure to progress.

5.  Use this paragraph only for respondents who have access to sensitive information or sensitive compartmented information.  For more information, see **paragraph 3.6**.

6.  Additional attachments may include any additional documents or statements submitted in rebuttal by the member and evidence of preprocessing rehabilitation.  Information from classified documents may be provided in an unclassified summary.

7.  Omit if not applicable.  Under DAFI 90-6001, paragraph 6.6.2, when a commander recommending administrative separation action is aware, or is made aware by the respondent or other, that the respondent is alleging or has alleged that the respondent was a sexual assault victim, the commander shall notify the separation authority that the discharge proceeding involves a sexual assault victim.  The commander, (or equivalent) recommending administrative separation must provide sufficient information to the separation authority concerning the alleged assault and the respondent's status to ensure a full and fair consideration of the victim's military service and particular situation.  Commanders should consult with Office of Special Investigations and the servicing legal office for guidance on the level of information that may be applicable.

8.  If the reason for discharge is supported by an Article 15 as documentation, include with the record of Article 15 punishment all the evidence and supporting documents, if reasonably available.  The evidence and supporting documents should be available in the files of the servicing legal office that advised the Commander on the Article 15.

9.  Indicate the number of pages for each attachment.

10.  See **Attachment 8** of this publication for an Air Reserve Component sample.

**Figure 8.5.  Sample Letter of Notification—Board Hearing.**

<div style="border:1px solid black; padding:10px;">

(Appropriate Letterhead)

(Date)

MEMORANDUM FOR (Respondent Grade, Name, Unit)

FROM:  CC

SUBJECT:  Letter of Notification--Board Hearing

I am recommending your discharge from the (insert USAF or USSF) for (cite the title of the applicable part or parts of Chapter 7) in accordance with DAFPD 36-32, *Military Retirements and Separations*, and DAFI 36-3211, *Military Separations*, Part 2, Separation of Enlisted Members, paragraph(s) XX.  Copies of the documents to be forwarded to the separation authority to support this recommendation are attached.

My reasons for this action are:

(Itemize the factual details of the actions that are the basis of the recommendation.)

This action could result in your separation with (see **Note 1**).  I am recommending that you receive (see **Note 2**) discharge.  The commander exercising special court-martial jurisdiction, or a higher authority will make the final decision in this matter.  If you are discharged, you will be ineligible for reenlistment in the (insert USAF or USSF) and will probably be denied enlistment in any component of the armed forces (see **Note 3**).  If you are discharged, the least favorable service characterization you could receive is (honorable) (general (under honorable conditions)) (UHC).

You have the right to:

a. Consult legal counsel.

b. Present your case to an administrative discharge board.

c. Be represented by legal counsel at a board hearing.

d. Submit statements on your own behalf in addition to, or in lieu of, the board hearing.

e. Waive the above rights.  You must consult legal counsel before deciding to waive any of your rights.

f. If you have previously made a restricted or unrestricted report of sexual assault you have the right to seek assistance from the Sexual Assault Response Coordinator prior to discharge.

g.  If you have made an unrestricted report of sexual assault, are being recommended for discharge within 1 year of final disposition of the sexual assault allegation and believe this recommendation for discharge was initiated in retaliation for making that report, you have the

</div>

right to request review of this recommendation by the commander exercising general court-martial convening authority or first general officer in your chain of command if the general court-martial convening authority is not a general officer, whichever is higher.  If you request this review, the commander exercising general court-martial convening authority or higher authority will review the circumstances of, and grounds for, this recommendation for discharge and decide whether you will be discharged or retained in the (insert USAF or USSF).

h. If the member is being recommended for a separation with an UOTHC discharge, add the following sentence: "If your separation is approved for a characterization of under other than honorable conditions (UOTHC) discharge you may petition the Veterans Benefits Administration of the Department of Veterans Affairs for certain benefits under the laws administered by the Secretary of Veterans Affairs."

You are required to complete a comprehensive Separation History and Physical Examination. You have been scheduled for a medical examination.  You must report to (medical facility) at (time) on (date) for the examination.  **Note**: If time permits, the member may elect to have the Separation History and Physical Examination accomplished through a DoD Military Treatment Facility or through the Department of Veterans Affairs.

Military legal counsel (grade, name, duty address, and duty phone number) has been obtained to assist you.  An appointment has been scheduled for you to consult (him) (her) on (date, time, and place).  Instead of the appointed counsel, you may have another, if the lawyer you request is in the active military service and is reasonably available as determined in accordance with DAFI 51-201, *Administration of Military Justice*.  In addition to military counsel, you have the right to employ civilian counsel.  The Department of the Air Force does not pay expenses incident to the employment of civilian counsel.  Civilian counsel, if employed, must be readily available.

Confer with your counsel and reply, in writing, within seven workdays, specifying the rights you choose to exercise.  The statement must be signed in the presence of your counsel who also will sign it.  If you waive your right to a hearing before an administrative discharge board, you may submit written statements on your own behalf.  I will send the statements to the separation authority with the case file to be considered with this recommendation.  If you fail to respond, your failure will constitute a waiver of the right to the board hearing (see **Note 5**).

Any personal information you furnish in rebuttal is covered by the Privacy Act of 1974.  A copy of DAFI 36-3211 is available for your use (say where) (see **Note 5**).

If you request a board and you fail to appear without good cause, your failure to appear constitutes a waiver of your right to be present at the hearing.

If you received advanced educational assistance, special pay, or bonuses, and have not completed the period of active duty you agreed to serve, you may be subject to recoupment (see **Note 7**).

Execute the attached acknowledgment and return it to me immediately.

(Typed name, grade), USAF/USSF

Commander

Attachments (See **Note 6**):

1.  Supporting documents--for the reason for discharge
2.  Documents containing derogatory information--which are not listed in the notification letter


Member's Acknowledgment: (See **Note 8**)

I received your (date of memorandum) memorandum notifying me of action in accordance with DAFI 36-3211, *Military Separations,* Part 2, Separation of Enlisted Members, paragraph(s) X.XX at (time) hours on (date of acknowledgment).

I understand that I have the right to:

a. Consult counsel.

b. An administrative discharge hearing.

c. Be represented by counsel at a board hearing.

d. Submit statements on my own behalf at any time, to be considered in the disposition of this case.

e. Waive the above rights.

I acknowledge that:

a. I have received copies of the documents to be forwarded to the separation authority in support of the recommendation for discharge.

b. I have been given the opportunity to consult with military counsel.


I understand that:

a. Approval of this recommendation for my discharge could result in my receiving a (see **Note 1**) separation.

b. My failure to acknowledge receipt of this action, consult with counsel, or submit statements will constitute a waiver of my right to do so.

c.  (If member is being recommended for a separation with an UOTHC discharge, add the following sentence: "I understand that if the characterization results in an under other than honorable conditions (UOTHC) discharge I may petition the Veterans Benefits Administration of the Department of Veterans Affairs for certain benefits under the laws administered by the Secretary of Veterans Affairs.")

d. If this discharge is approved, I understand I am entitled to lengthy service or sanctuary

probation or sanctuary consideration. I have read and I understand DAFI 36-3211, Section 8E of Chapter 8 and (do) (do not) request lengthy service or sanctuary probation or sanctuary consideration in the office of the Secretary of the Air Force in accordance with that section. (See **Note 4**)

e. If this discharge is approved and I become eligible for retirement or transfer to the retired reserve (20 years active or creditable service for retirement), I may apply for retirement; however, the convening authority may decide to complete the discharge processing action before referral to Secretary of the Air Force Personnel Council (SAFPC). (See **Note 4**)

(Member's signature)
(Typed name, grade), USAF/USSF

**Notes**:
1.  Specify the least favorable type of separation authorized for the reason or reasons given in **paragraph 1**.  To find the type of discharge authorized for each reason, see **Chapter 7**.
2.  Specify the type of discharge recommended.
3.  Add required statement that condition does not qualify as a disability for discharges based on **paragraph 7.11.**
4.  Only include this paragraph **if the member is eligible** to apply for retirement, lengthy service, or sanctuary review, or holds a commission or appointment as a warrant officer of the Air Force Reserve (see **Figure 8.8** and **Table 8.1**, Special Processing).
5.  Tell the member where to return the directive when the case is completed.
6.  List each document individually as an attachment and include the number of pages for each attachment.
7.  In discharge cases where the member has received special pay, a bonus, or education assistance, include the following: and any special pay, bonus, or education assistance funds may be subjected to recoupment.
8.  Withdraw member's acknowledgment of receipt of letter of notification for attachment to the commander's recommendation for discharge.

**Note:**  For reserve component personnel, use sample notification at **Attachment 12**.

**Figure 8.6.  Sample Letter Member's Statement of Board Hearing or Unconditional Waiver (see Note 1).**

(Appropriate Letterhead)

(Date)

MEMORANDUM FOR (SQUADRON COMMANDER)

FROM:

SUBJECT:  Discharge Under DAFI 36-3211 (Board Hearing or Unconditional Waiver)

I have been notified that you are recommending me for discharge (reasons cited in paragraph 1 of the notification letter) in accordance with DAFPD 36-32, *Military Retirements and Separations*, and DAFI 36-3211*, Military Separations,* Part 2, Separation of Enlisted Members, paragraph(s) X.XX and of the specific basis of the proposed discharge.  I know that I am entitled to request or waive, in writing, the following rights:

To present my case to an administrative discharge board subject to my availability.

To be represented by military counsel.

To submit statements on my own behalf to be considered by the administrative discharge board and separation authority.

Military counsel has been made available to me and I have been notified of my right to employ civilian counsel, if I desire to do so.

I (do) (do not) desire to consult with civilian legal counsel of my own choosing and at my own expense.  The name, address, and telephone number of my civilian legal counsel(s) is/are as follows:

I (do) (do not) request the following individual military defense counsel for my military counsel:

I (waive) (do not waive) my right to a hearing before an administrative discharge board.  I understand that if the separation authority approves the recommendation for my discharge (he) (she) will also determine the type of discharge to be issued to me.  I (do) (do not) waive my right to military counsel.  I (am) (am not) submitting statements on my own behalf.

(See **Note 2**) I further understand that, regardless of your recommendation, I may be discharged Under Other Than Honorable Conditions (UOTHC).  I know that as a result of such discharge I may be deprived of veteran's benefits.  I am aware of the adverse nature of such a discharge and the possible consequences thereof.

(If member is being recommended for a separation with an UOTHC discharge add the following sentence: "I understand that if the characterization results in an UOTHC discharge I may petition the Veterans Benefits Administration of the Department of Veterans Affairs for

certain benefits under the laws administered by the Secretary of Veterans Affairs."

(See **Note 3**) If this discharge is approved, I understand I am entitled to lengthy service or sanctuary probation or sanctuary consideration.  I have read and I understand DAFI 36-3211, Section 8E of Chapter 8 and (do) (do not) request lengthy service or sanctuary probation or sanctuary consideration in the office of the Secretary of the Air Force in accordance with that section.

(See **Note 4**) If this discharge is approved and I become eligible for retirement or transfer to the retired reserve (20 years active or creditable service for retirement), I may apply for retirement; however, the convening authority may decide to complete the discharge processing action before referral to Secretary of the Air Force Personnel Council (SAFPC).

I have signed this statement voluntarily and kept a copy of it.


(Member's signature)
(Typed name, grade), USAF/USSF


The preceding statement of (member's name) was (his)(her) decision, signed by (him)(her) after (he)(she) was fully counseled by me and after (he)(she) was advised of (his)(her) rights.

OR

(See **Note 5**) The preceding statement of (member's name) was (his)(her) decision, signed by (him)(her) after (he)(she) had been advised of (his)(her) rights.


(Signature of counsel)
(Typed name, grade), USAF/USSF


**Notes**:
1.  Delete the words that do not apply.
2.  Omit this paragraph when an UOTHC discharge is not authorized.
3.  Include this paragraph when member is entitled to a lengthy service or sanctuary review (see **paragraph 8.36**).
4.  Include this paragraph when member qualifies for retirement per DAFI 36-3203 (also see **Figure 8.8**).
5.  If the respondent indicates that one or more of the rights will be exercised, but declines to sign the appropriate form, the selection of rights and the failure to sign will be noted.

**Note:**  For reserve component personnel, use sample member's statement at **Attachment 13**.

**Figure 8.7.  Sample Letter Member's Conditional Waiver Statement (See Note 1).**

(Appropriate Letterhead)

(Date)

MEMORANDUM FOR (SQUADRON COMMANDER)

FROM:

SUBJECT:  Discharge Under DAFI 36-3211, (Conditional Waiver Statement)

I have been notified that you are recommending me for discharge (reason is cited in the notification letter, paragraph 1) under DAFPD 36-32, *Military Retirements and Separations*, and DAFI 36-3211, *Military Separations,* Part 2, Separation of Enlisted Members, (paragraph) X.XX, and of the specific basis of the proposed discharge.  I know that I am entitled to request or waive, in writing, the following rights:

To present my case before an administrative discharge board.  To be represented by military counsel.

To submit statements on my own behalf to be considered by the administrative discharge board and separation authority.

Military counsel has been made available to me.  I have been notified of my right to employ civilian counsel, if I so desire.

I hereby offer a conditional waiver of the rights associated with an administrative discharge board hearing.  This waiver is contingent on my receipt of no less than (a type of separation more favorable than the most severe authorized) if the recommendation for my discharge is approved. I understand that if the convening authority or the separation authority reject this waiver the processing of my case will continue in accordance with DAFI 36-3211.

(See **Note 2**) If this discharge is approved, I understand I am entitled to lengthy service or sanctuary probation or sanctuary consideration.  I have read and I understand DAFI 36-3211, Section 8E of Chapter 8 and (do) (do not) request lengthy service or sanctuary probation consideration or sanctuary in the office of the Secretary of the Air Force in accordance with that section.

I have voluntarily signed this statement and retained a copy of it.

(Member's signature)
(Typed name, grade), USAF/USSF


The preceding statement of (member's name) was (his) (her) decision, signed following counseling by me and after being advised of (his) (her) rights and privileges.

OR

(See **Note 3**) The preceding statement of (member's name) was (his)(her) decision, signed by

(him)(her) after (he)(she) had been advised of (his)(her) rights and privileges.


(Signature of counsel)
(Typed name, grade), USAF/USSF


**Notes**:
1.  Delete words that do not apply.
2.  Include this paragraph when member is entitled to lengthy service or sanctuary review (see **paragraph 8.36**).
3.  Use this statement when notification of proposed discharge is accomplished by certified mail (see **paragraph 8.22**).

**Figure 8.8.  Sample Paragraph Format Notice to Retirement-Eligible or Lengthy Service Review Eligible Members.**

SAMPLE

NOTICE TO RETIREMENT ELIGIBLE MEMBERS (see **Note 1**)

1.  If, after separation action starts, you attain the additional service necessary for retirement or transfer to the retired reserve (20 years active or creditable service for retirement), you may apply for retirement; however, the convening authority may decide to complete the discharge processing action before referral to Secretary of the Air Force Personnel Council (SAFPC).

a. The application must:

(1)  Be prepared and submitted in accordance with DAFI 36-3211.

(2) (See **Note 2**) Request that retirement be effective the 1st day of the month following the month in which retirement eligibility is attained.

OR

(2) (See **Note 3**) Request that retirement be effective the 1st day of the 2nd month following the current month.

b. Submission of the application for retirement will not cancel the proposed discharge action. Discharge processing may be suspended, pending a decision on the retirement application.

c. If the application for retirement in lieu of further processing is:

(1)  Approved, discharge processing will be discontinued.

(2)  Disapproved, the discharge action will be processed to completion.  If discharge is approved, the case file and the retirement application will be forwarded to AFPC/DPMSSR, 550 C Street, Suite 11, JBSA-Randolph TX 78150-4713, or ARPC/DPTTR, Buckley AFB CO 80011-9502 for further processing.

NOTICE TO MEMBERS WITH LENGTHY SERVICE OR SANCTUARY (see **Note 1**)

2. (**See Note 4**) If this discharge recommendation results in an approved discharge, you may request that it be reviewed by the Secretary of the Air Force Personnel Council for lengthy service or sanctuary probation prior to execution, in accordance with DAFI 36-3211, Section 8E of Chapter 8.

**Notes**:

1.  The proposed paragraphs should be inserted, with edits as appropriate, in the notification template at **Figure 8.5** or **Attachment 11**.

2.  Use this paragraph for those members who, after separation action starts, attain the additional service necessary for retirement (see **paragraph 8.32**).

3.  Use this paragraph for members eligible for retirement at time separation action starts.

4.  Use this paragraph when member is entitled to lengthy service or sanctuary review (see **paragraph 8.36**).

**Figure 8.9.  Sample Separation Authority Discharge Memorandum.**

(Appropriate Letterhead)

(Date)

MEMORANDUM FOR SQ/CC

FROM: (Separation authority)

SUBJECT:  DAFI 36-3211, Part 2, AB Jane M. Doe, (Squadron)

The recommendation for discharge on AB Jane M. Doe, 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, 111th Security Forces Squadron, Joint Base San Antonio-Randolph, TX is approved.  I direct that AB Doe be discharged from the (insert USAF or USSF) for Misconduct:  Commission of a Serious Offense (If the separation is for more than one reason, the separation authority must cite the primary reason).  The authority for this action is DAFI 36-3211, *Military Separations,* Part 2, Separation of Enlisted Members, paragraph (put paragraph number here).  I direct a General (Under Honorable Conditions) Discharge without the opportunity for probation and rehabilitation.

Separation authority's Signature Block

**Figure 8.10.  Sample Memorandum Request for Information about Civilian Conviction.**

(Appropriate Letterhead)

(Date)

MEMORANDUM FOR (CLERK OF THE APPLICABLE COURT)

FROM: (functional address symbol)

SUBJECT:  Request for Information About Civilian Court Action

We have been told that (full name), a member of the (insert USAF or USSF) assigned to this base, has been the subject of criminal action in your court (give whatever information is available--the offense and the dates of the court action).

We need information about the offense for official use in this command.  Please send us a certified copy of the court record containing the requested data.  If charges are pending or the individual is on parole, please give us the name and address of the person or agency with whom we should correspond.

A self-addressed envelope requiring no postage is attached for your use.  Thank you for your help.


(Typed name, grade), USAF /USSF
(Commander or Staff Judge Advocate)


Attachment: Envelope

**Figure 8.11.  Fact Sheet for Lengthy Service or Sanctuary Probation.**

FACT SHEET FOR LENGTHY SERVICE OR SANCTUARY PROBATION

1.  During lengthy service or sanctuary probation your discharge will be suspended.  You will receive the chance to comply with the conditions of lengthy service or sanctuary probation set out in the Secretarial Action and to show that you are capable of good conduct, that you can perform your assigned duties, and that you can adhere to Department of the Air Force (DAF) Standards.

2.  If you successfully comply with the conditions of lengthy service or sanctuary probation and it is not otherwise revoked, the discharge will be remitted, and you will be retired when you attain minimum retirement eligibility under the applicable provisions of law and DAF directives.

3.  Lengthy service or sanctuary probation does not excuse your conduct leading to the discharge.  Lengthy service or sanctuary probation carries with it the discharge as recommended and approved.  You can, however, prevent this discharge by good conduct and

duty performance and compliance with standards.  If you fail to maintain the high standards set for DAF personnel and comply with conditions of lengthy service or sanctuary probation set out in the Secretarial Action, your immediate commander or higher authority may recommend your lengthy service or sanctuary probation be revoked in accordance with DAFI 36-3211, Section 8E.  If the decision authority accepts that recommendation and revokes your lengthy service or sanctuary or sanctuary probation before you attain retirement eligibility, your approved discharge will be immediately executed, and you will be separated from the (insert USAF or USSF).

4.  Lengthy service or sanctuary probation does not prevent your commander from initiating a new administrative discharge action, taking punitive action under the UCMJ, or some other administrative action if warranted by your conduct.  If a new discharge action is initiated, the result may be less favorable than the one already approved and suspended.

5.  Lengthy service or sanctuary probation is not an attempt to keep you in the (insert USAF or USSF) against your will.  It is, rather, a final effort to help you attain minimum retirement eligibility.


ACKNOWLEDGMENT OF RECEIPT


I counseled _____ regarding Lengthy Service or Sanctuary Probation on _____.

Commander's Signature and Date

I, _____, acknowledge receipt of the Secretarial Action granting lengthy service or sanctuary probation and this Fact Sheet.  I was counseled by you on _____.


Member's Signature and Date

**Table 8.1.  Special Processing.**

| RULE | A | B | C | D |
|------|---|---|---|---|
| | **If the respondent** | **then processing includes** | **in accordance with** | **and** |
| 1 | accrues the additional service necessary for retirement (20 years active service creditable for retirement) or transfer to the retired reserve after the separation action starts | an opportunity to apply for retirement (see **Rule 3**) | **Section 8L** | DAFI 36-3203. |
| 2 | is not medically qualified for worldwide duty and subject to entry into the DES | disability processing | **Section 8D** | AFI 36-3212 and DAFMAN 48-108. |
| 3 | has less than 20 but more than 16 years and ARC with over 18 years of service at the time discharge action starts | consideration for lengthy service probation (**Note**: For regular component, this is upon request of member.  ARC members are entitled to lengthy service or sanctuary consideration regardless of whether they request it. | **Section 8E** | |
| 4 | is recommended for discharge for more than one reason | a decision whether to discharge for a combination of reasons | **Section 8F** | identify the reason which the discharge is reported. |
| 5 | is subject to discharge based on civilian court | (See column C) | **Section 8H** | N/A |

| | | | |
|---|---|---|---|
| action | | | |

**Table 8.2.  Referral to a New Board.**

| RULE | A | B | C |
|---|---|---|---|
| | **If the separation authority finds** | **the case may be referred to a new board that** | **and the separation authority** |
| 1 | legal prejudice to the right of the respondent | is furnished the record of the proceedings of the first board without the findings, recommendations, and without prejudicial matters that occurred during or appear in the record of those proceedings | may not approve findings and recommendations less favorable to the respondent than those rendered by the first board. |
| 2 | the results of the board were obtained by fraud or collusion | is not furnished any record of the action by the first board | is not bound by the findings and recommendations of the first board. |

**Table 8.3.  Regular Component Average Processing Time Goals.**

| RULE | A | B |
|---|---|---|
| | **Processing method (see Note 1, 2, 3)** | **Average number of workdays between date action starts and DOS or date of departure from the overseas area** |
| 1 | Notification Procedure | 15 |
| 2 | Board Hearing | 50 |
| 3 | Board Hearing Waiver | 25 |

**Notes**:
1. Add 15 workdays when referral for consultation or further evaluation at an AF regional or area medical facility is needed.
2. Add 10 workdays when the separation authority is not co-located with MPF and the convening authority.  Use express mail service when the usual mail time exceeds 2 days.
3. Add 5 workdays to overseas bases in order to compensate for port call scheduling and other related matters.

**Table 8.4.  Action by the Special Court-Martial Convening Authority (SPCMCA).**

| RULE | A | B | C | D | E |
|---|---|---|---|---|---|
| | **If the recommendation for** | **and a board hearing is** | | | |

| | discharge is | requested | waived (See Note 1) | Then the SPCMCA may | or |
|---|---|---|---|---|---|
| 1 | Proper and fully documented (see **Note 2**) | | X | forward it to the separation authority with comments and recommendations for disposition | refuse to accept the waiver and order a board to be convened |
| 2 | | X | | order a board to be convened to hear the case. | |
| 3 | Brought under an inappropriate section of the regulation | X | X | direct re-initiation under a more appropriate section of this regulation (See **Note 3**) | |
| 4 | Not supported by the evidence | | | direct that the action be discontinued. (See **Note 3**) | |

**Notes**:
1.  To find when a waiver may not be accepted, see **paragraph 8.13.**
2.  In a case involving more than one reason for discharge being processed jointly, the convening authority may direct that one or more of the actions be dropped.  For more information, see **Section 8F**.
3.  For the AFR, this may be accomplished by the separation authority which is delegable.  For ARC discharge and separation authority guidance, see **paragraph 13.1.1.**

**Table 8.5.  Action by the Administrative Discharge Board.**

| | If the commander recommended discharge for | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|---|
| | | RULE | | | | |
| A | Parenthood, conditions that interfere with military service or erroneous enlistment | yes | | | | |
| B | Fraudulent enlistment | | yes | | | |
| C | Unsatisfactory performance, drug abuse rehabilitation failure, or alcohol abuse rehabilitation failure | | | yes | | |
| D | Misconduct | | | | yes | |
| E | National security | | | | | yes |
| | **then the board may recommend:** | | | | | |
| F | Retention | X | | | | |
| G | Honorable discharge | X | | X | | |
| H | General discharge | | X | | | X |
| I | UOTHC discharge | | | | X | |
| J | Entry Level Separation (see **Note 1**) | | | X | | |
| K | Probation and rehabilitation (see **Note 2**) | X | | X | | |
| L | Discharge without probation and rehabilitation | | | | | |

DAFI36-3211  24 JUNE 2022                                                                 191

**Notes**:
1. Not authorized for members in entry level status.
2. Members are not eligible for probation and rehabilitation for the reasons outlined in **paragraph 9.2.6.**

**Table 8.6.  Options of the Separation Authority—Convenience of the Government Discharge.**

| | RULE | | | | | | |
|---|---|---|---|---|---|---|---|
| | **If the administrative discharge board** | **1** | **2** | **3** | **4** | **5** | **6** |
| **A** | Hearing was waived | yes | | | | | |
| **B** | Recommends discharge for parenthood | | yes | | | | |
| **C** | Recommends discharge for a condition that interferes with military service | | | yes | | | |
| **D** | Recommends suspension of discharge for probation and rehabilitation | | | | yes | | |
| **E** | Recommends discharge without an opportunity for probation and rehabilitation | | | | | yes | |
| **F** | recommends retention | | | | | | yes |
| | **then the separation authority may:** | | | | | | |
| **G** | Approve the recommended discharge | X | X | X | | X | |
| **H** | Direct retention | X | X | X | X | X | X |
| **I** | Approve discharge for parenthood | | X | | | | |
| **J** | Approve discharge for a condition that interferes with military service | X | | X | | | |
| **K** | Direct execution of the approved discharge without probation and rehabilitation | | | | | X | |
| **L** | Authorize suspension of the discharge for probation and rehabilitation | | | | X | | |
| **M** | Recommend the case be referred to the Office of the SecAF under **paragraph 3.2** | | | | | | X |

**Table 8.7.  Options of the Separation Authority—Discharge for Fraudulent Entry.**

| | RULE | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | **If the administrative discharge board** | **1** | **2** | **3** | **4** | **5** | **6** | **7** |
| **A** | Hearing was waived | yes | | | | | | |
| **B** | Recommended retention | | yes | | | | | |
| **C** | Recommended waiver of fraud and discharge for another | | | yes | | | | |
| **D** | Recommended discharge described as entry level separation | | | | yes | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| E | Recommended discharge with an honorable service characterization | | | | | yes | | |
| F | Recommended discharge with a general service characterization | | | | | | yes | |
| G | Recommended discharge UOTHC | | | | | | | yes |
| **then the separation authority may:** | | | | | | | | |
| H | Direct retention | | X | X | X | X | X | X |
| I | Waive the fraud and direct separation for another reason (see **Note 1**) | X | | X | | | | |
| J | Direct discharge described as entry level separation (see **Note 2**) | | | | X | | | |
| K | Direct discharge with an honorable discharge (see **Note 3**) | | | | | X | | X |
| L | Direct discharge with a general service characterization (see **Note 3**) | | | | | | | X |
| M | Direct discharge UOTHC | | | | | | | X |
| N | Recommend referral to the Office of the SecAF for discharge IAW **paragraph 3.2** | | X | | | | | |

**Notes**:
1. The type of separation based on a new action may not be less favorable than the action recommended by this board.
2. Applicable only to member in entry level status.
3. Not applicable to member in entry level status.

**Table 8.8.  Options of the Separation Authority—Unsatisfactory Performance or Failure in Drug or Alcohol Abuse Rehabilitation.**

| If the administrative discharge board | RULE | | | |
|---|---|---|---|---|
| | **1** | **2** | **3** | **4** |
| Hearing is waived | yes | | | |
| Recommends honorable discharge without probation and rehabilitation | | yes | | |
| Recommends general discharge with or without probation and rehabilitation | | | yes | |
| Recommends retention | | | | yes |
| **Then the approval authority may:** | | | | |
| Direct retention | X | X | X | X |
| Approve discharge with an honorable certificate | | | X | |
| Approve discharge with a general discharge | | | | |
| Offer the member an opportunity for probation and rehabilitation | | X | X | |
| Direct execution of the approved discharge without an opportunity for probation and rehabilitation | | | X | |
| Recommend the case be referred for discharge to the Office | | | | X |

| of the SecAF under **paragraph 3.2** | | | | | |
|---|---|---|---|---|---|

**Table 8.9.  Options of the Separation Authority—Discharge for Misconduct.**

| | | RULE | | | | | |
|---|---|---|---|---|---|---|---|
| **If the administrative discharge board** | | **1** | **2** | **3** | **4** | **5** | **6** |
| **A** | Hearing is waived | yes | | | | | |
| **B** | Recommends retention | | yes | | | | |
| **C** | Recommends entry level separation with or without suspension of discharge | | | yes | | | |
| **D** | Recommends honorable discharge with or without suspension of discharge | | | | yes | | |
| **E** | Recommends general discharge with or without suspension of discharge | | | | | yes | |
| **F** | Recommends discharge UOTHC with or without suspension of discharge | | | | | | yes |
| **then the approval authority may:** | | | | | | | |
| **G** | Direct retention. | | X | X | X | X | X |
| **H** | Approve Entry Level Separation. (See **Note 1**) | | | | | | X |
| **I** | Approve an Honorable discharge. | | | | X | X | X |
| **J** | Approved a general discharge. (See **Note 2**) | | | | | | X |
| **K** | Approve discharge UOTHC. | X | | | | | X |
| **L** | Authorize suspension of the discharge for Probation and Rehabilitation. | | | X | X | X | |
| **M** | Direct execution of the discharge without Probation and Rehabilitation. (See **Note 3**) | | | | | | |
| **N** | Recommend referral to the Office of the SecAF for discharge IAW **paragraph 3.2** | | X | | | | |

Notes:
1. Authorized only if the member was in entry level status at the time discharge action was initiated.
2. Not authorized for member in entry level status at the time the discharge was initiated.
3. If civil conviction is one basis of the action, see **paragraph 8.56** for restrictions on execution.
4. Only the GCMCA can approve an honorable characterization for misconduct discharges.

**Table 8.10.  Options of the Separation Authority—Discharge in the Interest of National Security.**

| R U | A | B | C |
|---|---|---|---|
| | | | |

| R U L E | If the board proceedings are | and the board | then the separation authority is authorized to and may |
|---|---|---|---|
| 1 | Involved | recommends retention | approve the recommendation and may not direct discharge in the best interest of national security (See **Note 1**) |
| 2 | | recommends discharge | approve discharge with the type of discharge recommended by the board or a more favorable type (See **Note 2**) |
| 3 | Not involved (privilege waived by the member) | | approve retention, or direct discharge with an honorable, general, or UOTHC discharge, or reject the waiver and refer the case to an administrative discharge board (See **Note 2**) |

**Notes**:
1. The separation authority may recommend separation IAW **paragraph 3.2.**
2. Members approved for discharge in the best interest of national security are not eligible for probation and rehabilitation IAW **Chapter 9**.

**Table 8.11.  Processing Cases Requiring Medical Evaluation.**

| R U L E | A | B | C | D |
|---|---|---|---|---|
| | **If the disability** | **and the evaluation by the psychiatrist or the sanity board indicates the member at the time of the specific acts involved** | **and the member is now** | **then the discharge action is** |
| 1 | Does not involve mental illness | N/A | N/A | processed to completion. |
| 2 | Involves mental illness | met the standards of mental responsibility and capacity | competent to cooperate in the presentation of the case | processed to completion. |
| 3 | | | | suspended. |
| 4 | | did not meet the standards of mental responsibility and capacity | not competent to cooperate in the presentation of the case | discontinued. |

**Table 8.12.  Dual Action Processing Involving Disability Separation.**

| R U L E | A | B | C | D |
|---|---|---|---|---|
| | **If action under this publication** | **and disability separation IAW AFI 36-3212** | **then** | **and** |

| | | | | |
|---|---|---|---|---|
| 1 | Has been approved by the separation authority | is being processed | Withhold execution of the approved discharge under this publication | forward an electronic copy of the discharge case file to AFPC/DPMSSR or ARPC/DPTTS, for further processing and referral to the appropriate dual action decision authority as defined in AFI 36-3212. |
| 2 | | results in a recommendation for medical retirement or separation | notify AFPC/ DPMSSR or ARPC/ DPPTS | execute the appropriate discharge IAW dual action decision authority direction. (See **Note 1**) |
| 3 | | results in member being returned to duty | notify AFPC/ DPMSSR or ARPC/ DPPTS, request return of the case | Execute the approved discharge under this publication. (See **Note 1**) |
| 4 | Results in a decision to retain the member | | Then process under AFI 36-3212 as a single action case. | |

**Notes**:
1.   Probation and Rehabilitation should be considered IAW guidance in this publication.

**Table 8.13.  Processing Cases Involving Service Retirement.**

| R U L E | A | B | C |
|---|---|---|---|
| | **If the member applies for retirement or transfer to the retired reserve (see Note 1)** | **then the discharge** | **and forward application for retirement or transfer to the retired reserve and discharge case to** |
| 1 | In lieu of discharge processing (see **Note 2**) | action may be suspended (see **Note 3**) | Process IAW DAFI 36-3203. |
| 2 | After discharge has been approved | is not executed | Process IAW DAFI 36-3203. |

**Notes**:
1.  If, after separation action starts, the member accrues the additional service necessary to attain retirement eligibility (20 years active or reserve service creditable for retirement), the member may apply for retirement IAW DAFI 36-3203.
2.  If the application is submitted after a board convened, the hearing is completed.
3.  The convening authority decides whether to suspend or complete the discharge processing.  If the convening authority decides to complete the discharge processing, the retirement application is held without action.  After completion of discharge processing, the retirement application is processed with the discharge.

**DAFI36-3211  24 JUNE 2022**

**Table 8.14.  Disposition of Cases After SecAF Action.**

| R U L E | A | B | C |
|---|---|---|---|
| | **If the member applied for retirement** | **and the retirement is** | **then the involuntary discharge is** |
| 1 | In lieu of discharge processing | approved by SecAF | not processed and the member retires. |
| 2 | | disapproved by SecAF | processed to completion. (See **Note**) |
| 3 | After discharge has been approved | approved by SecAF | suspended and terminated when member retires. |
| 4 | | disapproved by SecAF | executed as directed by SecAF. |
| | | | |
| **Note**:  Information about the denial of the retirement request is not given to the board members. | | | |

## Chapter 9

## PROBATION AND REHABILITATION (P&R)

**Section 9A—The Probation and Rehabilitation Program.**

**9.1. Program Objectives.** The DAF program of probation and rehabilitation for members subject to administrative discharge gives members an opportunity to stay in the USAF or USSF and get help so they may be able to serve until ETS.

9.1.1. Members who complete the program and return to a productive capacity within the USAF or USSF represent the retention of a trained resource that might otherwise have been lost.

9.1.2. The program includes suspension of approved discharges for specific periods of probation and rehabilitation. Members who complete the program may enhance their chances for a productive military or civilian career.

**9.2. Rehabilitation Procedures:**

9.2.1. Concept: It is based on the principle of conditional suspension of administrative discharge for cause in deserving cases. Under the program, execution of the approved discharge for cause is conditionally suspended. This gives the member a chance to show that the member is able to meet DAF standards.

9.2.2. Premise. In the right circumstances, a member can change a pattern of behavior. This assumption is consistent with the principles applied in the retraining program for members sentenced to confinement by court-martial. Civilian authorities take similar action in the disposition of persons who have committed a variety of civil offenses.

9.2.3. Do not require the member to state whether probation and rehabilitation, if offered, would be accepted. Consideration of probation and rehabilitation is automatic and based on the member's potential for rehabilitation and further useful military service. It should not be contingent on an intention stated before the outcome of the case is known.

9.2.4. A recommendation for discharge may not be contingent on approval of probation and rehabilitation.

9.2.5. A conditional waiver of board entitlement may not be conditioned on an opportunity for P&R.

9.2.6. Members are not eligible for probation and rehabilitation if the reason for discharge is:

9.2.6.1. In lieu of trial by court-martial, **Chapter 6**.

9.2.6.2. Fraudulent entry, **paragraph 7.15**.

9.2.6.3. Entry Level Performance or conduct, **paragraph 7.22**.

9.2.6.4. Unprofessional Relationships with Prospective Members of the Armed Forces or new members during Recruiting, Entry-Level Processing, Entry-Level Training, or Initial Skills Training (Reference, AFI 36-2909), **paragraph 7.40.3.**

9.2.6.5. Drug abuse, **paragraph 7.43**.

9.2.6.6.  Sexual assault, **paragraph 7.44**.

9.2.6.7.  In the interest of national security, **paragraph 7.46**.

9.2.7.  If the reason for separation is not listed in **paragraph 9.2.6**, the separation authority may offer probation and rehabilitation in any case where there seems to be a reasonable expectation of rehabilitation.  For information about required consideration of probation and rehabilitation, see **paragraph 9.4**.

9.2.8.  Probation IAW this chapter is not a substitute for preprocessing treatment.  It is not to be confused with treatment for drug or alcohol abuse. Guidance on treating drug or alcohol abuse is provided in AFI 44-121.

**9.3.  Criteria for Suspension of Discharge.**  Consistent with DoDI 1332.14, the USAF and USSF provide for the rehabilitation and return to duty of members whose conduct or performance warrants their discharge.  Offer members the opportunity for probation and rehabilitation when it is reasonably possible to do so, for example those members:

9.3.1.  Who have demonstrated a potential to serve satisfactorily.

9.3.2.  Who have the capacity to be rehabilitated for continued military service or for completion of the current enlistment.

9.3.3.  Whose retention in a probationary status is consistent with the maintenance of good order and discipline in the USAF and USSF.  **Note**: Suspension is appropriate only if the circumstances of the case indicate that there is a reasonable likelihood that the member is capable of being rehabilitated.  During the period of suspension (also called the "probationary" period), the member has the opportunity to meet appropriate standards of conduct and duty performance.  During the period of suspension, if the member engages in any misconduct the commander may vacate the suspended discharge or separation.  If the member fails to meet any of the conditions placed on their probation, then the separation authority may also vacate the suspension.  Vacation of a suspended discharge or separation does not affect the commander's authority to deal with misconduct in other ways.  See **paragraph 9.12** for specific provisions regarding vacating the suspension of a discharge.

**9.4.  Documenting Consideration of Probation and Rehabilitation.**  If the reason for discharge makes the member eligible for probation and rehabilitation, the case file must show that probation and rehabilitation was considered by the initiating commander, the board members if a hearing is involved, and the separation authority.  **(T-1)** If the initiating commander does not recommend probation and rehabilitation, the reason must be given.  **(T-1)** A separation authority who disapproves a recommendation of probation and rehabilitation states the reasons for the decision.

*Section 9B—Probation and Rehabilitation Procedures.*

**9.5.  Authority To Suspend Execution of Discharge.**  Rests with the separation authority.

**9.6.  Action by the Separation Authority.**  When probation and rehabilitation is appropriate, the separation authority will:

9.6.1.  Mandate suspending execution of the approved discharge contingent on the successful completion of rehabilitation.  **(T-1)**

9.6.2.  Set a specific period of rehabilitation.  **(T-1)** This period may not be less than 6 months nor more than 12 months.  **Note**:  The time limits defined here do not apply to approved lengthy service or sanctuary probation and rehabilitation.

9.6.3.  Send a copy of the case file to the MAJCOM or FLDCOM of assignment (parent MAJCOM/FLDCOM) if the member is assigned to another MAJCOM/FLDCOM.  **(T-2)**

9.6.4.  Send a memorandum to the member's servicing MPF and immediate commander authorizing the probation and rehabilitation, setting the period of the probation and rehabilitation, and setting the conditions of the probation and rehabilitation.  **(T-1)** For format, use **Figure 9.1**. More information may be included where needed.

**9.7.  Action by the Immediate Commander.**  On receipt of notice from the separation authority that a member is to be offered probation and rehabilitation, the commander will:

9.7.1.  Give the member the memorandum authorizing probation and rehabilitation with the attached Fact Sheet.  See **Figure 9.1** and **Figure 9.2**.  **(T-1)**

9.7.2.  Counsel the member, emphasizing these points **(T-1):**

9.7.2.1.  The importance of an honorable discharge and how it helps the person who earns one.  **(T-1)**

9.7.2.2.  The possibility of difficulty in civilian life if the approved discharge for cause were executed as it stands.  **(T-1)**

9.7.2.3.  The very remote chance that the type of discharge, once executed, would be changed.  (For more information, see DAFMAN 36-2604, *Service Dates and Dates of Rank*.)  **(T-1)**

9.7.2.4.  The offer of probation and rehabilitation does not excuse the member's conduct.  **(T-1)**

9.7.2.5.  The member can prevent execution of the approved discharge only by good conduct and duty performance as outlined in the memorandum authorizing probation and rehabilitation.  **(T-1)**

9.7.2.6.  The commander is the main judge of the member's performance and conduct during the period of the probation and rehabilitation.  **(T-1)**

9.7.2.7.  The offer of probation and rehabilitation is not an attempt to keep the member in the DAF involuntarily.  **(T-1)**

9.7.3.  Find out whether the member has enough retainability to complete the prescribed period of probation and rehabilitation.  If necessary, obtain the member's voluntary request for extension of enlistment for the minimum time required.

9.7.4.  Determine whether the member, if serving overseas, has enough time before DEROS to complete the probation and rehabilitation.  **(T-1)** If not, the member asks for an extension of the overseas tour or gives up the probation and rehabilitation privilege (members given lengthy service or sanctuary probation and rehabilitation that exceeds 12 months do not forfeit the privilege).  For more information, see DAFI 36-2110.  Refer to **paragraph 9.8** for additional assignment guidance.

9.7.5. Require the member who accepts the offer of probation and rehabilitation to sign a statement of understanding and acceptance of the terms of the probation. These terms are set out in the letter from the separation authority and the fact sheet. The commander will countersign this statement. **(T-1)** Use the format at **Figure 9.3**.

9.7.6. Require the member who does not accept the offer of probation and rehabilitation (or fails to satisfy the retention requirements) to sign a statement acknowledging an understanding of the rehabilitation privilege. **(T-1)** The statement gives the date of the counseling by the commander. It also acknowledges understanding of the effects of the member's refusal to accept the opportunity for probation and rehabilitation. The statement and memorandum with attached fact sheet from the separation authority (**Figure 9.2**) are returned to the separation authority. Then execute the approved discharge. Use the format at **Figure 9.3** for the statement.

**9.8. Members Undergoing Rehabilitation.** During the prescribed probationary period or any extensions of it, the procedures listed below apply:

9.8.1. Afford members the opportunity to show they are:

9.8.1.1. Capable of good conduct for a reasonable period of time and in varying conditions; and

9.8.1.2. Able to perform their assigned duties well.

9.8.2. Squadron commanders are not required to set up a special rehabilitation program in the unit. Members on probation are given duties and on-the-job training appropriate to their grade, skill level, and experience.

9.8.3. Members in probation and rehabilitation are not given special treatment, but their commanders and supervisors should recognize the factors responsible for their situation. Help from agencies or personnel reasonably available at the base should be sought when it is needed. Help may be requested from personnel trained in rehabilitation techniques.

9.8.4. The commander is the primary judge of the member's performance. The rater prepares any EPB. Guidance on evaluations is provided in DAFI 36-2406.

9.8.5. Promotion consideration follows guidance provided in DAFI 36-2502, *Enlisted Airman Promotion and Demotion Programs*.

9.8.6. Do not select members in probation and rehabilitation for formal training. If the member is in formal training at the time probation is offered and accepted, the separation authority decides whether the member stays in the course of instruction during the probationary period.

9.8.7. Reenlistment consideration follows guidance provided in AFI 36-2606. None of the reasons for recommending discharge that existed before the date on which the probation and rehabilitation began may be the sole basis for denial of reenlistment.

9.8.8. The status of members in probation and rehabilitation is not the same as that of a member placed under restriction or correctional custody. Guidance on members in probation or custody is provided in Article 15, UCMJ. Neither is it the same as that of a member undergoing rehabilitation training following a conviction by court-martial. Do not regard it as such.

9.8.9.  Generally, commanders permit the member stay with the current unit of assignment for the probationary period.

9.8.10.  Reassignment to another local unit, or within the MAJCOM/FLDCOM of assignment, may be authorized if the circumstances of the case warrant.

9.8.11.  Reassignment to a unit of another MAJCOM/FLDCOM during the probationary period is not usually authorized.

9.8.12.  In rare circumstances, the servicing MAJCOM/FLDCOM may determine that the member should not be retained in the overseas area for the period of the probation.  In these cases, the MAJCOM/FLDCOM sends the requests for reassignment to AFPC/DPMSSR or ARPC/DPA.  If the overseas MAJCOM/FLDCOM of assignment is not the servicing MAJCOM/FLDCOM, make the MAJCOM/FLDCOM of assignment an information addressee on the request.

9.8.13.  On receipt of the reassignment instructions from AFPC/DPMSSR or ARPC/DPA, the overseas MAJCOM/FLDCOM furnishes the gaining MAJCOM/FLDCOM a complete file on the case.  It includes copies of the administrative discharge proceedings with supporting documents, the correspondence effecting suspension of the approved discharge, and all related documents.

**9.9.  Completion of Rehabilitation.**  When a member completes a term of probation successfully:

9.9.1.  The approved administrative discharge for cause is automatically and permanently canceled on the date the suspension expires.

9.9.2.  Future failure of the member to maintain desired standards may be the basis of new discharge proceedings.  **Note**:  The basis of the canceled discharge may not be part of the basis of the new discharge proceeding.  However, the basis or conduct on which the canceled discharge was based can be considered in deciding whether to discharge or grant additional probation and rehabilitation.  If the conduct occurred in the current enlistment, it may be used in determining service characterization.

9.9.3.  Eligibility for reenlistment follows guidance provided in AFI 36-2606.  None of the reasons for recommending discharge that existed before the date on which the probation and rehabilitation began may be the sole basis for denial of reenlistment.

9.9.4.  After the successful completion of probation and rehabilitation, characterize the ETS as honorable.

**9.10. Other Options During Rehabilitation.**  As a rule, a member placed on probation and rehabilitation must serve the full probationary period set by the separation authority.  **(T-1)** When probation and rehabilitation is completed successfully, cancel the suspended discharge.  Members who fail to meet the terms of the probation and rehabilitation are usually discharged by execution of the suspended separation.  However, there may be cases where the probationary period should be changed.  In such cases, the commander may send a recommendation to the separation authority. It tells how and why the probationary period should be changed.  The separation authority under whom the member is serving when the recommendation is made approves or disapproves the change.  The commander may ask for:

9.10.1.  Cancelation of the Probation.  This is done when the member's good conduct shows clearly that the goals of the probation and rehabilitation have been met.  The separation authority may direct that:

9.10.1.1.  The probation be ended.

9.10.1.2.  Part of the remaining period be canceled; or

9.10.1.3.  Probation be continued for the entire time originally approved.

9.10.2.  Extension of the Probationary Period.  This is done when the member has made progress, but the commander is not sure that rehabilitation is complete.  The member's consent is needed when the period is extended.  The original probationary period and the proposed extension together cannot exceed 12 months.  **(T-0)** The request reaches the separation authority in time for a decision to be made before the original probationary period ends.  The separation authority may:

9.10.2.1.  Approve the requested extension.

9.10.2.2.  Disapprove the request and notify the member IAW **paragraph 9.12** that discharge is to be executed.

9.10.2.3.  Direct that the probation continues until the date originally set.

9.10.3.  Discharge under Other Conditions.  In some cases, a member who is making good progress in rehabilitation may ask for separation for a reason unrelated to the reason discharge for cause was approved.  For example, a hardship may occur.  The member's conduct during the period of probation and rehabilitation may have, to some extent, offset the conditions that led to the approved discharge for cause.  The separation authority may:

9.10.3.1.  Approve the member's request, in which case the original discharge is set aside.

9.10.3.2.  Direct discharge for the reason originally approved, but with a more favorable type of discharge.

9.10.3.3.  Direct discharge as originally approved.

9.10.3.4.  Disapprove the member's request for voluntary separation and afford the member the opportunity to continue with probation and rehabilitation or request revocation of probation and rehabilitation and execution of the original discharge as approved or with a more favorable service characterization.

**9.11.  Failure to Meet Goals of Rehabilitation.**  Good conduct and satisfactory duty performance are required of members on probation and rehabilitation.  Behavior similar to that for which discharge was approved or other evidence of failure to meet DAF standards shows the goals of the probation and rehabilitation are not being met.  In such a case, a commander may take more action against the member:

9.11.1.  Start new administrative or punitive action.  The UCMJ or state military code governs punitive action.  Take administrative action IAW the applicable part of this directive.  This may involve a less favorable characterization of service.  **Note**: The basis of the suspended discharge may not be part of the new discharge proceeding unless the suspended discharge is withdrawn by the separation authority IAW **paragraph 8.5**.  The basis or conduct on which the suspended discharge was based can be considered in deciding whether to discharge or grant

additional probation and rehabilitation.  If the conduct occurred in the current enlistment, it may be used in determining service characterization.

9.11.2.  Recommend suspension of the approved discharge be vacated and the discharge executed as originally approved.  For procedures, see **paragraph 9.12**.

9.11.3.  Action to vacate a suspension does not bar trial by court-martial.

9.11.4.  If action to vacate the suspension has been initiated before the probation ends, a suspended discharge is not automatically canceled.  Action to vacate the suspension has been initiated when the letter of notification required by **paragraph 9.12** is delivered to the member.

**9.12.  Vacating the Suspension of Discharge:**

9.12.1.  The commander notifies the member by memorandum of the proposal to vacate the suspension and execute an approved discharge.  **(T-0) The** ANG or Category A squadron commander or, for Category B Reservists, ARPC Commander notifies the member by memorandum of proposal to vacate suspension and execute an approved discharge.  The memorandum gives:

9.12.1.1.  The reason or reasons for the action.  **(T-0)** Note:  Matters previously considered by the separation authority for vacation of probation and rehabilitation, which did not result in vacation of probation and rehabilitation may be reconsidered.

9.12.1.2.  The name, address, and telephone number of the military legal counsel named to help the member.

9.12.1.3.  Advise that civilian legal counsel may be employed at the member's own expense.

9.12.1.4.  Instructions for replying within 7 workdays (30 calendar days for ARC members not in a full-time status) with a rebuttal or a waiver of the right to rebut.

9.12.2.  The commander will send the case file through the MPF to the separation authority when the member's reply is received.  **(T-1)** ANG or Category A squadron commander or, for Category B Reservists, ARPC Commander sends the case file through the wing or delta commander to the separation authority when the member's reply is received.  **(T-3)** The case file contains:

9.12.2.1.  A copy of the correspondence suspending the approved discharge and setting out the terms of the probation.  See **Figure 9.1** and **Figure 9.2**.

9.12.2.2.  A copy of the member's statement of understanding.  See **Figure 9.3**.

9.12.2.3.  The member's rebuttal or waiver of the right to rebut.

9.12.2.4.  A full statement of the actions the commander took to help rehabilitate the member.

9.12.3.  The separation authority may:

9.12.3.1.  Approve the recommendation and direct execution of the discharge with the type of discharge originally authorized or a more favorable one.  **Exception**:  If the member is regular component and had at least 16 years of service or ARC member with 18 years of creditable service at the time the discharge action was originally initiated, referral to

AFPC/DPMSSR or ARPC/DPTTS is needed if the member previously requested lengthy service or sanctuary consideration.  For instructions, see **Section 8E**.

9.12.3.2.  Disapprove the recommendation and direct that the probation and rehabilitation period be continued.  **Note**:  The separation authority should request a legal review before making a decision.

**9.13.  Unauthorized Absence During Probation and Rehabilitation.** When a member, including ARC on active duty orders, on probation has been AWOL for 15 calendar days or more, the suspension may be vacated, and the approved discharge executed.

9.13.1.  The procedures in **paragraph 9.3** apply, except that the member does not receive the letter of notification and the case file does not contain the member's rebuttal or waiver of the right to rebut.

9.13.2.  An absentee whose whereabouts are unknown is not discharged under this procedure when other disposition would be more appropriate (for example, a member who should be returned to military control for trial by court-martial).  Discharge of the absentee under this paragraph is authorized by **paragraph 3.10**.  **Exception**:  If vacation of the suspension is approved for a member AWOL from an overseas unit, execution of the discharge is delayed until the member is returned to CONUS.

**Figure 9.1.  Sample Memorandum Authorization for Probation and Rehabilitation.**

---

(Appropriate Letterhead)

(Date)

MEMORANDUM FOR (Servicing Military Personnel Flight)

FROM: (functional address symbol)

SUBJECT:  Probation and Rehabilitation

I have evaluated DAFI 36-3211, *Military Separations,* Part 2, Separation of Enlisted Members, paragraph X.X, proceedings pertaining to (grade, name) and approve the discharge.  However, an opportunity for probation and rehabilitation is warranted in this case.

Subject to (grade, name's) future good behavior, and meeting (Insert USAF or USSF) standards (See **Note**), execution of the approved (type) discharge is suspended in accordance with DAFI 36-3211, Part 2, for (specify not less than 6 or more than 12) months from the date of (his)(her) voluntary acceptance of the terms of the probation and rehabilitation.  The suspended discharge will be automatically canceled at that time, unless the suspension has been vacated or action to vacate it has been initiated.  (Restrictions on, or instruction for, reassignment in accordance with **paragraph 9.8.10** or **paragraph 9.8.11.**)

Have the squadron commander comply with paragraph 9.7.  Counseling should emphasize the lasting importance and benefits of an honorable discharge at the end of the member's term of service.  The possible effects of discharge for cause in civilian life should be fully explained.  Have the squadron commander give the member a copy of this letter and the fact sheet

**DAFI36-3211  24 JUNE 2022**                                                                       **205**

---

attached to it.


(Typed name, grade), (Insert USAF or USSF)
(Title)

Attachment:  Fact Sheet

cc: (Squadron Commander)

**Note**:  The separation authority can include additional conditions.  However, additional conditions must be consistent with governing instructions.  For example, fitness assessment standards and testing requirements must be consistent with those in the fitness instruction.

---

**Figure 9.2.  Fact Sheet for Members Undergoing Probation and Rehabilitation.**

---

Figure (Appropriate Letterhead)

(Date)

FACT SHEET FOR MEMBERS UNDERGOING PROBATION AND REHABILITATION

1.  During probation and rehabilitation your discharge will be suspended.  During the probation and rehabilitation period, you will be given every chance to show that you are capable of good conduct, that you can perform your assigned duties well, and that you can adhere to (Insert USAF or USSF) Standards.

2. If you complete the period of probation and rehabilitation successfully, at the end of your current enlistment:

        a. Your eligibility for reenlistment will be determined by the existing criteria for reenlistment.  The conditions that existed before the date you entered probation and rehabilitation will not be used as the sole basis to deny you reenlistment.

        b. If you separate, you will receive an honorable discharge certificate.

3.  The offer of probation and rehabilitation in no way excuses your behavior.  Probation and rehabilitation carry with it the discharge as recommended and approved.  You can, however, prevent this discharge by future good conduct and duty performance.  If you fail to maintain the high standards set for (Insert USAF or USSF) personnel, one or more of these actions may be taken against you:

        a. Cancelation of the suspension and execution of the approved discharge.

        b. Initiation of new administrative discharge action.

        c. Punitive action under the Uniform Code of Military Justice or state military code.

4.  If the action in paragraph 3b or 3c is taken, the result may be less favorable than the one

---

already approved and suspended.

5.  This offer of probation and rehabilitation is not an attempt to keep you in the (Insert USAF or USSF) against your will.  It is, rather, a final effort to help you.

**Figure 9.3.  Member's Statement.**

(Appropriate Letterhead)

(Date)

MEMORANDUM FOR (Squadron Commander)

FROM: (Member)

SUBJECT:  Member's Statement Regarding Offer of Probation and Rehabilitation

I received an offer of probation and rehabilitation with attached Fact Sheet on _____ and was counseled by you on _____ .

____ (Member Initials) I accept the offer and understand and accept the terms of the probation.

____ (Member Initials) I decline the offer and understand the rehabilitation privilege.  I understand the effects of my refusal to accept the probation and rehabilitation offer.

Member's Signature and Date

Commander's Signature and Date

**Chapter 10**

**ADMINISTRATIVE DISCHARGE BOARDS**

*Section 10A—Regular Air Force and Space Force Administrative Discharge Board Procedures.*

**10.1. Purpose, Function, and Duties.** An administrative discharge board is a fact finding and recommending board. The functions and duties of a board appointed to consider an administrative discharge case are purely administrative, not judicial. The board's first duty is to develop and review all the information about the matter under consideration. It reaches clear, logical findings of fact as to each allegation set out in the letter of notification. It does not make a finding concerning the member's medical qualification for worldwide duty. Based on its findings, the board recommends one or more actions to be taken in the case. If the board recommends discharge, it also makes separate recommendations as to:

10.1.1. The type of separation.

10.1.2. Whether the respondent should be offered an opportunity for probation and rehabilitation.

**10.2. Convening Authority.** The SPCMCA usually convenes the board. For ARC boards, the separation authorities specified at **paragraph 13.1.1** convene respective ARC boards. The order of appointment states the board is appointed by authority of the SecAF. It also contains the following paragraph: All commissioned officers and noncommissioned officers appointed will read and become familiar with DAFMAN 51-507 and this publication before acting as members of the board. **(T-1)**

**10.3. Composition of the Board.** The convening authority must make sure the opportunity to serve is provided to all qualified members regardless of race, sex, religion, national origin, or sexual orientation. **(T-0)** The mere appointment of, or the failure to appoint one of these members to serve on a board is not a basis for challenging the proceedings of the board.

10.3.1. Voting Members. The separation authority appoints three or five voting members. They are experienced, unbiased persons of mature judgment. The voting members are familiar with this DAFI, and the procedures established in DAFMAN 51-507. Usually, all board members are commissioned officers. On the written request of the respondent, senior noncommissioned officers may serve as board members, but they must outrank the respondent. **(T-0)**

10.3.1.1. The majority of the members are commissioned officers. **(T-0)** At least one is a field grade officer. **(T-0)** For the basic qualifications of board members for cases involving regular and reserve members, use **Table 10.1**.

10.3.1.2. The quality of a board proceeding depends, to a great extent, on the knowledge and judgment of the board members. The officer making the commander's recommendation may not serve as a board member. No other officer or noncommissioned officer having direct knowledge of the case may serve on the board.

10.3.2. Nonvoting Members:

10.3.2.1.  The recorder assists the board and presents the government's case.  The recorder is a judge advocate, or, with the approval of the local SJA, an officer of a Reserve judge advocate general or another officer assigned full time legal duties in the Judge Advocate General Corps.  Paralegals and civilian discharge clerks may serve as assistant recorders.

10.3.2.2.  The legal advisor, a judge advocate, presides in all open sessions.  The responsibilities of the position make it necessary to select the best qualified (usually, the best trained and the most experienced) officer available.  The legal advisor can be an officer of a Reserve judge advocate general if on official orders.

10.3.3.  Challenges.  The respondent and the recorder may challenge a voting member or the legal advisor for cause only.  The legal advisor rules on all challenges except challenges to the legal advisor.  The board hears evidence on the challenge to the legal advisor and then, in closed session, the president of the board announces their ruling on the challenge.  The president then polls the other voting members to see if they object to the president's ruling, and unless a majority of the voting members object, the president's ruling is final.  The president announces the ruling on the challenge to the legal advisor in open session.

**10.4.  Reporter and Interpreter:**

10.4.1.  A competent reporter or stenographer records the proceedings.  For more information, see **paragraph 10.16**.

10.4.2.  An interpreter, if needed, translates the proceedings so the respondent can understand and take part in the proceedings.

**10.5.  Replacing Board Members.**  If, during a hearing, the board is reduced below a quorum of three voting members, or there is no longer a majority of commissioned officers, the board is recessed.  A new voting member or members are appointed if an alternate member or members were not appointed in the order convening the board.  The respondent and the recorder are given an opportunity to challenge the newly appointed member or members for cause.  After a new member reads the verbatim transcript to that point, the hearing proceeds.

**10.6.  Legal Advisor.**  The legal advisor will:

10.6.1.  Consult, as necessary, with the recorder and the respondent's counsel at any time prior to or after the convening of the board to:

10.6.1.1.  Prepare for the hearing. **(T-1)**

10.6.1.2.  Clarify the issues to include scheduling matters. **(T-1)**

10.6.1.3.  Rule on admissibility of evidence, request for delay and the convening order, and other issues not requiring the presence of the voting members. Guidance on requests for delay is provided in DAFMAN 51-507. Record and transcribe these sessions as part of the record of the action. **(T-1)**

10.6.2.  Instruct the board on its functions, duties, and procedures in open session only. **(T-1)**

10.6.3.  Advise the board at any and all stages of the proceedings, as appropriate, on request of the board, or on the legal advisor's own initiative.

10.6.4.  Make rulings on the admissibility of evidence and procedural matters. **(T-1)**

10.6.5.  Authenticate the record of the board proceedings. **(T-1)**

**10.7.  Duties of the Recorder:**

10.7.1.  Assist the president of the board and the legal advisor as required.

10.7.2.  Review the case file as soon as it is received to ensure that the respondent was properly notified, the statement of reasons was accurate, and all necessary documentation was included and prepared for the hearing.  If more investigation, documentation, or information is needed for proper evaluation of the case, the recorder will ask for it at this time.  **(T-1)**

10.7.3.  Arrange for the respondent and counsel to review all the documents to be submitted in evidence.

10.7.4.  Provide the respondent and counsel the names, addresses, and statements of all witnesses.

10.7.5.  Interview prospective witnesses and ensures their presence at the hearing.  **(T-1)**

10.7.6.  Take affidavits or collect statements from those who are not available for the hearing. For more information about witnesses, see **paragraph 10.10**.

10.7.7.  Give the respondent and counsel for the respondent and all board members timely notice of the time and place of the hearing.  Includes in the notice that the respondent's failure to appear without good cause at the hearing constitutes a waiver of the respondent's right to be present at the hearing.

10.7.8.  Call to the attention of the legal advisor any matters that might warrant a pre-hearing conference and attends, along with respondent or respondent's counsel, any such pre-hearing conference.

10.7.9.  Attempt to bring to the attention of the board and make a matter of record all pertinent information favorable as well as unfavorable to the respondent.

10.7.10.  Make other necessary preparations for an orderly and proper board hearing.

10.7.11.  The recorder is not a prosecutor and should not act like one.  This rule does not preclude the recorder from ensuring an adequate presentation of the government's case during the board hearing.

10.7.12.  The recorder may:  present an opening statement; present evidence and call witnesses; examine any witnesses called by the respondent, including the respondent, if the respondent chooses to testify; make objections; present rebuttal witnesses or evidence; and make a final argument based on all evidence submitted at the board hearing.

10.7.13.  Ensure that a proper record of the proceedings is made.  **(T-1)**

**10.8.  Review Before the Board Convenes.**  Voting members of the board do not review the case before the hearing.  The recorder and the legal advisor become familiar with all aspects of it.

**10.9.  Respondent's Rights.**  They have the right to:

10.9.1.  Personal Appearance or Representation.  The respondent may appear in person, with or without counsel, at all open proceedings of the board.

10.9.1.1.  A respondent who cannot be present, or one who waives presence, is represented by counsel.

10.9.1.2.  Counsel may be the Area Defense Counsel assigned to the installation or may be the counsel requested by the respondent, if the person requested is a member serving in an active status in any component of the DAF and is reasonably available. Guidance on counsel is provided in DAFI 51-201.

10.9.1.3.  Civilian counsel may be employed at the respondent's own expense.

10.9.1.4.  The respondent may be represented by either the designated or the requested military counsel, but not by both.

10.9.1.5.  Non-lawyer counsel may not represent a respondent before a board unless:  the respondent expressly declines appointment of counsel qualified and certified under Article 27(b) of the UCMJ (qualified under Article 27(b) (1) for ANG) and requests specific non-lawyer counsel; or the convening authority assigns the non-lawyer counsel as assistant counsel.

10.9.2.  Presentation of Witnesses.  For information about how to arrange for other witnesses, see **paragraph 10.10**.  The respondent or counsel may question any witness who appears before the board.  Additionally, if the government does not invite a requested witness and the legal advisor does not approve production of the witness (see **paragraph 10.10.3**), a respondent may arrange for the presence at the hearing of any witness.  The selected witness(es) agrees to testify without cost to the government whose testimony is otherwise relevant, competent, material, and not unduly repetitious.

10.9.3.  Examination by the Board.  All the rights granted by Article 31, UCMJ, are extended to the respondent.  The respondent may testify under oath or submit an oral or written unsworn statement personally or through counsel.  A respondent may not be cross examined on an unsworn statement.

10.9.4.  Submission of Evidence.  The respondent may, at any time before the board convenes, or during the proceedings, submit material for the board to consider.  It may consist of sworn or unsworn statements, affidavits, certificates, or stipulations.  This includes, but is not limited to, depositions of witnesses not deemed reasonably available, or unwilling to appear voluntarily.

**10.10.  Arranging for Witnesses.**  The recorder acts for the board to invite witnesses both for the government and for the respondent.  The requesting party shows that the desired witness's testimony is relevant and can contribute materially to the case.  The legal advisor makes the final determination of whom to invite.

10.10.1.  To enable the legal advisor to make these determinations, the party requesting a particular witness must submit in writing the name, address, and telephone number, if known, of the expected witness, a summary of the expected testimony of the witnesses on the issue of separation or characterization, and an explanation why written, telephonic, video teleconference, or recorded testimony of the witnesses could not be presented to the board hearing for a fair determination of the case.  **(T-1)**

10.10.1.1.  Availability.  The legal advisor determines that the witness is reasonably available.  Factors the legal advisor should consider to determine whether a witness is reasonably available to attend include:  a lack of subpoena power; distance the witness has to travel for the proceeding; demands of the service/job on the witness; the timing of the

request for production of the witness; the potential delay in the proceedings that may be caused by producing the witness; the availability of other means to receive the testimony, such as telephone or video teleconference; and the likelihood of significant interference with military operational deployment, mission accomplishment, or essential training.  The US government authorizes and encourages the use of telephone, video teleconference, depositions, or affidavits to obtain testimony of witnesses who are not reasonably available, and the use of stipulations when appropriate.

10.10.1.2.  Delays in Proceedings Concerning Witnesses.  If the legal advisor determines that the board requires a witness's personal testimony, the board may postpone the hearing if necessary to permit the witness to attend.  Likewise, the board may postpone the hearing, if necessary, to provide the respondent a reasonable opportunity to obtain a written statement from an unavailable witness requested by the respondent, when:

10.10.1.2.1.  The legal advisor has determined that the board need not hear personal testimony of the requested witness.

10.10.1.2.2.  The commander of a military witness has determined that military necessity precludes the witness's attendance at the hearing.

10.10.1.2.3.  A civilian witness has declined to attend the hearing. (A federal employee may not decline to appear as a witness, if directed to do so IAW applicable procedures of the employing agency).

10.10.2.  Request for Personal Appearance.  The request contains:

10.10.2.1.  A brief summary of the testimony expected of the witness.

10.10.2.2.  An explanation of the relevance of such testimony to the issues of separation or characterization.

10.10.2.3.  An explanation as to why written, telephonic, or recorded testimony would not be sufficient to provide for a fair determination.

10.10.3.  Basis for Authorization.  The legal advisor, on behalf of the convening authority may approve production of the witness if the legal advisor finds that:

10.10.3.1.  The testimony of the witness is relevant, material, competent, and not unduly repetitious;

10.10.3.2.  The personal appearance of the witness is essential to a fair determination on the issues of separation or characterization;

10.10.3.3.  Written, telephonic, video teleconference, or recorded testimony does not accomplish adequately the same objective;

10.10.3.4.  The need for live testimony is substantial, material, and necessary for a fair disposition of the case; and

10.10.3.5.  The significance of the personal appearance of the witness, when balanced against the practical difficulties of producing the witness, favors the production of the witness.  Factors to be considered in this decision include, but are not limited to the:

10.10.3.5.1.  Cost of producing the witness.

10.10.3.5.2.  Timing of the request for the witness.

10.10.3.5.3.  Potential delay in the proceeding that may be caused by producing the witness.

10.10.3.5.4.  Likelihood of significant interference with operational deployment, mission accomplishment, or essential training.

10.10.3.5.5.  Alternative to in-board testimony, for example, telephone or video-teleconference.

10.10.4.  Civilians and Members of the Armed Forces Not in the Active Military Service. Invitational travel orders are authorized for persons who are neither employees of the federal government nor members of the armed forces in the active military service.  When invitational travel orders are authorized, the recorder sends invitational travel orders and a memorandum to prospective witnesses to appear before the board per Joint Travel Regulation, Appendix E. **(T-0)**

10.10.5.  Civilian Employees of the DAF and Members of the USAF or USSF in the Active Military Service.  If the board meets at a place other than the prospective witness's duty station, the recorder, on behalf of the board, requests the witness's commander or supervisor make such person available as a witness.  Use military transportation when practical or commercial means if not per DAFMAN 65-605, Volume 1, *Budget Guidance and Technical Procedures*, or the Joint Travel Regulation that governs travel funding.

10.10.6.  Civilian Employees of Other Federal Agencies and Members of Other Armed Forces in the Active Military Service.  The recorder determines the availability of the prospective witnesses.  However, this determination is subject to review and final decision by the legal advisor.  Request and travel authorizations follow the same procedures as listed in **paragraph 10.10.5**.

10.10.7.  Rescheduling the Board Hearing.  Continue or postpone the hearing to:

10.10.7.1.  Permit the attendance of a witness if the legal advisor finds the personal testimony of the witness is essential and IAW **paragraph 10.10.2**.

10.10.7.2.  Provide the respondent with a reasonable opportunity to obtain a written statement from a witness if:

10.10.7.2.1.  The legal advisor determines that the personal testimony of the witness is not required;

10.10.7.2.2.  The commander of a military witness determines that military duties preclude the witness's attendance at the hearing; or

10.10.7.2.3.  A civilian witness declines to attend the hearing.  A federal employee may not decline to appear as a witness if directed to do so.

**10.11.  Hearing Procedures.**  The president of the board is the ranking member and presides when the board meets in closed session.  Only the voting members are present in closed session.

10.11.1.  Oaths.  The recorder administers the oaths to the legal advisor, the reporter, the interpreter (if one is used), and the board's voting members and witnesses.  The legal advisor

administers the oath to the recorder.  Reporters who have been administered one-time oaths for courts-martial need not be sworn in a second time.

10.11.2.  Instructing the Board.  The legal advisor instructs the board in open session in the presence of the respondent and respondent's counsel.  When the respondent is not present for the hearing, give the instructions in the presence of the respondent's counsel.

10.11.2.1.  Give the introductory instructions before the taking of the evidence starts.  They include an explanation of the board member, recorder, and legal advisor responsibilities.

10.11.2.2.  Give the closing instructions before the board goes into closed session to arrive at findings and recommendations.  The instructions summarize the requirements for establishing a basis for the proposed discharge and lists the options available to the board. The legal advisor gives the instructions to fit the case at hand.

10.11.3.  Closing Arguments.  The respondent or counsel for the respondent and the recorder may present arguments before the board goes into closed session.

**10.12.  Presenting Evidence to the Board.** Strict rules of evidence need not be observed; however, the legal advisor may receive evidence that is relevant, competent, material, and not unduly repetitious.  New or additional evidence may be developed at the hearing.  The board may, on its own or the recorder's motion, amend or supplement the notification letter to conform to the new evidence.  In considering the new or additional evidence, the board is bound by the same rules of evidence and procedure generally applicable in the hearing.  See **paragraph 8.5.1.2.1** to determine whether a delay is appropriate.

**10.13.  Burden of Proof.** This is on the government to establish each allegation in the original and amended notification memoranda by a preponderance of the evidence.  A preponderance of the evidence means simply the greater weight of credible evidence.  There is no requirement to prove any allegation beyond a reasonable doubt.  Boards may not enter findings contrary to matters previously adjudicated in courts-martial, civilian court convictions, and the DoD Central Adjudication Facility (security clearances).  However, this does not preclude the respondent from presenting matters in mitigation, extenuation, and explanation.  **Note**:  Without limiting the respondent's right to a full and fair hearing, the legal advisor may impose reasonable restrictions on evidence introduced by the respondent that conflicts with previously adjudicated matters.

**10.14.  Voting in Closed Session.** After considering and evaluating all the evidence, the board arrives at findings and recommendations through secret, written ballot.  A majority vote determines each issue.  The board records the findings and recommendations in writing.  A minority report may be submitted that reflects the minority findings and recommendations.

**10.15.  Findings and Recommendations:**

10.15.1.  The board makes a separate finding on each allegation set out in the original and amended notification memoranda.

10.15.1.1.  Each finding sets out dates, places, and events as specifically as possible.

10.15.1.2.  The written findings accurately reflect the board's evaluation of the evidence.

10.15.1.3.  They should be reviewed by the legal advisor in open session for administrative sufficiency prior to the announcement.

10.15.2.  The board is limited to making recommendations concerning separation or retention, type of separation, and suspension of discharge.  The recommendations must be consistent with the findings.  **(T-1)**

10.15.3.  The president of the board announces the findings and recommendations to the respondent and counsel for the respondent before the board adjourns.

10.15.4. When an enlisted member is being discharged, the board also makes a recommendation to the separation authority as to whether an offer of probation and rehabilitation is appropriate when the enlisted member is eligible for consideration under **paragraph 9.2** of this publication.  However, if the board recommends that the enlisted member should be discharged for any combination of reasons that includes a reason that makes the member ineligible for probation and rehabilitation, the board shall make no recommendation about probation and rehabilitation. **(T-0)**

**10.16.  Recording the Board Proceedings:**

10.16.1.  For a sample format for preparing the record of the board proceedings, see DAFMAN 51-507.  Board proceedings are generally summarized but parts of the proceedings are verbatim.  For more information, use **Table 10.2**.  After authentication:

10.16.1.1. Send the original of the record to the convening authority for action IAW **paragraph 8.17**.  For ANG cases, all record submissions are to be electronic.  The state will hold the original copy. **(T-1)**

10.16.1.2. FSS or MPF Career Development Section will retain three copies for other actions required.  **(T-3)**

10.16.1.3.  Give the respondent one copy of the record of the proceedings.

10.16.2.  The reporter must retain all the notes of the hearing until all the action in the case is final.  **(T-1)**

10.16.3.  Type of Report:

10.16.3.1.  The reporter prepares a verbatim report of the proceedings in any of these instances:

10.16.3.1.1.  If the board recommends a discharge UOTHC.

10.16.3.1.2.  If the board recommends retention, but the convening or separation authority contemplates further action under **paragraph 3.2**.

10.16.3.2.  In cases where the board recommends an Honorable or General discharge, or recommends retention, the reporter prepares a summarized or verbatim report of the board proceedings, as required by the convening authority.

10.16.3.3.  All reports include all supporting exhibits, documents, and other writing admitted or offered into evidence at the board hearing, and a verbatim statement of the board's findings and recommendations.  **Exception**:  Personnel records, when admitted into evidence, are ordinarily not copied and appended to the record, as they are available to all levels of command for review.  In addition, summarized reports contain exhibits (e.g., the recommendation for discharge, the letter of notification, the convening and amending orders, a summary of testimony, and the separation authority's action).

10.16.3.4.  Retaining Notes.  The reporter or recorder retains all notes and recordings of the hearing until the separation authority takes final action or longer if a need exists.

10.16.3.5.  Addressing the Report.  In cases involving members with lengthy service or sanctuary and as required in **Section 8E, paragraph 8.35**, the report is addressed through command channels to SecAF.  In all other cases, address the report to the separation authority.

10.16.4.  Authentication:

10.16.4.1.  The legal advisor authenticates the report by certifying its accuracy and the fact that a majority of voting members concurred in the findings and recommendations.

10.16.4.2.  If the legal advisor is not reasonably available to authenticate the report, the board president and the recorder authenticate the report and state in writing the reason for the substitution.

10.16.4.3.  If the board president is not reasonably available to authenticate the report, a voting member authenticates in the president's absence, stating in writing, the reason for the substitution.

**Table 10.1.  Composition of the Administrative Discharge Board (See Note 1).**

| RULE | | | |
|---|---|---|---|
| **If the respondent** | | 1 | 2 |
| **A** | Is a member of the regular component | Yes | |
| **B** | Is a member of a reserve component (see **Note 2**) | | Yes |
| **then the voting members of the board include** | | | |
| **C** | A majority of commissioned officers, who in the opinion of the convening authority are best qualified for such duty by reason of age, education, experience, length of service, and judicial temperament | X | X |
| **D** | At least one field grade officer | | |
| **E** | Only senior noncommissioned officers who are senior in rank to the respondent. (See **Note 3**) | | |

**Notes**:
1.  All qualified members are given the opportunity to serve see **paragraph 10.3.**
2.  If the respondent is an enlisted member of a reserve component and discharge with an UOTHC service characterization is authorized to be issued, all board members are commissioned officers.  **(T-0)**
3.  Senior noncommissioned officer members, if requested by the respondent, are senior in grade to the respondent.

**Table 10.2.  Recording the Board Proceedings.**

| RULE | A<br>If the Board recommends | B<br>then transcribe verbatim the | C<br>summarize (see Notes) |
|---|---|---|---|
| 1 | Retention | Board's findings and recommendations | the remainder of the proceedings. |
| 2 | Discharge with an honorable or general discharge | | |
| 3 | Entry level separation | | |
| 4 | Discharge UOTHC | entire proceeding | N/A |
| 5 | That a case be referred to a new board to consider discharge for a different reason | | |

**Note**:
1.  A verbatim transcript of the entire proceeding is needed in a case:
1.1. Referred to the SecAF for discharge IAW **paragraph 3.2** or **Section 8D**, Dual Action Processing, **Section 8L**, Processing for Retirement Eligible Members, or **Section 8E**, Members with Lengthy Service or Sanctuary.
1.2. Involving members who are reserve officers.
2.  A summarized record in retention cases need only contain persons present or absent, authority for convening a board, and copies of all exhibits unless **Note 1** applies.

*Section 10B—ARC General Information on Administrative Discharge Boards.*

**10.17.  General Instructions.**  Title 10 United States Code Section 12685, *Reserves Separated for Cause: Character of Discharge*, a member of the reserve component who is separated for cause is entitled to a General (Under Honorable Conditions) discharge unless discharged under approved findings of a board of officers, the result of an approved sentence of a court-martial, or the member waives the proceedings and consents to discharge under conditions other than honorable with a waiver of proceedings of a court-martial or a board.  References to "board" or "discharge board" mean the administrative discharge board or ANG withdrawal of Federal recognition board under Title 32 United States Code Section 322, *Discharge of Enlisted Members*.  The provisions of **Section 10A**, *Active Duty Discharge Board Procedures*, also apply to ARC boards where they do not conflict with ARC **Sections 10B** and **10C**.

*Section 10C—ARC Administrative Discharge Boards.*

**10.18.  Special Provisions for the ARC.**

10.18.1.  Eligible enlisted respondents may apply for transfer to the retired reserve at any time before the separation authority approves the findings of the board.

10.18.2.  The military service will not reimburse respondent for any expenses incident to making a personal appearance, except that, upon respondent's request, the separation authority will publish and provide the respondent with invitational travel orders with fund citation to enable the respondent to make a personal appearance before the board.  **(T-0)** Such orders direct that military air transportation be used if available and authorizes travel by commercial transportation only when military air transportation is not available.  Do not authorize any per diem by such orders.  **(T-1)**

**10.19.  Functions and Duties.**

10.19.1.  The functions and duties of an administrative discharge board are purely administrative.  The board determines its findings and recommendations in closed session with only voting members present.  Voting members make clear, logical findings of fact based on the evidence admitted at the board hearing, and then make recommendations that are appropriate and consistent with such findings and the provisions of this publication.

10.19.1.1.  The board considers each allegation in the letter of notification, but it is not limited in its findings to the statement of reasons presented.  A new allegation can be added to the notification at any time during the board proceedings when it becomes evident that such an addition is appropriate.  The recorder, as the government's representative, may make the request and present the proposed format for the additional allegation or the board, on its own motion, may initiate the action and request the recorder to prepare a draft allegation.  The respondent is entitled to a reasonable delay to prepare a defense to the new allegation.

10.19.1.2.  Ordinarily, the board should make its findings and recommendations on the basis of the matters presented at the board hearing.  If the board determines that additional information is essential for proper evaluation of the cases, it orders the recorder to obtain such additional information, unless the legal advisor determines that additional information would not be admissible or appropriate.

10.19.2.  The president presides during deliberations on findings and recommendations and announces such findings and recommendations.

**10.20.  Legal Review.**  After the report of board proceeding has been prepared and authenticated, the servicing legal office will review it for legal sufficiency.  **(T-1)** Append the formal written legal review to the original copy of the report of board proceedings, then forward the report to the separation authority for review and further action.

**10.21.  Commander's Actions.**  In reviewing cases, directing final action, and recommending action to higher authority, including the SecAF, commanders must act IAW the guidelines and requirements of **paragraph 3.15,** this chapter, and the chapter applying to the case.  **(T-1)** Record the actions of the commander and include a copy of such records in the case file.

**10.22.  Disposition of Chapter 13 Cases.**

10.22.1.  When the Board Recommends Retention.  The separation authority reviews the case and approves the board's recommendation for retention.  The separation authority may not direct separation.  **Exception**: The separation authority may initiate action under **paragraph 3.2.**, Secretarial Plenary Authority, if the circumstances of the case warrant such action in the separation authority's judgment and following the procedures required by that paragraph.

10.22.2.  When Board Recommends Separation.  The separation authority reviews the case and will make one of the following decisions:

10.22.2.1.  Approve the board's recommendations and direct its execution if within the separation authority's purview.  **(T-1)**

10.22.2.2.  Approve the board's recommendations for separation but approve a more favorable characterization than that recommended by the board, and direct its execution.

**(T-1)** The separation authority may not direct a less favorable type of separation or characterization than the type the board recommends.

10.22.2.3. Approve the board's recommendations for separation, with or without approving a more favorable characterization than that recommended by the board, but directs the discharge or separation be suspended to afford the member probation and rehabilitation. **(T-1)** The board's recommendation for suspension is not binding on the separation authority.

10.22.2.4. Disapprove the board's recommendations and retains the respondent. **(T-1)**

10.22.3. When the Convening Authority is not the Separation Authority. If the convening authority is not the final separation authority, the case with any recommendations is forwarded to the SecAF. Cases involving conscientious objectors are sent to SAFPC. ANG cases are forwarded electronically to NGB/A1PP for further staffing.

10.22.4. Forwarding Cases to the SecAF. When the circumstances require SecAF action, forward the original copy of the board proceedings including any corrections to the Memorandum of Notification through command channels to SecAF with a memorandum of transmittal. The memorandum contains the separation authority's recommendations and the reasons for them. For ANG cases, all record submissions are to be electronic; the state will hold the original copy. **(T-1)**

10.22.5. Respondent Copy of the Board Report. The separation authority ensures that this copy of the board report is properly prepared and contains copies of all documentation not previously furnished by the respondent except those records withheld IAW security or medical directives. Send the copy to the respondent when the separation authority acts on the board's recommendations or sends the case to the SecAF.

**10.23. Reporting Separation for More Than One Reason.** The separation authority considers all reasons for discharge and cites the most appropriate violation as the primary reason for discharge. The primary reason is reported in the MilPDS.

**10.24. Guidelines for Separation and Service Characterization.** **Paragraph 3.15** provides guidance for determining the type of separation and service characterization warranted.

10.24.1. Issuing Discharge Certificates:

10.24.1.1. Members discharged under this publication receive Honorable, General, or UOTHC discharges. Discharge certificates are prepared following guidance provided in AFI 36-3202 or ANGI 36-3201 for ANG members. Members receiving an entry level separation, released from the custody and control of the USAF or USSF, or dropped from the rolls of the USAF or USSF, do not receive a discharge certificate and their orders do not characterize their service. Issue orders, to effect separation or discharge, entry level separation, or release from the custody and control of the USAF or USSF for regular component and AFR members. Guidance for issuing orders is provided in DAFMAN 36-2102. List this publication as the authority for separation or discharge.

10.24.1.2. The member's servicing FSS/MPF issues DD Form 256, for members assigned to the AFR Unit Program. ARPC issues the DD Form 256 upon request for all ANG members.

10.24.1.3. The ANG issues discharge certificates via myFSS. The online application includes the centralized publication of separation and special orders (to include amendment and revocation orders) at the ARPC Total Force Service Center.

10.24.2. Send member copies of the order and other separation documents, information on the purpose and authority of the Discharge Review Board and USAF Board for Correction of Military Records, unless provided earlier in the separation process. Guidance on documentation provided to members is provided in AFI 36-3203. If applicable, send a copy of the report of any administrative discharge board proceedings involved.

10.24.3. Orders directing separation or discharge become effective at 2400 hours on date specified if member receives actual or constructive notice on or before the effective date specified in orders. If a member intentionally avoids receipt of the notice or if delivery cannot be made through normal postal channels, the effective date specified in orders is considered to be the date official notification was received. A member continues to be a member until the discharge becomes effective.

**Section 10D—*Rights of a Victim at an Administrative Discharge Board.***

**10.25. Rights of a Victim at an Administrative Discharge Board.** A victim as set forth in the allegation(s) under consideration as a basis for the board, and who is identified in the allegation(s) under consideration, shall be afforded the following rights at a board:

10.25.1. The right to be treated with fairness and with respect for the dignity and privacy of the victim; **(T-1)**

10.25.2. The right to reasonable, accurate, and timely notice of the board; **(T-1)**

10.25.3. The right to receive the letter of notification and relevant attachments, as well as motions and other board documents relevant to the victim's role or interests in the proceedings. **Note**: This right is subject to the respondent's privacy interests and attorney work product considerations. It is limited to safeguarding the alleged victim's right to be heard and does not constitute discovery rights. **(T-1)**

10.25.4. The right to proceedings free from unreasonable delay. **(T-1)**

10.25.5. The reasonable right to confer with the recorder. **(T-1)**

10.25.6. The right not to be excluded from the board, unless the legal advisor determines by a preponderance of the evidence that testimony by the victim of an allegation under consideration, would be materially altered if the victim heard other testimony at that proceeding. However, once the victim testifies (if the victim elects to testify), the victim has the right to be present unless the legal advisor determines such presence will prejudice the proceedings. **(T-1)**

10.25.7. The right to be accompanied by, and reasonably be heard through counsel during all portions of the board in which the victim participates. Counsel may appear in person, by video teleconference, or by telephone. Victim's counsel has standing to address the legal advisor to enforce rights and evidentiary privileges, regardless of victim presence at the hearing. However, the board may not be unduly delayed for this purpose. (**Note**: The scope of victim representation in proceedings in which this manual is not applicable shall be governed by the publication creating that proceeding, with the advice of the legal advisor. **(T-1)**) The right to

be heard in cases where the victim chooses not to participate or testify is satisfied provided the victim and special victim's counsel received reasonable opportunity to submit a victim impact statement for the board's consideration.  **(T-1)**

10.25.8.  The right to be informed of the results of the board, as those results pertain to the victim's role or interests in the proceeding.  **(T-1)**

10.25.9.  The right to be reasonably protected from respondent.  **(T-1)**

## Chapter 11

## SEPARATION PAY (REGULAR COMPONENT ONLY)

**11.1. General Procedures.** All the basic criteria below defining eligibility for separation pay must be met before a member is eligible for payment.  **(T-0)**

11.1.1.  The member is in the regular component and has completed at least 6 years, but fewer than 20 years of active service.  Active service does not have to be continuous.

11.1.2.  The member cannot separate at their own request.  However, after a member has been formally and officially denied reenlistment or continuation in the regular component, the member may request an earlier separation from the regular component without loss of separation pay.  Consider the following as a separation at the member's own request:

11.1.2.1.  A member who declines training for a new skill as a precondition to reenlistment or continuation in the regular component.

11.1.2.2.  A member who declines to test for promotion or declines the promotion and is subsequently separated under a high year of tenure program.

11.1.2.3.  A member who requests voluntary separation under any of the provisions in **Section 4A**; or **Chapter 5** of this publication, except when the member has been denied reenlistment or continuation on active duty.

11.1.2.4.  A member who declines to get the required retainability for a PCS.

11.1.3.  The member cannot separate during the initial enlistment.  Members who complete their initial enlistment of 4 or 6 years and who are involuntarily separated while on an extension of their enlistment and have more than 6 years of active service are eligible for separation pay.

11.1.4.  The member is not being dropped from USAF or USSF rolls and is not eligible for retirement at time of separation.

11.1.5.  The member is not separated for "misconduct" or "unsatisfactory performance" as defined in **Section 7E** and **Section 7G**

11.1.6.  The member is not separated as a result of a court-martial sentence.

11.1.7.  The member is not separated with a service characterization of UOTHC.

11.1.8.  The member agrees in writing to serve in the ready reserve for at least 3 years following the separation from the regular component.  A member who qualifies for separation pay but is unqualified for the ready reserve still agrees in writing to serve in the ready reserve in order to receive separation pay (see **Figure 11.1**.).

11.1.8.1.  A member who enters into this written agreement and who is qualified to serve in the ready reserve is released to the AFR and their agreement scanned into ARMS.  The only members who, otherwise, qualify for ready reserve, are accepted to enter into ready reserve are those who qualify for full separation pay or are separated for involuntary ETS.  All other members are discharged.

11.1.8.2.  If the member has an MSO that is not completed at the time the member is released from the regular component, the 3-year obligation begins on the day after the day on which the member completes their obligation.

11.1.8.3. A member who enters into this written agreement and is not qualified for continuation in the ready reserve is discharged. A member need not be qualified for reserve duty to meet this condition of eligibility for separation pay.

**11.2. Full Separation Pay (Non-disability).** Members involuntarily separated from the regular component may be entitled to full separation pay (computation described in **paragraph 11.4**) if they meet the criteria in **paragraph 11.1** and the following conditions:

11.2.1. The member's characterization of service is "honorable"; and

11.2.2. The member is fully qualified for retention, but is being involuntarily separated by denial of reenlistment or continuation in the regular component under one of the following specific conditions:

11.2.2.1. Member is denied reenlistment under an Early Release.

11.2.2.2. Member is denied reenlistment under high year of tenure policy.

11.2.2.3. Member is being involuntarily separated under a reduction in force program.

**11.3. Half Separation Pay (Non-disability).** Members involuntarily separated from the regular component may be entitled to half separation pay (computation described in **paragraph 11.4**), if they meet the criteria in **paragraph 11.1** and the following conditions:

11.3.1. The member's characterization of service is "honorable" or "general (Under Honorable Conditions)" and;

11.3.2. The member is being involuntarily separated through either the denial of reenlistment or denial of continuation in the regular component under one of the following specific conditions:

11.3.2.1. Expiration of Service Obligation. Use ETS separation program designators with reenlistment codes 2, 3, or 4 (see AFI 36-2606 for code definitions) with the following exceptions:

11.3.2.1.1. Reenlistment codes 4G and 4N may be waived to permit reenlistment or extension of enlistment. Do not authorize separation pay if the member did not request a waiver to reenlist, or extend, or receive an approved waiver. Use the voluntary ETS separation program designator. Authorize separation pay if the member requested a waiver to reenlist or extend and the waiver was denied. Use the involuntary discharge ETS separation program designator.

11.3.2.1.2. Reenlistment codes 2E, 2G, 2H, 2J, 2K, 2L, 4H, 4I, and 4J are authorized extensions of enlistment. If member does not request an extension, use voluntary ETS, separation program designator. Separation pay is not authorized in this case. If the member requests an extension and is denied the extension, then payment is authorized. Use the involuntary discharge ETS separation program designator.

11.3.2.1.3. Member is denied reenlistment under DOS rollback program or commander requests addition to DOS rollback for negative quality indicators.

11.3.2.2. Involuntary Convenience of the Government Separations (see **paragraph 7.7**.).

11.3.2.3. Drug Abuse Treatment Failure (see **paragraph 7.31**.).

11.3.2.4.  Alcohol Abuse Treatment Failure (see **paragraph 7.32**.).

11.3.2.5.  Discharge in Interest of National Security (**see Section 7H**).

**11.4.  Computation of Active Service and Separation Pay.**  Separation pay for members eligible for full payment is computed at 10 percent of 12 times the amount of monthly basic pay to which the member is entitled at the time of separation from the regular component, times the number of years and fractions of a year of active service when separated.  Compute separation pay for members eligible for half payment at one half times what the full payment would have been. Compute active service time as follows:

11.4.1. Qualifying years do not have to be continuous; however, the last phase of the qualifying term ends immediately before the separation from the regular component occurs.

11.4.2.  Compute fractions of years in the following manner:  Count each full month of service that is in addition to the number of full years of active service as one-twelfth of a year. Disregard any remaining fractional part of a month.

11.4.3.  Count periods for which a service member previously has received separation pay, severance pay, or readjustment pay for eligibility purposes (to ensure the member meets the minimum required years of active service), but do not use them in the multiplier to determine the amount of separation pay for a subsequent separation.

11.4.4.  Count periods of active military service in a regular or reserve component.  Include active duty for training performed.

11.4.5.  Periods of desertion, absence, confinement, or inability to perform duties because of excessive drug or alcoholic liquor use, or because of disease or injury resulting from their misconduct, are not included in computing length of service in determining board entitlement. See 10 USC § 972.  **(T-0)**

11.4.6.  Do not include service as a cadet or midshipman while in a service academy or a reserve officer training program.

11.4.7.  Example:  Using the 2018 basic pay rate for a Staff Sergeant (E-5) with exactly 13 years of active service when separated that is eligible for full payment.  Ten percent of ($3,310.50 (basic pay rate for over 12 years of service) x 12 months = $39,726) = $3,972.6 x 13 years of active service = $51,643.80.  **Note**:  This is only an example and does not consider tax implications, which could be a factor in how much money an individual receives.

**11.5.  Repayment of Separation Pay:**

11.5.1.  Members who receive separation pay, based on service in the Armed Forces, and who subsequently qualify for retired pay will have an amount equal to the total amount of separation pay deducted from their retired pay.  **(T-0)**

11.5.2.  Members who receive separation pay based on active service and become eligible for disability compensation administered by the VA will have an amount, equal to the total amount of separation pay received, deducted from such disability compensation.  However, such reduction does not apply to disability compensation in which the entitlement to that disability compensation is based on a later period of active duty for which the separation pay was received.  **(T-0)**

**11.6.  SecAF Determination:**

11.6.1.  A member may be separated under an USAF or USSF specific program established as a one-half or no payment level by SecAF.

11.6.2.  Notwithstanding the provisions of this or any other directive, the SecAF may direct, in extraordinary cases, because of the conditions under which a member is separated, that the member does not warrant separation pay.  This discretionary authority should be used sparingly and not be delegated.

11.6.2.1.  Requests for SecAF to deny separation pay to an otherwise qualified member originates with the squadron commander.  The request will be in memorandum format and contain justification for denial of separation pay.  **(T-1)**

11.6.2.2.  Squadron Commanders requesting SecAF action under this paragraph must notify the member of the request and justification for the request.  **(T-1)** The member is given 3 workdays (30 calendar days for ARC members not in a full-time status) to submit a rebuttal with the assistance of military legal counsel.

11.6.2.3.  The request and rebuttal will be reviewed by the SPCMCA and forward a copy to AFPC/DPMSSR with the concurrence of the SPCMCA and MAJCOM/FLDCOM, for referral to the SecAF.  **(T-1)** Either the SPCMCA or MAJCOM/FLDCOM may disapprove the request and return it to the squadron commander.

**Figure 11.1.  Sample Individual Ready Reserve Statement, Conditional for Enlisted Separation Pay.**

INDIVIDUAL READY RESERVE STATEMENT CONDITIONAL FOR ENLISTED SEPARATION PAY

PRIVACY ACT STATEMENT

AUTHORITY: Title 10 United States Code, Section 1174, *Separation Pay Upon Involuntary Discharge or Release from Active Duty*

PURPOSE:  To process separation pay

ROUTINE USES:  The statements you submit will be used by the processing activities and separation authority.  The information in the statements will be considered in deciding whether you will be discharged or retained.  The statements will become a part of the discharge case file.  If you are discharged, the case file will be kept in your Master Personnel Record permanently.  It may be disclosed to any DoD component including the Department of the AF at base, MAJCOM/FLDCOM, USAF/USSF level, or Office of the Secretary.  It may be used for other lawful purposes including litigation.

DISCLOSURE IS VOLUNTARY:  If you do not furnish your social security number, we cannot process your separation pay.

a. As a condition to receiving separation pay, I agree to serve in the individual ready reserve for a period of not less than 3 years following my separation from the regular component.

b. I understand that if I have not completed my military service obligation at the time of my

separation from the regular component, the 3-year period I have agreed to serve in the Ready Reserve will begin on the day after I have completed my military service obligation.

c. I understand the (Air Force/Space Force) is not under any obligation to offer me an enlistment in the Individual Ready Reserve and I understand that I may not be enlisted in the Individual Ready Reserve.  I understand that I will not be enlisted in the Individual Ready Reserve if I am separated for reasons that make me ineligible for enlistment.

d.  I understand that if I qualify for military retired or retainer pay in accordance with Title 10 or Title 14, United States Code, and/or the Department of Veterans Affairs disability compensation pursuant to the laws administered by the Secretary of Veterans Affairs after receiving Involuntary Separation Pay, I will be subject to a deduction from such retired or retainer pay, or from disability compensation in the amount of any Involuntary Separation Pay paid, as prescribed under Section 1174 of Title 10, United States Code.

_____                    _____

(Type or print name, grade, and date)                    (Signature)

(1) I do not agree to serve in the Individual Ready Reserve for a period of 3 years following my separation from active duty.

(2) I understand that I will not receive separation pay.

_____       _____       _____

Name/Grade                              Signature                              Date

**Table 11.1.  Types of Regular Air Force and Space Force Separations Authorized Payment (member must meet all qualifying criteria) (see Notes 1 & 2).**

| RULE | A | B | C | D |
|---|---|---|---|---|
|  |  | Full Pay | Half Pay | No Pay |
| 1 | Denied reenlistment under an early release/separation program: Fully qualified for retention | X |  |  |
|  | Not fully qualified for retention |  | X |  |
| 2 | Denied reenlistment under E-4 or below High Year of Tenure program: Fully qualified for retention | X |  |  |
|  | Not fully qualified for retention |  | X |  |

| | | | | |
|---|---|---|---|---|
| 3 | Involuntary separation under a reduction in force Program:<br>Fully qualified for retention | X | | |
| | Not fully qualified for retention | | X | |
| 4 | Drug abuse treatment failure | | X | |
| 5 | Alcohol abuse treatment failure | | X | |
| 6 | Discharge in the interest of national security | | X | |
| 7 | Failure in Fitness Program | | | X |
| 8 | Involuntary Convenience of the Government Separation **(Paragraphs 7.9, 7.10, and 7.11)** | | X | |
| 9 | ETS when used with Reenlistment code 2, 3, 4 - denied retention: (see **Note 1**) | | X | |
| 9.1 | Reenlistment codes 4F, 4G, and 4N can be waived and are otherwise eligible for a waiver:<br>When requested and denied (**Note 1**) | | X (1) | |
| | When not requested (**Note 2**) | | | X (2) |
| 9.2 | Reenlistment codes 2E, 2G, 2H, 2J, 2K, 2L, 4H, 4I and 4J are authorized extensions and otherwise eligible to extend:<br>When requested and denied: | | X | |
| | When not requested | | | X |
| 9.3 | Reenlistment codes 3D, 3E, 3J (Assignment Availability Codes (AACs) 08 or 09). These codes render a member ineligible to request waiver or an extension per Rules 9.1 and 9.2 | | | X |
| 10 | Retirement eligible or dropped from rolls of the USAF or USSF | | | X |
| 11 | Separated UOTHC | | | X |
| 12 | Separated for misconduct or unsatisfactory performance | | | X |
| 13 | Does not agree to serve 3 years in the Ready Reserve | | | X |
| 14 | Separated as a result of court-martial sentence | | | X |
| 15 | Voluntary request for separation under **Section 4A**; or **Chapter 5** | | | X |

**Notes**:
1. Member covered by rules 1, 2, 3, and 9 are released to the Reserve, except 9.1 and 9.2 who are discharged.
2. Members who have at least 16 years of active service and are not retirement eligible cannot be separated for high year of tenure.

# Chapter 12

# E-4 AND BELOW HIGH YEAR OF TENURE SEPARATION PROCEDURES

*Section 12A—Policy and Procedures.*

**12.1.  High Year of Tenure (HYT)  Guidance and Procedures.**  The program was developed to help manage the force.  The HYT policy was revised effective 18 October 2018, which changed E-5 HYT from 15 years of active service to 20 years of active service, E-4 HYT from 8 years of active service to 10 years of active service and kept E-3 and below at 8 years of active service. **Exception**:  Reenlistment eligible First Term members in the rank of E-3 in Selective Retention Bonus skills authorized to receive a Zone A Selective Retention Bonus, may reenlist for periods exceeding their HYT date, provided the reenlistment occurs before they complete 6 years TAFMS and does not establish a DOS exceeding 10 years TAFMS.  For the AFR, HYT is based on maximum years of service, which is 33 satisfactory years of service.  For the ANG, HYT is established as age 60; however, under certain circumstances, TAG or CG and/or NBG/A1PP may approve a HYT waiver to allow participation beyond the age of 60 not to exceed the age of 62. Guidance on HYT is provided in AFI 36-2606. HYT is continually assessed by the servicing FSS throughout an ANG member's career prior to the member's entry into an enlistment contract and/or extension.  The basic policy and procedures for regular component and AFR HYT are:

12.1.1.  Every enlisted member is assigned an HYT date.

12.1.2.  The established HYT date for E-4 and E-3 and below is the year and day an individual reaches 10 and 8 years TAFMS, respectively.

12.1.3.  E-4 who fail to progress to E-5 and E-3 who fail to progress to E-4 are separated upon reaching 10 and 8 years of TAFMS, respectively.

12.1.4. These individuals are normally projected for separation 120 days prior to their established DOS.

12.1.5.  If the member's established DOS is beyond the HYT month and year, for example, a member who is demoted and their DOS is later than the HYT date, the system cannot automatically project these members for separation.  If a member's DOS/ETS exceeds the established HYT, the USAF or USSF adjusts the DOS/ETS to match the new HYT date.

*Section 12B—E-4 and Below Assigned to Base Closures or Unit Inactivations.*

**12.2.  Assigned to an Overseas Closure Base or Unit Inactivation.**  The following adjustments to a member's HYT date are made for individuals assigned to an overseas base or unit which is scheduled to close:

12.2.1.  The HYT date equals the new DEROS established on the individual, provided it does not affect promotion eligibility.  If an individual is eligible for promotion and the new DEROS is established prior to the eligibility cutoff, the HYT date is established 12 months beyond the DEROS to allow member to PCS and remain eligible for that promotion cycle.

12.2.2.  If the member's current HYT date renders them ineligible for promotion testing and they cannot obtain the required retainability for a PCS assignment, the member may be separated prior to the HYT date without forfeiture of separation pay (see **paragraph 11.1.2**.).

12.2.2.1.  The member's commander sends a request, in writing, to the base separation authority.  The memorandum requests the base separation authority's approval to separate the member early without loss of separation pay.

12.2.2.2.  The commander must also provide the date the member can no longer be effectively utilized.  **(T-3)**

12.2.2.3.  The base separation authority is the final approval authority.

12.2.3.  If the member's current HYT date allows them another promotion opportunity but does not provide them with enough retainability for a PCS assignment and the base is closing prior to the eligibility cutoff date, the member's HYT date is extended 12 months from date of base or unit closure.  This extension provides retainability for a PCS assignment and the member does not lose the opportunity for a promotion consideration.  Notify AFPC/DPMSSR with informational copy to AFPC Airman Assignments by email of the specifics surrounding the case to extend the HYT.

12.2.4.  This paragraph pertains to those members identified in **paragraph 12.2.1** and **paragraph 12.2.3** whose promotion opportunities are exhausted.

12.2.4.1.  Once the promotion list is released and a member is not selected for promotion, they have the option to request early separation and still receive their HYT separation pay.

12.2.4.2.  The member makes the request via memorandum, which goes through the unit commander.

12.2.4.3.  The squadron commander provides a DOS recommendation.

12.2.4.4.  The base separation authority can approve the separation for the date requested, approve the separation for a later date due to needs of the USAF or USSF, or disapprove the request.

12.2.4.5.  The Force Support Squadron MPF forwards approved requests to AFPC/DPMSSR for MilPDS update.

*Section 12C—Demotion and Cancelation of Promotion Sequence Number Actions.*

**12.3.  Demotion and Cancelation of Promotion Actions:**

12.3.1.  The following actions are taken when a member is demoted or has a promotion canceled and is affected by the HYT program.

12.3.1.1.  Members who are reduced to E-4 or below or who have a promotion canceled and have 16 years of service but less than 20 years of service at the time the demotion or cancelation action is completed are considered lengthy service or sanctuary qualified and their HYT date is established at 20 years of service.

12.3.1.2.  Members will separate on their adjusted HYT unless selected for promotion to E-4 or E-5 prior to separation.  **(T-1)** Members whose HYT is more than 120 days from the effective date of demotion will separate on their normal HYT date.  **(T-2)**

12.3.1.3.  Members demoted to the rank of E-4 or who have a promotion to E-5 canceled and have 10 years of service but less than 16 years of service at the time the demotion or

cancelation action is completed, are separated no later than the 120 days after the effective date of the demotion/promotion cancelation or on DOS, whichever is earlier.

12.3.1.4.  Members demoted to the rank of E-3 or below or who have a promotion to E-4 canceled and have 8 years of service but less than 16 years of service at the time the demotion or cancelation action is completed, are separated no later than the 120 days after the effective date of the demotion/promotion cancelation or on DOS, whichever is earlier.

12.3.2. If prior to being separated, the member goes over 16 years of service, they are considered to be in a lengthy service or sanctuary category and are not separated under the HYT program.  Their HYT is set at 20 years of service.

12.3.3.  If the member is not appealing the demotion/promotion cancelation and has no leave to use or is selling back leave, then the member may request to be separated within 30 days, but no later than 120 days following demotion or promotion cancelation action.

12.3.4.  Members who are demoted and who are eligible for retirement (20 years of service or more) should review DAFI 36-3203, for further guidance.

12.3.5.  AFPC/DPMSS and AFPC/DP3SA are authorized to involuntarily extend a member's adjusted High Year of Tenure (HYT) or Adjusted Expiration of Term of Service (A-ETS) dates of an Air Force or Space Force member without a voluntary extension request when the member is under investigation or administrative separations actions are pending.

12.3.5.1.  The member's HYT or A-ETS should be readjusted, if required, to allow the member to separate as soon as feasible upon culmination of the administrative separation or investigation actions. At no time may the contractual ETS indicated in the member's current enlistment contract be exceeded as indicated in **paragraph 4.8**.

12.3.5.2. Demoted members who have an indefinite enlistment under the Noncommissioned Officer Career Status Program (NCO CSP), should have their ETS/DOS adjusted to NLT 120 days from the effective date of demotion, unless member is retirement eligible, in which case the date would be set at the last day of the month in which the member reaches 180 days.

*Section 12D—Members on Terminal Leave and Promoted.*

**12.4.  Members on Terminal Leave When Promotion List is Released.**  Members eligible for promotion in the current promotion cycle who depart on terminal leave prior to release of the promotion list are briefed prior to departure about the following:

12.4.1.  The member's squadron commander contacts the member if the member is selected for promotion to E-4 or E-5.  Ensure the member provides a telephone number and address where they may be reached.

12.4.2.  If the member is selected for promotion, the member must report back to their unit of assignment if they accept the promotion. **(T-1)** Once the promotion has been accepted, their HYT separation is no longer valid.

12.4.3.  If the member declines to return to their unit of assignment to accept the promotion, their separation is considered a voluntary separation (not entitled to separation pay).

*Section 12E—Members Not Entitled to Separation Pay (See Table 11.1) (Regular Component Only).*

**12.5. A member involuntarily separated from the regular component on their HYT date.** These members are only entitled 1/2 separation pay if any of the following circumstances exist:

12.5.1.  The member is made ineligible for promotion.

12.5.2.  The member is non-selected by the commander for retention.

12.5.3.  The member is not fully qualified for retention other than being denied continuation due to HYT.

**12.6. Self-initiated actions to cause the separation.** These members are not entitled to any separation pay.  The following examples are considered a separation at the member's own request:

12.6.1.  Declined to test for promotion on the last promotion cycle for which they are eligible for promotion.

12.6.2.  Is selected for promotion to E-4 or E-5 and declines the promotion.

12.6.3.  Refused retainability for PCS, TDY, overseas assignment, tour, or deployment (Reenlistment Eligibility Code 3D, AAC 09).

12.6.4.  Refused retainability for training, retraining, or Professional Military Education, (Reenlistment Eligibility Code 3E or AAC 08).

12.6.5.  Requested voluntary separation under any of the provisions in **Section 4A** or **Chapter 5** of this publication.  **Note**:  See **paragraph 12.7** for instructions on separating early under HYT without loss of separation pay.

*Section 12F—Separating Early Without Loss of Separation Pay (Regular Component Only).*

**12.7. Separating Early Under High Year of Tenure (HYT) Program Without Loss of Separation Pay.**  Members who have exhausted all promotion opportunities can separate prior to their HYT date without loss of separation pay (see **paragraph 11.1.2.**).

12.7.1.  Once the promotion list to E-5 is released, those members not selected for promotion and who no longer have any promotion opportunities in future cycles may ask to separate any time after the release date and still receive full separation pay.

12.7.2.  Procedures Used to Request an Earlier Date.  The request to separate early is done via the same process for requesting a voluntary separation.

12.7.2.1.  The member states they have exhausted their promotion opportunities and wants to separate early under the HYT program.

12.7.2.2.  The member states the separation effective date requested and the squadron commander makes a recommendation to the base separation authority that has final approval or disapproval authority.

12.7.2.3.  The member's supervisor briefs the member that if they do separate earlier, it results in a slightly less payment since the separation pay is calculated based on years and months of service.

12.7.3.  Member may separate on their normal DOS when the DOS is prior to the HYT date if the member no longer has any future promotion opportunities.

*Section 12G—HYT Extensions and Waivers.*

**12.8.  Extending To HYT Date.**  Members whose current DOS is prior to their HYT date can extend their enlistment to coincide with their HYT date if otherwise eligible (see AFI 36-2606, Table 5.2).

12.8.1.  AFPC/DPMSS and AFPC/DP3SA are authorized to involuntarily extend a member's adjusted High Year of Tenure (HYT) or Adjusted Expiration of Term of Service (A-ETS) dates of an Air Force or Space Force member without a voluntary extension request when the member is under investigation or administrative separations actions are pending.  The member's HYT or A-ETS should be readjusted, if required, to allow the member to separate as soon as feasible upon culmination of the administrative separation or investigation actions. At no time may the contractual ETS indicated in the member's current enlistment contract be exceeded as indicated in **paragraph 4.8**.

12.8.1.1.  Additionally, upon request by the SJA, members on a traditional enlistment contract may have their HYT extended in 90 day increments up to a member's contractual ETS. **(T-1)** At no time may the contractual ETS indicated in the member's current enlistment contract be exceeded as indicated in **paragraph 4.8**.

12.8.2.  Request to involuntarily extend members beyond their HYT must arrive to AFPC NLT the member's separation date. The member's HYT date should be readjusted, if required, to allow the member to separate as soon as feasible upon culmination of the administrative separation or investigation actions.

**12.9.  High Year of Tenure Waiver Request.**  There are two types of HYT waivers: hardship and best interest of the USAF or USSF.  A justification for a waiver to extend HYT must clearly show how the applicant is experiencing an extreme hardship not normally incurred by contemporaries or how the extension serves the best interest of the USAF or USSF.  **(T-2)**

Members who receive approval for an extension of their HYT must be able to obtain the necessary retainability.  **(T-2)** HYT extensions are not approved simply to provide additional opportunities for promotion consideration or to await the outcome of complaints (e.g., Inspector General), applications for corrections of record, or supplemental/special promotion board consideration.

12.9.1.  Hardship Waivers.  Members may submit requests for extension of a HYT date based on an extreme hardship not common to contemporaries.

12.9.1.1.  The request is sent through the squadron commander to AFPC/DPMSSR for decision on a case-by-case basis.

12.9.1.2.  Approval requires detailed evidence that the member must stay in the regular component to resolve the hardship and can eliminate the problem within the extension period.  **(T-2)**

12.9.1.3.  The maximum extension period is 1 year.

12.9.1.4.  An approved HYT waiver does not automatically extend a person's DOS.  The member must request an extension if otherwise eligible.  Guidance on extensions is provided in AFI 36-2606, Table 6.2.

12.9.2.  Best Interest of the Air Force or Space Force.  Members initiate and submit requests for HYT extensions based on the best interest of the USAF or USSF.  Normally these requests are made when a uniquely qualified E-4 or below is filling a critical position and is essential to the success of a vital mission and a suitable replacement cannot be found.

12.9.2.1.  Although the member initiates the request, the unit commander must support the request and show the member's retention is essential to the success of the mission.  **(T-3)**

12.9.2.2.  Submit the fully justified request to AFPC/DPMSSR for decision.  The request contains squadron commander recommendation and should be submitted no earlier than 1 year and no later than 6 months before the member's high year of tenure date. (ANG cases are submitted to NGB/A1PP).

12.9.2.3.  The maximum extension period is 1 year.

12.9.2.4.  An approved high year of tenure waiver does not automatically extend a person's DOS.  The member must request an extension, if otherwise eligible. Guidance on extensions is provided in AFI 36-2606, Table 6.2.

<div align="center">

**Chapter 13**

**VOLUNTARY OR INVOLUNTARY SEPARATION OR DISCHARGE OF ARC
ENLISTED MEMBERS**

</div>

***Section 13A—General Information.***

**13.1.  General Instructions.**  This section provides specific guidance on the authority for and how to effect voluntary or involuntary separation or discharge of ARC enlisted members.  This section does not negate applicable guidance found in other parts of this section but addresses the unique aspects of separation guidelines for the ARC.

13.1.1.  The separation authority is the official authorized to take final action with respect to specified types of discharges and entry level separations cases.

13.1.1.1.  (ANG) The authority to separate ANG assigned members from state status rests with TAG or CG.  TAG, CG, or a delegated authority is the separation or waiver authority for all cases (except as noted in **Table 13.1** and when special processing is required for action by SecAF, or designee.  See **paragraph 1.2**., **paragraph 3.1.3,** and **Table 8.2**.).  TAG or CG may delegate the authority to separate enlisted members from the reserve of the Air Force with an entry level separation or an Honorable or General (Under Honorable Conditions) discharge to a commander in the federally recognized rank of O-6 or above-but no lower than a group commander.

13.1.1.2. (AFR) The HQ AFRC/CC or Deputy or the vice commander (if delegated authority) is the separation or waiver authority for certain enlisted involuntary administrative discharge actions for AFR unit assigned reservists and IMAs.  The ARPC Commander is the authority involving all IRR members.  The separation and waiver authority for AFR unit assigned reserve enlisted members and IMAs can be further delegated for certain enlisted involuntary administrative discharge and waiver actions that do not require SecAF-level review.

13.1.1.3.  ARC members on EAD orders should request a waiver through the regular component SPCM.

13.1.2.  If there is a conflict between **Table 13.1** and a referenced paragraph, the paragraph supersedes the table.

**Table 13.1.  Voluntary and Involuntary Discharge or Separation of Enlisted Personnel.**

| | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| **R U L E** | **If the reason for separation is** | **Reference Paragraph** | **Notification Required (See Paragraph 8.8.)** | **Board Eligible** | **Separation Authority** | **Type of Separation Authorized** | **SecAF Approval Required** |
| **1** | Secretarial plenary authority | **3.2** | Yes | Yes | SecAF | Honorable, General, or Entry Level | Yes |

| 2 | Separation for being a minor | **4.19** | No | No | TAG, CG, or separation authority | Entry Level | No |
|---|---|---|---|---|---|---|---|
| 3 | Survivorship | **5.9** | No | No | TAG, CG, or separation authority | Honorable | No |
| 4 | Conscientious objector (1-O or 1-A-O) | **5.11** | No | No | TAG, CG, or separation authority | Honorable | Yes (**Note 1**) |
| 5 | Pregnancy or childbirth | **5.12** | No | No | TAG, CG, or separation authority | Honorable | No |
| 6 | Early release for holidays | **5.13** | No | No | TAG, CG, or separation authority | Honorable or Entry Level | No |
| 7 | Miscellaneous reasons | **5.14** | No | No | TAG, CG, or separation authority | Honorable or Entry Level | No |
| 8 | Parenthood | **7.9** | Yes | Yes | TAG, CG, or separation authority | Honorable | No |
| 9 | Insufficient retainability or lack of qualifications for required retraining | **7.10** | No | No | TAG, CG, or separation authority | Honorable or Entry Level | No |
| 10 | Conditions that interfere with military service | **7.11** | Yes | Yes | TAG, CG, or separation authority | Honorable | No |
| 11 | Enlistment of minors | **7.13.1** | No | No | TAG, CG, or separation authority | Entry Level | No |
| 12 | Void enlistment | **7.13.2** | No | No | TAG, CG, or separation authority | Honorable, Entry Level, or Release from the Custody and Control of the USAF or USSF | No |
| 13 | Erroneous enlistment | **7.13.3** | Yes | Yes | TAG, CG, or separation authority | Honorable, Entry Level, or Release from the Custody and Control of the USAF or USSF | No |
| 14 | Fraudulent entry | **7.13.4** | Yes | Yes | TAG, CG, or separation authority | Honorable, General, UOTHC. Entry, Level, or Release | No |

| | | | | | | from the Custody and Control of the USAF or USSF | |
|---|---|---|---|---|---|---|---|
| 15 | Defective enlistment agreements | 7.13.5 | No | No | TAG, CG, or separation authority | Honorable, Entry Level, or Release from the Custody and Control of the USAF or USSF | No |
| 16 | Entry level performance or conduct | 7.22 | Yes | No | TAG, CG, or separation authority | Entry Level | No |
| 17 | Unsatisfactory performance | 7.25 | Yes | Yes | TAG, CG, or separation authority | Honorable or General | No |
| 18 | Substance abuse treatment failure | 7.30 | Yes | Yes | TAG, CG, or separation authority | Honorable or General | No |
| 19 | Minor disciplinary infractions | 7.38 | Yes | Yes | TAG, CG, or separation authority | Honorable, General, or UOTHC | No |
| 20 | Pattern of misconduct | 7.39 | Yes | Yes | TAG, CG, or separation authority | Honorable, General, or UOTHC | No |
| 21 | Commission of serious offense | 7.40 | Yes | Yes | TAG, CG, or separation authority | Honorable, General, or UOTHC | No |
| 22 | Sexual misconduct | 7.40.1 | Yes | Yes | TAG, CG, or separation authority | Honorable, General, or UOTHC | No |
| 23 | Prolonged unauthorized absence | 7.40.2 | Yes | Yes | TAG, CG, or separation authority | Honorable, General, or UOTHC | No |
| 24 | Unprofessional relationship(s) with prospective or new members of the USAF or USSF | 7.40.3 | Yes | Yes | TAG, CG, or separation authority | General or UOTHC | No |
| 25 | Other serious offenses | 7.40.4 | Yes | Yes | TAG, CG, or separation authority | Honorable, General, or UOTHC | No |
| 26 | Civilian conviction (see **Section 3T**) | 7.41 | Yes | Yes | TAG, CG, or separation authority | Honorable, General, or UOTHC | No |
| 27 | Drug abuse | 7.43 | Yes | Yes | TAG, CG, or separation | Honorable, General, or | No |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | authority | UOTHC | |
| 28 | Sexual assault | **7.44** | Yes | Yes | TAG, CG, or separation authority | Honorable, General, or UOTHC | No |
| 29 | Discharge in the interest of national security | **7.46** | Yes | Yes | TAG, CG, or separation authority | Honorable, General, or UOTHC | No |
| 30 | Dropping enlisted members from the rolls of the USAF or USSF | **8.46** | Yes | No | TAG, CG, or separation authority | N/A | Yes |
| 31 | Expiration of enlistment | **13.2** | No | No | TAG, CG, Wing/CC, or Delta/CC, (or equivalent) | Honorable | No |
| 32 | Immediate reenlistment | **13.2.4** | No | No | TAG, CG, Wing/CC, or Delta/CC, (or equivalent) | Honorable | No |
| 33 | Incompatible status or change of military affiliation | **13.8.1** | No | No | TAG, CG, Wing/CC, or Delta/CC, (or equivalent) | Honorable | No |
| 34 | (ANG ONLY) Removal from unit | **13.8.2** | No | No | TAG or CG | Honorable | No |
| 35 | (ANG ONLY) ANG to ANG transfer | **13.8.3** | No | No | TAG or CG | Honorable | No |
| 36 | (ANG ONLY) Incompatible occupation | **13.8.4** | No | No | TAG, CG, or Wing/CC (or equivalent) | Honorable | No |
| 37 | Applying for conditional release | **13.8.5.** | No | No | TAG, CG, Wing/CC, or Delta/CC, (or equivalent) | Honorable | No |
| 38 | (ANG ONLY) Transfer to the retired reserve list | **13.8.8** | No | No | TAG or CG | Honorable | No |
| 39 | Religious vows | **13.8.9** | No | No | TAG, CG, or separation authority | Honorable | No |
| 40 | Regular or ordained ministers | **13.8.10** | No | No | TAG, CG, or separation authority | Honorable | No |
| 41 | Discharge or separation for own convenience | **13.8.11** | No | No | TAG, CG, or separation authority | Honorable | No |

**DAFI36-3211  24 JUNE 2022** 237

| 42 | (ANG ONLY) Early release to further education or training | 13.8.12 | No | No | TAG or CG | Honorable | No |
|----|----|----|----|----|----|----|----|
| 43 | (ANG ONLY) Early release to accept public office | 13.8.13 | No | No | TAG or CG | Honorable | No |
| 44 | Dependency or hardship | 13.8.14 | No | No | TAG, CG, or separation authority | Honorable | No |
| 45 | (ANG ONLY) Selective retention | 13.9.1 | No | No | TAG or CG | Honorable | No |
| 46 | Unsatisfactory participation | 13.9.2 | Yes | Yes | TAG, CG, or separation authority | Honorable, General, or UOTHC | No |
| 47 | Failure to reply to official correspondence | 13.9.3 | Yes | Yes | TAG, CG, or separation authority | Honorable | No |
| 48 | Inability to locate | 13.9.4 | Yes | Yes | TAG, CG, or separation authority | Honorable | No |
| 49 | Insufficient retainability for mobilization or ineligibility for worldwide deployment | 13.9.5 | Yes | N/A | TAG, CG, or separation authority | Honorable | No |
| 50 | Accepting civil employment with a foreign government | 13.9.6 | Yes | Yes | TAG, CG, or separation authority | Honorable | Yes |
| 51 | Entrance or service in an armed force of a | 13.9.7 | No | No | TAG, CG, or separation authority | Honorable | Yes |

|    | foreign country |  |  |  |  |  |  |
|----|----|----|----|----|----|----|----|
| 52 | Loss of nationality | 13.9.8 | Yes | Yes | TAG, CG, or separation authority | Honorable | Yes |
| 53 | Failure to obtain U.S. citizenship during initial enlistment | 13.9.9 | Yes | No | TAG, CG, or separation authority | Honorable | No |
| 54 | (ANG ONLY) Attainment of age 60 | 13.9.10 | No | No | TAG, CG, or separation authority | Honorable | No |
| 55 | Disenrollment from AFROTC | 13.9.11 | No | No | AFROTC/CC (see DAFMAN 36-2032) | Honorable | No |
| 56 | Deactivation of a unit (AFR only) | 13.9.12 | Yes | No | TAG, CG, or separation authority | Honorable or Entry Level | No |
| 57 | (ANG ONLY) Under appropriate provisions of state law | 13.9.13 | No | No | TAG or CG | Honorable | No |
| 58 | Failure to comply with requirements for a medical examination | 13.9.14 | Yes | Yes | TAG, CG, or separation authority | Honorable, General, or UOTHC | No |
| 59 | Not selected for reenlistment | 13.9.15 | No | No | TAG or CG | Honorable | No |
| 60 | Physical disqualification | 13.9.16 | Yes | Yes | TAG, CG, or separation authority | Honorable or Entry Level | No |
| 61 | (ANG ONLY) Failure to meet fitness program standards | 13.9.17 | Yes | Yes | TAG, CG, or separation authority | Honorable | No |
| 62 | (ANG ONLY) Conviction by state court-martial | 13.9.18 | Yes | Yes | TAG or CG | N/A | No |
| 63 | (ANG ONLY) Expiration of excess or overgrade condition | 13.9.19 | Yes | No | TAG or CG | Honorable or General | No |

> **\*Notes**:
> 1.  SecAF is the final decision authority for all conscientious objector packages, and SecAF's decision to approve 1-O classification will be construed as direction to separate the member.  See **Chapter 29**, **paragraph 29.4.1.1** and **paragraph 29.5.1.  (T-1)**
>
> **\*Additional notes for further guidance:**
> 1. SecAF, or designee, review is required for members with lengthy service or sanctuary (**Section 8E** and **paragraph 13.4.1**). **(T-1)**
> 2.  The administrative discharge of any member who is otherwise eligible for retirement under any provision of law requires approval by SecAF, or designee.
> 3. Cases where SAF approval is required prior to discharge must be referred to the Air Force Personnel Council with a legal review attached. This includes any case where a characterization of UOTHC is recommended.

### Section 13B—Preprocessing Considerations.

**13.2.  Expiration of Enlistment.**  The following procedures apply at the ETS:

13.2.1.  If at ETS, the member will have 120 days or more remaining on the MSO, ARPC will transfer the member to the IRR section. **(T-1)** Upon completion of the remaining MSO, they will be discharged as a reserve member of the AF by ARPC. **(T-1)**

13.2.2.  If at ETS, the member will have less than 120 days on the MSO, they will be discharged by the member's unit and not be transferred to the IRR section.  **(T-1)**

13.2.3.  If a member is not selected for re-enlistment, see **paragraph 13.9.15**.

13.2.4.  Immediate Reenlistment.  Members who request and are accepted for reenlistment are discharged before ETS.  The effective date of the discharge is the day before reenlistment.  Guidance on reenlistments is provided in DAFMAN 36-2032.

**13.3. Initiation of Action.** Refer to **Section 13B**, **Section 13C**, and **Section 13D** for preprocessing considerations.

13.3.1.  Initial required documentation for voluntary separation.  Members who want to leave the ARC prior to ETS must ask for separation or discharge in writing.  **(T-1)** Each paragraph authorizing separation or discharge tells what is required to show a basis for separation or discharge.  The appropriate paragraph must be entered on the request for separation or discharge (ANG only-see **Attachment 7**).  **(T-1)**

13.3.2.  (ANG ONLY) For separation or discharge action submitted IAW **Section 13D** (except physical disqualification, **paragraph 13.9.16**), the unit commander forwards all supporting documents to the servicing legal office for a review for legal sufficiency.  The servicing legal office will:

13.3.2.1.  Return all cases which do not support action under this chapter.  **(T-1)**

13.3.2.2.  If separation or discharge processing is appropriate, process IAW **Chapter 8** and **Chapter 10**.  (ANG ONLY:  Return case file to the squadron commander for processing IAW this chapter and **Chapter 10**).  For ANG cases based on physical disqualification, after the appropriate surgeon certifies the report of medical examination and other documentation as required by DAFMAN 48-123 that the member is unfit, refer to **paragraph 13.9.16** for processing instructions.  **(T-1)**

13.3.3. Category A Reservists.  The squadron commander initiates separation or discharge action under this section and **Chapter 10** of this publication, except for discharge under **paragraph 13.9.16.**, Physical Disqualification, by providing a recommendation for discharge (**Attachment 8**).  The commander's recommendation for discharge is processed through the servicing legal office and the wing or delta commander or equivalent.  The owning MPF processes the case to completion by obtaining the AFRC/JA review, initiating discharge action in compliance with **Chapter 10**, and forwarding to ARPC/DPTTS for processing the case to the separation authority for decision. AFRC/JA review is unnecessary if discharge or separation authority has been delegated below HQ AFRC level.

13.3.4. Category B Reservists.  When a regular component squadron commander receives information indicating that a member under their jurisdiction should be considered for separation or discharge, they will forward the information through the HQ AFRC/JA and Individual Reservist Readiness and Integration Organization (RIO) Commander. **(T-3)** RIO will process the case to completion by obtaining the HQ AFRC/JA review, initiating discharge action in compliance with this chapter and **Chapter 10** of this publication, and forwarding the case to ARPC for processing the case to the separation authority for decision. **(T-2)** AFPC/JA review is unnecessary if the separation authority has been delegated below HQ AFRC level.

13.3.5.  For cases based on physical disqualification, **paragraph 13.9.16.**, ARPC/DPTTS (or NGB/SG for ANG) will initiate involuntary discharge action without a commander's report and notify the respondent's squadron commander of the discharge action.  **(T-1)**

**13.4.  Enlisted Sanctuary and Eligibility to Transfer to Retired Reserve.**  See Title 10 United States Code Section 1176(b), *Enlisted Members: Retention After Completion of 18 or More, but Less than 20, Years of Service*, and DAFI 36-2110, *Total Force Assignments*.

13.4.1. Lengthy Service or Sanctuary Consideration.  A member with lengthy service or sanctuary is one who, at the time of the initiation of discharge, has completed at least 16 but less than 20 years of active service creditable toward retirement, or an ARC member with at least 18 but less than 20 years creditable service toward active duty or reserve retired pay. Guidance on retired pay is provided in Title 10 USC Section 12731, *Age and Service Requirements*.  See **paragraph 8.35**.

13.4.2. These members receive special consideration for retention on probation, to acquire minimum retired pay eligibility.  If the member is approved for an involuntary discharge, for any reason except physical disqualification, the discharge is not executed until the case is reviewed IAW **Section 8E** for SAFPC consideration and action by the SecAF, or designee.

13.4.3. Members who are eligible for and apply for active duty retirement or transfer to the retired reserve may not be discharged and are entitled to SecAF review IAW **Section 8L**. While ARPC special assistants have delegated authority to disapprove transfer to the retired reserve for members pending discharge processing, final action to discharge/retirement is reserved to the SecAF, or designee.

13.4.4. For the ANG, if a DSG member reaches 20 years of satisfactory service creditable toward retired pay or an AGR member reaches 20 years of total active federal military service while awaiting SecAF decision on lengthy service or sanctuary consideration, the case will be returned to the state and the member advised they may apply for retirement.  **(T-1)**

**13.5. Notification Documentation.** Documentation evidencing notification to the member (**Attachment 15**) of opportunity to voluntarily extend enlistment with member's election and AF Form 1411, if applicable, must be included in the discharge case file for regular component and AFR members. **(T-1)**

**13.6. Separation.** Separate members who decline to extend their ETS. **(T-0)**

**13.7. Personnel on EAD or in TDY Status.**

13.7.1. Members on EAD or Inactive Duty Training may be separated pursuant to regular component separation instructions, by the appropriate technical training center or the unit to which the member is ordered for EAD purposes.

13.7.2. ANG members will be released to their home unit for disposition. **(T-1)**

*Section 13C—Voluntary Separation or Discharge.*

**13.8. How Members Apply for Separation.** Members who want to leave an ARC must ask for separation or discharge in writing. **(T-1)** AFR (Category B) members may request information to assist in making such an application through the RIO or through the squadron commander (unit reservists). ANG members will request information to assist in making such an application from the servicing ANG FSS. Each paragraph in this section authorizing separation explains what is required to show a basis for separation. The member will enter the appropriate separation paragraph (paragraph **13.8.1** through **13.8.14**) on the request. **(T-1)** (See **Attachment 7**).

13.8.1. Incompatible Status or Change of Military Affiliation. Members who accept appointments as commissioned officers in any component of the DAF or enlist in the regular component are separated or discharged from the applicable component.

13.8.1.1. The Military Entrance Processing Station issues discharge orders for reserve members in the delayed enlistment program who accept enlistment in the regular component.

13.8.1.2. (ANG ONLY) ANG members who voluntarily decide to change their military service affiliation to another branch of the US military other than the AF will be discharged. **(T-1)** These members will be discharged from the ANG and concurrently from the reserve of the AF. **(T-1)**

13.8.1.3. The separation or discharge will not be effective until notification is received from the gaining component that the enlistment was accomplished. **(T-1)** The effective date of discharge will be the day prior to the date of enlistment in the new component. **(T-1)**

13.8.1.4. ANG members who are to be placed on VLPAD or other specific EAD program orders will be separated from the state and transferred to the regular component. **(T-1)** The member will not be discharged. **(T-1)** The FSS will comply with the instructions contained on the EAD orders. **(T-1)**

13.8.1.5. When ANG members enroll and are accepted in an advanced course (third or fourth year) of the Army or Navy, they must separate from the ANG and concurrently be discharged as a reserve of the AF. **(T-1)** Accomplish ANG member separation or discharge in the manner prescribed in this section and chapter. **(T-1)**

13.8.1.6. Members in the basic course (first and second year) of the Army, Navy, or AFROTC who are receiving awarded college scholarships granted under 10 USC § 2107, must belong to the reserve component of the armed forces that extended the educational grant. **(T-0)**

13.8.1.7. HQ ARPC/DPTTS, upon receipt of documentary evidence from the gaining service that a member has enlisted, been inducted, or accepted an appointment, will discharge the member from the AFR effective the day before the date of entry into the gaining service. **(T-1)**

HQ ARPC/DPTTS will furnish copies of the orders published to the member and the gaining service. **(T-1)**

13.8.2. (ANG ONLY) Removal from Unit.  When members change their place of residence and are located outside a reasonable commuting distance of their present unit and not within a reasonable commuting distance of another ANG unit, the member may request to be separated or discharged under this paragraph.  Upon final approval, members with an MSO will be separated from the ANG and concurrently transferred to ARPC. **(T-1)** Those members with time remaining on their ETS, but without an MSO, will be discharged from the ANG and as a reserve of the AF, unless transfer to the IRR is requested in writing by the member.  **(T-1)**

13.8.3. (ANG ONLY) ANG to ANG Transfer.  ANG members who voluntarily decide to change their military affiliation may be separated or discharged.

13.8.3.1. The separation or discharge will be processed only after the member has submitted a request to join another unit and has been accepted.  **(T-1)**

13.8.3.2. Upon out-processing from the member's present unit, the member will be provided affiliation documents as determined by the gaining unit. **(T-1)** The member may be granted a conditional release by the squadron commander in writing for a period not to exceed 90 calendar days.  At the end of the conditional release period granted by the commander, the member is required to contact the losing MPF for separation or discharge processing.  **(T-1)**

13.8.4. (ANG ONLY) Incompatible Occupation.  When an incompatible occupation is of a permanent nature, the request for separation/discharge must be supported by a signed affidavit from the individual, if self-employed, or from the employer or a designated representative, explaining in detail how the individual's occupation is incompatible with or severely interferes with the member's performance of ANG duties. **(T-1)** The member must have made every reasonable effort to satisfy their ANG responsibilities and duties.  **(T-1)**

13.8.5. Applying for Conditional Release:

13.8.5.1. A member who desires to transfer to a reserve component of another uniformed service must also obtain a statement from the uniformed service concerned outlining the professional or technical background required for the position, when applicable, and evidence that:

13.8.5.1.1. The member will be enrolled in an officer training program of the gaining uniformed service **(T-1);** or

13.8.5.1.2.  The gaining uniformed service has a specific ready reserve vacancy for which the member is qualified within a reasonable distance of the member's domicile or place of business.

13.8.5.2.  The member applies for a conditional release through channels to the separation authority listed in **Table 13.1**.  The member's request must include:

13.8.5.2.1.  Necessary information required to process application. **(T-1)**

13.8.5.2.2.  A statement from the member that:

13.8.5.2.2.1.  Indicates whether the member has applied for a ready reserve unit or IMA position, if the member is not already assigned to one of these positions.

13.8.5.2.2.2.  If transfer is approved, the member will accept assignment to the ready reserve position with the gaining uniformed service.

13.8.5.2.2.3.  The member consents to the transfer (required only if the gaining uniformed service initiates the request).

13.8.6.  Members who enlist or accept appointment in another armed force or uniformed service (including the Public Health Services) are discharged.

13.8.7.  Approval and Disapproval Actions:

13.8.7.1.  When the separation authority listed in **Table 13.1** grants a conditional release to an eligible applicant, they:

13.8.7.1.1.  Send the conditional release to the appropriate uniformed service with a request that a copy of the appointment or enlistment order be provided within 15-calendar days of appointment or enlistment.

13.8.7.1.2.  Upon receipt of orders, separate or discharge the member with an effective date of discharge the day before appointment or enlistment in the gaining uniformed service.  When the separation authority disapproves a request for transfer, return the request to the applicant with an explanation of the applicant's ineligibility.

13.8.7.2.  Individuals who seek transfer to a reserve component, other than the AFR, or to a regular component submit a DD Form 368, *Request for Conditional Release*.  If the individual is seeking a transfer to or within the AFR submit an AF IMT 1288.

13.8.8.  (ANG ONLY) Transfer to the Retired Reserve List.  The separation or discharge order (ARPC produced) will contain the following statement: "Member has applied for transfer to the Retired Reserve List".  A copy of the separation or discharge order will be sent to ARMS, ANG State Headquarters for ANG personnel, and the member.  The member must apply online using MyFSS for transfer to the retired reserve.  **(T-2)**

13.8.9.  Religious Vows.  A member who seeks to take final vows in a religious order may request discharge.  Include with the request a statement or certificate signed by the appropriate official of the religious order certifying that the applicant must be relieved from any military status before proceeding further with acceptance into the religious order. **(T-1)** Discharge is effective upon notification that final vows have been taken.  (ANG ONLY) Separate the individual from the ANG and concurrently discharge as a reserve of the AF.

13.8.10.  Regular or Ordained Ministers.  (**Note**:  See DoDI 1304.25, *Fulfilling the Military Service Obligation*).  A member who becomes a regular or ordained minister may request discharge.  The request must satisfactorily establish:

13.8.10.1.  The ministry is their main and primary vocation **(T-0)**;

13.8.10.2.  Their religious faith group is recognized substantially for religious purposes **(T-0);**

13.8.10.3.  Their standing in the faith group is recognized as that of a minister or leader **(T-0);** and

13.8.10.4.  They are certified by an applicable official of the faith group to be a fully qualified member of the clergy in good standing.  **(T-0)**

13.8.11.  Discharge or Separation for Own Convenience.  Members who have completed their first term of enlistment (TOE) within the ARC and are not eligible for discharge or separation under any other criteria in this publication, may apply for discharge or separation under this paragraph.

13.8.12.  Early Release to Further Education or Training.  Members who submit a request for separation or discharge under this paragraph will have supporting documentation or justification that must conclusively establish incompatibility for the individual to remain in their service component.  **(T-1)**

13.8.12.1.  When an extended course of formal education and or training does not permit an individual to perform their normal military duties, an appropriate official of the college, university, or other institution must submit a memorandum explaining how the member's service in the reserve component prevents them from satisfactorily furthering their education or training. **(T-1)** Make every effort to have the individual affiliated with another unit, if applicable. **(T-1)**

13.8.12.2.  (ANG ONLY) Upon approval by the separation authority, either discharge the member from the ANG and as a reserve of the Air Force or, if possessing an MSO, separate from the ANG and transfer to ARPC.  **(T-1)**

13.8.13.  (ANG ONLY) Early Release to Accept Public Office.  Members may be separated or discharged to accept public office only under circumstances as authorized below.

13.8.13.1.  Election as a partisan or nonpartisan candidate to any civil office.  **(T-1)**

13.8.13.2.  Appointment to a civil office requiring full-time service.  **(T-1)**

13.8.14.  Dependency or Hardship.  Refer to **Section 5C.**

13.8.14.1.  Upon receipt of an application for separation or discharge under this paragraph, the separation authority:

13.8.14.1.1.  Carefully examines the basis for the application.  **(T-1)**

13.8.14.1.2.  Obtains any additional information believed necessary to determine the validity of the request.  **(T-1)**

13.8.14.1.3.  Determines whether the evidence justifies separation or discharge.  **(T-1)**

13.8.14.1.4.  Expedites the separation if discharge is approved.  **(T-1)**

13.8.14.2.  If separation or discharge is disapproved, returns the case file through channels with instructions that the member be advised of the decision and counseled by a responsible individual concerning the procedures used and specific reasons for disapproval.  Advise the member of any alternative actions available and that if conditions change sufficiently to warrant submission of a new application, member must submit new or additional evidence to support the application.  **(T-1)**

13.8.14.3.  Approved requests for voluntary discharge.  Approved voluntary discharge requests from the unit or IR program must have an effective separation date no earlier than 6 months from the date the applicant submitted their request for discharge (**Note**:  Does not apply to the participating IRR programs).  **(T-1)** The 6-month projected discharge effective date requirement does not apply to:

13.8.14.3.1.  Transfers to any active duty component.

13.8.14.3.2.  Transfers to any AGR or EAD tour.

13.8.14.3.3.  Transfers within the unit program.

13.8.14.3.4.  Transfers from the unit program to the IR program.

13.8.14.3.5.  Transfers within the IR program.

13.8.14.3.6.  Transfers from the IR program to the unit program.

13.8.14.4.  Waiver of the 6-month projected discharge effective requirement.

13.8.14.4.1.  The wing or delta commander or equivalent (unit program) or HQ RIO Detachment Commander or Readiness Integration Organization Detachment Commander can waive the 6-month projected discharge effective date requirement.

13.8.14.4.2.  Personnel Relocation Section (unit program) or HQ RIO Detachment Commander or Readiness Integration Organization Detachment Commander will enter the date the member submitted request for reassignment and the date the wing or delta commander or equivalent approved the waiver in personnel data system remarks when updating a separation with an approved waiver of the 6-month projected discharge effective date requirement.  **(T-1)**

***Section 13D—Involuntary Discharge or Separation.***

**13.9. Reasons for Discharge or Separation.**  A member may be discharged or separated for convenience of the government for the following reasons in addition to those delineated in **paragraph 7.7**.  Notify members of proposed involuntary separation or discharge IAW **paragraph 8.8**. or **Section 8B**, of this publication unless otherwise noted.  See **Attachment 14** for Privacy Act Statement for enlisted members subject to involuntary separation or discharge.

13.9.1.  (ANG ONLY) Selective Retention.  Members discharged under this paragraph due to non-selection for retention under ANGI 36-2651, *Air National Guard Selective Retention Review Boards* are not entitled to an administrative discharge board.  Guidance on notification is provided in ANGI 36-2651.

13.9.2.  Unsatisfactory Participation.  A member of the reserve who fails to meet participation requirements, regardless of whether they have fulfilled an existing MSO under 10 USC § 651,

may be discharged if the commander concerned also determines that the individual has no potential for useful service under conditions of full mobilization.  PALACE CHASE obligors should be processed IAW **Part 4** of this DAFI.  **Note:**  ANG and Category A reservists may be discharged for unsatisfactory participation if the member has accumulated nine or more unexcused absences from UTA/RSD within a 12-month period.

13.9.2.1.  Unsatisfactory participation is defined in AFMAN 36-2136.

13.9.2.2.  Do not use this basis if the individual is in entry level status.  **(T-1)**

13.9.2.3.  (ANG ONLY) PALACE CHASE members who fail to report to the ANG unit of assignment within 70 days after the date of release from active Federal service may be discharged under this provision.

13.9.3.  Failure to Reply to Official Correspondence.  Members who do not reply to official correspondence may be discharged.  When correspondence requiring a reply is sent and no reply is received within 30 days, the commander or appropriate RIO personnel will:

13.9.3.1.  Verify the last permanent mailing address through MilPDS and Postmaster General mailing, **Attachment 15**.  After verification, mail the correspondence by certified mail, return receipt requested, and by first-class mail to the verified address.  Complete the affidavit at **Attachment 9**.  **(T-1)**

13.9.3.2.  Comply with **paragraph 13.9.4** if postal authorities return the correspondence because the addressee is unknown (for example, but not limited to, official markings indicating a post office box has been closed or that the addressee has moved and left no forwarding address).  **(T-1)**

13.9.3.3.  Prepare an affidavit outlining attempts to notify the member.  **(T-1)**

13.9.4.  Inability to Locate.  Members who cannot be located will be discharged.  **(T-1)** The squadron commander or appropriate RIO or ARPC personnel will:

13.9.4.1.  Verify the last permanent mailing address through MilPDS and Postmaster General.  **(T-1)**

13.9.4.2.  Terminate discharge action if the member is located at any time prior to separation or discharge.  **(T-1)**

13.9.5.  Insufficient Retainability for Mobilization or Ineligibility for Worldwide Deployment. Enlisted members who request exemption from mobilization must request discharge IAW this publication.  **(T-0)** An exemption request and discharge action are processed simultaneously. Separate or discharge a member who is not qualified or eligible for worldwide deployment. Guidance on eligibility for deployment is provided in DAFI 36-2110 and AFI 10-403, *Deployment Planning and Execution*.  The commander initiates action under this authority upon determination that such conditions exist.  **(T-1)**

13.9.6.  Accepting Civil Employment with a Foreign Government or Concern.  Members who accept civil employment with a foreign government or with a concern that is controlled in whole or in part by a foreign government must have prior written approval of the SecAF and SecState.  **(T-0)**

13.9.7.  Entrance or Service in an Armed Force of a Foreign Country.  Nationals of the US (by birth or naturalization) may lose their nationality by entering or serving in the armed forces of

a foreign country without specific written authorization from the SecState and the SecDef, Title 10 United States Code Section 1060, *Military Service of Retired Members with Newly Democratic Nations: Consent of Congress*, and DAFMAN 36-2602, *Active Duty Service Determination for Civilians or Contractual Groups*. **(T-0)** Discharge members who fail to obtain such approval or who continue to serve in a foreign armed force once approval has been appropriately revoked. **(T-0)**

13.9.7.1.  Members who wish to enter the armed forces of a foreign country must submit their written requests through proper command channels. **(T-0)**

13.9.7.1.1.  The commander advises the member in writing of the provisions of 8 USC § 1481, *Loss of Nationality by Native-Born or Naturalized Citizen; Voluntary Action; Burden of Proof; Presumptions*, and the *Immigration and Nationality Act* of 1952 (Reference Public Law 82-414), concerning possible loss of nationality. **(T-0)** The member must acknowledge receipt of the advice before the request is processed further. **(T-0)**

13.9.7.1.2.  When the member still wants to apply for written authorization, the commander submits, through command channels, the application directly to Chief, Foreign Operations, Passport Office, Department of State, with a brief summary of the member's service attached.

13.9.7.1.3.  The Department of State coordinates their actions with DoD.

13.9.7.2.  A commander who receives information concerning a member who enters or serves in the armed forces of a foreign country, without written authorization, refers the information, through command channels for review and determination of appropriate action. **(T-0)**

13.9.8.  Loss of Nationality.  Discharge members who are nationals of the US (by birth or by naturalization) and who lose such nationality for any of the reasons outlined in the *Immigration and Nationality Act* of 1952 or under any other law. (Ref: 8 USC § 1481). **(T-0)**

13.9.9.  Failure to obtain US citizenship during initial enlistment.  A member who does not obtain their US citizenship prior to their ETS will be discharged. **(T-0)** Member should be notified of action.

13.9.10.  (ANG ONLY) Attainment of Age 60.  Separate ANG members who have not qualified for retirement under the provisions of **Chapter 7** on their 60th birthday unless they have an approved HYT waiver from TAG, CG, and NGB/A1PP.  Concurrently discharge the member from the reserve of the AF.  Member does not need to be notified IAW **Chapter 10**; however, member should be notified of action.

13.9.11.  (AFR ONLY) Disenrollment from AFROTC.  Guidance on AFROTC disenrollment is provided in DAFMAN 36-2032. Contract cadets may be disenrolled and recommended for discharge for the following:

13.9.11.1.  Humanitarian considerations and personal hardship beyond the member's control.

13.9.11.2.  Medical disqualification.

13.9.11.3.  Transfer to another military commissioning program.

13.9.11.4.  Failure to meet AFROTC or institution scholastic standards.

13.9.11.5.  Failure to meet military retention standards.

13.9.11.6.  Indifference to training, such as lacking interest or actions that result in a continued inability to comply with training requirements.

13.9.11.7.  Breach or anticipated breach of the AFROTC contract.

13.9.12.  Deactivation of a Unit.  If a unit is deactivated, there are no other unit vacancies within the area to which the member may be assigned, and the member does not join a unit outside that area, the member may be separated from the reserve or ANG unit.  The member will be concurrently transferred to the IRR if they have a remaining MSO or some other contractual obligation. **(T-1)** Member does not need to be notified IAW **Section 3.8** (ANG only); however, member should be notified of action.

13.9.13.  (ANG ONLY) Under appropriate provisions of State Law.  Discharge ANG members when authorized by applicable state law.

13.9.14.  Failure to Comply with Requirements for a Medical Examination.  Discharge members who fail to comply with minimum medical retention standards for continued service. Guidance on medical requirements is provided in DAFMAN 48-123.

13.9.15.  Not Selected for Reenlistment.  A member not selected for reenlistment will be discharged upon their ETS or MSO, whichever is later.  **(T-1)**

13.9.16.  Physical Disqualification.  Discharge a member who is unfit to perform the duties of the member's office, grade, or rank because of disease or injury.  Discharge enlisted members under this paragraph when they meet all the following criteria:

13.9.16.1.  The member fails to apply for transfer to the Retired Reserve, if eligible.  **(T-1)**

13.9.16.2.  The member is not qualified for disability separation. Guidance on disability separation is provided in AFI 36-3212. Guidance on retirement is provided in DAFI 36-3203.

13.9.16.3.  The member is ineligible for transfer to a different AFSC/SFSC or position for which the member would be fit for duty, or such transfer is considered inappropriate.  **(T-1)**

13.9.16.4.  The member has been considered and rejected for an Assignment Limitation Code (ALC).  **(T-1)**

13.9.16.5.  The separation authority finds that the member's physically disqualifying condition makes them unfit for duty. Guidance on disqualifying conditions is provided in DoDI 6130.03 and DAF standards.

13.9.16.6.  Prior to the execution of a discharge for physical disqualification for a non-duty related impairment or condition, qualified members are afforded the opportunity to enter the DES for a determination of fitness pursuant to DoDI 1332.18 and implementing regulatory issuances.  **(T-0)** If the member enters the DES, discharge approval and notification will be accomplished following guidance provided in AFI 36-3212. Also refer to **paragraph 7.11.**.

13.9.17.  (ANG ONLY) Failure to meet Physical Fitness Program Standards.  Members who fail to meet standards of fitness for reasons not amounting to disability may be discharged.

Follow the procedures for fitness management, before starting action to discharge. Guidance on fitness management is provided in DAFMAN 36-2905. Make sure the case file shows the record of those actions. **(T-1)**

13.9.18. (ANG ONLY) Conviction by State Court-Martial. Members may be involuntarily discharged for a conviction by a state court-martial. If the state court-martial results in a punitive discharge, there is no entitlement to a discharge board.

13.9.19. (ANG ONLY) Expiration of Excess or Overgrade Condition. Members may be separated if their period of excess or overgrade status expires and the member is not reassigned as the sole occupant in a vacant position compatible with the member's grade as outlined in DAFI 36-2110. Compliance with DAFI 36-2110 is mandatory. Therefore, member does not need to be notified IAW **Chapter 10**; however, member should be notified of action.

13.9.20. Other bases for Involuntary Discharge. A member may be involuntarily discharged or separated for any of the other reasons stated in **Section 3B**, **Chapter 5**, **Chapter 7**, and **Chapter 8.**

## Part 3

## SEPARATION OF COMMISSIONED OFFICERS

## Chapter 14

## GENERAL GUIDANCE

**14.1. Membership in the Regular Component, AFR, and ANG is Not a Right.** Members not qualified or not able to properly fulfill their obligation to serve may be separated or discharged from the regular component, AFR, or ANG. Individuals discharged for any reason outlined in this publication cease to be members of the regular component, AFR, or ANG. (**Note**: ANG members only: All questions concerning discharge, separation and retirement of ANG personnel are addressed to the Air National Guard Bureau, Force Management Division, NGB/A1P. The term "State" or "States" includes all 50 states and territories; to include Puerto Rico, the Virgin Islands, Guam, and the District of Columbia.)

**14.2. Relationship of Actions Under this publication to UCMJ Actions and Civilian Criminal Actions.**

14.2.1. Commanders should not use the administrative tools and procedures implemented by this publication as a substitute for punitive action under the UCMJ where UCMJ action is more appropriate. Additionally, commanders should not refrain from taking appropriate action under this publication solely because of ongoing or completed military or civilian criminal action.

14.2.2. An acquittal or a not-guilty finding in a civilian or military criminal proceeding, conviction and punishment by a civilian or military court, or military nonjudicial punishment, does not preclude an administrative discharge action. Guidance on nonjudicial punishment is provided in Article 15 of the UCMJ. The SCA should not normally initiate action based solely on substantially the same act or omission that gave rise to the allegation which resulted in an acquittal (or equivalent action) in a military or civilian court. However, a SCA may initiate action based on substantive information not available or admitted at trial, or if the court action was terminated for reasons not related to the guilt or innocence of the officer.

**14.3. Single Integrated Operational Plan - Extremely Sensitive Information (SIOP-ESI) or Other Special Access Programs, and the Personnel Reliability Program (PRP).**

14.3.1. Unit commanders comply with DoDM 5200.02_AFMAN 16-1405, when initiating discharge action for cause under this publication on an officer who has, or once had, access to SIOP-ESI, or other special programs (not to include Sensitive Compartmented Information (SCI)).

14.3.2. Unit commanders comply with DoDM 5210.42_AFMAN 13-501 for cases incident to discharge for cause action and take timely temporary and permanent decertification, as appropriate, of officers subject to the Personnel Reliability Program.

14.3.3. Authority to proceed with actions to which the foregoing paragraphs apply are documented in writing (memorandum or e-mail). Such documentation is forwarded with the case file.

14.3.4. Ascertain through consultation with SJA the nature and status of ongoing investigations and inquiries. Consider stage of investigation/inquiry, what information is presently available for use in support of initiation of action under this publication, or whether work remaining to be done is likely to generate material evidence, etc. Compile and tab the documentation, including unclassified summaries of security forces and OSI reports, if any, and investigative reports, if any, furnished or prepared by other agencies.

**14.4. Reports Requiring Special Handling.**

14.4.1. Handle reports furnished through OSI channels following guidance provided in AFI 71-101, Volume 1.

14.4.2. Comply with required procedures in DAFMAN 48-123 for handling or releasing reports of medical examinations and physical or psychiatric evaluation.

14.4.3. Hold Defense Investigative Service reports that contain unfavorable information in the member's special security file as required by DoDM 5200.02_AFMAN 16-1405. **(T-0)**

14.4.4. Refer to DoDM 5200.02_AFMAN 16-1405 for guidance on protecting and safeguarding classified information that may become part of discharge proceedings. **(T-0)**

14.4.5. Handle reports furnished through Inspector General Channels following guidance provided in AFI 90-301, *Inspector General Complaints Resolution*.

**14.5. Records Withheld in the Interest of National Security.** The legal office, MPFs, or SCAs may not give an officer undergoing discharge proceedings under this publication copies of records withheld under DoDM 5200.02_AFMAN 16-1405. **(T-0)** (**Note**: The officer may obtain a summary of the withheld records from the legal office).

**14.6. Recoupment and Continued Payment of Advanced Educational Assistance, Special Pay, or Bonuses.**

14.6.1. General. The USAF and USSF normally require recoupment of all, or a portion of advanced education assistance, special pay, or bonuses received when an officer fails to complete the educational requirements or separates before completing the period of active duty (i.e., ADSC) or reserve service the member agreed to serve. The authority for recoupment is 10 USC § 2005 for advanced educational assistance, Title 10 United States Code Section 2123, *Members of the Program: Active Duty Obligation; Failure to Complete Training; Release from Program,* for health professionals financial assistance programs (included in advanced educational assistance for purposes of the remainder of this publication), various sections of Title 37 United States Code, *Pay and Allowances of the Uniformed Services* for special pay and bonuses, and the contract or agreement the member signed. Officers are subject to recoupment unless the SecAF relieves the individual in whole or part of such repayment obligation under the criteria and procedures set forth in this paragraph. **(T-0)**

14.6.1.1. Educational assistance includes programs such as: Service Academy, Armed Forces Health Profession Scholarship Program, Uniformed Services University of the Health Sciences, AFROTC college scholarship program, tuition assistance, and AF Institute of Technology.

14.6.1.2. Educational assistance does not include technical training, workshops, and short-term training programs, unless provided otherwise in specific regulatory materials, including, but not limited to, AFIs or in an individual's contract.

14.6.1.3.  For recoupment in all cases of advanced educational assistance and in most cases of special pay or bonuses:  recoupment will normally be an amount of the total cost provided the member in the same ratio to the unserved portion of active duty or reserve service bears to the total period of active duty or reserve service the member agreed to serve.  Example: an officer incurred a 4-year ADSC in exchange for a paid education course, but only completed 3 years of the ADSC.  This means the officer did not complete 25 percent of the ADSC and is therefore subject to recoupment for 25 percent of the cost of the education course.  In some special pay or bonus cases, the entire amount of special pay or bonus may be recouped.

14.6.1.4.  Dispute of Advanced Educational Assistance Debt.  When a member who is subject to recoupment of advanced educational assistance disputes the validity of the debt, the authority who may initiate discharge appoints an officer or civilian employee to investigate the facts of the case in order to determine the validity of the debt.  If the member's separation case is heard by a discharge board, the board conducts this inquiry. The investigating officer or board provides findings and recommendations to the initiating authority, who forwards the report of the investigator or board to the SecAF for decision. If the basis for recoupment is misconduct, the investigating officer or board provides an assessment as to whether the behavior that resulted in the member's separation qualifies as misconduct under 10 USC § 2005(a) (3).  **(T-0)**

14.6.2. All notifications of initiation of discharge action will advise officers subject to recoupment that the officer is liable to be required to repay the US for any unearned portion of any bonus, incentive pay, educational assistance or similar benefit.  **(T-0)** This includes the amount of any transferred educational entitlement that is used by a dependent of the member as of the date of such a failure shall be treated as an overpayment of educational assistance. **(T-0)**

Thus, debt will be subject to collection by the VA.  **(T-0)**

14.6.3.  Criteria for Relief of Repayment Obligation.  As a rule, repayment is not sought if the officer's inability to fulfill the eligibility requirements is due to circumstances determined reasonably beyond the officer's control.

14.6.3.1.  Repayment shall not be sought and any remaining unpaid portion of a pay or benefit due to a member under a written agreement that existed at the time of separation or retirement for disability described under Title 10 United States Code Chapter 61, *Retirement or Separation for Physical Disability,* that was incurred in the line of duty in a combat zone designated by the President or the SecDef or in a combat-related operation designated by the SecDef, shall be paid to the member upon separation from service.  **(T-0)** Repayment is sought and any unpaid balances may not be paid to members who incur a disability as a result of their intentional misconduct (See Title 10 United States Code Section 1207, *Disability from Intentional Misconduct or Willful Neglect: Separation*). **(T-0)** In all other instances involving a member's separation for medical reasons not falling under Chapter 61, which were not the result of the member's misconduct, the SecAF has the discretion to determine whether to require repayment of the unearned portion of the pay or benefit, or to pay an unpaid balance of a pay or benefit.

14.6.3.2.  The indebtedness of an officer paid a bonus or special pay who is discharged for immediate appointment in the US Army, Navy, or Marines for which no bonus or special

pay is paid, may be waived, provided the term of the latter appointment extends beyond the date at which the officer's ADSC resulting from such special pay or bonus would have expired. The officer's bonus or special pay entitlements are resolved prior to discharge or release from the USAF or USSF.

14.6.3.3. Repayment is not sought and the SecAF does not pay any remaining unpaid portion of a pay or benefit under the following circumstances, unless otherwise authorized under **paragraph 14.6.3.4**.

14.6.3.3.1. The member's employment in another military specialty or assignment rotation is directed:

14.6.3.3.2. The member's military specialty or assignment is phased out or eliminated:

14.6.3.3.3. The member's military specialty or assignment is otherwise affected by a force structure or other mission essential requirement; or,

14.6.3.3.4. The member's hardship separation from service.

14.6.3.4. Under all other circumstances, the SecAF retains the discretion to render a case-by-case determination that the member's repayment, or the USAF's/USSF's full payment of an unpaid portion, of a pay or benefit is inappropriate unless it is:

14.6.3.4.1. Contrary to a personnel policy or management objective;

14.6.3.4.2. Against equity and good conscience; or

14.6.3.4.3. Contrary to the best interest of the US.

14.6.4. Involuntary Discharges for Cause. Requests for relief from repayment are, generally, not favorably considered for officers who are dropped from the rolls of the USAF or USSF, discharged for the good of the service, or discharged for misconduct, culpable substandard performance of duty, or moral or professional dereliction. This includes resignations in lieu of further processing and BOI waivers IAW **Chapter 19**.

14.6.5. Procedures.

14.6.5.1. Notwithstanding any other administrative delegations, the approval authority for voluntary separations under **Chapter 15** of this publication includes delegated authority to make recoupment determinations.

14.6.5.2. Officers not entitled to a BOI may include for SecAF consideration requests for whole or partial relief from recoupment with their response to the SCA's memorandum of initiation or to any subsequent resignation. Such requests should be in the form of a memorandum addressed to the SecAF through the SCA and AFPC/DPMSSR.

14.6.5.3. Officers entitled to a BOI may submit for SecAF consideration (addressed to the SecAF through the SCA and AFPC/DPMSSR) requests for whole or partial relief from recoupment together with any resignation or BOI waiver, or after they have received an authenticated copy of the transcript of a BOI record in which discharge was recommended, as appropriate.

14.6.5.4. SCAs should comment on and provide a recommendation regarding any request that the SecAF provide whole or partial relief from recoupment.

**14.7.  Service (Discharge) Characterization.**  The character of discharge is based on the military record including the grounds for the discharge action.  "Military record" as referred to in this paragraph is not a formal file or record, but includes any documentation of an officer's behavior, including personal conduct that occurred while on- and off-duty and duty performance during the officer's commissioned service in this component.  Although the character of discharge normally is based on a pattern of behavior or duty performance or both, a single incident of misconduct or substandard duty performance may provide an overriding basis for the characterization of discharge.  Officers dropped from the rolls of the USAF or USSF are not "discharged" and therefore do not receive a separation characterization.  The three types of service characterization the SecAF may direct are:

14.7.1.  Honorable.  This is the highest character of discharge.  It should be awarded when the quality of the officer's service generally has met DAF standards of acceptable conduct and performance of duty or when the officer's service is otherwise so meritorious that any other characterization would be inappropriate.  (**Note**:  Some veterans benefits may be contingent upon characterization of discharge as Honorable.)

14.7.2. Under Honorable Conditions (General).  (Also referred to as General (Under Honorable Conditions)).  When a Service member's service has been honest and faithful, it is appropriate to characterize that service under honorable conditions.  Characterization of service as Under Honorable Conditions (General) is warranted when the negative aspects of the Service member's conduct or performance of duty outweigh positive aspects of the Service member's conduct or performance of duty.  For ARC officers, use conduct in the civilian community of a member not in active military status (on active duty or active duty for training) to characterize service as General only if the conduct has an adverse impact on effectiveness of the AF, including military morale and efficiency.  **Note**: Conduct in the civilian community of a member not on active duty or active duty for training may form the basis for characterization as UOTHC only if such conduct directly affects the performance of the member's military duties.  Such conduct may form the basis of characterization as General only if such conduct has an adverse impact on the overall effectiveness of the service, including military morale and efficiency.  Commanders should discuss with their supporting legal office.  Opinions of the AF/JA provide clarification.

14.7.3. Under Other Than Honorable Conditions (UOTHC).  This is the least favorable characterization of administrative discharge, that is, a discharge resulting from administrative separation rather than from punitive separation as a result of trial by court-martial.  This characterization may be appropriate when separation is based upon a behavior (a single act or multiple acts forming a pattern) that constitutes a significant departure from the conduct expected of service members.  Examples of factors that may be considered include, but are not limited to,

14.7.3.1.  The use of force or violence to produce serious bodily injury or death;

14.7.3.2.  Abuse of a special position of trust;

14.7.3.3.  Disregard by a superior of customary superior-subordinate relationships;

14.7.3.4.  Acts or omissions that endanger the security of the US or the health and welfare of other Service members of the Military Services;

14.7.3.5.  Deliberate acts or omissions that seriously endanger the health and safety of other persons; and

14.7.3.6.  Rape, sexual assault, aggravated sexual contact, abusive sexual contact, rape of a child, sexual harassment, and attempts to commit these offenses.

14.7.3.7.  For ARC officers, conduct in the civilian community of a member not in the military status (not on active duty, initial active duty training, or active duty for training) may be used to characterize service as UOTHC only if the conduct directly affects the performance of military duties.  (**Note**:  Conduct in the civilian community of a member not on active duty or active duty for training may form the basis for characterization as UOTHC only if such conduct directly affects the performance of the member's military duties.  Such conduct may form the basis of characterization as General only if such conduct has an adverse impact on the overall effectiveness of the service, including military morale and efficiency.  Commanders should discuss with their supporting legal office.  Opinions of the AF/JA provide clarification.)

14.7.4.  The SecAF normally directs an Honorable discharge when the basis for discharge pertains solely to pre-service activities.

14.7.4.1.  Separation for cause is ordinarily based on records of the armed forces and events that occur during an officer's time as a commissioned officer.  An honorable discharge is normally appropriate when the basis for discharge pertains solely to pre-commissioning activities.  A discharge under other than honorable conditions (UOTHC) or a discharge under honorable conditions (General) may be appropriate if an officer intentionally misrepresents or omits facts in official statements, records, or commissioning documents.

14.7.4.2.  An officer's pre-commissioning time at a military service academy or in the AFROTC scholarship program, Armed Forces health professions scholarship program (AFHPSP), financial assistance program, or at the Uniformed Services University of the Health Sciences (USUHS) is not considered pre-service.  Each case is closely examined to determine whether grounds for discharge predating appointment as a commissioned officer may be used for the purposes of characterizing commissioned service.

14.7.4.3.  Misrepresentation or omission of material facts about pre-service activities in official statements or records related to accession and leading to appointment as an officer are not considered pre-service.

**14.8.  Aliens Seeking Naturalization.**  Some alien members may qualify for naturalization based on their military service.  Before accepting an alien member's application for voluntary discharge, unit commanders ensure that aliens who want to qualify for naturalization are counseled on the requirement to serve at least 3 years.

**14.9.  Members Identified as Missing.**

14.9.1.  Process cases involving members officially classified as missing following guidance provided in DAFI 36-3002, *Casualty Services*.  Reassign members classified as missing to ARPC.  Guidance on reassignment of members classified as missing is provided in DAFI 36-2110.

14.9.2.  Once the SecAF, local coroner's office, or a state court has officially declared the missing member as deceased, treat the case as any other casualty as outlined in DAFI 36-3002.

**14.10.  Death.**  Death of an officer automatically terminates the officer's appointment.  The death of an officer is reported as prescribed in DAFI 36-3002.  Guidance on death announcements is provided in DAFMAN 36-2102.

**14.11.  Evidentiary Limitations in Drug or Alcohol Abuse Cases.**  All relevant evidence on the issue of retention or discharge may be considered.  However, the following may not be considered with regard to characterization of discharge:

14.11.1.  Evidence the officer provided voluntarily when seeking treatment and rehabilitation for drug abuse, if the officer's actions meet the requirements for self-identification in AFI 44-121

14.11.2.  Results of mandatory urinalysis testing for controlled substances as part of:

14.11.2.1.  A command-directed examination as defined in AFI 44-121.

14.11.2.2.  A medical examination when the command had prior suspicion of drug abuse and the circumstances show the medical examination was done for the principal purpose of obtaining information about the member's drug use.

14.11.2.3.  An examination of a specified member participating in a drug treatment and rehabilitation program.

14.11.2.4.  The Limited Privilege Suicide Prevention Program.

14.11.3.  If the SCA or BOI considered any evidence covered by **paragraph 14.11.1**. **or paragraph 14.11.2** and recommends a General or UOTHC discharge, the SCA or BOI specifies what other evidence warrants a discharge characterization less than Honorable.

**14.12.  Separation Pay, Severance Pay, or Readjustment Pay.**

14.12.1.  See **Attachment 17** for information on separation pay, severance pay, and readjustment pay.

14.12.2.  AFPC Separations determines an officer's eligibility to receive full- or half-separation pay, severance pay, or readjustment pay.

14.12.3.  The local financial services office computes the full- or half-separation pay, readjustment pay, or severance pay.

14.12.4.  Officers eligible to receive separation pay must sign a ready reserve agreement before receiving the pay.  **(T-0)**

**14.13.  Veterans Rights and Benefits; Reentering the Service.**  The VA determines the rights and benefits of a former officer under Title 38 United States Code, *Veterans' Benefits*.  An Honorable discharge does not guarantee a former officer reentry into the service.  A discharge Under Honorable Conditions (General) normally rules out former officer's reentry.  An officer loses eligibility for reentry when discharged UOTHC.  See **Table 14.1**.

**14.14.  Evaluating Officers of Other Services.**  Unit commanders evaluate cases that involve officers of other services who are serving with the USAF or USSF.  Commanders review these cases by DAF standards and send the recommendation for appropriate action directly to the SCA.  The SCA sends the case with appropriate recommendation to AFPC Separations for referral to the officer's service.

**14.15. Reassigning Officers for Show Cause Action.** When a unit commander intends to recommend initiation of administrative discharge against an officer who is assigned to an organization not under the jurisdiction of a SCA, or whose case should be initiated and processed by a SCA other than the current SCA, the commander first requests that the officer be reassigned to place the officer under a SCA.  The unit commander submits the reassignment request to AFPC/DP3AM and the officer's assignment team, with a courtesy copy to AFPC Separations.

14.15.1.  SCAs do not reassign or permit reassignment of an officer to another SCA until the action ends, without prior coordination with AFPC Separations.

14.15.2.  The MPF notifies AFPC Separations and AFPC/DP3AM upon receiving reassignment instructions for an officer pending discharge action.  The MPF takes no further action to reassign the officer until AFPC provides additional instructions.

14.15.3.  SCAs do not reassign officers to a hospital for PEB action when they are undergoing medical disability processing.

14.15.4.  SCAs may request reassignment of an officer when a SCA terminates or withdraws the action, or a board of officers or the SecAF retains the officer.  Guidance on requests for officer reassignments are provided in DAFI 36-2110.

**14.16. Separation Physical and Medical Holds.** Schedule physical examinations following guidance provided in DAFMAN 48-123 and SHPE requirements (see also **paragraph 19.3.6.**).

14.16.1.  Schedule officer for physical examination within 10 days from initiation or recommendation for initiation of discharge action.

14.16.2.  Commanders ensure separation processing continues and remains on schedule even when an officer's medical examination is incomplete.  However, unless a medical examination is not required as identified elsewhere in this publication, ensure the discharge is not executed before the medical examination has been completed and the officer is medically cleared for discharge.

14.16.3.  The unit commander notifies AFPC/DPMSSR and the SCA when the officer is undergoing a medical or disability evaluation.  The commander monitors the disability processing and advises the SCA authority as appropriate.

**14.17. Dual Action Processing – Actions Under This Publication and Medical/Physical Separation Actions.**  Dual action processing involves referral of both an administrative separation action and a disability action to the SecAF.  It is required when an officer subject to involuntary administrative discharge is also eligible for disability separation or retirement. Guidance on dual action processing is provided in AFI 36-3212.  The following applies when an officer who is subject to action under this publication is undergoing medical or disability evaluation:

14.17.1.  Officials at all levels of command to include the commander, MTF, Physical Evaluation Board Liaison Officer, SCA, and SJA closely monitor ongoing actions and ensure discharge under this publication is not executed before action under AFI 36-3212 has been completed.

14.17.2.  The discharge case with completed SCA indorsement is forwarded to AFPC/DPMSSR. AFPC/DPMSSR notifies AFPC/DPFD (Disability Branch) of the pending dual-action case and obtains an expeditious AF/JA legal review.  Upon receipt of the AF/JA legal review, AFPC Separations provides the discharge action to AFPC/DPFD, which

processes the disability case and administrative discharge action to the SecAF for determination of the disposition of the discharge action and disability case. (**Note**:  Deviation is authorized as necessary in dual action cases in which time is of the essence.)

14.17.3.  DELETED

14.17.4.  If the basis for administrative discharge authorizes an Under Other Than Honorable Conditions discharge characterization, follow dual action procedures outlined in AFI 36-3212, paragraph 1.7.

**14.18.  Exceptions to Dual Action Processing.**

14.18.1.  The initiating commander under exceptional circumstances may request through the SCA that the SecAF proceed with execution of administrative discharge action under this publication prior to completion of pending medical actions to include Medical Hold Action, Medical Evaluation Board (MEB), PEB, or referral under the DES when the basis for discharge authorizes a service characterization of UOTHC.  (**Note**:  This provision does not authorize suspension of current medical actions or referral to DES until and unless the SecAF approves the execution of the discharge or directs other disposition actions.)

14.18.1.1.  Members may be ineligible for referral into DES, and may be removed from the DES, if they have an approved, unsuspended punitive discharge or dismissal, or are pending separation under provisions that authorize a characterization of service of UOTHC.  However, if evaluation for disability is warranted, the member may be eligible. Guidance on disability evaluation is provided in AFI 36-3212, paragraph 1.7. Reference DoDI 1332.18, *Disability Evaluation System*, App 1 to Enclosure 3, paragraphs 4(a) and 4(b), AFI 36-3212 and AFMAN 41-210.  **Note**:  Guidance on DES eligibility is provided in DoDI 1332.18, as implemented by AFMAN 41-210 and AFI 36-3212.  DES eligibility and dual action processing is not a matter of command discretion or authority.  **(T-0)** Administrative Actions Not Eligible for Dual Processing are Discharge in Lieu of Court-Martial.

14.18.1.2.  The Office of Disability Counsel is available to advise members on cases processed under AFI 36-3212.

14.18.2.  Procedures for Requesting an Exception to Dual Processing.  The SCA forwards a separate memorandum attached to the discharge case with justification to the SecAF through AFPC/DPMSSR.  The request for waiver to the DES processing contains the following:

14.18.2.1.  The basis for exception with justification.

14.18.2.2.  Report of medical assessment or the last physical or medical evaluation if a discharge physical was not completed.

14.18.2.3.  Medical Summary.  If not available, state why medical summary is not included.

14.18.2.4.  A statement that the officer has or has not been diagnosed with PTSD or TBI. If diagnosed with PTSD or TBI, provide a narrative summary to address why officer does or does not require MEB and/or PEB processing.

14.18.2.5.  Officer's deployment history and whether the officer was deployed to an imminent danger pay area.

14.18.2.6.  Officer is or is not designated as wounded warrior.

14.18.2.7.  Estimated completion date of pending MEB and/or PEB, when applicable.

14.18.3.  SecAF Disposition.  The SecAF may direct:

14.18.3.1.  Execution of the discharge.

14.18.3.2.  Denial of waiver and continued dual processing under this publication.

14.18.3.3.  Convening of a BOI or any other disposition as authorized in this publication.

**14.19. Separation Actions Involving Victims of Sexual Assault.** When an officer's chain of command is made aware of, or the officer has filed an unrestricted report of sexual assault within 12 months preceding the initiation of involuntary discharge action or the date of the officer's request for voluntary separation, the following rules apply:

14.19.1.  The commander recommending discharge or endorsing a voluntary request for separation provides sufficient information to the separation authority concerning the assault or alleged assault.  Commanders should consult with OSI and the servicing legal office for guidance on the level of information that may be applicable.

14.19.2. Upon voluntary application for separation, or upon notification of involuntary separation, an officer may voluntarily disclose to the commander or chain of command that they have filed an unrestricted report of sexual assault and any mitigating factors or information they wish to be considered by the separation authority. (**Note**:  This does not apply to separations required by statute.)

**14.20. Officers Referred for Show Cause Consideration by Central Selection Boards.** Central Selection Board identification of officers whose records show that they may be subject to show cause action is typically reported to MAJCOM/CCs or FLDCOM/CCs.  The MAJCOM/CC or FLDCOM/CC should forward such reports to the appropriate SCA for consideration and disposition.

**14.21. Separation Under Normal Conditions.**

14.21.1.  The SecAF, or delegated authority normally does not approve an officer's separation request submitted under **Chapter 15** of this publication when the officer is pending discharge action under **Chapter 17, or Chapter 18**.

14.21.2.  When officers have an MSD, SCAs send the case file to the SecAF through AFPC Separations for appropriate action no later than 60 calendar days before the officer's MSD. The case file for officers pending a mandatory DOS should be identified for expeditious processing from initiation of show cause action through all levels of command and SecAF review.

**14.22. Forwarding Cases.** Reducing cumulative time in transit is essential to expeditious processing and finalization.  Cases are forwarded via the applicable electronic system.

**14.23. Effecting Discharge.** The USAF or USSF establishes the officer's DOS.  The SecAF, or designee, may approve or direct a separation to take effect within 10 calendar days. AFPC/DPMSSR forwards discharge instructions and coordinates with the servicing MPF to discharge an officer being separated for cause as soon as possible (ASAP), but no later than 10 calendar days (20 calendar days if the officer is returning from overseas).  AFPC/DPMSSR will

also forward a copy of the SecAF's decision to the MAJCOM/FLDCOM SCA and wing or delta commander. **(T-1) For** AFRC members, ARPC/DPTTS (Separations) issues final discharge order, effective the date of SecAF (or designee) decision document.  (**Note**: The SCA may, for sufficient military reasons, request a later DOS beyond 10 or 20 calendar days.  Unused accrued leave is not a sufficient reason.)

14.23.1.  The DOS for administrative purposes is effective at 2400 hours on the date specified in the orders directing separation as of the date the member is released or discharged from active duty, provided the officer receives actual or constructive notice on or before the date. For UCMJ purposes, separation is effective upon receipt of the DD Form 214 or other discharge certificate, final pay is made ready, and the officer has out-processed the appropriate base agencies, unless the officer used fraud or misrepresentation to obtain separation.

14.23.2.  If an officer willingly avoids receipt of notice of separation, the date specified in the order directing separation is considered the date of official notification.  Receipt of a properly tendered DD Form 214 is presumed.

14.23.3.  Members eligible for transition assistance program benefits may elect to take excess leave or permissive temporary duty for relocation and employment activities.  Commanders are not required to authorize either if doing so would be inconsistent with unit morale, good order, or discipline.  See DAFI 36-3009, *Airman and Family Readiness Centers*, and *AF Pre-separation Guide* for transition assistance benefit eligibility requirements and DAFI 36-3003, *Military Leave Program* for excess leave and permissive temporary duty eligibility.

**14.24.  Processing Pending Cases.**  Commanders and SCAs continue processing cases under the regulation or instruction in effect at the time the SCA or the member initiated the discharge action.

**14.25.  Reserve Disposition of Pending Cases.**

14.25.1.  For voluntary discharges, processing starts on the date the appropriate office receives a TOR from an officer.  For involuntary discharges, the processing starts on the date that the member acknowledges the receipt of the Show Cause Notification Memorandum (SCNM). Where an individual fails to acknowledge receipt, including those cases where an appropriate mailing receipt is not returned, or the initiating authority knows the member is in civilian confinement, discharge processing is considered to have started 15 calendar days (30 calendar days if the commander or discharge authority knows the member is in civilian confinement) after the SCNM was mailed to the current address listed with the member's unit or in the MilPDS.

14.25.2.  There is a legal presumption that a SCNM placed in the US mail, properly stamped, and sent to the latest address provided by the member in MilPDS, reaches its intended recipient unless returned by the US Postal Service.

**14.26.  Secretarial Substitution of Administrative Discharge for Dismissal.**  The SecAF may, for good cause, substitute an administrative discharge for a dismissal under Article 74(b), UCMJ. If the SecAF substitutes an administrative discharge for a dismissal under Article 74(b), UCMJ the discharge is UOTHC unless the SecAF determines a more favorable discharge is warranted.

**14.27.  War and Mobilization Separation Guidance.**  When authorized by the President or Congress, the active force may be expanded by mobilization of the reserve component to satisfy any emergency requirement.  Usually under these circumstances, it is necessary to minimize active

duty losses.  This is achieved by suspending officer voluntary and involuntary discharges, releases, and retirements under the authority of Title 10 United States Code Section 123, *Authority to Suspend Officer Personnel Laws During War or National Emergency* and Title 10 United States Code Section 12305, *Authority of President to Suspend Certain Laws Relating to Promotion, Retirement, and Separation.*

**14.28. Extending Active Duty Involuntarily for Court-Martial or Administrative Discharge.**  Absent a special law or agreement, an officer has no legal right to separate whenever the officer wishes.  Additionally, establishment of an ADSC does not create a right or entitlement to separate from the USAF or USSF upon completion of the ADSC.  Regular officers usually serve on indefinite active duty by appointment of the President and must request release from active duty or discharge in order to separate.  **(T-1)** Consideration of an officer's request for separation is based on the needs of the USAF or USSF, which may require the officer's continued service beyond the completion of an ADSC.  Furthermore, absent a statute or regulation requiring separation on a specified date which is beyond the scope of Secretarial waiver authority, officers can, for good cause (including availability for military justice action or involuntary discharge action) be retained with approval of SecAF, or delegated authority.  Unit commanders are responsible for identifying to the chain of command situations where such involuntary extension action should be considered.  Early and regular consultation with the servicing legal office is crucial.

14.28.1.  AFPC/DPMSSR, in response to a fully coordinated request from the officer's commander and SJA, extends an officer's DOS when good cause is shown and circumstances warrant.  The commander and/or SJA coordinate with AFPC/DPMSSR prior to taking formal action to extend the officer's DOS.  Examples of actions that may warrant extension include, but are not limited to:

14.28.1.1.  When action has been taken with a view toward court-martial.  A non-exhaustive list of such actions include apprehension, imposition of pretrial restraint, and preferral of charges.  This paragraph also authorizes retention to complete an investigation and make a court-martial determination.

14.28.1.2.  When action has been taken or is contemplated to discharge the officer involuntarily for cause.

14.28.2.  When a determination is made to extend an officer's DOS, the commander forwards a memorandum indorsed by an SJA to AFPC/DPMSSR.  AFPC advises the requesting commander, SJA and MPF of the action taken.

**14.29.  Releasing Officer from an Involuntary Extension of Active Duty for Court-Martial or Administrative Discharge.**

14.29.1.  Immediately upon decision not to pursue a court-martial or administrative discharge action, or when the officer's retention on active duty is no longer required, the commander forwards a memorandum indorsed by the SJA to AFPC/DPMSSR.  The officer may not continue to be held for the purpose of initiating or completing an administrative action (i.e., letter of counseling, letter of admonishment, or letter of reprimand), but may be held for completion of nonjudicial punishment (i.e., servicing legal office review).  The memorandum states the reason the officer is no longer required to be retained on active duty.  Illustrative examples include, but are not limited to:

14.29.1.1.  Investigation has been completed and charges are not being preferred or administrative discharge is not being initiated.

14.29.1.2.  The officer is acquitted of all charges, or administrative discharge action either is not initiated or results in retention.

14.29.1.3.  Appellate review is complete, the officer's approved sentence does not include dismissal.  (**Note**: A sentence to confinement or forfeiture of pay does not have to be completed to approve or execute the officer's separation.)

14.29.2.  Officer's DOS is normally set no more than 30 days from the date of release from hold.

**14.30. Retention for Medical Treatment or Evaluation.** An officer otherwise entitled to separate on his DOS may be involuntarily retained on active duty when undergoing medical treatment or disability processing by medical authorities.  Separation or discharge processing resumes when medical authorities determine the officer is physically qualified for duty.

**14.31.  Extending Active Duty for Pregnancy or Family Member's Medical Care.**

14.31.1.  The SecAF, or designee, may extend the DOS for a pregnant officer or an officer whose spouse is pregnant when the expectant mother does not qualify for Government medical care after the current DOS.  The officer must submit a request for extended DOS by the sixth month of pregnancy.  **(T-2)** The request includes a certificate of pregnancy from the attending physician with an expected date of delivery.  The extension period consists of the delivery date plus 1 month.  A longer extension may be granted based upon the advice of competent medical authority.  Refer to AFMAN 41-210 for information regarding the SecAF Designee Program.

14.31.2.  The SecAF, or designee, may extend the DOS when a doctor confirms a family member's illness or injury constitutes a threat to life.  The officer's request for extension must include a certificate from the attending physician verifying the seriousness of the illness or injury, the prognosis, and the number of months required to resolve the medical condition or associated problems. **(T-1)** The extension cannot exceed 12 months.  **(T-1)**

14.31.3.  An officer is not eligible for extension under this paragraph if any of the following apply:

14.31.3.1.  Pending court-martial or separation for cause.

14.31.3.2.  Separation is required by law under **Chapter 16.**

14.31.3.3.  Estimated date of delivery is more than 60 calendar days before the current DOS.

14.31.3.4.  Family member is not expected by medical authorities to need medical care beyond 60 calendar days before the current DOS.

14.31.3.5.  Scheduled for voluntary separation under adverse conditions or resigning instead of undergoing further administrative action (see **Attachment 20**) or for the good of the service.

14.31.4.  The wing or delta commander or other cognizant authority indorses the request for extension with a recommendation for approval or disapproval and a statement as to whether

the officer can be gainfully employed by the USAF or USSF if extended.  The MPF forwards the indorsed request to AFPC/DPMSSR.

14.31.5.  An officer whose DOS is extended under this paragraph may separate before the extended DOS (but not before the original DOS) when the pregnancy ends in other than live birth or the family member's illness or injury no longer requires military medical care.  The MPF notifies AFPC Separations when any condition occurs which may affect or require adjustment of an officer's DOS.

**14.32.  Extending Regular Health Professions and Chaplain Officers Beyond Maximum Age or Maximum Years of Commissioned Service.**  The SecAF may extend the DOS of a medical officer, dental officer, nurse, or chaplain, with the officer's consent, until a specified age. Guidance on DOS extensions for age is provided in Title 10 United States Code Section 1251, *Age 62: Regular Commissioned Officers in Grades below General and Flag Officer Grades; Exceptions*.

14.32.1.  An officer who has been twice non-selected to the grade of O-5 or below may not be extended.

14.32.2.  Officer formally applies for an extension to the age requirement beyond 62 years.  The request is processed through:

14.32.2.1.  The MTF commander or Installation Chaplain who forwards recommendation to the wing or delta commander.

14.32.2.2.  Wing or delta commander forwards recommendation to the MAJCOM SG (or SG servicing FLDCOM) or MAJCOM HC (or HC servicing FLDCOM).

14.32.2.3.  The MAJCOM or FLDCOM SG or HC:

14.32.2.3.1.  May recommend extending the officer's DOS, with the officer's consent, to fill a mission-based requirement.

14.32.2.3.2.  Sends the request, with justification and the officer's signed consent statement, to AFPC Assignments.  For ANG, send to state Joint Force Headquarters (JFHQ) Military Personnel Management Officer (MPMO) for TAG endorsement.  The MPMO office will endorse the request and forward to NGB/A1P for processing. **(T-1)**

14.32.2.4.  The appropriate AFPC assignment branch or Chaplain assignment branch indorses the request and sends it to AFPC/DPMSSR.

**14.33.  Keeping Officers Who Are Near Qualification for Retirement.**  The USAF and USSF normally do not involuntarily separate an officer (except for cause or physical disability) if the officer is within 2 years of qualifying for retired pay under 10 USC § 9311, or 10 USC § 12731 (Reserve retired pay for 20 years satisfactory service).  **Exception:**  The SecAF may approve or order involuntary separation under adverse conditions for these officers.

**14.34.  Reserve Retention to Qualify for Retired Pay (Sanctuary).**  (**Note**:  This paragraph and subparagraphs do not apply to involuntary separation cases related to physical disability, show cause actions, or processing an officer for age restrictions.)  Following guidance provided in Title 10 United States Code Section 12646, *Commissioned Officers: Retention of After completing 18 or More, but Less Than 20, Years of Service* and DAFI 36-2110, a reserve officer in an active status who is selected for involuntary discharge or transfer from active status and who is credited with at least 18, but less than 20 years of service under Title 10 United States Code Section 12732,

*Entitlement to Retired Pay: Computation of Years of Service* on the date otherwise prescribed for discharge or transfer from an active status, may not be discharged or transferred from an active status without consent before the earlier of the dates prescribed below:

14.34.1. The date on which the officer is entitled to be credited with 20 years of service computed under 10 USC § 12732.

14.34.2. The second (in the case of a 19-year member) or third (in the case of an 18-year member) anniversary of the date on which the member would otherwise be discharged or transferred from an active status.

**14.35. Reserve Loss Management Provisions.** Requests for voluntary separation from the unit or IMA program are submitted with a current date of application. Back-dated requests are not accepted. Members request an effective loss date that is no earlier than 6 months from the date of application or provide narrative justification to support a waiver of the projected 6-month loss requirement.

14.35.1. Requests for officers assigned to the unit program are processed through the member's unit commander, wing commander or equivalent, and Numbered Air Force Commander to HQ AFRC/A1K for processing to the Deputy Commander Headquarters Air Force Reserve Command (HQ AFRC/CD), HQ AFRC/CC, or SecAF for decision. Requests for individual reservists are processed through HQ ARPC/DPA to the Commander, Headquarters Readiness and Integration Organization (RIO/CC) to HQ AFRC/A1K for processing to the HQ AFRC/CD, HQ AFRC/CC, or SecAF for decision. The approval authority is authorized to waive the projected 6-month Effective Date of Change of Strength Accountability requirement. If waived, the approval authority signs a statement affirming waiver of the projected 6-month loss requirement.

14.35.2. Members who desire to withdraw a previously approved request for voluntary separation process a request for withdrawal of voluntary separation through the same channels as the original request.

14.35.3. Loss management provisions do not apply to the following losses:

14.35.3.1. Transfers to any RegAF component.

14.35.3.2. Transfers to any AGR or EAD Tour.

14.35.3.3. Transfers within the unit or IR program.

14.35.3.4. Transfers from the unit program to the IR program.

14.35.3.5. Transfers from the IR program to the unit program.

14.35.3.6. Conditional Releases.

14.35.3.7. Discharge at ETS.

14.35.3.8. Retirement at HYT date or MSD.

14.35.3.9. Retirement at ETS.

14.35.3.10. Involuntary reassignment or discharge.

**14.36.  Reenlistment in the Regular Component After Service as an Officer.**

14.36.1.  Officers who are separated under this publication and who were formerly enlisted in the regular component, or who were discharged as an enlisted member to accept an appointment as an officer of the USAF or USSF, are entitled to be reenlisted in the regular component in the enlisted grade that the officer held before their service as an officer, without loss of seniority or credit for service, regardless of the existence of a vacancy in the member's grade or of a physical disability incurred or having its inception in the line of duty.  **Exception:** Officers whose former enlisted status and grade was based *solely* on the participation in a pre-commissioning program that resulted in the commission and period of active duty for which the officer was subsequently discharged or separated are not eligible for reenlistment under this provision.

14.36.2.  Officers desiring reenlistment into the regular component:

14.36.2.1.  Must have been separated or discharged from officer status honorably.  **(T-1)**

14.36.2.2.  Must not have been separated or discharged for a reason or basis under **Chapter 17**, **Chapter 18**, or **Chapter 21** of this publication, regardless of the approved service characterization.  **(T-1)** This includes officers who submit a resignation instead of undergoing administrative discharge proceedings under **paragraph 19.9.8**  **(T-1)**

14.36.2.3.  Must apply for reenlistment within 6 months after separation or discharge from officer status.  **(T-1)**

14.36.2.4. Unless otherwise exempted in **paragraph 14.36**, a member must meet enlistment criteria following guidance provided in DAFMAN 36-2032 unless otherwise exempted in **paragraph 14.36.1** above.  **(T-1)**

14.36.3.  Officers may obtain additional information through their MPF, or by contacting the AFPC Enlisted Accessions Branch (AFPC/DPMLT)

**Table 14.1.  Future Veterans Rights and Benefits—Reentry into the Service.**

| RULE | A | B | C |
|---|---|---|---|
| | **If officer's discharge is** | **then officer (see Notes)** | **And** |
| 1 | Honorable | is entitled to full rights and benefits under applicable statutes | reentry into the service is not guaranteed unless Title 10 United States Code Section 9138, *Regular Air Force and Regular Space Force: reenlistment after service as an officer*, applies. |
| 2 | Under Honorable Conditions (General) | is entitled to most rights and benefits under applicable statuses. | reentry into the service is denied. |
| 3 | UOTHC | may be deprived of certain benefits as determined by the | officer is ineligible for reentry into the service. |

| | | VA in each individual case | |
|---|---|---|---|

**Notes**:

1.  38 USC § 5303 bars payment of benefits administered by the VA to persons discharged or dismissed for any of the reasons listed below.  Except as indicated, this bar to benefits applies notwithstanding the characterization of discharge received.  **(T-0)**

a. Dismissal by reason of the sentence of a general court-martial.  **(T-0)**

b. Discharge on the grounds that the person was a conscientious objector who refused to perform military duties or refused to wear the uniform or otherwise to comply with lawful orders of competent military authority.  **(T-0)**

c. Discharge for desertion.  **(T-0)**

d. Discharge based on an absence without authority from active duty for a continuous period of at least 180 days if such person was discharged Under Conditions Other Than Honorable, unless such person demonstrates to the satisfaction of the VA that there were compelling circumstances to warrant such prolonged unauthorized absence.  **(T-0)**

e. Resignation of an officer for the good of the service.  **(T-0)**

f. Discharge or dismissal as an alien during a period of hostilities (does not apply to an alien whose service was honest and faithful, and who was not discharged on the alien's own application or solicitation as an alien).  **(T-0)**

2.  Montgomery GI Bill educational benefits (Title 38 United States Code Chapter 30, *All-Volunteer Force Educational Assistance Program*) are not available to members who receive an Under Honorable Conditions (General) or UOTHC discharge.  **(T-0)**

3.  The information on this topic is necessarily general and is believed to be current at the time of publication of this publication.  Separating officers should address specific questions regarding education benefits (Montgomery GI Bill, Post-9/11 GI Bill transferability) to their education office or to the VA at: http://www.gibill.va.gov/.

**14.37.  General Information for Separating Reserve Officers:**

14.37.1.  Discharge Authority.  Refer to **Table A19.1** for the appropriate discharge authority for ready reserve (including select reserve) and individual ready reserve (IRR) personnel) and standby reserve (including Inactive Status List Reserve Section (ISLRS) officers).

14.37.2.  In cases involving mandatory separation or discharge where notification procedures and an administrative discharge board are not required (such as mandatory separation dates [MSD] or inactive status list reserve section [ISLRS] for officers), the separation or discharge authority publishes orders and issues separation documents.

14.37.3.  In cases involving separation or discharge where notification procedures or an administrative discharge board are required (except for physical disqualification), use the following procedures.  The unit commander (or equivalent) will:

14.37.3.1.  Examine and evaluate any information received that indicates a member should be considered for separation or discharge.  **(T-1)** Refer to **Table A19.1** for the appropriate discharge authority for ready reserve (including select reserve) and individual ready reserve (IRR) personnel) and standby reserve (including Inactive Status List Reserve Section (ISLRS) officers).  Consult with NGB/A1, Air National Guard Bureau, Office of the General Counsel (NGB-GC), HQ ARPC/JA, HQ AFRC/A1, HQ AFRC/JA, HQ RIO/CC, and the supporting SJA, as appropriate.

14.37.3.2.  Ensure that investigations properly and completely develop, substantiate, and document all facts.  **(T-1)**

14.37.3.3.  Prepare a recommendation in the format prescribed for officers in **Attachment 8** for ARC personnel.  **(T-1)**

14.37.3.3.1.  For training and retired category "A" reservists, forward discharge recommendation through the local SJA for review of legal sufficiency, wing commander or equivalent, and the numbered Air Force commander to HQ AFRC/JA.  **(T-1)** HQ AFRC/JA reviews the case and, if SCA has not been delegated, prepares the show cause notification memorandum (SCNM) to be reviewed and signed by the HQ AFRC/CC.  If SCA has been delegated, the appropriate legal office prepares the SCNM to be reviewed and signed by the SCA.  **(T-1)** Notifications are performed IAW **Chapter 17, Chapter 18,** and **Chapter 23** of this publication.  **(T-1)**

14.37.3.3.2.  For training and retired category "B" reservists, assigned to a unit or field operating agency (FOA), forward discharge recommendation and all supporting evidence through the detachment or ARPC/JA to the HQ RIO/CC and HQ ARPC/CC.  **(T-1)** AFRC/JA, or servicing legal office if SCA has been delegated, performs notification IAW **Chapter 23** of this publication.

14.37.3.3.3.  For category B reservists assigned as individual mobilization augmentees (IMAs) centrally managed through the offices of the AFRC/HC, AFRC/JA and the AFRC/SG, forward discharge recommendation and all supporting evidence through the HQ RIO and HQ ARPC/JA to the HQ ARPC/CC.  **Note:**  The HQ AFRC/CC or delegated authority, notifies the IMA in writing. **(T-1)**

14.37.3.3.4.  For category B reservists assigned to RIO, but attending a special professional education and stipend program, forward recommendation and all supporting evidence through ARPC/JA and appropriate central manager (i.e., AFRC/HC, AFRC/JA, or AFRC/SG to ARPC/DPT). **(T-1)**

14.37.3.3.5.  For category B reservists assigned to HQ RIO, and not attached elsewhere or participating in a professional education or stipend program, all documentation supporting initiation of discharge is forwarded through ARPC/JA to ARPC/DPA.

14.37.3.4.  Discharge Authority's Responsibilities:  Refer to **Table A19.1** for separation or discharge authority.

14.37.3.4.1.  Review the case to ensure proper substantiation of all facts and determine appropriate action.  **(T-1)**

14.37.3.4.2.  If discharge action is not warranted, return the case to the appropriate unit and close the case.  **(T-1)**

14.37.3.4.3.  When involuntary administrative discharge action is warranted, process the case IAW **Chapter 23** of this publication.  **(T-1)** When an officer tenders a resignation in lieu of board action, suspend processing and refer to **Section 19D** of this publication.

14.37.3.4.4.  Guidance on assembling a board of officers is provided in DAFMAN 51-507.  **(T-1)**

14.37.3.5.  Approval Authority.  Forward discharge case files requiring SecAF approval through AF/JA to SecAF, or designee.  Include in the cover correspondence transmitting the case file:

14.37.3.5.1.  A recommendation that an officer be removed from an active status and transferred to the retired reserve or discharged.  **(T-0)** An officer who is removed from active status and has the required number of years necessary for retirement is eligible to voluntarily retire and may not be discharged. Guidance on removing an officer from active status is provided in 10 USC § 14905 (b)(2).  If the recommendation is to transfer the officer to the retired reserve, also include any proposed OGD.

14.37.3.5.2.  The recommended characterization of service.  **(T-1)**

14.37.3.5.3.  Personal appearance of an officer or the officer's counsel before SecAF, or designee, is not authorized, unless SecAF, or designee, determines that the officer must be present, with or without counsel, in order to properly evaluate the case.  **(T-1)**

14.37.3.6.  Discharge authority procedures after final action by the SecAF.

14.37.3.6.1.  When the officer is retained, the discharge authority advises the respondent that the SecAF's decision terminates the action initiated under this publication.  If appropriate, the officer may be reassigned.

14.37.3.6.2.  When an officer is not retained and is not eligible to retire, the discharge authority issues instructions to NGB/A1PP who, in turn, provides the state with the determination and instructions to effect the removal of the officer from active status and discharge the officer from the ANG and/or as a reserve of the Air Force.

14.37.3.6.3.  When an officer is not retained and is eligible to retire, the discharge authority notifies HQ ARPC/DPT to initiate action to transfer the officer to the Retired Reserve.

14.37.3.6.4.  When SecAF directs other action, the discharge authority issues instructions following guidance provided by the SecAF direction.

**Chapter 15**

**VOLUNTARY SEPARATIONS**

*Section 15A—Voluntary Separation Reasons.*

**15.1. Reasons for Voluntary Separation.** An officer may request separation from the service for the reasons below.  An approved separation under **Chapter 15** is characterized as Honorable. (**Note**: Review **Chapter 14** for rules and procedures applicable to all separation actions.)

15.1.1. Hardship.  An officer may request separation when military service, including categories of lesser availability (e.g., IRR), causes personal or family hardship greater than that usually experienced by military members or families.  Normal inconvenience caused by military service, such as living away from family members, does not in itself constitute hardship.  Additionally, a request for financial hardship separation must clearly demonstrate unforeseen and or catastrophic events that caused a financial burden not normally experienced by other military members or their families.  **(T-1)** Financial mismanagement or over-extended use of credit is not a basis for hardship discharge.  The officer's application, with supporting evidence, such as but not limited to financial budget, doctor's statements (include description of illness and prognosis), medical records, police reports, and any other documentation deemed appropriate, substantiates:  the conditions causing the hardship arose or were aggravated to an excessive degree since the officer entered active duty; the hardship is not temporary; every reasonable effort has been made to remedy the situation; only separation can alleviate the hardship; upon separation, the officer can eliminate or alleviate the hardship.

15.1.1.1.  The burden is on the member to show, through written statements or otherwise, the conditions stated in **paragraphs 15.1.1**.

15.1.1.2.  If dependency or hardship is the result of the death of someone in the member's family occurring since their commission, a certified copy of the original certificate of death is required.

15.1.1.3.  If dependency or hardship is the result of a disability of the officer's family member, occurring since their commission, a physician's statement is required to tell what the disability is and when it occurred.  Further, a list of the names, ages, occupations, locations, and monthly incomes of other family members, with an explanation as to why they cannot provide the necessary care or support, must be furnished.  **(T-1)**

15.1.1.4.  Evidence of prospective civilian employment is required if financial hardship is alleged.  The evidence must show that the member is able to exceed military pay if separated, although the ability to make more money through civilian employment, alone, does not necessarily meet the burden of proof that a financial hardship exists.  **(T-1)**

15.1.1.5. On receipt of an application under this paragraph, the discharge authority examines the basis for the application, determines whether there is sufficient evidence to justify separation or discharge, obtains additional information deemed necessary to make a determination regarding the sufficiency of the request, and expedites separation if the discharge is approved.  The following factors are also considered:

15.1.1.5.1.  Indebtedness to the government or to a person does not preclude separation or discharge when the member otherwise meets the criteria set out in **paragraph 15.1.1**.

15.1.1.5.2.  A member who is under investigation or against whom court-martial charges have been preferred is not normally eligible for separation or discharge under this paragraph, until the termination of such status.

15.1.1.5.3.  An individual who is serving a sentence of confinement but has not been punitively discharged (dismissed) from the service should be considered for separation.

15.1.1.5.4.  A member against whom administrative separation or discharge action has been initiated prior to submission of an application for hardship, separation, or discharge, is normally not eligible for separation or discharge under this paragraph until the final disposition of the administrative proceedings.

15.1.1.5.5.  Do not disapprove or delay separation or discharge under this paragraph solely because the member's services are needed in the organization.

15.1.1.6.  Separate and concurrently discharge as reserve of the AF ANG members if subject to separation or discharge under this paragraph.

15.1.1.7.  Officers who do not provide information to substantiate a resignation for hardship or dependency may qualify for separation or discharge for miscellaneous reasons.

15.1.2.  Completion of Required Active Service.  An officer may apply to separate upon completion of the officer's ADSC.  An officer with an Assignment Selection Date (ASD) or who is notified of selection for a training or education course may apply for separation under **paragraph 15.1.10**.

15.1.2.1.  The requested DOS is:

15.1.2.1.1.  If assigned to the CONUS (not on a stabilized or maximum tour), on or after their ADSC and no earlier than 6 months from the date of the application.  The officer may request a waiver (with justification) to obtain a DOS earlier than 6 months from the date of application.

15.1.2.1.2.  If serving overseas and otherwise eligible, on the ADSC completion date.  If the ADSC ends within 12 months after the DEROS, the DOS falls no earlier than 12 months after the DEROS.  For officers serving on dependent-restricted tours the DOS falls no earlier than seven months after the DEROS.

15.1.2.1.3.  If serving on a CONUS maximum stabilized tour, on or after the tour completion date.

15.1.2.1.4.  If selected for an Air Expeditionary Force deployment (other than an indeterminate TDY), no earlier than their expected deployment return date, plus 30 days.  A separation request for the sole purpose of avoiding deployment will not be considered. **(T-0)** (**Note**: Refer to **paragraph 15.1.16** if selected for indeterminate TDY.)

15.1.3.  Discharge to Enlist and Retire.  Officers who do not meet minimum eligibility to retire as officers under 10 USC § 9311 (20 years TAFMS and 10 years Total Active Federal Commissioned Service (TAFCS) may request to resign their commission in order to enlist and retire.  If an officer has an MSD by virtue of being twice non-selected to the next higher grade, and the officer has 20 years TAFMS but not at least 10 years TAFCS, the officer may request to resign to retire as an enlisted member under 10 USC § 9314.  The SecAF normally allows an officer to request to retire in enlisted status if the officer can document an extreme hardship uncommon to other USAF or USSF members.  The SecAF may accept the officer's resignation to enlist in the regular component for the purpose of retirement.  If approved, the officer receives a DOS scheduled 3 duty days before the end of the month and retirement effective date on the first day of the following month.  This provision does not provide a waiver to any outstanding ADSCs.  The voluntary separation is accompanied by:

15.1.3.1.  A completed retirement application.  Refer to DAFI 36-3203 for further guidance on resignation to retire in enlisted status.

15.1.3.2.  Justification and documentation of a hardship and waiver of an ADSC(s) when applicable.

15.1.4.  A SecAF-Approved Early Separation Program.  An officer applying to separate under a SecAF-approved voluntary early separation program must meet the program's eligibility criteria.  **(T-1)** The DOS normally falls on the date requested by the officer consistent with the program criteria.  **(T-1)**

15.1.5.  Withdrawal of Ecclesiastical Indorsement.  A chaplain may resign effective ASAP when the chaplain's ecclesiastical endorsing organization withdraws its indorsement.  This provision does not apply when involuntary separation under **Chapter 16** or **Chapter 18** of this publication is appropriate.  See **Table 15.1**., Rule 5.

15.1.6.  Physician Re-deferment Program.  A medical officer must be selected by the Joint Service Graduate Medical Education Selection Board for the re-deferment program.  **(T-1)** The separation request under the re-deferment program contains a letter of acceptance from an accredited civilian training institution, the Joint Service Graduate Medical Education Selection Board selection letter, statement of understanding, and an ADSC statement.  The effective DOS is 1 day prior to the official training start date.

15.1.7.  To Attend School.  An officer may apply for separation in order to enter a recognized institution of higher education in a full-time resident course of instruction leading to a post-graduate degree.  The application shows:

15.1.7.1.  Acceptance without qualification for a specific school term.  The latest starting date for the school (the date on which the student's presence is required) must fall within the last 90 days of any remaining ADSC or if no remaining ADSCs, the requested DOS.  **(T-1)** The requested DOS is no earlier than 30 days before the class start date and no later than the day prior to the class start date.  **(T-1)**

15.1.7.2.  The enrollment date is academically best suited for beginning or resuming education.

15.1.7.3.  A delay of enrollment until their approved DOS would cause undue hardship.

15.1.8. Conscientious Objection.  An officer may resign effective ASAP if approved for conscientious objector status under **Chapter 29** of this DAFI.  Once approved, the officer completes a request for discharge as a conscientious objector citing this paragraph and the applicable recoupment statements (refer to **paragraph 14.6**.).

15.1.9. Interservice Transfer.  Eligible officers may apply for transfer to another armed service.  The application states why the transfer benefits national defense as well as the officer's career.  Approval is contingent on the officer's regular appointment on the Active Duty List (ADL) of the gaining uniformed service.  The DOS is established the day prior to the appointment in the gaining service.  The request for interservice transfer, if approved, remains valid up to 12 months from the date AFPC Separations forwards notification of the contingent approval to the officer.  If the transfer action has not been completed by the end of the 12 months from original approval, the contingent approval is canceled, and the officer must reapply.  Officers may not apply for transfer if they:

15.1.9.1.  Have an approved or established DOS within 3 months of the date of application.

15.1.9.2.  Receive notice of a mandatory retirement or separation.

15.1.9.3.  Are under investigation, have had charges preferred against them, have been convicted by court-martial, or are awaiting separation for cause.

15.1.9.4.  Are enrolled or awaiting start in technical flying training, initial skills or technical training, or awaiting disposition after removal from such training.  This includes those who have graduated their commissioning source (e.g., USAFA) and entered active duty, but have not started initial skills training.

15.1.9.5.  Were considered but not selected for promotion in the primary promotion zone as defined in DAFI 36-2501, *Officer Promotions and Selective Continuation*.

15.1.9.6.  Are on the vulnerable movers list (VML), or have an ASD or notification of an assignment, training, or education course for which the officer will incur an ADSC.

15.1.10.  Separating Instead of Accepting an ADSC for an assignment, training, or education course (7-Day Option).  To apply for this reason, the officer must have an ASD or be selected or nominated to attend an education or training course. **(T-1)** To qualify, an officer's requested DOS must fall on or after any existing ADSC date and must meet the criteria in DAFI 36-2110. **(T-1)** A request for separation which does not meet the eligibility requirements under this paragraph is disapproved or returned without action IAW **Table 15.2**., Rule 3.  **(T-1)**

15.1.11.  Transfer to Reserve Components Under PALACE CHASE.  To apply for this reason, the officer must meet all the criteria in **Part 4** of this publication, have been accepted by the commander of an ANG or AFR unit, have been approved to serve in the ANG or AFR unit, and have completed AF Form 1288, the original of the DAF Form 2631, and application for voluntary separation.  See **Table 15.1**., Rule 11.  **(T-1)**

15.1.12. Pregnancy.  Requests for pregnancy separation are evaluated on their individual merits and may be disapproved if the officer's separation is determined not to be in the best interest of the USAF or USSF.  Officers may apply for separation before or after childbirth.  If the request for separation occurs while pregnant, the separation date will be before childbirth if possible. **(T-1)** If the request for separation occurs after childbirth, the application must be submitted no later than 12 months after the date of childbirth, and the requested DOS can be

no more than 12 months from date of application. **(T-1)** Officers who desire to separate after childbirth must return to present for duty from leave before they can separate (i.e., must return from leave). **(T-1)**

15.1.12.1. Requests for separation for pregnancy must be supported by an AF Form 469 confirming the pregnancy. **(T-1)** If requesting to separate after childbirth, this must be supported by documentation (e.g., doctor's memo, birth certificate, or other source document) confirming the delivery date. **(T-1)**

15.1.12.2. Provide preferred DOS based on the following guidelines (See **paragraph 14.23** for extensions of active duty (AD) when needed):

15.1.12.2.1. CONUS:  If requested separation is during pregnancy, give a preferred DOS which is no earlier than 90 days, and not later than 30 days from the expected date of delivery.  If requested separation is after childbirth, give a preferred date which is no earlier than the day following return to duty from leave and no later than 12 months from the date of application. **(T-1)**

15.1.12.2.2. OCONUS:  If pregnant, give a preferred DOS prior to the 25th week of pregnancy due to travel restrictions.  After childbirth, give a preferred date which is no earlier than the day following return to duty from leave and no later than 12 months from the date of application. **(T-1)**

15.1.12.3. If within 12 months after giving birth a member accepts an assignment, the service member is no longer eligible for a childbirth separation.

15.1.12.4. Officers are not retained or extended on active duty for the sole purpose of taking convalescent or maternity leave or to attend routine follow-up medical appointments.

15.1.12.5. In some cases, pregnancy will be completed after the separation is approved but before the approved DOS.  If the pregnancy is completed:

15.1.12.5.1. By the birth of a living child, the approved discharge is executed as soon as the member is medically qualified for separation.  An officer will not be retained for the purpose of taking convalescent or maternity leave or for purposes of attending routine follow-up medical appointments. **(T-1)**

15.1.12.5.2. Other than by the birth of a living child, the officer may separate as soon as the service member is medically qualified for separation or request withdrawal of the application.

15.1.13. Selective Service System.  An ANG or AFR officer assigned to the Selective Service System may request release from EAD.

15.1.14. Early Release for End of Year Holidays.  An officer with an approved DOS on or after the 9th of December and on or before the 8th of the following January may request early separation between these dates.  An officer may not request a DOS before completion of an ADSC(s) which is subject to recoupment under **paragraph 14.6** or when approved for separation under the PALACE CHASE program.

15.1.15.  Release from Limited Active Duty Tour.  An officer is released from active duty upon completion of the limited active duty tour, unless the officer has completed the officer's MSO and requests resignation.

15.1.16.  Separation upon selection for an indeterminate (365-day) TDY – extended deployment (3-Day Option).  To apply for separation under this reason, the officer must have been selected to fulfill an extended deployment and meet the criteria in DAFI 36-2110. **(T-1)** Eligible officers must apply within 3 calendar days from official notification of the TDY or deployment. **(T-0)** Officers with an ADSC that extends beyond the completion date of the extended deployment/TDY (365 days), plus 30 days, are not eligible for separation under this provision.  A request for separation which does not meet the eligibility requirements under this paragraph is disapproved or returned without action IAW **Table 15.2**., Rule 3.

15.1.17.  Final Vows in A Religious Order.  If an officer seeks to take final vows in a religious order, include with the resignation a statement or certificate signed by the appropriate official of the religious order certifying that the applicant be relieved from any military status before proceeding further with acceptance into the religious order.

15.1.18.  Regular or Ordained Ministers.  An officer who becomes a regular or ordained minister may tender a resignation.  (See DoDI 1304.25).  The resignation must satisfactorily establish:

15.1.18.1.  The ministry is the individual's main and primary vocation **(T-1);**

15.1.18.2.  The minister's religious faith group is recognized substantially for religious purposes **(T-1);**

15.1.18.3.  The minister's standing in the faith group is recognized as that of a minister or leader **(T-1); and,**

15.1.18.4.  The minister is certified by an applicable official of the faith group to be a fully qualified member of the faith group ministry or leadership in good standing.  **(T-0)**

15.1.19.  Survivorship.  (See DoDI 1315.15.)

15.1.19.1.  Definitions.

15.1.19.1.1.  Sole Surviving Son or Daughter.  An officer who is the only surviving child in a family in which the father or mother or one or more siblings meet one of the following criteria: (**Note**:  A sole surviving son or daughter is entitled to benefits under the *Hubbard Act*.)

15.1.19.1.1.1.  Have been killed in action or have died when serving in the US Armed Forces from wounds, accident, or disease. **(T-0)**

15.1.19.1.1.2.  Are in a captured or missing-in-action status.  **(T-0)**

15.1.19.1.1.3.  Have a permanent 100 percent service-related disability (including 100 percent mental disability), as determined by the VA or one of the Military Services and are not gainfully employed because of the disability.  **(T-0)**

15.1.19.1.2.  Surviving Son or Daughter.  An officer in a family in which the father or mother or one or more siblings meet at least one of the criteria in **paragraph 15.19.1.1.1.**, **paragraph 15.1.19.1.1.2**, or **paragraph 15.1.19.1.1.3**.

15.1.19.2.  Discharge an officer who becomes a sole surviving son or daughter (**paragraph 15.1.19.1.1**) after commissioning on request, unless any of the following conditions apply:

15.1.19.2.1.  The officer has waived the right to discharge either automatically (**paragraph 15.1.19.3**) or in writing.

15.1.19.2.2.  The officer is under criminal investigation or has court-martial charges pending against the service member, has been convicted by court-martial with appellate review in process, or is serving a sentence to confinement (or is otherwise undergoing punishment) imposed by court-martial.  Process the request for administrative discharge, but do not discharge until the court-martial action is complete.

15.1.19.2.3.  The officer is being processed for involuntary separation for cause.

15.1.19.2.4.  The death, disability, hospitalization, or captured- or missing-in-action status resulted from the intentional misconduct or willful neglect of the parent or sibling or was incurred during a period of unauthorized absence.

15.1.19.3.  If the officer is told of the **paragraph 15.1.19** criteria and then extends their period of active service in any way, they waive the right to this discharge provision.

15.1.19.4.  A member who has waived the member's right to separation as provided in **paragraph 15.1.19.2.1** and **paragraph 15.1.19.3** may request reinstatement of that status at any time.  Consider requests for reinstatement on a case-by-case basis for merit.

15.1.20.  Miscellaneous Reasons.  An officer who does not qualify for voluntary separation for any other reason under **paragraph 15.1** may apply for separation based on unique or unusual reasons.  The officer provides evidence demonstrating the reasons are unique or unusual and that their separation is not contrary to the best interest of the USAF or USSF.  The requested DOS is no earlier than 6 months from the date of application.  The officer may request a waiver (with justification) to obtain a DOS earlier than 6 months from the date of application.  The separation authority determines whether separation is in the best interest of the USAF or USSF and, if approved, the DOS.

*Section 15B—Voluntary Separation General Information.*

**15.2.  Commander or Supervisor Counseling.**  An officer wishing to separate for any of the reasons under **paragraph 15.1** must first meet with the member's immediate commander or supervisor.  **(T-2)** The commander or supervisor counsels the officer on the benefits of an USAF or USSF career and ensures the officer has all the information needed to make an informed decision.  If the officer decides to separate, the commander or supervisor helps schedule the separation, considering the officer's preferences and the interests of the USAF or USSF, and documents the counseling on the officer's separation application.  **(T-1)**

**15.3.  How Officers Apply for Voluntary Separation (and Other DOS Adjustments).**

15.3.1.  Unless an exception is granted by AFPC Separations, officers apply using the appropriate on-line application.

15.3.2.  When an exception to applying on-line has been authorized by AFPC Separations, officers utilize DAF Form 780, *Officer Separation Actions*.  The MPF creates a case in the Case Management System and forwards to AFPC/DPMSSR.

15.3.3.  The Officer requesting separation signs the recoupment statement at **Attachment 18** as applicable.  (Reference **paragraph 14.6** for additional guidance regarding recoupment.)

**15.4.  Indorsing Applications.**

15.4.1.  The immediate commander or supervisor indorses all applications for voluntary separation.  If the officer is serving with another branch of service and the immediate commander or supervisor signing the officer's separation application is not an officer in the rank of O-6 or above in the same service, an officer in the rank of O-6 or above in the officer's same service's reporting chain of command must indorse the separation application.  **(T-2)**

15.4.2.  The wing or delta commander (or equivalent) in the officer's chain of command indorses all voluntary separation requests with the exception of: (**Note**:  A wing or delta commander equivalent is an officer in the rank of O-6 or above who is a senior rater in the officer's chain of command.)  The wing or delta commander (or equivalent) also indorses requests for acceleration when the requested DOS requires a waiver to an ADSC or request for acceleration, extension, or withdrawal of a DOS in which the wing or delta commander indorsed the initial request for separation.

15.4.2.1.  Completion of required service under **paragraph 15.1.2**.,

15.4.2.2.  Separating instead of acquiring an ADSC for an assignment,

15.4.2.3.  Training or education course under **paragraph 15.1.10**, and

15.4.2.4.  Separation upon selection for an indeterminate TDY/extended deployment under **paragraph 15.1.16**.

15.4.3.  Indorsing officials provide comments or rationale when recommending disapproval of an application.

15.4.4.  Indorsing officials may recommend an alternate DOS in order to fulfill mission critical requirements or deployments of less than 365 days.

**15.5.  Limitations on Separation Applications.**

15.5.1.  Officers with an ASD or notified of an assignment, training, or education course and who are not eligible under **paragraph 15.1.10**., Separating Instead of Accepting an ADSC for an assignment, training, or education course (7-Day Option) or Separation upon selection for an indeterminate TDY/extended deployment (3-Day Option) under **paragraph 15.1.16**, may apply for separation:

15.5.1.1.  For hardship reasons.

15.5.1.2.  As a conscientious objector.

15.5.2.  Officers may not apply for any voluntary reason under **Table 15.1** when their commanders notify them, verbally or in writing, that they are under investigation, undergoing involuntary discharge action or punitive action under the UCMJ, or when court-martial action is under review or appeal.

15.5.3.  An officer in PCS status may apply to separate for hardship only, unless otherwise directed by AFPC/DP3SA.  Application for separation is made through the losing command.

15.5.4. An officer temporarily in CONUS from overseas may apply to separate only for hardship.  Application for separation is made through the losing command.

**15.6.  Effective DOS.**  An officer may request a specific or preferred DOS.  The effective date is normally the date requested but the officer may be offered an earlier or later DOS depending on the needs of the AF.  If the reason for separation is for hardship, the DOS is no later than 30 days from the approval date.  When the reason for separation request is in lieu of accepting an ADSC for an assignment, training, or education course, then the requested effective date is set following guidance provided in DAFI 36-2110.  Reference **Table 15.1** and **Table 15.2** of this publication for additional guidance regarding requested dates of separation and guidance regarding approval, disapproval, or suspension of a requested or approved DOS.

**15.7.  Deferring Processing of Applications.** AFPC Separations processes applications submitted 12 months or less before the requested DOS and normally defers processing an application submitted more than 12 months before the requested DOS unless the reason for separation is approved under **paragraph 15.1.10**.

**15.8.  Disapproving Applications.** The SecAF, or designee, may disapprove a request for separation based on the needs of the USAF or USSF or when the officer is pending investigation or disciplinary action.  Some nonexclusive examples of reasons for disapproval are listed in **Table 15.2**.

**15.9.  Effect of MSO.**

15.9.1. An MSO is an 8-year service obligation incurred upon initial entry into the armed forces.  It is distinct from, and usually longer than, an ADSC, which may be incurred at commissioning and for other reasons throughout an officer's career (PCS, promotion, training, etc.).  An MSO may be fulfilled by active duty or non-EAD (reserve) service, or a combination of both.  See AFMAN 36-2100, for more information regarding MSOs.  The SecAF may waive an unfulfilled MSO when it is in the best interest of the USAF or USSF.

15.9.2. Regular Officers.  A regular officer separates from the service after the officer's TOR has been accepted.  If the officer has an unfulfilled MSO, the resignation is contingent upon appointment in the reserve.  If the officer has no unfulfilled MSO, the officer may request a reserve commission if desired.  Officers who have completed their MSO and desire a reserve commission should contact their in-service recruiter upon application for separation for guidance on obtaining a reserve commission.  See **Table 15.3** for exceptions.

15.9.3. Air National Guard Officers.  An ANG officer separates from the service after the officer's TOR or conditional release has been accepted.  If the officer has an unfulfilled MSO/ADSC, the release is contingent upon transfer to the inactive reserves pending completion of remaining MSO/ADSC.  Officers who have completed their MSO/ADSC and desire a reserve assignment should contact a reserve in-service recruiter for transfer requirements. Upon further application for separation where MSO/ADSC has been completed and a TOR has occurred without request to transfer to the IRR/ISLRS (ARPC), the officer is fully separated from service.

***Section 15C—Requesting Withdrawal, Acceleration or Extension of an Approved or Pending DOS.***

**15.10.  Requesting Withdrawal of Separation Applications.**

15.10.1.  An officer may request withdrawal:

15.10.1.1.  Of a pending separation application by giving reasons for the withdrawal.

15.10.1.2.  Of an approved separation application only by showing the withdrawal would alleviate unforeseen undue hardship or would serve the best interest of the USAF or USSF.

15.10.1.3.  Provided the request for withdrawal is received by AFPC Separations before the DOS takes effect by giving reasons for the withdrawal and certifying that the officer has not used the separation orders to travel, move family members, ship household goods, or receive advance travel entitlements.

15.10.2.  Withdrawal requests are processed through the same channels through which the application for separation was processed.  (See **paragraph 15.4**.**)**

15.10.3.  Additional Guidance.  There is no guarantee the withdrawal request will be approved. The final decision is based on the justified hardship or best interests of the USAF or USSF. Although an officer may request withdrawal of an approved or pending application for separation, the officer may not submit dual applications unless specifically authorized in this publication.  **Example:**  An officer who requests withdrawal of an approved or pending application for separation may not submit a second application until notified by AFPC Separations of a decision to approve/disapprove the first request for withdrawal of an approved separation.

15.10.3.1.  There are special restrictions which apply to officers approved for separation under **paragraph 15.1.10**, and who subsequently request and are approved for withdrawal of their DOS.  (Reference AFMAN 36-2100.)

15.10.3.2.  The SecAF, or designee, may unilaterally withdraw an approved DOS when the reason for separation no longer exists.  Reference **Table 15.2** of this publication for additional reasons an approved DOS may be disapproved, revoked, or suspended.

**15.11.  Accelerating an Approved Separation Date.**  An officer may request acceleration of an approved DOS through the same channels in which the initial application for separation was processed with supporting documentation as to why it is in the best interest of the USAF or USSF to accelerate the DOS.  (See **paragraph 15.4**., Indorsing Applications, for when wing or delta commander indorsement is required).  The request for acceleration must be received by AFPC Separations no later than 60 days before the projected terminal leave start date. **(T-1)** If the requested DOS is before completion of the longest ADSC, then justification for waiver of the ADSC is submitted with the request.  **(T-1)**

**15.12.  Extending an Approved Separation Date.**  Extension applications based on hardship or best interest of the USAF or USSF are accepted at any time (normally no later than 30 days prior to DOS), but it must be received by AFPC Separations before the member's approved DOS. **(T-1)**

15.12.1.  An officer may request an extension of an approved separation through the same channels in which the application for separation was processed.  (See **paragraph 15.4**.).  In no instance should an officer be retained beyond their DOS pending coordination of an extension

request at base level, unless specifically authorized by AFPC/DP3SA.  Failure of an officer to request an extension in a timely manner may result in the officer's application being disapproved or returned without action.

15.12.2.  Applications submitted under hardship that do not meet hardship criteria or lack supporting documentation result in immediate disapproval.  The maximum extension period is 180 days from the original DOS, regardless of the number of extensions requested.  Request for extension beyond 180 days from the original DOS is disapproved or returned without action.  If the member wishes to extend an approved DOS beyond 180 days, the officer must request withdrawal of the approved DOS (see **paragraph 15.10**). **(T-1)**

15.12.3.  Officers approved for a DOS extension regardless of the length of the extension and whose DOS was established under **paragraph 15.1.10**, are subject to special withdrawal provision as outlined in AFMAN 36-2100.  **(T-1)**

**Table 15.1.  Resignation or Request for Release from Active Duty.**

| RULE | A  If the officer | B  And | C  then the service member may | D  to be effective (See **Note 1**) |
|---|---|---|---|---|
| 1 | desires hardship discharge | can establish hardship under **paragraph 15.1.1** | tender a resignation | NLT 30 days from the date of SecAF approval. |
| 2 | desires discharge on completion of ADSC | has completed or will complete all outstanding ADSCs | tender a resignation | Normally on date desired (see **Notes 1** and **2**). |
| 3 | desires discharge to enlist in the regular component (DAFMAN 36-2032) for the purpose of retirement in enlisted grade | | tender a resignation | 3 duty days prior to the first day of retirement month. |
| 4 | desires separation under a SecAF-approved early separation program | meets all the conditions specified for such program | tender a resignation | on the date requested by officer, consistent with program criteria. |
| 5 | is a chaplain | the ecclesiastical endorsing agency has withdrawn its indorsement and attendant factors do not warrant initiation of involuntary separation under **Chapter 16** or **Chapter 17** | tender a resignation | As soon as possible (see **Note 3**). |
| 6 | is a medical officer | has an approved re-deferment application | tender a resignation contingent on accepting a reserve appointment | no earlier than 30 days before entry into the re-deferment program. |
| 7 | desires discharge to | meets all the conditions | tender a resignation | no earlier than 90 |

|   | | | |
|---|---|---|---|
| | attend school | of **paragraph 15.1.7** | | calendar days before any previously established DOS or the date on which the officer fulfills the latest ADSC, and the DOS will be no earlier than 30 days before the class start date. |
| 8 | desires discharge as a conscientious objector | has not departed the duty station on PCS as specified in **Chapter 29** | tender a resignation | As soon as possible upon approval of Conscientious Objector application. (See **Note 3**). |
| 9 | desires transfer to another armed service | meets the criteria in **paragraph 15.1.9** | tender a resignation | contingent upon and effective 1 day prior to appointment in the gaining service. |
| 10 | desires separation instead of accepting an ADSC for an assignment, training, or education course | meets the 7-day option criteria in DAFI 36-2110 | tender a resignation | normally on a date established following guidance provided in DAFI 36-2110. |
| 11 | desires transfer to ANG or AFR Unit (PALACE CHASE/PALACE FRONT) | meets the conditions in **Part 4** | tender a resignation contingent on accepting a reserve appointment | on date desired which is usually 3 to 4 months from application date. |
| 12 | desires separation for pregnancy | meets the conditions in **paragraph 15.1.12** | tender a resignation | on a date established IAW **paragraph 15.1.12.2** |
| 13 | is a reserve officer serving on active duty with the Selective Service System | | request release from EAD | no earlier than 180 days after application. |
| 14 | desires discharge for miscellaneous reasons that do not meet the other criteria outlined in this Table | meets the conditions in **paragraph 15.1.20** | tender a resignation | on date desired, but normally not before 6 months from date of application (See **Note 1**). |

**DAFI36-3211  24 JUNE 2022** **281**

| 15 | desires release upon completion of a limited active duty tour | has reached completion of the limited tour | request release (ANG officers) or tender a resignation (reserve officers) | on the date of completion of limited tour. |
|---|---|---|---|---|
| 16 | desires separation instead of accepting an extended deployment | Meets the 3-day option criteria in DAFI 36-2110 | tender a resignation | on a date established following guidance provided in DAFI 36-2110. |
| 17 | desires early release for end of year holidays | meets the conditions in **paragraph 15.1.14** | tender a resignation | on date desired between 9 Dec and 8 Jan. |

**Notes**:
1.  The actual DOS is determined by the best interests of the USAF or USSF, and may be before, on, or after the date requested by the officer.  AFR officers assigned to the Selective Service System normally receive the DOS requested.  In case of hardship separation, the officer requests an effective DOS of "ASAP"; if approved, the officer is separated NLT 30 days from the approval date.
2.  Request DOS as follows:
a. Serving overseas.  If otherwise eligible and the officer does not have an ASD, the DOS is the ADSC for the tour.  If the officer has an ASD based on a DEROS as explained in DAFI 36-2110 even though they may not have been selected or notified of an assignment, then the requested DOS is set following guidance provided in DAFI 36-2110.
b. Serving CONUS maximum stabilized tour (AACs 50 or 46).  DOS is on or after the tour completion date. If officer has an ASD based on tour completion as explained in DAFI 36-2110 even though they may not have been selected or notified of an assignment, then requested DOS is set following guidance provided in DAFI 36-2110.
c. All others.  DOS is on or after the ADSC date and no earlier than 6 months from the date of application. The officer may request a waiver to obtain a DOS earlier than 6 months from the date of application.
3.  Separation will be no later than 10 calendar days if assigned within the CONUS or NLT 20 days if assigned overseas.

**Table 15.2.  Approval, Disapproval, Suspension, or Revocation of a Requested or Approved DOS Guidance.**

| | A | B |
|---|---|---|
| **RULE** | **If the officer** | **then the application** |
| 1 | has no unfulfilled ADSC and application is submitted under **paragraph 15.1.2, paragraph 15.1.10** or **paragraph 15.1.16** | is normally approved to be effective on the date requested if 6 months application lead time is given (see **Note 1**). |
| 2 | has an unfulfilled ADSC and application is submitted for any reason in **Chapter 15** except **paragraph 15.1.5**, Withdrawal of Ecclesiastical Indorsement | may be approved or disapproved based on the best interests of the USAF or USSF and/or whether the request for separation meets the criteria under which the request was submitted (see **Note 1** and **2**). |

| | | |
|---|---|---|
| 3 | does not meet the eligibility requirements under which the separation request was submitted | may be disapproved or returned without action. |
| 4 | is under charges or investigation | may result in the disapproval of a requested DOS or the revocation of an approved DOS. |
| 5 | is awaiting trial or the result of trial | |
| 6 | is absent without leave | |
| 7 | is absent in the hands of civil authorities | may result in the disapproval of a requested DOS or the revocation of an approved DOS. |
| 8 | has a mental disease or defect | |
| 9 | is in default with respect to public property or public funds | |
| 10 | is serving under an unsuspended sentence to dismissal | |
| 11 | separation for cause under this DAFI has been initiated | |
| 12 | after or during the approval process of an application, the discovery of an ADSC or the voluntary acceptance of an additional ADSC resulting in a commitment exceeding the approved DOS, or an approved contingent release for interservice transfer | |
| 13 | submits an application in time of war or when war is imminent, or in a period of emergency declared by the President or Congress | if otherwise eligible for separation, application may be held in abeyance or approved and suspended. |
| **Notes**: 1.  The DOS may be later than requested or disapproved if the officer's retention is required to fulfill a critical mission need or deployment.  **Example**:  An officer selected for deployment of less than 181 days on or before their request for separation is generally required to fulfill the deployment tasking regardless of the requested DOS. <br> 2.  Applications submitted under **paragraph 15.1.5** are normally approved for an ASAP DOS unless involuntary separation under **Chapter 16** or **Chapter 17**, is more appropriate. | | |

**Table 15.3.  Effect of Fulfilled or Unfulfilled MSO on Resignations.**

| A | B | C | D |
|---|---|---|---|
| **If officer is** | **and has** | **and reason for separation is** | **then the officer may** |
| Regular | not fulfilled the MSO | instead of accepting an ADSC for an assignment, training, or education course per DAFI 36-2110 (7-day option) | tender a resignation on the condition that the officer accepts an appointment in the reserve of the AF. |
|  |  | to attend school |  |
|  |  | miscellaneous |  |
|  |  | PALACE CHASE |  |
|  | fulfilled the MSO |  |  |
|  |  | completion of ADSC | tender a resignation and may request appointment in the reserve of the AF if desired (see **Note 1**). |
|  |  | to attend school |  |
|  |  | instead of accepting an ADSC for an assignment, training, or education course per DAFI 36-2110 |  |
|  |  | miscellaneous |  |
|  |  | pregnancy |  |
| Regular | not fulfilled the MSO | hardship or miscellaneous reasons instead of hardship (see **Note 2**) | tender a resignation (see **Note 3**). |
|  |  | serving under suspended sentence to dismissal |  |
|  |  | in lieu of involuntary discharge action under this publication or for the good of the service (in lieu of court-martial) under DAFI 51-201 |  |
|  |  | pregnancy |  |
|  |  | conscientious objection |  |
|  |  | interservice transfer |  |
|  |  | withdrawal of ecclesiastical indorsement |  |

**Notes**:
1. May accept a reserve appointment if tendered.
2. If officer does not qualify for discharge based on hardship, but resigns instead for miscellaneous reasons, the officer does not qualify for a reserve appointment and any remaining MSO is waived.
3. An officer in these categories does not qualify to receive a reserve appointment. The officer is discharged, and any remaining MSO is waived. **Exception**: An officer separating for pregnancy qualifies for a reserve appointment, but any remaining MSO is waived if the officer does not wish to transfer to the reserve.

*Section 15D—Officer Resignations for the Reserve and ANG.*

**15.13.  General Instructions.** The right of an officer to resign is subject to certain restrictions. This section tells how to process resignations submitted by an officer in the AFR or ANG. It constitutes the authority for effecting the officer's discharge or separation. The officer must have an effective date no earlier than 6 months from the date the member tenders their resignation (See AFMAN 36-2100 for exceptions). **(T-1)** Approval authority for waiver of the 6-month requirement

is the wing commander or equivalent for the unit program, AFRC/CC (through HQ RIO & ARPC/CC) for the Individual Reservist (IR) program, and TAG or CG for ANG cases.

**15.14.  Approving or Disapproving Applications.**

15.14.1.  An Honorable Discharge is given when an officer properly submits a resignation for any of the reasons listed in **paragraph 15.1., paragraph 15.16.5.1,** and **paragraph 15.16.5.2**, and meets the criteria listed therein, unless:

15.14.1.1.  There are valid reasons for retaining an officer in the military service.

15.14.1.2.  Adequate grounds exist to initiate involuntary separation against the officer.

15.14.1.3.  SecAF, through the SecAF, or designee (or TAG or CG for ANG members with regard to state status), determines the resignation is not acceptable.

15.14.2.  A resignation may be disapproved for the following reasons:

15.14.2.1.  When the officer:

15.14.2.1.1.  Is under investigation.

15.14.2.1.2.  Is under sentence by civilian court.

15.14.2.1.3.  Is not mentally capable of tendering a legal document such as a resignation.

15.14.2.1.4.  Is in default with respect to public property or funds

15.14.2.1.5.  Is under consideration for discharge for cause.

15.14.2.1.6.  Has an unfulfilled MSO, contract, ANG Service Commitment, or reserve service commitment. Guidance on ANG Service commitments is provided in AFMAN 36-2100.

15.14.2.2.  In time of war, when war is imminent, or in a period of national emergency as proclaimed by the President or declared by Congress.

15.14.2.3.  Guidance on any other instance when the best interest of the service requires retention or when Stop-Loss provisions have been implemented is provided in 10 USC § 12305.

15.14.3.  Preparing and Forwarding Resignations.

15.14.3.1.  Officers tendering their resignation should do so using a memorandum format, including a concise statement of reasons for requesting discharge.  All relevant and/or required documentation should be attached to the officer's memorandum.

15.14.3.2.  Resignations are submitted to the officer's unit commander, unless the member does not have a participating reserve assignment, in which case the resignation is sent to ARPC/DPTTS.

15.14.3.3.  The unit commander completes the first indorsement.  If the commander recommends disapproval, the reason for doing so is stated.  The indorsement and any recommendation are sent through the wing commander (or equivalent) and numbered Air Force commander to HQ AFRC/A1K (traditional Reserve members), or through the HQ RIO detachment commander to HQ AFRC/A1K (category B reservists) or through command channels to Joint Forces Headquarters – ANG (JFHQ-ANG) (ANG members).

15.14.3.4.  (AFR Only)  Forward cases requiring SecAF approval with a further indorsement from AFRC/CC or ARPC/CC, as appropriate.  The indorsement includes a statement recommending approval or disapproval, the associated reasons, as well as a recommendation concerning service characterization.

15.14.4.  Withdrawing a Resignation.

15.14.4.1.  At any time after submitting a TOR, but before it is accepted by the approval authority, an officer may request that the resignation be withdrawn.  Such requests state the reason(s) for the withdrawal and are submitted through the same command channels as the TOR.  Endorsing commanders may comment on the withdrawal.

15.14.4.2.  The commander who possesses the submitted TOR and receives a request for withdrawal before forwarding the resignation, may approve the withdrawal and return all correspondence to the officer.  Such action terminates further processing of the resignation.

15.14.4.3.  Return any disapproved request for withdrawal with the TOR through the same channels.

15.14.4.3.1.  If the commander approving the withdrawal possesses the submitted TOR, return the TOR and request for withdrawal to the officer.

15.14.4.3.2.  If the commander approving the withdrawal has previously forwarded the TOR, forward the recommendation to approve through the same command channels as the TOR.

15.14.4.4.  Where a withdrawal is submitted after the TOR has been approved:

15.14.4.4.1.  The appropriate approval authority (**Table A19.1**) may approve the withdrawal where the stated basis for the TOR falls within the purview of paragraphs **15.16.2** and **15.16.3** and the discharge or separation action has not become final; or

15.14.4.4.2.  The SecAF, or designee, may approve where the stated basis for the TOR was under **paragraph 15.16.2.**, Resignation in Lieu of Action Under **Section 18D** and/or **Section 18E**.

**15.15.  Resubmitting a TOR.**

15.15.1.  An officer may resubmit a disapproved TOR only upon a showing of a material change in circumstances.  Evidence of the material change accompanies the resubmitted TOR.  Do not delay discharge processing for further action on the resubmitted TOR.

15.15.2.  Forward a TOR resubmitted after an administrative discharge board has rendered its findings and recommendations along with the board results and commander's recommendation to the SecAF, or designee, for final decision.

15.15.3.  Final Approval Authority.  Except as indicated in **Table A19.1,** the discharge authority may approve and take final action on resignations tendered under this section.

**15.16.  Permissible Basis for Resignation.**

15.16.1.  Resignations Resulting in Honorable Discharge.  Separation provisions are listed in **paragraph 15.1** and do not apply to officers who are pending discharge under **Section 18D** and/or **Section 18E**.

15.16.2.  Resignation Resulting in General Discharge.  When the separation or discharge authority does not accept a resignation tendered by an officer because the officer's records indicate that the officer is not entitled to an Honorable discharge, the officer may tender a resignation under this paragraph with the understanding that, if the resignation is accepted, the officer receives an Under Honorable Conditions (General) Discharge.

15.16.3.  Resignation in Lieu of Action Under **Section 18D** and/or **Section 18E**.  Officers who receive a SCNM advising of the initiation of involuntary separation or discharge proceedings may tender their resignation.  However, both the SCNM and TOR are processed to the SecAF, or designee, for action.  An officer whose resignation is accepted normally receives the characterization of service recommended in the SCNM.

15.16.4.  Resignation for the Good of the Service.  Officers may submit a resignation for the good of the service.  Guidance on officer resignations is provided in DAFI 51-201.

15.16.5.  Insufficient Retainability for Mobilization (AFR Only) or Ineligibility for Worldwide Deployment.

15.16.5.1.  Officers who request exemption from mobilization (unless retired) tender their resignations IAW this instruction.  Exemption requests and discharges are processed simultaneously.

15.16.5.2.  A member who is not qualified or eligible for worldwide deployment should be processed following guidance provided in AFI 36-3212.

*Section 15E—Transfer of Non-Extended Active Duty (Non-EAD) Members to a National Guard or Reserve Component of Another Uniformed Service or Public Health Service.*

**15.17.  Applying for Conditional Release.**

15.17.1.  Individuals may apply for transfer to a reserve component of another uniformed service.  Guidance on applying for a transfer is provided in DAFMAN 36-2032.  Members obtain a statement from the uniformed service concerned outlining the professional or technical

background required for the position, when applicable, and evidence that either of the following conditions apply:

15.17.1.1.  The member is enrolled in an officer training program of the gaining uniformed service.

15.17.1.2.  The gaining uniformed service has a specific ready reserve vacancy for which the member is qualified within a reasonable distance of the member's domicile or place of business.

15.17.2.  The member applies for a conditional release, through command channels, to the wing commander or equivalent for unit reservists, the HQ RIO detachment commander for individual reservists, or the discharge authority listed in **Table A19.1**.  The member's request includes all information necessary to process the application and a statement from the member indicating whether the member has applied for a ready reserve unit or individual reserve program position, that the member accepts an assignment to the ready reserve with the gaining uniformed service if the transfer is approved, and that the member consents to the transfer if the gaining uniformed service initiated the request.

15.17.3. Members use DD Form 368 when seeking transfer to any reserve or regular component, with the exception of those requesting transfer to the AFR.  In this case an AF Form 1288 should be used.

15.17.4.  Approval and Disapproval Actions.

15.17.4.1.  Upon approval of the conditional release, the discharge authority ensures:

15.17.4.1.1.  The release is forwarded to the appropriate uniformed service with a request that a copy of the appointment or enlistment order be provided within 15 calendar days of either of those events.

15.17.4.1.2.  The MPF or HQ ARPC/DPTS separates, then transfers or discharges the member, with an effective DOS or discharge the day before the appointment or enlistment in the gaining uniformed service, upon receiving orders.

15.17.4.2.  When the wing commander (or equivalent), RIO/CC, AFRC/CC, or discharge authority IAW **Table A19.1** disapproves a request for transfer, they return the request to the applicant with an explanation of the applicant's ineligibility.

**15.18.  Transfer to the AFR Retired List.**  Transfer to the AFR retired list is not automatic except when it is a mandatory separation for service or age.  The member applies on-line using myFSS for transfer to the retired reserve.  For ANG members, upon application, the separation or discharge order will contain the following statement, "Member has applied for transfer to the AFR Retired List." **(T-1)**

## Chapter 16

### MISCELLANEOUS INVOLUNTARY SEPARATION PROVISIONS

**16.1. Miscellaneous Separation Provisions General Guidance.** This paragraph contains separations provisions based on law and DAFPD 36-32. Unless otherwise stated, the service characterization of officers separated under **Chapter 16** is Honorable. Unless waived by the SecAF, or delegated authority, officers separated under this paragraph are subject to recoupment of education assistance, special pay, or bonus money received. Refer to **paragraph 14.6** for additional guidance regarding recoupment. (**Note**: Review **Chapter 14** for rules and procedures applicable to all separation actions.)

**16.2. Officers Who Are Not Selected for Promotion.**

16.2.1. The DOS for an officer not selected for promotion for the second time (one time in and one time above the primary zone) to the rank of O-3, O-4, or O-5, subject to restrictions of Title 10 United States Code Section 632, *Effect of Failure of Selection for Promotion: Captains and Majors of the Army, Air Force, and Marine Corps and Lieutenants and Lieutenant Commanders of the Navy,* normally falls no later than the first day of the seventh calendar month after the month in which the report of the board that considered the officer is approved. **(T-0)** The officer may request an earlier DOS with the concurrence of the officer's commander upon public release of the board results by submitting a memorandum indorsed by their commander to AFPC/DPMSSR. **(T-0)** Officers who had a previously approved voluntary separation will have their DOS rolled back to match the MSD if applicable (i.e., if the voluntary DOS exceeds the MSD). **(T-0)**

16.2.2. If, on the date specified in **paragraph 16.2.1**, the officer is within 2 years of qualifying for retirement, the officer is retained on active duty until qualified for retirement and then retired, unless sooner discharged under some other provision of law. **(T-0)**

16.2.3. An O-3 or O-4 twice non-selected for promotion remains on active duty if the officer is selected for, and accepts, selective continuation on active duty. **(T-0)**

16.2.4. Commanders must be especially attentive to the need for expeditious processing of show cause discharge actions on officers who have been, or can reasonably be expected to be, twice non-selected for promotion as the separation date is statutorily fixed for two-time non-selects. **(T-1)**

**16.3. O-1s Found Not Qualified for Promotion (NQP).** Discharges based on NQP actions under DAFI 36-2501*,* are effectuated under this publication. Discharge characterization will be Honorable. **(T-0)** When the preponderance of the evidence shows an officer in the rank of O-1 is not qualified to perform the duties of a higher grade, the commander may recommend, in writing, that the SecAF find the member NQP. (This does not apply to ANG; for ANG cases see **paragraph 16.13**.)

16.3.1. The commander informs the member of the NQP recommendation in writing or orally before the promotion effective date. Oral notification is sufficient to automatically delay promotion, but is followed by written notification as soon as practicable.

16.3.2. The commander may authorize members a period of time to overcome the basis for the NQP, by improving their performance before separation action is initiated

16.3.3.  Once discharge is recommended, the SecAF may discharge the officer with less than 6 years commissioned service in an active status or after being found NQP.  If not discharged sooner, they are discharged at the end of the 18-month period beginning on the date on which the officer was first found not qualified for promotion.

**16.4.  Officers Who Are Not Continuing on Active Duty.**  The DOS for an officer who declines further continuation or is not selected for further continuation is the date on which the officer's current continuation period ends or the DOS as established in **paragraph 16.2** above for officers not offered continuation.  The officer's DOS is established by AFPC Separations.

**16.5.  Officers Who Reach the Age Limit or Who Have Reached Their Maximum Years of Commissioned Service or Service Based on Grade.**  USAF General Officer Management Office (AF/A1LG), USSF General Officer Management Office (SF/S1LG), USAF Reserve Senior Leader Management AF/REG, USAF Colonels' Group (AF/A1LO), USSF Colonels Group (SF/S1LO), and AFPC/DPMSSR monitor mandatory DOSs for officers resulting from age, maximum years of service or service based on grade, and projects officers for separation if the officer fails to apply for retirement when eligible.  The DOS is normally projected within 90 days of the officer's established DOS if the officer fails to apply for separation or retirement when eligible.

**16.6.  Strength or Force Management Adjustments.**  The SecAF may restructure the officer force by directing officer strength adjustments.  AF/A1, SF/S1, AFRC/A1, and AFPC will issue specific instructions governing the eligibility criteria and release procedures for officers subject to strength adjustments.

**16.7.  Officers Serving with the Selective Service System.**

16.7.1.  The Director, Selective Service System:

16.7.1.1.  Recommends the release of an officer assigned to the Selective Service System.

16.7.1.2.  Sends the recommendation to AFPC/DPMSSR.

16.7.2.  The officer is scheduled for a DOS no earlier than 180 calendar days after receiving separation instructions from AFPC Separations.

16.7.3.  The officer and the Selective Service System director may agree to an earlier release date.

**16.8.  Chaplains and Chaplain Candidates.**

16.8.1.  Loss of Ecclesiastical Indorsements.  A chaplain whose ecclesiastical indorsement is withdrawn by the chaplain's endorsing agency is no longer eligible to serve in the capacity of a chaplain.  When attendant factors do not warrant court-martial or involuntary separation action under **Chapter 19**, for reasons specified in **Chapter 18** of this publication, then separation is taken under this paragraph or **paragraph 15.1.5**.  DoDI 1304.28, *The Appointment and Service of Chaplains*, contains procedures to notify the member of their rights. (**Note**:  For ANG and reserve:  Discharge pursuant to this paragraph does not preclude an individual's reappointment as a chaplain in the reserve program should an indorsement be conferred at a later date.)

16.8.2.  (Chaplain Candidates Only) Discharge a chaplain candidate who:

16.8.2.1.  Fails to qualify as a chaplain, or

16.8.2.2.  Does not receive ecclesiastical endorsement; or

16.8.2.3.  Fails to apply for reappointment; or

16.8.2.4.  Refuses to accept an appointment with designation as chaplain

16.8.3.  The office of the Chief of Chaplains notifies AFPC/DPMN that the chaplain's ecclesiastical indorsement has been withdrawn and provides a copy of the formal notice of withdrawal.  Prior to forwarding the written notice, the office of the Chief of Chaplains will notify the officer of the following rights. Guidance on the following rights is provided in DoDI 1304.28:

16.8.3.1.  Seek another ecclesiastical indorsement within 60 calendar days unless the notifying commander approves an extension based on good cause shown.  **(T-0)**

16.8.3.2.  Apply for transfer to the line career field or any non-chaplain competitive category in which qualified, with the understanding that member would be discharged voluntarily as a chaplain on 1 day and appointed to another competitive category of the AF in non-chaplain duties on the next day.  Transfer is subject to acceptance by another career field.  **(T-0)**

16.8.3.3.  If eligible, apply for voluntary retirement.  **(T-0)**

16.8.3.4.  Tender a voluntary resignation with the understanding that acceptance of such resignation results in Honorable discharge and disqualification of entitlement to separation pay.  ARC Only:  If the member submits a resignation, then the case is processed under this publication **Table A19.1.**, Rule 16.  **(T-0)**

16.8.4.  AFPC/DPMN, on formal written notice from the office of the Chief of Chaplains, advises AFPC/DPMSSR that the chaplain's ecclesiastical indorsement has been withdrawn and provides a copy of the formal notice of withdrawal.  Upon receipt of the withdrawal notice, AFPC Separations:

16.8.4.1.  Forwards the notice to the appropriate MPF commander.

16.8.4.2.  Establishes controls to ensure that actions resulting from processing under this paragraph are completed as expeditiously as possible.

16.8.5.  Notify the Chaplain.  After receiving the official notice, the chaplain's ecclesiastical indorsement has been withdrawn, the wing, base or comparable level commander notifies the chaplain in writing that:

16.8.5.1.  Involuntary discharge action under this publication is being started because the ecclesiastical endorsing agency has withdrawn the chaplain's indorsement.

16.8.5.2.  The member has a right to consult with military counsel.  Civilian counsel may be obtained at the member's expense.

16.8.5.3.  The member replies to this notice of intent to discharge within 5 workdays and the reply indicates whether or not the member intends to take one of the actions listed in **paragraph 16.8.3.1.**, **paragraph 16.8.3.2.**, **paragraph 16.8.3.3**, and **paragraph 16.8.3.4** above.

16.8.5.4.  If the member intends to take any of the actions listed above, the request for the intended action is submitted to the appropriate authorities within 10 workdays of replying

to the notification of intent to discharge.  A copy of the request(s) is provided to the commander who signs this letter of notification.  If the chaplain fails to submit or provide a copy of the intended request within 10 workdays, the involuntary discharge action resumes.

16.8.5.5.  A chaplain discharge case is not entitled to a board hearing.

16.8.6.  Commander's Action.  After receiving the chaplain's reply, the wing commander or equivalent takes the following actions:

16.8.6.1.  If the chaplain does not intend to take any of the actions listed above, forward a copy of the letter of notification and the chaplain's reply to the memorandum of notification to AFPC/DPMSSR.

16.8.6.2.  If the chaplain, in reply to the notice of intent, indicates the chaplain is taking one of the actions listed above, hold the pending involuntary discharge action for receipt of a copy of the chaplain's request for the action.  After receiving a copy of the chaplain's request for other action, forward it with a copy of the letter of notification required above to AFPC/DPMSSR

16.8.6.3.  If the chaplain intends to take one or more of the actions listed above but does not provide a copy within the allotted 10 workdays, forward a copy of the letter of notification required above and the chaplain's reply to AFPC/DPMSSR.  The forwarding correspondence should include appropriate comments about the chaplain's failure to request other action within the required 10 workdays.

16.8.7.  Final Action.  AFPC Separations monitors any action requested by the chaplain under **paragraphs 16.8.3.1** through **paragraph 16.8.3.4** above.  These actions should be completed ASAP.  If such requested action is disapproved or if it remains undecided 60 calendar days after notification to the chaplain under **paragraph 16.8.2**., AFPC/DPMSSR takes appropriate actions to finalize the involuntary separation.

*Section 16A—Termination or Vacation of Appointment for the AFR and ANG.*

**16.9.  General Instructions.**  This section sets the conditions that may exist or arise authorizing the termination or vacation of an officer's appointment without administrative discharge board action.

16.9.1.  Incompatible Status.  An officer's appointment may be terminated when the officer is enlisted in or accepts an appointment as a commissioned officer in another armed force or uniformed service (including the public health service) or the regular component, reappointed in a different reserve commissioned grade, or appointed in a different reserve component which automatically vacates any appointment previously held as a reserve commissioned officer of the AF.

16.9.1.1.  An officer who applies for enlistment or appointment in another service does not jeopardize current status provided the officer obtained a conditional release from status as a reserve officer of the AF.

16.9.1.2.  Terminate the member's appointment upon receipt of written evidence of the date the member enlisted or accepted appointment from the gaining service.

16.9.1.2.1.  The effective date of the discharge is 1 day prior to the enlistment or appointment.

16.9.1.2.2.  Notify the officer of this action.

16.9.1.2.3.  Notify the gaining service if the member has an unfulfilled service obligation.

16.9.2.  This section does not apply to retired officers or to officers under orders to report for EAD or active duty for training.

### Section 16B—Involuntary Discharge for the AFR and ANG.

**16.10.  Instructions.**  Officers may be recommended for involuntarily separation or discharge for the reasons stated in this section.  Commanders may also use similar reasons when other conditions exist or arise that warrant consideration for ending an officer's military status.

**16.11.  Discharge for Position, Grade, and Age.**

16.11.1.  Discharge officers who are ineligible for transfer to the retired reserve as of the last day of the month in which they reach the age for the appropriate grade as indicated in **Table 16.1**.  This includes officers recalled or retired in an active status after transfer to the retired reserve.  The SecAF may waive this requirement.

**Table 16.1.  Discharge for Position, Rank and Age.**

| | A | B |
|---|---|---|
| R U L E | POSITION/RANK | AGE |
| 1 | Chief of the Air National Guard Bureau and Adjutant General | 66 |
| 2 | O-8 | 64 (See **Note**) |
| 3 | All Other Officers | 62 |
| **Note**: AF/RE Policy:  Unless the officer is ineligible for retirement, normally reassign reserve general officers in the rank of O-8 to ISLRS on the last day of the month in which the officer turns 64 years old.  The SecAF may waive this requirement. | | |

16.11.2.  Retention of health professionals and chaplains.  The SecAF may, with the officer's consent, retain in active status medical and dental officers, nurses, chaplains, or individuals designated as biomedical sciences officers or medical service corps officers until age 68.  SecAF may also with the officer's consent, retain medical officers beyond the age of 68 on a case-by-case basis (per Title 10 United States Code Section 14703, *Authority to Retain Chaplains and Officers in Medical Specialties until Specified Age).*  The officer initiates the request for retention and forwards it through command channels to NGB/A1, Directorate of Manpower, Personnel, Recruiting, and Services (for ANG officers) or HQ AFRC/A1 (for AFR officers), and AF/REG (for O-6s and general officers).  The request is submitted at least 6 months before the date established in this publication for the discharge of the officer.  It includes a full justification from the officer's commander that clearly supports the request and includes the following information and/or statements:

16.11.2.1.  Retention is clearly in the best interest of the ANG or AF.

16.11.2.2.  No acceptable replacement is available (proper experience and grade, geographical location, or demonstrated ability).

16.11.2.3.  Steps taken to recruit replacements and action underway to meet future manning requirements.

16.11.2.4.  Current and projected unit authorized or assigned manning, AFSC, and grade. (For ANG, State HQs indorsement includes this same information concerning the entire state.)

16.11.2.5.  (ANG ONLY).  Written request from the health professional or chaplain.

16.11.2.6.  Medical statement from servicing MTF that member is worldwide qualified and acknowledgement from the officer that they maintain worldwide medical qualification during the extension period.

16.11.3.  Educational Delay under Title 10 United States Code Section 14706, *Computation of Total Years of Service*.  Service after appointment as a commissioned officer while in a program of advanced education, to obtain the first professional degree required for appointment designation or assignment to a professional specialty, is not included in a reserve officer's years of service for purposes of computing MSD.

16.11.4.  Selective Service Age Waivers.  The Director of Selective Service may approve waivers to age 62 for those commissioned officers in active status assigned to the Selective Service System or as US Property and Fiscal Officers.

**16.12.  General Officers Who Cease to Occupy General Officer Positions.**  Discharge general officers within 30 days of when they cease to occupy a position commensurate with their grade or higher provided that the officer is:

16.12.1.  Not assigned to fill a comparable position of the same or higher grade.

16.12.2.  Ineligible for transfer to the retired reserve.

16.12.3.  Ineligible for transfer to the ISLRS, or is eligible, but fails to elect such transfer.

16.12.4.  In lieu of discharge, and upon application of a qualified officer, appoint the member to the reserve grade held before appointment to the general officer grade that made this provision applicable.  Credit the officer with the amount of service in the appointed reserve grade equal to the amount of service credited to the member in an active status in that or any higher grade.  This provision also applies to those officers who are federally recognized solely because of their appointment as an Adjutant General or Assistant Adjutant General.

16.12.5.  The SecAF may delay an officer's separation for medical reasons (i.e., completion of medical evaluation/observation or hospitalization that cannot be completed before the DOS). Guidance on separating an officer for medical reasons is provided in Title 10 United States Code Section 640, *Deferment of Retirement or Separation for Medical Reasons,* Title 10 United States Code Section 641, *Applicability of Chapter,* or Title 10 United States Code Section 14519, *Deferment of Retirement or Separation for Medical Reasons*.  A request for delay for medical evaluation/treatment that cannot be completed by the MSD should be forwarded within 60 days of the MSD.  The request should be forwarded through AF/REP for Secretarial determination.

**16.13.  O-1s NQP (ANG only).**  All other officers are separated IAW **paragraph 16.3**.  An ANG officer in the rank of O-1, whose federal recognition is withdrawn because the officer was not appointed in or promoted to the rank of O-2 by the governor or other appropriate authority of a state, is discharged.

**16.14.  Effect of Failure of Selection for Promotion.**

16.14.1.  Reserve Component O-2.  An O-2 on the RASL who fails to be selected for promotion to the next higher grade for the second time is discharged if they are not eligible for transfer to the retired reserve.  Discharge is effective on the first day of the seventh month after the month in which the report of the board that considered the officer for the second time is approved.  Expiration of Term of Obligation is not a factor in determining a member's discharge date.

16.14.2.  Reserve Component O-3.  An O-3 on the RASL who fails to be selected for promotion to the next higher grade for the second time and who has not been selected for continuation, is discharged if they are not eligible for transfer to the retired reserve.  **(T-0)** Discharge is effective on the first day of the seventh month after the month in which the report of the board that considered the officer for the second time is approved.  **(T-0)** The exception is an O-3 retained under Title 10 United States Code Section 14701(a) (2), *Selection of Officers for Continuation on the Reserve Active-status List,* for continuation.  An O-3 twice deferred can be retained if the O-3 is eligible for sanctuary. Guidance on sanctuary is provided in 10 USC § 12646.

16.14.3.  Reserve Component O-4.  An O-4 on the RASL who has failed selection for promotion to the next higher grade for the second time, if not eligible for transfer to the retired reserve, is discharged on the first day of the month after the month in which the officer completes 20 years of commissioned service.  **(T-0)** The exceptions are:

16.14.3.1.  An officer who has exceeded 20 years of commissioned service is discharged, if not eligible for transfer to the retired reserve, on the first day of the seventh month after the month in which the report of the board that considered the officer for the second time is approved.

16.14.3.2.  An officer retained under 10 USC § 14701(a)(3).

16.14.3.3.  An officer retained under 10 USC § 12646.

16.14.4.  An officer who qualifies for either regular component or reserve sanctuary following guidance provided in 10 USC § 12646 may not be released under this paragraph before the member becomes eligible without the member's consent.  **(T-0)** Officers, who as a condition of continued employment as an Air National Guard or reserve technician, are required by SecAF to maintain membership in a selected reserve unit or organization follows guidance provided in Title 10 United States Code Section 14702, *Retention on Reserve Active-status List of Certain Officers in the Grade of Major, Lieutenant Colonel, Colonel, or Brigadier General*.

**16.15.  Elimination for Length of Service.**

16.15.1.  Each officer in the rank of O-5 through O-8 is removed from the RASL for length of service IAW **Table 16.2**.  **(T-0)** (**Note**:  This provision is inapplicable to an Adjutant General and Assistant Adjutant General.)

16.15.2. The MSD for reserve officers in the rank of O-5 and above who are meeting a promotion board is not adjusted until the results of the board are released.  If selected for promotion, the officer's MSD is changed upon the effective date of the promotion.  No member will participate for pay or points after their MSD has expired. **(T-1)**

16.15.3.  For ANG only, retention beyond the MSD is authorized as follows:

16.15.3.1. Civil Service Retirement System (CSRS) Technicians.  An ANG officer employed as a military technician (MT) and whose separation is required by **paragraph 16.16.1** of this publication may be retained beyond the MSD.  The State Adjutant General may approve the retention until the CSRS technician qualifies for an immediate, unreduced civil service annuity or age 55, whichever is earlier.  A written request is submitted by the technician through the appropriate chain of command to the state human resources office (HRO).  HRO forwards the request to the State Adjutant General.  A copy of the written approval signed by TAG is forwarded to NGB/A1PP for update in MilPDS.  The request is submitted no later than 6 months before the MSD.

16.15.3.2.  Federal Employee Retirement System (FERS) Technicians.  An ANG officer employed as an MT and whose separation is required by **paragraph 16.16.1** may be retained beyond the MSD.  The state adjutant general may approve the retention until the FERS technician qualifies for an immediate, full (basic and supplement) annuity or age 57, whichever is earlier.  A written request is submitted by the technician through the appropriate chain of command to the State Human Resources Office (HRO).  HRO forwards the request to the State Adjutant General.  A copy of the written approval signed by TAG is forwarded to NGB/A1PP 16.15.3.3.  The State Adjutant General may request the retention of a CSRS or FERS technician beyond those limits established in **paragraph 16.15.3.1**. or **paragraph 16.15.3.2** by submitting a request to NGB/A1PP for approval by Chief, Air National Guard Bureau (CNGB) or the Director, Air National Guard (NGB/CF) as delegated.  CNGB or NGB/CF can approve the retention of an MT up to age 60.  The request submitted by TAG fully justifies further retention based on the needs of the ANG and not based on the personal gain or needs of the member.

16.15.4.  Guidance on delay of promotions is provided in Title 10 USC Section 14311(e), *Delay of Promotion:  Involuntary*, an officer selected for promotion to the rank of O-4, O-5, or O-6 and who is currently assigned to a lower graded billet has their MSD updated to reflect the higher grade on the promotion service date.  See DAFI 36-2110 for sanctuary provisions

16.15.5.  Guidance on Air Reserve Technicians (ART) retention is provided in 10 USC § 14702, an officer may be retained beyond the MSD, however the officer is separated on the last day of the month in which the officer attains the age of 62.  **(T-0)** Processing procedures for ART MSD extensions are outlined in AFRCI 36-201, *Air Reserve Technician (ART) Officer-Extension to Mandatory Separation Date (MSD)*.

16.15.6.  The HQ AFRC/CC (for Category A Reservists) and the SecAF (for Category B Reservists) is the approval authority for MSD extensions of general officers.

16.15.7.  Forward written approval of ART MSDs to ARPC/DPTTS for MilPDS update.

16.15.8.  *The Reserve Officer Personnel Management Act* of 1996 (Reference Public Law 103-337), changed the rules for computing MSDs.  To help explain these changes, ARPC Separations Branch and NGB/A1 developed **Table 16.2** to outline the established MSD set

forth in these laws. On 1 October 1996 a 5-year phase-in program for all ANG and AFR officers converted the MSD calculation based on Total Federal Commissioned Service Date (TFCSD) versus total years' service date.

**Table 16.2.  ARC Only:  Elimination for Length of Service (See Note 6).**

| RULE | If member is in the rank of: | Then MSD is | Authority |
|---|---|---|---|
| 1 | O-1 | Not Applicable. | N/A |
| 2 | O-2 | Not applicable, except as indicated in **Note 8**. | See **Note 8**. |
| 3 | O-3 | Not applicable, except as indicated in **Notes 7** or **8**. | See **Notes 7** or **8**. |
| 4 | O-4 | Not Applicable, except as indicated in **Notes 7**, **8**, or **9**. | See **Notes 7**, **8**, or **9**. |
| 5 | O-5 | The first day of the month after the month in which the officer completes 28 years of Total Federal Commissioned Service Date (TFCSD).  (See **Notes 1**, **5**, **6**, **7**, or **9**) | Title 10 United States Code Section 14507(a), *Removal from the reserve active-status list for years of service: reserve lieutenant colonels and colonels of the Army, Air Force, and Marine Corps and reserve commanders and captains of the Navy* or § 14703. |
| 6 | O-6 | The first day of the month after the month in which the officer completes 30 years of TFCSD.  (See **Notes 2**, **5**, **6**, or **9**) | 10 USC § 14507(b) or § 14703. |
| 7 | O-7 | 30 years and 30 days from TFCSD or 5 years in grade whichever is later; or the last day of the month in which member attains age 62 with approval from SecAF whichever is earlier.  (See **Notes 3** and **5**). | Title 10 United States Code Section 14508(a)(c)(e), *Removal from the reserve active-status list for years of service: reserve general and flag officers* |
| 8 | O-8, O-9, and O-10 | 35 years and 30 days from TFCSD or 5 years in grade whichever is later; or the last day of the month in which member attains age 64 (for 0-8) or 66 (for 0-9 and 0-10) with approval from SecAF whichever is earlier. (See **Notes 4** and **5**). | See **Note 10**. |

**Notes**:
1. If member is on the O-6 promotion select list, compute MSD IAW Rule 6 upon promotion.  Upon update of the promotion in MilPDS, the MSD reflects the date as outlined in Rule 6.
2. If member is on the O-7 promotion select list, compute MSD IAW Rule 7 upon promotion.
3. If member is on the O-8 promotion select list, compute MSD IAW Rule 8 upon promotion.
4. HQ AFRC Guidance:  Unless the officer has applied for retirement, normally reassign general officers in the rank O-8 to ISLRS on the last of the month in which the officer turns 64 years old.

5.  Professional Educational Delay is computed the same using the entry date onto AD from the EAD orders or the DD Form 214.

6.  An MSD cannot exceed a member's 62nd birthday.  Members identified in **paragraph 16.12** or **Table 16.1**, and ARC Professional Specialties, require SecAF approval for retention beyond age 62 under 10 USC § 14703.

7.  An MSD could be extended based on the critical needs of the ANG or AFR using the Continuation Board process (10 USC § 14701) as outlined in AFI 36-2504, *Officer Promotion, Continuation and Selective Early Removal in the Reserve of the Air Force*.  Individual applications are not accepted for continuation until AF/RE and ANG determine a need for specific grades or skills exists.  If a need exists, AF/RE and ANG request the SecAF authorize conducting a Continuation Board.

8.  Twice Deferred Officers (Title 10 United States Code Section 14504, *Effect of Failure of Selection for Promotion:  Reserve First Lieutenants of the Army, Air Force, and Marine Corps and Reserve Lieutenants (Junior Grade) of the Navy* (first lieutenant); Title 10 United States Code Section 14505, *Effect of Failure of Selection for Promotion:  Reserve Captains of the Army, Air Force, and Marine Corps and Reserve Lieutenants of the Navy,* (captain); and Title 10 United States Code Section 14506, *Effect of Failure of Selection for Promotion:  Reserve Majors of the Army, Air Force, and Marine Corps and Reserve Lieutenant Commanders of the Navy,* (major)).  O-2s and O-3s are separated not later than the first day of the seventh month after the month in which the President approves the report of the board that considered the officer for the second time.  O-4s are separated on the later of either the first day of the month after the month in which the officer completes 20 years of commissioned service or the first day of the seventh month after the month in which the President approves the report of the board that considered the officer for the second time.  The exceptions are those retained under 10 USC § 14701(a) (3) - *Selection of officers for continuation on the reserve active-status list*.

9.  Health Professional Officers appointed with an age waiver may have their MSD established at age 62 or 28 years TFCSD, whichever is earliest.

10.  Questions concerning these ranks can be directed to NGB-SL, 111 South George Mason Drive, AHS2 Arlington VA 22204 (for ANG) or AF/REP, 1150 Air Force Pentagon, Washington, DC 20330-1150 (for AFR).

11.  SecAF approval is required to credit points and service performed after age 60 (Title 10 United States Code Section 12308, *Retention After Becoming Qualified for Retired Pay*).  **(T-1)**

**16.16.  Selective Early Removal from the RASL.**  A selection board may be convened whenever the SecAF determines there is an excessive number of officers in any grade and competitive category who have at least 30 total years of service, or at least 20 years of satisfactory Federal service for retired pay.  Each grade and competitive category are considered by the selection board, along with the necessary amount of service, for the purpose of recommending officers by name for removal from the RASL, according to the SecAF's specifications.  Unless otherwise directed by the SecAF, discharge an officer that the board recommends for removal from the RASL if the officer is:

16.16.1.  Ineligible for transfer to the Retired Reserve, or

16.16.2.  Ineligible for transfer to ISLRS, or is eligible, but fails to transfer.

**16.17.  Failure to Reply to Official Correspondence.**  Members who do not reply to official correspondence may be discharged (does not apply to ANG officers).  When correspondence requiring a reply is sent and no reply is received within 30 days, the unit commander or appropriate ARPC personnel:

16.17.1.  Verify the last permanent mailing address through MilPDS, and Postmaster General mailing.  After verification, mail the correspondence or a follow-up, by certified mail, return receipt requested, and by first-class mail to the verified address.  Complete the affidavit at **Attachment 11**.  Use the Postmaster Verification Memorandum at **Attachment 15**.

16.17.2. Comply with **paragraph 16.18** if postal authorities return the correspondence because the addressee is unknown (for example, but not limited to, official markings indicating a post office box has been closed or that the addressee has moved and left no forwarding address).

16.17.3. Prepare a report outlining attempts to notify the member.  The report includes a recommendation for retention, separation, or discharge and copies of unanswered correspondence and signed postal receipts.

**16.18. Inability to Locate.** Members who cannot be located are discharged.  The unit commander or appropriate RIO or ARPC personnel:

16.18.1.  Verify the last permanent mailing address through MilPDS and Postmaster General or any other electronic means.

16.18.2.  Send a report showing that steps in **paragraph 16.18.1** have been completed to the discharge authority, including correspondence returned.

16.18.3.  Terminate actions based on inability to locate if the member is found any time prior to separation or discharge.  Discharges based on other reasons may continue.

**16.19.  Elimination from ISLRS.**  Officers discharged under this section do not have the right to have their case heard by an administrative discharge board.  Discharge officers assigned to ISLRS who have been assigned for 3 years and the officers meet any of the following criteria:

16.19.1.  The member is ineligible for transfer to the Retired Reserve or is eligible but fails to apply.

16.19.2.  The member is not qualified for assignment to another training category, or is eligible, but fails to request such an assignment.

16.19.3.  The member is eligible for assignment to another training or retired category but did not receive approval for the assignment or no appropriate position is available.

**16.20.  Physical Disqualification.**  Discharge a member who is unfit to perform the duties of the member's office, grade, or rank because of disease or injury.  Discharge officers under this paragraph when they meet all of the following criteria:

16.20.1.  The member has been found unfit by the PEB as required by DAFMAN 48-123.  (For ARC officers, notification and board procedures in **Section 23B** of this publication do not apply.)

16.20.2.  The member fails to apply for transfer to the Retired Reserve, if eligible, or to submit a TOR.

16.20.3.  The member is not qualified for disability separation or retirement under the provisions of AFI 36-3212.

16.20.4.  The member is ineligible for transfer to a different AFSC or position for which the member would be fit for duty, or such transfer is considered inappropriate.

16.20.5.  The member has been considered and rejected for an ALC.

16.20.6. The discharge authority finds that the member's physically disqualifying condition makes them unfit for duty. Guidance on disqualifying conditions is provided in DoDI 6130.03 and DAF standards.

16.20.7. Prior to the execution of a discharge for physical disqualification for a non-duty related impairment or condition, qualified members are afforded the opportunity to enter the DES for a determination of fitness pursuant to DoDI 1332.18 and implementing regulatory issuances.  If the member enters the DES, discharge approval and notification will be accomplished following guidance provided in AFI 36-3212. **(T-0)**

**16.21.  Failure to Comply with Requirements for a Medical Examination.**  Discharge officers who fail to comply with minimum medical retention standards for continued service following guidance provided in DAFMAN 48-123.

**16.22.  Accepting Civil Employment with a Foreign Government or Concern.**  Officers who accept civil employment with a foreign government or with a concern that is controlled in whole, or in part, by a foreign government must have prior written approval of the SecAF and SecState. **(T-0)** Discharge officers who do not obtain such approval or when they continue such employment after the SecAF or SecState has revoked prior written approval.  **(T-0)**

**16.23.  Entrance or Service in an Armed Force of a Foreign Country.**  Nationals of the US (by birth or naturalization) may lose their nationality by entering or serving in the armed forces of a foreign country without specific written authorization from the SecState and the SecDef, 10 USC § 1060, and AFI 36-2913, *Request for Approval of Foreign Government Employment of Air Force Members.*  Discharge officers who fail to obtain such approval or who continue to serve in a foreign armed force once approval has been appropriately revoked.

16.23.1. Officers who wish to enter the armed forces of a foreign country submit their written requests through proper command channels.

16.23.1.1. The commander advises the officer in writing of the provisions of the 8 USC § 1481 concerning possible loss of nationality.  The officer must acknowledge receipt of the advice before the request is processed further.  **(T-1)**

16.23.1.2. When the officer still wants to apply for written authorization, the commander submits, through command channels, the application directly to Chief, Foreign Operations, Passport Office, Department of State, Washington DC 20524, with a brief summary of the officer's service attached

16.23.1.3. The Department of State coordinates their actions with DoD.

16.23.2. A commander who receives information concerning an officer who enters or serves in the armed forces of a foreign country, without written authorization, refers the information, through command channels for review and determination of appropriate action.

**16.24. Loss of Nationality.** Discharge officers who are nationals of the US (by birth or by naturalization) and who lose such nationality for any of the reasons outlined in the *Immigration and Nationality Act* of 1952 or under any other law. (For ANG ONLY:  If the SecAF determines that the officer should be retained in the AFR, the officer must be separated from the ANG and transferred to ARPC.  Title 32 United States Code Section 313(b), *Appointments and Enlistments: Age Limitations* requires all ANG officers to be US citizens.)  **(T-0)**

**16.25. Withdrawal from Military Medical Educational Assistance Programs.**

16.25.1. Discharge an officer who has been properly withdrawn by the AF from a military medical educational assistance program for any of the following reasons:

16.25.1.1. Removal from the medical training program by the medical institution operating the program.

16.25.1.2. Voluntary withdrawal from the medical training program without the prior permission from the agency administering the educational assistance program.

16.25.1.3. Lack of satisfactory progress toward completion of a medical training program, as determined by the head of AF agency with authority to withdraw the officer from the educational assistance program.

16.25.1.4. Failure to obtain state or national licensure necessary to be able to successfully complete the terms of the educational assistance contract the officer has with the AF.

16.25.1.5. Failure or refusal to meet medical, academic, officership, readiness, or Air Force standards following guidance provided in AFI 1-1, *Air Force Standards*.

16.25.1.6. Approved voluntary request for withdrawal by the officer from their education assistance program when AFPC/DPMNP has determined the officer cannot be utilized elsewhere in the AF, regardless of whether the officer has also voluntarily tendered their resignation.

16.25.2. Before initiating administrative discharge for any of the above reasons, forward the case to AFPC/DPMSS, to determine if the officer can and/or should be utilized in another capacity within the AF

**16.26. Officers Declining Voluntary EAD.** An officer may be discharged who, after applying and being selected for a voluntary EAD, withdraws the officer's application or otherwise declines to be ordered to EAD after the 14-day grace period authorized by DAFI 36-2008, *Voluntary Limited Period of Active Duty (VLPAD) for Air Reserve Component (ARC) Service Members and the Career Intermission Program*, unless exempted.

**16.27. Accelerated Appointments.** Discharge an officer who was tendered an appointment before completion of a National Agency Check when either of these criteria is met:

16.27.1. The prerequisite investigation is unfavorable.

16.27.2. Other investigation finds the individual unqualified to be a commissioned officer.

*Section 16C—Other Involuntary Discharge Provisions.*

**16.28. Officers Who Do Not Complete Medical Education or Training Programs.**

16.28.1. The AFPC office of primary responsibility (OPR) notifies AFPC/DPMSSR when officers fail to complete the:

16.28.1.1. Dietetic internship.

16.28.1.2. Medical technology program.

16.28.1.3. Clinical psychology program.

16.28.1.4. Appropriate health professional training requirements, to include Graduate Professional Education.

16.28.1.5. Master's degree program for physical therapists.

16.28.1.6. Uniformed Services University of the Health Sciences educational requirements.

16.28.2. MPFs schedule officers for discharge ASAP, upon receiving separation instructions from AFPC/DPMSSR.

## 16.29. Officers Who Fail the National Council Licensure Examination for Registered Nurses.

16.29.1. The AFPC OPR notifies AFPC/DPMSSR in writing when officers fail the required test for the second time or, after the first failure, fail to retake the test.

16.29.2. MPFs schedule discharge ASAP upon receiving separation instructions from AFPC/DPMSSR.

## 16.30. Officers Who Do Not Complete the USAF Nurse Transition Program.

16.30.1. The AFPC OPR notifies AFPC/DPMSSR in writing when officers do not complete the USAF nurse transition program.

16.30.2. MPFs schedule discharge ASAP upon receiving separation instructions from AFPC/DPMSSR.

## 16.31. Unlicensed Medical Officers.

16.31.1. The AFPC OPR notifies AFPC/DPMSSR in writing when an officer serving as a physician, dentist, registered nurse, clinical psychologist, podiatrist, optometrist, pharmacist, physical therapist, social worker, or any other medical officer requiring a license does not have a valid license.

16.31.2. MPFs schedule discharge ASAP upon receiving separation instructions from AFPC/DPMSSR.

## Chapter 17

## SPECIAL INVOLUNTARY SEPARATIONS LIMITED TO PROBATIONARY OFFICERS

**17.1. Discharge Characterization.** The service characterization of officers separated under **Chapter 17** will be Honorable. **(T-0)**

**17.2. General Guidance.** These actions are involuntary actions involving notification of initiation of discharge action by the SCA. However, these actions do not require the respondent to show cause. This paragraph applies only to probationary officers and there is no entitlement to a BOI or any other form of administrative discharge board. This paragraph should not be used when another basis for separation under **Chapter 18** is more appropriate. Unless waived by the SecAF, or delegated authority, officers separated under this chapter are subject to recoupment of education assistance, special pay, or bonus money received. Refer to **paragraph 14.6** for additional guidance regarding recoupment. (**Note**: Review **Chapter 14** for rules and procedures applicable to all separation actions.)

**17.3. Bases for Separation of Probationary Officers.** In addition to the bases for separation applicable to non-probationary officers under Sections **18A** and **18B**, a probationary officer may be separated for one or more of the following reasons:

17.3.1. Officers who do not complete initial skills training (refer to **Attachment 1, Terms**, for definition of initial skills training).

17.3.1.1. The SecAF, or designee, may direct an officer's reclassification when the officer does not complete initial skills training.

17.3.1.2. Alternatively, pursuant to Title 10 United States Code Section 630, *Discharge of Commissioned Officers With Less Than Six Years Active Commissioned Service or Found Not Qualified for Promotion for First Lieutenant or Lieutenant (Junior Grade)* and DoDI 1332.30*, Commissioned Officer Administrative Separations*, the SecAF may involuntarily separate officers when they do not complete initial skills training and there is no requirement for the officer's continued service. (**Note**: Refer to AFPCI 36-112, *Line Officer Initial Skill Training Reclassification Procedures* when a line officer does not complete initial skills training.)

17.3.2. Medical officers who cannot exercise unrestricted clinical privileges. Medical officers specified below who, during the initial 365 days of their first permanent duty station as medical service officers with or without unrestricted clinical privileges, lack sufficient training or ability, current medical knowledge and skills, or judgment to perform the full range of duties. The MTF commander, or authorized commander in the officer's chain of command, notifies AF/SG who in turn, notifies AFPC/DPMSSR to initiate discharge action IAW **paragraph 16.28** of this instruction. **Exception**: This paragraph does not apply to probationary officers commissioned through: the armed forces health profession scholarship program; the Uniformed Services University of the Health Sciences; an ROTC college scholarship program; and government-funded commissioning programs. This applies to the following medical service officers:

17.3.2.1. Physician.

17.3.2.2.  Dentist.

17.3.2.3.  Podiatrist.

17.3.2.4.  Nurse Anesthetist.

17.3.2.5.  Family Nurse Practitioner.

17.3.2.6.  Pediatric Nurse.

17.3.2.7.  Women's Health Nurse Practitioner.

17.3.2.8.  Psychiatric Mental Health Nurse Practitioner.

17.3.2.9.  Clinical Psychologist.

17.3.2.10.  Clinical Social Worker.

17.3.2.11.  Midwife.

17.3.2.12.  Occupational Therapist.

17.3.2.13.  Optometrist.

17.3.2.14.  Physical Therapist.

17.3.2.15.  Physician Assistant.

## Chapter 18

## INVOLUNTARY SEPARATIONS FOR CAUSE (SHOW CAUSE ACTIONS – REASONS)

**18.1.  General Guidance.**  This paragraph provides SCAs, commanders, and SJAs with reasons for the initiation of an officer involuntary separation for which the officer must show cause for retention on active duty. **(T-1)** The basis for discharge may include one or more of the reasons listed within **Chapter 18.**  To report separation for more than one reason, the discharge authority considers all reasons for discharge, citing in the discharge instrument the most appropriate basis as the primary reason for discharge.  The primary reason is reported in MilPDS.  Refer to **Chapter 19**, for guidance on initiating show cause action.  (**Note**: Review **Chapter 14** for rules and procedures applicable to all separation actions.)  **(T-1)**

*Section 18A—Separation for Cause:  Substandard Performance of Duty.*

**18.2.  Discharge Characterization.**  The service characterization of an officer separated for one or more reasons under this section is normally Honorable, but Under Honorable Conditions (General) discharge may be appropriate when the basis for discharge is attributable to intentional or willful disregard of standards, or when the officer's record otherwise contains derogatory information which makes Honorable discharge characterization inappropriate. Guidance on discharge characterization is provided in 10 USC § 12685.  (Refer to **paragraph 14.7** for additional information regarding service characterization).

**18.3.  Substandard Performance can be documented in the following ways:**

18.3.1.  Performance reports.

18.3.2.  Records of formal counseling.

18.3.3.  Admonishments or reprimands.

18.3.4.  Training reports.

18.3.5.  Operational or technical evaluation reports.

18.3.6.  Medical reports.

18.3.7.  Statements or memorandums for record.

18.3.8.  Article 15s.

**18.4.  Reinitiation of Action.**  An officer who has been processed for discharge because of substandard performance of duty and has been retained, may not again be processed for discharge for the same reasons within the one-year period beginning on the date of the determination to retain.  An officer may not again be processed for discharge solely because of conduct that was the subject of a previous proceeding unless the findings and recommendations resulted from fraud or collusion.

**18.5.  Reasons for Separation.**  An officer may be separated for one or more of the following reasons.  When notifying the officer of the Show cause action, the letter of notification must cite one of the following paragraphs as the basis for discharge.  **(T-0)** (**Note**:  This list is exhaustive;

discharge actions for substandard duty performance must be stated in terms of one or more of these reasons):

18.5.1.  Failure to acceptably discharge duties.  **(T-0)**

18.5.2.  Failure in the AF Fitness Program as specified in DAFMAN 36-2905.  **(T-0)**

18.5.3.  Failure to conform to prescribed standards of dress or personal appearance (other than fitness standards).  **(T-0)**

18.5.4.  Inability to perform duties or meet military commitments because of family care responsibilities.  **(T-0)**

18.5.5.  Drug abuse rehabilitation failure.  This includes inability or refusal to participate in, cooperate in, or successfully complete counseling or a program of rehabilitation, when the treatment determines there is a lack of potential for further military service, or long-term rehabilitation is necessary, and the member is transferred to a civilian medical facility for rehabilitation.  **(T-0)**

18.5.6.  Alcohol abuse rehabilitation failure.  This includes inability or refusal to participate in, cooperate in, or successfully complete counseling or a program of rehabilitation, when the treatment team determines there is a lack of potential for further military service, or long-term rehabilitation is necessary, and the member is transferred to a civilian medical facility for rehabilitation.  **(T-0)**

18.5.6.1.  (ANG ONLY) Report alcohol abuse rehabilitation failures separately from drug abuse rehabilitation failures.  When separation or discharge is considered appropriate due to evidence of alcohol abuse, the unit commander:

18.5.6.1.1. Reviews the action taken.  Document steps taken to rehabilitate the member.  **(T-1)**

18.5.6.1.2. Recommends whether to separate the member for drug or alcohol abuse rehabilitation failure or for another reason (for example, illegal activity in connection with drugs may be a basis for discharge for misconduct, deteriorating duty performance associated with alcohol abuse may warrant separation or discharge for unsatisfactory performance).  **(T-1)**

18.5.6.1.3. Prepares a memorandum to the show cause authority to include:

18.5.6.1.4. A history of the member's drug or alcohol abuse, including details of how the abuse was determined.  **(T-1)**

18.5.6.1.5. A summary of the rehabilitation efforts with a complete explanation of how criteria for this basis for separation or discharge are met.  **(T-1)**

18.5.6.1.6. A resume of the member's military record.

18.5.7. Fear of Flying.  Process non-rated officers whose fear of flying impedes their performance of duty under this paragraph after complying with applicable provisions in AFMAN 11-402, *Aviation and Parachutist Service*.  Depending on the circumstances of the individual case, fear of flying may constitute a standalone basis for discharge or may be symptomatic of one or more of the other grounds for discharge listed in **paragraph 18.5**.  Fear of flying involving rated officers is processed under **Section 18B** as a professional dereliction.

18.5.8.  Mental disorders that interfere with the officer's performance of duty and do not fall within the purview of the medical disability process.  A mental health professional (see **Attachment 1, Terms** for definition) must conduct an evaluation. **(T-1)** The evaluation must confirm any of these diagnoses as defined in the current edition of the *Diagnostic and Statistical Manual of Mental Disorders*. **(T-1)** The mental health provider concludes that the disorder is so severe that the Service member's ability to function effectively in the military environment in significantly impaired.  **(T-1) Separation** processing will not be initiated until the officer has been formally counseled on their deficiencies and given an opportunity to correct those deficiencies and has been counseled in writing that the condition does not qualify as a disability. **(T-0)** (**Note**:  When citing **paragraph 18.5.8** as the basis for discharge, the specific subparagraph forming the basis must be referenced in the notification memorandum.) **(T-1)**

18.5.8.1. Personality disorder or other mental disorder not constituting a physical disability. (**Note**:  Additional processing is required before officers who have served in an imminent danger pay area or who have filed an unrestricted report of sexual assault or who have self-disclosed they are a victim of a sex-related offense, an intimate partner violence-related offense, or a spousal abuse offense during service may be discharged for personality disorder or other mental health disorder not constituting a physical disability.  See **paragraph 19.8.4**.).

18.5.8.2.  Disruptive behavior disorder.

18.5.8.3.  Adjustment disorder.

18.5.8.4.  Impulse control disorder.

18.5.8.5.  Other disorders as defined in the current edition of the *Diagnostic and Statistical Manual of Mental Disorders* which interfere with performance of duty and do not fall within the purview of the medical disability process.

18.5.9.  Failure to show acceptable qualities of leadership commensurate with grade, position, or length of commissioned service.

18.5.10.  Failure to achieve acceptable standards of proficiency, efficiency, or effectiveness.

18.5.11.  Failure to complete a course of instruction or training program when participation is at government expense.

18.5.12.  Substandard response to training, in that performance of duties in the officer's assigned specialty is unsatisfactory.

18.5.13.  Substandard attitude or character.

18.5.14.  Unsatisfactory progress or failure in, or disenrollment from, an active status skills-awarding education or training program.  (**Note**:  Officers have a military duty to obtain and maintain qualifications and credentials necessary for performance of their duties.  Similarly, they have a military duty to train for performance of primary duties.)

18.5.15.  Officers Who Are Disqualified From Their AFSC.  The SecAF, or designee, may involuntarily separate officers when they have been disqualified from their AFSC and cannot be reclassified.

18.5.16. (Reserve and ANG ONLY) A demonstrated downward trend in duty performance resulting in an unacceptable record of effectiveness.

18.5.17. (Reserve and ANG ONLY) A demonstrated record of marginal service over an extended time as shown by performance reports covering different jobs and prepared by at least two different supervisors.

***Section 18B—Separation for Cause: Misconduct, Moral or Professional Dereliction, or In the Interest of National Security.***

**18.6. Discharge Characterization.** The service characterization of an officer separated for one or more reasons under this section is Honorable, Under Honorable Conditions (General), or UOTHC. Refer **to paragraph 14.7** for additional information regarding service characterization.

**18.7. Show Cause Action Notification Memorandum.** When notifying the officer of the show cause action, the notification memorandum must cite one (or more) of the following paragraphs as the basis for discharge **(T-1):**

(**Note**: This list is exhaustive; discharge actions for misconduct, moral or professional dereliction, or in the interest of national security must be stated in terms of one or more of these reasons)

18.7.1. Serious or recurring misconduct, punishable by military or civilian authorities. (**Note**: Cite this paragraph when notifying the officer of this basis for discharge.) Serious Misconduct refers to any offense punishable under the UCMJ or state military code by confinement for 6 or more months (or a dismissal) and any comparable offense under a civilian penal code. Commanders must act promptly when they have information indicating an officer has committed act(s) that would render the officer subject to discharge for serious or recurring misconduct punishable by military or civilian authorities. **(T-1)** "Punishable" means that the misconduct can result in criminal punishment, i.e., that it is criminally punishable within the jurisdiction of military or civil (US or foreign) authorities, or that there has been such a conviction or action taken which is tantamount to a finding of guilty (judicial action which technically disposes of charges in favor of the defendant but in a manner inconsistent with the defendant's innocence, for example: deferred prosecution; order to dismiss charges after successful completion of rehabilitation or probation) for an act or omission which would amount to an offense under the UCMJ. In cases in which misconduct resulted in civilian conviction, initiation of, or execution of discharge action need not be delayed until completion of appellate review. Multiple acts of misconduct need not be identical or even similar in order to be "recurring."

18.7.2. Foreign Court Convictions (reference **Section 18C** for additional guidance).

18.7.3. Discreditable mismanagement, whether intentional or not, of personal affairs, including financial affairs and/or failure to meet financial obligations. (**Note**: Cite this paragraph when notifying the officer of this basis for discharge.) This behavior includes, but is not limited to:

18.7.3.1. Issuing worthless checks.

18.7.3.2. Failure to provide adequate support for family members.

18.7.3.3. Failure to comply with court orders.

18.7.3.4. Dishonorable failure to make timely payments on the member's government travel card.  Dishonor is presumed when the member fails to make any payments for a period of 120 or more consecutive days from the billing due date, or the member fails to keep any promise for payment. 18.7.3.5. Unauthorized use of the member's government travel card.

18.7.4. Drug abuse. (**Note**:  Cite this paragraph when notifying the officer of this basis for discharge.)  Drug abuse is incompatible with military service.  Drug abuse or attempts thereof for purposes of this regulation is the illegal, wrongful, or improper use, possession, sale, transfer, or introduction of any drug onto a military installation.  This includes the use of a medication without a prescription, or in a way other than as prescribed.  The term drug includes any controlled substance in schedules I, II, III, IV, and V of 21 USC § 812.  It also includes anabolic/androgenic steroids, not prescribed by a physician, and any intoxicating substance, other than alcohol, that is inhaled, injected, consumed, or introduced into the body in any manner for purposes of altering mood or function.  It does not include a circumstance of forced or unintentional drug administration where evidence demonstrates the officer was a victim of violence, such as, drug facilitated sexual assault.  The presence in the military environment of officers who engage in drug abuse seriously impairs accomplishing the military mission.  Officers who abuse drugs adversely affect the ability of the USAF or USSF to: maintain discipline, good order, and morale; foster mutual trust and confidence among members; facilitate assignments and worldwide deployment; recruit and retain members; maintain public acceptability of military service; and prevent breaches of security.  SCAs will initiate separation action when the record supports a finding that an officer abused drugs one or more times.  **(T-1)**

18.7.4.1. Processing Procedures in Drug Abuse Cases.  SCAs act promptly to initiate separation action under this publication when the record supports a finding that an officer is subject to discharge for drug abuse.  However, there is no time limit for initiating discharge action, and failure to do so does not at any time constitute a constructive waiver.  Discharge action is waived only if a waiver is expressly approved under **paragraph 18.7.4.7**.  For limits on using certain evidence in characterizing service, see **paragraph 14.11**.

18.7.4.2. Following initiation of discharge notification, an officer may submit a request for retention for consideration by the SCA.  In deciding whether to waive separation, SCAs give full consideration to: the nature of the offense involved, all the circumstances surrounding the offense, any matters in extenuation, the officer's military record, the officer's potential for future productive service, and an evaluation of the retention criteria in **paragraph 18.7.4.3**.

18.7.4.3.  An officer found to have abused drugs is discharged unless the officer meets all of the following criteria:

18.7.4.3.1.  Drug abuse is a departure from the officer's usual and customary behavior.

18.7.4.3.2. Drug abuse occurred as the result of drug experimentation (a drug experimenter is defined as one who has illegally or improperly used a drug for reasons of curiosity, peer pressure, or other similar reasons).

18.7.4.3.3. Drug abuse does not involve recurring incidents, other than drug experimentation as defined above.

18.7.4.3.4.  The member does not desire to engage in or intend to engage in drug abuse in the future

18.7.4.3.5.  Drug abuse under all the circumstances is not likely to recur.

18.7.4.3.6.  Under the circumstances of the case, the officer's continued presence in the USAF or USSF is consistent with the interest of the USAF or USSF in maintaining proper discipline, good order, leadership, and morale (officers have special responsibilities by virtue of their status; fulfill an integral role in maintaining discipline; and, therefore, must exhibit high standards of personal integrity, loyalty, dedication, devotion to duty, and leadership).  **(T-1)**

18.7.4.3.7. Drug abuse did not involve drug distribution.  For the purpose of this paragraph, drug distribution means the delivery to the possession of another. Distribution does not occur with the transfer of the drugs from one person to another while such persons are engaged in the mutual use of drugs, except those individuals who obtain, or arrange for obtaining, the drugs used by others are involved in distribution.  "Delivery" means the actual, constructive, or attempted transfer of the drugs, whether or not there exists an agency relationship.

18.7.4.4. The burden of proving that retention is warranted under these limited circumstances rests with the officer.  Findings regarding the existence of each of the limited circumstances warranting an officer's retention are required of the board or the separation authority only if:

18.7.4.4.1.  The officer clearly and specifically raises such limited circumstances in the officer's response to the show cause notification or at the board hearing.

18.7.4.4.2.  The board, or in the absence of a board, the separation authority relies upon such circumstances to justify the member's retention.

18.7.4.5.  The officer's unit commander may support the waiver of discharge to the SCA. If a reservist's unit commander determines a waiver of discharge is appropriate, a request for a waiver must be processed promptly IAW **paragraph 23.18**.  **(T-1)** The unit commander provides the SCA the commander's reason(s) for recommending the waiver, to include a statement explaining how the officer meets each of the seven retention criteria set forth in **paragraph 18.7.4.3**, rehabilitative action taken in the officer's case, and any other relevant information.

18.7.4.6.  The SCA determines, based on the officer's retention submissions, whether the facts and circumstances of an officer's case meet the retention criteria.

18.7.4.7.  If the SCA approves the waiver, no further action in the case is required.  If it is disapproved, discharge processing continues.

18.7.4.8.  The initiating authority consults with the servicing legal office to determine how to use urinalysis evidence.  If the initiating authority or a BOI, as detailed in **Chapter 20**, considered any evidence listed in **paragraph 14.11** and recommended a discharge Under Honorable Conditions (General) or a discharge UOTHC, the initiating authority or BOI

specifies which evidence warranted the less than fully Honorable discharge recommendation.

18.7.5.  Intentional misrepresentation or omission of facts in obtaining an appointment or in official documents or records.  (**Note**:  Cite this paragraph when notifying the officer of this basis for discharge.)

18.7.6.  Culpable failure to perform assigned duties or complete required training.  This includes failure in any government-funded educational or training program due to factors within the officer's control. (**Note**: Cite this paragraph when notifying the officer of this basis for discharge.)

18.7.7.  Conduct or actions resulting in the loss of professional status, qualifications, licensure, or certification(s) necessary for the performance of military duties. (**Note**: Cite this paragraph when notifying the officer of this basis for discharge.)

18.7.8.  Fraternization or unprofessional relationships.  (**Note**:  Cite this paragraph when notifying the officer of this basis for discharge.)

18.7.9.  For regular officers, improper participation in political activities, including being a candidate for or appointment to civil office.  Seek advice from servicing legal office for reserve officer involvement in political activities.  (**Note**:  Cite this paragraph when notifying the officer of this basis for discharge).

18.7.10.  Failure to follow preventive medical procedures to prevent HIV transmission. (**Note**: Cite this paragraph when notifying the officer of this basis for discharge.)

18.7.10.1.  Serologic evidence of HIV infection alone is not a basis for discharge under this publication.  (It may, however, be a basis for medical discharge or retirement.)

18.7.10.2.  Discharge action under this publication may not be initiated based on information disclosed by the officer during an acquired immunodeficiency syndrome (AIDS) epidemiological assessment interview.  (**Note**:  This prohibition does not apply to evidence obtained independent of an epidemiological assessment interview.)

18.7.11.  Acts of sexual perversion and/or misconduct, or attempts thereof, which include, but are not limited to, the following specific UCMJ offenses:  indecent viewing, visual recording, or broadcasting; forcible pandering; indecent exposure, and child pornography. (**Note**: Cite this paragraph when notifying the officer of this basis for discharge.)  Additionally, sexual disorders, including exhibitionism, voyeurism, and other disorders as defined in the current edition of the *Diagnostic and Statistical Manual of Mental Disorders*, which do not qualify for processing under AFI 36-3212, provided a basis for separation is not addressed elsewhere in this DAFI.

18.7.12. Sexual Assault.  Sexual assault is incompatible with military service.  SCAs will initiate separation action when the SCA finds by a preponderance of the evidence that an officer committed sexual assault.  **(T-1)** (**Note**: Cite this paragraph when notifying the officer of this basis for discharge.)  Sexual assault for purposes of this publication includes a broad category of sexual offenses consisting of the following specific UCMJ offenses: rape, sexual assault, aggravated sexual contact, abusive sexual contact, or attempts to commit these offenses. This includes sexual offenses against children consisting of the following specific

UCMJ offenses: rape of a child, sexual assault of a child, and sexual abuse of a child, or attempts to commit these offenses.

18.7.12.1.  The presence in the military environment of persons who commit sexual assault undermines the ability of USAF and/or USSF members to work effectively as a team, impairs the readiness of the force, and significantly detracts from accomplishing the military mission.  Members who commit a sexual assault adversely affect the ability of the USAF and/or USSF to: maintain discipline, good order, and morale; foster mutual trust and confidence among members; facilitate assignments and prevent disruptions in worldwide deployment; recruit and retain members; and maintain public acceptability of military service.  The presumption is that members who commit sexual assault will be discharged.

18.7.12.2.  Action Required.  Commanders will evaluate each sexual assault allegation in order to determine whether a preponderance of the evidence establishes that the member committed a sexual offense. **(T-1)** If the commander determines that the member did commit a sexual offense, the commander must take prompt action to recommend show cause notification or waiver action IAW the following paragraphs:

18.7.12.2.1.  Commanders may not consider the member's personal, family, or financial circumstances; good military character or service record; or medical or mental health condition in determining whether show cause notification is appropriate.  **Note:** This information may be considered for purposes of service characterization.

18.7.12.2.2.  There is no time limit for initiating show cause notification, and there is no situation in which a delay in initiating discharge will constitute a constructive waiver.  Discharge action is waived only if a waiver is expressly approved under **paragraph 18.7.12.3.3**. **(T-1)**

18.7.12.2.3.  If the commander determines a waiver of involuntary separation processing is appropriate, a request for waiver must be processed promptly.  **(T-1)** See **paragraph 18.7.12.3.3**.

18.7.12.3.  Waiver of Involuntary Separation Processing.  An officer found subject to discharge for sexual assault under **paragraph 18.7.12** may warrant consideration for waiver of involuntary separation processing.  In deciding whether to recommend a waiver, commanders must give full consideration to: the victim's views on retention of the officer, the nature of the offense involved, all the circumstances surrounding the offense, and an evaluation of the requirements for an exception to mandatory separation in **paragraph 18.7.12.3.5**.  **(T-1)**

18.7.12.3.1.  The commander must determine that the facts and circumstances of an officer's case meet the requirements for an exception to mandatory separation in **paragraph 18.7.12.3.5** and therefore warrant a recommendation for waiver action. **(T-1)**

18.7.12.3.2.  Commanders may not consider the member's personal, family, or financial circumstances; good military character or service record; or medical or mental health condition in determining whether show cause notification is appropriate.  **Note:** This information may be considered for purposes of service characterization.

18.7.12.3.3. A commander who recommends waiver of involuntary separation processing sends a recommendation to the SCA.  This provides the commander's reasons for recommending the waiver and must include:

18.7.12.3.3.1.  Evidence substantiating the officer's sexual assault. This is typically the completed disciplinary or administrative action taken as a result of the officer's sexual assault (e.g., courts-martial orders, Article 15 actions, and letters of reprimand).  **(T-1)**

18.7.12.3.3.2.  Any available investigation report, military or civilian, of the sexual assault offense.  **(T-1)**

18.7.12.3.3.3.  The commander's statement explaining how the officer meets each of the requirements for an exception to mandatory separation set forth in **paragraph 18.7.12.3.5**. **(T-1)**

18.7.12.3.3.4.  Rehabilitative action taken in the officer's case, if any, and results.

18.7.12.3.3.5.  Any victim impact statement the victim or Special Victims' Counsel can provide.  **(T-1)**

18.7.12.3.4.  The SCA may disapprove the waiver.  The SCA may approve the waiver and no further action in the case is required.  If it is disapproved, discharge processing must start at once IAW **paragraph 19.8**.  **(T-1)**

18.7.12.3.5.  Exceptions to Mandatory Separation.

18.7.12.3.5.1.  An officer found to have committed a sexual assault will be discharged unless the member proves all of the following five criteria by a preponderance of the evidence:

18.7.12.3.5.1.1.  The member does not have another substantiated allegation of sexual assault or sexual harassment at any point in their history, whether before joining the military or not and regardless of whether the member was on active duty at the time of the offense.

18.7.12.3.5.1.2.  The sexual assault did not involve a child victim, or a sexual act as defined in Article 120, UCMJ.

18.7.12.3.5.1.3. The sexual assault was not committed (1) by using or threatening such physical strength or violence as is sufficient to overcome, restrain, or injure a person, (2) by threatening or placing the other person in fear that any person will be subjected to death, grievous bodily harm, or kidnapping; (3) when the victim was incapable of consenting to the sexual contact due to impairment by a drug, intoxicant, or other similar substance, a mental disease or defect, or physical disability, and the person committing the assault knew or reasonably should have known the victim was incapable of consenting to the sexual contact due to impairment by a drug, intoxicant, or other similar substance, a mental disease or defect, or physical disability; (4) by administering to the other person by force or threat of force, or without the knowledge or consent of the person, a drug, intoxicant, or other similar substance and thereby substantially impairing the ability of the other person to appraise or control conduct;  (5) by making a fraudulent representation that the

sexual contact served a professional purpose; or (6) by inducing a belief by artifice, pretense, or concealment that the person committing the assault was another person.

18.7.12.3.5.1.4.  The sexual assault was not the result of an abuse of rank, grade, authority, or position.  Members are presumed to have abused their rank, grade, authority, or position in commission of the sexual assault in the following circumstances:  (1) the member is a recruiter or trainer providing entry-level training and the victim was a prospective Department of the Air Force member, applicant, recruit, trainer, student, or cadet, (2) the member was the superior in a direct superior-subordinate relationship with the victim, to include civilian subordinates; (3) the victim was (a) an enlisted member of any grade, (b) a Department of the Air Force civilian employee in a corresponding grade lower to the member, or (c) a contractor in a corresponding grade lower than the member; or (4) the victim was an officer and the member was senior in grade to the victim.  Lack of evidence of these four enumerated circumstances does not mean the sexual assault was not the result of an abuse of rank, grade, authority, or position; rather, that the presumption of such does not exist.  Evidence may still be presented, and a finding may be reached that the sexual assault was the result of an abuse of rank, grade, authority, or position.

18.7.12.3.5.1.5.  Under the circumstances of the case, the member's continued presence in the Department of the Air Force is consistent with the interest of the Department of the Air Force in maintaining proper discipline, good order, leadership, morale, and a culture of respect for the safety, dignity, and personal boundaries of others.

18.7.12.3.6. Commanders may not consider the member's personal, family, or financial circumstances; good military character or service record; or medical or mental health condition in determining whether the facts meet the requirements for initiation of discharge action with a sexual assault basis.

18.7.12.3.7.  In addition to the exception criteria, the board or the SCA must consider the impact of the sexual assault on the victim and the views of the victim on retention. **(T-1)** The burden of proving that retention is warranted under each of these limited circumstances rests with the officer.  Findings regarding the existence of each of the limited circumstances warranting an officer's retention are required of the board or the SCA only if:

18.7.12.3.7.1. The officer clearly and specifically raises such limited circumstances.

18.7.12.3.7.2.  The board, or in the absence of a board, the SCA relies upon such circumstances to justify the officer's retention.

18.7.13.  Fear of flying. (**Note**: Cite this paragraph when notifying the officer of this basis for discharge.)  As professional dereliction applies to rated officers only. (Fear of flying involving nonrated officers whose duties involve flying is processed under **Section 18A** as substandard duty performance.)  The wing commander or other cognizant authority recommends initiation of action to separate a rated officer who has been found physically qualified for flying duties

but has been suspended from aviation service under AFMAN 11-402 because of professed fear of flying.  The commander includes a copy of the suspension from aviation service in the case file.

18.7.14.  Restriction of duties based on asserted moral reasons, including statements of intent not to perform assigned duties when there are sufficient aggravating circumstances to make initiation under **Section 18A** inappropriate.  (**Note**:  Cite this paragraph when notifying the officer of this basis for discharge.)

18.7.15.  Retention is clearly inconsistent with the interests of national security.  (**Note**:  Initiate action only after completing required actions under DoDM 5200.02_AFMAN 16-1405.)  (**Note**:  Cite this paragraph when notifying the officer of this basis for discharge.)

18.7.15.1.  Separation of officers under this provision is not appropriate if the officer's record would support separation for misconduct.  When the sole basis for separation is under this provision and the officer is not subject to separation under another basis in this publication, then officers are subject to separation when:

18.7.15.2.  The security clearance required for the officer's duty position or in the performance of the officer's official duties has been denied or revoked, and

18.7.15.3.  The officer's appeal (if submitted) of the denial/revocation through the PSAB was denied (Reference DoDM 5200.02_AFMAN 16-1405). **(T-0)**

18.7.16.  Attempting to avoid deployed or hardship duty.  (**Note**:  Cite this paragraph when notifying the officer of this basis for discharge.)

18.7.17.  Extended confinement (i.e., an officer who has been sentenced by court-martial to confinement for more than 6 months after the sentence to confinement has become final under the UCMJ).  (**Note**:  Cite this paragraph when notifying the officer of this basis for discharge.)

18.7.18.  Officers who engage in unprofessional relationships with prospective members of the AF or new members during recruiting, entry-level processing, entry-level training, or initial skills training.  (**Note**:  Cite this paragraph when notifying the officer of this basis for discharge.) (See AFI 36-2909).  Officers whose duties include recruiting or assessing persons for enlistment or appointment as a commissioned officer or enlisted member, or are assigned or attached to duty at a Military Entrance Processing Station, and officers performing duties as faculty or staff at an entry-level or initial skills training facility or school, are subject to discharge for misconduct for:

18.7.18.1.  Engaging or attempting to engage in an unprofessional relationship with a prospective member of the armed forces during recruiting, entry-level processing, entry-level training, or initial skills training.

18.7.18.2.  Engaging or attempting to engage in an unprofessional relationship with new members during entry-level processing, entry-level training, or initial skills training.

18.7.18.3.  For purposes of this publication, the following terms are defined as:

18.7.18.3.1.  Prospective Member of the Armed Forces.  A person who has had a face-to-face meeting with a member of the armed forces whose duties include recruiting or assessing persons for enlistment or appointment as a commissioned officer or enlisted member.

18.7.18.3.2.  Entry-Level Processing.  Actions taken by recruiting personnel to effect the enlistment, commissioning, appointment, or selection of an USAF or USSF applicant.  Recruiting personnel include commissioned officers whose duties include the recruitment of USAF or USSF enlisted members, officers, or officer candidates, including recruiters, ROTC admission or liaison officers and USAFA liaison officers. Entry-level processing also includes officers performing duties at, or attached to, a Military Entrance Processing Station or Officer Training Program Examining Centers where qualifying examinations are processed, and interviews and drug abuse briefings are administered to applicants for training leading to a commission in the USAF or USSF.

18.7.18.3.3.  Covered Period.  These prohibitions begin on the date of first contact between a prospective member of the USAF or USSF and a recruiter, through accession and initial skills training, and for 6 months after the trainee completes initial skills training or ending on the date on which the member physically arrives at that member's first duty assignment following completion of initial entry training, whichever is greater.

18.7.18.3.3.1.  Covered Programs (Enlisted).  Basic Military Training and Enlisted Initial Skills Training (a formal school course that results in an AFSC/SFSC 3-skill level award).

18.7.18.3.3.2.  Covered Programs (Officer).  USAFA, AFROTC, Officer Training School (including Total Force Officer Training, Commissioned Officer Training, and Reserve Commissioned Officer Training), and Officer Initial Skills Training (provides skill sets required to be successful in awarded AFSC; skill sets range from technical to managerial skills; training may not be AFSC awarding, but is used in conjunction with experience, on-the-job training, and other supplemental training to provide required skill sets).

18.7.18.3.4.  Unprofessional Relationships.   Whether pursued on or off duty, relationships are unprofessional when they detract from the authority of superiors or result in (or reasonably create the appearance of) favoritism, misuse of office or position, or the abandonment of organizational goals for personal interests.

18.7.18.3.4.1.  Members covered under **paragraph 18.7.18** must ensure their relationships are professional and impartial, do not create the appearance of favoritism, and do not detract from the professional image the USAF or USSF projects. **(T-1)**

18.7.18.3.4.2.  See specific prohibited relationships and activities contained in AFI 36-2909 and its supplements, to determine whether an officer identified in **paragraph 18.7.18** is subject to discharge processing under this DAFI for engaging, or attempting to engage, in an unprofessional relationship with a prospective member of the USAF or USSF or an USAF or USSF member undergoing recruiting, entry-level processing, entry-level training, or initial skills training.

18.7.18.4.  Processing Procedures.

18.7.18.4.1.  Show cause authorities will act promptly to initiate discharge processing under this publication for the first substantiated violation by an officer covered under **paragraph 18.7.18** of the actions identified in AFI 36-2909, which mandate initiation of administrative discharge.  **(T-0)** The requirement to initiate administrative processing does not mean that the result of that processing must be administrative discharge; the specific facts of each individual case will determine whether administrative discharge is appropriate. **(T-1)** There is no time limit for initiating discharge action, and failure to do so does not at any time constitute a constructive waiver.  Discharge action is waived only if a waiver is expressly approved under **paragraph 18.7.18.5.7**. **(T-1)**

18.7.18.4.2.  Substantiated Violations.  Show cause authorities must initiate discharge processing when**:**

18.7.18.4.2.1.  An officer covered under **paragraph 18.7.18** has a court-martial conviction for violating a prohibition in AFI 36-2909 that mandates initiation of administrative discharge action, but the adjudged sentence does not include dismissal.  **(T-0)**

18.7.18.4.2.2.  A nonjudicial punishment authority determines if an officer covered under **paragraph 18.7.18** committed a violation of a prohibition in AFI 36-2909 that mandates initiation of administrative discharge action.  **(T-0)**

18.7.18.4.2.3.  An issuing authority determines through administrative action (e.g., letter of reprimand, admonishment, or counseling) that an officer covered under **paragraph 18.7.18** committed a violation of a prohibition in AFI 36-2909 that mandates initiation of administrative discharge action.  **(T-0)**

18.7.18.5.  Retention Criteria and Consideration.

18.7.18.5.1.  Following initiation of discharge notification for a member found to have engaged, or attempted to engage, in an unprofessional relationship with prospective members of the armed forces or new members during recruiting, entry-level processing, entry-level training, or initial skills training, an officer may submit a request for retention for consideration by the SCA.  In deciding whether to waive separation, SCAs consider the retention criteria contained in **paragraph 18.7.18.5.2**.

18.7.18.5.2. An officer found to have engaged, or attempted to engage, in an unprofessional relationship with prospective members of the armed forces or new members during recruiting, entry-level processing, entry-level training, or initial skills training will be discharged unless the officer meets all the following criteria **(T-0)**:

18.7.18.5.2.1. The misconduct is a departure from the officer's usual and customary behavior.

18.7.18.5.2.2.  The misconduct is not likely to recur.

18.7.18.5.2.3.  The misconduct did not involve the use of force, threats, or coercion.

18.7.18.5.2.4. The misconduct was not the result of an abuse of rank, grade, authority, or position.

18.7.18.5.2.5. Under the circumstances of the case, the officer's continued presence in the USAF or USSF is consistent with the interest of the USAF or USSF in maintaining proper discipline, good order, leadership, and morale.  Officers have special responsibilities by virtue of their status; fulfill an integral role in maintaining discipline; and therefore, must exhibit high standards of personal integrity, loyalty, dedication, devotion to duty, and leadership.  **(T-1)**

18.7.18.5.3.  In addition to the retention criteria, the board of inquiry or the SCA must consider the impact of the misconduct on the prospective member of the armed forces or new member and the member's views on retention.  **(T-1)**

18.7.18.5.4.  The burden of proving that retention is warranted under these limited circumstances rests with the officer.  Findings regarding the existence of each of the limited circumstances warranting an officer's retention are required of the board of inquiry or the SCA only if:

18.7.18.5.4.1.  The officer clearly and specifically raises such limited circumstances in the officer's response to the show cause notification or at the board hearing

18.7.18.5.4.2.  The board of inquiry, or in the absence of a board, the SCA relies upon such circumstances to justify the officer's retention.

18.7.18.5.5.  The officer's unit commander may support the waiver of discharge to the SCA.  The unit commander provides the SCA the commander's reason(s) for recommending the waiver, to include a statement explaining how the officer meets each of the retention criteria set forth in **paragraph 18.7.18.5.2**, rehabilitative action taken in the officer's case, and any other relevant information.

18.7.18.5.6.  The SCA determines, based on the officer's retention submissions, whether the facts and circumstances of an officer's case meet the retention criteria.

18.7.18.5.7.  If the SCA approves the waiver, no further action in the case is required.  If it is disapproved, discharge processing continues.

*Section 18C—Foreign Court Convictions.*

## 18.8.  Additional Guidance Regarding Foreign Court Convictions.

18.8.1.  When an officer has been convicted by a foreign court and is sentenced to confinement (including suspended sentences to confinement), the SCA may initiate show cause discharge action under this publication.  However, following guidance provided in Air Force Joint Instruction 51-706, *Status of Forces Policies, Procedures, and Information,* in most cases and subject to SecAF, or delegated authority approval, the discharge is not executed until the officer is released from confinement and is returned to the US.  A BOI cannot be conducted in absentia unless the officer waives their statutory right to appear before a BOI in writing.  **(T-0)** In such cases, the officer is entitled to representation by counsel before the in-absentia BOI.

18.8.2.  A medical assessment incident to initiation of discharge is not required if the officer is not reasonably available to military authorities.  However, a medical assessment is provided upon the officer's return to military control.  **Exception**:  The SecAF, or delegated authority, directs discharge without return to military control.  **(T-1)**

18.8.3.  Upon indorsement by the SCA IAW **Chapter 19** and **Chapter 20** as applicable, and before sending the case to the SecAF through AFPC/DPMSSR for regular officers or through AFRC/JAM for reserve officers, the SCA provides the following additional documentation:

18.8.3.1.  A copy of the police report or other evidence (translated if applicable), and a summary of the facts of the offenses of which the officer was convicted.

18.8.3.2.  A certified or authenticated copy of the judgment or order of the court, showing the offenses of which convicted, and the sentence adjudged.

18.8.3.3.  Information about the place of confinement (i.e., conditions) and estimated release date from confinement.  (**Note**:  This information is normally included in one or more monthly prison visit reports to which commanders and SJAs normally have access).

18.8.3.4.  A copy of the trial observer's report.

18.8.4.  The SCA ensures that the appropriate SJA provides:

18.8.4.1.  A legal opinion discussing the misconduct giving rise to the charges and conviction, an assessment whether the evidence is sufficient to support initiation of show cause action under this publication, and information whether the conviction has become final including status of any appeals.

18.8.4.2.  Any relevant information regarding pertinent provisions in any applicable Status of Forces Agreement, or stationing or basing or similar agreement pertaining to US military personnel confined for violations of criminal or civil law which may be pertinent to the case, or helpful to the SecAF, or designee, in determining final disposition of the discharge action.

### Section 18D—Involuntary Discharge Specific to AFR and ANG.

**18.9.  Unsatisfactory Participation.**  A member who fails to meet participation requirements, regardless of whether they have fulfilled an existing MSO under 10 USC § 651, may be discharged if the commander concerned also determines that the individual has no potential for continued service.  A member may be discharged under this paragraph for unsatisfactory participation when the member accumulates nine or more unexcused absences within a 12-month period.  Reservists may be recalled if they fail to fulfill PALACE CHASE obligations.  Further clarification can be found in AFMAN 36-2136.

**18.10.  Substandard Performance of Duty.**  The basis for discharge under this section are limited to an honorable or general (under honorable conditions) service characterization.  Commanders or other cognizant authorities document an officer's substandard performance of duty, as compared to other commissioned officers of the same grade and experience, in any or all of the following forms:

18.10.1.  Performance reports.

18.10.2.  Records of formal counseling.

18.10.3.  Admonishments or reprimands.

18.10.4.  Training reports.

18.10.5.  Operational or technical evaluation reports.

18.10.6.  Medical reports.

18.10.7.  Statements or memorandums for record.

18.10.8.  Article 15s.

18.10.9.  Separation provisions are outlined in **Section 18A** of this publication.

18.10.10.  Reinitiation of Action.  An officer who has been processed for discharge because of substandard performance of duty and has been retained, may not again be processed for discharge for the same reasons within the one-year period beginning on the date of the determination to retain.  An officer may not again be processed for discharge solely because of conduct that was the subject of a previous proceeding unless the findings and recommendations resulted from fraud or collusion.

**18.11. Failure to Comply with Requirements for a Medical Examination.** Recommend initiation of discharge for officers who have no MSO, meet any of the following criteria and the unit commander or ARPC have made a reasonable effort to contact them:  they fail to comply with minimum medical retention standards for continued service. Guidance on medical retention standards is provided in DAFMAN 48-123.

**18.12. ANG Unique Separations.** An ANG officer is separated from State status for the following reasons:

18.12.1.  Officer is non-selected for retention under ANGI 36-2651.

18.12.2.  The authorized period of excess or over-grade status expires and the officer is not reassigned to a vacant position compatible with the officer's grade.

18.12.3.  When authorized by state law.

18.12.4.  Officer's Federal recognition is terminated, withdrawn, or has not been extended by the Chief, NGB.

18.12.5.  The officer was selected for mandatory promotion by a central selection board when no position vacancy existed to the next higher grade and retention was not authorized by DAFI 36-2110.

18.12.6.  Failure to complete civilian education requirement as a condition of appointment.

18.12.7.  Non-availability of Paid Status Space.  Officers who become unqualified to hold an AFSC for their assigned Unit Manpower Document (UMD) position, by loss of professional status or otherwise, and will not or cannot become trained for another vacancy are separated from State status.  Upon request, the member may be concurrently transferred to ARPC.

18.12.8.  Deactivation of a Unit.  If an ANG unit is deactivated and there is no other unit within the area to which the member may be assigned, and the member does not join a unit outside that area, the member is separated from the ANG.  Upon request, the member may be concurrently transferred to ARPC.

18.12.9.  Removal from Unit.  When officers are located outside a reasonable commuting distance of their present unit and within a reasonable commuting distance of another ANG or reserve unit, they may request to be separated and transferred to ARPC.

18.12.10.  Officer applies and is accepted for an EAD tour in the AF. Guidance on EAD tours is provided in DAFI 36-2008. The officer separates from the State and is transferred to the AD AF.  The officer is not discharged.  The ANG FSS complies with the instructions contained on the EAD orders completed by AFPC.

18.12.11.  Attainment of Maximum Age Permissible by Law.  Separate ANG officers who have not qualified for retirement under DAFI 36-3203, by the date in which they reach the maximum age they are permitted to serve by law (10 USC § 12731) and concurrently discharge them from the reserve of the AF.

***Section 18E—Discharge of Officers for Misconduct, Moral or Professional Dereliction, or in the Interest of National Security Specific to the Reserve and Air National Guard.***

**18.13.  ANG Officers.**  ANG officers not on AD are discharged through the withdrawal of Federal recognition process in Title 32 United States Code Section 323.  Withdrawal of Federal recognition pursuant to 32 USC § 323(b) automatically results in discharge from a reserve of the AF appointment.  Discharge boards for ANG officers convened under this publication are withdrawal of Federal recognition boards.  TAGs, as the discharge/separation authority, submit a written request to conduct a withdrawal of Federal recognition board to NGB/A1PP.

**18.14.  Misconduct, Moral, or Professional Dereliction.** Unless specifically listed below, separation provisions for Misconduct, Moral, or Professional Dereliction are contained in **Section 18B** of this publication.  Commissioned officers who have committed one or more acts of misconduct or moral or professional dereliction may be discharged and the SecAF may characterize service as honorable, general, or UOTHC.  Additional types of misconduct, moral, or professional dereliction that can form the basis of a separation include:

18.14.1.  Mismanagement of government affairs.

18.14.2.  Termination of civil service appointment as an ART, MT, or AGR for reasons that warrant termination of appointment as an officer.

18.14.3.  Failure or dismissal from school when attendance is at DoD expense.  Apply this subparagraph when the failure or dismissal can reasonably be traced to factors the officer can control.

**18.15.  Civilian Conviction.**  Officers may be discharged for a civilian conviction, or action taken which is tantamount to a finding of guilty, including similar adjudications in juvenile proceedings, when the specific circumstances of the offense warrant discharge and a punitive discharge would be authorized for the same or a closely related offense under the UCMJ or state military code, the authorized sentence for the offense convicted of includes the possibility of confinement for 6 months or more, or the actual sentence received includes confinement for 30 days or more, all without regard to suspension or probation.

18.15.1.  Action "tantamount to a finding of guilty" may occur where, notwithstanding the absence of a specific finding of guilty, the court proceeds in a manner that is inconsistent with any reasonable hypothesis other than assumed guilt.  The most common example of this exists where, under statutory authority, a court or other agency of the judicial or legal system (to include a state or county prosecuting attorney in some instances) without specific finding of guilty, and with the consent of the individual, proceeds to subject the individual to some form of deprivation or restraint of the person's liberty for a period of time as a condition to some

ultimate official act of grace, forgiveness, or dismissal of charges; for example, successful probation in return for a clean record; deferred adjudication, or some other form of pretrial intervention.  Where there has been no action taken which is tantamount to a finding of guilty; or where action taken which is either tantamount to a finding of guilty, or an adjudication of guilty has been set aside under Federal or state laws, the unit commander may consider the member for discharge for other appropriate reasons, including discharge for the underlying misconduct.

18.15.2.  A commander must act promptly when the commander has information indicating a member is subject to discharge based on civilian conviction.  **(T-1)** The commander should evaluate the specific circumstances of the offense, how it occurred, the action of the civilian authority, the member's record, and the member's potential for future service.

18.15.3.  For ANG only, when a commander discovers that an officer has received a civilian conviction, the commander notifies TAG or CG.  **(T-1)**

18.15.4.  The unit commander prepares and forwards a report of a civilian conviction to the discharge authority or TAG or CG.  The commander completes the report even if the civil authorities suspend the sentence.  The report must include the following information:

18.15.4.1.  Offense or offenses for which convicted.  **(T-1)**

18.15.4.2.  Sentence received.  **(T-1)**

18.15.4.3.  Whether or not an appeal has been filed; and whether or not the conviction or the sentence has been appealed.  If no appeal has been filed, state the date when the right to appeal terminates.  **(T-1)**

18.15.4.4.  Place of confinement, if any.  **(T-1)**

18.15.4.5.  Text of the statute violated and text of the statute that provides the penalty. **(T-1)**

18.15.4.6.  Text of the statute relevant to a determination of whether confinement in a county jail can be considered a correctional institution, if applicable.  **(T-1)**

18.15.4.7.  When possible, a copy of the final judgment or order of the court, certified or otherwise properly authenticated, is included with the commander's report.  **(T-1)**

18.15.4.8.  A summary of the circumstances of the misconduct that led to the conviction. **(T-1)**

18.15.4.9.  A copy of the member's AD orders, if applicable.  **(T-1)**

18.15.4.10.  For Unit Reservists, if the commander determines that retention is appropriate and the civilian conviction involves an offense for which a punitive discharge would be authorized for the same or closely related offense under the UCMJ, the authorized sentence for the offense convicted includes the possibility of confinement for 6 months or more, or the actual sentence received includes confinement for 30 days or more, then a written justification must be processed to ARPC/CC. **(T-1)**

18.15.5.  Constructive Waiver of Civilian Conviction.  Constructive waiver is not recognized for discharges initiated against officers under this publication.  **(T-1)**

18.15.6. Appeal of Civil Conviction.  Separation or discharge processing may be initiated whether or not a member has filed an appeal of a civilian conviction or has stated an intention to do so.  Withhold execution of an approved discharge pending outcome of the appeal or until the time for appeal has passed.  However, upon request of the member or upon direction of the SecAF, the member may be separated prior to final action on the appeal.

18.15.6.1. If the appeal results in the conviction being set aside, do not discharge the member for civilian conviction.

18.15.6.2. If the show cause authority considers discharge warranted without awaiting outcome of an appeal, forward the case to the SecAF designee for decision.  In each case referred, an analysis of the situation should be furnished. The analysis should include:

18.15.6.2.1.  A complete review of the circumstances.

18.15.6.2.2.  A statement whether it is the conviction or the sentence that is under appeal.

18.15.6.2.3.  An indication whether or not the appeal is frivolous or unlikely of reversal.

18.15.6.2.4.  The estimated date action on the appeal will be finalized.

18.15.6.2.5.  A considered judgment by those in the best position to assess the validity of the appeal.

18.15.6.2.6.  Any other cogent reasons why the case should be treated in an exceptional fashion prior to completion of the appellate processes.

18.15.6.2.7.  The conviction is expected to withstand the appeal.

18.15.6.2.8.  No other circumstances exist requiring the return to military control of a member.

18.15.7.  The respondent officer may request execution of an approved discharge while the appeal is pending.  Such a request must be in writing and detail how the discharge benefits the respondent and state that it was made with the advice and assistance of legal counsel or pursuant to a waiver of counsel. **(T-1)** The request may be approved only if:

18.15.7.1.  There is an indication the respondent will benefit.  **(T-1)**

18.15.7.2.  The conviction is expected to withstand the appeal.  **(T-1)**

18.15.7.3.  No other circumstances exist requiring the return of the respondent officer, who is in civilian confinement, to military control.  **(T-1)**

18.15.8.  If an appeal results in the officer's conviction being set aside, do not discharge the member under this paragraph.  **(T-1)**

## Chapter 19

## SHOW CAUSE ACTIONS –GENERAL PRINCIPLES AND PROCEDURES

***Section 19A—General Guidance.***

**19.1.  General Instructions.**  This paragraph provides general principles and procedures to SCAs, commanders, and SJAs for initiating show cause actions for reasons/bases under **Chapter 18** for which the officer must show cause for retention on active duty as well as the officer's rights associated with initiation of SCA action.  Refer to **Chapter 20** for BOI procedures and guidance to include the officer's rights when the officer is entitled to a BOI.  **(T-1)** (**Note**: Review **Chapter 14** for rules and procedures applicable to all separation actions.)

**19.2.  Officers Entitled to a BOI.**  Officers recommended for discharge for a reason in **Chapter 18** are entitled to a BOI if one or more of the conditions listed below apply:

19.2.1.  The respondent is a non-probationary officer.

19.2.2.  The respondent is a probationary officer, and the show cause authority recommends an UOTHC.

19.2.3.  All ANG officers.

***Section 19B—Commanders.***

**19.3.  Immediate (Unit) Commander's Responsibilities.**

19.3.1. Commanders subordinate to the SCA may recommend initiation of involuntary discharge action.  They must not take dispositive action inconsistent with discharge for cause (e.g., promotion) in cases in which discharge for cause is reasonably indicated without first consulting the SCA.  **(T-1)** SJA involvement at all levels is strongly recommended.

19.3.2.  Commanders must be aware that passage of time and other events or procedures can dramatically affect administrative discharge processing (e.g., writing of promotion recommendation forms; window for potential promotion proprietary actions has opened or is approaching closure; officer is approaching non-probationary status; officer is nearing retirement eligibility; officer is required by law to be discharged for two non-selections for promotion before completion of action initiated under this publication).  Accordingly, attention to actions required by other instructions and soonest-possible initiation and expeditious processing at all levels is essential to protect the interests of both the USAF or USSF and the respondent.

19.3.3.  Taking Action Under this Publication When Other Action Is Ongoing.  Discharge action for reasons under **Chapter 18** is based on the officer's acts or omissions and not on other actions that were taken as a result of those acts or omissions. (For example, initiation for "stealing $5,000 from the Army and Air Force Exchange Service (AAFES) for which a member was convicted by a general court-martial" would be correct, but "initiation for conviction by general court-martial" and "conviction by general court-martial for theft of $5,000 from AAFES" would be potentially problematic.)  As all the necessary evidence to support initiation of action under this publication is normally available independently of how it is used for other purposes (for example, promotion propriety action or action to terminate

clinical privileges), commanders should not delay action under this publication on the theory that such other action should or must be completed first. **(T-1)**

19.3.4. Commanders must review **Chapter 14** guidance and specifically **Section 23A**, General Information, and consult with their servicing legal office and MPF when considering initiation of involuntary discharge action or evaluating information that could lead to such action. **(T-1)**

19.3.5. Unit commanders must comply with DoDM 5200.02_AFMAN 16-1405 when initiating discharge action for cause under this publication on an officer who has, or once had, access to SIOP-ESI, or other special programs (not SCI). **(T-0)** Refer to **paragraph 14.3** for additional information.

19.3.6.  The commander schedules the officer for a medical examination. Guidance on medical examinations is provided in DAFMAN 48-123.  The application of the requirement for a comprehensive SHPE to ARC personnel is limited to certain criteria as detailed in DAFMAN 48-123, Chapter 6.  All separating members must take a comprehensive SHPE. **(T-1)** If time permits, the member may elect to have the SHPE accomplished through a DoD MTF or through the VA. **(T-1)** (**Note**:  Service members will not require a SHPE if they are separating or retiring after being found unfit for continued military service through the disability evaluation process and have completed the exams in that process. **(T-1)**)

19.3.6.1.  The MTF uses the applicable guidance to determine the scope of the medical examination and, if necessary, coordinates with the VA to ensure all required documentation is recorded in the member's record prior to separation.  (**Note**: The SHPE must be recorded in the member's record before the MTF will clear the member for departure.) **(T-1)**

19.3.6.2.  The MPF ensures the member is cleared by the MTF prior to out-processing.

19.3.6.3.  Refer to DoDI 1332.30, AFMAN 41-210 and AFI 44-172 regarding specific PTSD or TBI screening and examination requirements for those undergoing administrative separation or resigning in-lieu of court-martial.

19.3.6.4.  When the officer shows evidence of mental illness, the medical officer attaches an evaluation by a Mental Health Professional (see **Attachment 1** for definition) to the AF Form 422, *Notification of Air Force Member's Qualification Status*.  The Mental Health Professional prepares an evaluation based on available information if the officer does not agree to an examination.

19.3.7.  Comply with DAFI 90-6001 to notify the SCA when the commander is aware, or is made aware by the officer or others, that the officer is alleged to have been the victim of a sexual assault.  In the recommending action memorandum, the commander should include a statement indicating that the officer has reported being a past victim of sexual assault.  The commander must provide sufficient information concerning the alleged assault and the respondent's status to ensure a full and fair consideration of the officer's military service and particular situation.  **(T-1)** As necessary, include information by reference with corresponding attachments.  Commanders should consult with the OSI and the servicing legal office for guidance on the level of information that may be applicable.

**19.4.  Documentation (Supporting Evidence).**  The following are examples of appropriate and commonly used methods commanders or other appropriate authorities use to document the nature and quality of an officer's performance of duty and/or misconduct, moral, or professional dereliction.  If actions referred to have not been completed at the time of initiation of action under this publication, amend the initiation memorandum when they are available:

19.4.1.  Performance reports.

19.4.2.  Records of formal counseling.

19.4.3.  Admonishments or reprimands.  Include a copy of the action together with all documentary evidence that supported the admonition or reprimand, and the officer's responses and other matters submitted on the officer's behalf.

19.4.4.  Training reports.

19.4.5.  Operational or technical evaluation reports.

19.4.6.  Medical reports.

19.4.7.  Witness statements and memoranda for record.

19.4.8.  Nonjudicial punishment (Article 15, UCMJ).  Notwithstanding the provisions of any other directive defining what constitutes a "record of nonjudicial punishment," include a copy of the nonjudicial punishment action together with all documentary evidence that supported the nonjudicial punishment action, including appeal, and the officer's responses and other matters submitted on the officer's behalf, if such information is available.

19.4.9.  Promotion propriety actions.  Notwithstanding the provisions of any other directive defining what constitutes a "record of promotion propriety action," include a copy of any removal, delay, or not-qualified-for-promotion action including all documentary evidence that supported the propriety action, and respondent's responses, and other matters submitted on the respondent's behalf.

19.4.10.  Certified copies of civilian conviction.

19.4.11.  Extracts of records of and/or /transcripts of testimony from civilian criminal trials and courts-martial.  (**Note**: It should seldom, if ever, be necessary to include entire records or transcripts.)

19.4.12.  Court-martial orders.

19.4.13.  SFS and OSI reports, extracts from SFS and OSI reports, reports furnished through OSI channels and investigative reports or documents from other agencies.  SFS and OSI reports can generally be used to support discharge actions and may be furnished in their entirety to military defense counsel.  (See AFI 71-101, Volume 1 for detailed information, particularly regarding what may be furnished to civilian defense counsel.)

19.4.14.  Reports of command-directed investigations or inquiries.  All documents should comply with Personally Identifiable Information and Controlled Unclassified Information requirements and be redacted accordingly.  (**Note**: If these documents, including attachments, are to be used at any stage of a discharge proceeding, they must be provided to the officer in non-redacted form.)  **(T-1)**

19.4.15.  Medical reports.  Follow the guidance in AFMAN 41-210 when using and releasing medical data.

*Section 19C—Initiating Action.*

**19.5.  Preparing the Recommending Action and Show Cause Letter of notifications and the Statements of Reasons (Grounds) for Discharge.**  The respondent's commander, in consultation with the SJA, is responsible for preparing the recommending action memorandum and, if requested or required by the SCA, a draft statement of reasons for discharge for potential adoption by the SCA for inclusion in the show cause letter of notification.  Provided below is guidance for recommending commanders and SCAs in preparing the statement of reasons.

19.5.1.  In substandard duty performance cases, the notification must specify that the action is based on substandard performance of duty based on one or more of the reasons at **paragraph 18.5.1** through **paragraph 18.5.17** and then indicate with reasonable specificity what the respondent officer did or did not do that makes that reason applicable.  **(T-1)** In misconduct and moral and professional dereliction cases, the notification must specify that the action is based on misconduct or moral/professional dereliction based on one or more of the reasons at **paragraph 18.7** and then indicate with reasonable specificity what the respondent officer did or did not do that makes the reason applicable. **(T-1)**

19.5.2.  Include all reasonably applicable reasons for discharge, specifying what the officer did or failed to do that makes each reason applicable.  This puts the respondent on notice as to what the respondent is being required to defend against, and permits BOI members (if applicable), intermediate reviewing authorities, and the SecAF, or designee, to make informed decisions in light of the totality of an officer's service rather than of only isolated aspects thereof.  For example, the officer's conduct, behavior, or status might fall under more than one section of this chapter; in such cases, cite all reasonably applicable significant reasons (e.g., conduct amounting to a moral or professional dereliction might also constitute serious misconduct; in such a case, basing discharge action on both would be warranted).

19.5.3.  When alleging serious or recurring misconduct punishable by military or civil authorities, describe the conduct and indicate the applicable criminal code provisions that make it punishable, but do not specify that the conduct "was in violation of" a criminal code provision unless action was actually taken under that code provision either by civil criminal court conviction, action by a civil criminal court tantamount to a finding of guilty, military court-martial conviction, or nonjudicial punishment (Article 15, UCMJ) action.

19.5.4.  Similarly, avoid conforming the language used in statements of reasons to that used in military or civilian criminal charges and specifications.  Reasons: their language and form reflect narrow, separate interests of administration of criminal justice and contain elements peculiar to criminal proceedings unnecessary for administrative proceedings but which would generally have to be proved if alleged.  Further, criminal charges and specifications do not provide latitude for setting forth aggravating circumstances, military impact, etc., inclusion of which in the statement of reasons for discharge facilitates better-informed analyses of the discharge case.  (**Note**: This guidance is inapplicable where the statement of reasons is quoting language from a charge sheet, indictment, certificate of conviction, or similar documents, or in cases premised on sexual assaults in which the government must allege an Article 120 offense.)

**19.6.  Forwarding the Recommending Action Memorandum.**  The commander forwards to the SCA the memorandum with all unclassified documentary evidence recommending initiation of the show cause action.   The base level SJA provides a legal review as an attachment to the memorandum.

**19.7.  Show Cause Authority (SCA) Responsibilities.**  The SCA:

19.7.1.  Reviews the discharge recommendation action against an officer within the SCA's command.

19.7.2.  Evaluates all information presented concerning the case and takes action, as necessary, to ensure completeness and accuracy.

19.7.3.  Ensures the SJA completes a legal review and includes it in the case file, but not as an attachment to the show cause letter of notification (i.e., the officer is not entitled to a copy of the legal review).

19.7.4.  Terminates the case when determining that a discharge is not warranted.

19.7.5.  May return a case to the unit commander for further investigation or documentation without terminating the case.

19.7.6. Initiates action to separate the officer from active duty if a preponderance of the evidence, in the SCA's judgment, supports initiation of action and involuntary separation is warranted.

**19.8. Notifying Officer to Show Cause for Retention.**  The SCA personally signs the show cause letter of notification.  The show cause letter of notification tells the officer the reasons (see **Chapter 18**) for the discharge action and what conduct or duty deficiency supports those reasons, the worst characterization of discharge authorized, characterization of discharge recommended, and the officer's rights and options. It must include as specifically described attachments, all the evidence that supports initiation of the discharge action which will go to a BOI or to SecAF, or designee.  (**Note**: The Board is not restricted to considering only that evidence and may receive additional evidence IAW the procedures of the BOI.)  **(T-1)** The initiation notification should normally be served on the respondent by the unit commander, or another officer designated to make service.  If the officer is not reasonably available for personal service of notification, notification is made by electronic means, registered mail, or certified mail, with return receipt (or by an equivalent form of notice if such service by US mail is not available for delivery at an address outside the US) to the officer's last known address.  The officer acknowledges receipt in writing upon being served the letter of notification, or duly witnessed by a third party if the officer refuses to acknowledge receipt.

19.8.1.  The SCA sends copies of the letter of notification to:

19.8.1.1.  ARPC/DPT for AFR SCA.

19.8.1.2. The MAJCOM, FLDCOM, DRU, or organization commander if not the initiating SCA.

19.8.2. When the SCA initiates action based on information received from a promotion selection board, the SCA sends copies of the letter of notification to:

19.8.2.1.  The officer's commander.

19.8.2.2.  The officer's MPF.

19.8.2.3.  ARPC/DPT for AFR SCA.

19.8.2.4.  The MAJCOM, DRU, or organization commander, if not the initiating SCA.

19.8.3.  Special Processing Procedures for Officers Who Have Made an Unrestricted Report of a Sexual Assault.  An officer who receives notification of a show cause action under **Chapter 18** of this publication, and who is within one year of final disposition of the officer's unrestricted sexual assault allegation as of the date of show cause notification, must be advised of the right to request review by the SCA if the officer believes the commander's recommendation for involuntary separation was initiated in retaliation for having made an unrestricted report of a sexual assault. **(T-1)** The following additional criteria apply to officers who receive notification of a show cause action under **Chapter 18** of this publication, and who are within one year of final disposition of the officer's unrestricted sexual assault allegation as of the date of show cause notification:

19.8.3.1.  An officer may request further review by the SCA of a show cause notification any time prior to approval of the discharge by the SecAF.

19.8.3.2.  An officer requesting review of a commander's recommendation must affirmatively assert the belief that the involuntary separation recommendation was initiated in retaliation for making a report of sexual assault.  **(T-1)**

19.8.3.3.  When an officer requests review, the SCA must review the circumstances of, and grounds for, the commander's recommendation for involuntary separation.  **(T-1)**

19.8.3.3.1. If the SCA determines the involuntary separation recommendation was made in retaliation for the report of sexual assault, the SCA terminates show cause notification proceedings.  In such cases, the SCA may refer the retaliation determination to the appropriate inspector general for additional consideration and possible investigation.

19.8.3.3.2. If the SCA determines the commander's involuntary separation recommendation was not made in retaliation for the report of sexual assault, the SCA may approve continued processing of the show cause notification, if there is sufficient evidence to support separation and separation is warranted.  The SCA must indicate that the commander's involuntary separation recommendation was not made in retaliation for the report of sexual assault.  **(T-1)**

19.8.3.3.3.  In any case where the SCA terminates show cause notification based solely upon a finding that the recommendation for involuntary separation processing was initiated in retaliation for the report of sexual assault, the SCA may consider whether show cause notification should be initiated based on the facts of the case independent of the report of sexual assault.

19.8.4. Special Processing For officers who have served or are currently serving in an imminent danger pay area or who have filed an unrestricted report of sexual assault, or who have self-disclosed they are a victim of a sex-related offense, an intimate partner violence-related offense, or a spousal abuse offense during service, a diagnosis of a personality disorder or other mental disorder not constituting a physical disability will:

19.8.4.1.  Be corroborated by a peer or higher-level mental health professional.  **(T-0)**

19.8.4.2.  Be indorsed by the AF/SG.  **(T-0)**

19.8.4.3.  Address PTSD and other mental illness co-morbidity.  (**Note**:  Separation under **paragraph 18.5.8** will not be initiated if there is a diagnosis of service-related PTSD, unless the officer is subsequently found fit for duty under the DES following guidance provided in AFI 36-3212).

19.8.4.4.  Procedure.   The evaluating Mental Health Professional (see **Attachment 1, Terms** for definition) will consult with the officer's commander to determine if separation under this provision is appropriate. **(T-1)** When, in the opinion of the officer's commander or Mental Health Professional, separation under **paragraph 18.5.8** is appropriate, the local MTF will forward the diagnosis with supporting documentation through appropriate channels for corroboration by a peer or higher-level mental health professional and indorsement from the AF/SG. **(T-1)**

19.8.4.5.  Documentation will be forwarded to the AF Medical Operations Agency to obtain AF/SG indorsement. **(T-1)** In such cases where the AF/SG does not concur in the diagnosis of a personality disorder or other mental disorder not constituting a physical disability, no further action will be taken to separate the officer under **paragraph 18.5.8**. **(T-0)**

19.8.4.6.  Upon receipt of the AF/SG review concurring with the diagnosis of a personality disorder or other mental disorder not constituting a physical disability, the MTF will notify the officer's commander of the decision. **(T-1)** The officer's commander will then notify the SCA of the AF/SG's concurrence with the diagnosis of a personality disorder or other mental disorder not constituting a physical disability. **(T-3)** The SCA then determines whether the information or evidence presented warrants initiation of discharge action before referring a case to an administrative board under **Chapter 20** or **Chapter 22** of this publication.  If the SCA determines that the information or evidence does not warrant discharge action, the SCA notifies the officer pending discharge action that the action is terminated.  **(T-0)**

19.8.5.  The following additional criteria as stipulated below applies to members who are being recommended for separation for reasons listed in **paragraph 18.7** of this DAFI.  The pre-separation health assessment required by this paragraph is conducted to determine any medical condition incurred during active duty service, provide baseline information for future care, complete a member's military medical record, and provide a final opportunity before separation to document any health concerns, exposures, or risk factors associated with active duty service.

19.8.5.1.  An officer must receive a medical examination, IAW with **paragraph 19.3.6** of this publication, to assess whether the effects of PTSD or TBI constitute matters in extenuation that relate to the basis for administrative separation, if the officer meets all of the following criteria **(T-0)**:

19.8.5.1.1.  The officer is being administratively separated under a characterization that is not either Honorable or Under Honorable Conditions (General). **(T-0)**

19.8.5.1.2.  The officer was deployed overseas to a contingency operation or was sexually assaulted during the previous 24 months.  **(T-0)**

19.8.5.1.3. The officer has been diagnosed by a physician, clinical psychologist, psychiatrist, licensed clinical social worker, or psychiatric advanced practice registered nurse as experiencing PTSD or TBI, or reasonably alleges the influence of PTSD or TBI based on the service of the member while deployed, or based on the sexual assault. **Note**: In a case involving PTSD, the medical examination shall be performed by a clinical psychologist, psychiatrist, licensed clinical social worker, or psychiatric advanced practice registered nurse.  **(T-0)** In a case involving TBI, the medical examination may be performed by a physician, clinical psychologist, psychiatrist, or other health care professional, as appropriate.  **(T-0)**

19.8.5.1.4.  The officer is not being separated under a sentence of a court-martial, or other proceeding conducted pursuant to the UCMJ.  (**Note**:  A resignation for the good of the service in lieu of court-martial does not constitute "a court-martial, or other proceeding conducted pursuant to the UCMJ" for purposes of this paragraph. Compliance with **paragraph 19.8.5** is required for such resignations.)  **(T-0)**

19.8.5.2. An officer receiving a pre-separation medical examination IAW **paragraph 19.8.5** of this publication will not be separated until the result of the medical examination has been reviewed by appropriate authorities responsible for evaluating, reviewing, and approving the separation action.  **(T-0)** Although specific comments are not required; the commander and other reviewing authorities identified in this paragraph must indicate the medical examination was reviewed.  **(T-1)**

19.8.5.3. This provision does not change any other processing requirements of this publication to include, but not limited to, Dual Action Processing or Service Retirement Eligibility.

## Section 19D—Officer's Rights When Notified to Show Cause for Retention.

**19.9.  Officer's Rights.**  An officer recommended for discharge under **Chapter 19** for reason(s) specified in **Chapter 18** of this publication has the right to:

19.9.1.  Receive written notification of the reasons for discharge, the least favorable characterization of separation authorized, and recommended characterization of discharge. **(T-0)**

19.9.2.  Receive copies of documents attached to the initiation notification as well as any documents the SCA intends to furnish to a BOI or send to the SecAF, or designee, unless restricted under **paragraph 14.5**.  **(T-0)**

19.9.3.  Consultation with and representation by military counsel (of their choice) or to obtain civilian counsel at their own expense.  **(T-0)**

19.9.4.  Within 10 calendar days, submit statement in rebuttal or matters for the SCA to consider.  Officer may also provide information IAW **paragraph 14.6**, if applicable.  **(T-0)**

19.9.5.  Waive in writing any of the above rights.  Refer to **paragraph 20.5** for additional rights of the officer when notification of SCA requires referral to a BOI IAW **paragraph 19.2** or when case is referred to a BOI by the SCA or SecAF, or designee.  **(T-0)**

19.9.6. An officer eligible for retirement may, at any time before the SecAF, or designee, decides the officer's administrative discharge case, apply for retirement when eligible under DAFI 36-3203.

19.9.6.1. In order to be eligible for retirement, an officer must have completed the minimum eligibility required under 10 USC § 9311 (20 years TAFMS and 10 years TAFCS) upon the date of request for retirement. **(T-0)**

19.9.6.2. Regular officers are ineligible to request transfer to the Retired Reserve. If qualified for a reserve retirement, the member must resign from the active component and request appointment to the reserve component before a reserve retirement may be requested and approved. **(T-1)**

19.9.6.3. The SCA:

19.9.6.3.1. May accept the retirement application and continue processing of the show cause action and hold in abeyance forwarding the retirement application to the SecAF, or designee, upon completion of the show cause action.

19.9.6.3.2. May accept and indorse the retirement application and within 10 calendar days after receiving it, forward it IAW **paragraph 19.13** to the SecAF, or designee, through AFPC/DPMSSR

19.9.6.3.3. The SCA decides whether to continue processing the show cause action or whether to hold it in abeyance pending SecAF, or designee, action on the officer's retirement application and grade determination. (**Note**:  An OGD (see DAFI 36-3203) must accompany the retirement request when it is forwarded to the SecAF, or designee.) **(T-1)**

19.9.6.4. AFPC/DPMSSR provides retirement instructions to the MPF upon SecAF, or designee decision.  If the request for retirement is approved, it is effective ASAP.

19.9.7.  Withdrawing a Retirement Request.

19.9.7.1.  Officer may request withdrawal of a retirement request.

19.9.7.2.  The SCA may approve a request for withdrawal of retirement not yet referred to the SecAF, or designee, through AFPC Separations.  The SecAF, or designee, approves or disapproves all other requests for withdrawal regardless of the status of the case.  Notify the initiating commander, SCA, and AFPC/DPMSSR (Retirement Branch) of a request to withdraw a request to retire in lieu of administrative discharge.

19.9.7.2.1.  Send the withdrawal request with the unit commander's indorsement and a copy of the retirement request to AFPC/DPMSSR through the SCA.

19.9.7.2.2.  The SCA provides a recommendation as to the disposition of the withdrawal request when the retirement request has been referred to the SecAF, or designee.

19.9.8.  Resigning Instead of Undergoing Administrative Discharge Proceedings.

19.9.8.1.  An approved resignation is a means of terminating the officer's appointment independent of the merits of and procedures associated with the underlying show cause action that made the officer eligible to tender a resignation in lieu of further show cause

action.  Such resignations have a specific separation program designator code.  The right of an officer to resign is subject to certain restrictions.  A conditional tender is one in which an officer tries to restrict the different types of service characterizations available under a particular paragraph by tendering the resignation for a specific type of characterization. Conditional TOR are not accepted by the Air Force or Space Force.

19.9.8.1.1.  Officers may tender an unconditional resignation at any time after they become aware that they have been recommended for show cause discharge action up to the time the BOI members go into closed session to deliberate, or for non-BOI cases, before the SecAF, or designee, takes final action.  The SCA determines if processing of the show cause action will continue or be held in abeyance.  **(T-1)**

19.9.8.1.2.  Officers who tender an unconditional resignation are subject to recoupment of education assistance, special pay, or bonuses and sign a statement acknowledging their liability for this potential indebtedness, which is established by DFAS incident to separation out-processing.  The statement is included with the resignation, but failure to include the statement does not relieve the officer from recoupment liability or recoupment action.  The officer should refer to **paragraph 14.6** for guidance regarding recoupment liability.  The officer may seek additional guidance regarding recoupment liability from the MPF Chief.

19.9.8.2.  Acceptance or Rejection of a Resignation. The SCA, within 5 duty days of receipt of the TOR for regular officers, or within 60 calendar days of the command receiving a TOR for reserve officers, takes one of the following actions:

19.9.8.2.1.  Rejects the unconditional resignation.  (**Note**: This is seldom a preferred option.)  If the officer is entitled to a BOI, the SCA informs the officer that an unconditional or conditional board waiver may be submitted.  If the officer fails to make an election within 3 workdays for regular officers, or 10 calendar days for reserve officers, the SCA notifies the officer that a BOI will be scheduled.  If the officer is not entitled to a BOI, the SCA informs the officer that the case will be referred to the AFPB for final SecAF, or designee, decision.  **(T-1)** The fact that an unconditional resignation was offered and rejected is not made a part of the record shown to the BOI but is included with the case file when it is forwarded to the SecAF, or designee, through AFPC/DPMSSR.  **(T-0)**

19.9.8.2.2.  The SCA may return without action, as unauthorized and void conditional resignations or untimely unconditional resignations.

19.9.8.2.3.  Indorse the resignation to the SecAF, or designee, through AFPC/DPMSSR IAW **paragraph 19.13** recommending acceptance.

19.9.8.2.4.  The SecAF, or designee, may:

19.9.8.2.4.1.  Direct officer's retention.

19.9.8.2.4.2.  Reject the resignation and return the case file to AFPC/DPMSSR for return to the SCA.  Discharge processing then continues.

19.9.8.2.4.3.  Accept an unconditional resignation and approve the characterization of separation authorized IAW **Chapter 18.**

19.9.8.3.  If the resignation is accepted by the SecAF, or designee, the separation effective date is ASAP IAW **paragraph 14.23**.  AFPC/DPMSSR provides separation instructions to the regular component MPF upon SecAF, or designee, decision.

19.9.8.4.  Withdrawing Resignations.

19.9.8.4.1.  Officers may request withdrawal of an unconditional resignation.  The officer sends the resignation withdrawal request, including underlying reasons for the request if the officer elects to specify them, directly to the SCA with copies to the servicing legal office, AFPC/DPMSSR, and the officer's unit commander.  The SCA should obtain AFPC/DPMSSR and unit commander input before action, particularly for withdrawals requiring SecAF, or designee, action (below).  The SCA's SJA is encouraged to consult with AF/JAJ.

19.9.8.4.2.  The SCA may approve a request for withdrawal not yet referred to AFPC Separations for transmittal to SecAF.

19.9.8.4.3.  The SecAF, or designee, approves or disapproves all other requests for withdrawal.  For withdrawal requests requiring SecAF, or designee, action, the SCA forwards the withdrawal request to the SecAF, or designee, through AFPC/DPMSSR with the SCA's recommendation.  The SecAF, or designee, may review the issue internally with the AFPB or may refer to AF/JA for analysis of and advice regarding the withdrawal request.

19.9.8.4.4.  If the SecAF, or designee, accepts the withdrawal request the SecAF, or designee, returns the case to the SCA, through AFPC/DPMSSR, and discharge processing continues.

19.9.8.4.5.  If the SecAF, or designee, denies the withdrawal request and AF/JA has already reviewed the resignation case file, SecAF notifies the SCA and AFPC/DPMSSR of the denial and processes the case to conclusion.

19.9.8.4.6.  If the SecAF, or designee, denies the withdrawal request prior to receipt of AF/JA review of the resignation case file, the SecAF, or designee, notifies the SCA and AFPC/DPMSSR of the denial and forwards the withdrawal request documentation to AF/JA for inclusion in the case file.

19.9.9.  Submit a Conditional or Unconditional Waiver of Board Hearing.  Officers entitled to show cause for their retention at a BOI may waive their right to a BOI unconditionally or conditionally.  A conditional waiver is an offer made by a BOI-entitled officer who has not previously been denied, to relinquish the officer's right to show cause for retention before a BOI, in return for a specified characterization of discharge.  The waiver may not be conditioned on anything other than characterization of discharge, for example, reason for discharge, separation code, or discharge date.  The SCA may return without action as void and unauthorized waivers conditioned on anything other than discharge characterization.

19.9.9.1.  Officers:

19.9.9.1.1.  May submit a conditional waiver to the SCA for consideration no later than seven duty days prior to the scheduled convening of the BOI.  After that point, only an unconditional BOI waiver may be submitted up to the time the BOI members go into closed session to deliberate.  (**Note**: The SCA may waive the seven-day requirement,

however, a BOI should not be delayed only because the officer has submitted a conditional waiver less than seven days before a BOI and the SCA has not yet acted on it).

19.9.9.1.2.  Who submit a conditional or unconditional waiver of a board hearing are subject to recoupment of education assistance, special pay, or bonuses and sign a statement acknowledging their understanding of this potential indebtedness, which is established by DFAS incident to separation out-processing.  The statement is included with the waiver.  In such a case, the statement is not included, it does not relieve the officer from recoupment action.  Officer should refer to **paragraph 14.6** for guidance regarding recoupment liability.  The officer may seek additional guidance regarding recoupment liability from the MPF Chief.  Failure on the part of the officer to receive guidance or acknowledge potential recoupment liability as provided in this publication is not a bar to recoupment.

19.9.9.2.  Acceptance or Rejection of a Conditional or Unconditional Waiver of Board Hearing.

19.9.9.2.1.  The SCA may:

19.9.9.2.1.1.  Reject a conditional waiver and inform the officer that either an unconditional resignation or an unconditional board waiver may be submitted.  If the officer fails to make an election within 3 calendar days, a board hearing is scheduled.  In cases referred to a BOI, processing continues without reference to, or consideration of, the rejected conditional waiver.  The fact that a conditional waiver was offered and rejected is not made a part of the record shown to the BOI, but is included with the case file when it is forwarded to the SecAF, or designee, through AFPC/DPMSSR.

19.9.9.2.1.2.  Return without action as unauthorized and void an untimely conditional or unconditional waiver or waivers conditioned on anything other than discharge characterization.

19.9.9.2.1.3.  Forward the board waiver to the SecAF, or designee, through AFPC/DPMSSR IAW **paragraph 19.13** with a recommendation for approval.

19.9.9.2.2.  The SecAF, or designee, may:

19.9.9.2.2.1.  Direct officer's retention.

19.9.9.2.2.2.  Reject the board waiver and return the case file to the SCA through AFPC/DPMSSR.  Discharge processing then continues.

19.9.9.2.2.3.  Accept a conditional waiver and approve the type of separation specified in it, or a more favorable service characterization.

19.9.9.2.2.4.  Accept an unconditional board waiver and approve the type of separation authorized IAW with **Chapter 18.**

19.9.9.2.3.  If the waiver is accepted by the SecAF, or designee, the separation effective date is ASAP IAW **paragraph 14.23**.  AFPC Separations provides separation instructions to MPF upon SecAF, or designee, decision.

19.9.9.3.  Withdrawal of a Conditional or Unconditional Waiver of Board Hearing.  The officer may request that the SCA approve withdrawal of a conditional or unconditional waiver.  The officer sends the withdrawal request, including underlying reasons for the request if the officer elects to specify them, directly to the SCA with a copy to the officer's unit commander, the servicing legal office, and AFPC/DPMSSR.

19.9.9.3.1.  The SCA may approve the withdrawal of a waiver not yet forwarded to AFPC Separations for transmittal to the SecAF, or designee.  BOI processing then continues.

19.9.9.3.2.  The SecAF, or designee, approves or disapproves all other requests for withdrawal.  For withdrawal requests requiring SecAF, or designee, action, the SCA forwards the withdrawal request to the SecAF, or designee, through AFPC/DPMSSR with the SCA's recommendation.  The SecAF, or designee, may review the issue internally with the AFPB or may refer to AF/JAJ for analysis of and advice regarding the withdrawal request.

19.9.9.3.3.  If the SecAF, or designee, accepts the withdrawal request the SecAF, or designee, returns the case to the SCA, through AFPC/DPMSSR, and BOI processing continues.

19.9.9.3.4.  If the SecAF, or designee, denies the withdrawal request and AF/JAJ has already reviewed the case file, the SecAF, or designee, notifies the SCA and AFPC/DPMSSR of the denial and processes the case to conclusion.

19.9.9.3.5.  If the SecAF, or designee, denies the withdrawal request prior to receipt of AF/JAJ review of the case file, the SecAF, or designee, notifies the SCA and AFPC/DPMSSR of the denial and forwards the withdrawal request documentation to AF/JAJ for inclusion in the case file.

*Section 19E—Post-Initiation Notification Matters Not Including BOI Processing.*

**19.10.  Requests for Delay in Responding to the Show Cause Letter of notification.**

19.10.1.  Regular officers must send a request for delay in responding to the SCA, or the SCA's designee as specified in the initiation notification, within 5 calendar days after receiving the show cause letter of notification. **(T-1)** Such delay requests must justify in specific detail why more time is needed to respond. **(T-1)** If the SCA determines the length of time requested is unwarranted or unreasonable, the request may be denied, or a shorter delay may be approved. **(T-1)**

19.10.2.  The SCA, or the SCA's designee, notifies the officer of the decision within 5 calendar days of receiving the officer's request.

**19.11.  Amending the Show Cause Letter of notification.**  The SCA may amend the show cause letter of notification before sending a case to the SecAF, or designee, or referring a case to a BOI. When substantively amending the letter of notification, the SCA furnishes the regular officer with the amended show cause letter of notification together with supporting evidence, if any, and allows the officer not less than three nor more than 10 calendar days (depending on the significance of the amendment) to prepare a response.

**19.12.  New Information.**

19.12.1.  If the SCA receives new relevant information after forwarding the case to the SecAF, or designee, the SCA or designee should immediately notify AFPC/DPMSSR to determine how best to proceed considering the status of the case at the AFPB and other constraints such as statutorily driven separation dates.

19.12.1.1.  Time permitting, the SCA furnishes a copy to the respondent with notification that SCA intends to forward the new information to the SecAF, or designee, thus affording the officer an opportunity to submit rebuttal or other comments.  The SCA then forwards the information together with the respondent's comments, if any, to AFPC/DPMSSR electronically for retransmission to the SecAF, or designee, through AF/JAJ.

19.12.1.2.  If time does not permit advance referral to the officer for comments, the SCA sends the new information directly to the SecAF, or designee, with a copy to the officer, affording the officer the opportunity to furnish a rebuttal or response directly to the SecAF, or designee, with a copy to the SCA.

19.12.2.  If the new information causes the SCA to determine that discharge action is not warranted after the respondent has been notified of initiation of involuntary discharge action but before AFPC Separations sends the case to the SecAF, or designee, the SCA notifies the officer that the action is terminated either with or without prejudice, as appropriate under the circumstances, and sends a copy of the termination memorandum to AFPC/DPMSSR.

19.12.2.1.  If the case has been forwarded to the SecAF, the SCA makes a recommendation to the SecAF, or designee, by the most expeditious means through or with a copy to AFPC/DPMSSR that the SecAF terminate the action or return it to the SCA for termination. The SCA's SJA should contact AF/JAJ as early as possible.

19.12.2.2.  If the new information causes the SCA to determine that the original notification should be amended or that the discharge characterization should be different and the case has not been referred to the SecAF, or designee, the SCA takes appropriate action.  If the case has been forwarded to the SecAF, or designee, the SCA makes a recommendation to the SecAF, or designee, by the most expeditious means through or with a copy to AFPC/DPMSSR.  The SCA's SJA should contact AF/JAJ as early as possible.

**19.13.  SCA Referral and Transmittal to SecAF, or Designee, of Show Cause Actions Not Referred to a BOI.**

19.13.1.  The SCA:

19.13.1.1.  Refers to the SecAF, or designee, the case of a probationary officer when the SCA recommends a service characterization of Honorable or Under Honorable Conditions (General) unless the SCA directs referral to a BOI.

19.13.1.2.  Refers to the SecAF, or designee, the case of a probationary or non-probationary officer who has submitted, and the SCA recommends acceptance of, a TOR or waiver of board hearing.

19.13.1.3.  Refers to the SecAF, or designee, the case of a probationary officer or non-probationary officer who has submitted a request for retirement.

19.13.2. Case files are forwarded to the SecAF, or designee, through AFPC/DPMSSR and include the original of the following:

19.13.2.1.  The show cause letter of notification.

19.13.2.2.  All supporting documents.

19.13.2.3.  The officer's response (if any).

19.13.2.4.  Comments supporting the recommendation tailored to the case.  "Generic" comments and recommendations ("boilerplate") are particularly and conspicuously unhelpful to the SecAF, or designee.

19.13.2.5.  Retirement requests will include an OGD (see DAFI36-3203). **(T-1)**

19.13.2.6.  Copies (single side only) of all the officer's performance reports.

19.13.2.7.  Report of Medical Assessment (this is the medical clearance memorandum; the DD Form 2807-1 and DD Form 2808 are not included in the record).

19.13.2.8.  The SCA's SJA legal review of (1) the recommendation to initiate discharge processing and of (2) the member's response, TOR, waiver of board hearing, or request for retirement.

19.13.2.9.  Chronology.

19.13.3. Files should be assembled in a manner befitting the subject matter (potential termination of an officer's appointment) and the position of the final decision authority (the, designee).

## 19.14.  AFPC Separations Actions.

19.14.1.  Reviews the case for administrative correctness and existence of ADSCs which could warrant recoupment, and returns to the SCA for corrective action case files which are in error, incomplete, or which are assembled in a manner inappropriate for transmission to the SecAF, or designee.

19.14.2. Verifies whether dual action processing is required under **paragraph 14.17** and coordinates with AFPC/DPFD for those cases requiring dual processing.

19.14.3. Verifies whether approval of separation or retirement action would involve recoupment of government funds IAW **paragraph 14.6** (**Note**: AFPC Separations does not provide recoupment amount in advance of the SecAF, or designee, decision.)

19.14.4.  Forwards complete case to the SecAF, or designee, through AF/JAJ, normally within 3 workdays of receipt.

## 19.15.  Action by SecAF, or designee.

19.15.1.  In cases of probationary officers not eligible for a BOI and who do not tender their resignations, the SecAF, or designee, may:

19.15.1.1.  Direct officer's retention.

19.15.1.2.  Approve discharge action as recommended by SCA or for any other reason allowed by law and with respect to which the officer has been put on notice and provided the opportunity to respond.

19.15.1.3.  Approve the discharge characterization recommended by the SCA or a more or less favorable one to the extent permitted by Title 10 United States Code Section 1182, *Boards of inquiry*, or DoDI 1332.30.

19.15.1.4.  Return the case to the SCA to refer to a BOI.

19.15.2.  In all other cases, refer to specific sections in this chapter.

19.15.3.  The SecAF, or designee, retains all discretionary authority authorized by 10 USC § 1182 or DoDI 1332.30 regulation even if not specifically addressed in this publication.

## Section 19F—Additional ARC Guidance related to Promotion Boards.

**19.16.  Show Cause.**  A promotion board convened under Title 10 United States Code Section 14101(a), *Convening of Selection Boards* is tasked with making an additional report to the SecAF that includes the name of any reserve officer it considered for promotion whose record, in the opinion of a majority of the members of the board, indicated that the officer should be required to show cause for retention in an active reserve status.  **(T-0)** See AFI 36-2504.

19.16.1.  If such a report names an officer as having a record which indicates that the officer should be required to show cause for retention, because of substandard performance of duty, misconduct, moral or professional dereliction, or because the officer's retention is clearly inconsistent with the interests of national security, the officer's file is reviewed in order to determine whether the officer is required to show cause for retention in an active status.  **(T-0)**

19.16.2. The ARPC Promotion Directorate (ARPC/Selection Board Secretariat) provides ARPC/DPTTS, a listing of all officers identified by the board for show cause review. ARPC/DPTTS identifies the reserve category for each officer and forwards the officer's name and show cause factors to the servicing personnel office of the appropriate SCA.  The SCA for actions involving ANG officers is TAG; Traditional Reserve members is the HQ AFRC/CC, except where authority has been delegated; participating and non-participating Individual Reservist is the HQ ARPC/CC (who is also the GCMCA).

19.16.2.1.  The SCA has no independent investigative function.  The SCA may, however, communicate with the individual's commander or HQ RIO Detachment Commander, if applicable, to determine if discharge action under this publication is warranted.

19.16.2.2.  For ANG, Unit Reservists, and Individual Reservists, the unit commander and/or HQ RIO Detachment Commander may investigate and/or obtain documentation to support, supplement, or rebut the matters raised by the promotion board.

19.16.2.3.  The SCA reviews all pertinent information, including information obtained by unit commanders and/or HQ RIO Detachment Commander, the individual's personnel record, and information provided by the promotion board in order to determine whether initiation of a show cause action is warranted.  If the individual is not assigned and/or attached to ARPC, the unit commander or program manager initiates involuntary reassignment action. Guidance on involuntary assignments can be found in DAFI 36-2110.

19.16.2.4.  If the SCA determines there is sufficient information on which to base a show cause action, written notice is sent to the individual officer setting out the specific reason for proposed discharge and the case is processed IAW **Chapter 23**.

19.16.2.5. If the SCA determines there is insufficient evidence to substantiate the promotion board's recommendation or that the allegation is not serious enough to warrant discharge, the case may be terminated.

## Chapter 20

## SHOW CAUSE ACTIONS—BOARDS OF INQUIRY (BOI)

*Section 20A—General Responsibilities and Information.*

**20.1.  Definition.**  The BOI, sometimes called a "show cause board," is an officer's discharge board.  It is governed by 10 USC § 1182, Title 10 United States Code Section 1187, *Officers eligible to serve on boards*, DoDI 1332.30, and this DAFI.  A more detailed overview appears at **paragraph 20.7**.

**20.2.  Cases Requiring Referral to a Board of Officers.**  Unless the officer waives the officer's entitlement to a BOI or retires/resigns in lieu of further discharge processing, the SCA refers the following cases to a BOI:

20.2.1.  Non-probationary officer's case regardless of recommended characterization of service or basis for discharge.

20.2.2.  Probationary officer's case when the SCA recommends a UOTHC service characterization.

20.2.3.  Officers have a statutory right to attend the discharge board in person. Guidance on this statutory right can be found in Title 10 United States Code Section 1185, *Rights and Procedures,* and Title 10 United States Code Section 14904, *Rights and Procedures*.

20.2.4.  The SCA or SecAF, or designee, may, in the SCA's or SecAF's sole discretion, refer a probationary officer's case to a BOI even if there is no BOI requirement or entitlement as described above.

20.2.5.  When directed by SecAF.

20.2.6.  All ANG officers.

**20.3.  Processing Time Guidelines.**

20.3.1.  The SCA ensures that each case file contains a chronology.

20.3.2.  Each level of command and headquarters processes cases as expeditiously as possible consistent with 10 USC § 1182 and DoDI 1332.30 and with the interests of both the respondent officer and the USAF or USSF in mind.  Case processing begins on the date the officer receives the SCA's letter of notification.  (**Note**:  Refer to the Secretary's Quality Force Mandate in **paragraph 2.2.9.3**.)

*Section 20B—Pre-BOI Administrative Functions.*

**20.4.  Referring Case to a BOI.**  The SCA refers the case to the BOI by memorandum or, in discretion of the SCA based on command correspondence and guidance, by Special Order.  The SCA and the recorder may communicate directly with each other on matters relevant to cases and board procedures.

**20.5.  Officer's Rights When Notified to Show Cause for Retention Before a BOI.**  An officer who has been notified of a board hearing has the following rights:

20.5.1. The notification of initiation of show cause discharge action is provided to the respondent officer no less than 30 days prior to the convening of a BOI.  The show cause notification memorandum explains why the SCA is requiring the officer to show cause for retention on active duty, the least favorable characterization of discharge authorized, and the SCA's recommended discharge characterization.  The officer may waive any portion of the 30 days which otherwise must elapse before a BOI can be convened.  The notification of initiation of show cause action including notice of entitlement to a BOI should normally be served on the respondent by the unit commander or another officer designated to make service.  If the officer is not reasonably available for personal service of notification, notification is made by electronic means, registered mail, or certified mail, with return receipt (or by an equivalent form of notice if such service by US mail is not available for delivery at an address outside the US) to the officer's last known address.  The officer acknowledges receipt in writing upon being served the letter of notification, or duly witnessed by a third party if the officer refuses to acknowledge receipt.  (**Note**:  The SCA may determine that an officer's failure to respond to the letter of notification or subsequent show cause authority notification constitutes a waiver of the officer's right to appear before a BOI.)

20.5.2.  Reasonable Time to Prepare.  See **paragraph 20.12**.

20.5.3.  The respondent may appear in person at all open proceedings of the BOI.  The respondent may be represented by either; a military counsel appointed to them, or a military counsel of the respondent's own choice if requested and approved.  Guidance on military representation is provided in DAFI 51-201.  The respondent may be represented by civilian counsel, retained at the respondent's own expense, in addition to or instead of military counsel.

20.5.3.1.  If respondent's military counsel was not detailed by the Trial Defense Division, AF Legal Operations Agency (HQ USAF/JAJD), the military counsel must be qualified and certified (ANG must be qualified) under Article 27(b), UCMJ, unless the respondent waives this requirement.  **(T-1)**

20.5.3.2.  Either military or civilian counsel may represent a respondent who waives the right to appear.

20.5.3.3.  A military defense counsel is appointed to represent the officer who does not appear or is not otherwise represented by counsel at the BOI hearing.  A military defense counsel is not required if the officer employs civilian counsel.

20.5.4.  Documentary Evidence.  The SCA, through the servicing base legal office or recorder, furnishes to the officer copies of all evidence supporting the action or to be considered at any stage.  (**Note**: Internal documents such as legal reviews and staff and command memoranda are protected by the deliberative process and other privileges and are not releasable to the officer or the officer's counsel.  However, if such memoranda contain matter to be considered on the merits not otherwise furnished to the respondent, it is released, or the completed action may be returned as legally insufficient due to denial of the respondent's fundamental rights.)

20.5.5.  Witnesses.  The respondent may request that the BOI invite any witness whose testimony the respondent believes to be relevant.  Failure to submit a justified request sufficiently in advance of the BOI, to enable the SCA to process it without delaying the BOI, constitutes grounds for the SCA to deny the request.  A respondent may personally arrange the

appearances of witnesses or ask the BOI recorder to contact the witnesses (see **paragraph 20.14**.).  Take action on the respondent's request for witness(es) is IAW **paragraph 20.13**.

20.5.6.  Documents. A respondent may submit documents relevant to the respondent's case (e.g., record of service, letters, responses, depositions, statements, affidavits, certificates, sworn or unsworn statements, or stipulations) if the respondent elects to waive a BOI, or, if the case goes to a BOI, before the BOI convenes or during the hearing.

**20.6.  Withdrawing a Case.**  After reviewing additional evidence or facts, the SCA may withdraw a case at any time before a BOI makes its findings and recommendations.  Authority is reserved to the SecAF, or designee, after the BOI makes its findings and recommendations.

20.6.1.  When the SCA withdraws a BOI case, the SCA notifies the officer in writing.

20.6.2.  The SCA sends a copy of the memorandum to AFPC/DPMSSR.

*Section 20C—The Board of Inquiry—General.*

**20.7. Functions and Duties.** The BOI is a formal administrative hearing board involving impartial officers as members, a legal advisor, a government representative (recorder), respondent's counsel if the respondent elects to have one, and a court reporter.  The BOI hears sworn testimony and considers other evidence to determine whether a preponderance of the evidence supports the basis alleged, whether the officer should be discharged, and, if so, how to characterize the officer's service.  If it finds that the respondent officer did not show cause, it normally recommends discharge and appropriate service characterization (e.g., Honorable, General, UOTHC) or retirement (if required).  Its function is not limited to considering the information and the Statement of Reasons presented at its hearing.  If, before or during the proceedings, the board decides it needs more information to properly evaluate the case, it requests the information through the recorder.  **(T-1)**

20.7.1.  The BOI receives evidence presented during open sessions and deliberates and votes on findings and recommendations in closed session.  **(T-0)**

20.7.2.  The BOI may request additional information (evidence) to create a record on which to base a proper decision, including reasons for discharge not contained in the SCA's initiation memorandum.  If the BOI elects to create a record to support discharge for a reason not included in the notification memo, the proceedings should be suspended for no less than 30 calendar days to allow the officer time to respond and prepare.

**20.8. BOI Membership.** There must be at least three voting members.  The senior voting member will serve as the president of the BOI. **(T-1)** The voting members must be regular officers (unless the respondent is a reserve officer, in which case, at least one must be a reserve officer in an active status) in a grade above O-4 and in a grade senior to the respondent. **(T-1)** At least one voting member of the board will be in a grade above O-5.  **(T-1) All** voting members must be an officer on the ADL or on the RASL of the same military service as the respondent.  **(T-1)** The SCA or designee:

20.8.1.  Appoints at least one reserve officer in an active status to the BOI if the respondent is a reserve officer.  **(T-0)**

20.8.2.  Appoints a field grade judge advocate certified under Article 27b (2), UCMJ, or a company grade judge advocate certified as a military judge under Article 26b, UCMJ, to serve

as a non-voting legal advisor.  **(T-0)** (**Note**: If the respondent is a judge advocate, the legal advisor is senior in grade.)

20.8.3.  Appoints an officer who is an O-2 or higher in grade who has been designated as a judge advocate pursuant to Title 10 USC § 9063, *Designation: Officers to Perform Certain Professional Functions*, and DAFI 51-101, *The Air Force Judge Advocate General's Corps (AFJAGC) Operations, Accessions, and Professional Development,* and who is certified under Article 27(b), UCMJ, to serve as a non-voting recorder.  **(T-1)** The SCA may detail an assistant recorder to assist the non-voting recorder.  Assistant recorders must be judge advocates, but do not need to be certified under Article 27(b), UCMJ.  **(T-0)**

20.8.4.  May assign a non-voting interpreter when necessary.

20.8.5.  Notifies AFPC/DPMSSR, if the RegAF or USSF SCA cannot meet any of these requirements. For instances that apply to AFR SCAs, notify ARPC/DPT.

20.8.6.  Notifies AF/A1LG (AF General Officer Management Office) or SF/S1LG (USSF General Officer Management Office), at least 20 calendar days before the scheduled convening date of the board when the BOI membership requires a general officer(s).

**20.9.  Who May Not Be BOI Members.**  Officers may not serve on a BOI if they:

20.9.1.  Are witnesses in the case.  **(T-0)**

20.9.2.  Appeared as witnesses before any previous board convened under this publication to review the record of the respondent.  **(T-0)**

20.9.3.  Served as members of any previous board convened under this publication to review the record of the respondent.  **(T-0)**

20.9.4.  Served as members or convening or reviewing authority of a court-martial where the respondent was the accused.  **(T-0)**

20.9.5.  Previously recommended a discharge in the case or administered nonjudicial punishment pursuant to Article 15, UCMJ or an administrative sanction Letter of Admonishment or Letter of Reprimand to the respondent.  **(T-0)**

20.9.6.  Have rated the respondent.  **(T-0)**

20.9.7.  Cannot perform BOI duties impartially (i.e., when they have predetermined opinions about the government's or the respondent's case and are unable to make findings and recommendations based on the evidence).  **(T-0)** (**Note**: advanced knowledge of the case does not, in itself, render an officer unable to serve.)

**20.10.  Appointment of a BOI.**  The SCA or the SCA's designee prepares the memorandum (or special order at the discretion of the SCA) to order a BOI and to appoint members to serve on it. The appointment memorandum should be issued expeditiously (normally within 5 days of receipt of the officer's response to the SCA letter of notification).  The memorandum includes:

20.10.1.  A statement that the board of inquiry and its members are appointed by order of the Secretary of the AF and IAW this publication.

20.10.2.  The place and date the BOI will convene.

20.10.3.  The component (regular officer, reserve officer) after the name and grade of each board member.

20.10.4.  A copy of the memorandum appointing the board is provided to each board member and to the respondent and the respondent's counsel.

**20.11.  Time and Place for Convening BOI.**  Unless the officer requests a delay or that the board convene earlier, the SCA may direct that the BOI convene 30 calendar days from the date that the officer receives the SCA letter of notification. The BOI will convene at the designated time and place, subject to approved delays or to approval of an earlier date requested by the officer.  **(T-1)**

20.11.1.  The board normally convenes at the respondent's installation.  However, the availability of witnesses and board members and other factors may make it necessary or advisable to convene the board elsewhere.  The recorder schedules a venue for the BOI that is in keeping with the nature and gravity of the proceedings.

20.11.2.  The recorder notifies the board members of the time and place set for the hearing.  The recorder also notifies the respondent not less than 10 calendar days before the board convenes, even if the respondent does not intend to appear before the board.  The recorder's notification to the respondent complies with DAFMAN 51-507. The recorder sends a copy of the letter of notification to the SCA or designated staff officer.  **(T-1)**

**20.12.  Delay in Convening the BOI.**  The respondent may request a delay in convening the BOI, normally not to exceed 10 calendar days from the date of the scheduled hearing.  The respondent must send the written request directly to the legal advisor with copies to the recorder and SCA within 5 calendar days after receiving notice of the place and date for the hearing.  **(T-1)** **Exception**: The legal advisor may consider a written request submitted more than 5 days after receiving notice of the place and date for the BOI when respondent demonstrates that denying the request would prejudice the rights of the respondent.

20.12.1.  The legal advisor may grant the delay only when denying the request would prejudice the rights of the respondent.  The respondent has a right to counsel but not to counsel of the respondent's own choosing if the counsel is not reasonably available.  Legal advisor may grant a delay for a period of no greater than 30 days from the hearing as originally scheduled. **(T-1)** Requests for delays for a period of more than 30 days from the hearing as originally scheduled must be granted by the SCA, or if delegated, the SCA's SJA. **(T-1)** The legal advisor prepares a memorandum, for inclusion in the record, documenting the specific reasons for any delays, the rights prejudiced by refusal of the delay request, and the government's stated efforts to expeditiously resolve the grounds for the requested delay.  **(T-1)**

20.12.2.  The legal advisor also considers requests for delay from the government and may grant a delay, normally not to exceed 10 days from the date of the originally scheduled hearing, as long as the delay would not unfairly prejudice the rights of the respondent.  Legal advisors will not grant a delay for a period of more than 30 days from the hearing as originally scheduled. **(T-1)** Requests for delays more than 30 days from the date of the originally scheduled hearing, or for delays beyond an initial delay grant, must be acted on personally by the SCA. **(T-0)** The legal advisor prepares a memorandum, for inclusion in the record, documenting the specific reasons for any delays, and the government's efforts to expeditiously resolve the grounds for the requested delay.  **(T-1)**

20.12.3.  DELETED

**20.13. Witnesses.** The recorder invites relevant witnesses for both the respondent and the government to appear at the BOI.  If the respondent and the government cannot agree, the legal advisor determines whether they are available (utilizing Article 49(d) of the UCMJ as a general guide), their expected testimony is relevant, and the respondent or the government cannot adequately present their evidence any other way, for example by stipulation, sworn written statement (affidavit), video teleconference, or telephone.  The recorder and the respondent may use depositions, affidavits, stipulations, and in-board telephone calls to present testimony of witnesses who cannot testify in person or whose probative value would not be significantly enough enhanced by in-person testimony as to outweigh costs, delays, and administrative burdens associated with personal presence.

20.13.1.  If the board is convened at a place other than the witness's duty station, the recorder asks the SCA to make the military member or Federal employee available.  The SCA may deny the request if military requirements do not allow the member or employee to appear before the board as a witness.  Guidance for witness travel plans is provided in the *Joint Travel Regulation (JTR)*, Chapter 3 (Section 0307). Travel may be needed if the legal advisor determines the respondent or government cannot adequately present their evidence any other way, for example by stipulation, sworn written statement (affidavit), video teleconference, or telephone.

20.13.2. The recorder arranges to publish invitational travel orders for witnesses who are neither Federal employees nor members of the armed forces in the active military service (see JTR, Section 030702) if the legal advisor determines the respondent or government cannot adequately present their evidence any other way, for example by stipulation, sworn written statement (affidavit), video teleconference, or telephone.

20.13.3.  Not later than seven days prior for local witnesses and 14 days for witnesses requiring travel orders to convening of a BOI, the recorder and the respondent/respondent's counsel provide each other the identity, contact information, and capacity in which providing evidence, a summary of the expected testimony of each witness in chief (does not include the respondent or potential rebuttal witnesses) sufficient to permit the other to make a timely, informed decision whether to obtain documentation for cross-examination and/or rebuttal evidence and/or witness, and/or ensuring that the witness' testimony fully addresses matters of concern to BOI members.  The legal advisor may comment in open sessions of the BOI on culpable failures to comply with this requirement.

20.13.4. At the direction of the legal advisor, the recorder sends a memorandum by fastest available means to the prospective witnesses inviting them to appear before the board.  See DAFI 51-201 for funding travel orders for witnesses.

**20.14.  Reviewing the Case.**

20.14.1.  Upon receipt of the case file, the recorder:

20.14.1.1.  Reviews the case before the BOI convenes to determine which areas may need exploration and explanation at the hearing and whether the evidence in the case file is sufficient to accomplish that end.  As government representative, the recorder is under an affirmative obligation to obtain and develop the best available relevant evidence bearing on the issues of discharge and discharge characterization.  To that end, the recorder may request that the SCA direct further investigation or supply additional documentation, and

may conduct the same kind of pre-hearing investigation that would be expected for a trial counsel prior to a court-martial.

20.14.1.2.  Gathers and reports to the appropriate decision authority information about availability of requested and other prospective witnesses.

20.14.1.3.  Submits the names of requested witnesses (both those requested by the respondent or counsel and those that the recorder is requesting to testify for the government) to the legal advisor for a decision IAW **paragraph 20.13**.

20.14.1.4.  Arranges to publish invitational travel orders based on the legal advisor's decision.

20.14.1.5.  Not later than 5 duty days before the BOI is to convene, provides the respondent or counsel with a copy of any releasable records or other documentary material not previously furnished the respondent that the recorder proposes to offer in evidence at the board hearing.

20.14.1.6.  Attends any prehearing conference called by the legal advisor, along with the respondent and counsel.

20.14.1.7.  Not later than 3 duty days prior to the BOI convening date, provides to each BOI member a copy of the initiation notification and this chapter.  Members conscientiously review these materials before the BOI convenes but will not discuss them with anyone or use them as a basis for asking anyone any questions about the case. Members can expect to be asked by the legal advisor at the BOI if they complied with the letter and spirit of this prohibition.  Review of these materials is intended to make BOI members better-informed participants in the BOI and to expedite the BOI.  Members must remain impartial and not take a position on the merits of either the government's case or the respondent's case until the closed session of the BOI at which they discuss the evidence and render findings and recommendations.  **(T-1)**

20.14.1.8.  Makes any other necessary preparations to assure a proper venue for the BOI and necessary for the orderly, expeditious, and proper presentation of the case at the board hearing.

20.14.2.  The legal advisor also reviews the file before the BOI convenes and may convene pre-hearing conferences to advise the recorder and respondent of any matters that require attention to ensure a fair and complete hearing.

## Section 20D—The Hearing.

**20.15.  Who Conducts Hearings.**  The president of the BOI presides over the hearing and may require the recorder to perform administrative duties.  A sample guide for conducting the BOI proceedings is contained in DAFMAN 51-507.

20.15.1.  When the board meets in closed session, only the voting members may attend.  If the board needs the advice of the legal advisor, the board president opens the board to obtain that advice.

20.15.2.  After the board has made its findings and recommendations, it may request the legal advisor in closed session to help place them in proper form.  The reporter enters the closed

session with the legal advisor, records the proceedings verbatim, and includes them in the transcript.

20.15.3.  After the BOI convenes, the legal advisor makes final rulings on:

20.15.3.1.  Procedural matters (including admissibility of evidence, presence of witnesses, and challenges to the voting members).

20.15.3.2.  Motions, objections, and arguments of counsel.

20.15.3.3.  Any other matter in connection with the conduct of the hearing involving matters of law.

20.15.4.  The legal advisor instructs the members of the BOI on their duties and responsibilities, including the show cause nature of the board, with the respondent and counsel present.

20.15.5.  The legal advisor has no authority to dismiss an allegation or to terminate the proceedings. **(T-0)**

20.15.6.  The legal advisor is not a passive "legal referee" but has an affirmative responsibility to ensure that the evidence is fully, fairly, and professionally developed and to assist the president in the conduct of the board to that end.  The legal advisor may question witnesses if the legal advisor believes relevant matters remain undeveloped by the recorder or the respondent.

**20.16. Hospitalized Respondent.**  If the respondent is hospitalized after the BOI receives the case, the recorder immediately notifies the SCA.  Summarize the respondent's condition and estimate when the hospital stay will end.  The board may not convene or meet while the respondent is hospitalized unless the respondent consents, the SCA so directs for good cause (which should be documented and included in the case file), or medical authorities determine that the respondent no longer requires hospitalization.  (**Note**: The SCA should normally designate the recorder as the SCA's designee to receive respondent's medical information. Guidance on receiving medical information is provided in DoDI 6025.18, *Health Insurance Portability and Accountability Act (HIPAA) Privacy Rule Compliance in DoD Health Care Programs,* and AFMAN 41-210.)

**20.17. Presence of Respondent, Counsel, or Witnesses.**  The respondent and counsel have the right to attend all open sessions of the BOI.  Victims of alleged sex assault offenses have the right not to be excluded from the board pursuant to **Section 20G**.  Witnesses may be present in the board room only when they are testifying.  Witnesses waiting to testify may not be present in the board room.  The board president, after obtaining the legal advisor's recommendation, decides whether to allow spectators in the board room if a respondent requests spectators at the hearing.

20.17.1.  With the consent of the respondent officer, recorder, legal advisor, and president, AF personnel such as active duty and reserve judge advocates, discharge clerks, case paralegals, and personnel officers may be permitted to attend for official purposes, including training.

20.17.2.  If the respondent is in civilian confinement, determine whether to drop the officer from the rolls.  (**Note**: Dropping a confined officer from the rolls of the USAF or USSF (see **Chapter 21**) may be more appropriate than initiating or continuing show cause discharge action).  If a board is deemed more appropriate, and the respondent is unable to attend the BOI, coordinate with the confinement facility to determine whether it is possible to hold the BOI at the confinement facility.  A confined respondent may waive the respondent's personal presence

to permit the respondent to be represented at the BOI solely by the respondent's counsel (must be in writing signed by the officer or counsel **(T-1)**) The respondent may also waive their right to appear personally if video teleconference technology is available.  If all reasonable efforts to secure the personal presence or electronic participation of the respondent are unsuccessful, the respondent is represented at the BOI by counsel unless the respondent has waived representation by counsel in such circumstances.

**20.18.  Calling the Board to Order.**  The board president calls each session of the board to order. At the first session, the recorder places the authority for and the time, date, and place of the hearing in the record and attaches a copy of the appointing order to the record as an exhibit.  At all sessions, the recorder notes for the record the presence or absence of all voting and non-voting members and of the respondent and the respondent's counsel.

**20.19.  Absent Respondent or Counsel—Postponing the Board.**  If the respondent or counsel is absent, the legal advisor inquiries into the reasons.  Without a written waiver, the hearing may not proceed without the respondent and the respondent's counsel.  When a hearing is postponed, the legal advisor announces when the board will reconvene.

**20.20.  Explaining Rights to Respondent.** The legal advisor advises the respondent of the respondent's rights (see **Section 19D** and **Section 20B**). **(T-1)** The legal advisor also explains that the respondent has the burden of showing cause for the respondent's retention. **(T-1)**

**20.21.  Challenging Voting Members.** The respondent and the recorder may challenge voting members of the board and the legal advisor for cause.  The challenging party has the burden of establishing that the member is disqualified from sitting based on the standards in **paragraph 20.21.4**.

20.21.1. The legal advisor, the recorder, respondent, or respondent's counsel, asks any questions of BOI members ("*voir dire*") to ascertain whether there are grounds for challenge for cause.  At a minimum, the legal advisor inquires whether any member, through prior knowledge of the case or of the respondent, is unable to perform BOI member duties impartially, objectively, and independently.  **(T-1)** The respondent, respondent's counsel, and the recorder may submit to the legal advisor, normally in advance of the initial BOI session, proposed questions to ask the BOI members.

20.21.2.  The legal advisor rules on challenges to the voting members and may question the challenged member to determine the member's qualifications to sit.

20.21.3.  After hearing evidence on a challenge to the legal advisor, the board resolves the challenge by discussion and majority vote in closed session.  The president of the board announces the ruling on the challenge to the legal advisor in open session.

20.21.4.  Voting members are qualified to serve if they can:

20.21.4.1.  Evaluate the evidence fairly and impartially.

20.21.4.2.  Reserve judgment until after all the evidence is in, the respondent or the respondent's counsel and the recorder have made closing statements, and the legal advisor has instructed the board.

20.21.4.3.  Follow the legal advisor's instructions.

**20.22. Opening Statements and Presenting Evidence.** The recorder provides evidence in support of the SCA's initiation of discharge action with documentary evidence or through witnesses, or both. The recorder may make an opening statement outlining the allegations, the evidence to support them, and the outcome the recorder intends to seek. The recorder then presents evidence and testimony to the board.

20.22.1. The recorder and the respondent must be sensitive to the need to avoid unnecessarily redundant or cumulative evidence. For example, statements in documentary form such as affidavits or stipulations of expected testimony may suffice for some witnesses. Similarly, introduction of pertinent portions or extracts from larger documents is normally preferable to introduction of a bulky document, portions of which may be of account, before permitting witness testimony or admitting documentary evidence.

20.22.2. The respondent (ordinarily through counsel unless the respondent is representing himself or herself) may make an opening statement immediately following the recorder's opening statement or at the conclusion of the recorder's evidence. The respondent may then show cause for the respondent's retention by offering evidence in defense, extenuation, or mitigation. Such evidence may also be offered relative to discharge characterization. Both the recorder and the respondent may present evidence in rebuttal, as authorized by the legal advisor.

20.22.3. The reporter transcribes or describes the contents of any video or audio recording that the recorder or the respondent presents as evidence. However, a reporter need not describe evidence that is otherwise included in the record of board proceedings (such as an exhibit).

**20.23. Examining Witnesses.** The recorder, respondent and respondent's counsel may examine and cross-examine witnesses to assist the board in making a complete record.

20.23.1. Any member of the BOI and the legal advisor may question witnesses for clarification. However, they must refrain from questioning witnesses until the recorder and the respondent have finished. The legal advisor only allows questions that are necessary to clarify a significant issue bearing on the board's purpose. Any questions must be relevant to the issue before the board.

20.23.2. The board considers all relevant material, not only the information in the Statement of Reasons. The recorder ensures that all information favorable to the respondent that bears on the case comes to the attention of the board as a matter of record.

20.23.3. The respondent's rights regarding self-incrimination under Article 31, UCMJ (Title 10 United States Code Section 831, Art 31, *Compulsory Self-incrimination Prohibited*) apply. The respondent is not required to testify before a BOI, but should the respondent choose to do so, such testimony is sworn (under oath) and the respondent is subject to cross-examination. The respondent officer is entitled to make or submit an unsworn statement directly.

**20.24. Accepting Additional Evidence and Amending the Statement of Reasons.**

20.24.1. The recorder may present new or additional evidence received after the SCA refers the case to a BOI unless otherwise directed by the SCA.

20.24.2. The president of the BOI may ask the recorder for additional evidence if the board decides that it is necessary for a full, fair, and impartial evaluation of the case. The new or additional evidence may include documentary evidence, statements, or testimony of witnesses.

20.24.3.  The legal advisor admits additional evidence that is relevant, material, and otherwise admissible and allows a delay if necessary for the respondent to rebut or respond to new evidence.

20.24.4.  The BOI may amend the Statement of Reasons to:

20.24.4.1.  Correct errors

20.24.4.2.  Ensure it conforms to the evidence (including new or additional evidence).

20.24.4.3.  Add any reasons for the discharge distinct from those already on record.

20.24.5.  The president of the BOI informs the parties in open session before making its findings, determination, or recommendation that the BOI has amended the Statement of Reasons.

20.24.6.  If the board amends the Statement of Reasons, it gives the respondent the amended Statement of Reasons and allows the respondent additional time, normally not to exceed 30 calendar days as determined by the legal advisor, to respond to the amended Statement of Reasons.  The respondent can waive the right to additional time.  In such cases the waiver is included in the record.  (**Note**:  This pertains only to major changes such as adding new reasons and not minor changes such as correcting formatting errors.)

**20.25.  Appearance of Witnesses.**  The recorder administers the oath to each witness who appears before the board.  The board calls witnesses as it considers necessary.  See DAFMAN 51-507 for the admissibility of witness testimony and hearsay evidence.

**20.26.  Respondent's Election Not to Testify.**  The board may not draw any adverse inference from the respondent's election not to testify and should regard the respondent as having elected to show cause for the respondent's retention by means of other than personal testimony.

**20.27.  Deliberations.**  After the respondent or counsel presents closing arguments, the legal advisor gives instructions to the board, as necessary.  Instructions, including explanatory evidentiary instructions, are found in DAFMAN 51-507.  The board then enters closed session, attended only by voting members.

20.27.1.  The board:

20.27.1.1.  Judges the case on the evidence based on their experience in and knowledge of the USAF or USSF. **(T-1)**

20.27.1.2.  Judges the facts considering the instructions given by the legal advisor, and the standard of conduct or performance of duty expected of an officer of the respondent's grade and experience.

20.27.1.3.  Weighs all the evidence and arrives at their findings based on the standard of preponderance of the evidence, that is, did the USAF or USSF establish with a preponderance of the evidence that the reasons for discharge occurred, and if so, did the respondent then have the opportunity to respond and rebut the basis for contemplated separation to establish why the respondent should be retained?

20.27.1.3.1.  Boards may not enter findings contrary to matters previously adjudicated in courts-martial and civilian court convictions; however, this does not prevent the respondent from presenting matters in mitigation, extenuation, and explanation.

20.27.1.3.2.  Without limiting the respondent's right to a full and fair hearing, the legal advisor may impose reasonable restrictions on evidence introduced by the respondent that conflicts with previously adjudicated matters.

20.27.2. Legal Assistance.  If the board seeks advice of the legal advisor during the deliberations, the board president opens the board and obtains the advice in open session with the reporter, recorder, respondent, and counsel present and makes these proceedings a part of the record.

20.27.3.  Review Proceedings.  The board in its deliberations may review any phase of the proceedings, including recalling witnesses.  The board president:

20.27.3.1.  Determines whether the voting members should review particular parts of the hearing.

20.27.3.2.  Determines whether to open the board to review the recorded testimony and/or to recall witnesses for re-examination.

20.27.3.3.  Makes the review proceedings a part of the record.

**20.28.  Specific Findings.**  The board makes its findings by the majority vote of a secret written ballot.  The board makes a separate specific finding on each allegation contained in the Statement of Reasons.  If a majority does not conclude that a preponderance of evidence supports an allegation, the board decides the finding in the respondent's favor.  If the board finds that any allegation is supported by a preponderance of the evidence, it then finds by a preponderance of the evidence whether the respondent should be separated.

**20.29.  Recommendations.**  Once the board has completed its findings, it determines whether the respondent should be retained on active duty and makes a recommendation consistent with its determination.  Findings that make the respondent subject to removal from active duty or discharge do not inherently prevent the board from recommending retention.  However, there must be at least one finding making the respondent subject to removal from active duty or discharge before the board may recommend such removal or discharge.  **(T-1)** The board may make only one of the specific recommendations in **paragraph 20.29.1**., **paragraph 20.29.2**, and **paragraph 20.29.3**.

20.29.1.  Retention.  The board recommends retaining the respondent when it determines that the respondent should be retained on active duty.

20.29.2.  Respondent Not Eligible to Retire.  When the BOI determines that the respondent should not be retained on active duty, it recommends removing the respondent from active duty if the respondent is a regular officer or recommends discharge if the respondent is a reserve officer.  When the BOI recommends removal from active duty or discharge, it also recommends an Honorable discharge or General (Under Honorable Conditions) if the basis for discharge falls solely under **Section 18A** or an Honorable discharge if the basis for discharge falls solely under **Section 18B** for pre-commissioning activities not involving intentional misrepresentation or omission of facts in official documents.  In all other cases with a basis for discharge under Sections **18B and 18C**, the BOI may recommend an Honorable discharge, a General (Under Honorable Conditions) discharge, or an UOTHC discharge.

20.29.3.  Respondent is a Regular Officer and Eligible for Active Duty Retirement.  When the board determines that the respondent should not be retained on active duty, it recommends removal from active duty and retirement (but does not recommend a retired grade).

**20.30.  Announcing Results.**  The board president announces the results of the ballot to the board members immediately after collecting and counting the votes.

20.30.1.  After announcing the results to the closed session, the president opens the board and announces the findings and recommendations of the board in open session to the respondent.

20.30.2.  The reporter transcribes the proceedings of all open sessions of the board, and any closed sessions at which the legal advisor was present.

20.30.3.  If the board retains the respondent, the board president advises the respondent of this decision in writing and sends an information copy to the SCA.

**20.31.  Classified or Controlled Information.**  Special procedures and requirements apply in all cases where classified information may be used as evidence.  In all such cases, contact AF/JAJ ASAP for guidance on how to proceed.

20.31.1. Declassification.  At the earliest stage practicable, government counsel should coordinate with the original classification authority to request declassification of potential evidence.

20.31.2. Classified Material in the Record.  When a record of board contains classified material, the SJA or designee takes appropriate steps to work with the classification authority to declassify the material when proper.  If it is impossible to declassify the material, the record must be classified.  **(T-0)** In determining whether a particular record of board must be classified because of its content, consideration should be given to DoDM 5200.01, Volume 1, *Department of Defense Information Security Program: Overview, Classification, and Declassification*, and DoDM 5200.01, Volume 1_AFMAN 16-1404, Volume 1, *Information Security Program: Overview, Classification and Declassification*. **(T-0)**

20.31.3. Controlled Material in the Record.  When a record of the board contains controlled material (e.g., promotion testing materials, professional military education test materials, and career development course exams), the materials should be safeguarded to prevent further disclosure or unauthorized access.

*Section 20E—Post-BOI Administrative Functions.*

**20.32. Preparing BOI Report.** Expeditious and accurate processing is essential, and the SecAF's Quality Force Mandate (**paragraph 2.2.9.3**) applies just as rigorously to post-board processing as to pre-board matters.  The reporter normally completes transcription of the report within 30 calendar days after the BOI adjourns.  The report contains the board proceedings verbatim, except as specified in **paragraph 20.31.3** and **paragraph 20.32.3**.

20.32.1.  Findings and Recommendations.  Prior to adjournment of the board, the legal advisor ensures that all board members have signed a certification on the worksheet from which the board president announced the findings and a majority of the voting members concurred in the findings and recommendations.

20.32.1.1.  The court reporter ensures, and the legal advisor confirms during authentication that the announcement of findings and recommendations are transcribed verbatim.

20.32.1.2. Board members who do not concur in one or more finding or in the recommendations may, in their sole discretion, provide the recorder with a statement and explanation for inclusion in the case record.

20.32.2. Authentication.  The legal advisor authenticates the BOI report within 10 days of receipt of the transcript.  The recorder or court reporter should ensure in advance of transmittal of the report that the legal advisor is available and can timely authenticate.  When the legal advisor is not available or cannot complete authentication in a timely manner, the board president and the recorder authenticate the report and explain the reason for the alternative authentication.

20.32.3. Summarizing Proceedings.  When the BOI retains the respondent on active duty, the reporter transcribes the findings and recommendations verbatim and summarizes the record of the board proceedings.

20.32.4. A staff agency designated by the SCA (normally the SJA or A1 at the SCA's headquarters) retains the recordings of the board proceedings for one year for possible transcription.

**20.33.  Distributing the BOI Report.**

20.33.1.  The SCA's SJA ensures that the respondent receives:

20.33.1.1.  An authenticated copy of the BOI report (electronic copy or the Report of Board Proceeding (ROBP) is sufficient).

20.33.1.2.  Any unclassified extract of a classified board report.

20.33.1.3. Guidance to accessing the classified portion is provided in DoDM 5200.02_AFMAN 16-1405.

20.33.2.  After obtaining a signed and dated receipt for the BOI report, the SCA's SJA or other staff agency designated by the SCA transmits the following to the SCA via memorandum:

20.33.2.1.  A copy of the BOI report when a BOI does not retain the officer on active duty.

20.33.2.2.  A copy of the BOI report when a BOI retains the officer on active duty.

**20.34.  Action by Respondent.**  If the BOI recommends that the officer be removed from active duty or discharged, the respondent may take these actions within 5 workdays after receiving or having access to an authenticated copy of the BOI report:

20.34.1.  File with the legal advisor any suggested corrections to the report.  The legal advisor determines what corrections are allowable and advises the respondent or counsel accordingly.

20.34.2.  Send to the SCA any brief or argument assigning error or raising new matters.

20.34.3.  Submit to the SCA any newly discovered evidence not earlier available that could materially affect the BOI's findings and recommendations.  The respondent may submit written comments for consideration by the AFPB.  Such comments should be addressed and furnished to the SCA.

20.34.4.  Request a delay in taking one or more of these actions.  (**Note**:  The respondent provides reasons for requesting the delay.)  The SCA may grant such delay if satisfied that denying the request would prejudice the officer's rights.

**20.35.  Excess Leave.**  The SCA may grant an officer's request for excess leave at any time after the SCA forwards the discharge case to AFPC, if the Air Force no longer requires the officer's presence to process the case. The SCA may direct excess leave pending completion of the case for an officer recommended for discharge by a BOI. Such leave may not begin until expiration of the period allowed for the officer to submit a rebuttal to the BOI report. The leave may be continued until the date on which the SecAF, or designee, completes action on the officer's case or may be terminated at an earlier time. DAFI 36-3003 governs excess leave. (**Note**: The officer should complete as much out-processing as possible prior to going on leave but will be required to return to the installation to final out after SecAF, or designee, completes action.)

**20.36.  Action by SCA on BOI Report.**

20.36.1.  BOI recommends discharge or removal from active duty via retirement.  The RegAF or USSF SCA sends the original BOI report to AFPC/DPMSSR normally within 10 workdays after receiving the report of the BOI proceedings. The AFR SCA sends the original BOI report to ARPC/DPT within the same timeframe. Submit the case file, including:

20.36.1.1.  The show cause letter of notification.

20.36.1.2.  All supporting documents and audio or video files entered into evidence.

20.36.1.3.  The officer's response (if any).

20.36.1.4.  The BOI transcript.

20.36.1.5.  Comments regarding the recommendation tailored to the case ("Generic" comments and recommendations are particularly and conspicuously unhelpful to the SecAF).

20.36.1.6.  Retirement recommendations will include officer's retired grade determination as processed through the MAJCOM/CC or FLDCOM/CC. **(T-1)** (**Note:** Guidance on OGDs can be found in DAFI 36-3203)

20.36.1.7.  Single-sided copies of all the officer's performance reports (submit copies only).

20.36.1.8.  Report of Medical Assessment (this is the medical clearance memorandum; DD Form 2807-1 and DD Form 2808 are not included in record).

20.36.1.9.  The SJA's legal review regarding the board proceedings.

20.36.1.10.  Respondent's matters submitted pursuant to **paragraph 20.34**, if any.

20.36.2.  BOI recommends discharge or removal from active duty. The SCA sends the original BOI report to AFPC/DPMSSR normally within 10 workdays after receiving the report of the BOI proceedings.  Submit the case file following guidance in the procedures stated within the Personnel Services Delivery Guide, including:

20.36.2.1.  The show cause notification memorandum.

20.36.2.2.  All supporting documents and audio or video files entered into evidence.

20.36.2.3.  The officer's response (if any).

20.36.2.4.  The BOI transcript.

20.36.2.5. Comments regarding the recommendation tailored to the case ("Generic" comments and recommendations are particularly and conspicuously unhelpful to the SecAF).

20.36.2.6. Single-sided copies of all the officer's performance reports (submit copies only).

20.36.2.7. Report of Medical Assessment (this is the medical clearance memorandum; DD Form 2807-1 and DD Form 2808 are not included in record).

20.36.2.8. The SJA's legal review regarding the board proceedings.

20.36.2.9. Respondent's matters submitted pursuant to **paragraph 20.34**, if any.

20.36.3. BOI Recommends Retention. The RegAF or USSF SCA sends AFPC/DPMSSR a copy of the BOI president's memorandum advising the respondent of the BOI decision. The AFR SCA sends copies to ARPC/DPT.

20.36.3.1. The RegAF or USSF SCA retains a copy of the BOI report and sends the original BOI president's memorandum advising the respondent of the BOI decision to AFPC/DPMSSR normally 10 workdays after receiving the report of the BOI proceedings. The decision memorandum will be used to check for any holds. If appropriate, the RegAF or USSF SCA may reassign the officer.

20.36.3.2. The AFR SCA retains a copy of the BOI report and sends the original BOI report to ARPC/DPT normally 10 workdays after receiving the report of the BOI proceedings. If appropriate, the AFR SCA may reassign the officer.

**20.37. AFPC Separations Actions.**

20.37.1. Reviews the case for administrative correctness and returns those cases to the SCA which are in error or incomplete.

20.37.2. Verifies whether dual action processing is required under **paragraph 14.17** and coordinates with AFPC/DPFD for those cases requiring dual processing.

20.37.3. Verifies whether approval of separation or retirement action would involve recoupment of government funds IAW **paragraph 14.6** (**Note**: AFPC Separations does not provide recoupment amount in advance of SecAF decision.)

20.37.4. When a BOI doesn't retain the officer on active duty, forwards complete case to the SecAF through AF/JAJ, normally within 3 workdays of receipt.

20.37.5. When a BOI retains the officer on active duty, forwards complete case to ARMS to be filed in member's record.

**20.38. Action by SecAF on BOI Report.** The SecAF may not direct a service characterization less favorable than recommended by the BOI.

**20.39. Reconvening the BOI.** This paragraph applies when a BOI recommends removal from active duty or discharge. The SCA may reconvene the board any time before the SecAF makes a final decision when the SCA receives evidence or information that could materially affect its findings and recommendations. The SCA must establish that this evidence offered by the respondent officer was not reasonably available for presentation during the board hearings. **(T-1)** New evidence includes conduct after the BOI adjourns.

20.39.1.  When the SCA receives evidence before sending the report of the BOI but decides not to reconvene the board, the SCA sends the evidence or a summary or extract to AFPC/DPMSSR, with reasons for the decision not to reconvene the BOI.  If the SCA receives evidence after sending the report of the BOI to AFPC/DPMSSR, the SCA promptly sends the evidence or a summary or extract to AFPC/DPMSSR, with a statement indicating whether the SCA intends to reconvene the BOI or take other action.

20.39.2.  The SCA gives the respondent 5 workdays to submit comments or rebuttal before the SCA acts on the new information or evidence received.

20.39.3.  The SCA may, in any event, reconvene the BOI prior to SecAF receipt of the case if the SCA believes it necessary to do so in the interests of justice.  If the SecAF has received the case but not acted on it, the SCA should, by the fastest means, request through AFPC/DPMSSR that the SecAF return the case for reopening.

*Section 20F—Post-BOI Matters—Matters After the SCA Forwards Actions to the SecAF.*

**20.40.  Reinitiating Actions.**  When a SCA, a board of officers, or the SecAF retain an officer on active duty, the SCA may:

20.40.1.  Reinitiate discharge action only when new information shows the officer may again be subject to administrative discharge.

20.40.2.  Consider the file, including correspondence and documents from the previous action when reinitiating discharge action.

**20.41.  Limitations on Reinitiating.**

20.41.1.  A commissioned officer required to show cause for retention in the military service because of substandard performance of duty and who is retained on active duty or in an active status by a BOI may not again be required to show cause for retention for the same reasons within the year period beginning on the date of the determination to retain.

20.41.2.  A commissioned officer required to show cause for retention in the military service because of misconduct, moral or professional dereliction, or in the interest of national security, and who is retained on active duty or in an active status by a BOI, may again be required to show cause for retention at any time.  **Exception**:  A commissioned officer may not again be required to show cause for retention in the military service solely because of conduct that was the subject of the previous proceedings, unless the findings and recommendations of the BOI that considered the case are determined to have been the result of fraud or collusion.

20.41.3.  Acquittal or not-guilty findings in military or civilian criminal proceedings, conviction, or punishment by civilian or military court, and nonjudicial punishment under Article 15, UCMJ, do not constitute a bar to administrative discharge action.

*Section 20G—Rights of a Victim.*

**20.42.  Victim Rights.**  A victim of an alleged sex-related offense as set forth in the allegation(s) under consideration as a basis for the board, and who is identified in the allegation(s) under consideration, shall be afforded the following rights at a board:

20.42.1.  The right to be treated with fairness and with respect for the dignity and privacy of the victim.  **(T-1)**

20.42.2.  The right to reasonable, accurate, and timely notice of the board.  **(T-1)**

20.42.3.  The right to receive the letter of notification and relevant attachments, as well as motions and other board documents relevant to the victim's role or interests in the proceeding (**Note**:  This right is subject to respondent privacy interests and attorney work product considerations.  It is limited to safeguarding the alleged victim's right to be heard and does not constitute discovery rights.). **(T-1)**

20.42.4.  The right to proceedings free from unreasonable delay.  **(T-1)**

20.42.5.  The reasonable right to confer with the recorder.  **(T-1)**

20.42.6.  The right not to be excluded from the board, unless the legal advisor determines by a preponderance of the evidence that testimony by the victim of an allegation under consideration, would be materially altered if the victim heard other testimony at that proceeding.  However, once the victim testifies, the victim has the right to be present unless, in extraordinary circumstances, the legal advisor determines such presence will prejudice the proceedings.  **(T-1)**

20.42.7.  The right to be accompanied by and reasonably be heard through counsel during all portions of the board in which the victim participates.  Victim's counsel has standing to address the legal advisor on evidentiary issues involving the rights of the victim, regardless of victim participation.  However, the board may not be unduly delayed for this purpose. (**Note**: Scope of victim representation in proceedings in which this publication is not applicable shall be governed by the instruction creating that proceeding, with the advice of the legal advisor.) **(T-1)**

20.42.8.  The right to be informed of the results of the board, as those results pertain to the victim's role or interests in the proceeding.  **(T-1)**

20.42.9.  The right to be reasonably protected from respondent.

## Chapter 21

## DROPPING OFFICERS FROM THE ROLLS OF THE AIR FORCE OR SPACE FORCE

(**Note**: Review **Chapter 14**. for guidance and procedures regarding officer quality force responsibilities, expeditious processing, and recoupment).

*Section 21A—Regular Air Force or Space Force Procedures.*

**21.1. Dropping from the Rolls of the USAF or USSF Distinguished from For Cause Discharge and Separation Actions.**

21.1.1. Dropping an officer (including retired officers) from the rolls of the USAF or USSF terminates the officer's appointment without any requirement for due process (e.g., notice, supporting documentation, opportunity to rebut, or to request reconsideration or to appeal). The officer's appointment, military status (active and reserve), and rights and privileges are simply terminated. The officer is neither discharged nor separated. Incidents of normal separation, including separation for cause (e.g., separation physical exam, separation or transition processing, and separation pay) are inapplicable to dropping from the rolls of the AF or SF actions. MPFs may not, under any circumstances, issue a discharge certificate (DD Form 214) or separation documents for dropping officers from the rolls of the USAF or USSF.

21.1.2. The statutory authorities for dropping from the rolls of the USAF or USSF do not require any due process. However, as a matter of USAF or USSF guidance, this publication provides that officers are solely, as a courtesy, provided notice of initiation of action and an opportunity to submit a statement for consideration.

21.1.3. Veterans' benefits which are predicated upon discharge and/or discharge characterization are not available to officers who have been dropped from the rolls of the USAF or USSF.

21.1.4. Dropping from the Rolls of the USAF or USSF Distinguished from Dropping from Unit Rolls. Dropping from unit rolls based on desertion (as defined in DAFI 36-3802) and certain other reasons, is different from dropping from the rolls of the USAF or USSF despite similarity in names of the actions. Dropping from unit rolls is an administrative procedure that removes a member from the unit of assignment and reduces the unit's strength. It does not end the member's military status.

21.1.5. Contact AF/JAJ before initiating any dropping from the rolls of the USAF or USSF action.

**21.2. Reasons.** An officer may be dropped from the rolls of the USAF or USSF only under the following conditions:

21.2.1. The officer has been found guilty of an offense by US civilian federal, state, or local court and sentenced to confinement (whether or not suspended) in a federal or state penitentiary or correctional institution. (**Note**: Whether a county jail is a penitentiary or correctional institution is determined by the law of the convicting jurisdiction.)

21.2.2. The sentence must be final as defined by the convicting jurisdiction. **(T-1)** (Consequently, a sentence might be final even though the conviction is subject to or on appeal).

21.2.3.  The officer has been sentenced to confinement by a court-martial for more than 6 months, after the sentence has become final and at least 6 months of confinement has been served.

21.2.4.  The officer has been absent without authority (includes desertion) for at least 3 months. (**Note**: Initiation of dropping from the rolls of the USAF or USSF action under this publication is closely coordinated with AFPC/DPMSSR because the AWOL officer's status and personnel records maintenance are affected by administrative actions pursuant to DAFI 36-3802.)

21.2.5.  A retired officer has been deprived of retired pay under Title 5 United States Code, Chapter 83, Subchapter II, *Retirement: Forfeiture of Annuities and Retired Pay*. (**Note**: Authority for this provision is 5 USC § 8319.)

**21.3.  Dropping a qualifying officer from the rolls of the USAF or USSF.**  It is appropriate to drop a qualifying officer from the rolls of the USAF or USSF when retention of the officer, even for show cause discharge processing, serves no significant purpose or is not in the best interest of the USAF or USSF.  Commanders should carefully consider whether it is in the best interest of the USAF or USSF to let collateral consequences of show cause action (e.g., discharge characterization, possible qualification for veterans benefits) drive discharge action when dropping from the rolls of the USAF or USSF action might be more appropriate (for example, the officer is in lengthy or distant confinement).

**21.4.  Immediate (Unit) Commander's Responsibilities.**

21.4.1.  Commanders subordinate to the SCA inform the SCA of cases involving the potential for initiation of action to drop an officer from the rolls of the USAF or USSF and recommend a course of action.

21.4.2.  The commander includes in the case file, as applicable:

21.4.2.1.  A comprehensive summary of the facts underlying the conviction plus a copy of the applicable criminal code provisions (substantive crime and maximum punishment).

21.4.2.2.  A certified or authenticated copy of the judgment or order of the court, showing the offenses of which convicted, and the sentence adjudged.

21.4.2.3.  A copy of any appellate action (written decision, docket entry, etc.) taken.

21.4.2.4.  Information about the place of confinement (location, conditions, etc.).

21.4.2.5.  An opinion from the SJA which, in addition to the standard material, addresses (as necessary) whether a county jail is a "penitentiary or correctional institution" under applicable law, whether the sentence has become final, or whether a retired officer is subject to, or has been deprived of retired pay under 5 USC, Chapter 83, Subchapter II.

21.4.2.6.  Documentation establishing that officer has served at least 6 months of a court-martial sentence to confinement or has been absent without authority (includes desertion) for at least 3 months (i.e., AF Form 2098, *Duty Status Change,* or equivalent electronic documentation, reference DAFI 36-3802). (**Note**:  In AWOL (including desertion) cases, the SJA should ascertain whether the officer's personnel records include a charge sheet (DD Form 458) reflecting preferred charges.  If not, the SJA should immediately consider whether that should be done to perfect UCMJ jurisdiction.  In either case, the report to the SCA should address this.)

21.4.2.7.  A statement whether administrative discharge, court-martial, or other adverse action is pending.

21.4.2.8.  Any other appropriate information, comments, or recommendations.

**21.5.  SCA Actions.**

21.5.1.  Determine whether to take dropping from the rolls of the USAF or USSF action IAW **paragraph 21.2.1** through **paragraph 21.2.4**.

21.5.1.1.  If not, initiate show cause action, if appropriate, under appropriate provisions of this publication.

21.5.1.2.  If so, take the action described in **paragraph 21.6.2**.

21.5.2.  Notify the officer of the action being taken using a letter of notification.  Personal delivery of correspondence is not required.  It is within the SCA's discretion whether to use mail (delivery receipt requested), electronic means, or personal service on the officer.  If the officer cannot be located (e.g., is AWOL), send the memorandum to the officer's last known valid address with delivery receipt requested.

21.5.3.  Allow the officer 10 calendar days from the date of personal delivery or 15 days from the date the mail is posted, whichever is later, to respond in writing (Timelines are extendable in the discretion of the SCA, for good cause).

21.5.4.  Send the case file, including the officer's response (if any), with recommendation, addressed to the SecAF, to AFPC/DPMSSR.

**21.6.  AFPC Separations Actions.**

21.6.1.  Review the case file for administrative sufficiency.

21.6.2.  Forward actions under **paragraph 21.2.1** through **paragraph 21.2.4**, to the SecAF through AF/JAJ.

**21.7.  Decision Authority.** The SecDef or President makes the final decision on all cases processed under this chapter.

21.7.1.  AFPC/DPMSSR, consistent with Presidential (or SecAF) action:

21.7.1.1.  Publishes orders dropping the officer from the rolls of the USAF or USSF and forwards to the SCA and MAJCOM/FLDCOM through the MPF.  The effective date specified in the orders is the date of the Secretarial (or Presidential) directive memorandum unless the memorandum specifies a different date.

21.7.1.2.  Instructs the FSS or MPF to take actions to retrieve all DoD identification cards and official government issued passports from the officer and the officer's dependent(s). Additionally, the MPF should terminate all personnel actions associated with the officer.

21.7.1.3.  Updates MilPDS and forwards a copy of the completed dropping from the rolls of the USAF or USSF action to AFPC/DPSOR for permanent retention in ARMS.

21.7.2.  The SCA or designated representative:

21.7.2.1.  Ensures the notice that the officer has been dropped from the rolls is provided to the officer by first class mail with proof of delivery, via electronic means, or by personal service as the SCA or the SCA's designee determines appropriate.  The notification

consists of a memorandum, to which the Secretarial (or Presidential) memorandum is attached, notifying the officer that the officer has been dropped from the rolls of the USAF or USSF, does not receive a DD Form 214 or a characterization of service, and requests written acknowledgement of receipt.

21.7.2.1.1.  The officer acknowledges receiving this notice.

21.7.2.1.2. If the officer does not or cannot acknowledge receipt, the SCA or designated representative so annotates the notice.

21.7.2.2. Sends a copy of the notice and acknowledgement (or the returned correspondence and proof of delivery, or the proof of delivery if the officer received but did not acknowledge receipt) to AFPC/DPMSSR.

### Section 21B—AFR and ANG Procedures.

**21.8. Dropping Officers from the Rolls of the AF.**  Following guidance provided in 10 USC, § 12684, in rare cases, officers who have been found guilty by civilian authorities of any offense and sentenced to confinement in a Federal or state penitentiary, or correctional institution, may be dropped from the rolls of the AF. (See **Attachment 19**).

21.8.1. Under the statutes of some states, sentence to confinement in a county jail may constitute confinement in a correctional institution.

21.8.2.  The unit or other commander of a member who meets the criteria of **paragraph 18.15** (civilian conviction) forwards a report IAW **paragraph 18.15.4** to the show cause authority or state TAG.

21.8.3.  Discharge Authority or State TAG/CG Action.  Upon receipt of the case report from the unit commander, the show cause authority or state TAG/CG determines whether to forward the case to the SecAF, or designee, for SecAF decision on whether to drop the officer from the rolls of the AF.  If the discharge authority or state TAG/CG determines a dropped from rolls action is appropriate, the discharge authority or state TAG/CG:

21.8.3.1.  Notifies the officer of the proposed action in writing.

21.8.3.2.  Allows the officer 10 calendar days to submit comments.

21.8.3.3. Forwards the case to the SecAF, or designee (through command channels), including the following:

21.8.3.3.1.  Proof of notice to the officer.

21.8.3.3.2.  The officer's comments, if any.

21.8.3.3.3.  A statement whether discharge action is or has been started.

21.8.3.3.4.  Any other appropriate comments and recommendations.

21.8.3.3.5.  The information required by **paragraph 18.15.4**.

21.8.4.  The SecDef or designee announces the decision whether to drop the officer from the rolls.

21.8.5.  The appropriate agency (TAG, HQ AFRC, or HQ ARPC) publishes orders dropping an officer from the rolls of the AF.  Issue no separation documents.  Dropping an officer from

the rolls of the AF terminates the officer's military status as of 2400 hours on the date specified in the orders.

**21.9.  Conviction by Foreign Court.**

21.9.1.  Do not drop officers from the rolls of the AF because they are convicted of an offense by a foreign court and sentenced to confinement unless both of the following additional criteria are met:

21.9.1.1.  A sufficiently detailed report is received from a MAJCOM responsible for operating in the foreign country involved that describes the nature and form of due process the officer received from the foreign court.

21.9.1.2.  The relevant legal office (i.e., AFRC/JA, ANG/JA) finds the officer received sufficient procedural safeguards from the foreign legal system to warrant continued processing to drop the officer from the rolls of the AF.

21.9.2.  Nothing in this paragraph prevents considering the removal or discharge of the officer under any other provision of this publication.

**21.10.  ANG Conviction by State Court-Martial.**  ANG officers may be dropped from the rolls of the AF for a conviction by a state court-martial.  If the state court-martial results in dismissal, there is no entitlement to a discharge board.

## Chapter 22

## AIR FORCE PERSONNEL BOARD (AFPB) ACTIONS

**22.1.  Functions and Duties.**  For purposes of this publication, the AFPB is part of the SAFPC, which in turn is part of the Air Force Review Boards Agency.  It reviews officer discharge cases and makes recommendations to the SecAF, or designee (normally the Director, Air Force Review Boards Agency), as to final action and recoupment (or full or partial waiver thereof) of unearned portions of special pays or educational assistance in all cases in which:

22.1.1.  The SCA recommends the involuntary separation (BOI, BOI waiver, and all probationary officer actions) of an officer.

22.1.2.  The SCA makes a recommendation on an officer's request for resignation in lieu of further administrative separation proceedings.

22.1.3.  A MAJCOM or FLDCOM commander or comparable commander forwards an officer's TOR for the good of the service.

**22.2.  Composition.**  The AFPB is comprised of permanent party and attached Air Force Review Boards Agency personnel and supplemental collateral members. Guidance on Board composition is provided in DAFI 36-2023.

**22.3.  Procedures.**  The AFPB is not subject to the rules and procedures governing civilian or military courts or DAFMAN 51-507.

**22.4. Processing Cases.** AFPC/DPMSSR sends a discharge case to the SecAF, or designee, through AF/JAJ for legal review within 3 calendar days after receipt from the SCA unless AFPC returns the case to the SCA for corrective action (e.g., properly assembling the case file).  The following subparagraphs describe required case file contents (plus, in all cases, forwarding command indorsements and all legal reviews):

22.4.1.  A BOI case file consists of the authenticated BOI record with exhibits and any additional information submitted by the respondent.  A non-BOI case file includes the notification of initiation, supporting evidence, and other documents.  A TOR or waiver includes all of the foregoing, as appropriate, plus the TOR or waiver.

22.4.2.  After completing its legal review, AF/JAJ sends the discharge case to the SAFPC.

**22.5.  Personal Appearances.**  Officers or their counsel may not appear before the AFPB, unless the AFPB decides it needs the officer's testimony to evaluate the case and affords such opportunity to the officer.  If the AFPB invites an officer to present additional matters, the officer may be accompanied by the officer's counsel, who may speak on the officer's behalf.

**22.6.  AFPB Recommendations to the SecAF, or designee, for Final Action in Probationary Officer Cases Not Involving a BOI.**

22.6.1.  Retention.  The discharge action ends when the SecAF, or designee, decides to retain the officer.

22.6.2.  When the AFPB recommendation is not to retain a probationary officer on active duty, the AFPB:

                                                                     

22.6.2.1.  Recommends discharge with an appropriate service characterization IAW other provisions in this publication.

22.6.2.2.  Recommends returning the case to the SCA for action under **paragraph 4.7** if the board concludes the case warrants a BOI hearing.

22.6.3.  Recommends the proper action to SecAF, or designee, if the board determines that unusual circumstances warrant different procedures.

22.6.4.  Recommends acceptance or rejection of a resignation instead of undergoing further administrative discharge proceedings and recommends an appropriate service characterization.

**22.7.  AFPB Recommendations to the SecAF, or designee, for Final Action in BOI Cases.**

22.7.1.  Retention. The discharge action ends when the SecAF, or designee, decides to retain the officer.

22.7.2.  When the AFPB recommendation is not to retain the respondent on active duty, the AFPB:

22.7.2.1. If the officer is not retirement eligible, recommends discharge with an appropriate service characterization IAW other provisions in this publication.  The SecAF, or designee, may not discharge an officer with a worse characterization than that recommended by the BOI.

22.7.2.2.  If the officer is retirement eligible, recommends removal from active duty and retirement (Guidance on a determination of the appropriate retired grade is provided in Title 10 United States Code Section 1370, *Regular Commissioned Officers*).

22.7.3.  Recommends the proper action to SecAF, or designee, if the board determines that unusual circumstances warrant some other type of action.

22.7.4.  Recommends acceptance or rejection of a resignation instead of undergoing further administrative discharge proceedings and recommends an appropriate service characterization.

22.7.5.  Recommends acceptance or rejection of a BOI waiver and recommends an appropriate service characterization.

**22.8.  Final Action of the SecAF, or designee.**

22.8.1.  The decision of the SecAF, or designee, is final.

22.8.2.  When the SecAF, or designee, directs action, AFPC/DPMSSR issues instructions to comply with the directed action(s).

**Chapter 23**

**(ARC ONLY) NOTIFICATION PROCEDURES AND ADMINISTRATIVE DISCHARGE BOARDS**

*Section 23A—General Information.*

**23.1. Instructions.** Title 10 United States Code Section 12683, *Reserve Officers: Limitation on Involuntary Separation,* generally requires the recommendation of a board of officers to involuntarily discharge a non-probationary reserve officer. Among the exceptions to this general rule are discharges for age or dismissal under Title 10 United States Code Section 1161, *Commissioned Officers: Limitations on Dismissal,* 10 USC § 12683 also requires the recommendation of a board of officers to discharge any reserve member for cause with an UOTHC service characterization (unless the discharge is a result of an approved sentence of court-martial, or the member waives the proceedings and consents to discharge UOTHC). Administrative discharge board and notification requirements in this publication comply with 10 USC § 12683, and with additional requirements of DoD and AF policy. References in this chapter to "respondent" means the member involved. References to "board" or "discharge board" mean the BOI or ANG withdrawal of Federal recognition board.

23.1.1. ANG Officers. ANG officers not on AD are discharged through the withdrawal of Federal recognition process in 32 USC § 323. Withdrawal of Federal recognition pursuant to 32 USC § 323(b), automatically results in discharge from a reserve of the AF appointment. **(T-0)**

23.1.1.1. Discharge boards convened under this publication for ANG officers are withdrawal of Federal recognition boards. The guidance in this chapter applies to withdrawal of Federal recognition boards, with the exception of **paragraph 23.8** for probationary officers.

23.1.1.2. A probationary officer category is not established by 32 USC § 323(b). All ANG officers have a board entitlement for withdrawal of Federal recognition under 32 USC § 323(b). **(T-0)**

23.1.1.3. A withdrawal of Federal recognition board is a Federal board. At a minimum, the recorder, board members, and legal advisor are ordered to duty in a Title 10 status. **(T-0)**

23.1.1.4. Withdrawal of Federal recognition is approved by the SecAF in cases where **Table A19.1** of this publication require such.

**23.2. Resignations for the Good of the Service (Review-in-lieu-of Court-Martial).** The AFPB makes recommendations to the SecAF, or designee, regarding acceptance or rejection of resignations for the good of the service and appropriate service characterization. These actions are processed from the MAJCOMs through AF/JAJ, AF/JA, SAF/GC, to the AFPB.

**23.3. Action in Lieu of Administrative Discharge Board. Paragraph 23.9** explains the eligibility for an administrative discharge board. Respondents should submit waivers, resignations, or applications to transfer in a timely manner. **(T-1)**

**23.4.  Multiple Reasons for Separation.**  When the recommendation for separation or discharge is based on more than one reason, the following procedures apply:

23.4.1.  If any of the reasons for separation or discharge require an administrative discharge board, process the entire matter under **paragraph 23.9**.

23.4.2.  If the discharge authority approved more than one reason for separation or discharge, apply the guidance on service characterization that provides the greatest latitude to the discharge authority.

23.4.3.  When a specific requirement for one reason clearly conflicts with a general requirement for another reason, apply the specific requirement.

23.4.4.  If the discharge authority cannot resolve a conflict in procedures under the guidelines of **paragraph 23.4.1.**, **paragraph 23.4.2**, and **paragraph 23.4.3**, use the procedure most favorable to the respondent.

**23.5.  Delivery of the SCNM.**

23.5.1.  When feasible, the SCNM should be personally delivered to the member.  The commander of the respondent is responsible for delivery of the SCNM.  Acknowledgment of receipt shall list attachments, specifying each individually to include supporting evidence. **(T-1)** (See Chapters **18, 19,** and **20**).  It is appropriate to call a respondent into duty for delivery. Acknowledgment of receipt shall be signed and returned within 24 hours. **(T-1)** All other elections shall be returned or a request for an extension of time shall be made within 15 calendar days.  **(T-1)**

23.5.2.  When personal delivery is not feasible, the SCNM is sent to the member by a method requiring return receipt by the addressee only to the member's last known address.  The SCNM is also sent by first class mail when attempts to deliver the SCNM by a method requiring returned receipt is unsuccessful.  An equivalent form of notice may be used (via electronic means) if such service by US mail is not available for delivery to an address outside the US. Every available effort is to be made to ascertain the correct mailing address.  Document such efforts by memorandum.

23.5.3.  If the postal service returns the memorandum without indicating a more current address, file the returned envelope with the Affidavit of Service by Mail in the case file.  Also, consider use of procedures in **paragraph 16.17** for locating the respondent and documenting delivery efforts.  If a returned envelope discloses a more current address, mail the SCNM to the member at that address as set forth in **paragraph 23.5.2**.

**23.6.  Failure or Declination to Respond.**  If the respondent fails to acknowledge receipt of the SCNM, fails to submit a reply within 15 days (30 days if the commander or discharge authority knows the respondent is in civil confinement) after receipt of the SCNM, or declines to respond about the selection of rights, that failure or declination constitutes a waiver of all rights, except for the right to a board hearing, which an officer must affirmatively waive. **(T-1)** An appropriate notation is included in the case file.  If the member exercises one or more rights, but declines to sign the form memorandum, afford the member the rights elected; rights not elected are waived. If the member fails to acknowledge receipt of the SCNM sent by mail, then an affidavit receipt is prepared and placed in the case file.

**23.7.  Processing Time Goals.**  Once the recommendation for separation or discharge is made, it is usually in the best interest of both the respondent and the AF to process the cases as expeditiously as possible.  Commanders should monitor the effectiveness of separation or discharge programs under their control to ensure that cases are processed without undue delay.  ANG officer cases not presented to an administrative discharge board within 60 days of receipt of convening orders are reported to NGB/A1PP with an explanation of the reason(s) for delay.

*Section 23B—(ARC Only) Rights of Officers in Separation Cases.*

**23.8.  SCNM for Probationary Officers.**  A reserve probationary officer is an officer who has at least five years of service as a commissioned officer in any of the armed forces as determined from the TFCSD.  Use this paragraph when the recommended type of discharge is Honorable or General. When recommending an UOTHC characterization of service use the notification procedures of **paragraph 23.9**.  When the commander or discharge authority determines that grounds exist to warrant initiation of separation or discharge action against a probationary officer not entitled to a board hearing, a SCNM is sent to the member.  The SCNM includes:

23.8.1.  A statement whether the action could result in separation or discharge and the types of characterization that may be used.

23.8.2.  A description of all the reasons for such action, to include identification of the appropriate paragraphs of this publication covering each reason.  The statement of reasons is not required to have the legal precision of court-martial specifications, it is sufficient if the reasons are described in such terms that the member is fairly apprised of the factual nature of the reasons.

23.8.3.  Whether the commander is recommending separation or discharge and the characterization of service being recommended.

23.8.4.  When there is evidence that the respondents have received advanced educational assistance moneys or special pay or bonuses, a statement notifying the respondents that they may be required to repay the US for these moneys under the authority of Title 10 United States Code Section 2005 and if applicable, 10 USC § 2123.

23.8.5.  Copies of all supporting documents, see **paragraph 14.4** for restriction on release of certain types of information.

23.8.6.  An explanation of the respondent's right to consult with legal counsel who must be a Judge Advocate qualified and certified under Article 27(b) of the UCMJ (ANG counsel must be qualified under Article 27(b)(1)).  **(T-1)** Include the name, address, and telephone number of the military counsel in the memorandum.  The respondent may also consult civilian counsel retained at the member's own expense or request military counsel of respondent's choice, if such military counsel is serving in an active status in any branch of the armed forces of the US and is reasonably available. Guidance on counsel is provided in DAFI 51-201.  Non-lawyer counsel may not represent a respondent before a board unless:

23.8.6.1.  The respondent expressly declines appointment of counsel qualified under Article 27(b) (1) of the UCMJ and requests specific non-lawyer counsel.

23.8.6.2.  The SCA assigns the non-lawyer counsel as assistant counsel.

23.8.7.  A statement of the respondent's right, at any time, to submit any statements or documents to be considered in the disposition of the case.

23.8.8.  An explanation that the respondent may waive the rights set forth in **paragraph 23.8.6**, after having the opportunity to consult with counsel.  Also, include a statement that, within 15 days (30 days if the commander or SCA knows respondent is in civilian confinement) after receipt of the SCNM, the respondent must return an attachment showing a decision on each of the rights set forth in **paragraph 23.8.6.1** and **paragraph 23.8.6.2**.  **(T-1)** The respondent or counsel must sign the attachment.  **(T-1)**

23.8.9.  A statement that the officer executes and returns within 24 hours of receipt an attached acknowledgment of receipt of the SCNM and attachments.

23.8.10.  A statement that the commander or discharge authority will consider an extension of the time to reply if additional time is needed by respondent or counsel.  Respondent or counsel submits a written request for such delay, stating the reasons and how much time is needed. The decision whether to grant the additional time is discretionary with the discharge authority.

23.8.11.  A statement that failure to acknowledge receipt or to respond regarding selection of rights within 15 days (30 if the commander or discharge authority knows the respondent is confined by civil authorities) after receipt of the SCNM constitutes a waiver of all rights and will result in the case being processed based on the information available, and without further notice to the respondent.

**23.9.  SCNM for Officers – Board Eligible.**

23.9.1.  The following officers are eligible for an administrative discharge board hearing:

23.9.1.1.  A reserve officer who has completed 6 or more years of service as a commissioned officer in any of the armed forces as determined from the TFCSD.

23.9.1.2.  A probationary officer when the authorized characterization of service contained in the SCNM is UOTHC regardless of the recommended characterization.

23.9.1.3.  All ANG officers regardless of years of service.

23.9.2.  All rights listed in this paragraph apply regarding BOI hearings. The SCA determines that grounds exist to warrant initiation of separation action against a member, the commander or discharge authority or a designated representative prepares a SCNM to the officer at least 30 days before the hearing of the officer's case.  The SCNM includes:

23.9.2.1.  Notification that the SCA is initiating action, with a statement whether the action could result in separation or discharge and the types of characterization that may be used.

23.9.2.1.1.  A description of all reasons for such action, to include identification of the appropriate paragraphs of this publication covering each reason.  The statement of reasons is not required to have the legal precision of court-martial specifications; it is sufficient if the reasons are described in such terms that the member is fairly apprised of the factual nature of the reasons.

23.9.2.1.2.  The types of separation and characterization that may be issued.

23.9.2.1.3.  Whether the commander or discharge authority is recommending separation or discharge and the characterization of service being recommended.

23.9.2.1.4.  When there is evidence that the respondent has received advanced educational assistance moneys or special pay or bonuses, a statement notifying respondent that the respondent may be required to repay the US for these moneys under authority of 10 USC § 2005 and if applicable, 10 USC § 2123.

23.9.2.1.5.  Copies of all supporting documents.  See **paragraph 14.4** for restrictions on release of certain types of information.

23.9.2.2.  An explanation of the respondent's right to consult with military legal counsel who must be a Judge Advocate qualified and certified under Article 27(b) of the UCMJ (ANG counsel must be qualified under Article 27(b)(1)). **(T-1)** Include the name, address, and telephone number of military legal counsel in the memorandum.  The respondent also may consult civilian counsel, retained at the member's own expense, or request military legal counsel of the respondent's choice if such counsel is serving in active status or on AD in any branch of the armed forces of the US and is reasonably available. Guidance on counsel is provided in DAFI 51-201.  Non-lawyer counsel may not represent a respondent before a board unless, the respondent expressly declines appointment of counsel qualified under Article 27(b) (1) of the UCMJ and requests specific non-lawyer counsel, or the discharge authority assigns the non-lawyer counsel as assistant counsel.

23.9.2.3.  A statement of the respondent's right, at any time, to submit any statements or documents to be considered in disposition of the case.  A statement which requires all members requesting a board hearing give reasonable advance notice to the government of any alibi or affirmative defense.

23.9.2.4.  An explanation that the respondent may waive the rights set forth in **paragraphs 23.9.2.2** and **paragraph 23.9.2.3** as well as the right to an administrative board hearing, after having the opportunity to consult with counsel.  Also include a statement that within 15 days (30 days if the commander or discharge authority knows the respondent is in civilian confinement) after receipt of the SCNM, respondent must return an attachment showing a decision on each of the rights set forth in paragraphs **23.9.2.2** and **23.9.2.3**.  **(T-1)** If the member is known to be in civilian confinement, indicate that the administrative discharge board will proceed in the member's absence and that the member's legal counsel may present the case on the member's behalf. The respondent or counsel must sign the attachment.  **(T-1)** To effectively waive the respondent's right to a board hearing, the respondent must mark on the attachment in the appropriate location, or execute a separate written statement, that the respondent desires to waive the right to a discharge board. **(T-1)** The respondent also signs the attachment or written statement for the board waiver to be effective.  **(T-1)**

23.9.2.5.  A statement that the member executes and returns within 24 hours of receipt an attached acknowledgment of receipt of the SCNM and attachments.

23.9.2.6.  A statement that the commander or discharge authority will consider granting an extension of the time to reply if additional time is needed by the respondent or counsel. The respondent or counsel submits a written request for such delay, stating the reason and how much time is needed.  The decision whether to grant the additional time is discretionary with the commander or discharge authority.

23.9.2.7.  A statement that failure to acknowledge receipt or to respond regarding selection or rights within 15 days (30 days if the commander or discharge authority knows the respondent is in civilian confinement) after receipt of the SCNM constitutes a waiver of the respondent's rights to be personally present, and to be represented by counsel of the member's choice at administrative discharge board hearing.  As a result, an administrative discharge board considers the case in the absence of the respondent.

23.9.2.8.  A statement that within 15 days (30 days if the commander or discharge authority knows the respondent is in civilian confinement) after receipt of the SCNM, the respondent must return an attachment electing certain rights.  **(T-1)** In addition, a member may apply for transfer to the Retired Reserve, in cases in which the member is eligible for such transfer or submit a TOR.

23.9.2.9.  A statement that the member must return an attached form indicating the following**:**

23.9.2.9.1.  Whether the member wants to make a personal appearance before the board. **(T-1)**

23.9.2.9.2.  Whether the member wants representation by the military legal counsel made available. **(T-1)**

23.9.2.9.3.  Whether the member wants to be represented by military counsel of the member's choice, in which case, member identifies such counsel by name, grade, organization, and telephone number. **(T-1)**

23.9.2.9.4.  Whether the member will be represented by civilian counsel, in which case, member identifies such counsel by name, address, and telephone number. **(T-1)**

23.9.2.9.5.  Names, addresses, and telephone numbers, if known, of any witnesses that the member wants to appear before the board, giving a summary of the expected testimony of the witnesses on the issue of separation or characterization, and an explanation why written or recorded testimony of the witnesses could not be presented to the board hearing for a fair determination of the case. **(T-1)**

23.9.2.9.6.  A statement that failure to appear at a scheduled administrative discharge board hearing, after the member has indicated intention to make a personal appearance at such hearing, results in the case being heard by the administrative board in the absence of the member. **(T-1)**

23.9.2.9.7.  A statement that if respondent or counsel needs additional time to prepare for or to attend the board hearing, respondent or counsel may submit a written request for delay stating the reasons and how much time is needed.  The legal advisor for the board hearing approves or disapproves the request. **(T-1)**

*Section 23C—(ARC Only) Board of Inquiry (BOI).*

**23.10.  Special Provisions.**

23.10.1.  Discharge authority does not appoint military counsel to officers being processed for separation or discharge because they are in ISLRS.

23.10.2.  Eligible respondents may tender a resignation or apply for transfer to the Retired Reserve at any time before the SecAF announces the decision in the officer's case.  Subject to the respondent's availability and preference, the respondent may appear at the board hearing, with or without counsel, or be represented by counsel in respondent's absence.

23.10.2.1.  If the respondent makes such a submission prior to the convening of a board, suspend further board action.  If the resignation or transfer is approved, terminate the involuntary separation or discharge.  If the resignation or transfer is not approved, convene the board.

23.10.2.2.  Once convened, the board continues and completes the hearing unless the resignation or transfer is approved before the hearing is finished.

23.10.3.  The military service does not reimburse the respondent for expenses incident to the appearance or assistance of civilian counsel.  The military service does not reimburse respondent for any expenses incident to making a personal appearance, except that, upon respondent's request, the discharge authority publishes and provides the respondent with invitational travel orders with fund citation to enable the respondent to make a personal appearance before the board.  Such orders direct that military air transportation be used if available and must authorize travel by commercial transportation only when military air transportation is not available.  **(T-1)**

23.10.4.  Respondents, as well as the recorder, may conduct an inquiry of voting members of the board and may challenge any of them, but only for cause.  The challenging party has the burden of establishing that the member is not able to participate in a fair and impartial hearing.

23.10.5.  Respondents may, at any time before a board convenes, or during the proceedings, submit material for the board to consider.  However, the respondent must provide notice to the recorder of all submissions, to include witnesses, at least 3 days prior to the date set for the board.  **(T-1)**

23.10.6.  Respondents may arrange for the presence at the board hearing of any witness whose testimony the respondent considers to be pertinent to the case, or may make written request of the recorder to invite any witness to appear, giving a summary of the expected testimony of the witnesses on the issue of separation or characterization, and an explanation why written or recorded testimony of the witnesses could not be presented to the board hearing for a fair determination of the case.  The recorder processes requests for witnesses IAW the provisions of **paragraph 23.13**.  No authority authorizes payment of the expenses of any witness who has not been properly invited by the recorder.  The respondent's counsel may question any witness who appears at the board hearing.

23.10.7.  At the board hearing, the board advises the respondent of the respondent's rights under Article 31, UCMJ (for ANG, comparable state statute), and that sworn testimony cannot be compelled, but that the giving of sworn testimony constitutes a waiver of such rights and subjects the respondent to questioning by the recorder and board members.  The board also advises the respondent that an unsworn statement may be made orally or in writing by the respondent, respondent's counsel, or both.  A respondent who makes an unsworn statement is not subject to questioning by the recorder or board members.

23.10.8.  At the board hearing the respondent or respondent's counsel may offer any answer, deposition, sworn or unsworn statement, certificate, affidavit, stipulation, or other exhibit for

consideration by the board.  The board sees only evidence ruled admissible by the legal advisor. Respondents may also submit a written brief concerning any phase of the case, and the respondent or counsel may present argument before the board closes for deliberation.  A respondent entitled to an administrative discharge board hearing has the rights listed in **paragraph 23.10** except all members being processed for discharge based on physical disqualification or inability to locate, may not appear in person, have counsel appear on their behalf, or have witnesses appear before the board.  Discharge authorities do not appoint military counsel to officers being processed for separation solely because they are in ISLRS.

**23.11. Board Appointment and Membership.** The convening authority appoints boards of officers as required.

23.11.1.  The order states that the board is appointed by authority of the SecAF.

23.11.2.  The recorder is responsible for notifying board members of the time and place of the board hearing.

23.11.3.  The voting membership of the board consists of at least three experienced commissioned officers (at the option of the convening authority), with at least one O-6 and one member of the ARC.  All commissioned voting board members must have at least 3 years of commissioned service.  **(T-1)** All voting members are present at all open sessions and during closed session deliberations concerning findings and recommendations.

23.11.3.1.  All voting members are officers of the same armed service as the officer being required to show cause for retention in an active status.  Each member of the board must be a field grade officer. **(T-1)** Each member of the board must be senior in grade to any officer considered by the board.  The senior member is the president of the board.  **(T-1)**

23.11.3.2.  The legal advisor is an AD or active status judge advocate certified pursuant to Article 27(b), UCMJ appointed to serve without vote (ANG must be qualified under Article 27(b)(1)).  **(T-1)** In officer cases, the legal advisor holds the rank of O-4 or above; if the respondent is a judge advocate the legal advisor is senior in grade to the respondent.

23.11.3.3.  The recorder is appointed to serve without vote.  The recorder is at least a field grade officer, or a judge advocate of any grade.

**23.12. Board Functions and Duties.**

23.12.1.  The functions and duties of a BOI are purely administrative.  The board determines its findings and recommendations in closed session with only voting members present.  Voting members must make clear, logical findings of fact, based on the evidence admitted at the board hearing, and then make recommendations that are appropriate and consistent with such findings and the provisions of this publication.

23.12.1.1.  The board considers each allegation in the SCNM, but it is not limited in its findings to the statement of reasons presented.  A new allegation can be added to the notification at any time during the board proceedings that it becomes evident that such an addition is appropriate.  The recorder, as the government's representative, may make the request and present the proposed format for the additional allegation or the board, on its own motion, may initiate the action and request the recorder to prepare a draft allegation. The respondent is entitled to a reasonable delay to prepare a defense to the new allegation.

23.12.1.2.  Ordinarily, the board should make its findings and recommendations based on the matters presented at the board hearing.  If the board determines that additional information is essential for proper evaluation of the cases, it directs the recorder to obtain such additional information, unless the legal advisor determines that additional information would not be admissible or appropriate.

23.12.2.  The president presides during deliberations on findings and recommendations and announces such findings and recommendations.

23.12.3.  The legal advisor ensures the board conducts an orderly, fair, and impartial hearing.

23.12.3.1.  The legal advisor:

23.12.3.1.1.  Rules on all matters of evidence procedure and challenges, except challenges to the legal advisor.  Legal advisors will use relevant and material standards as outlined in DAFMAN 51-507.  **(T-1)**

23.12.3.1.2.  Has no authority to dismiss any allegation against a respondent or to terminate the proceedings.

23.12.3.1.3.  At the outset of the proceedings and prior to the board's closing to make its findings and recommendations, briefs the voting members in open session on their duties and responsibilities.

23.12.3.1.4.  Guides the board any time they ask for guidance, or it appears appropriate.

23.12.3.2.  The legal advisor may convene a session at any time without the voting members present to assist in clarifying issues or to hear argument on challenges to the voting members' objections, motions, or requested instructions that might prejudice an orderly, fair, and impartial hearing or result in undue delay, if conducted in open session.

23.12.3.3.  In making rulings, the legal advisor is not bound by the strict rules of evidence. The legal advisor should maintain reasonable bounds of relevancy, materiality, competency, and will follow the standards in DAFMAN 51-507.  **(T-1)**

23.12.4.  Prior to the board hearing, the recorder takes the following action:

23.12.4.1.  Reviews the case file to ensure that the respondent was properly notified, and the statement of reasons as outlined within the SCNM was accurate, and all necessary documentation was included.

23.12.4.2.  Arranges for the attendance at the board hearing of all necessary witnesses IAW procedures specified in this publication and ensures that the respondent or respondent's counsel knows about all witnesses scheduled or invited to appear at the board hearing.

23.12.4.3.  Ensures that respondent or respondent's counsel and all board members know about the time and place of the board hearing, including any changes in the schedule.

23.12.4.4.  At a reasonable time in advance of the hearing, gives the respondent or respondent's counsel a copy of any records or other documentary material, not previously furnished that the recorder proposes to offer in evidence at the board hearing.  To expedite the board proceedings, a reasonable time before the board, respondent, or respondent's counsel grant permission to the recorder to review any documents or exhibits to be introduced on behalf of the respondent.

DAFI36-3211  24 JUNE 2022

23.12.4.5.  Calls to the attention of the legal advisor any matters that might warrant a pre-hearing conference and attends, along with respondent or respondent's counsel, any such pre-hearing conference.

23.12.4.6.  Attempts to bring to the attention of the board and make a matter of record all pertinent information favorable as well as unfavorable to the respondent.

23.12.4.7.  Makes other necessary preparations for an orderly and proper board hearing.

23.12.4.8.  The recorder is not a prosecutor and should not act like one.  This rule does not preclude the recorder from ensuring an adequate presentation of the government's case during the board hearing.  To this end, the recorder may examine any witnesses called by the respondent, including the respondent, if the respondent chooses to testify, may present rebuttal witnesses or evidence, and may make a final argument based on all evidence submitted at the board hearing.

23.12.4.9.  The recorder ensures that a proper record of the proceedings is made.

23.12.5.  The respondent and the recorder may challenge a voting member or the legal advisor for cause only.  The legal advisor rules on all challenges except challenges to the legal advisor.  The board hears evidence on the challenge to the legal advisor and then, in closed session, the president announces the ruling on the challenge.  The president then polls the other voting members to see if they object to the president's ruling, and unless a majority of the voting members object, the president's ruling is final. The president announces the ruling on the challenge to the legal advisor in open session.

**23.13.  Attendance of Witnesses.**

23.13.1.  Criteria.  If the respondent submits a timely request for witnesses to be present at the board hearing, or if the recorder or board wants to hear certain witnesses, the recorder, with the concurrence of the convening authority, invites such witnesses to appear.  These criteria apply:

23.13.1.1.  The legal advisor, on behalf of the convening authority, may approve production of the witness, this includes witness testimony by Video Teleconference or telephone, if the legal advisor finds that:

23.13.1.1.1.  The testimony of a witness is not cumulative.

23.13.1.1.2.  The personal appearance of the witness is essential to a fair determination on the issues of separation or characterization.

23.13.1.1.3.  Written or recorded testimony does not adequately accomplish the same objective.

23.13.1.1.4.  The need for live testimony is substantial, material, and necessary for a proper disposition of the case.

23.13.1.1.5.  The significance of the witness's personal appearance, when balanced against the practical difficulties in producing the witness, favors production of the witness.  Factors to be considered in this balancing test include, but are not limited to:

23.13.1.1.5.1.  The cost of producing the witness.

23.13.1.1.5.2.  The timeliness of the request for the witness.

23.13.1.1.5.3.  The potential delay in the proceeding that absence of the witness may cause

23.13.1.1.5.4.  The likelihood of significant interference with military operational deployment, mission accomplishment, or essential training.

23.13.1.2.  To enable the legal advisor to make these determinations, the party requesting a particular witness submits in writing the name, address, and telephone number, if known, of the expected witness, a summary of the expected testimony of the witnesses on the issue of separation or characterization, and an explanation why written or recorded testimony of the witnesses could not be presented to the board hearing for a fair determination of the case.

23.13.1.3.  The legal advisor determines that the witness is reasonably available under guidelines in **paragraph 23.13.2**.

23.13.2.  Availability.  Use the procedures and policies in paragraph 703(b) (3) of the *Manual for Courts-Martial* as a general guide in determining which witnesses to invite to appear.  Use Article 49(d), of the UCMJ, as a general guide in determining the availability of witnesses.  The Government authorizes and encourages the use of depositions or affidavits to obtain testimony of witnesses who are not reasonably available, and the use of stipulations when appropriate.

23.13.3.  Civilians and Members of the Armed Forces Not Serving in the Active Military Service.  When the appearance of a witness at a board hearing has been approved IAW **paragraph 23.13.1** and **paragraph 23.13.2**, the recorder sends invitational travel orders and a memorandum to prospective witnesses per Joint Travel Regulation (JTR), paragraph C6000.

23.13.4.  Members of the Armed Forces in Active Military Service and Civilian Employees of Federal Agencies.  When the appearance of a witness at a board hearing has been approved IAW **paragraph 23.13** and **paragraph 23.13.2**, the recorder, on behalf of the board, requests the witness's commander or supervisor make such person available as a witness.  Use military transportation when practical or commercial means if not per DAFMAN 65-605, Volume I or the JTR that governs travel funding.

23.13.5.  Delays in Proceedings Concerning Witnesses.  If the legal advisor determines that the board requires a witness's personal testimony, the board may postpone the hearing if necessary to permit the witness to attend.  Likewise, the board may postpone the hearing if necessary, to provide the respondent a reasonable opportunity to obtain a written statement from an unavailable witness requested by the respondent, when:

23.13.5.1.  The legal advisor has determined that the board need not hear personal testimony of the requested witness.

23.13.5.2.  The commander of a military witness has determined that military necessity precludes the witness's attendance at the hearing.

23.13.5.3.  A civilian witness has declined to attend the hearing.  (A Federal employee may not decline to appear as a witness, if directed to do so IAW applicable procedures of the employing agency.)

**23.14.  Findings and Recommendations.** The board determines its findings and recommendations in closed session with only voting members present.  If the board seeks advice

of the legal advisor during the deliberations, the board president opens the board and obtains the advice in open session with the reporter, recorder, respondent, and counsel present and makes these proceedings a part of the record.  The board acts on the following matters:

23.14.1.  Findings.  The board makes its findings by majority vote through a secret written ballot.  The board makes a specific separate finding on each allegation contained in the Statement of Reasons.  If the majority does not conclude that a preponderance of the evidence supports a reason for removal from active status, the board decides the finding in the respondent's favor.

23.14.2.  Recommendations.  Once the board has completed its findings, it determines whether the respondent should be retained in an active status in the ARC and makes a recommendation in the case.  The board should consult the respondent's entire military record in determining whether retention or removal is appropriate.  In each case involving unamortized education assistance, special pay, or bonuses, the board makes findings and recommendations regarding recoupment of those funds.  The board makes it recommendations by majority vote through a secret written ballot.  The board may make only one of the specific recommendations listed below.

23.14.2.1.  Retention.  The board recommends retaining the respondent when it determines that the respondent should be retained in the AFR or ANG.

23.14.2.2.  Respondent is Not Retained and Not Eligible to Retire as an Officer.  The board recommends removing the respondent from active status and recommends discharge with a service characterization consistent with **paragraph 14.7** and with guidance in the chapter applicable to the case.

23.14.2.3.  Respondent is Not Retained and Is Eligible to Retire as an Officer.  The board determines that the respondent should be removed from active status and transferred to the Retired Reserve.

**23.15.  Reporting of Administrative Discharge Board Proceedings.**

23.15.1.  The recorder prepares a verbatim report of the proceedings in the following instances:

23.15.1.1.  If the BOI recommends discharge under any characterization.

23.15.1.2.  In cases where the board recommends an Honorable or General discharge, or recommends retention, the recorder prepares a summarized or verbatim report of the board proceedings, as required by the convening authority.

23.15.1.3.  All reports include all supporting exhibits, documents, and other writing admitted or offered into evidence at the board hearing, and a verbatim statement of the board's findings and recommendations.

23.15.2.  Retaining Notes.  The reporter or recorder retains all notes and recordings of the hearing until the discharge authority takes final action or longer if a need exists.

23.15.3.  Addressing the Report.  In cases involving officers processed, as required in **Table A19.1**, the report is addressed through command channels to the SecAF.

23.15.4.  Authentication:

23.15.4.1.  The legal advisor authenticates the report by certifying its accuracy and the fact that a majority of voting members concurred in the findings and recommendations.

23.15.4.2.  If the legal advisor is not reasonably available to authenticate the report, the board president and the recorder authenticate the report and state in writing the reason for the substitution.

23.15.4.3.  If the board president is not reasonably available to authenticate the report, a voting member authenticates in the president's absence, stating in writing, the reason for the substitution.

23.15.5.  Number of Copies.  Prepare the report in an original and three copies.  Mark one of the copies "For Respondent" and be sure it contains no records withheld.  Guidance on withholding records Is provided in security or medical directives.

**23.16.  Legal Review.**  After the report of board proceeding has been prepared and authenticated, the show cause authority SJA reviews it for legal sufficiency.  Append the formal written legal review to the original copy of the report of board proceedings, then forward the report to the SCA and to SecAF for review and further action.

**23.17.  Directing a New BOI.**

23.17.1.  The SCA may set aside the findings and recommendations of a board and direct that a new board be appointed to consider a case only if the board makes either of these determinations:

23.17.1.1.  Finds legal prejudice to a substantial right of the respondent.

23.17.1.2.  Determines that the board arrived at its findings by fraud or collusion.

23.17.2.  No member of the new board may have served on a prior board that considered the case.

23.17.3.  The successor board may read the record of the proceedings of the earlier board, minus the findings, recommendations, and matters prejudicial to the respondent's rights.

23.17.4.  The SCA may not approve findings and recommendations less favorable to the respondent than those of the previous board unless, the SCA also finds fraud or collusion in the previous board proceedings attributable to the respondent, or an individual acting on the respondent's behalf.

23.17.5.  In cases where the board recommended discharge, the SCA may reconvene the board any time before the SecAF makes a final decision when the SCA receives evidence that could materially affect its findings and recommendations.  The SCA establishes that this evidence was not reasonably available for presentation during the board hearing.  New evidence includes conduct after the board adjourns.

23.17.5.1.  When the SCA receives evidence before sending the board report but decides not to reconvene the board, the SCA sends the evidence or a summary to AF/JAJ and the SecAF, or designee, with the reasons for the decision not to reconvene the board.  If the SCA receives evidence after sending the report of the BOI to AF/JAJ and the SecAF, or designee, the SCA promptly sends the evidence or a summary to AF/JAJ or the SecAF, or designee with a statement indicating whether the SCA intends to reconvene the board.

23.17.5.2.  The SCA gives the respondent 10 calendar days to submit comments or rebuttal before the SCA acts on the new information or evidence received.

**23.18.  Commander's Actions.**  In reviewing cases, directing final action, and recommending action to higher authority, including the SecAF, commander's act IAW the guidelines and requirements of **paragraph 14.7**, this chapter, and the chapter applying to the case.  Record the actions of the commander and include a copy of such records in the case file.

**23.19.  Disposition of Board Cases.**

23.19.1.  When the Board Recommends Retention.  The SCA approves and directs execution of the board's recommendations and advises the respondent in writing.  **(T-2)** The officer's case is closed and actions initiated against the member under the board are terminated.

23.19.2.  When the Board Recommends Separation.  The SCA reviews the case and takes one of these actions:

23.19.2.1.  Approves and directs execution of the board's recommendations only if authorized to take action under **Table A19.1**.  **(T-2)**

23.19.2.2.  If the SCA is not the final authority, the SCA forwards the case with a recommendation to the SecAF to either disapprove the board's recommendation or approve the board's recommendation with either the same or a more favorable service characterization than that recommended by the board.

23.19.3.  Forwarding Recommendations to the SecAF, or designee.  Forward the original copy of the board proceedings to AF/JAJ when the situation warrants SecAF, or designee, action.  AFRC board proceedings are sent to AF/RE prior to their submission to AF/JAJ (See **Attachment 1** for addresses).  ANG board proceedings are submitted electronically to NGB/A1PP for further staffing.

23.19.4.  Respondent's Copy of the Board Report.  The discharge authority ensures that the copy of the board report is properly prepared and that it contains copies of all documentation not previously furnished the respondent, except those records withheld. Guidance on records is provided in security or medical directives.  The discharge authority sends the copy to the respondent when the discharge authority takes action on the board's recommendation.

23.19.4.1.  If the board report is not classified, forward the copy to the respondent by electronic means or certified or registered (or equivalent) mail return receipt requested.

23.19.4.2.  If the board report is classified, advise the respondent that access is denied. Guidance on board classification is provided in DoDM 5200.01, Volume 1, and DoDM 5200.02_AFMAN 16-1405.

23.19.4.2.1.  Special procedures and requirements apply in all cases where classified information may be used as evidence.  In all such cases, contact AF/JAJ ASAP for guidance on how to proceed.

23.19.4.2.2.  Declassification.  At the earliest stage practicable, government counsel should coordinate with the original classification authority to request declassification of potential evidence.

23.19.4.2.3.  Classified Material in the Record.  When a record of board contains classified material, the SJA or designee takes appropriate steps to work with the

classification authority to declassify the material when proper.  If it is impossible to declassify the material, the record must be classified.  In determining whether a particular record of board must be classified because of its content, consideration should be given to DoDM 5200.01, Volume 1, and DoDM 5200.01, Volume 1_AFMAN16-1404, Volume 1.  **(T-0)**

23.19.4.2.4.  Controlled Material in the Record.  When a record of the board contains controlled material (e.g., promotion testing materials, professional military education test materials, and career development course exams), the materials should be safeguarded to prevent further disclosure or unauthorized access.

23.19.4.3.  If the board recommends discharge, advise the respondent that within 15 calendar days (30 calendar days if member is in civilian confinement) after receipt of the board report, the respondent or counsel may submit to AF/JAJ any evidence, brief, or argument not previously furnished that the respondent wants the final authority to consider in the final evaluation of the case.  For the ANG, respondents or their counsel may submit any evidence, brief, or argument not previously furnished that the respondent wants the final authority to consider in the final evaluation of the case to NGB/A1PP with the exception of an AF Form 131 as it requires action from the state prior to being received by NGB/A1PP.

23.19.4.4.  Personal appearance of an officer or the officer's counsel before SecAF, or designee, is not authorized, unless SecAF, or designee, determines that the officer must be present, with or without counsel, in order to properly evaluate the case. **(T-1)**

**23.20. Reporting Separation for More Than One Reason.**  The discharge authority considers all reasons for discharge, citing in the discharge instrument the most appropriate basis as the primary reason for discharge.  The primary reason is reported in MilPDS.

**23.21. Dual Action Case Processing.**  SecAF approval is required when an officer is subject to involuntary discharge under this publication and is eligible for disability separation or disability retirement. Guidance on dual action processing is provided in AFI 36-3212.  These cases should be closely monitored to ensure a discharge under this publication is not executed before the DES case has been completed.

**23.22. Guidelines for Separation and Service Characterization. Paragraph 14.7** provides guidance for determining the type of separation and service characterization warranted

23.22.1.  Issuing Discharge Certificates.

23.22.1.1.  Members discharged under this publication receive Honorable, General, or UOTHC discharges. Guidance on preparation of discharge certificates is provided in AFI 36-3202 or ANGI 36-3201 for ANG members. Members being released from the custody and control of the AF or dropped from the rolls of the AF do not receive a discharge certificate and their orders do not characterize their service.  Guidance on issuing orders is provided in DAFMAN 36-2102, Attachment 10, to effect separation, discharge, or release from the custody and control of the AF for regular component and AFR members.  List this publication as the authority for separation or discharge.

23.22.1.2.  The member's servicing FSS/MPF issues DD Form 256 for members assigned to the AFR Unit Program.  ARPC issues the DD Form 256 upon request for all ANG members.

23.22.1.3.  ARPC/DPTTS sends a copy of the discharge orders for chaplains or chaplain candidates to the Chief of Chaplains (AF/HC).  (See **Attachment 1** for addresses).

23.22.1.4.  ARPC/DPTTS sends a copy of discharge orders for medical service officers to the Medical Career Management Division (AFPC/DPMN).  (See **Attachment 1** for addresses).

23.22.1.5.  The ANG issues discharge certificates via the virtual Personnel Center.  The online application includes the centralized publication of separation and special orders (to include amendment and revocation orders) at the TFSC, Buckley Space Force Base, CO.

23.22.2.  Send member copies of the order and other separation documents, information on the purpose and authority of the Discharge Review Board and AF Board for Correction of Military Records, unless provided earlier in the separation process. Guidance on member copies is provided in AFI 36-3202. If applicable, send a copy of the report of any administrative discharge board proceedings involved.23.22.3. Orders directing separation or discharge become effective at 2400 hours on the date specified if member receives actual or constructive notice on or before the effective date specified in the orders.  If a member intentionally avoids receipt of the notice or if delivery cannot be made through normal postal channels, the effective date specified in the orders is considered to be the date official notification was received.  A member continues to be a member until the discharge becomes effective.

**23.23. Disposition of Correspondence.** Approved separation case files are permanently maintained in the member's Master Personnel Record. Guidance on member records is provided in AFI 36-2608, and Air Force Records Disposition Schedule located in the Air Force Records Information Management System.  Disapproved applications for voluntary separation are returned to the member with an explanation for its disapproval.  For Category A Reservists, disapproved recommendations for involuntary separation are returned to the unit commander.

## Part 4

## PALACE CHASE PROGRAMS

## Chapter 24

## OFFICER PALACE CHASE PROGRAM

**24.1.  Program Description.**  The PALACE CHASE program is a voluntary separation provision that provides regular component officers a process to request to transfer from the active component to an Air Reserve Component unit.  The office of the SecAF may waive a portion of applicant's remaining ADSC when the applicant agrees to all of the terms and conditions outlined in the DAF Form 2631.  In exchange for waiving the ADSC the applicant incurs an extended commitment within the ARC.  Regular component officers will resign their current commission in order to accept a reserve commission. **(T-1)** Transfer must be to either an ANG unit or to an AFR position within the selected reserve. **(T-1)** Participants are transferred to and remain in one of the following statuses during the PALACE CHASE contract period: DSG, TR, IMA, AGR, Title 5 or Title 32 military technician positions.

**24.2.  PALACE CHASE Officer eligibility.**

24.2.1.  All applicants are required to contact an ARC ISR and complete a prescreening process prior to opening a new PALACE CHASE application.

24.2.2.  Applicants can find the contact information for their local ARC ISR by contacting their local MPF.  Additional information is online at the ANG and AFR websites.

24.2.3.  All applicants must be qualified to participate in the PALACE CHASE program IAW **Table 24.1** and the specific accession standards required for accession into the ARC. **(T-2)** Accession standards are outlined in DAFMAN 36-2032.

24.2.4.  All applicants must remain qualified throughout the entire application process. **(T-1)** If at any time an applicant is not qualified to participate in the PALACE CHASE program, the application and the projection to the ARC will be canceled and returned without further action. **(T-1)** Canceled applications result in the separation order being revoked.  Members have up to 10 days from their DOS to report to their duty section and in-process.

**24.3.  PALACE CHASE Officer Application.**

24.3.1.  Applicants follow current application procedures located on myFSS.  Procedures include application submissions, change/withdrawal requests, and other information regarding PALACE CHASE Program applications.

24.3.2.  All officer applicants must contact their unit commander or equivalent commander prior to opening a new PALACE CHASE application. **(T-2)** Commanders conduct a voluntary separation briefing IAW **Part 3** of this publication.

24.3.3.  Applicant provides the ARC ISR with the application documents listed on myFSS. The ARC ISR assists the applicant with scroll submission.  All officers should initiate a reserve scroll action prior to opening a new PALACE CHASE application.

24.3.4.  All documents submitted to AFPC/DPMSSR must be legible and legally sufficient. **(T-1)** Forms must include full signatures, certifications, and complete dates. **(T-2)**

24.3.5.  ARC ISR generates the AF Form 1288.

24.3.5.1.  The AF Form 1288, with the first endorsement, completed, must be returned to the applicant within 14 duty days. Air Force Forms 1288 that are not endorsed by the unit commanders or civilian directors within 14 duty days of member initiation will be submitted to AFPC/DPMSSR with a memorandum stating the applicant's commander was unable to sign.

24.3.5.2.  When recommending disapproval, unit commanders or civilian directors are required to provide comments.  Comments are provided in the "Remarks" section of the AF Form 1288, first endorsement.

24.3.6.  ARC ISR generates the DAF Form 2631.

24.3.7.  All applicants draft a personal memorandum providing justification for PALACE CHASE application.  The memorandum can have either a digital or wet signature.

24.3.8.  Officers with a disapproved application may not open a new application for PALACE CHASE within 120 days from the SAFPC decision date.

24.3.9.  The applicant's unit commander or civilian director may grant up to seven days of permissive TDY when the ARC unit requires an applicant to interview.  Permissive TDY cannot be used for the purpose of civilian job interview, tryouts for professional sports teams, or any other activities not related to employment within the ARC.

24.3.10.  Withdrawing Officer PALACE CHASE applications.

24.3.10.1.  Applications that have not been assigned a final approved DOS only require coordination from the member's current regular component unit commander or civilian director.

24.3.10.2.  Applications that have been final approved and have been projected in the ARC cannot be withdrawn unless the officer provides strong justification under the following reasons: severe hardship not common to USAF or USSF members; in the best interest of the USAF or USSF; accept continuation; or to accept an active component promotion that requires the member to serve past the final approved DOS.  **(T-2)**

24.3.10.3.  Applicants will not withdraw a final approved PALACE CHASE application if: the participant has departed the active duty station, began terminal leave, the final approved DOS has passed, or if the USAF has obligated funds for movement of household goods.  **(T-2)**

24.3.10.4. Following the withdrawal of an approved application the participant is restricted from reapplying for one year.

**24.4.  Reserve Active Status List, Federal Recognition and Temporary Federal Recognition.**

24.4.1.  All officers must resign their current active duty commission prior to appointment into the ARC.  **(T-0)** Regular component officers must have a path to a reserve commission prior to separating from active duty.  **(T-1)**

24.4.2. (Reserve Officer applicants only) Must be approved on the RASL prior to AFPC/DPMSSR assigning the officers final approved DOS.  **(T-0)**

24.4.3.  AFPC/DPMSSR office will not project the member's separation in the MilPDS until the member has an approved reserve scroll. **(T-0)** The ISR should not forward the AF Form 1288 until the officer's scroll has been approved.

24.4.4.  Officers who cannot complete the gain process to the ARC unit within 10 days from their DOS will incur a break in service.  **(T-1)** Applicants are strongly encouraged to be approved on the RASL prior to applying for separation.

24.4.5.  (ANG Officer Applicants only) Will receive temporary federal recognition by the state or territory of affiliation. Guidance on federal recognitions is provided in DAFMAN 36-2032 and Title 32 United States Code Section 305, *Federal Recognition of Commissioned Officers: Persons Eligible,* and Title 32 United States Code Section 308, *Federal Recognition of Officers: Temporary Recognition.*  Federal recognition and approval of the RASL is not required for AFPC/DPMSSR to assign the officers final approved DOS.  **(T-0)**

24.4.6.  An officer who transfers between military services or between the Active Duty List and RASL of the same Service shall execute a new appointment that will not reflect a higher relative rank or precedence than that held on the day before the transfer; reference DoDI 1300.04, *Inter-Service and Inter-Component Transfers of Service Members*.  **(T-0)**

**24.5.  DOS selection requested DOS and final approved DOS.**

24.5.1.  All applicants select a requested DOS during the initial phase of the PALACE CHASE application.  Requested DOS must comply with **Table 24.1**.  **(T-2)** Prior to selecting a requested DOS applicants should consider the following points:

24.5.1.1.  Participants are not required to use, sell, or lose their earned leave at the end of an active duty tour.  Reference, DAFI 36-3003 and Title 37 United States Code Section 501, *Payments for Unused Accrued Leave*.

24.5.1.2.  Participants may carry over leave earned during an active duty tour for use during a future active duty tour.  While members are authorized to carry leave forward, members should remember that leave should be taken when earned unless circumstances do not afford that opportunity.

24.5.1.2.1.  Active duty regular leave can't be used when the participant is an ARC TR, ART, IR, ANG Technician, or DSG status.  Leave is only available for use by the participants when the participant enters the next active duty period.

24.5.1.2.2.  Regular Active Duty leave balance is immediately available for use when participant transfers to a Title 10 or Title 32 AGR tour.

24.5.2.  The applicant's requested DOS is not the final approved DOS.  The final approved DOS is established by SAFPC.

24.5.3.  Applicants with a previously established DOS may apply through PALACE CHASE for a date prior to the currently established separation date.  The applicant can request a DOS prior to the separation date if the requested DOS meets the criteria located in **Table 24.1**.

24.5.4.  AFPC/DPMSSR may not assign the final approved DOS or project separation in the MilPDS until the following conditions have been met:

24.5.4.1.  AFPC/DPMSSR receives the completed AF Form 1288 with all endorsements completed.

24.5.4.2.  AFPC/DPMSSR receives the completed DAF Form 2631.

24.5.4.3.  SAFPC notifies AFPC/DPMSSR that SecAF accepts the officer's resignation.

24.5.4.4.  (Officers projected to the AFR only) Scroll approval is for the officer's grade at separation.

24.5.4.5.  Participants with an approved PALACE CHASE application are given no less than 60 days to out-process and separate.  **Exception**:  Participants with an approved PALACE CHASE Special Programs applications will be given no less than 45 days if the member's approved ARC assignment location is the same location as the participant's current duty location. **(T-1)**

24.5.5.  DOS change requests.

24.5.5.1.  Applicants should refer to myFSS for the requested DOS change process.

24.5.5.2.  DOS changes prior to receipt of the final approved DOS.  Officers that have not been assigned a final approved DOS only require coordination from the member's current regular component WG/CC or equivalent.

24.5.5.3.  DOS changes after SAFPC accepts the resignation and AFPC/DPMSSR projects the officers final approved DOS in the MilPDS.

24.5.5.3.1.  Participants cannot change the final approved DOS date unless the participant provides strong justification under the following reasons: severe hardship not common to USAF or USSF members or in the best interest of the USAF or USSF.

24.5.5.3.2.  SAFPC coordinates on all application changes after SecAF approves the application.

24.5.5.3.3.  Applicants may not request a date more than 90 days beyond the final approved DOS without approval from the gaining ARC MPF.

24.5.5.3.4.  Once final approved DOS has been set by SAFPC, participants may not request to change the DOS to a date prior to the final approved DOS.

24.5.5.3.5.  Oversees applicants that have curtailed their DEROS based upon a final approved PALACE CHASE application DOS may not request to change their final approved DOS.

**24.6.  PALACE CHASE Contract.**

24.6.1. The PALACE CHASE contract period is the time in which a PALACE CHASE participant must serve in the ARC in order to fulfill the PALACE CHASE contract. **(T-0)** PALACE CHASE participants must agree to an extended service commitment in the ARC. Guidance on extended service commitments is provided in Title 10 USC Section 12301(d), *Reserve Components Generally*. **(T-0)**

24.6.2.  The contract date is calculated by determining the specific period of time remaining on the applicant's unfulfilled ADSC beyond the requested DOS.  Calculate years, months, and days remaining then, triple the time remaining on the officer's ADSC.  Add this time to the day following the member's final approved DOS.  That date is the PALACE CHASE contract date.  The contract period will be no less than one year and no more than 6 years.  **(T-1)**

24.6.3.  The PALACE CHASE participant's initial ARC service commitment must cover the entire length of the PALACE CHASE contract. **(T-1)** The PALACE CHASE contract expiration date is listed in Section 5 of the member's DAF Form 2631. **(T-2)**

24.6.4.  Approved PALACE CHASE contract and related release to the ARC is contingent on the member satisfactorily participating and completing the gain into the AFR or ANG.  Failure to complete transfer to the ARC results in immediate recall to the RegAF; refer to **Chapter 28** of this publication.

24.6.4.1.  Participants are responsible for contacting their ARC unit commander, or supervisor, as soon as the participant becomes aware that the participant will not be able to attend any scheduled period of duty, refer to AFMAN 36-2136.

24.6.4.2.  While serving in the ARC, the PALACE CHASE participants ensure that all training requirements are met to achieve and maintain the appropriate competency and skill level commensurate with their grade and position.

24.6.4.3.  Participants are also responsible for maintaining their current address and telephone number with the ARC unit MPF and Finance.

24.6.5.  All PALACE CHASE participants consent to a National Crime Information Check.  Guidance on criminal history is provided in Title 5 United States Code Section 9101, *Access to Criminal History Records for National Security and Other Purposes*.

24.6.6.  Participants are transferred to and remain in one of the following statuses during the PALACE CHASE contract period: DSG, TR, IMA, AGR, or a Title 5 or Title 32 military technician.

24.6.7.  PALACE CHASE participants must remain in the selected reserve or return to the regular component during the PALACE CHASE contract period.  **(T-1)**

24.6.7.1.  Release or transfer of PALACE CHASE participants to non-DAF components (Army, Navy, United States Marine Corps or Coast Guard) is not authorized under any circumstances.  **(T-2)**

24.6.7.2.  Release to the IRR is only authorized when a PALACE CHASE participant becomes and unsatisfactory participant.

24.6.7.3.  Participants may be transferred to the Retired Reserve when qualified.

24.6.7.4.  AFPC/DPMSSR must be notified before taking action to discharge or reassign the member out of the selected reserve.

24.6.8.  The PALACE CHASE program is a voluntary separation provision.  Participants are subject to immediate, voluntary recall for any reason to complete the period of active duty from which early release was granted.

**24.7. Application Recommendations and Comments.**

24.7.1.  Regular component Unit Commander or Civilian Director:

24.7.1.1.  Provides both a recommendation (approval or disapproval) and comments on each application.  Comments provide the separation authority with valuable information pertaining to the applicant's case.

24.7.1.1.1.  Unit commanders or civilian directors coordinate on each request.

24.7.1.1.2.  When recommending approval unit commanders or civilian directors are encouraged to provide comments on the applicant's service.  Comments should be provided in the "Remarks" block of the first endorsement of the AF Form 1288.

24.7.1.1.3.  When recommending disapproval unit commanders or civilian directors are required to provide comments.  Comments are provided in the "Remarks" block of the first endorsement of the AF Form 1288.

24.7.1.2.  May make recommendation to the Separation Authority in regards to the applicant's requested DOS.

24.7.1.3.  Civilian directors are authorized to act on voluntary separation applications at the unit commander level of coordination.  Refer to AFI 51-509, *Appointment to and Assumption of Command.*

24.7.2.  Regular component WG/CC, Delta/CC, or Equivalent:

24.7.2.1.  Provides both a recommendation (approval or disapproval) and comments on each application.  Comments provide the separation authority with valuable information pertaining to the applicant's case.

24.7.2.1.1.  WG/CCs, Delta/CCs, or equivalent coordinate on each request.

24.7.2.1.2.  When recommending approval WG/CC or Delta/CC (or equivalent) are encouraged to provide comments on the applicant's service.

24.7.2.1.3.  When recommending disapproval WG/CC or Delta/CC (or equivalent) are required to provide comments.  Comments are provided in the applicant's separation case.

24.7.2.2.  May make recommendation to the separation authority in regards to the applicant's requested DOS.

24.7.2.3.  Civilian directors are not authorized to coordinate as the WG/CC, Delta/CC, (or equivalent). When a wing/delta (or equivalent) is led by a civilian director, responsibility to coordinate on an applicant's PALACE CHASE request would flow to the next command level above the civilian-led unit.  Refer to AFI 51-509.

24.7.3.  AFPC Directorate of Personnel Operations (AFPC/DPM Assignments Policy and Teams).  Provides both a recommendation (approval or disapproval) and comments on each application.  Comments provide the separation authority with valuable information pertaining to the applicant's case.

24.7.3.1.  All recommendations include manning percentages and any relevant information that will assist the separation authority to make a decision.  When recommending disapproval, a complete explanation is required.

24.7.3.2.  Manning percentages include the applicant's Control AFSC/SFSC and CORE Identification authorized and assigned manning at the unit, the wing/delta, and worldwide level.

24.7.3.3.  Recommends disapproval only if the member's loss is detrimental to Total Force of the AF mission capability.

24.7.3.4.  May make conditional approval recommendations based on a proposed alternate DOS.

24.7.4.  AFPC/DPMSSR:

24.7.4.1.  Provides both a recommendation (approval or disapproval) and comments on each application.  Comments provide the separation authority with valuable information pertaining to the applicant's case.

24.7.4.2.  Comments are required for all applications and include any relevant information that will assist the separation authority to make a decision.

24.7.4.3.  Recommendations should be based on an evaluation of applicant's probable success within the ARC, an applicant's ability to fill critically manned positions, and best interest of the Air Force or Space Force.

**24.8.  Application Decisions.  SAFPC:**

24.8.1.  Adjudicates officer applications by either approving, disapproving, or conditionally approving an alternate DOS of an officer's application to resign their Active Duty Commission in exchange for a reserve commission.

24.8.2.  SAFPC may approve, disapprove, or conditionally approve the applicant's request to resign the current commission.

24.8.2.1.  SAFPC may approve the officer's resignation request.  Approval of the officer resignation is contingent upon the officer completing all requirements of the PALACE CHASE contract and the officer remaining qualified for an ARC appointment.

24.8.2.2.  SAFPC may disapprove the officer's resignation request.  Officers with a disapproved application may not open a new PALACE CHASE application within 120 days of the SAFPC decision date.

24.8.2.3.  SAFPC may conditionally approve the officer's resignation request with an alternate DOS.  Final approval of the application is contingent on the applicant accepting the alternate DOS.  Declining the alternate DOS will result in the application being disapproved and returned without further action.  **(T-1)**

**24.9.  Recoupment.** SAFPC acts on behalf of the SecAF and may direct the recoupment of unearned benefits.  Officers are subject to recoupment (under the provisions of 10 USC § 2005; 37 USC § 303a) for receipt of any education assistance funds and must reimburse the US a pro-rata share of the cost of their education assistance funds based on the period of unfulfilled ADSC. **(T-0)**

24.9.1.  SAFPC will use the Action of the SecAF memorandum to direct recoupment action. **(T-1)**

24.9.1.1.  Recoupment is not waived for the following ADSCs:

24.9.1.1.1.  Service academy.

24.9.1.1.2.  Armed forces health profession scholarship program.

24.9.1.1.3.  Uniformed Services University of the Health Sciences.

24.9.1.1.4.  ROTC college scholarship program.

24.9.1.1.5.  Tuition assistance.

24.9.1.1.6.  Minuteman education program.

24.9.1.1.7.  Air Force Institute of Technology.

24.9.1.2.  Career Status Bonus/REDUX participants will be recouped.  **(T-1)**

24.9.1.3.  When directed by SAFPC the agency responsible for administering the applicable ADSC takes the following actions:

24.9.1.3.1.  Determine the amount to be recouped.  Calculate the prorated amount of the officer's unfulfilled commitment.

24.9.1.3.2.  Complete the DD Form 139, *Pay Adjustment Authorization*, and forward to AFPC/DPMSSR who sends the form to DFAS to authorize the amount to be recouped.

24.9.2.  The debt repayment schedule is determined by the DFAS.  Repayment does not reduce the PALACE CHASE contract period.

**24.10.  Separation Actions.**

24.10.1.  Each Officer PALACE CHASE participant with an approved application receives an evaluation prior to separation from the active component; reference DAFI 36-2406.

24.10.1.1.  An Officer Performance Report is required if the member is assigned to a regular component unit and has more than 120 days of supervision since the last evaluation on the final approved DOS.

24.10.1.2.  If there was more than 60 days but less than 120 days between the closeout of the last evaluation and final approved DOS a Letter of Evaluation is required.

24.10.1.3.  If there is less than 60 days between the closeout of the last evaluation and final approved DOS, no Officer Performance Report is required, and a Letter of Evaluation is optional.

24.10.1.4.  If required, the gaining reserve or ANG unit prepares an AF Form 77, *Letter of Evaluation*, to cover any gaps there may be in the record. Guidance on the AF Form 77 is provided in AFI 36-2608 and DAFI 36-2406.

24.10.2.  PALACE CHASE participants with a final approved PALACE CHASE application who experience a change in qualification or loss of ARC assignment must contact the TFSC JBSA Randolph, TX (COM 1-800-525-0102, DSN 665-0102, or reference the contact information listed on myFSS).  **(T-2)**

24.10.3.  PALACE CHASE participants who have not received the DAF Form 100 must not enter into any binding agreements based on the assumption that the PALACE CHASE application will be approved or that the applicant will be separating from the regular component prior to the currently established ADSC or DOS.  **(T-2)**

24.10.3.1.  PALACE CHASE participants with tentatively approved or final approved applications must not obligate themselves to any legally binding contract prior to publication of the separation orders.  **(T-2)**

24.10.3.2. PALACE CHASE participants may not initiate any type of movement of personal effects without the DAF Form 100 and prior coordination from the Traffic Management Office.

24.10.4. PALACE CHASE participants must not depart on terminal leave prior to the applicant completing all required separation processing. **(T-2)**

24.10.5. Regular component MPF conducts final out-processing action with the Member regardless of their location. Mail all source documents to AFPC/DPSOR, 550 C Street West Suite 21, Randolph AFB, TX 78150-4713.

24.10.6. PALACE CHASE participants, with an approved PALACE CHASE separation, character of service is listed as Honorable. Discharge is for the convenience of the USAF or USSF.

24.10.7. Officer PALACE CHASE participants who transfer between the Active Duty List and the RASL and are on a promotion list to the next higher grade; the SecAF will integrate the officer into the corresponding promotion list in the new components promotion list based on the officer's date of rank in the officer's current grade. **(T-0)**

24.10.8. Participants must be in good standing on government travel card balances prior to final out processing. **(T-1)** Participants with delinquent payments (Payments not received by card issuer within 60 days of billing date) must not be final out-processed for PALACE CHASE programs. **(T-2)**

## 24.11. Applicant Reporting Procedures.

24.11.1. PALACE CHASE participants are authorized up to 10 days of concurrent service to allow for travel and document retrieval.

24.11.2. All participants must report to and be gained by the ARC unit no later than 10 days after the member's final approved PALACE CHASE DOS. **(T-2)** ARC units are not authorized to delay enlistment or appointment action until the unit's next Unit Training Assembly or Regularly Scheduled Drill for ANG.

24.11.3. The Reporting Official is the primary POC for the PALACE CHASE participant at the gaining unit. Refer to **paragraph 2.3.19**.

24.11.3.1. Reporting Officials should provide the PALACE CHASE participant with the reporting instructions and accession requirements for the ARC, prior to the member's DOS.

24.11.3.2. Participants that fail to report within the 10 days of concurrent service are considered absent. Unauthorized absences must be reported immediately. **(T-2)** Reporting officials promptly notify the chain of command. Unit commanders have the primary responsibility to determine the cause of absence and to find and return the individual to military control. Refer to **Chapter 28** of this publication when a PALACE CHASE participant fails to report.

24.11.4. The ARC MPF completes appointment and gain action following guidance provided in DAFMAN 36-2102 and DAFMAN 36-2032.

24.11.4.1. PALACE CHASE participant's service commitment must cover the entire length of the PALACE CHASE contract. **(T-2)** The PALACE CHASE contract expiration date is listed in Section 5 of the member's DAF Form 2631.

24.11.4.2.  The PALACE CHASE participant must be gained effective the day after the member's final approved DOS assigned by SAFPC.  **(T-2)**

24.11.4.3.  MPF personnel should not use the prior service AF Recruiting Information Support System - Total Force Interface application to gain any PALACE CHASE programs records.

**Table 24.1.  Eligibility Criteria for Officer PALACE CHASE Applications.**

| RULE | OFFICER PALACE CHASE APPLICANTS | NOTES |
|---|---|---|
| | **APPLICANT MUST:** | |
| 1 | Contact an ARC ISR prior to opening a new PALACE CHASE application. ISR determines the applicant's eligibility for accession into the ARC. | |
| 2 | All officers must complete two-thirds of the initial commissioning ADSC prior to the requested DOS. Service Academy Graduates (ADSC RSN Code 29) must complete the entire initial commissioning ADSC prior to the requested DOS.  Reference AFMAN 36-2100. Regardless of the source of commission all officers must complete 24 months of the initial ADSC prior to the requested DOS.  **(T-0)** | |
| 3 | Be a US citizen. | |
| 4 | Be qualified for worldwide deployment as defined by DAFMAN 48-123 throughout the entire application process.  **Exception**:  Female members who are pregnant or post-delivery are eligible.  Must have Assignment Availability Code (AAC) 81 or ALC A. **(T-0)** | |
| 5 | Be in Duty Status 00, 08, or 09 when starting a new application.  See rule 15 and 36. | |
| 6 | Have a current AF Fitness Assessment, meeting each component's minimum standards and be in fitness category Excellent or Satisfactory.  See **rule 31**.  **Exception**:  Female members who are pregnant or post-delivery are eligible with AAC 81 or ALC A. | 6 |
| 7 | Select a requested DOS that meets the below criteria:<br><br>Continental United States (CONUS) Officer Applicant:  Select at DOS no less 6 months and no more than 12 months from application submission date.<br><br>Outside the continental United States (OCONUS) Officer Applicant**:** Select one of the following rules when choosing a DOS.  Choose the rule based on the current situation:<br><br>Rule A.  If current DEROS and highest ADSC dates fall within the same month and year, an application must begin no more than 15 months but no less than 12 months prior to current highest ADSC.  **(T-2)** Members may request a separation date up to 6 months prior to the current established highest ADSC.<br><br>Rule B.  If current DEROS and highest ADSC dates do not fall within the same month and year, an application must be open no more than 12 months but no less than 9 months prior to the current DEROS.  **(T-2)** Members must request a separation equal to the current established DEROS. | |
| 8 | Have a valid security clearance. | 1 |
| 9 | Be willing to participate satisfactorily.  Refer to the DAF Form 2631 and **Chapter 28** of this publication. | |
| 10 | Meet all ARC accession standards.  Applies to applicant at any time during the entire application process. | 9 |

**DAFI36-3211  24 JUNE 2022**                                                                                           **391**

| RULE | ETP Available | | OFFICER PALACE CHASE APPLICANTS | NOTES |
|---|---|---|---|---|
| | YES | NO | | |
| 11 | | | Be eligible for a Reserve appointment following guidance provided in DAFMAN 36-2032. ANG appointments must also meet appointment standards outlined in DAFMAN 36-2032. **(T-1)** | |
| 12 | | | Apply for and accept an appointment within the ARC in the same competitive category as held at the time of separation.  Non-rated officers who wish to apply for seminary and change of competitive category to the Chaplain Corps may do so by utilizing the PALACE BLESSING Program outlined in **Chapter 27** of this publication. | |
| 13 | | | Initiate Reserve Commissioning scroll application prior to opening a PALACE CHASE application.  ARC ISR submits required scroll documents to ARPC. | |
| RULE | YES | NO | **APPLICANT MUST NOT:** | NOTES |
| 14 | | X | Be a drug or alcohol abuser as defined by the AF Form 2030, *USAF Drug and Alcohol Abuse Certificate.* | 7 |
| 15 | | X | Open a new application while in TDY Duty Status <u>OR</u> be in duty status 20, 23, 24 or 26 and have an Effective and End date of greater than 31 days. Applies to applicant at any time during the entire application process. | |
| 16 | | X | Be scheduled or notified for Air Expeditionary Force Band or contingency deployments or in a deployed status when opening a new application.  AAC ET. | 2, 3 |
| 17 | | X | Be selected for Permanent Change of Station (PCS) assignment reference: DAFI 36-2110.  **Exception**: Does not apply to OCONUS applicants.  AAC 24. | 2, 3 |
| 18 | X | | Open a new application when application start date is less than 120 days from current highest ADSC expiration.  Members with less than 120 days remaining on current highest ADSC should apply for separation via Completion of required service provision and then PALACE FRONT to the ARC. | 5 |
| 19 | | X | Have a pending voluntary or involuntary separation or retirement.  **Exception**: Applicants with previously approved 3 or 7-day option may apply for PALACE CHASE.  Requested DOS must be prior to currently assigned separation date.  **(T-2)** | |
| 20 | | X | Have had a rating of "does not meet standards" on <u>ANY</u> of the last 3 OPBs. | |
| 21 | | X | Have received a referral Officer Performance Report on any of the last 3 OPBs, AAC 19. | |
| 22 | X | | Have misused any government travel charge card (used for other than official government travel) or been seriously delinquent (payment not received by the card issuer within 60 days from the billing date).  Applicants with a current delinquent payment may not apply for exception to policy. | 5 |
| 23 | X | | Have <u>EVER</u> received a court-martial conviction.  Participants currently awaiting trial by court-martial are not eligible for exception to policy. | 5 |
| 24 | | X | Currently be serving on the Control Roster. | |
| 25 | X | | Have had an Article 15 action within the last 5 years.  Exception to policy is not available for members whose Article 15 action is open, pending, or punishments have not been completed. | 5 |
| 26 | X | | Have had a UIF within the last 2 years.  Exception to policy is not available for members with a current/active UIF. | 5 |
| 27 | | X | Have <u>EVER</u> been convicted of a felony or misdemeanor crime of domestic violence. | 8 |

392                                                                                       DAFI36-3211  24 JUNE 2022

| 28 | | X | Have EVER received an unrestricted assignment due to accommodation of religious or conscientious objection convictions or have, ALC K. | |
| 29 | | X | Currently be in Career Intermission Program (CIP).  Applicants must complete the entire CIP ADSC prior to the requested DOS. | |
| 30 | X | | Have any medical conditions which preclude unrestricted assignments or deployments, AAC 31. | 4, 9 |
| 31 | | X | Have a current fitness COMPONENT or COMPOSITE exemption as defined in DAFMAN 36-2905. **Exception**: Female members who are pregnant or post-delivery with AAC 81 or ALC A are eligible. | 6 |
| 32 | X | | Have the following Assignment Limitation Code (ALC) Code C1, C2, or C3 or Assignment Availability Code (AAC) of X, Y or Z. | 4, 9 |
| 33 | | X | Be currently undergoing a MEB, AAC 37. | |
| 34 | X | | Have any current duty or mobility restrictions listed on the AF Form 469. | 4, 9 |
| 35 | | X | Be in Strength Accounting Duty Status Code:  01, 02, 03, 04, 05, 06, 07, 11, 13, 14, 15, 16, 17, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 42, 43, 52, 53, 56, 59, 73, 74, 75, 76, or 77. **Exception**:  Applicant may be in duty Status code 20, 23 or 24 with an Effective and End date of less than 31 days.  Application start date must precede Duty Status Effective date when TDY for less than 31 days. | 5 |
| 36 | | X | Have an AAC of one of the following:  11, 12, 13, 14, 15, 16, 17, 18, 19, 21, 52, 67 or ET. | |
| 37 | X | | Have an AAC of one of the following:  24, 29, 38, 39, 56, 70, 72, 73, 74, CS or AP. | 5 |
| 38 | X | | Open a new application within 120 days of a previously disapproved application. | 5 |
| 39 | | X | Be a member the ARC and serving on EAD. Limited Period Recall Program and VLPAD program participants are ARC members on EAD orders and are not eligible for PALACE CHASE. | |
| 40 | X | | Open a new PALACE CHASE application for one year following the withdrawal of an Approved PALACE CHASE application. | 5 |
| 41 | | X | Be enrolled in formal training course or Advance Academic Degree participants.  AAC 48. | 2, 3 |
| 42 | | X | Be a Service Academy graduate on initial ADSC.  Service Code 29) must complete the entire initial commissioning ADSC prior to the requested DOS. Reference AFMAN 36-2100. | |
| 43 | X | | Have been twice non-selected for promotion.  **Exception**: Member can apply for a waiver through their ARC ISR prior to opening a new PALACE CHASE application.  If the ARC component approves the accession waiver, then the member will be allowed to apply for PALACE CHASE.  Approved waiver must be included in the application.  **(T-2)** | 9, 10 |
| 44 | | X | Be in the rank of O-6 or higher.  Applicants in the rank of O-6 or higher should contact the Senior Leaders Group at AF/A1LO or SF/S1LO. | |

Notes:
1. Applicant must have a valid current security clearance on file at time of application.  The clearance must cover a period beyond the requested DOS.  **(T-1)** The minimum clearance level is SECRET.
2. Members with an ASD, extended deployment notification, or selection date for training the SAME DATE or PRIOR to opening a new PALACE CHASE application start date are not qualified for PALACE CHASE until they complete a 3 or 7-day option.  After 3 or 7-day option processing is complete the member may apply for PALACE CHASE with a requested DOS prior to the MSD assigned by the 3 or 7-day option.  Refer to DAFI 36-2110 for assignment-related information.
3. Members with a PALACE CHASE application that was opened PRIOR to the ASD, extended deployment notification, or selection date for training has the option to accept the assignment or training and withdraw the PALACE CHASE application or reclama (formal protest) the assignment or selection.  Normal separation and

retirement criteria apply when a signed request for separation or retirement is dated before an ASD for PCS or selection date for training.  Applicants may request withdrawal of the PALACE CHASE application.  Applicants that wish to keep the current PALACE CHASE application and reclama the assignment or training selection should reclama following guidance provided in DAFI 36-2110.

*4.  The following are medically disqualifying factors:  ALC codes C1, C2, and C3, assigned "3 or 4" profile on AF Form 422; diagnosed with any medical condition as identified in DoDI 6130.03, Volume 2, *Medical Standards for Military Service: Retention*, regardless of previous MEB and/or previous PEB/MEB disposition.  Exception to Policy is obtained via the ARC ISR.  Applicants obtain both an AFRC/SG or NGB/SG waiver approval and a memorandum for record from the gaining ARC WG/CC PRIOR to submitting application.  SG will review ALC, note if it's appropriate for medical issue, and if not suggest modification applicable to ARC service.  Approved Recruiting Service waiver with a memorandum for record from gaining WG/CC accepting assignment limitation code must be included in initial application submission.  **(T-2)**

*5.  AFPC/DPMSSR is the sole approval/disapproval authority for all PALACE CHASE program exception to policy requests.  All exception to policy applications will be completed prior to submitting the initial PALACE CHASE application.  ARC ISR completes requirements for exception to policy submission.  **(T-2)**

6.  Applicants must have a Fitness Score of 75 or above dated within 6 months or score of 90 or above dated within 12 months.  **(T-1)**

7.  ARC ISR completes a new AF Form 2030 for each applicant.  Form is completed through section III during initial application.  Section IV is completed at time of enlistment, commissioning, or appointment into the ARC.

8.  The Lautenberg Amendment concerns convictions for misdemeanor crimes of domestic violence in civilian courts.  DoD policy has extended the prohibition to convictions for crimes of domestic violence tried by general or special court-martial, as well as civilian criminal felony convictions adjudged on or after 27 November 2002.

*9.  PALACE CHASE applicants that do not meet the retention standards for the ARC may request retention waiver or exception to policy prior to opening a new PALACE CHASE application.  A retention waiver may not be available; applicants contact their ARC ISR to check availability of waiver or exception to policy.

*10.  The waiver or exception to policy must be completed and approved prior to opening a new PALACE CHASE application or requesting an exception to policy for PALACE CHASE program eligibility.  **(T-2)** The ARC ISR coordinates accession waivers and are the OPRs for ARC accession standards. AFPC/DPMSSR is not the OPR for the applicant's accession exception to policy or waiver.

## Chapter 25

## ENLISTED PALACE CHASE PROGRAM

**25.1.  Program Description.**  The PALACE CHASE program is a voluntary separation provision that provides regular component enlisted members a process to request transfer from regular component to an ARC.  The USAF or USSF may waive a portion of applicants remaining TOE or ADSC(s) if the applicant agrees to all of the terms and conditions outlined in the DAF Form 2631.

25.1.1. In exchange for waiving the TOE or ADSC, the applicant incurs an extended commitment within the ARC.  Transfer must be to either an ANG unit or an AFR position within the selected reserve.  **(T-1)** Participants are transferred to and remain in one of the following statuses during the PALACE CHASE contract period; DSG, TR, IMA, AGR, Title 5 or Title 32 military technician position.

25.1.2. AFPC/DPMSSR adjudicates all enlisted PALACE CHASE applications.

**25.2.  PALACE CHASE Enlisted eligibility.**

25.2.1. All applicants are required to contact an ARC ISR and complete a prescreening process prior to opening a new PALACE CHASE application.  Applicants can find the contact information for their local ARC ISR by contacting their local MPF.  Additional information is online at the ANG and AFR websites.

25.2.2. All applicants must be qualified to participate in the PALACE CHASE program IAW **Table 25.1** and the specific accession standards required for accession into the ARC.  **(T-2)** Accession standards are outlined in DAFMAN 36-2032

25.2.3. All applicants must remain qualified throughout the entire application process. **(T-1)** If at any time, it is determined that an applicant is not qualified to participate in the PALACE CHASE program the application and the projection to the ARC will be canceled and returned without further action.  **(T-1)** Canceled applications result in the separation order being revoked.  Members are required to report to their duty section and in process the losing base the following day, regardless of location.

**25.3.  PALACE CHASE Enlisted Application.**

25.3.1. Applicants follow current application procedures available on myFSS.  The page outlines PALACE CHASE Programs application submissions, change/withdrawal requests, and other procedures regarding PALACE CHASE Program applications.

25.3.2. Applicant provides the ARC ISR with the application documents.

25.3.3. All documents submitted to AFPC/DPMSSR must be legible and legally sufficient. **(T-1)** Forms must include full signatures, certifications, and complete dates.  **(T-1)**

25.3.4. ARC ISR generates the AF Form 1288.

25.3.4.1. All enlisted applicants contact their unit commander or civilian director to complete the AF Form 1288 first endorsement.

25.3.4.2. Civilian directors are authorized to complete the first endorsement.  Guidance on completing the AF Form 1288 is provided in AFI 51-509, paragraph A2.2.  Refer to

**Attachment 1, Terms** of this publication for definition of unit commander or civilian director.

25.3.5. ARC ISR generates the DAF Form 2631.  ARC ISR counsels the applicant on each provision of the DAF Form 2631.  The form must be signed and dated by the applicant and witnessed and signed by the ARC ISR or other witness.  **(T-2)**

25.3.6. Applicants with a disapproved application may not open a new application for PALACE CHASE within 120 days from the final decision date.

25.3.7. The applicant's unit commander or civilian director may grant up to 7 days of permissive TDY when the ARC unit requires an applicant to interview.  Permissive TDY cannot be used for the purpose of civilian job interview, tryouts for professional sports teams, or any other activities not related to employment within the ARC.

25.3.8. Application withdrawal requests.  Applicants requesting withdrawal of their PALACE CHASE separation follow current application procedures.  All withdrawal requests require coordination from the member's current regular component unit commander or civilian director.

25.3.8.1. Applications that have not been assigned a final approved DOS only require coordination from the member's current regular component unit commander or civilian director.

25.3.8.2. Participants that have been final approved and have been projected in the MilPDS cannot be withdrawn unless applicant provides strong justification under the following reasons:  severe hardship not common to USAF or USSF members; in the best interest of the USAF or USSF; or to accept an active component promotion that requires the member to serve past the final approved DOS.

25.3.8.3. Participants may not withdraw a final approved PALACE CHASE application if:  the participant has departed the active duty station, has begun terminal leave, the final approved DOS has passed, or if the USAF or USSF has obligated funds for movement of household goods.

25.3.8.4. Participants may not open a new PALACE CHASE application for one year following the withdrawal of a Final Approved PALACE CHASE application.

**25.4.  DOS Selection, Requested DOS, Final Approved DOS, and DOS Changes.**

25.4.1. All applicants select a requested DOS during the initial phase of the PALACE CHASE application.  Requested DOS must comply with **Table 25.1**.  **(T-2)** Prior to selecting a requested DOS, applicants should consider the following points:

25.4.1.1. Participants may carry over leave earned during an active duty tour for use during a future active duty tour.  Participants are not required to use, sell, or lose their earned leave at the end of an active duty tour.  Reference DAFI 36-3003 and 37 USC § 501.  While members are authorized to carry leave forward, members should remember that leave should be taken when earned unless circumstances do not afford that opportunity.

25.4.1.2. Active Duty regular leave cannot be used when the participant transfers to an ARC TR, ART, IR, ANG Technician, or DSG status.  Leave is carried forward to the participant's next active duty period.

25.4.1.3. Regular Active Duty leave balance is immediately available for use when participant transfers to a Title 10 or Title 32 AGR tour.

25.4.2. The applicant's requested DOS is not the final approved DOS. The final approved DOS is established by AFPC/DPMSSR. The final approved DOS will only be established after the member's application is Final Approved. **(T-0)**

25.4.3. Application DOS change requests.

25.4.3.1. The applicant's current regular component unit commander or civilian director coordinates on all DOS changes after initial application submission.

25.4.3.2. DOS changes prior to receipt of the final approved DOS. Applicants that have not been assigned a final approved DOS only require coordination from the member's current regular component unit commander or civilian director.

25.4.3.3. DOS changes after assignment of final approved DOS and projection of separation in the MilPDS. Applicants cannot change the final approved DOS date unless the applicant provides strong justification under the following reasons: severe hardship not common to USAF or USSF members or in the best interest of the USAF or USSF.

25.4.3.4. Applicants may not request a date prior to the final approved DOS.

25.4.3.5. Applicants may not request a date more than 90 days beyond the final approved DOS without approval from the gaining ARC MPF.

25.4.3.6. Overseas applicants that have curtailed their DEROS based upon a final approved PALACE CHASE application DOS may not request to change their final approved DOS.

25.4.4. Applicants with a previously established MSD may apply through PALACE CHASE for a date prior to the currently established MSD. Members wishing to transfer to the ARC on their currently established MSD may use the PALACE FRONT program.

25.4.5. AFPC/DPMSSR will not assign an applicant's final approved DOS or project separation in the MilPDS until the following conditions have been met:

25.4.5.1. AFPC/DPMSSR receives the final AF Form 1288 with all endorsements completed. **(T-0)**

25.4.5.2. The applicant and ARC ISR sign the DAF Form 2631. **(T-0)**

25.4.5.3. Participants with an approved PALACE CHASE application are given no less than 60 days to out-process and separate. **(T-1) Exception**: Participants with an approved PALACE CHASE Special Programs applications will be given no less than 45 days if the members approved ARC assignment location is the same location as the participant's current duty location. **(T-1)**

**25.5.  PALACE CHASE Contract.**

25.5.1. The PALACE CHASE contract period is the time in which a PALACE CHASE participant must serve in the ARC in order to fulfill the PALACE CHASE contract. **(T-1)** PALACE CHASE participants must agree to an extended service commitment in the ARC. Guidance on PALACE CHASE commitments is provided in 10 USC § 12301(d). **(T-0)**

25.5.2. The contract date is calculated by determining the specific period of time remaining on the applicant's unfulfilled TOE beyond the requested DOS. Calculate years, months, and days remaining then, double the time remaining in the unfulfilled TOE. Add this time to the day following the member's final approved DOS. That date is the PALACE CHASE contract date. The contract period will be no less than one year and no more than 6 years. **(T-1)**

25.5.3. The PALACE CHASE participant's initial ARC service commitment covers the entire length of the PALACE CHASE contract. The PALACE CHASE contract expiration date is listed in Section 5 of the member's DAF Form 2631.

25.5.4. Approved PALACE CHASE contract and related release to the ARC is contingent on the member satisfactorily participating and completing the gain into the AFR or ANG. Failure to complete transfer to the ARC will result in immediate recall to the regular component. **(T-1)** Refer to **Chapter 28** of this publication.

25.5.4.1. Participants are responsible for contacting their ARC unit commander, or supervisor, as soon as the participant becomes aware that the participant will not be able to attend any scheduled period of duty, refer to AFMAN 36-2136.

25.5.4.2. While serving in the ARC, the PALACE CHASE participants ensure that all training requirements are met to achieve and maintain the appropriate competency and skill level commensurate with their grade and position.

25.5.4.3. Participants are also responsible for maintaining their current address and telephone number with the ARC unit MPF and Finance.

25.5.5. PALACE CHASE participants consent to a National Crime Information Check. Guidance on criminal history is provided in 5 USC § 9101.

25.5.6. Participants are transferred to and remain in one of the following statuses during the PALACE CHASE contract period; DSG, TR, IMA, AGR, Title 5, or Title 32 military technician.

25.5.7. PALACE CHASE participants must remain in the selected reserve or return to the regular component during the PALACE CHASE contract period. **(T-1)** Participants must not Inter-service transfer (Army, Navy, United States Marine Corps, or Coast Guard) during the contract period. **(T-2)**

25.5.8. The PALACE CHASE program is a voluntary separation provision; participants are subject to immediate, voluntary recall for any reason to complete the period of active duty from which early release was granted.

**25.6.  Application Recommendations and Comments.**

25.6.1. Regular component Unit Commander or Civilian Director:

25.6.1.1.  Provides both a recommendation (approval or disapproval) and comments on the applicant's AF Form 1288.  Comments provide the separation authority with valuable information pertaining to the applicant's case.

25.6.1.1.1.  Unit commanders or civilian directors coordinate on each request.

25.6.1.1.2.  When recommending approval unit commanders or civilian directors are encouraged to provide comments on the applicant's service.  Comments should be provided in the "Remarks" block in the first endorsement of the AF Form 1288.

25.6.1.1.3.  When recommending disapproval unit commanders or civilian directors are required to provide comments.  Comments are provided in the "Remarks" block in the first endorsement of the AF Form 1288.

25.6.1.2.  May provide comments and make recommendations to the Separation Authority in regards to the applicant's requested DOS.

25.6.2. AFPC Directorate of Personnel Operations (AFPC/DPM Assignments Policy and Teams):

25.6.2.1.  Provides both a recommendation (approval or disapproval) and comments on each application.

25.6.2.1.1.  Comments provide the separation authority with valuable information pertaining to the applicant's case.

25.6.2.1.2.  Comments are required for all recommended disapproved applications and must include manning percentages and any relevant information that will assist the separation authority to make a decision.  **(T-1)** Manning percentages include the applicant's Control AFSC/SFSC authorized and assigned manning at the unit, the wing or delta and worldwide level.

25.6.2.2.  Recommends disapproval only if the member's loss is detrimental to Total Force of the USAF or USSF mission capability.

25.6.2.3.  May make conditional approval recommendations based on a proposed alternate DOS.

## 25.7.  Application Decisions.

25.7.1. PALACE  CHASE  Programs  Office  (AFPC/DPMSSR).    Adjudicates  enlisted applications by either approving or disapproving the application.  Approval of the applicant's request for PALACE CHASE is contingent upon the applicant completing all requirements of the PALACE CHASE contract and the applicant remaining qualified for accession into the ARC.

25.7.1.1. The  PALACE  CHASE  Programs  Office  may  conditionally  approve  the applicant's request and offer an alternate DOS.  Final approval of the application is contingent on the applicant accepting the alternate DOS.  Declining the alternate DOS results in the application being disapproved and returned without further action.

25.7.1.2.  The PALACE CHASE Programs Office may disapprove the applicant's request for PALACE CHASE.  Applicants with a disapproved application may not open a new application for PALACE CHASE within 120 days of the decision date.

25.7.1.3.  Adjudicates assigned cases based on the following factors:

25.7.1.3.1.  A complete evaluation of the entire application and all recommendations provided by each coordinating agency.

25.7.1.3.2.  An applicant's likelihood of success within the AFR or the ANG.

25.7.1.3.3.  The best interest of the Total Force of the USAF or USSF.

## 25.8.  Recoupment.

25.8.1.  Enlisted PALACE CHASE participants are subject to recoupment under the provisions of 10 USC § 2005; 37 USC § 303a (e), and **Part 4** of this publication.  If recoupment is directed, the participant must reimburse the US a pro-rata share of the cost of their benefit based on the period of unfilled active duty service.  **(T-0)**

25.8.1.1.  The debt repayment amount and schedule are determined by DFAS.  Repayment does not reduce the PALACE CHASE contract period.

25.8.1.2.  Career Status Bonus/REDUX participants will be recouped.  **(T-1)**

## 25.9.  Separation Actions.

25.9.1.  Each Enlisted PALACE CHASE participant with an approved application receives an evaluation prior to separation from the active component, reference DAFI 36-2406.

25.9.2.  PALACE CHASE participants with a final approved PALACE CHASE application that experience a change in qualification or loss of ARC assignment must contact the TFSC JBSA Randolph, TX (COM 1-800-525-0102 or DSN 665-0102).  **(T-2)**

25.9.3.  PALACE CHASE participants who have not received the DAF Form 100 must not enter into any binding agreements based on the assumption that the PALACE CHASE application will be approved or that the applicant will be separating from the active USAF or USSF prior to the currently established ETS.  **(T-2)**

25.9.3.1.  PALACE CHASE participants with tentatively approved or final approved applications must not obligate themselves to any legally binding contract prior to publication of the separation orders.  **(T-2)**

25.9.3.2.  PALACE CHASE participants may not initiate any type of movement of personal effects without the DAF Form 100 and prior coordination from the Traffic Management Office.

25.9.4.  When the participant is otherwise eligible to reenlist (Reenlistment Eligibility code 3C or 1M), process for early SRP consideration. Guidance on SRP consideration is provided in AFI 36-2606.

25.9.5.  Regular component MPF conducts final out-processing actions with the member regardless of their location.  Mail all source documents to AFPC/DPSOR, 550 C Street West Suite 21, Randolph AFB, TX 78150-4713.

25.9.5.1.  The PALACE CHASE participant's regular component MPF ensures the participant completes a DD Form 214 worksheet prior to allowing the member to out-process.

25.9.5.2. The new DD Form 4, *Enlistment/Reenlistment Document* is required for all PALACE CHASE participants. Participants projected to the AFR and ANG must complete a new DD Form 4. **(T-1)**

25.9.6. PALACE CHASE participants do not depart on terminal leave prior to completing all required separation out processing.

25.9.7. PALACE CHASE participants' character of service is listed as Honorable. Discharge is for the convenience of the USAF or USSF.

25.9.8. Participants must be in good standing on government travel card balances prior to final out processing. Participants with delinquent payments (Payments not received by card issuer within 60 days of billing date) must not be final out-processed for PALACE CHASE programs. **(T-2)**

**25.10. Applicant Reporting Procedures.**

25.10.1. PALACE CHASE participants are authorized up to 10 days of concurrent service to allow for travel and document retrieval. All participants must report to and be gained by the ARC unit NLT 10 days after the member's final approved PALACE CHASE DOS. **(T-2)**

25.10.2. ARC units are not authorized to delay enlistment or appointment action until the unit's next Unit Training Assembly or Regularly Scheduled Drill.

25.10.3. The reporting official is the primary POC for the PALACE CHASE participants at the gaining unit.

25.10.3.1. Reporting officials should provide the PALACE CHASE participant with the reporting instructions and accession requirements for the ARC, prior to the member's DOS.

25.10.3.2. Participants that fail to report within the 10 days of concurrent service are considered absent. Unauthorized absences must be reported immediately. **(T-2)** Reporting officials promptly notify the chain of command. Unit commanders have the primary responsibility to determine the cause of absence and to find and return the individual to military control. Refer to **Chapter 28** of this publication when a PALACE CHASE participant fails to report.

25.10.4. The ARC MPF completes the enlistment and gain action. Guidance on ARC MPF actions is provided in DAFMAN 36-2102.

25.10.4.1. PALACE CHASE participant's ARC service commitment must cover the entire length of the PALACE CHASE contract. **(T-1)** The PALACE CHASE contract expiration date is listed in Section 5 of the member's DAF Form 2631.

25.10.4.2. The PALACE CHASE participant must be gained effective the day after the member's final approved DOS. **(T-1)**

25.10.4.3. MPF personnel should not use the prior service AF Recruiting Information Support System - Total Force Interface application to gain any PALACE CHASE programs records.

**Table 25.1.  Eligibility Criteria for Enlisted PALACE CHASE Applications.**

| RULE | ENLISTED PALACE CHASE APPLICANTS | NOTES |
|---|---|---|
| | **APPLICANT MUST:** | |
| 1 | Contact an ARC ISR prior to opening a new PALACE CHASE application. ISR determines the applicant's eligibility for accession into the ARC | |
| 2 | Complete 24 months of a 4 year initial enlistment or 36 months of a 6 year initial enlistment by requested DOS. | |
| 3 | Be a US citizen prior to opening a new application. | |
| 4 | Be qualified for worldwide deployment as defined by DAFMAN 48-123 throughout the entire application process. **Exception**: Female members who are pregnant or post-delivery are eligible. Must have AAC 81 or ALC A. **(T-1)** | |
| 5 | Be in duty status, 00, 08, or 09 when starting a new application. See **rule 16** and **34**. Enlisted aircrew in TDY status may submit as an exception. | |
| 6 | Have a current DAF Fitness Assessment, meeting each component's minimum standards and be in fitness category Excellent or Satisfactory. See **rule 28**. **Exception**: Female members that are pregnant or post-delivery are eligible with AAC 81 or ALC A. | 6 |
| 7 | Applicants may not apply for PALACE CHASE if within 6 months of current DOS. CONUS enlisted members: Select at DOS no less than 4 months and no more than 12 months from application submission date. OCONUS enlisted members only: Overseas members must follow these guidelines when choosing a requested DOS. Choose the rule set based on the situation. Rule A. If current DEROS and DOS dates fall within the same month and year, members must open the application no more than 15 months but no less than 12 months prior to the current separation date. **(T-2)** Members may request a separation date up to 6 months prior to the current established DEROS. The DEROS will only be adjusted after the application is approved and updated in MilPDS. DEROS will not be adjusted prior to PALACE CHASE application approval. Rule B. If current DEROS and DOS dates do not fall within the same month and year, the members must open the application no more than 9 months but no less than 6 months prior to the current DEROS. **(T-1)** Members must request a separation equal to the current established DEROS. **(T-2)** | |
| 8 | Have a valid security clearance. | 1 |
| 9 | Be willing to participate satisfactorily. Refer to the DAFI Form 2361 and **Chapter 28** of this publication. | |
| 10 | Meet all ARC accession standards. Applies to applicant at any time during the entire application process. | |
| 11 | Possess minimum primary AFSC/SFSC skill level of 3 or higher. | |
| 12 | Be eligible for reenlistment. | |

DAFI36-3211  24 JUNE 2022

| | ETP AVAILABLE | | ENLISTED PALACE CHASE APPLICATS | |
| --- | --- | --- | --- | --- |
| | YES | NO | APPLICANT MUST NOT: | NOTES |
| 13 | | X | Be a drug or alcohol abuser as defined by the AF Form 2030. | 7 |
| 14 | | X | Open a new application while in TDY Status OR be in duty status 20, 23, 24, or 26 and have an effective and end date of greater than 31 days. Applies to applicant at any time during the entire application process. Enlisted aircrew in TDY status may submit as an exception. | |
| 15 | | X | Be scheduled or notified for Air Expeditionary Force Band or contingency deployments or in a deployed status when opening a new application. AAC ET | 2,3 |
| 16 | | X | Be selected for PCS assignment. Reference DAFI 36-2110 for assignment related information. **Exception**: Does not apply to OCONUS applicants. | 2,3 |
| 17 | X | | Open a new application when application start date is less than 120 days from current DOS. Members with less than 120 days remaining on current enlistment should apply for separation via completion of required service provision and then PALACE FRONT to the ARC. | 5 |
| 18 | | X | Have a pending voluntary or involuntary separation or retirement. **Exception**: Applicants with previously approved 3 or 7 day option may apply for PALACA CHASE. Requested DOS must be prior to currently assigned MSD. | |
| 19 | | X | Have received a referral EPB or rating of EC on any of the last 3 EPBs, AAC 19 | |
| 20 | X | | Have EVER received a court-martial conviction or be awaiting trial by court-martial. Participants currently awaiting trial by court-martial are not eligible for exception to policy. | 5 |
| 21 | | X | Currently be serving on the control roster. | |
| 22 | X | | Have an Article 15 action within the last 2 years. Exception to policy is not available for members whose Article 15 action is open/pending or punishments have not been completed. | 5 |
| 23 | X | | Have had a UIF within the last 2 years. Exception to policy is not available for members with a current/active UIF. | 5 |
| 24 | | X | Have EVER been convicted of a felony or misdemeanor crime of domestic violence. | 8 |
| 25 | | X | Have ever received an unrestricted assignment due to accommodation of religious or conscientious objection convictions or have an ALC of K. | |

| 26 | | X | Have an ALC: B, R, T, U, or W. | |
|---|---|---|---|---|
| 27 | X | | Have any medical conditions which preclude unrestricted assignments or deployments. AAC 31. | **5** |
| 28 | | X | Have a current fitness component or composite exemption as defined in DAFMAN 36-2905. **Exception**: Female members who are pregnant or post-delivery are eligible. Must have AAC 81 or ALC A. **(T-1)** | **6** |
| 29 | X | | Have the following ALC of C1, C2, or C3 or AAC of 31, X, Y, or Z. | **4,5,10** |
| 30 | | X | Be currently undergoing a MEB. AAC 37. | **4** |
| 31 | X | | Have any current duty or mobility restrictions listed on the AF Form 469 | **4,5,10** |
| 32 | X | | Be in strength accounting duty status code: 01, 02, 03, 04, 05, 06, 07, 11, 13, 14, 15, 16, 17, 19, 21, 22, 25, 26, 27, 28, 29, 30, 31, 42, 43, 52, 53, 56, 59, 73, 74, 75, 76, or 77. | **5** |
| 33 | | X | Have an AAC of one of the following: 02, 05, 12, 13, 14, 15, 16, 17, 19, 21, 37, or ET. | |
| 34 | X | | Have an AAC of one of the following: 10, 29, 38, 39, 56, 70, 72, 73, 74, or AP. | **5** |
| 35 | | X | Open a new application within 120 days of a previously disapproved application. | |
| 36 | | X | Be a member of the ARC and serving on EAD. Limited period recall program and VLPAD participants are not eligible for PALACE CHASE. Limited period recall program or VLPAD participants should utilize the PALACE FRONT program prior to expiration of their EAD orders. | |
| 37 | X | | Open a new PALACE CHASE application for one year following the withdrawal of an approved PALACE CHASE application. | **5** |
| 38 | X | | AAC "CS" enlisted members extending or reenlisting under the enlisted critical skills retention bonus are obligated to serve in the selective retention bonus skill for the full period of extension or reenlistment. DAFI 36-2110 for assignment related information. | **5** |
| 39 | | X | Currently be in formal training course or have retrained within the last 12 months. AAC 29. | **2,9** |
| 40 | | X | Currently be in Career Intermission Program (CIP). Applicants must complete the entire CIP ADSC prior to the requested DOS. **(T-1)** | |
| 41 | X | | Have misused any government travel charge card (used for other than official government travel) or been seriously delinquent (payment not received by the card issuer within 60 days from the billing date). | **5** |

**Notes:**

1. Applicant must have a valid current security clearance on file at the time of application. The clearance must cover a period beyond the requested DOS. **(T-1)** The minimum clearance level is SECRET.

2. Members with an ASD, extended deployment notification or selection date for training the same date or prior to opening a new PALACE CHASE application start date are not qualified for PALACE CHASE until they complete a 3 or 7 day option. After 3 or 7 day option processing is complete the member may apply for PALACE CHASE with a requested DOS prior to the MSD assigned by the 3 or 7 day option. Refer to DAFI 36-2110 for assignment related information.

3. Members with a PALACE CHASE application that was opened prior to the ASD, extended deployment notification, or selection date for training have the option to accept the assignment or training and withdraw the PALACE CHASE application or reclama (formal protest) the assignment or selection.

4. The following are medically disqualifying factors: ALC C1, C2, and C3, assigned "3" or 4" profile on AF Form 422; diagnosed with any medical condition as identified in DoDI 6130.03, Volume 2, regardless or previous MEB and/or previous PEB/MEB disposition. Exception to policy is obtained from the ARC ISR. Applicants must obtain both an AFRC/SG or NGB/SG waiver approval and a memorandum for record from the gaining ARC WG/CC PRIOR to submitting application. **(T-1)** SG will review ALC, note if it's appropriate for medical issue, and if not suggest modification applicable to ARC service. Approved RS waiver with a memorandum for record from gaining WG/CC accepting ALC must be included in initial application submission. **(T-1)**

5. AFPC/DPMSSR is the sole approval and disapproval authority for all PALACE CHASE program exception to policy. All exception to policy applications will be completed prior to submitting the initial PALACE CHASE application. **(T-2) ARC** ISR completes requirements for exception to policy submission.

6. Applicants must have a score of 75 or above dated within 6 months or score of 90 or above dated within 12 months. **(T-1)**

7. ARC ISR completes a new AF Form 2030 for each applicant. Form is completed through Section III during initial application. Section IV will be completed at a time of enlistment, commissioning, or appointment into the ARC. **(T-1)**

8. The Lautenberg amendment concerns convictions for misdemeanor crimes of domestic violence in civilian courts. DoD policy has extended the prohibition to convictions for crimes of domestic violence tried by general or special court0martial, as well as civilian criminal felony convictions adjudged on or after 27 November 2002.

9. Members may apply with a 29 AAC if the requested DOS is after the retraining ADSC expiration date.

10. PALACE CHASE applicants that do not meet the retention standards for the ARC may request retention waiver or exception to policy prior to opening a new PALACE CHASE application. A retention waiver may not be available; applicants contact their ARC ISR to check availability of waiver or exception to policy. The waiver or exception to policy must be completed and approved prior to opening a new PALACE CHASE application or requesting an exception to policy for PALACE CHASE program eligibility.  **(T-2)** The ARC ISR coordinated accession waivers and is the POC for ARC accession standards. AFPC/DPMSSR is not the POC for the applicant's accession exception to policy or waiver.

## Chapter 26

## PALACE FRONT PROGRAM

**26.1.  Program Description.**  The PALACE FRONT program is an intra-service transfer program which allows active USAF or USSF officers and enlisted members to transfer from the active component to the ANG or the AFR the day after their approved DOS from the regular component. The PALACE FRONT program is not a voluntary separation program or a pre-ETS process that waives a current enlistment contract or ADSC.  The purpose of the program is to allow members that already have an approved DOS to seamlessly transfer from the active component of the USAF or USSF to selected reserve service within the ARC.  Transfer must be to the selected reserve as defined by DoDI 1215.06, *Uniform Reserve, Training, and Retirement Categories for the Reserve Components*.  **(T-0)**

**26.2.  PALACE FRONT Eligibility.**

26.2.1.  All applicants are required to contact an ARC ISR and complete a prescreening process prior to opening a new PALACE FRONT application.

26.2.1.1.  Applicants can find the contact information for their local ARC ISR by contacting their local MPF.  Additional information is online at the ANG and AFR websites.

26.2.1.2.  All applicants must be qualified to participate in the PALACE FRONT program and meet all applicable ARC accession standards.  **(T-2)**

26.2.1.2.1.  Enlisted accession standards are outlined in DAFMAN 36-2032.

26.2.1.2.2.  Officer accession standards are outlined in DAFMAN 36-2032.

26.2.2.  All applicants must remain qualified throughout the entire application process.  If it is determined that an applicant is not qualified to participate in the PALACE FRONT program the applicant is not projected for an assignment into the ARC.  **(T-2)**

26.2.3.  PALACE FRONT applicants are required to have a previously established DOS prior to the PALACE FRONT projection being inputted into the MilPDS.

**26.3.  PALACE FRONT Application.**

26.3.1.  (All Applicants) Follow current application procedures located on myFSS.  Procedures include application submissions, change and/or withdrawal requests, and other information regarding PALACE FRONT Program applications.

26.3.2.  (All Applicants) are required to contact an ISR for application prescreening prior to opening a new PALACE FRONT application.  Applicant provides the ARC ISR with the application documents listed on myFSS.

26.3.3.  (All Applicants) documents submitted to AFPC/DPMSSR must be legible and legally sufficient. **(T-1)** Forms must include full signatures, certifications, and complete dates. **(T-1)**

26.3.4.  (All Applicants) ARC ISR generates the AF Form 1288.

26.3.5.  (All Applicants) Unit commander or civilian director may grant up to 10 days of permissive TDY when the ARC unit requires an applicant to interview. Guidance on TDYs is provided in DAFI 36-3003.  Permissive TDY cannot be used for the purpose of a civilian job

interview, tryouts for professional sports teams, or any other activities not related to employment within the ARC.

26.3.6.  (Officer Applicants) Reserve Active Status List, Federal Recognition, and Temporary Federal Recognition.

26.3.6.1.  All officers who separate from the regular component resign that commission effective the day after the established DOS.  Officers must have an approved reserve scroll prior to appointment into the ARC.  **(T-0)**

26.3.6.2.  (Reserve Officer applicants only) Officers without an approved reserve scroll may submit a PALACE FRONT application.

26.3.6.2.1.  AFPC/DPMSSR will not project the member's record to the ARC unit until the member has an approved reserve scroll. **(T-1)** Participants cannot be accessed into the ARC until the officer is scroll approved.  **(T-1)**

26.3.6.2.2.  Officers that cannot complete the gain process to the ARC unit within 10 days from their DOS will incur a break in service.  Applicants are strongly encouraged to be approved on the RASL prior to applying for separation.  **(T-1)**

26.3.6.3.  (ANG Officer Applicants only) May receive a temporary federal recognition by the state or territory of affiliation. Guidance on ANG recognition is provided in DAFMAN 36-2032 and 32 USC § 305 and § 308.  Federal recognition and approval of the RASL is not required for AFPC/DPMSSR to assign the officer's final approved DOS.

26.3.7.  (All Applicants) The AF Form 1288 is to be submitted to AFPC no less than 5 duty days prior to the member's current DOS.  **Exception**:  A member's completed AF Form 1288 may be submitted within 5 duty days if the applicant, the ARC ISR, or the ARC MPF contacts AFPC/DPMSSR at the time of submission.  When a PALACE FRONT participant's AF Form 1288 is not submitted to AFPC/DPMSSR prior to the member's DOS the ARC MPF should correct the participant's record.

26.3.8.  (All Applicants) DAF Form 100.   The TFSC includes the gaining ARC unit information and reporting official's contact information.  Amendments should be created to add this information.

## 26.4.  Separation Actions.

26.4.1.  Officer PALACE FRONT participant with an approved application receives an evaluation prior to separation from the active component.  Refer to DAFI 36-2406.

26.4.2.  Enlisted PALACE FRONT participants with an approved DOS prior to the static close-out date receives an evaluation prior to separation from the active component. Guidance on evaluations is provided in DAFI 36-2406.

26.4.3.  Regular component MPF provides the ARC ISR with the PALACE FRONT participant's personnel record when requested.

26.4.4.  Participants may carry over leave earned during an active duty tour for use during a future active duty tour.  Participants are not required to use, sell, or lose their earned leave at the end of an active duty tour (reference, DAFI 36-3003 and 37 USC § 501).  While members are authorized to carry leave forward, members should remember that leave should be taken when earned unless circumstances do not afford that opportunity.

26.4.4.1.  Active Duty regular leave cannot be used when the participant transfers to an ARC TR, ART, IR, ANG Technician, or DSG position.  Leave is carried forward to the participant's next active duty period.

26.4.4.2.  Regular Active Duty leave balance is immediately available for use when participant transfers to a Title 10 or Title 32 AGR tour.

26.4.4.3.  Officer PALACE FRONT participants who transfer between the Active Duty List and the RASL and are on a promotion list to the next higher grade; the SecAF will integrate the officer into the corresponding promotion list in the new component's promotion list based on the officer's date of rank in the officer's current grade.  **(T-0)**

**26.5.  Applicant Reporting Procedures.**

26.5.1.  PALACE FRONT participants are authorized up to 10 days of concurrent service to allow for travel and document retrieval.

26.5.2.  All participants must report to and be gained by the ARC unit NLT 10 days after the member's DOS from the active component.  **(T-1) Note**:  IMAs are assigned to RegAF units (gained by ARPC) and are not required to report within 10 days.  **(T-1)** ARC units are not authorized to delay enlistment or appointment action until the unit's next unit training assembly or regularly scheduled drill.

26.5.3.  The Reporting Official is the primary POC for the PALACE FRONT participant at the gaining unit.  Refer to **paragraph 2.3.19**.

26.5.3.1.  ANG units assign a recruiting and retention manager as the reporting official.

26.5.3.2.  AFR units assign a full time (AGR or ART) member of the MPF as the reporting official.

26.5.3.3.  Reporting officials should provide the PALACE FRONT participant with the reporting instructions and accession requirements for the ARC, prior to the member's DOS.

26.5.4.  The ARC MPF completes enlistment or appointment and gain action. Guidance on ARC MPF actions is provided in DAFMAN 36-2102.  When gaining officer participants, refer to DAFMAN 36-2032.

26.5.4.1.  The PALACE FRONT participant must be gained effective the day after the member's DOS from the active component.  **(T-1)**

26.5.4.2.  ARC MPF personnel should not use the prior service AF Recruiting Information Support System - Total Force Interface application to gain PALACE FRONT participants' records.

## Chapter 27

## PALACE CHASE SPECIAL PROGRAMS

**27.1.  Program Description.**  The PALACE CHASE special programs include PALACE SPORT, PALACE BLESSING, and PALACE PA.  Application processing and guidance is the same as for regular PALACE CHASE with exception of the following paragraphs.  Refer to the program-specific subparagraphs for more information on each program.

27.1.1.  Officers commissioned from the Reserve Officer Training Corps program will not be released during the initial 2 years of commissioned active service.  **(T-0)** Reference DoDI 1215.08, *Senior Reserve Officers' Training Corps Program Programs.*

27.1.2.  Officers commissioned from a service academy program will not be released during the initial 2 years of commissioned active service.  **(T-0)** Reference DoDI 1322.22, *Service Academies.*

27.1.3.  All PALACE CHASE Special Programs applicants must meet all qualifications listed in **Table 27.1** and the specific accession standards required for accession into the ARC.  **(T-2)**

27.1.4.  PALACE CHASE Special Programs participants with a final approved PALACE CHASE Special Programs application that experience a change in qualification, loss of ARC assignment, or cancelation of the contract or binding commitment, must contact the TFSC JBSA Randolph, TX (COM 1-800-525-0102, DSN 665-0102).  **(T-2)**

27.1.5.  Calculate the contract date by determining the specific period of time remaining on the applicant's unfulfilled ADSC or TOE beyond the requested DOS.  Calculate years, months, and days remaining then, double the time remaining.  Add this time to the day following the member's final approved DOS.  That date is the PALACE CHASE Special Programs contract date.

27.1.6.  (PALACE SPORT and PALACE PA Only) AFPC/DPMSSR contacts AFRS Strategic Marketing Division to determine if the applicant and the proposed activity has a potential recruiting or public affairs benefit.

**27.2. PALACE SPORT Program.** The PALACE SPORT program is a voluntary separation provision that provides regular component members a process to request transfer from the active component of the AF to an ARC when the applicant has secured a professional sports contract and can show there is a potential recruiting or public affairs benefit.

27.2.1.  The program is intended to allow applicants with special athletic abilities to transfer to the ARC when there is strong evidence the applicant will provide the Department of the AF with significant favorable media exposure likely to enhance national recruiting or public affairs.

27.2.1.1.  Transfer is to either an ANG unit or to an AFR position within the selected reserve.  Participants are transferred to and remain in one of the following statuses during the PALACE SPORT contract period; DSG, TR or IMA.  Transfer of a PALACE SPORT participant to a full time, AGR, Title 5 or Title 32 military technician position or to the Standby Reserve, Retired Reserve, Participating IRR, or IRR is not authorized.

27.2.1.2.  Members wishing to participate in non-professional or amateur sports activities should consider these alternate programs:

27.2.1.2.1.  Air Force Sports Programs.  The AF Sports Program conducts a well-rounded competitive sports program around the globe for the morale, welfare, and recreation of regular component members, ANG, Reserve, retirees, DoD identification card holders, families, and eligible guests.  Refer to installation Fitness and Sports staff for information and eligibility for each sporting program.

27.2.1.2.2.  The AF World Class Athlete Program is a 2-year program that provides regular component, ANG, and AFR personnel the opportunity to train and compete at national and international sports competitions with the ultimate goal of selection to the US Olympic team.  Refer to installation Fitness and Sports staff for information and eligibility for each sporting program.

27.2.1.2.3.  Excess leave may be used to pursue activities with potential recruiting or public affairs benefit for the AF when Permissive TDY and PALACE SPORT are not appropriate.  Refer to DAFI 36-3003.

27.2.1.2.4.  With prior approval from AFPC/DPMSSR, PALACE SPORT participants may be temporarily released from the PALACE CHASE contract to allow the participant to enter the AF World Class Athlete Program.

27.2.1.2.5.  In addition to Tricare Reserve Select participation the PALACE SPORT participants are encouraged to secure private disability insurance to cover possible injuries that could occur while participating in the professional sport.

27.2.2.  PALACE SPORT Eligibility.

27.2.2.1.  The applicant must have secured a contract or binding commitment with a professional sports organization guaranteeing the opportunity to pursue an activity with potential recruiting or public affairs benefits prior to opening a new application.  **(T-1)**

27.2.2.1.1.  The contract must be from a professional sports team that competes in one of the organizations listed in **Table 27.2**. **(T-2) Exception**:  Applicants with a PGA Tour or Ladies Professional Golf Association "Tour Card" and a strong plan to promote the Department of the AF may apply.  **(T-2)**

27.2.2.1.2.  Contracts with organizations not listed in **Table 27.2** are reviewed by AFPC/DPMSSR prior to opening a new application.  AFPC/DPMSSR contacts AFRS Strategic Marketing Division to determine if the applicant and the proposed activity has a potential recruiting or public affairs benefit.

27.2.2.1.2.1.  Professional leagues with headquarters not in the CONUS are eligible but the participant must play for a team within the CONUS. **(T-1)** Applications with contracts for teams whose home is OCONUS will not be approved and no exception to policy is available. **(T-1)**

27.2.2.1.2.2.  The agreement between the participant and the professional sports team or organization must reflect the intent of both parties to employ the participant in a way that brings credit to the Department of the AF.  **(T-1)**

27.2.2.2.  Participants assigned to ARC units are assigned to and fulfill the requirements of serving in support of AF recruiting or public affairs in a selected reserve unit.  Participants must meet the normal retention requirements based on minimum participation standards per Title 10 United States Code Section 10147, *Ready Reserve: Training Requirements,* and AFMAN 36-2136.  **(T-0)**

27.2.2.3.  PALACE SPORT participants may be recalled when the participant is no longer under a professional sports contact.  In the event the participant is no longer under a professional sports contract, the participant's ARC unit commander or civilian director or AFPC/DPM Directorate of Personnel Operations, Airman Assignments Division may request recall.  Refer to **paragraph 28.9** of this publication.

27.2.3.  PALACE SPORT Application.

27.2.3.1.  All PALACE SPORT applicants draft an applicant memorandum to be included in the application.  The applicant's memorandum is:

27.2.3.1.1.  Indorsed by the regular component unit commander or civilian director.

27.2.3.1.2.  Indorsed by the WG/CC/Delta/CC (or equivalent); see **paragraph 2.3.13** of this publication.

27.2.3.1.3.  A realistic, detailed, and documented plan that describes how the applicant's unique talent will be a positive benefit to the AF and fulfill the strong expectation that recruiting or public affairs efforts will be enhanced.

27.2.3.1.4.  Name, grade, address, and phone number of the ARC reporting official at the gaining ARC unit at which the applicant will arrange to perform recruiting and/or public affairs duties for the duration of the ARC assignment.

27.2.3.2.  PALACE SPORT Application Decisions.  Reviewing authorities should consider that members released from the regular component through the PALACE SPORT Program are in effect "ambassadors" of the AF and each level of coordination should consider whether a member's records and service history, to include derogatory or disciplinary action, render the applicant an inappropriate candidate.

**27.3.  PALACE PA Program.**  The PALACE PA program is a voluntary separation provision that provides regular component officers and enlisted a process to request transfer from active military service to the ARC when the regular component member has unique talents that could be a positive benefit to the AF recruiting or public affairs efforts.

27.3.1.  The program is intended to allow applicants to transfer to the ARC when there is strong evidence the applicant will provide the Department of the Air Force with significant favorable media exposure.  Participants are transferred to and remain in one of the following statuses during the PALACE PA contract period; DSG, TR or IMA.  Transfer of a PALACE PA participant to a full time, AGR, Title 5, or Title 32 military technician position or to the Standby Reserve, Retired Reserve, Participating IRR, or IRR is not authorized.

27.3.2.  PALACE PA Eligibility.

27.3.2.1.  All PALACE PA applicants must have previously secured a contract or binding commitment with an organization guaranteeing the opportunity to pursue an activity with potential recruiting or public affairs benefits.  **(T-1)**

27.3.2.2.  All applicants must meet all qualifications listed in **Table 25.1** and the specific accession standards required for accession into the ARC.  **(T-1)**

27.3.3.  PALACE PA Application.  All PALACE PA applicants draft a memorandum to be included in the application.  The applicant's memorandum is:

27.3.3.1.  Indorsed by the regular component unit commander or civilian director; see **paragraph 2.3.20** of this publication.

27.3.3.2.  Indorsed by the WG/CC/Delta/CC (or equivalent); see **paragraph 2.3.13** of this publication.

27.3.3.3.  A realistic, detailed, and documented plan that describes how the applicant's unique talent will be a positive benefit to the AF and fulfill the strong expectation that recruiting or public affairs efforts will be enhanced.

27.3.3.4.  Name, grade, address, and phone number of the ARC reporting official at the gaining ARC unit at which the applicant will arrange to perform recruiting and/or public affairs duties for the duration of the ARC assignment.

27.3.4.  PALACE PA Application Decisions.  Reviewing authorities should consider that members released from the regular component through the PALACE SPORT Program are in effect "ambassadors" of the AF and each level of coordination should consider whether a member's records and service history, to include derogatory or disciplinary action, render the applicant an inappropriate candidate.

**27.4.  PALACE BLESSING Program.** The PALACE BLESSING program is a voluntary separation provision that provides regular component officers and enlisted a process to request transfer from active military service to the ARC when the regular component member is applying for or has been accepted to seminary, in a target critical shortage identified by the AF Chaplain Service.

27.4.1.  The program is intended to allow applicant's transfer to the ARC in order to fill critical shortages in the AF Chaplain Service.  Participants are transferred to and remain in one of the following statuses during the PALACE BLESSING contract period; DSG, TR, IMA, AGR, Title 5, or Title 32 military technician position.

27.4.2.  PALACE BLESSING Eligibility.

27.4.2.1.  Applicants provide written certification of acceptance into a post baccalaureate degree program leading to ordination in the approving body from one of the religious organizations that are authorized to indorse clergy to serve as military chaplains.

27.4.2.2.  The graduate degree must be in the field of theological or related studies from an accredited educational institution listed in the current edition of the American Council of Education Accredited Institutions of Post-secondary Education and relevant education requirements list in the most current Air Force Officer Classification Directory available on myFSS. **(T-1)**

27.4.3.  All PALACE BLESSING applicants draft an applicant memorandum to be included in the application. The applicant's memorandum will:

27.4.3.1.  Be indorsed by the regular component unit commander or civilian director; see **paragraph 2.3.20** of this publication.  **(T-2)**

27.4.3.2.  Be indorsed by the WG/CC/Delta/CC (or equivalent), see **paragraph 2.3.13** of this publication.  **(T-2)**

27.4.3.3.  Be a realistic, detailed, and documented plan that describes how the applicant will complete the graduate degree of theological or related studies.  **(T-2)**

27.4.3.4.  Include name, grade, and address/phone number of the ARC reporting official at the gaining ARC unit at which the applicant will arrange to AF Chaplain Services duties for the duration of the ARC assignment.  **(T-2)**

**Table 27.1.  Eligibility Criteria for PALACE CHASE Special Programs Applications.**

| R U L E | PALACE CHASE SPECIAL PROGRAMS APPLICANTS | |
|---|---|---|
| | **APPLICANT MUST:** | **NOTES** |
| 1 | Contact an ARC ISR prior to opening a new PALACE CHASE Special Programs application.  ISR determines the applicant's eligibility for accession into the ARC. | |
| 2 | (Officers only) Regardless of the source of commission all officers must complete 24 months of the initial ADSC prior to the requested DOS.  **(T-0)** | |
| 3 | (PALACE SPORT only) Have previously secured a contract or binding commitment with a professional sports organization guaranteeing the opportunity to pursue an activity with potential recruiting or public affairs benefits. | |
| 4 | (PALACE PA only) Have previously secured a contract or binding commitment with an organization guaranteeing the opportunity to pursue an activity with potential recruiting or public affairs benefits. | |
| 5 | (Enlisted only) Complete 24 months of a 4-year initial enlistment or 36 months of a 6-year initial enlistment by requested DOS. | |
| 6 | Be a US citizen.  **(T-0)** | |
| 7 | Be qualified for world-wide deployment as defined by DAFMAN 48-123 throughout the entire application process.  **Exception**:  Female members who are pregnant or post-delivery are eligible. Must have AAC 81 or ALC A. **(T-1)** | |
| 8 | Be in Duty Status, 00, 08, or 09 when starting a new application. | |
| 9 | Have a current AF Fitness Assessment, meeting each components minimum standards and be in fitness category Excellent or Satisfactory.  See rule 35.  **Exception**: Female members who are pregnant or post-delivery are eligible with AAC 81 or ALC A. | 6 |
| 10 | Select a requested DOS that meets the criteria in the applicable table IAW the information provided to the field via myFSS. | |
| 11 | Have a valid security clearance on file. | 1 |
| 12 | Be willing to participate satisfactorily.  Refer to the DAF Form 2631 and **Chapter 28** of this publication. | |
| 13 | Meet all ARC accession standards.  Applies to applicant at any time during the entire application process. | 9 |
| 14 | (Officers only) Be eligible for a reserve appointment following guidance in DAFMAN 36-2032.  ANG appointments must also meet appointment standards outlined in DAFMAN 36-2032.  **(T-1)** | |

| | | | | |
|---|---|---|---|---|
| 15 | | | (Officers only) Apply for and accept an appointment within the ARC in the same competitive category as held at the time of separation.  Non-rated officers who wish to apply for seminary and change of competitive category to the Chaplain Corps may do so by utilizing the PALACE BLESSING Program outlined in **paragraph 27.4** of this publication. | |
| 16 | | | (Officers only) Initiate Reserve Commissioning scroll application prior to opening a PALACE CHASE Special Programs application.  ARC ISR submits required scroll documents to ARPC. | |
| 17 | | | (Enlisted only) Possess minimum primary AFSC skill level of 3 or higher. | |

| | ETP Available | | APPLICANT MUST NOT: | |
|---|---|---|---|---|
| | **YES** | **NO** | | **NOTES** |
| 18 | | X | Be a drug or alcohol abuser as defined by the AF Form 2030. | 7 |
| 19 | | X | Open a new application while in TDY Duty Status <u>OR</u> be in duty status 20, 23, 24 or 26 and have an Effective and End date of greater than 31 days.  Applies to applicant at any time during the entire application process. | |
| 20 | | X | Be scheduled or notified for Air Expeditionary Force Band or contingency deployments or in a deployed status when opening a new application. AAC ET. | 2, 3 |
| 21 | | X | Be selected for PCS assignment Reference DAFI 36-2110 for assignment-related information.  **Exception**:  Does not apply to OCONUS applicants. | 2, 3 |
| 22 | X | | Open a new application when application start date is less than 120 days from current highest ADSC expiration.  Members with less than 120 days remaining on current highest ADSC should apply for separation via completion of required service provision and then PALACE FRONT to the ARC. | 5 |
| 23 | | X | Have a pending voluntary or involuntary separation or retirement. **Exception**:  Applicants with previously approved 3 or 7-day option may apply for PALACE CHASE Special Programs.  Requested DOS must be prior to currently assigned MSD. | |
| 24 | | X | Have had a rating of "does not meet standards" on <u>ANY</u> of the last 3 OPBs. | |
| 25 | | X | Have EVER received a referral EPB or Officer Performance Brief or currently has AAC 19. | |
| 26 | X | | Have misused any government travel charge card (used for other than official government travel) or been seriously delinquent (payment not received by the card issuer within 60 days from the billing date).  Applicants with current delinquent payments may not apply for exception to policy. | 5 |
| 27 | X | | Have ever received a court-martial conviction or be awaiting trial by court-martial.  Participants currently awaiting trial by court-martial are not eligible for exception to policy. | 5 |
| 28 | | X | Currently be serving on the Control Roster. | |

414                                                                DAFI36-3211  24 JUNE 2022

| No. | Yes | No | Criteria | Notes |
|---|---|---|---|---|
| 29 | X | | Have had an Article 15 action within the last 2 years (Enlisted) or 5 years (Officer).  Exception to policy is not available for members whose Article 15 action is open, pending or punishments have not been completed. | 5, 9 |
| 30 | X | | Have had a UIF within the last 2 years.  Exception to policy is not available for members with a current and/or active UIF. | 5 |
| 31 | | X | Have ever been convicted of a felony or misdemeanor crime of domestic violence. | 8 |
| 32 | | X | Have ever received an unrestricted assignment due to accommodation of religious or conscientious objection convictions or have, ALC K. | |
| 33 | | X | Have an ALC:  B, R, T, U, or W. | |
| 34 | X | | Have any medical conditions which preclude unrestricted assignments or deployments, AAC 31. | 4, 5, 9 |
| 35 | | X | Have a current fitness component or composite exemption as defined in DAFMAN 36-2905. **Exception**: Female members who are pregnant or post-delivery with AAC 81 or ALC A are eligible. | 6 |
| 36 | X | | Have a Medical ALC:  X, Y, C, C1, C2, or C3. | 4,5, 9 |
| 37 | | X | Be currently undergoing a MEB, AAC 37. | |
| 38 | X | | Have any current duty or mobility restrictions listed on the AF Form 469. | 4, 5, 9 |
| 39 | | X | Have a "3" or "4" profile in any area of the PULHESX listed on the AF Form 422. | |
| 40 | X | | Be in Strength Accounting Duty Status Code:  01, 02, 03, 04, 05, 06, 07, 11, 13, 14, 15, 16, 17, 19, 21, 22, 25, 26, 27, 28, 29, 30, 31, 42, 43, 52, 53, 56, 59, 73, 74, 75, 76, or 77. | 5 |
| 41 | | X | Have an AAC of one of the following:  02, 05, 11, 12, 13, 14, 15, 16, 17, 18, 19, 21, 31, 37, 52, 67, or ET. | |
| 42 | X | | Have an AAC of one of the following:  10, 29, 38, 39, 56, 70, 72, 73, 74, CS, or AP. | 5 |
| 43 | X | | Open a new application within 120 days of a previously disapproved application. | 5 |
| 44 | | X | Be a member of the ARC and serving on EAD.  Limited Period Recall Program and VLPAD program participants are ARC members on EAD orders and are not eligible for PALACE CHASE Special Programs. | |
| 45 | X | | Open a new PALACE CHASE Special Programs application for one year following the withdrawal of an Approved PALACE CHASE Special Programs application. | 5 |
| 46 | | X | (Officer only) Be enrolled in formal training course or Advance Academic Degree (AAD) participants.  AAC 48. | 2, 3 |

| | | | | |
|---|---|---|---|---|
| 47 | X | | (Officer only) Have been twice non-selected for promotion. **Exception**: Member can apply for a waiver through their ARC ISR prior to opening a new PALACE CHASE Special Programs application. If the ARC component approves the accession waiver, then the member is allowed to apply for PALACE CHASE Special Programs. Approved waiver must be included in the application. | 9 |
| 48 | | X | (Officer only) Be in the rank of O-6 or higher. Applicants in the rank of O-6 or higher should contact the Senior Leaders Group at AF/A1LO. | |
| 49 | X | | (Enlisted only) AAC "CS" Enlisted members extending or reenlisting under the Enlisted Critical Skills Retention Bonus are obligated to serve in the Skills Retention Bonus skill for the full period of extension or reenlistment. Reference DAFI 36-2110 for assignment-related information. | 5 |
| 50 | | X | (Enlisted only) Be in a formal training course or retrained within the last 12 months. AAC 24, 29. | 10 |
| 51 | | X | Currently be in Career Intermission Program (CIP). Applicants must complete the entire CIP ADSC prior to the requested DOS. | |

**Notes**:

1. Applicant must have a valid current security clearance on file at time of application. The clearance must cover a period beyond the requested DOS. The minimum clearance level is SECRET. **(T-1)**

2. Members with an ASD, extended deployment notification or selection date for training the SAME DATE or PRIOR to opening a new PALACE SPORT application start date are not qualified for PALACE CHASE Special Programs application until they complete a 3 or 7-day option. After 3 or 7-day option processing is complete the member may apply for PALACE CHASE Special Programs with a requested DOS prior to the MSD assigned by the 3 or 7-day option. Refer to DAFI 36-2110 for assignment-related information.

3. Members with a PALACE CHASE Special Programs application that was opened PRIOR to the ASD, extended deployment notification, or selection date for training have the option to accept the assignment or training and withdraw the PALACE CHASE Special Programs application or reclama (formal protest) the assignment or selection. Normal separation and retirement criteria apply when a signed request for separation or retirement is dated before an ASD for PCS or selection date for training. Applicants may request withdrawal of the PALACE CHASE Special Programs application. Applicants that wish to keep the current PALACE CHASE Special Programs application and reclama the assignment or training selection should reclama. Guidance on reclamas is provided in DAFI 36-2110.

4. The following are medically disqualifying factors: ALC C1, C2, and C3, assigned "3 or 4" profile on AF Form 422; diagnosed with any medical condition as identified in DoDI 6130.03, Enclosure 4, regardless of previous MEB and/or previous PEB/MEB disposition. Exception to Policy is obtained from the ARC ISR. Applicants obtain both an AFRC/SG or NGB/SG waiver approval and a memorandum for record from the gaining ARC WG/CC PRIOR to submitting application. Approved SG waiver and memorandum for record from the gaining WG/CC accepting a non-worldwide qualified accession is included in the initial application submission.

*5. AFPC/DPMSSR is the sole approval and disapproval authority for all PALACE CHASE Special Programs program exception to policy. All exception to policy applications will be completed prior to submitting the initial PALACE CHASE Special Programs application. **(T-1)** ARC ISR completes requirements for exception to policy submission.

6. Applicants must have a score of 75 or above dated within 6 months or score of 90 or above dated within 12 months. **(T-1)**

7. ARC ISR completes a new AF Form 2030 for each applicant. Form is completed through Section III during initial application. Section IV will be completed at time of enlistment, commissioning, or appointment into the ARC. **(T-1)**

8. The Lautenberg Amendment concerns convictions for misdemeanor crimes of domestic violence in civilian courts. DoD policy has extended the prohibition to convictions for crimes of domestic violence tried by general or special court-martial, as well as civilian criminal felony convictions adjudged on or after 27 November 2002.

*9. PALACE CHASE Special Programs applicants that do not meet the accessions standards for the ARC may request accession waiver or exception to policy prior to opening a new PALACE CHASE Special Programs application. An accession waiver may not be available; applicants contact their ARC ISR to check availability of

waiver or exception to policy.  The waiver or exception to policy must be completed and approved prior to opening a new PALACE CHASE Special Programs application or requesting an exception to policy for PALACE CHASE Special Programs program eligibility. **(T-2)** The ARC ISR coordinates accession waivers and are the OPRs for ARC accession standards.  AFPC/DPMSSR is not the OPR for the applicant's accession exception to policy or waiver. **(T-2)**

10.  Enlisted personnel who have retrained or who attended their initial technical training course of more than 10 academic days during the past 12 months may not enter the ARC under the PALACE CHASE Special Programs in a different AFSC from their current control or duty AFSC.

**Table 27.2.  List of Approved Professional Sports Organizations.**

| PROFESSIONAL SPORTS AND ORGANIZATIONS | | | |
|---|---|---|---|
| **Professional Sport:** | **League:** | **Remarks:** | **NOTES:** |
| Soccer | Major League Soccer | Does not include the National American Soccer League or United Soccer League. | 1, 2 |
|  | National Woman's Soccer League | Does not include Women's Premier Soccer League. | 1, 2 |
| Motor Sports | National Association of Stock Car Racers | All series. | 2 |
|  | Indy Car | All series. | 1, 2 |
|  | National Hot Rod Association | All series. | 2 |
|  | Moto GP, Moto 3, Moto 2 | Does not include Moto GP Rookies Cup. | 1, 2 |
|  | Formula Drift, Formula D |  | 2 |
|  | Championship Snowcross |  | 2 |
| Football | National Football League, including practice squad players. | Does not include contract to only attend National Football League training camps. | 1, 2 |
|  | Arena Football league |  | 2 |
| Basketball | National Basketball Association |  | 2 |
|  | National Basketball Association Developmental League |  | 2 |
|  | Women's National Basketball Association |  | 2 |
| Baseball | Major League Baseball |  | 2 |
|  | Minor League Baseball | AAA class only. | 1, 2 |
| Hockey | National Hockey League | Does not include American Hockey League or East Coast Hockey League. | 1, 2 |
|  | US Hockey League | | |
| Golf | Professional Golf Association | In place of professional sports contract, applicant with a Professional Golf Association tour card and a strong plan to promote the AF may apply.  Must be approved prior to application submission. | 1, 2 |
|  | Ladies Professional Golf Association | In place of professional sports contract, applicant with a Ladies Professional Golf Association tour card and a strong plan to promote the AF may apply.  Must be approved prior to application submission. | 1, 2 |
| Tennis | US Tennis Association |  | 2 |

| Mixed Martial Arts | Ultimate Fighting Championship | | 2 |
|---|---|---|---|
| Wrestling | World Wrestling Entertainment | | 2 |
| Bull Riding | Professional Bull riding | | 2 |
| **Notes**:<br>1.  Professional sports leagues or series not specifically listed in **Table 27.2** will be considered on a case-by-case basis.  Applicants may submit an exception to policy. **Exception**: Professional sports where the AF is a title or associate sponsor do not require an exception to policy and should be considered.<br>2. Excess leave may be used to pursue activities with potential recruiting or public affairs benefit for the AF when Permissive TDY and PALACE SPORT are not appropriate.  Refer to DAFI 36-3003. | | | |

## Chapter 28

## PALACE CHASE PROGRAMS RECALL

**28.1. PALACE CHASE programs participants may be recalled to EAD when:** the participant violates the terms and conditions of the PALACE CHASE contract or when the participant's ARC unit commanders, civilian directors, or RIO Detachment Commanders request the participant be recalled.  When recall is not practical or appropriate the participant may be administratively discharged.  The PALACE CHASE programs are voluntary separation programs and applicants are volunteers.  Participants voluntarily agree to all of the terms and conditions of the PALACE CHASE contract, to include volunteering for EAD when the participant violates the PALACE CHASE contact.  Use this paragraph in conjunction with AFMAN 36-2136.

**28.2. Applicant Reporting.** AFPC authorizes PALACE CHASE participants up to 10 days of concurrent service to allow for travel and document retrieval.

    28.2.1.  ARC units are not authorized to delay participant reporting action until the unit's next Unit Training Assembly or Regularly Scheduled Drill.

    28.2.2.  All participants must report to and be gained by the ARC unit no later than 10 calendar days after the member's final approved PALACE CHASE DOS.  **(T-2)**

    28.2.3.  The reporting official is the primary POC for the PALACE CHASE participant at the gaining unit.  Refer to **paragraph 2.3.19**.

    28.2.4.  The PALACE CHASE participant must be gained effective the day after the member's final approved DOS assigned by SAFPC.  **(T-2)**

    28.2.5.  A PALACE CHASE participant that fails to report to the ARC unit within the 10 calendar days of separation from active duty are in violation of the PALACE CHASE contract and should be considered absent; refer to **paragraph 28.3**.

**28.3. Unauthorized Absence.** An unauthorized absence begins when a member is absent from where the member is ordered or otherwise required to be present.  Unauthorized absences must be reported immediately. **(T-3)** Reporting officials and supervisors promptly notify the chain of command. ARC unit commanders, civilian directors, or RIO Detachment Commanders have the primary responsibility to determine the cause of absence and to find and return the participant to military control.  **(T-2)**

    28.3.1.  Report PALACE CHASE participants with an unauthorized absence of more than 24 hours to AFPC/DPMSSR (COM 1-800-565-0102 or DSN 665-3758).  **(T-2)**

    28.3.2.  ARC unit commanders, civilian directors, or RIO Detachment Commanders refer to DAFI 36-3802 for steps that must be completed when a PALACE CHASE participant is found to be absent without authority.  **(T-2)**

**28.4. Failure to report to the gaining ARC.** Use this section for participants that fail to report to the gaining ARC unit within the 10 days of concurrent service

    28.4.1.  When the participant's records were "Not Gained" in the MilPDS and the participant fails to physically show to the gaining ARC unit or fails to in-process the unit, the participant's separation will be canceled, the separation order will be revoked, and the participant will have 24 hours to return to the assignment listed on the participant's separation order.  **(T-1)**

**DAFI36-3211  24 JUNE 2022**                                                          **419**

28.4.2.  Handle PALACE CHASE participants with an unauthorized absence(s). Guidance on unauthorized absences is provided in DAFI 36-3802.

28.4.2.1.  SecAF may drop from the rolls of the armed force concerned any participant who has been absent without authority for more than 90 days

28.4.2.2.  When the participant is an officer or if the participant has a TS SCI clearance, the desertion is classified "Under Aggravated Circumstances."

28.4.3.  AFPC/DPMSSR contacts AFPC Judge Advocate's office (AFPC/JA) to determine the legal sufficiency and determine if return is necessary.

**28.5.  Unsatisfactory participation.**  Use this section if the member has been successfully gained to the ARC unit and later becomes an unsatisfactory participant.  Unsatisfactory participation is failure to meet the participation requirements of the DAF Form 2631 and this publication.

28.5.1.  PALACE CHASE participants must meet the minimum participation requirements. Participants that fail to meet the minimum participation requirements will be classified as unsatisfactory.  **(T-2)**

28.5.1.1.  Drill Status Guardsmen and TRs.

28.5.1.1.1.  PALACE CHASE participants that fail to attend 10 or more scheduled training periods in any 12-month period are identified as an unsatisfactory participant.

28.5.1.1.2.  PALACE CHASE participants with an unauthorized absence of 10 or more training periods in one retention or retirement year are identified as an unsatisfactory participant.

28.5.1.1.3.  PALACE CHASE participants with an unauthorized absence of four consecutive training periods are considered an unsatisfactory participant.

28.5.1.1.4.  PALACE CHASE participants that cannot accrue 50 total retirement points (including 15 membership points) during the full retention or retirement year are considered an unsatisfactory participant.

28.5.1.1.4.1.  Membership points are prorated for periods less than one year.

28.5.1.1.4.2.  PALACE CHASE participants may be excused for failing to accrue the 50-point minimum due to personal hardship or other extraordinary circumstances.  PALACE CHASE participants do not receive credit for a satisfactory year of service when that year is excused.

28.5.1.1.4.3.  Any time excused will be added to the PALACE CHASE participant's contract date.  **(T-2)**

28.5.1.2.  Individual Reservist (IR).  An IMA, who has not completed a scheduled annual tour in a FY is considered an unsatisfactory participant, refer to AFMAN 36-2136 paragraph 1.4.

28.5.1.3.  PALACE CHASE participants do not receive credit for periods of unsatisfactory participation.  Periods of unsatisfactory participation are added to the participant's PALACE CHASE contract date.

28.5.2.  ARC unit commanders, RIO Detachment Commanders, or civilian directors should take the following progressive actions when the PALACE CHASE participant's participation becomes unsatisfactory.

28.5.2.1.  Determine if the participant's absence is an unauthorized absence.  If determined to be unauthorized, refer to **paragraph 28.3**, unauthorized absence.

28.5.2.2.  Document all contact attempts concerning the unauthorized absence and efforts to return the participant to military control.

28.5.2.3.  Take administrative actions as deemed appropriate.

28.5.2.4.  Initiate demotion action, if deemed appropriate.

28.5.2.5.  Advise the PALACE CHASE participant that they are in violation of the PALACE CHASE contract and issue the notification of intent to recall memo to the PALACE CHASE participant.

28.5.2.5.1.  PALACE CHASE participants are issued the notification of intent to recall memorandum in person.  The participant is to be in receipt of official correspondence if it is hand delivered.

28.5.2.5.2.  Participants that are not available in person to receive the notification of intent to recall memorandum will be sent the memorandum in a certified letter.  **(T-2)**

28.5.2.5.3.  Participants have 45 calendar days from the date of receipt of the certified letter to acknowledge the notification.

28.5.2.5.4.  The participant is presumed to be in receipt of official correspondence if it is hand delivered or delivered by certified mail to the participant's address or best available address.

28.5.2.6.  ARC unit commanders, civilian directors, or RIO Detachment Commanders will report commander's or director's intent to recall or administratively discharge a PALACE CHASE participant to AFPC/DPMSSR (COM 1-800-565-3758 or DSN 665-3758).  **(T-2)**

28.5.3.  Unsatisfactory Participants are those in violation of the DAF Form 2631 and this publication.  ARC unit commanders, RIO Detachment Commanders, or civilian directors should take actions outlined in **paragraph 28.5.2**.

28.5.4.  The PALACE CHASE programs are voluntary separation provisions.

28.5.4.1.  PALACE CHASE participants are volunteers and have acknowledged that they have volunteered to be recalled to the regular component at the discretion of SecAF.

28.5.4.2.  PALACE CHASE participants have acknowledged that they may be subject to administrative action for failure to comply with the provisions of the separation order. Additionally, they affirm that they have read, understood, and accepted terms and conditions set forth in this publication.

**28.6. Unsatisfactory Performance or Behavior.** Use this section if the member has been successfully gained the ARC unit and later becomes an unsatisfactory performer.  Unsatisfactory performance or behavior is failure to meet requirements of the DAF Form 2631 and this publication.

28.6.1.  PALACE CHASE participants are required to perform and behave satisfactorily while participating in a PALACE CHASE program.  Some examples of unsatisfactory performance or behavior are not fulfilling responsibilities commensurate with their grade, not completing on-the-job training within the required time frames, or not maintaining fitness standards.

28.6.2.  ARC unit commanders, RIO Detachment Commanders, or civilian directors should take the following progressive actions when the PALACE CHASE participant's performance or behavior is unsatisfactory.

28.6.2.1.  Document and counsel members concerning unsatisfactory performance or behavior.

28.6.2.2.  Take administrative actions as deemed appropriate.

28.6.2.3.  Demote the participant if deemed appropriate.

28.6.2.4.  Advise the PALACE CHASE participant that they are in violation of the PALACE CHASE contract and issue the notification of intent to recall memorandum to the PALACE CHASE participant.

28.6.2.4.1.  PALACE CHASE participants are issued the notification of intent to recall memorandum in person.

28.6.2.4.2.  Participants that are not available in person to receive the notification of intent to recall memo will be sent the memorandum in a certified letter.  **(T-2)**

28.6.2.4.3.  Participants have 45 calendar days from the date of receipt of the certified letter to acknowledge the notification.

28.6.2.4.4.  The participant is presumed to be in receipt of official correspondence if it is hand delivered or delivered by certified mail to the participant's address or best available address.

28.6.2.5.  (ANG ONLY) ANG Commanders must request the consent of the governor or other appropriate authority of the State concerned prior to directing an ANG participant to regular component.  **(T-1)**

28.6.2.6.  Complete a National Crime Information Check. Guidance on criminal history is provided in 5 USC § 9101.

28.6.2.7.  ARC unit commanders, civilian directors, or RIO Detachment Commanders will report Commanders or Directors intent to recall or administratively discharge a PALACE CHASE participant to AFPC/DPMSSR (COM 1-800-565-3758 or DSN 665-3758).  **(T-2)**

28.6.3.  Unsatisfactory performers are in violation of the provisions of the PALACE CHASE program's DAF Form 2631 and this publication.

28.6.4.  The PALACE CHASE programs are voluntary separation provisions.

28.6.4.1.  PALACE CHASE participants are volunteers and have acknowledged that they have volunteered to be recalled to the regular component at the discretion of SAFPC.

28.6.4.2.  PALACE CHASE participants have acknowledged that they may be subject to administrative action for failure to comply with the provisions of the separation order.

Additionally, they affirm that they have read, understood, and accepted terms and conditions set forth in this publication.

**28.7. Recall of PALACE CHASE Participants.** A PALACE CHASE participant may be recalled to the regular component for violating the terms of the PALACE CHASE contract. Refer to Voluntary Airman EAD Recall Programs under 10 USC § 12301(d) and DoDI 1215.06, Enclosure 6.

28.7.1. Participants may be recalled and retained in the regular component to complete the unfulfilled portion of participant's ADSC/TOE that existed prior to participant's separation from active duty or for 12 months, whichever is greater.

28.7.1.1. Participants recalled to the regular component should be assigned to the regular component base nearest to the participant home of record when possible.

28.7.1.2. Directorate of Personnel Operations (AFPC/DPM) provides AFPC/DPMSSR with assignment information when requested.

28.7.1.3. When AFPC/DPM cannot provide an assignment, when the cost of the movement of the recalled participant's household goods are too high or when the recall is not in the best interest of the AF, AFPC/DPMSSR may direct the ARC unit commander or civilian director to administratively discharge the participant.

28.7.1.3.1. If the participant has more than 12 months remaining on the participant's PALACE CHASE contract, may not transfer the individual to the IRR without approval from AFPC/DPMSSR.

28.7.1.3.2. If the participant has less than 12 months remaining on the participant's PALACE CHASE contract, the assigned unit may approve transfer of the individual to the IRR. AFPC/DPMSSR will be notified of the action. **(T-2)**

28.7.2. A member of the ANG may not be ordered into the regular component under the PALACE CHASE Recall Program without the consent of the governor or other appropriate authority of the state concerned.

28.7.3. ANG or AFR Force Support unit will update the recalled participant's GI Bill eligibility status within the MILPDS on receipt of recall orders. **(T-1)**

28.7.4. EAD orders will indicate recall authority, 10 USC § 12301(d). **(T-0)**

28.7.5. After completing a recall tour, members are separated under **Part 2 (enlisted)** or **Part 3 (officer)** of this publication.

28.7.6. Recall determinations should be made after a complete review of the information surrounding the recall request.

**28.8.  Administrative Discharge of PALACE CHASE participants.**

28.8.1. When recall is not possible, practical, or appropriate the participant may be administratively discharged; reference Parts **2 and 3** of this publication.

28.8.1.1. AFPC/DPMSSR may request the ARC unit commander or civilian director to administratively discharge the participant.

28.8.1.2.  Discharge for unsatisfactory participation when the commander concerned has determined that the participant has no potential for useful service under conditions of full mobilization.

28.8.2.  Update the member's new GI Bill eligibility status within the MILPDS on receipt of discharge orders.

28.8.3.  Reenlistment Codes for administratively discharged PALACE CHASE participants.

28.8.3.1.  PALACE CHASE participants that are administratively discharged with an Under Honorable Conditions (General) characterization receive a Reenlistment Eligibility Code of 2B.

28.8.3.2.  PALACE CHASE participants that are administratively discharged with UOTHC characterization receive a Reenlistment Eligibility Code of 4M.

**28.9.  Recall of PALACE SPORT or PALACE PA participants.**

28.9.1.  PALACE SPORT or PALACE PA participants may be recalled to active duty when the participant is no longer under a contract or binding agreement with a professional sports team or when the participant's unique talents no longer provide a positive benefit to the AF recruiting and public affairs efforts.

28.9.2.  The participant's ARC unit commander or civilian director may request recall.

28.9.3.  Recalled PALACE SPORT or PALACE PA participants will return to active duty to complete the unfulfilled portion of participant's ADSC/TOE that existed prior to participant's separation from active duty or 12 months, whichever is greater.  **(T-1)**

**Part 5**

**CONSCIENTIOUS OBJECTOR**

**Chapter 29**

**PROCEDURES FOR APPLYING AS A CONSCIENTIOUS OBJECTOR**

**29.1.  Preparing Conscientious Objector Applications.**

29.1.1.  Conscientious Objector.

29.1.1.1.  Class 1-O.  A member who, by reason of conscientious objection, sincerely opposes participation in combatant and non-combatant military training and service in war in any form and for whom such beliefs play a significant role in the member's life.

29.1.1.2.  Class 1-A-O.  A member who, by reason of conscientious objection, sincerely opposes participation only in combatant military training and service and for whom such beliefs play a significant role in the member's life.

29.1.2.  Establishing Claim.  The applicant for conscientious objector status bears the burden of establishing conscientious objection as grounds for separation or, for Class 1-A-O, assignment to noncombatant training and service.  **(T-0)** The applicant must establish the following by clear and convincing evidence:  **Note**: Clear and convincing evidence is evidence indicating the thing to be proven is highly probable or reasonably certain.  It is that level of proof which lies between proof by a preponderance of the evidence and proof beyond a reasonable doubt.

29.1.2.1.  The nature or basis of the claim falls within the definition and criteria of conscientious objector prescribed in this publication and DoDI 1300.06.  **(T-0)**

29.1.2.2.  The applicant's belief is firm, fixed, sincere, and deeply held.  **(T-0)**

29.1.2.3.  The applicant's belief is due to sincerely held moral, ethical, or religious beliefs, or a combination of such beliefs.  **(T-0)**

29.1.2.4.  The applicant opposes participation in war in any form or the bearing of arms. **Note**: An applicant's willingness to bear arms in exclusively noncombatant or non-lethal contexts does not invalidate the applicant's claims or render the application insincere.  An applicant's willingness to bear arms to protect themselves or family members does not invalidate the service member's claims or render the application insincere.  An applicant's willingness to bear arms in first-person shooter video games shall be weighed against other relevant evidence.  **(T-0)**

29.1.3.  Nature of Request.  The applicant must set out the exact nature of the request -- that is, whether the applicant requests separation based on conscientious objection (1-O) or for assignment to noncombatant training and service based on conscientious objection (1-A-O) **(T-0)**

29.1.3.1.  Only enlisted members who have time remaining on their enlistment contract or officers who have an ADSC may request noncombatant training and service (1-A-O).

29.1.3.2.  Enlisted members with time remaining on their enlistment contract or officers with an ADSC may request conscientious objector (1-O) status with curtailment of ADSC and discharge upon approval.

29.1.3.3.  Members with no remaining ADSCs or enlistment agreement at the time of their conscientious objector application must request conscientious objector (1-O) status with discharge upon approval.  **(T-1)** Members seeking characterization as a 1-A-O, who have less than 2 years of service remaining on their enlistment or commitment will typically be discharged, unless it can be shown that their retention to perform non-combatant training or duties will serve the best interests of the Air Force or Space Force.  **(T-1)**

29.1.4.  Applying for Noncombatant Training and Service.  The applicant will explain on the application, in detail, what benefit the applicant's continued service (to include new duties and responsibilities) would be to the AF.  For the regular component, the AFPC Assignment Policy AFPC/DP3AM) and/or Classification (AFPC/DP3DW) offices will provide the final approving authority information about the health, status, and duties of the applicant's current, proposed, potential career fields and potential non-combatant duties in support of a recommendation for retention or discharge of an applicant seeking classification as a 1-A-O conscientious objector.  For ANG or ARC applicants, the recommendation of NGB, HQ AFRC, or HQ ARPC will include a similar analysis of the applicant's current and proposed potential career fields and non-combatant duties.  If noncombatant duties cannot be established or validated for a 1-A-O conscientious objector, the final decision authority may direct discharge of the member, even if the member meets the criteria for classification as a 1-A-O.

29.1.5.  Submitting Application.  A member of the USAF or USSF who seeks either separation (1-O) or assignment to noncombatant duties (1-A-O) will:

29.1.5.1.  Include in the application a notation of the DAFI and chapter that applies **(T-1)**:

29.1.5.1.1.  DAFI 36-3211, **Part 2**,

29.1.5.1.2.  DAFI 36-3211, **Part 3**,

29.1.5.1.3.  DAFI 36-3203.

29.1.5.2.  Include in the application the personal information required by **Attachment 2**.

29.1.5.3.  Include in the application the statement required by **Attachment 3** if applicant is requesting separation (1-O).  Include the statement required by **Attachment 5** if applicant is requesting noncombatant status/duties (1-A-O).

29.1.5.4.  Include in the application any other information that the applicant desires to submit in support of the case.

29.1.5.5.  Forward application IAW **Table 29.1**.

**29.2.  Installation Processing Procedures.**

29.2.1.  General Procedures.  Consistent with the national policy to recognize the claims of authentic conscientious objectors in the military services, an application for classification as a conscientious objector may be approved, subject to the limitations of this issuance, for any individual who meets the definition and criteria of conscientious objector prescribed in this and related authoritative publications.  The USAF or USSF does not recognize objection to a particular war as grounds for conscientious objector status.

29.2.1.1. Individual facts and circumstances of each case will be the determining factor for discharging a member as a conscientious objector prior to completion of an obligated term of service.  The USAF or USSF makes conscientious objector classification decisions based upon the applicable criteria.  The decision to retain or discharge a 1-A-O conscientious objector will be based upon whether or not the applicant's retention is in the best interest of the USAF or USSF such that retention does not compromise USAF or USSF effectiveness and efficiency. **(T-1)**

29.2.1.1.1. Following guidance provided in DoDI 1300.06, DAF members who possessed conscientious objection beliefs before entering military service are not eligible for such classification if such beliefs satisfied the requirements for classification as a conscientious objector pursuant to Title 50 United States Code Section 3806(j), *Deferments and Exemptions from Training and Service*, also known as the Military Selective Service Act, and other provisions of law, and one of the following conditions also applies **(T-0)**:

29.2.1.1.1.1. The applicant failed to request classification by the Selective Service System **(T-0); or**

29.2.1.1.1.2. The member requested conscientious objector classification before entering military service, the Selective Service System denied the request, and the member's request for classification as a conscientious objector is based on essentially the same grounds (or supported by the same evidence) as the request that was denied by the Selective Service System.  **(T-0)**

29.2.1.1.2. USAF or USSF members who had conscientious objector beliefs before entering military service are eligible for conscientious objector status if the following circumstances apply:

29.2.1.1.2.1. The beliefs crystallized after receipt of an induction notice.  **(T-0)**

29.2.1.1.2.2. The member could not request conscientious objector classification from the Selective Service System because of regulations prohibiting the submission of such requests after receipt of induction notice.  **(T-0)**

29.2.1.2. Processing personnel must not use this chapter instead of other administrative separation actions when the member has not been able to establish conscientious objector status, but separation appears to be in the best interest of the USAF or USSF.  **(T-0)**

29.2.1.3. Process any person classified as a 1-A-O conscientious objector for administrative separation under the appropriate provisions of this instruction when the circumstances (e.g., misconduct, failure to meet standards) warrant it.  Persons with this classification will be expected to conform to the normal requirements of military service and to perform satisfactorily such duties to which they are assigned. **(T-1)** The adjudication of violations of the Uniform Code of Military Justice by these members, to include administrative separation, may take priority over the conscientious objector's request.

29.2.1.4. When assigning or transferring persons classified 1-A-O by the Selective Service System after induction, transfer 1-A-Os to a training center or station for recruit training and give them noncombatant training and service duties.  These inductees sign and date a statement IAW **Attachment 2**.

29.2.2. Personnel Effects of Conscientious Objector Status Applications.  Members who request conscientious objector status under this publication are subject to the following:

29.2.2.1.  Regular component enlisted members awaiting promotion may enter withhold status (DAFI 36-2502).

29.2.2.2.  Officers awaiting promotion to all grades may be subject to delay action (DAFI 36-2501) if circumstances suggest that an officer may not be suited for promotion and time is needed to develop more evidence on the question.

29.2.3.  Status of Applicant Whose Request Is Under Consideration.

29.2.3.1.  During the period applications are being processed, applicants will conform to the normal requirements of military service and satisfactorily perform their assigned duties. **(T-1)** Applicants may be disciplined for violations of the UCMJ while awaiting action on their applications.

29.2.3.2.  During the application processing period, and before a decision is made by the applicable authority, commanders will, to the extent practicable, make every effort to assign applicants to duties that will conflict as little as possible with the applicant's asserted beliefs. **(T-1)**

29.2.3.3.  Unless an exception to policy is granted, an applicant shall be required to comply with active duty or transfer orders in effect at the time of application or subsequently issued and received.  **(T-2)**

29.2.4. Effect of Unauthorized Absence or Disciplinary or Administrative Action. Commanders:

29.2.4.1.  May suspend processing of applications for conscientious objector classification in the event of:

29.2.4.1.1.  Unauthorized absence of the applicant subsequent to initiation of the application.

29.2.4.1.2.  Initiation of disciplinary action, or administrative separation actions against the applicant.

29.2.4.2.  Do not discharge an applicant whose request for conscientious objector classification has been approved until all disciplinary actions are resolved.  **(T-1)**

29.2.5.  Making Final Determination on Applications.  Because of the personal and subjective nature of conscientious objection (the existence, honesty, and sincerity of asserted conscientious objection), commanders should not apply inflexible standards and should consider each case individually.  **Paragraph 29.4** lists final decision authorities.

29.2.6.  Returning Applications Without Action.  The commander may return the application without action, if a member applies based on the same grounds or supported by the same evidence as a previous application disapproved by SAF/MRB.

29.2.7.  FSS/MPF Procedures.  The MPF is overall responsible for ensuring the conscientious objector application is processing in a timely manner and for providing all applicable documentation to the investigating officer.  Before processing the application, the FSS or MPF/Career Development Element must:

29.2.7.1. Inform the applicant of the effects of being discharged as a conscientious objector outlined in 38 USC § 5303 (see **Attachment 4**), to include potential loss of medical, educational, disability, and any other benefits normally granted for satisfactory military service. **(T-0)** When a member is separated pursuant to a conscientious objector status, the VA will determine what veterans' benefits, if any, a member is entitled to receive.

29.2.7.2. The applicant must complete the statements shown in **Attachment 3** and **Attachment 4** (if applicant is requesting discharge, 1-O) or **Attachment 4** and **Attachment 5** (if applicant is requesting noncombatant status, 1-A-O). **(T-1)** The MPF must forward the statements with the application. **(T-1)**

29.2.7.3. Screen the applicant's personnel record. Review the applicant's entire record to include all recent personnel actions taken by the applicant or on behalf of the applicant and provide this information to the investigating officer (see **paragraph 29.3** for investigation officer information). Use all military personnel databases (e.g., MilPDS, Case Management System, Personnel Records Display Application) in the comprehensive review of the record. **(T-1)**

29.2.7.4. Contact other sources (the unit of assignment; AFPC/DP3AM for officers of the medical services; base, installation, or local chaplain corps for chaplains; AF/JA for judge advocates) for information about the applicant, relevant to the definition of conscientious objector or to the claimed criteria. These sources must promptly forward information for inclusion in the applicant's file for consideration by the investigating officer. **(T-1)**

29.2.7.5. Counsel applicant on the information in **paragraph 29.2.1** **(T-1)**

29.2.7.6. Contact the applicant's unit commander and/or first sergeant to schedule the applicant for interviews with the chaplain and mental health professional. **(T-1)**

29.2.7.7. Ensure commanders consider whether action under **Part 2** (enlisted) or **Part 3** (officer) of this publication is appropriate. **(T-1)**

29.2.8. Reports of Interview. If the applicant refuses to participate or is uncooperative or unresponsive in the course of either interview below, include this fact in the report.

29.2.8.1. Chaplain Interview. The chaplain will ensure the applicant is made aware that the conversation is not confidential or privileged and will be used in an official report. **(T-1)** The chaplain will submit a written opinion as to the nature and basis of the applicant's sincerity and depth of conviction. **(T-0)**

29.2.8.1.1. The chaplain's report must include the reasons for its conclusions. **(T-0)**

29.2.8.1.2. The chaplain will not make any recommendations for approval or disapproval of the application. **(T-1)**

29.2.8.2. Credentialed Mental Health Professional Interview. The mental health professional will submit a written report of the psychiatric evaluation, indicating the presence or absence of any mental condition that would warrant treatment or disposition through medical channels for the appropriate administrative action. This review is solely to ensure no other more appropriate administrative discharge under mental health is warranted. **(T-0)** This opinion and report will become part of the application file. **(T-0)**

29.2.8.2.1. The mental health professional will not make any recommendations for approval or disapproval of the application. **(T-1)** The mental health professional will ensure the applicant is made aware that the conversation is not confidential or privileged and will be used in an official report. **(T-1)**

29.2.9. Furnishing Case File to Investigating Officer.  The FSS or Career Development Section of the MPF includes in the case file the information developed in the screening (**paragraph 29.2.7.3**), the chaplain's report, and the mental health evaluation and provides the case file to the investigating officer (see **paragraph 29.3.**).

29.2.10.  Routing the Record.  The investigating officer's report, along with the individual's application, all interviews with chaplains and mental health professionals, evidence received as a result of the investigating officer's hearing (see **paragraph 29.3.2**), and any other items submitted by the applicant will constitute the "record." The investigating officer's conclusions and recommended disposition will be based on the entire record and not merely on the evidence produced at the hearings.  Routing and review procedures for the applicant's record are outlined below.

29.2.10.1.  The FSS or Career Development Section of the MPF sends the record to the local SJA for a review of procedural compliance.  **(T-1)** If the local SJA acts as the investigating officer, the SJA of the next higher echelon in the applicant's chain of command will provide the legal review.  **(T-2)**

29.2.10.2.  If necessary, the SJA will return the case through the FSS/MPF to the investigating officer for further investigation.

29.2.10.3.  When the legal review of the record is complete, the SJA forwards it to the commander who appointed the investigating officer (the commander who holds special court-martial jurisdiction over the applicant).  **(T-1)** If a rebuttal is subsequently submitted within the prescribed time limit, the rebuttal becomes part of the record.  **(T-1)**

29.2.10.4.  After review of the complete record, the officer who appointed the investigating officer will forward the record, including recommended disposition and rationale for disposition, through channels to:

29.2.10.4.1.  The MAJCOM, FLDCOM, or FOA of assignment for members serving in the active military service.  **(T-2)**

29.2.10.4.2.  AFRC/A1KK Workflow, via email, for applicants assigned to the AFR Unit Program (Cat A).  **(T-2)**

29.2.10.4.3.  NGB/A1PP, Joint Base Andrews, MD 20762 for ANG members.

29.2.10.4.4.  ARPC/DPA, Buckley AFB, CO 80011 for AFR members assigned to IR positions, Non-Participating IRR, and the Participating IRR.  **(T-2)**

29.2.11.  MAJCOM/FLDCOM and FOA Procedures (regular component only).  For a 1-A-O application, the MAJCOM/FLDCOM and/or FOA recommendation must include a recommendation on whether or not it is in the best interest of the Air Force to retain a member seeking assignment to training or non-combatant duties if the applicant is ultimately classified as a 1-A-O conscientious objector. **(T-1)** MAJCOM/FLDCOM and FOA commanders, to include deputy commanders on G-Series orders, and judge advocates are required to review and make a recommendation on all conscientious objector applications.  This cannot be

delegated to a lower level.  After review for legal sufficiency, the MAJCOM/FLDCOM or FOA will forward a copy, including recommendations and reasons, to AFPC/DPMSSR.  **(T-1)**

29.2.12. HQ ARPC and HQ AFRC Procedures.  The commanders, to include deputy commanders on G-Series orders, and judge advocates, are required to review and make a recommendation on all conscientious objector applications.  This cannot be delegated to a lower level.  For a 1-A-O application, the HQ ARPC or HQ AFRC recommendation must include a recommendation on whether or not it is in the best interest of the Air Force to retain a member seeking assignment to training or non-combatant duties if the applicant is ultimately classified as a 1-A-O conscientious objector.  After review for legal sufficiency, these agencies will forward a copy of the application, including recommendations and rationale, to the SAFPC.  **(T-1)** For ANG cases, the Director or Deputy Director, Air National Guard, and judge advocates are required to review and make a recommendation on all conscientious objector applications.  This cannot be delegated to a lower level.  For a 1-A-O application, the Director or Deputy Director, ANG recommendation must include a recommendation on whether or not it is in the best interest of the Air Force to retain a member seeking assignment to training or non-combatant duties if the applicant is ultimately classified as a 1-A-O conscientious objector.  Submit application, including recommendations and rationale, as an electronic package to NGB/A1PP for further staffing to SAFPC.  **Note**: Do not forward applications for officers not serving on active duty to AFPC/DPMSSR unless the AF will order the officer to EAD or will consider them for entry on EAD.  **(T-1)**

29.2.13. Processing Timeline.  Process Conscientious Objector applications without delay, while observing the following:

29.2.13.1.  Protect the applicant's rights and ensure that the record is complete.

29.2.13.2.  Everyone in the application processing chain (up to the SAFPC), must move the package to the next office within 3 workdays, with the exception of the investigating officer, who has up to 15 workdays to process and forward the package. **(T-1)**

29.2.13.3.  The applicant has 15 calendar days from the date of receipt of the investigating officer's report to submit a rebuttal (**paragraph 29.3.2.12**.).

29.2.13.4.  Failure to meet the time standards does not invalidate the action.

**Table 29.1.  Forwarding Application.**

| R U L E | If member is | and is | then submit the application to the |
|---|---|---|---|
| 1 | Regular Component | serving on active duty | servicing FSS or MPF/Career Development Section. |
| 2 | AFR | | |
| 3 | ANG | | |
| 4 | AFR | not serving on EAD | immediate commander (see **Notes 1** & **2**). |
| 5 | ANG | | |

> **Notes**:
> 1. Commanders of AFR members request assistance of the MPF (active or reserve component) closest to member's home address. ANG members will be supported by their FSS.
> 2. IMAs will submit to their immediate regular component Commander.

**29.3.  Investigating Officer.**

29.3.1. Appointing Investigating Officer.  Commanders, shown below, appoint a judge advocate serving in the active military service (regular component, or members of the Reserve Component on active duty or full time ANG duty).  **(T-1)** The investigating officer must be in the rank of O-3 or higher.  **(T-0)** If the applicant is a commissioned officer, the investigating officer must be senior in grade.  **(T-0)** The letter appointing the investigating officer becomes a part of the case file.

29.3.1.1.  Regular component members.  The commander exercising special court-martial jurisdiction over the applicant appoints the investigating officer.

29.3.1.2.  AFR Non-EAD and AFR EAD Members.  The commander exercising special court-martial jurisdiction over the installation processing the application appoints the investigating officer.

29.3.1.3. ANG Non-EAD Members.  The ANG wing or group commander exercising control over the ANG Force Support Squadron that is responsible for processing the application appoints the investigating officer.

29.3.2.  Investigating Officer Actions:

29.3.2.1.  Reviews this publication.  **(T-0)**

29.3.2.2.  Expeditiously investigates and conducts a hearing, the purpose of which is to:

29.3.2.2.1. Give the applicant an opportunity to present any desired evidence in support of the application.  **(T-0)**

29.3.2.2.2.  Enable the investigating officer to gather all relevant facts.  **(T-0)**

29.3.2.2.3.  Create a comprehensive record.  **(T-0)**

29.3.2.2.4.  Facilitate and inform the investigating officer's recommendation and the higher authority's decision.  **(T-0)**

29.3.2.3.  The investigating officer may consider the applicant's failure or refusal to submit to questioning under oath or affirmation when evaluating the applicant's claim.

29.3.2.4.  The investigating officer will proceed in the applicant's absence if the applicant fails to appear at the hearing without good cause and the applicant is deemed to have waived an appearance.  **(T-0)**

29.3.2.5.  The applicant is entitled to be represented by legal counsel at applicant's own expense.  Legal counsel shall be permitted to be present at the hearing, to assist the applicant in the presentation of the case, and to examine all items in the file.  **(T-0)**

29.3.2.6.  The hearing is informal and not governed by the courts-martial rules of evidence, except that all oral testimony presented must be under oath or affirmation.  **(T-0)**

29.3.2.6.1.  The hearing is not an adversarial proceeding.  **(T-0)**

29.3.2.6.2.  The hearing may receive any relevant evidence.

29.3.2.6.3.  Statements obtained from persons not present at the hearing need not be made under oath or affirmation.

29.3.2.6.4.  The investigating officer should make every effort to interview friends, acquaintances, clergymen, supervisors, first sergeant, co-workers, subordinates, and anyone in a position to shed light on the applicant's moral, ethical, or religious beliefs and how these beliefs have guided the applicant's life.  Only through a complete investigation of the application by the investigating officer are reviewing authorities in position to judge the merits of the application.  **(T-1)**

29.3.2.7.  The applicant may submit any additional evidence, including sworn or unsworn written statements, and present any witnesses on the applicant's behalf; the applicant is responsible for their attendance.

29.3.2.7.1.  The commander exercising special court-martial jurisdiction will try (if reasonably available) to make available any military members requested by the applicant as witnesses.  **(T-0)**

29.3.2.7.2.  The applicant may question any other witnesses who appear and may examine all items in the file.

29.3.2.8.  The USAF or USSF does not require a verbatim record of the hearing.

29.3.2.8.1.  If the applicant wants a verbatim record, the applicant must make prior request which includes paying for the preparation, reproduction, and distribution of the record. **(T-0)**

29.3.2.8.2.  If the applicant elects a verbatim record, the applicant provides a copy to the investigating officer, at no expense to the government, within a reasonable time after the hearing.

29.3.2.8.3.  If there is no verbatim record, the investigating officer will summarize the testimony of witnesses and permit the applicant or counsel to examine the summaries and then note, for the record, their differences with the investigating officer's summary. **(T-0)**

29.3.2.8.4.  File in the hearing record copies of statements and other documents received in evidence.

29.3.2.9.  At the end of the investigation, the investigating officer will prepare a written report that contains:

29.3.2.9.1.  The date of the hearing, if the applicant appeared, if the applicant was accompanied by counsel, and, if so, the latter's identity, and whether the nature and purpose of the hearing were explained to, and understood by, the applicant.  **(T-0)**

29.3.2.9.2.  Any documents, statements, and other material received during the investigation. **(T-0)**

29.3.2.9.3.  Summaries of witness testimonies or a verbatim record of the testimonies, if there is one.  **(T-0)**

29.3.2.9.4.  A statement of the investigating officer's conclusions as to the underlying basis of the applicant's conscientious objection and the sincerity of the applicant's beliefs, including the reasons for such conclusions.  **(T-0)**

29.3.2.9.5.  The investigating officer's recommendations for disposition of the case, including reasons for the recommendations.  Limit the actions recommended to:

29.3.2.9.5.1.  Denial of any classification as a conscientious objector.  **(T-0)**

29.3.2.9.5.2.  Classification as a conscientious objector and assignment to noncombatant duties (1-A-O).  **(T-0)**

29.3.2.9.5.3.  Classification as a conscientious objector and discharge (1-O).  **(T-0)**

29.3.2.9.5.4.  Only address what the applicant is requesting (1-O or 1-A-O).  **(T-0)** For example, if the applicant is requesting discharge (1-O), do not initiate an opinion on the possibility of the applicant being retained in the Air Force or Space Force in a noncombatant status (1-A-O).

29.3.2.10.  The final record consists of:

29.3.2.10.1.  The investigating officer's report, along with the member's application. **(T-0)**

29.3.2.10.2.  All interviews with chaplains and mental health professionals.  **(T-0)**

29.3.2.10.3.  Evidence from the investigating officer's hearing.  **(T-0)**

29.3.2.10.4.  The commander's memorandum of appointment of the investigating officer.  **(T-1)**

29.3.2.10.5.  Any other items submitted by the applicant in support of applicant's case. **(T-0)**

29.3.2.11.  The investigating officer will base conclusions and recommended disposition on the entire record and not merely on the evidence produced at the hearings.  **(T-0)**

29.3.2.12.  The investigating officer must furnish a copy of the record to the applicant when the investigating officer forwards it to the servicing MPF and informs the applicant of the right to submit a rebuttal within 15 calendar days after receipt of a copy of the record.  **(T-0)** The case file must include a statement by the investigating officer, or a copy of a receipt from the applicant, showing the date on which the copy of the record was delivered to the applicant. **(T-0)**

29.3.2.13.  If the applicant submits a rebuttal, the rebuttal must be included in the record. **(T-1)**

**29.4.  Guidelines for Approving or Disapproving Applications.**

29.4.1.  Final Decision Authorities.

29.4.1.1.  SecAF is the final decision authority for all applicants regarding conscientious objector status.

29.4.1.2.  Decision authorities do not grant noncombatant status (1-A-O) as a compromise or as an attempt to influence an applicant requesting discharge through claiming conscientious objector (1-O) status.

29.4.2.  Justification for Approval.

29.4.2.1.  To approve a conscientious objection (1-O) classification, the reviewing authorities must find that an applicant's objection is founded on religious training or belief to oppose participation in war in any form and that the applicant holds these beliefs with the strength of traditional religious convictions.  **(T-1)**

29.4.2.2.  To approve an assignment to noncombatant training and service based on conscientious objection (1-A-O), the reviewing authorities must find that an applicant's personal beliefs are purely moral or ethical in source or content, and occupy to the service member a place parallel to that filled by more traditional religious convictions to object to participation as a combatant in war in any form; but whose convictions are such as to permit military service in a non-combatant status.  **(T-1)**

29.4.2.3.  For either classification, the applicant must show that these moral and ethical convictions; (1) have directed the applicant's life in the way traditional religious convictions of equal strength, depth, and duration have directed the lives of those whose beliefs are clearly found in traditional religious convictions and (2) are the primary controlling force in the applicant's life.  **(T-0)**

29.4.2.4.  A primary factor is the sincerity with which the applicant holds the belief. **(T-0)** Exercise great care in determining whether the applicant honestly and genuinely holds the asserted beliefs. **(T-0)**

29.4.2.4.1.  Determine sincerity by impartially evaluating the applicant's thinking and lifestyle in its totality, past and present.  When evaluating the applicant's sincerity, it is appropriate to consider the stated opinions of individuals who interviewed the applicant as well.

29.4.2.4.2.  Information the applicant presents must clearly establish that expediency or avoidance of military service is not the basis of the claim.  **(T-0)**

29.4.2.5.  In evaluating applications, carefully examine and weigh the conduct of applicants, in particular their outward manifestation of their beliefs.

29.4.2.6.  Consider the following relevant factors:

29.4.2.6.1.  Training in the home and place of worship.

29.4.2.6.2.  General demeanor and pattern of conduct.

29.4.2.6.3.  Participation in religious activities or other belief system activities.

29.4.2.6.4.  Whether the applicant gained ethical or moral convictions through training, study, contemplation, or other activity comparable in rigor and dedication to formulating traditional religious convictions.

29.4.2.6.5.  Credibility of the applicant.

29.4.2.6.6.  Credibility of persons supporting the claim.

29.4.2.7.  Particular care must be exercised not to deny the existence of authentic beliefs simply because those beliefs are incompatible with the reviewing authority's belief system. **(T-0)**

29.4.2.7.1.  It is not necessary that an applicant belong to a religious organization or adhere to particular theological tenets for the USAF or USSF to grant separation or assignment to noncombatant training and service.

29.4.2.7.2.  The applicant's affiliation with a religious organization or other group that advocates conscientious objection as a tenet of its creed is not necessarily conclusive of an applicant's position or belief.

29.4.2.7.3.  Conversely, if an applicant is affiliated with a religious organization or group that does not teach conscientious objection such affiliation does not necessarily rule out an applicant's adherence to conscientious objection beliefs.

29.4.2.8.  Where an applicant is or has been a member of a religious organization or tradition and where applicant's claim of conscientious objection is related to the membership and the teachings of the church, religious organization, or religious sect, as well as the applicant's religious activity may be considered.

29.4.2.8.1.  However, the fact that the applicant may disagree with, or not subscribe to, some of the tenets of applicant's church does not necessarily discredit applicant's claim.

29.4.2.8.2.  The personal convictions of each member are controlling so long as they derive from moral, ethical, or religious beliefs.

29.4.2.9.  Do not deny an applicant who is otherwise eligible for conscientious objector status simply because conscientious objection beliefs influence the applicant's views on domestic or foreign policy.  **(T-0)** The task is to decide whether the applicant sincerely holds the beliefs, and whether they govern the applicant's actions in both word and deed.

**29.5.  Final Disposition.**

29.5.1.  Discharging the Member.  Members determined to be conscientious objectors (1-O or 1-A-O where further service is not desired by the USAF or USSF) will be processed for discharge IAW this publication. **(T-1)** This is a convenience of the government discharge (enlisted members) and a request to resign for the convenience of the government (officer members.).  SecAF's decision to approve 1-O classification will be construed as the direction to separate the member. **(T-0)** SAFPC's decision to approve a 1-A-O classification must be accompanied by a direction to either assign the member to noncombat duty or discharge the member. **(T-0)** The USAF or USSF goal is to discharge conscientious objectors (1-O or 1-A-O where further service is not desired by the USAF or USSF) within 10 duty days of the approval of the member's application.  Pending separation:

29.5.1.1.  The applicant continues to perform duties that conflict as little as possible with professed beliefs, conform to the normal requirements of military service, and satisfactorily perform assigned duties.

29.5.1.2.  Disciplinary authorities handle violations of the UCMJ by these members as in any other situation.

29.5.2.  Noncombatant Status (1-A-O).

29.5.2.1.  When applicant is granted noncombatant status the applicant is either:

29.5.2.1.1.  Assigned to noncombatant duty, or

29.5.2.1.2.  Discharged from military service IAW USAF or USSF policy.

29.5.2.2.  Noncombatant duty will only be performed for the remainder of the TOE (for enlisted) or the remainder of the furthest ADSC or reserve service commitment date at the time the conscientious objector application is submitted (for officers). **(T-1)** Enlisted members with an unspecified DOS will be allowed to serve until the expiration of the furthest remaining ADSC or reserve service commitment at the time the conscientious objector application is submitted. **(T-1)** If no remaining ADSC or reserve service commitment exist at the time of application, the enlisted member may serve a maximum of 3 years from the date of approval for non-combatant duties. **(T-1)** AFPC/DPMST or ARPC/DPTTS updates the DOS and members separate as a conscientious objector upon completion of their TOE or ADSC or reserve service commitment.  Approved conscientious objector noncombatants will not be allowed to extend their term of service or accumulate additional ADSCs or reserve service commitments past their established DOS.  **(T-0)**

29.5.2.3.  Assignment Limitation.  Upon approval of individuals for noncombatant service, AFPC/DPMST or ARPC/DPTTS will ensure that all appropriate assignment limitation and/or availability codes are updated into the MilPDS. **(T-0)**

29.5.2.4.  If the approved conscientious objector noncombatant is serving in an overseas location, the member may be reassigned to a location in the CONUS to serve-out the remaining TOE or ADSC to perform noncombatant duties until separation from the service. The determination for assignment actions will be made by AFPC/DP3AM. **(T-0)**

29.5.2.5.  Conscientious objectors assigned to noncombatant duties must conform to the normal requirements of military service and satisfactorily perform their assigned duties. **(T-0)**

29.5.2.6.  Disciplinary authorities handle misconduct or failure to meet standards by these members as in any other situation.

29.5.3.  Disapproved Applicant.

29.5.3.1.  Members assigned to normal military duties because of disapproval of their application must conform to the normal requirements of military service and satisfactorily perform their assigned duties.  **(T-0)**

29.5.3.2.  Disciplinary authorities handle misconduct or failure to meet standards by these members as in any other situation.

29.5.3.3.  The applicant is entitled to know why the USAF or USSF rejected the applicant's conscientious objector request.  The rationale behind a conscientious objector rejection must be part of the record.  **(T-0)**

29.5.4. Notifying Selective Service When a Conscientious Objector Member Has Not Completed 180 Days of Active Duty.  During conscription, discharge of bona fide conscientious objectors (1-O classification or 1-A-O, with directed discharge IAW **paragraph 29.5.1**) with less than 180 days of service is early enough to permit them to serve their remaining service time in the civilian work program administered by Selective Service System.

29.5.4.1.  The FSS or Career Development Element of the MPF promptly notifies the Selective Service System of the date of discharge from military service and of the fact that the individual has not completed 180 days of active duty.  **(T-0)**

29.5.4.2.  The FSS or Career Development Element of the MPF prepares the discharge notification for the immediate commander's signature and sends it to the Director of the Selective Service System, National Headquarters, Selective Service System, Washington DC 20435.  **(T-0)**


ALEX WAGNER, SES
Assistant Secretary of the Air Force
(Manpower and Reserve Affairs)

**Attachment 1**

**GLOSSARY OF REFERENCES AND SUPPORTING INFORMATION**

*References*

Executive Order 9397, *Numbering System for Federal Accounts Relating to Individual Persons*

Public Law 103-337, section 1630(c) (3), October 5, 1994

Rules for Courts-Martial (RCM) 1003(d) (3)

5 USC, Chapter 83, Subchapter II, *Retirement: Forfeiture of Annuities and Retired Pay*

5 USC § 552a, *Records Maintained on Individuals*

5 USC § 8319, *Removal of Members of the Uniformed Services from Rolls; Restoration; Reappointment*

5 USC § 9101, *Access to Criminal History Records for National Security and Other Purposes*

8 USC § 1440, *Naturalization Through Active duty Service in the Armed Forces during World War I, World War II, Korean Hostilities, Vietnam Hostilities, or Other Periods of Military Hostilities*

8 USC § 1481, *Loss of Nationality by Native-born or Naturalized Citizen; Voluntary Action; Burden of Proof; Presumptions*

10 USC Chapter 47, *Uniform Code of Military Justice*

10 USC Chapter 61, *Retirement or Separation for Physical Disability*

10 USC Chapter 1221, *Separation*

10 USC § 123, *Authority to Suspend Officer Personnel Laws During War or National Emergency*

10 USC § 261, *During War or Threat to National Security*

10 USC § 504, *Persons Not Qualified*

10 USC § 505, *Regular Components: Qualifications, Term, Grade*

10 USC § 516, *Effect Upon Enlisted Status of Acceptance of Appointment as Cadet or Midshipman*

10 USC § 611, *Convening of selection boards*

10 USC § 620, *Active duty Lists*

10 USC § 621, *Competitive categories for promotion*

10 USC § 630, *Discharge of Commissioned Officers With Less Than Six Years Active Commissioned Service or Found Not Qualified for Promotion for First Lieutenant or Lieutenant (Junior Grade)*

10 USC § 632, *Effect of Failure of Selection for Promotion: Captains and Majors of the Army, Air Force, and Marine Corps and Lieutenants and Lieutenant Commanders of the Navy*

10 USC § 640, *Deferment of Retirement or Separation for Medical Reasons*

10 USC § 641, *Applicability of Chapter*

10 USC § 651, *Members: Required Service*

10 USC § 802, Art. 2, *Persons Subject to this Chapter*

10 USC § 831, Art. 31, *Compulsory Self-incrimination Prohibited*

10 USC § 920, *Art. 120. Rape and sexual assault generally*

10 USC § 937, Art. 137, *Articles to be Explained*

10 USC § 972, *Members: Effect of Time Lost*

10 USC § 1060, *Military Service of Retired Members with Newly Democratic Nations:  Consent of Congress*

10 USC § 1161, *Commissioned Officers: Limitations on Dismissal*

10 USC § 1168, *Discharge or Release from Active Duty: Limitations*

10 USC § 1169, *Regular Enlisted Members:  Limitations on Discharge*

10 USC § 1171, *Regular Enlisted Members:  Early Discharge*

10 USC § 1174, *Separation Pay Upon Involuntary Discharge or Release from Active Duty*

10 USC § 1176, *Enlisted Members:  Retention after Completion of 18 or More, but Less Than 20, Years of Service*

10 USC § 1182, *Boards of inquiry*

10 USC § 1185, *Rights and Procedures*

10 USC § 1187, *Officers eligible to serve on boards*

10 USC § 1207, *Disability from intentional misconduct or willful neglect: separation*

10 USC § 1251, *Age 62: Regular Commissioned Officers in Grades below General and Flag Officer Grades; Exceptions*

10 USC § 1370, *Regular Commissioned Officers*

10 USC § 2005, *Advanced Education Assistance: Active Duty Agreement; Reimbursement Requirements*

10 USC § 2104, *Advanced Training; Eligibility For*

10 USC § 2107, *Financial Assistance Program for Specially Selected Members*

10 USC § 2123, *Members of the Program:  Active Duty Obligation; Failure to Complete Training; Release from Program*

10 USC § 7038, *Office of Army Reserve:  Appointment of Chief*

10 USC § 8083, *Office of Navy Reserve: Appointment of Chief*

10 USC § 9013, *Secretary of the Air Force*

10 USC § 9038, *Office of Air Force Reserve: Appointment of Chief*

10 USC § 9063, *Designation: Officers to Perform Certain Professional Functions*

10 USC § 9138, *Regular Air Force: Reenlistment After Service as an Officer*

10 USC § 9311, *Twenty Years or More: Regular or Reserve Commissioned Officers*

10 USC § 9314, *Twenty to Thirty Years: Enlisted Members*

10 USC § 10147, *Ready Reserve: Training Requirements*

10 USC § 10211, *Policies and Regulations: Participation of Reserve Officers in Preparation and Administration*

10 USC § 10301, *Reserve Forces Policy Board*

10 USC § 10305, *Air Force Reserve Forces Policy Committee*

10 USC § 10502, *Chief of the National Guard Bureau: Appointment; Adviser on National Guard Matters; Grade; Succession*

10 USC § 10505, *Vice Chief of the National Guard Bureau*

10 USC § 10507, *National Guard Bureau: Assignment of Officers of Regular or Reserve Components*

10 USC § 12301, *Reserve Components Generally*

10 USC § 12305, *Authority of President to Suspend Certain Laws Relating to Promotion, Retirement, and Separation*

10 USC § 12308, *Retention After Becoming Qualified for Retired Pay*

10 USC § 12402, *Army and Air National Guard of the United States: Commissioned Officers; Duty in National Guard Bureau*

10 USC § 12646, *Commissioned Officers: Retention of After completing 18 or More, but Less Than 20, Years of Service*

10 USC § 12683, *Reserve Officers: Limitation on Involuntary Separation*

10 USC § 12684, *Reserves: Separation for Absence Without Authority or Sentence to Imprisonment*

10 USC § 12685, *Reserves Separated for Cause:  Character of Discharge*

10 USC § 12686, *Reserves on Active Duty Within Two Years of Retirement Eligibility: Limitation on Release from Active Duty*

10 USC § 12731, *Age and Service Requirements*

10 USC § 12732, *Entitlement to Retired Pay: Computation of Years of Service*

10 USC § 14005, *Competitive categories*

10 USC § 14101, *Convening of Selection Boards*

10 USC § 14311, *Delay of Promotion:  Involuntary*

10 USC § 14504, *Effect of Failure of Selection for Promotion:  Reserve First Lieutenant of the Army, Air Force, and Marine Corps and Reserve Lieutenants (Junior Grade) of the Navy*

10 USC § 14505, *Effect of Failure of Selection for Promotion:  Reserve Captains of the Army, Air Force, and Marine Corps and Reserve Lieutenants of the Navy*

10 USC § 14506, *Effect of Failure of Selection for Promotion:  Reserve Majors of the Army, Air Force, and Marine Corps and Reserve Lieutenants Commanders of the Navy*

10 USC § 14507, *Removal from the reserve active-status list for years of service: reserve lieutenant colonels and colonels of the Army, Air Force, and Marine Corps and reserve commanders and captains of the Navy*

10 USC § 14508, *Removal from the reserve active-status list for years of service: reserve general and flag officers*

10 USC § 14519, *Deferment of Retirement or Separation for Medical Reasons*

10 USC § 14701, *Selection of Officers for Continuation on the Reserve Active-status List*

10 USC § 14702, *Retention on Reserve Active-status List of Certain Officers in the Grade of Major, Lieutenant Colonel, Colonel, or Brigadier General*

10 USC § 14703, *Authority to Retain Chaplains and Officers in Medical Specialties until Specified Age*

10 USC § 14706, *Computation of Total Years of Service*

10 USC § 14904, *Rights and Procedures*

10 USC § 14905, *Officer Considered for Removal: Retirement or Discharge*

10 USC § 14907(b), Army *National Guard and Air National Guard of the United States: Discharge and withdrawal of Federal Recognition of Officers Absent Without Leave, Discharge from Reserve Appointment*

18 USC § 287, *False, Fictitious or Fraudulent Claims*

18 USC § 1001, *Statements or Entries Generally*

21 USC § 812, *Schedules of Controlled Substances*

32 USC § 305, *Federal Recognition of Commissioned Officers: Persons Eligible*

32 USC § 308, *Federal Recognition of Officers: Temporary Recognition*

32 USC § 313(b), *Appointments and Enlistments: Age Limitations*

32 USC § 322, *Discharge of Enlisted Members*

32 USC § 323, *Withdrawal of Federal Recognition*

32 USC § 502, *Required Drills and Field Exercises*

32 USC § 708, *Property and Fiscal Officers*

37 USC*, Pay and Allowances of the Uniformed Services*

37 USC § 303a, *Special Pay: General Provisions*

37 USC § 303a (e), *Repayment of Unearned Portion of Bonuses and Other Benefits When Conditions of Payment not Met; Termination of Entitlement to Unpaid Amounts*

37 USC § 501, *Payments for Unused Accrued Leave*

38 USC*, Veterans' Benefits*

38 USC, Chapter 30, *All-Volunteer Force Educational Assistance Program*

38 USC § 101, *Definitions*

38 USC § 3103, *Periods of eligibility*

38 USC § 5303, *Certain Bars to Benefits*

38 USC § 5303A, *Minimum Active duty Service Requirement*

50 USC § 3806(j), *Deferments and Exemptions from Training and Service*

DoDD 5124.02, *Under Secretary of Defense for Personnel and Readiness (USD(P&R))*

DoDI 1215.06, *Uniform Reserve, Training, and Retirement Categories for the Reserve Components*, 11 March 2014

DoDI 1215.08, *Senior Reserve Officers' Training Corps (ROTC) Programs*, 19 January 2017

DoDI 1300.04, *Inter-Service and Inter-Component Transfers of Service Members,* 25 July 2017

DoDI 1300.06, *Conscientious Objectors*, 12 July 2017

DoDI 1304.25, *Fulfilling the Military Service Obligation (MSO)*, 31 October 2013

DoDI 1304.28, *The Appointment and Service of Chaplains*, 12 May 2021

DoDI 1315.15, *Separation Policies for Survivorship*, 19 May 2017

DoDI 1320.14, *DoD Commissioned Officer Promotion Program Procedures,* 13 March 2019

DoDI 1322.22, *DoD Service Academies*, 16 Dec 2020

DoDI 1332.14, *Enlisted Administrative Separations*, 27 January 2014

DoDI 1332.18, *Disability Evaluation System (DES),* 5 August 2014

DoDI 1332.29, *Involuntary Separation Pay (Non-Disability)*, 3 March 2017

DoDI 1332.30, *Commissioned Officer Administrative Separations*, 11 May 2018

DoDI 5400.11, *Department of Defense Privacy and Civil Liberties Programs*, 29 January 2019

DoDI 6025.18, *Health Insurance Portability and Accountability Act (HIPPA) Privacy Rule Compliance in DoD Health Care Programs,* 13 March 2019

DoDI 6040.46, *The Separation History and Physical Examination (SHPE) for the DoD Separation Health Assessment (SHA) Program,* 14 April 2016

DoDI 6130.03, Volume 1, *Medical Standards for Military Service: Appointment, Enlistment, or Induction,* 6 May 2018

DoDI 1342.19, *Family Care Plans,* 7 May 2010

DoDI 6130.03, Volume 2, *Medical Standards for Military Service: Retention*, 4 September 2020

DoDM 5200.01, Volume 1, *Department of Defense Information Security Program: Overview, Classification, and Declassification,* 24 February 2012

**DAFI36-3211  24 JUNE 2022**                                                                                  **443**

DoDM 5200.01, Volume 1_AFMAN16-1404, Volume 1, *Information Security Program: Overview, Classification and Declassification*, 6 April 2022

DoDM 5200.02M_AFMAN 16-1405, *Air Force Personnel Security Program*, 1 August 2018

DoDM 5210.42_AFMAN 13-501, *Nuclear Weapons Personnel Reliability Program (PRP)*, 19 September 2018

DoD 7000.14-R, Department of Defense Financial Management Regulation, Volume 7A: *Military Pay Policy – Active Duty and Reserve Pay,* May 2020

Joint Travel Regulations (JTR), *Uniformed Service Members*, 1 October 2020

*Manual for Courts-Martial United States*, 2019

DAFPD 36-32, *Military Retirements and Separations,* 11 October 2022

DAFI 36-2110*, Total Force Assignments,* 2 August 2021

DAFI 36-2406, *Officer and Enlisted Evaluations Systems,* 14 November 2019

DAFI 36-2903, *Dress and Personal Appearance of United States Air Force and United States Space Force Personnel*, 7 February 2020

DAFI 36-3002, *Casualty Services*, 4 February 2021

DAFI 36-3003*, Military Leave Program,* 24 August 2020

DAFI 36-3009, *Military and Family Readiness Centers*, 4 November 2022

DAFI 36-3802, *Force Support Readiness Programs,* 9 January 2019

DAFI 51-101, *The Air Force Judge Advocate General's Corps (AFJAGC) Operations, Accessions, and Professional Development,* 29 November 2018

DAFI 51-201, *Administration of Military Justice*, 14 April 2022

DAFMAN 1-101, *Commander Directed Investigations,* 9 April 2021

DAFMAN 36-2602, *Active Duty Service Determination for Civilian or Contractual Groups,* 26 October 2020

DAFMAN 36-2905, *Department of the Air Force Physical Fitness Program*, 21 April 2022

DAFMAN 48-108, *Physical Evaluation Board Liaison Officer (PEBLO) Function: Pre-Disability Evaluations System (DES) and Medical Evaluation Board (MEB) Processing,* 5 August 2021

DAFMAN 48-123, *Medical Examinations and Standards*, 8 December 2020

DAFMAN 65-605, Volume 1, *Budget Guidance and Technical Procedures,* 31 March 2021

DAFMAN 90-161, *Publishing Processes and Procedures,* 15 April 2022

AFI 1-1, *Air Force Standards*, 7 August 2012

AFI 33-322, *Records Management and Information Governance Program*, 23 March 2020

DAFI 36-2008, *Voluntary Limited Period of Active Duty (VLPAD) for Air Reserve Component (ARC) Service Members and the Career Intermission Program,* 3 March 2023

DAFI 36-2023, *The Secretary of the Air Force Personnel Council (SAFPC),* 3 June 2022

DAFI 36-2501, *Officer Promotions and Selective Continuation,* 16 July 2004

DAFI 36-2502, *Enlisted Airman Promotion and Demotion Programs,* 16 April 2021

AFI 36-2504, *Officer Promotion, Continuation and Selective Early Removal in the Reserve of the Air Force,* 9 January 2003

DAFI 36-2603, *Air Force Board for Correction of Military Records (AFBCMR)*, 4 October 2022

AFI 36-2606, *Reenlistment and Extension of Enlistment in the United States Air Force,* 20 September 2019

DAFI 36-2608, *Military Personnel Records Systems,* 16 April 2021

AFI 36-2909, *Air Force Professional Relationships and Conduct*, 14 November 2019

AFI 36-2913, *Request for Approval of Foreign Government Employment of Air Force Members,* 1 July 2020

AFI 36-3202, *Certificate of Release or Discharge from Active Duty (DD Form 214/5 Series),* 24 June 2020

DAFI 36-3203, *Service Retirements,* 29 January 2021

AFI 36-3212, *Physical Evaluation for Retention, Retirement, and Separation*, 15 July 2019

AFI 44-121, *Alcohol and Drug Abuse Prevention and Treatment (ADAPT) Program*, 18 July 2018

AFI 44-172, *Mental Health*, 13 November 2015

AFI 44-178, *Human Immunodeficiency Virus Program*, 4 March 2014

AFI 51-509, *Appointment to and Assumption of Command,* 14 January 2019

AFJI 51-706, *Status of Forces Policies, Procedures, and Information,* 15 December 1989

AFI 71-101, Volume 1, *Criminal Investigations Program*, 1 July 2019

AFI 90-301, *Inspector General Complaints Resolution*, 28 December 2018

DAFI 90-6001, *Sexual Assault Prevention and Response (SAPR) Program*, 15 July 2020

AFMAN 11-402, *Aviation and Parachutist Service,* 24 January 2019

DAFMAN 36-2102, *Base-Level Relocation Procedures,* 16 December 2020

DAFMAN 36-2032, *Military Recruiting and Accessions,* 27 September 2019

AFMAN 36-2100, *Military Utilization and Classification,* 7 April 2021

AFMAN 36-2136, *Reserve Personnel Participation,* 6 September 2019

DAFMAN 36-2604, *Service Dates and Dates of Rank,* 7 October 2022

AFMAN 41-210, *Tricare Operations and Patient Administration,* 10 September 2019

DAFMAN 51-507, *Enlisted Discharge Boards and Boards of Officers,* 24 January 2019

ANGI 36-2651, *Air National Guard Selective Retention Review Boards*, 8 May 2023

ANGI 36-3201, *Air National Guard Separations Documents,* 3 May 2021

AFPCI 36-112, *Line Officer Initial Skill Training Reclassification Procedures,* 31 January 2019

AFRCI 36-201, *Air Reserve Technician (ART) Officer-Extension to Mandatory Separation Date (MSD),* 6 August 2015

HAFMD1-24_Addendum-B, *Re-Delegation of Authority for Individual Personnel Actions* *HAFMD 1-24, Assistant Secretary of the Air Force (Manpower and Reserve Affairs),* 6 November 2019

HAFMD1-24_Addendum-C, *Re-Delegation of Direction and Authority to Act on Certain Applications and Complaints HAFMD 1-24, Assistant Secretary of the Air Force (Manpower and Reserve Affairs)*, 6 November 2019

JP 1-02, *Department of Defense Dictionary of Military and Associated Terms,* 12 April 2001

*Diagnostic and Statistical Manual of Mental Disorders*, current edition

*Total Force Personnel Services Delivery Guides*, 30 November 2015

**Prescribed Forms**

DAF Form 31, *Airman's request for Early Separation/Separation Based on Change in Service Obligation*

DAF Form 100, *Request and Authorization for Separation*

DAF Form 780, *Officer Separation Actions*

DAF Form 2631, *Palace Chase Statement of Understanding/Contract*

**Adopted Forms**

AF Form 77, *Letter of Evaluation*

AF Form 131, *Application for Transfer to the Retired Reserve*

AF Form 422, *Notification of Air Force Member's Qualification Status*

AF Form 469, *Duty Limiting Condition Report*

DAF Form 847, *Recommendation for Change of Publication*

AF Form 1288, *Application for Ready Reserve Assignment*

AF Form 1411, *Extension of Enlistment in the Air Force*

AF Form 2030, *USAF Drug and Alcohol Abuse Certificate*

AF Form 2098, *Duty Status Change*

AF Form 3010, *USAF Statement of Understanding for Dependent Care Responsibility*

NGB Form 22, *Report of Separation and Record of Service*

DD Form 4, *Enlistment/Reenlistment Document Armed Forces of the United States*

DD Form 139, *Pay Adjustment Authorization*

DD Form 149, *Application for Correction of Military Record Under the Provisions of Title 10, U.S. Code Section 1552*

DD Form 214, *Certificate of Uniformed Service*

DD Form 256, *Honorable Discharge Certificate*

DD Form 368*, Request for Conditional Release*

DD Form 458, *Charge Sheet*

DD Form 553, *Deserter/Absentee Wanted by the Armed Forces*

DD Form 616, *Report of Return of Absentee*

DD Form 2807-1, *Report of Medical History*

DD Form 2808, *Report of Medical Examination*

**Abbreviations and Acronyms**

**AAC**—Assignment Availability Code

**AD**—Active Duty

**ADAPT**—Alcohol and Drug Abuse Prevention and Treatment (ADAPT) Program

**ADSC**—Active Duty Service Commitment

**AF**—Air Force

**AFB**—Air Force Base

**AFBCMR**—Air Force Board for Correction of Military Records

**AFI**—Air Force Instruction

**AFMAN**—Air Force Manual

**AFPB**—Air Force Personnel Board

**AFPC**—Air Force Personnel Center

**AFPD**—Air Force Policy Directive

**AFR**—Air Force Reserve

**AFR BPO**—Air Force Reserve Business Process Owner

**AFROTC**—Air Force Reserve Officer Training Corps

**AFSC**—Air Force Specialty Code

**AGR**—Active Guard and Reserve

**ALC**—Assignment Limitation Code

**ANG**—Air National Guard

**ANGI**—Air National Guard Instruction

**ANGRC**—Air National Guard Readiness Center

**ANGUS**—Air National Guard of the United States

**ARC**—Air Reserve Component

**ARMS**—Automated Records Management System

**ART**—Air Reserve Technician

**ASAP**—As Soon As Possible

**ASD**—Assignment Selection Date

**AWOL**—Absent Without Leave

**BOI**—Board of Inquiry

**BSA**—Base Separation Authority

**CC**—Commander

**CD**—Vice Commander

**CG**—Commanding General

**CIP**—Career Intermission Program

**CNGB**—Chief, Air National Guard Bureau

**CONUS**—Continental United States

**CSP**—Career Status Program

**DAF**—Department of the Air Force

**DAFI**—Department of the Air Force Instruction

**DAFMAN**—Department of the Air Force Manual

**DAFPD**—Department of the Air Force Policy Directive

**DD Form**—Department of Defense Form

**DEROS**—Date Eligible for Return from Overseas

**DES**—Disability Evaluation System

**DFAS**—Defense Finance and Accounting Service

**DOD**—Department of Defense

**DoDI**—Department of Defense Instruction

**DoDM**—Department of Defense Manual

**DOS**—Date of Separation

**DRU**—Direct Reporting Unit

**DSG**—Drill Status Guardsman

**DSN**—Defense Switching Network

**EAD**—Extended Active Duty

**ETP**—Exception to Policy

**ETS**—Expiration of Term of Service

**FLDCOM**—Field Command (USSF)

**FOA**—Field Operating Agency

**FSS**—Force Support Squadron

**GCMCA**—General Court-Martial Convening Authority

**GSU**—Geographically Separated Unit

**GO**—General Officer

**HAFMD**—Headquarters Air Force Mission Directive

**HCM**—Human Capital Management

**HIV**—Human Immunodeficiency Virus

**HQ**—Headquarters

**HQ AFRC**—Headquarters Air Force Reserve Command

**HQ ARPC**—Headquarters Air Reserve Personnel Center

**HQ RIO**—Headquarters Readiness and Integration Office

**HYT**—High Year of Tenure

**IC**—Interim Change

**IMA**—Individual Mobilization Augmentee

**IR**—Individual Reservist

**IRR**—Individual Ready Reserve

**ISLRS**—Inactive Status List Reserve Section

**ISR**—In-Service Recruiter

**JA**—Judge Advocate

**MAJCOM**—Major Command (USAF)

**MEB**—Medical Evaluation Board

**MilPDS**—Military Personnel Data System

**MPF**—Military Personnel Flight

**MSD**—Mandatory Separation Date

**MSO**—Military Service Obligation

**MT**—Military Technician

**MTF**—Military Treatment Facility

**NAF**—Numbered Air Force

**NGB**—National Guard Bureau

**NLT**—No Later Than

**NOK**—Next of Kin

**OCONUS**—Outside the Continental United States

) **OGD**—Officer Grade Determination

**OPR**—Office of Primary Responsibility

**OSD**—Office of the Secretary of Defense

**OSI**—Office of Special Investigations

**PCS**—Permanent Change of Station

**PEB**—Physical Evaluation Board

**PIRR**—Participating Individual Ready Reserve

**POC**—Point of Contact

**PTSD**—Post-Traumatic Stress Disorder

**RASL**—Reserve Active Status List

**RegAF**—Regular Air Force

**ROBP**—Report of Board Proceeding

**SAFPC**—Secretary of the Air Force Personnel Council

**SAPR**—Sexual Assault Prevention and Response

**SCA**—Show Cause Authority

**SCNM**—Show Cause Notification Memorandum

**SecAF**—Secretary of the Air Force

**SecDef**—Secretary of Defense

**SecState**—Secretary of State

**SFSC**—Space Force Specialty Code

**SG**—Surgeon General

**SHA**—Separation Health Assessment

**SHPE**—Separation History and Physical Examination

**SJA**—Staff Judge Advocate

**SPCMCA**—Special Court-Martial Convening Authority

**TFCSD**—Total Federal Commissioned Service Date

**TAFMS**—Total Active Federal Military Service

**TAG**—The Adjutant General

**TBI**—Traumatic Brain Injury

**TDY**—Temporary Duty

**TF**—Total Force

**TFSC**—Total Force Service Center

**TMO**—Traffic Management Organization

**TOE**—Term of Enlistment

**TOR**—Tender of Resignation

**TR**—Traditional Reservist

**UCMJ**—Uniform Code of Military Justice

**UIF**—Unfavorable Information File

**URC**—Unit Reserve Coordinator

**USAF**—United States Air Force

**USAFA**—United States Air Force Academy

**USC**—United States Code

**USSF**—United States Space Force

**UTA**—Unit Training Assembly

**UOTHC**—Under Other Than Honorable Conditions

**VA**—Department of Veterans Affairs

**VLPAD**—Voluntary Limited Period of Active Duty program

**WG/CC**—Wing Commander

*Office Symbols*

**AF/A1**—Deputy Chief of Staff for Manpower, Personnel, and Services

**AF/A1LG**—Air Force General Officer Management Office

**AF/A1LO**—Air Force Colonel Management Office

**AF/A1P**—Air Force Military Force Management Policy Directorate

**AF/A1PT**—Air Force Accessions and Training Management Division

**AF/JAJ**—Air Force Military Justice and Discipline Directorate

**AF/RE**—Chief of Air Force Reserve

**AF/REG**—Air Force Reserve Senior Leader Management Office

**AF/REP**—Air Force Reserve Directorate of Personnel

**AFPC/DP3SA**—Airman Support and Transition Branch

**AFPC/DPMNP**—AFPC Medical Standards Branch

**DAFI36-3211  24 JUNE 2022**                                                                                451

**AFPC/DPMS**—AFPC Sustainment and Transition Operations Division

**AFPC/DPMSSR**—AFPC Military Transition Operations Branch (Retirements and Separations)

**AFRC/A1K**—Air Force Reserve Command Personnel Division

**AFRC/DPT**—Air Force Reserve Command Directorate of Total Force Services

**AFRC/JAM**—Air Force Reserve Command Military Justice/Adverse Actions Division

**AFRC/RS**—Air Force Reserve Center Recruiting Service

**ARPC/DPPRS**—Air Reserve Personnel Center Separations

**ARPC/DPT**—Air Reserve Personnel Center Directorate of Total Force Services

**DRU/CC**—Direct Reporting Unit Commander

**FLDCOM/CC**—Field Command Commander

**HQ AFRC/CC**—Headquarters Air Force Reserve Command Commander

**MAJCOM/CC**—Major Command Commander

**NGB/A1**—Air National Guard Bureau Directorate of Manpower, Personnel, Recruiting, and Services

**NGB/A1PP**—Air National Guard Bureau Military Force Policy Division

**NGB/A1Y**—Air National Guard Bureau Recruiting and Retention Operations

**NGB/CF**—Director of the Air National Guard

**NGB/HC**—Air National Guard Bureau Chief of Chaplains

**NGB/JA**—Air National Guard Bureau Legal Office

**NGB/SG**—Air National Guard Bureau Surgeon General

**SAF/MR**—Assistant Secretary of the Air Force (Manpower and Reserve Affairs)

**SF/S1**—Deputy Chief of Space Operations for Human Capital

**SF/S1LG**—Space Force General Officer Management Office

**SF/S1LO**—Space Force Colonel Management Office

*Terms*

**Absent Without Authority**—Consider member absent without authority if the member is voluntarily absent without leave for more than 24 hours, or was voluntarily absent from a scheduled duty or formation, or was under restriction or arrest. Scheduled duty or formation means doing a specified task at a specified time and place for a specified purpose. It is not the same as regularly scheduled duty. Consider the member absent without authority if not excused and absent from duty in civil confinement for more than 24 hours. The term absent without authority is the same as unauthorized absence.

**Active Duty (AD)**—Full-time duty in the active military services of the United States. This includes members of the Reserve Components serving on active duty or full-time training duty. This does not apply to full-time Air National Guard duty.

**Active Duty for Training**—A tour of active duty that is used for training members of the Reserve components to provide trained units and qualified persons to fill the needs of the Armed Forces in time of war or national emergency and such other times as the national security requires.  The member is under orders that provide for return to non-active status when the period of active duty for training is completed.  It includes annual training, special tours of active duty for training, school tours, and the initial duty for training performed by non-prior service enlistees.

**Active Duty List**—A single list for the Air Force, required by Title 10 United States Code Section 620, that contains the names of all Regular and Reserve officers on active duty except those described in 10 USC § 641 (10 USC § 641 includes Air Force Reserve and ANG officers serving on active duty under Title 10 United States Code Sections 7038, 8083, 5144, 9038 10211, 10301 to 10305, 10502, 10505 to 10507, or 12402 of this title or Title 32 United States Code Section 708. Reserve and ANG officers recalled or mobilized normally are not placed on the active duty list. Retired officers on active duty also are excluded.)

**Active Duty Service Commitment (ADSC)**—A period of active duty a member will serve before becoming eligible for voluntary separation or retirement (includes minimum term of service).

**Active Force**—Comprised of the Regular Air Force and reserve members serving on extended active duty.

**Active Guard and Reserve**—Air National Guard and reserve members who are on voluntary active duty providing full-time support to National Guard, reserve, and active component organizations for the purpose of organizing, administering, recruiting, instructing, or training the reserve components.

**Active Military Service**—See 38 USC § 101, *Definitions*.

**Air Force Reserve Business Process Owner (BPO)**—The HCM professional responsible for serving as the Process Coach, developing process maps, developing and monitoring metrics, performing gap analyses and process improvement, submitting system change requests, developing Knowledge Artifacts for production managers, customers, and force support units, developing in-house training, interpreting policy for headquarters, responding to field policy interpretation requests, engaging in policy changes, and serving as points of contact for specific processes and services provided by the HCM enterprise.

**Active Status**—(4) The term "active status" means the status of a member of a reserve component who is not in the inactive Army National Guard or inactive Air National Guard, on an inactive status list, or in the Retired Reserve.

**Administrative Discharge Board**—A board appointed to render findings on a case and to recommend retention in the Air Force or discharge specifying the reason for separation and how the respondent's service should be characterized.

**Administrative Separation**—Discharge or release in the manner prescribed by the SecAF or by law.  Excludes discharge by sentence of court-martial.

**Air Force Reserve (AFR)**—The Air Force Reserve is a reserve component of the Air Force to provide a reserve for active duty.  It consists of the members of the officers section of the Air Force Reserve and the enlisted section of the Air Force Reserve.  It includes all Reserves of the Air Force who are not members of the Air National Guard of the United States.

**Air National Guard of the United States (ANGUS)**—A reserve component of the USAF consisting of all federally recognized units, organizations, and members of the ANG of the several states, the District of Columbia, Guam, the U.S. Virgin Islands, and Commonwealth of Puerto Rico, who, in addition to their status as ANGUS members, are Reserve of the Air Force in the same grades in which enlisted or appointed and federally recognized. Membership in the ANGUS is acquired by the enlistment or appointment in the federally recognized ANG of a state and concurrent enlistment or appointment as a Reserve of the Air Force in the same grade.

**Alcohol Abuse**—See AFI 44-121.

**Application for Separation**—Includes a tender of resignation, a request for release from EAD, or a request for discharge.

**Application**—A member's request for separation.

**As Soon as Possible**—Separation effective at the earliest possible date but no later than 10 (20 if serving overseas) calendar days after MPFs receive approval notice and separation instructions from AFPC Separations.  **Exception**:  The DOS is effective 30 calendar days from the date of approval when receiving the approval notice within 15 calendar days before, or any time after, the requested DOS.  This applies to officers resigning or requesting release under normal conditions.

**Approval Authority**—An officer who is authorized to approve or disapprove the separation action, except when action by the Special Court- Martial Convening Authority (SPCMCA) or GCMCA is specifically required, the commander exercising separation authority may designate, in writing, a staff officer to act on the matter.  The authority may not be further delegated.

**Assignment**—The permanent change of a member's duty station from one location to another. Also refers to duties performed. (Used alternately with the term —reassignment).

**Base Separation Authority**—An Air Force official authorized to take final action with respect to a specified type of separation for enlisted members; typically, this is the wing commander or Senior Rater in the member's chain of command.

**Board of Inquiry (BOI)**—A board of officers convened to receive evidence, make findings on discharge cases, and give recommendations on whether the Air Force should retain an officer who is required to show cause for retention.

**Category A Reservists**—Traditional Reservist (TR).

**Category B Reservists**—Individual Mobilized Augmentee (IMA).

**Characterization of Service**—A determination reflecting a member`s military behavior and duty performance during a specified period of service.  Three service characterizations are authorized for administrative separation: honorable; general (Under Honorable Conditions); and Under Other Than Honorable Conditions.

**Commander**—A commissioned officer who, by virtue of rank and assignment, exercises command authority over a military organization or prescribed territorial area, which under pertinent official directives is recognized as a "command."  This designation is used in all Air Force units authorized to be led by a commander except the USAFA, which is commanded by a superintendent, and school or academic units, which may be commanded by commandants.

**Competitive Category—(also referred to as Developmental Category)**—A grouping of officers who compete among themselves for promotion.  The SecAF establishes categories, as

required, to manage the career development and promotion of certain groups of officers.  In relation to the requirements of these officer categories, their specialized education, training, or experience, and often relatively narrow career field utilization, make separate career management desirable. (References Title 10 United States Code Section 621, *Competitive categories for promotion* (Regular Air Force) and Title 10 United States Code Section 14005, *Competitive Categories* (USAFR), and DoDI 1320.14, *Commissioned Officer Promotion Program Procedures)*

**Competency Board**—A board consisting of at least three medical officers or physicians (including one psychiatrist) convened to determine whether a member is competent.

**Component**—All units, organizations, and members of the USAF, ANG and the AFR (see Title 10 United States Code Section 261).

**Conditional Waiver**—A statement initiated by a member giving up those rights associated with administrative discharge board proceedings contingent on receipt of a characterization of service higher than the least favorable characterization authorized.

**Conscientious Objection**—Opposition to participating in any form of war or the bearing of arms due to sincerely held morals, ethical or religious beliefs, or a combination of such beliefs. Unless otherwise specified, the term "conscientious objector" includes both Class 1-O and Class 1-A-O conscientious objectors.

**Conscientious Objector**—There are two types of conscientious objectors:

**Class 1-O**—A member who, by reason of conscientious objection, sincerely opposes participation in combatant and non-combatant military training and service in war in any form and for whom such beliefs play a significant role in the member's life.

**Class 1-A—O.**   A member who, by reason of conscientious objection, sincerely opposes participation only in combatant military training and service and for whom such beliefs play a significant role in the member's life.

**Constructive Notice**—Refers to an act amounting to notifying a member when the actual notice is impossible. Constructive delivery is a general term comprehending all those acts which, although not truly conferring a real possession on the member, have been held by construction of law equivalent to acts of real delivery.

**Convenes**—A BOI formally convenes when it meets with members, legal advisor, recorder, respondent, and respondent's counsel.

**Convening Authority**—Usually the Air Force commander exercising special court-martial jurisdiction (special court-martial convening authority).  May be the same as separation authority or the commander authorized to process the case except for final decision.  May be the Air Force commander exercising general court-martial jurisdiction (general court-martial convening authority) in some cases.  For actions involving HQ AFRC or ARPC managed reservists, the Commander is the convening authority.  For actions involving enlisted members of the ANG, this is TAG, for actions involving ANG officers (O-6 and below), this is the Commander, Air National Guard Readiness Center (ANGRC).

**Counsel**—Refers to military counsel or the civilian equivalent.

**Court-Martial Jurisdiction**—Commander's authority to convene courts-martial to try members assigned to their commands for administrative support or control; the sphere of authority within which such authority is exercised.

**Covered Periods**—These prohibitions begin on the date of first contact between a prospective member of the Armed Forces and a recruiter, through accession and initial skills training, and for 6 months after the trainee completes initial skills training or ending on the date on which the member physically arrives at that member's first duty assignment following completion of initial entry training, whichever is greater.

**Covered Programs**—Include Basic Military Training and Enlisted Initial Skills Training (a formal school course that results in an AFSC 3-skill level award).

**Creditable Service**—Military service that can be used in determining the disposition of a case, entitlement to benefits, etc.

**Critical Skills Retention Bonus**—A financial incentive paid to enlisted members and officers who reenlist or agree to continue serving on active duty for at least one additional year in a military skill designated as critical by the appropriate authority.

**Curtailment**—Termination of an OS tour before completion of the prescribed length, including any extensions (except cancelation of a voluntary extension). Terminal leave taken before DEROS is not a tour curtailment and is not a DEROS change. Ordinary leave begins and ends in the local area; therefore, it is not a DEROS change or curtailment.

**Date of Separation (DOS)**—A date established IAW law or policy for separation from active military service.  Separation is effective at 2400 hours on the DOS.

**Delta**—A Space Force unit composed normally of one primary mission group and the necessary supporting organizations, i.e., organizations designed to render supply, maintenance, hospitalization, and other services required by the primary mission groups.  Primary mission groups may be functional, such as combat, training, transport, or service.

**Demobilization**—The process necessary to release from active duty, or federal service, units and Reserve Component members who were ordered to active duty, or called to federal service.

**Designated Representative**—A generic term which describes the Next of Kin (NOK) or appointed guardian that acts for a member when the member is mentally incompetent or the physician determines that divulging information to the member would be harmful to the member's well-being.  The NOK or guardian has the same rights, privileges, and counseling benefits and, unless specifically prohibited, follows the same procedures as for the members being evaluated.

**Disability**—A physical or mental impairment that limits a person's movements, senses, or activities.  Any impairment due to disease or injury, regardless of degree, that reduces or prevents an individual's actual or presumed ability to engage in gainful employment or normal activity.  The term "disability" or "physical disability" includes mental disease, but not such inherent defects as behavioral disorders, adjustment disorders (except Chronic Adjustment Disorder), personality disorders, and primary mental deficiencies.  A medical impairment, mental disease, or physical defect standing alone does not constitute a disability.  To constitute a disability, the medical impairment, mental disease, or physical defect must be severe enough to interfere with the service member's ability to adequately perform the member's duties.

**Disability Evaluation System (DES)**—The DoD mechanism for determining return to duty, separation, or retirement of members because of disability (see 10 USC, Chapter 61), service members will proceed through one of two DES processes: the Legacy DES or the Integrated DES, which Service member may be expedited through either one if required.

**Discharge**—Complete severance from the active military service. The discharge includes a reason and characterization of service.

**Discharge Authority**—An official authorized to take final action with respect to specified types of discharges and entry level separations.

**Discharge for Cause**—Separations that are processed under **Part 3,Sections 18A** (substandard performance of duty) and **18B** (misconduct, moral or professional dereliction, or in the interest of national security).  Also, includes resignation instead of undergoing further administrative discharge proceedings and resignations for the good of the service (when the member's conduct renders the service member triable by court-martial).

**Drill Status Guardsman**—An ANG unit member who participates in regularly scheduled drills, traditionally 1 weekend per month and a 2-week annual training period. Member status can be verified through member's servicing Personnel office.  Also known as Traditional Guardsman.

**Drop from the Rolls**—An administrative action that may be taken in limited circumstances that terminates a commissioned officer's military status along with any rights, benefits, and pay to which the officer may have otherwise been entitled because of that status.  Drop from the rolls is distinguished from dropping from the unit rolls, which is an administrative procedure used by the Military Services to remove a Service member from the unit of assignment but does not end the member's military status.

**Drug Abuse**—The illegal, wrongful, or improper use, possession, sale, transfer, or introduction onto a military installation of any drug defined in AFI 44-121.

**Dual Action**—A case in which a member is concurrently processed for both disability evaluation and involuntary discharge and/or administrative separation.  Dual action cases-require both processes to run independently and final disposition is withheld for decision by SAFPC or the GCMCA (which is TAG or CG in the ANG) for enlisted members with less than 16 years of active service (years of satisfactory service for ARC members) as of the discharge date.

**Enlisted Member**—A person in an enlisted grade within the USAF.

**Entry Level Processing**—Actions taken by recruiting personnel to effect the enlistment, commissioning, appointment, or selection of an AF applicant.  Recruiting personnel include enlisted members whose duties include the recruitment of AF enlisted members, officers, or officer candidates.  Entry level processing also includes enlisted members performing duties at, or attached to, a Military Entrance Processing Station or centers where qualifying examinations are processed and interviews and drug abuse briefings are administered to applicants for training leading to an enlistment in the AF.

**Entry Level Separation**—Enlisted discharge from entry level status without service characterization.  This is complete severance from all military status gained by the enlistment or induction concerned.

**Entry Level Status**—The first 365 days of Enlisted continuous active military service or the first 365 days of continuous active service after a break of more than 92 days of active service.  In

addition, a member is in entry level status during a period of assignment to the delayed enlistment program prior to active military service.  For members of a Reserve component who have not completed 365 days of continuous active military service and are not on active duty, entry level status begins upon enlistment in a Reserve component (including a period of assignment to a delayed entry program).  Entry level status ends 365 days after beginning period of initial active duty training.  Thus, a member may be in entry level status for more than 365 days after enlistment.  For the purpose of characterization or description of service, the member's status is determined by the date of notification as to the initiation of separation proceeding.

**Excess Leave**—Leave during which the member does not receive pay and allowances.  The member does not accrue leave while on excess leave status.

**Expiration Term of Service**—Date individual's enlistment, reenlistment, extension of enlistment contract, or officer's agreed-to-period of active duty service expires.

**Extended Active Duty (EAD)**—A tour of active duty (normally for more than 90 days) performed by a member of the ARC.  Members of the Air National Guard or Air Force Reserve in a full-time active duty status with the regular component other than active duty for training or temporary tours of active duty; strength accountability for persons changes from the ARC to the regular component when the tour is greater than 3 years.  The period of time an officer has agreed to serve on active duty, usually a contract.

**Family Members**—Includes the spouse, children, father, mother, brothers, sisters, any person who has stood in loco parentis to the member before entry into the service, and members of the immediate family of the member's spouse.

**General Court-Martial Convening Authority**—An Air Force commander authorized to convene a general court-martial for offenses under the UCMJ, to convene an administrative discharge board, and to approve certain discharges. For the ANG the GCMCA may be defined by state law.

**General (Under Honorable Conditions) Discharge**—A separation characterization less favorable than honorable but better than Under Other Than Honorable Conditions.  If a member's service has been honest and faithful, this characterization is warranted when significant negative aspects of the member's conduct or performance of duty outweigh positive aspects of the member's military record.

**Headquarters Air Reserve Personnel Center (ARPC)**—A direct reporting unit to Headquarters Air Force Reserve Command.  The center provides support to nearly 1.3 million Active Duty, Air National Guard, Air Force Reserve, and retired members. A MAJCOM direct-reporting unit of Air Force Reserve Command.

**Health Professions Scholarship Program**—Program comprised of personnel appointed as commissioned officers in the AFR who are enrolled in AF Health Professions Scholarship Program while medical school students.  It is designed to obtain adequate numbers of commissioned officers on AD who are qualified in designated health professions.  The AF Health Professions Scholarship Program students are assigned to the 9016th Air Reserve Squadron.

**Honorable Discharge Certificate**—The type of discharge certificate received by a member whose separation is characterized as honorable; a DD Form 256, Honorable Discharge.

**High Year of Tenure**—A year point at which the Air Force determines an enlisted member is ineligible for reenlistment and extension of enlistment due to grade and length of service.  See DAFI 36-3203.

**Inactive Duty Training**—Authorized training performed by a member of a Reserve Component not on AD or Active Duty for Training and consisting of regularly scheduled Unit Training Assemblies (UTA), additional training assemblies, periods of appropriate duty or equivalent training and any special additional duties authorized for Reserve Component personnel by the Secretary concerned and performed by them in connection with the prescribed activities of the organization in which they are assigned with or without pay.  Does not include work or study associated with correspondence course.

**Individual Mobilization Augmentee (IMA)**—An individual reservist attending drills who receives training and is preassigned to an Active Component organization, a Selective Service System, or a Federal Emergency Management Agency billet that must be filled on, or shortly after, mobilization.  Individual mobilization augmentees train on a part-time basis with these organizations to prepare for mobilization.  Inactive duty training for individual mobilization augmentees is decided by component policy and can vary from 0 to 48 drills a year.

**Individual Ready Reserve (IRR)**—The Individual Ready Reserve consists of those members of the Ready Reserve who are not in the Selected Reserve or the inactive Air National Guard.

**Individual Reservist**—Individual Reserve is a descriptive category for two types of individual reservists, (1) individual mobilization augmentee, and (2) Participating Individual Ready Reserve personnel.  It is used only when the subject is applicable to both types of members.

**Initial Active Duty Training**—The first period of active duty for training prescribed by law or regulation for non-prior service enlistees that, when satisfactorily completed, produces a trained member in a military specialty.

**Initial Skills Training**—Air Force training for newly accessed officers to teach basic specialty specific knowledge.

**Initiating Commander**—The officer who starts an involuntary discharge proceeding.  Usually the immediate commander.

**Incompetent**—The state of a member who is mentally unable to make rational decisions based on factual understanding of matters including, but not limited to, pay, records, and disability processing.  Incompetency must be determined by a competency board hearing.

**Judge Advocate**—An officer of the Judge Advocate General's Corps of the Army or the Navy; an officer of the AF or the Marine Corps who is designated as a judge advocate; or an officer of the Coast Guard who is designated as a law specialist.

**Lengthy Service or Sanctuary Probation**—Suspension of an approved administrative discharge to give a member a chance to acquire minimum eligibility for service retirement.

**Limited Privilege Suicide Prevention Program**—This program is for members who have been informed (verbally or in writing) that they are under investigation for possible UCMJ violations. If a member is at risk for suicide, the member may self-refer or be referred to the program by any individual involved in the processing of the disciplinary action.

**Medical Officer**—A physician who is a commissioned officer designated as a medical officer.

**Member**—A person of a uniformed military service.

**Mental Health Professional**—An appropriately credentialed clinical psychologist, psychiatrist, licensed clinical social worker, or psychiatric advanced practice registered nurse.

**Military Counsel**—A lawyer within the meaning of Article 27(b), UCMJ.

**Military Duty(ies)**—The duties of a member's office and grade as determined by the Secretary concerned, and not necessarily the specialty skill or special qualification held by the member prior to incurring or aggravating an injury, illness, or disease in the line of duty.

**Military Record**—The military record includes documentation of all aspects of the officer's behavior, including duty performance during the current period of service personal conduct while on-duty and off-duty.

**Military Service Obligation (MSO)**—The period of time that a member must serve in a regular or reserve component of the armed forces as required by the Military Selective Service Act of 1967 or 10 USC § 651, as amended.

**Military Technician (Dual Status)**—A federal civilian employee providing full-time support to an Air National Guard, Reserve, or Active Component organization for administration, training, and maintenance of the Selected Reserve.

**Misconduct**—Intentional conduct that is wrongful or improper. Also, willful neglect or gross negligence.

**National Policy**—Congress recognized that deep and sincerely held convictions against the use of force may place a citizen in a dilemma between conscience and patriotic obligation. Therefore, Congress provided a means whereby citizens may be excused from or restricted in their military duties by receiving status as conscientious objectors. See US v Seeger, 380 US 163, 170 (1965). This term applies to conscientious objection.

**Naturalized Personnel**—Individuals who acquired US citizenship through service in the US Armed Forces during specified periods (8 USC § 1440).

**Next Of Kin**—Generally the person most closely related to the casualty is considered primary NOK for disposition of remains, personal effects, and the release of records to secondary NOK and third parties. The un-remarried surviving spouse is primary NOK. The term surviving spouse does not include one who obtained a divorce from the decedent (at any time). The nearest relative to the member who may act for the member who is physically or mentally unable to act for themselves.

**Noncombatant Duties or Service**—1) Service in any unit of the Armed Forces that is unarmed at all times. 2) Any other assignment, the primary function of which does not require the use of arms in combat provided that such other assignment is acceptable to the individual concerned and does not require the service member to bear arms or to be trained in their use. 3) Service aboard an armed ship or aircraft or in a combat zone shall be considered to be non-combatant duty unless the individual concerned is personally and directly involved in the operation of weapons. **Note**: Used interchangeably throughout the document.

**Noncombatant Training**—Any training that is not concerned with the study, use, or handling of weapons.

**Nonjudicial Punishment**—A punishment imposed by a commander and accepted by the member following guidance provided in Article 15, UCMJ or state military code.  Usually involves a minor infraction of discipline.

**Non-Probationary Officer**—A commissioned officer (Regular or Reserve) on the Active Duty List who has completed 6 or more years of active commissioned service as determined by the officer's Total Active Federal Commissioned Service Date or a Reserve commissioned officer who has completed 6 or more years of commissioned service generally as determined by the Reserve officer's Total Federal Commissioned Service Date.  An officer's status as probationary or non-probationary is determined as of the date of discharge, not the date involuntary separation action is initiated.

**Offense Involving Moral Turpitude**—For the purpose of this regulation only, offenses involving moral turpitude include, but are not limited to, sexual perversion, drug addiction, drug use, and drug supplier. Also included are burglary, forgery, housebreaking, larceny, and robbery. Sexual perversion includes, but is not limited to: lewd and lascivious acts; sodomy; indecent acts with, or assault on, a child; and indecent exposure; or other aberrant sexual behavior; or other indecent acts or offenses.

**Officer**—A commissioned officer of any component.

**PALACE CHASE Applicant**—An active duty member, either officer or enlisted, who has applied for, but not yet approved to participate in the PALACE CHASE program.

**PALACE CHASE Participant**—A member, either officer or enlisted, that has been approved to participate in the PALACE CHASE program.  Participants may be on active duty waiting to separate to the ARC or may be in the ARC with a PALACE CHASE contract date.

**PALACE CHASE Programs**—A group of programs that permits active duty members to volunteer for transfer from active military service to selected reserve positions in the ARC. Programs include PALACE CHASE, PALACE FRONT, PALACE BLESSING, PALACE SPORT, PALACE PA and related PALACE CHASE force management programs.

**PALACE CHASE Contract Date**—The date to which a PALACE CHASE participant agrees to serve in the ARC.  Specific period of time represents the amount of time that was remaining on the applicant's term of enlistment or unfulfilled ADSC.  The date is double the enlisted members' remaining term of enlistment and triple officers' remaining ADSC. The minimum contract period is 1 year and the maximum is 6 years.

**Participating Individual Ready Reserve (PIRR)**—Participating Individual Ready Reserve (PIRR) - Ready Reserve personnel who are in a non-pay training program and participate for retirement points only as they are not assigned to the Selected Reserve. These individual reservists include Admissions Liaison Officers, Civil Air Patrol Reserve Assistance program, and Ready Reinforcement Personnel sections. They are attached to a Regular Air Force, Space Force, or Air Reserve component unit and participate for pay and points when mission requirements dictate the need and funds are available.

**Physical Evaluation Board Liaison Officer**—A DoD employee assigned to serve as the Service member's non-medical case management specialist throughout the DoD DES process.  The case owner providing assistance and case status updates to the affected Service member throughout the process.

**Plenary Authority**—The SecAF's broad Constitutional and Statutory authority necessary to conduct all affairs of the Department of the Air Force, which includes the authority to direct the separation of any enlisted Member prior to expiration of term of service after determining it is in the best interest of the Air Force.

**Preponderance of Evidence**—The standard of proof for administrative separations. The preponderance standard means: When it is more likely than not that events have occurred as alleged, there is a preponderance of the evidence.

**Prior Enlistment or Period of Service**—Service in any component of the armed forces, including the Coast Guard, which culminated in the issuing of separation documents.

**Probation and Rehabilitation**—Suspension of an approved administrative discharge for cause to give a member a final opportunity to return to a productive capacity in the Air Force.

**Probationary Officer**—A commissioned officer (Regular or Reserve) on the Active Duty List who has completed less than 6 years of active commissioned service as determined by the officer's Total Active Federal Commissioned Service Date or a Reserve commissioned officer who has completed at least 5 years of commissioned service generally as determined by the Reserve officer's Total Federal Commissioned Service Date. An officer's status as probationary or non-probationary is determined as of the date of discharge, not the date involuntary separation action is initiated.

**Procedural Matters**—Administrative responsibilities that a BOI must undertake during hearings and proceedings, including motions for continuances, securing of witnesses or production of documentary evidence, challenges, the admissibility of evidence, and other interlocutory matters that a military judge would rule on in a trial by court-martial.

**Professional Sports**—Professional sports, as opposed to amateur sports, are sports in which athletes receive payment for their performance and the sport has a national or international audience.

**Prospective Member of the Armed Forces**—Any person who has expressed to recruiting personnel an interest in enlisting or receiving an appointment as a commissioned officer in a Military Service and who appears to possess, or who may in the future possess, the potential and qualifications for enlistment or appointment as a commissioned officer in said Military Service. An individual who expresses a loss of interest in enlistment or appointment as a commissioned officer will continue to be a prospect for the purpose of this publication for a period of 1 year from the date they express this loss of interest to recruiting personnel. Individuals who possess the potential or qualifications for enlistment or appointment in the future may include, but are not limited to, individuals who do not meet minimum age requirements, who scored too low on the qualification testing but will be eligible to retest, or who have not completed their education. An individual who expresses an interest in enlistment or appointment as a commissioned officer but is permanently barred under existing regulations is not a prospect. A person who has had a face-to-face meeting with a member of the Armed Forces whose duties include recruiting or assessing persons for enlistments or appointment as a commissioned officer or enlisted member.

**Punitive Action**—Trial by court-martial or nonjudicial punishment following guidance provided in the UCMJ, Article 15.

**Readjustment Pay**—Payable to a Reserve officer involuntarily separating with an honorable or general discharge whose date of entry on active duty is prior to 15 September 1981.  Also payable if the officer requests discharge in lieu of a board of inquiry.

**Recall**—The voluntary entry on EAD of ARC members who have previously served on EAD.

**Reclama**—A request to duly constituted authority to reconsider its decision or its proposed action.

**Recurring Misconduct**—At least two incidents of wrongdoing whether or not they constitute serious misconduct.  The nature of the wrongdoing need not be similar.  (For example, disorderly conduct and a failure to go to appointed duty.)

**Regular Officer**—A commissioned officer in the Regular Air Force.  The term "regular" refers to appointment, grade, or office in a regular component of an armed force.  A Regular officer is either on active duty, retired, or on the temporary disability retired list.  All officers on the Active Duty List are Regular Officers.

**Regularly Scheduled Drill**—Forty-eight (48) annual periods that are pre-scheduled and used primarily for individual or unit readiness training for ANG members authorized pursuant to Title 32 United States Code Section 502(a).

**Release**—Separation from a void enlistment or induction that does not involve a regular discharge.  A DD Form 214 is issued but not a discharge certificate.

**Release from Active Duty**—End of active duty status.  This term applies to members of the Regular Air Force who are transferred to a Reserve component to complete their military service obligations and to members of Reserve components who revert to inactive status in their Reserve organizations.

**Report of Board Proceeding**—Usually a properly authenticated verbatim transcript of the BOI hearings, including supporting exhibits.

**Reserve Active Status List (RASL)**—A list of all Reserve of the AF officers in an active status, not on the AD List, and in the order of seniority of the grade in which they are serving.  Officers serving in the same grade are carried in the order of their rank in that grade.  The RASL for the AF includes officers in the ANG and AFR.  Except as otherwise provided by law, an officer must be on the RASL to be eligible for consideration for selection for promotion, continuation, or early removal as a member of the Reserve of the AF.

**Reserve Component**—with respect to the Armed Forces – (A) the Army Reserve; (B) the Navy Reserve; (C) the Marine Corps Reserve; (D) the Air Force Reserve; (E) the Space Force Reserve; (F) the Coast Guard Reserve; (G) the Army National Guard of the United States; and (H) the Air National Guard of the United States.

**Reserve Member**—A member of the United States Air Force Reserve.

**Reserve Officer**—A commissioned officer in a reserve component.  The term "Reserve" refers to appointment, grade, or office held as a Reserve of an armed force.

**Respondent**—A member who has been officially notified that the administrative discharge proceedings have been started against the service member or an officer who is the subject of an involuntary separation action.

**Retired Reserve**—All reserve members who receive retirement pay on the basis of their active duty and/or reserve service; those members who are otherwise eligible for retirement pay but have not reached age 60 and who have not elected discharge and are not voluntary members of the Ready Reserve or Standby Reserve.

**Scroll**—Nomination list for original appointment or promotion of commissioned officers.

**Secretary of the Air Force (SecAF)**—Includes the Secretary, and the Assistant Secretaries of the Air Force.

**Secretary's Officer Quality Force Mandate**—Cases involving officers whose conduct or performance of duty renders them subject to discharge for cause are processed at all levels of command with the same attention to expeditious processing and detail as attends any action with potentially dramatic impact on the officer and on the AF and which requires action at the highest levels of senior AF leadership.

**Selected Reserve**—As defined in JP 1-02, Those units and individuals within the Ready Reserve designated by their respective Services and approved by the Joint Chiefs of Staff as so essential to initial wartime missions that they have priority over all other Reserves.  Selected Reservists actively participate in a Reserve Component training program.  The Selected Reserve also includes persons performing initial active duty for training.

**Separation**—A general term that includes administrative discharge, resignation, release from active duty, release from custody and control of the Armed Forces, dropping from the rolls of the Air Force, retirement, transfer to a reserve component, and dismissal.  Often used synonymously with "discharge."  See also discharge.

**Separation Authority**—An official authorized by this instruction to take final action with respect to a specified type of separation.

**Separation for Cause**—Another phrase for involuntary separations.

**Separation Pay**—Half or full separation pay payable to Regular or Reserve officers if qualified under Title 10 United States Code Section 1174 and DoD 7000.14-R, Department of Defense Financial Management Regulation, Volume 7A: *Military Pay Policy – Active Duty and Reserve Pay*, Part A.

**Serious Misconduct**—Any offense that, if punished under the UCMJ, could result in confinement for 6 or more months or a dismissal and any comparable offense under a civilian penal code.

**Seven Day Option**—A requirement for eligible members to separate or retire in lieu of operational or rotational Permanent Change of Station, formal education, a training course (regardless if it involves a Permanent Change of Station) or TDY (Enlisted only) except when the event OPR allows declination (with or without prejudice).

**Severance Pay**—Payable to Regular officers involuntarily separating with an honorable or general under honorable conditions discharge and their dates of entry on active duty is prior to 15 September 1981.

**Sexual Assault**—As used in this instruction, the term includes a broad category of sexual offenses consisting of the following specific UCMJ offenses:  rape, sexual assault, aggravated sexual contact, abusive sexual contact, rape of a child, sexual assault of a child, and sexual abuse of a child, or attempts to commit these offenses.  Due to amendments to the UCMJ, the names and

character of offenses may vary based on when they were committed and the applicable version of the UCMJ at that time.  See Title 10 United States Code Section 920 Art. 120, *Rape and sexual assault generally* (b).

**Show Cause**—What the respondent must do to justify the respondent's retention in the service after the government has made a prima facie showing that one or more of the reasons for discharge in the letter of notification exist.

**Show Cause Authority**—SecAF show cause authority is statutorily-based and is delegated to MAJCOM/FLDCOM or DRU Commanders and through them to General Court-Martial Convening Authorities (GCMCAs) in their commands.  Show cause authority is also delegated directly to GCMCAs for organizations that are not in a MAJCOM/FLDCOM and are not DRUs. For Reserve officers, HQ AFRC/CC is the show cause authority for Category A, B and E reservists. For ANG members, TAG or Commanding General is the show cause authority.

**Sole Surviving Son or Daughter**—A member who is the only surviving child in a family in which the father or mother or one or more siblings served in the armed forces and was killed in action; died as a result of wounds, accident, or disease; is in a captured- or missing-in-action status; or has a permanent 100 percent service-related disability (including 100 percent mental disability) as determined by the VA or one of the Military Services (and is not gainfully employed because of the disability).

**Special Court-Martial Convening Authority**—An Air Force commander authorized to convene a special court-martial for offenses under the UCMJ or state military code, to convene an administrative discharge board, and to approve certain discharges.

**Staff Officer**—A commissioned officer serving on the staff of a military headquarters or governments department.

**State or States**—This term includes all 50 states and territories; Puerto Rico, the Virgin Islands, Guam, and the District of Columbia.

**Substandard Performance**—This is the same as unsatisfactory performance listed in DoDI 1332.14.

**Surviving Son or Daughter**—A member in a family in which the father or mother or one or more siblings meet the criteria listed in the sole surviving son or daughter definition.

**Temporary Duty (TDY) Members**—Personnel who are temporarily assigned to perform duty at a location other than their permanent duty station in support of contingency operations, exercise, training, manning assistance as described, and for administrative duties further defined in DAFI 36-2110, for assignment-related information.

**Tenant Unit**—A military unit assigned to a location, post, installation, base, reservation, or duty station in which the command assigned to provide base support is not within the unit's chain of command.

**Term of Enlistment**—The length of a member's enlistment. The termination date for enlisted members is the normal expiration of term of service.

**Termination of Appointment**—The act of terminating an appointment as a commissioned member of the armed forces in a regular or reserve component.

**The Adjutant General (TAG)**—The senior military officer of the national guard of a state.  TAG is responsible for performing the duties prescribed by the laws of that state and the day-to-day peacetime management and training of the state National Guard (Army and Air).

**Training Period**—A 4-hour period of training, duty, or instruction.

**TRICARE**—Triple Option Benefit Plan for Military Families.

**Under Other Than Honorable Conditions Discharge**—When separation is based upon a pattern of behavior that constitutes a significant departure from the conduct expected of Service members, or when separation is based upon one or more acts or omissions that constitute a significant departure from the conduct expected of Service members. For Reserve and ANG members, conduct in the civilian community of a member not in military status (not on active duty or active duty for training) may be used to characterize service as UOTHC only if the conduct directly affects the performance of military duties.  Examples of factors that may be considered include the use of force or violence to produce serious bodily injury or death; abuse of a special position of trust; disregard by a superior of customary superior-subordinate relationships; acts or omissions that endanger the security of the United States or the health and welfare of other Service members; deliberate acts or omissions that seriously endanger the health and safety of other persons; rape, sexual assault, aggravated sexual contact, abusive sexual contact, rape of a child, sexual assault of a child, sexual abuse of a child, and attempts to commit these offenses.

**Unit Training Assembly (UTA)**—An authorized and scheduled period of unit inactive duty training of a prescribed length of time.

**Unsatisfactory Participant**—(a) A member of the Ready Reserve covered by 10 USC 10147 who fails in any year to perform satisfactorily the training duty prescribed in that section or (b) a member of the Air National Guard of the United States who fails in any year to perform satisfactorily the training duty prescribed by or under law for members, as may be determined by the Secretary concerned.

**Unconditional Waiver**—A statement initiated by a member giving up those rights associated with administrative discharge board proceedings, not contingent on receipt of a specific characterization of service.

**United States Armed Forces**—Denotes collectively all components of the Army, Navy, Air Force, Space Force, Marine Corps, and Coast Guard.

**Unit Commander or Civilian Director**—The participant's most immediate commander for the unit, center, DRU, FOA, detachment, operating location, or GSU to which the applicant is assigned.  A civilian director is a civilian employee that is designated to lead a unit, center, DRU, FOA, detachment, operating location, or GSU to which the applicant is assigned. For IMAs, this may be the official in charge of the training unit.  This could be the unit commander, special program manager, or RIO/CC, or for members not assigned to a participating Reserve position, the Commander, ARPC.  For actions involving personnel in the DEP, this is the recruiting squadron commander.

**Unprofessional Relationships**—Whether pursued on or off duty, relationships are unprofessional when they detract from the authority of superiors or result in (or reasonably create the appearance of) favoritism, misuse of office or position, or the abandonment of organizational goals for personal interests.

**Vacation of Appointment**—To cease to occupy or hold an appointment as a commissioned member of the armed forces in a regular or reserve component.

**Void Enlistment**—An enlistment is void: (1) if it was effected without the voluntary consent of a person who has the capacity to understand the significance of enlisting in the Military Services, including enlistment of a person who is intoxicated or had a disqualifying psychiatric disorder at the time of enlistment; (2) if the person is under 17 years of age; or (3) if the person is a deserter from another Military Service.

**Voir Dire**—A French term describing the process of interviewing a prospective board member to decide whether they are qualified and suitable to serve on the board.

**Voluntary Limited Period of Active Duty**—A limited tour of EAD to allow an ARC officer with unique experience to fill a Regular Air Force billet when the position cannot be filled by a qualified Regular Air Force officer.

**War in Any Form**—All warfare--those wars waged in the past, present, and future that include combatant forces. The Air Force does not consider members who believe they can choose the war in which they will participate as conscientious objectors under the law. The objection must be to all wars rather than to a specific war. A belief in a theocratic or spiritual war between the powers of good and evil does not constitute a willingness to participate in war within the meaning of this instruction.

**Wing**—An Air Force unit composed normally of one primary mission group and the necessary supporting organizations, i.e., organizations designed to render supply, maintenance, hospitalization, and other services required by the primary mission groups.  Primary mission groups may be functional, such as combat, training, transport, or service.

**Attachment 2**

## REQUIRED INFORMATION TO BE SUPPLIED BY APPLICANT FOR DISCHARGE OR NONCOMBATANT SERVICE

**A2.1.  Any Member Seeking Discharge.**  Any member seeking discharge from the Air Force or Space Force or assignment to noncombatant duties as a conscientious objector must provide, at a minimum, the information indicated in this attachment.  **(T-0)** This in no way bars the Air Force or Space Force from requiring additional information. The individual may submit such other additional information as desired.

**A2.2.  General Information Concerning Applicant:**

A2.2.1.  Full name.  **(T-0)**

A2.2.2.  DoD identity number. **(T-0)**

A2.2.3.  Selective Service number (if applicable).  **(T-0)**

A2.2.4.  Service address. **(T-0)**

A2.2.5.  Permanent home address. **(T-0)**

A2.2.6.  Name and address of each school and college attended (after age 16), dates of attendance, and the type of school (public, church, military, commercial, etc.). **(T-0)**

A2.2.7.  A chronological list of all occupations, positions, jobs, or types of work (other than work after age 16 performed while in school or college) whether for monetary compensation or not. Include the type of work, name of employer, address of employer, and the "from" and "to" date for each position or job held.  **(T-0)**

A2.2.8.  All former addresses (after age 16) and dates of residence at those addresses.  **(T-0)**

A2.2.9.  Parents' names and addresses. Indicate whether they are living or deceased.  **(T-0)**

A2.2.10.  the religious denomination, tradition, sect, or belief system of both parents.  **(T-0)**

A2.2.11.  Indicate if application was made to the Selective Service System (local board) for classification as a conscientious objector before entry into the Air Force or Space Force. **(T-0)**

A2.2.11.1.  If application was made, identify to which local board.  **(T-0)**

A2.2.11.2.  If application was made, indicate what decision was made by the board, if known. **(T-0)**

A2.2.12.  When the applicant has served fewer than 180 days in the military service:

A2.2.12.1.  A statement as to whether they are willing to perform work under the Selective Service Civilian Work Program for conscientious objectors, if discharged as a conscientious objector.

A2.2.12.2.  A statement as to whether they consent to a work order for such work issued by their local Selective Service Board.

**A2.3.  Training and Belief:**

A2.3.1.  A description of the nature of the belief that requires the applicant to seek separation from military service or assignment to noncombatant training and duty for reasons of conscience.  **(T-0)** If applying for noncombatant service, include:

A2.3.1.1.  The reason why the applicant wants to continue active duty service.

A2.3.1.2.  The capacity in which the applicant wishes to remain on active duty.

A2.3.1.3.  An explanation of how remaining on active duty will not adversely affect the applicant's beliefs or the beliefs of others in the unit.

A2.3.1.4.  Why it is in the best interest of the Air Force or Space Force for the applicant to remain on active duty until completion of their current enlistment (enlisted) or furthest ADSC (officers).

A2.3.2.  An explanation as to how the beliefs changed or developed, to include an explanation as to what factors (how, when and from whom, or from what source applicant received training or belief required) caused the change in or development of conscientious objector beliefs. **(T-0)**

A2.3.3.  An explanation as to when these beliefs became incompatible with military service or combatant duties, and why.  **(T-0)**

A2.3.4.  An explanation as to the circumstances, if any, under which the applicant believes in the use of force, and to what extent, under any foreseeable circumstances.

A2.3.5.  An explanation as to how the applicant's daily lifestyle has changed as a result of the beliefs and what future actions applicant plans to continue to support applicant's beliefs.

A2.3.6.  A description of what most conspicuously demonstrates the consistency and depth of the beliefs that gave rise to the claim.

**A2.4.  Participation in Organizations:**

A2.4.1. Information as to whether applicant has ever been a member of any military organization or establishment before entering present term of service.  **(T-0)** If so, applicant must give the name and address of such organization along with the reasons why applicant was a member.  **(T-0)**

A2.4.2.  A statement as to whether applicant is a member of a religious organization, or an organization that advocates moral or ethical beliefs, or practices a particular tradition.  **(T-0)** If so, the statement must show:

A2.4.2.1.  The name of the organization or tradition, and the name and location of its governing body or head, if known.  **(T-0)**

A2.4.2.2.  When, where, and how the applicant became a member of said organization or tradition. **(T-0)**

A2.4.2.3.  The name and location of any religious organization, congregation, or meeting that the applicant customarily attends, and the extent of the applicant's active participation therein including the name, title, and present address of the pastor or leader of such religious organization, congregation, or meeting.  **(T-0)**

A2.4.2.4.  A description of the organization's or tradition's creed or official statements, as they pertain to participation in war.  **(T-0)**

A2.4.3.  A description of applicant's relationships with and activities in all organizations with which applicant is or has been affiliated, other than military, political, or labor organizations. **(T-0)**

**A2.5.  References.**  Any additional information, such as letters of reference or official statements of organizations to which the applicant belongs or refers to in the application, that the applicant wishes the Air Force or Space Force authority reviewing the application to consider.  The burden is on the applicant to obtain and forward such information.

**A2.6. Signed Statement.** A signed statement acknowledging that the individual has been informed of the purpose of the application and its routine uses before submission, stating substantially:

IAW the Privacy Act of 1974, as amended, this notice informs you of the purpose of the application and how it will be used. Please read carefully.

AUTHORITY: 50 USC § 3806j, *Deferments and Exemptions from Training and Service*; 38 USC § 3103, *Periods of eligibility*; DoD Directive 5124.02, *Under Secretary of Defense for Personnel and Readiness (USD (P&R))*; and DoD Instruction 1300.06, *Conscientious Objectors*.

PRINCIPAL PURPOSE(S): Requested information will be used to document information upon which a decision may be made by appropriate authority to grant or deny the requested conscientious objector status.

ROUTINE USES: To the Selective Service System Headquarters for the purpose of identifying individuals who have less than 180 days active duty, and who have been discharged by reason of conscientious objection.  To State and local agencies in the performance of their official duties related to verification of status for determination of benefits and entitlements.  For a complete list of routine uses and authorities see the applicable Service system of records notices; A0600-43 DAPE, DA Conscientious Objector Review Board; F036 AF PC C, Military Personnel Records System; M01070-6, Marine Corps Official Military Personnel Files; N01070-3, Navy Military Personnel Records System; located at: **http://dpcld.defense.gov/Privacy/SORNs/**.

DISCLOSURE:  Voluntary; however, failure to furnish the required information may compromise sought for status.

**Attachment 3**

## STATEMENT (COUNSELING CONCERNING DESIGNATION AS CONSCIENTIOUS OBJECTOR)

I have been counseled concerning designation as a conscientious objector.  Based on my training and belief, I consider myself to be a conscientious objector within the meaning of the statute and regulations governing conscientious objectors and am conscientiously opposed to participation in combatant training and service.

I understand that any discharge resulting from my application for conscientious objector designation is voluntary on my part.  If I have received special pay, bonuses, or advanced education assistance in return for my commitment to serve a period of active duty, I understand that I am obligated to reimburse the United States for such pay, bonuses, or the cost of such education assistance, in proportion to the unserved part of my active duty service commitment.  I further understand the Department of Veterans Affairs will determine what veterans' benefits, if any, I am entitled to receive if I am separated pursuant to a conscientious objector status.

_____(Date)_____                                          _____(Signature of member)_____
_____
                                                              (Typed name, grade, USAF)

(Member's name) signed the preceding statement after being counseled by me.

_____(Date)__                                          _____(Signature of member)_____
                                                              (Typed name, grade, USAF)

PRIVACY ACT STATEMENT:  Statement (Counseling Concerning Designation as Conscientious Objector) (this attachment).

AUTHORITY: 50 USC § 3806, 10 USC § 9013, and Executive Order 9397 (as amended)

PURPOSE:  Used by member to apply for conscientious objector status.

ROUTINE USES: Reviewing authorities use the recorded information to make a decision to grant or deny the requested conscientious objector status and other DoD activities as required.

DISCLOSURE IS VOLUNTARY:  If applicant does not furnish information, applicant may not receive the sought-for status.

SORN: F036 AFPC P, Separation Case Files (Officer and Member), F033 ARPC B, Locator or Personnel Data, and F036 AFPC C, Military Personnel Records System

**Attachment 4**

**STATEMENT (COUNSELING CONCERNING VETERANS ADMINISTRATION BENEFITS)**

I have been advised of the provisions of 38 USC § 5303, concerning possible non-entitlement to benefits administered by the Department of Veterans Affairs due to discharge from military service as a conscientious objector under certain conditions.  I understand that a discharge as a conscientious objector who refused to perform military duty or refused to wear the uniform, or otherwise to comply with lawful orders of competent military authority, will bar all rights, based upon the period of service from which discharged, under any laws administered by the Department of Veterans Affairs except my legal entitlement (if any) to any war risk, government (converted), or veterans' life insurance.

_____(Date)___        _____(Signature of member)_____

(Typed name, grade, USAF/USSF)


(Member's name) signed the preceding statement after being counseled by me.

   (Date)_____        ____(Signature of member)_____
                                    (Typed name, grade, USAF/USSF)

PRIVACY ACT STATEMENT:   Statement (Counseling Concerning Designation as Conscientious Objector) (this attachment).

AUTHORITY: 50 USC § 3806, 10 USC § 9013, and Executive Order 9397 (as amended)

PURPOSE:  Used by member to apply for conscientious objector status.

ROUTINE USES: Reviewing authorities use the recorded information to make a decision to grant or deny the requested conscientious objector status and other DoD activities as required.

DISCLOSURE IS VOLUNTARY:  If applicant does not furnish information, applicant may not receive the sought-for status.
SORN: F036 AFPC P, Separation Case Files (Officer and Member), F033 ARPC B, Locator or Personnel Data, and F036 AFPC C, Military Personnel Records System.

**Attachment 5**

**STATEMENT (COUNSELING CONCERNING APPLICATION AS A CONSCIENTIOUS OBJECTOR NONCOMBATANT TRAINING AND SERVICE)**

I have been counseled concerning designation as a conscientious objector.  Based on my training and belief, I consider myself to be a conscientious objector within the meaning of the statute and regulations governing conscientious objectors and am conscientiously opposed to participation in combatant training and service.

I request assignment to noncombatant duties for the remainder of my term of enlistment (enlisted) or furthest active duty service commitment (officer).  I understand that on expiration of my current term of enlistment or active duty service commitment, I am not eligible for voluntary enlistment, reenlistment, extension or amendment of current enlistment, or active service in the military by reasons of my noncombatant conscientious objector classification.

If I am determined to be a noncombatant conscientious objector and if a further determination is made that I cannot be effectively utilized as a noncombatant, I am requesting that (I be discharged for the convenience of the government IAW DAFI 36-3211, *Military Separations*, Part 2 [enlisted]) (my resignation be accepted IAW Part 3 [officer]).

I understand that any discharge resulting from my application for conscientious objector designation is voluntary on my part.  If I have received special pay, bonuses, or advanced education assistance in return for my commitment to serve a period of active duty, I understand that I am obligated to reimburse the United States for such pay, bonuses, or the cost of such education assistance, in proportion to the unserved part of my active duty service commitment.  I further understand the Department of Veterans Affairs will determine what veterans' benefits, if any, I am entitled to receive if I am separated pursuant to a conscientious objector status.

_____(Date)__                                         _____(Signature of member)_____
                                                                  (Typed name, grade, USAF/USSF)


(Member's name) signed the preceding statement after being counseled by me.

_____(Date)___                          _____(Signature of member)_____
                                                                  (Typed name, grade, USAF/USSF)


PRIVACY ACT STATEMENT:  Statement (Counseling Concerning Designation as Conscientious Objector) (this attachment).

AUTHORITY: 50 USC § 3806, 10 USC § 9013, and Executive Order 9397 (as amended)

PURPOSE:  Used by member to apply for conscientious objector status.

ROUTINE USES: Reviewing authorities use the recorded information to make a decision to grant or deny the requested conscientious objector status and other DoD activities as required.

DISCLOSURE IS VOLUNTARY:  If applicant does not furnish information, applicant may not receive the sought-for status.

SORN: F036 AFPC P, Separation Case Files (Officer and Member), F033 ARPC B, Locator or Personnel Data, and F036 AFPC C, Military Personnel Records System

**Attachment 6**

**ADMINISTRATIVE DISCHARGE FACT SHEET (ENLISTED)**

**A6.1. Administrative Discharge.** These are the types of administrative discharges from the Air Force or Space Force. A discharge is defined as a complete separation from all military status, duties, obligations, and responsibilities that have been gained by enlistment in the Air Force or Space Force. The type of discharge a person receives could affect the person's ability to get a civilian job in the future. A person might not be hired simply because the person did not have an honorable discharge. Members should recognize that the type of discharge they receive is a serious matter and that if they receive any discharge other than an honorable discharge, it may cause them difficulties. Also, as a general rule, persons who entered the Air Force or Space Force after 7 Sep 80 and are administratively discharged from active duty before completing the shorter of 24 months of continuous active duty, or the full period for which they were called or ordered to active duty, are not eligible for any benefit administered by the Veterans Affairs. It is recommended every member visits the Department of Veterans Affairs benefit website (**https://www.benefits.va.gov/benefits/characterofdischarge.asp**) to view up-to-date information on benefits.

**A6.2. Honorable Discharge.** This type of discharge is separation from the Air Force or Space Force with honor. An honorable discharge means the person has served the Air Force or Space Force well by meeting or exceeding the required standards of duty performance and personal conduct. The honorable discharge reflects to the world that the member has satisfactorily completed a commitment to military service. All veterans' benefits are given to an eligible person with an honorable discharge.

**A6.3. General (Under Honorable Conditions) Discharge.** This is separation from the Air Force or Space Force with honor, but to a lesser degree than the honorable discharge. This discharge is given when normally faithful service is marred by negative aspects of a person's duty performance or personal conduct, but the negative aspects definitely outweigh the good. Most veterans' benefits are given to an eligible person with a general (under honorable conditions) discharge.

**A6.4. Under Other Than Honorable Conditions Discharge.** Separation from the Air Force or Space Force with the worst possible administrative discharge. A person receives an Under Other Than Honorable Conditions discharge when the person's personal conduct falls significantly below acceptable military standards. Discharge may result from one or more acts, or failures to act, which are considered to be an obvious departure from the high standards of conduct expected of military members. This type of discharge may be given only after a person has had the opportunity to request a hearing by an administrative discharge board. Usually, only acts, or failures to act, which occur during the current enlistment may be used to separate a person with this type of discharge. Significant veterans benefits are denied by the Under Other Than Honorable Conditions discharge.

**A6.5. Entry-Level Separation.** This type of separation is given only when the person is in the person's first 180 days of continuous active military service or the first 180 days of continuous active military service after a break of more than 92 days of active service. This is a discharge that does not attempt to characterize the type of service as either good or bad. It is not the only type of separation authorized during the first 180 days of military service, as it is possible for a person to

receive either an honorable or an Under Other Than Honorable Conditions discharge as well.  For members of a Reserve component who have not completed 180 days of continuous active military service and are not on active duty, entry level status begins upon enlistment in a Reserve component (including a period of assignment to a delayed entry program).  Entry level status ends 180 days after beginning an initial period of active duty training.  Thus, a member may be in entry level status for more than 180 days after enlistment.

**A6.6.  Administrative Separations.**  Administrative separations may affect a person's ability to reenlist in the Air Force or Space Force.  A person may not be eligible to reenlist if the person:

A6.6.1.  Has been separated from the Air Force or Space Force with a general or Under Other Than Honorable Conditions discharge.

A6.6.2.  Has been involuntarily separated under **Part 2** of this publication.  **Note:** If the reason for separation was failure to meet minimum fitness standards, hardship, or dependency reasons, or for being a minor, then reenlistment is possible with a waiver.

A6.6.3.  Is serving a period for probation and rehabilitation under **Part 2** of this publication.

A6.6.4.  Is under investigation for possible administrative discharge or has been notified by the squadron commander of **Part 2** action.

**Attachment 7**

**FORMAT FOR VOLUNTARY REQUEST FOR DISCHARGE OR SEPARATION (ENLISTED--ARC ONLY)**

(Appropriate Letterhead)

Date

MEMORANDUM FOR (HEADQUARTERS' NAME & OFFICE SYMBOL)

ATTENTION:  COMMANDER, (next echelon of command)

FROM: (Member's Grade, Name, Mailing Address, and Phone Number)

SUBJECT:  Voluntary Request for Discharge or Separation

1.  I, (full name, grade) under DAFI 36-3211, Part 2, paragraph (cite appropriate paragraph) hereby voluntarily request discharge or separation from (enter Air National Guard or Air Force Reserve).

2.  The reason(s) for the submission of this request: (list all reasons).

3.  After discussing this request with my commander, and if this request is accepted, I will receive a discharge or separation characterized of: (Honorable) (General).  I understand my reenlistment eligibility will be (Eligible or Ineligible).

Insert one of the following statements as applicable:

a. My expiration of term of service is:  ___.  I understand that I have 120 days or more remaining on my expiration of term of service or military service obligation and that I will be transferred to ARPC, into the Individual Ready Reserve section.  Upon completion of my remaining expiration of term of service or military service obligation, I will be discharged as a Reserve member of the USAF, unless I re-affiliate prior to these dates.

b. I understand that my expiration of term of service or military service obligation is less than 120 days; I will be discharged and not transferred to the ARPC, into the Individual Ready Reserve section.

4.  I understand that if I am transferred to the Individual Ready Reserve, I understand my obligation for satisfactory participation in the screening program to include notifying Pre-

trained Individual Manpower (PIM) Management (ARPC/DPAM) of any change in address, marital status, number of dependents, or civilian employment.  (**Note:** Contact the Pre-trained Individual Manpower (PIM) Management (ARPC/DPAM) via the Total Force Service Center, JBSA Randolph, TX (Commercial 1-800-525-0102 or DSN 665-0102)).  I understand that I will be subject to recall in the event of a national emergency or war as directed by the President of the United States while a member of the Individual Ready Reserve.

Signature

Typed Name, Grade, and Title

Attachments: (All documentation to support this voluntary request.)

**Attachment 8**

**FORMAT FOR MEMORANDUM OF RECOMMENDATION FOR DISCHARGE
ACTION UNDER DAFI 36-3211 (FOR ARC MEMBERS ONLY)**

(Appropriate Letterhead)

(Date)

MEMORANDUM FOR (HEADQUARTERS' NAME & OFFICE SYMBOL)

ATTENTION:  COMMANDER, (next echelon of command)

FROM: (complete office symbol and address)

SUBJECT:  Administrative Discharge, (rank, name, and of member) (**Note**: All items
followed by [*] are mandatory.)

1.  I recommend that (grade, name) be discharged from the (see **Note 1**).  The authority for my
recommendation is DAFI 36-3211, ("quote the applicable section and paragraph title(s))".
The specific reason(s) for the proposed discharge are (Tell how criteria of cited paragraphs are
met.  State the specifics of the acts or conditions on which the recommendation is based).  (For
Air Force Reserve unit program:  The commander must state why recall action under AFMAN
36-2136, *Reserve Personnel Participation* was not pursued if discharge is based on
unsatisfactory participation and the member has a reserve service commitment.)

2.  Type of separation recommended:  Honorable discharge, General (Under Honorable
Conditions) discharge, Under Other Than Honorable Conditions (UOTHC) discharge, entry-
level separation, or release from the custody and control of the USAF (by reason of void
enlistment).

3.  Information from the military record follows:

   a. Date and term of enlistment. *

   b. Date entered Initial Active Duty Training (or date scheduled to enter, if member failed to
report). *

   c. Date of birth. *

   d. Test scores. *

e. Formal training completed. *

f. Date assigned to current unit of assignment. *

g. Length of prior service, active and inactive. *

h. Promotions and dates thereof. *

i. Demotions, if any, and reasons and dates thereof.

j. Time lost.  (Give reasons and dates, if applicable, or write N/A)

k. Record of disciplinary actions.  (Include action under Article 15, UCMJ, or state military code listing specific offenses) *

l. Conviction of court-martial.  (Specify offenses, findings, sentence and Attach copies, if applicable.  Redacted copies, with victim names, privacy act information, or other information as determined by legal authorities concealed, are acceptable). *

m. Overall ratings on member performance reports (Attach copies of EPBs/OPBs, if applicable).

n. Favorable communications, citations, or awards (if applicable).

o. Derogatory data, other than action by court-martial or under Article 15, UCMJ or state military code (attach documentation) (if applicable).

p. Medical or other data meriting consideration (if applicable).

q. For members who have not completed initial training (basic or technical), summarize progress or describe failure to progress (if applicable).

r. The respondent, (grade and name) reported being a sexual assault victim (see **Note 2**).

s. For AFR and ANG members who have a reserve service commitment, provide the reason for the commitment and the expiration date of the commitment.  For members who do not have a reserve service commitment, state, "Member does not have a reserve service commitment."

t. For AFR and ANG members who have received educational assistance, special pay, or bonuses, provide the specific information pertaining to the assistance, pay or bonus the member received.  For members who have not received educational assistance, special pay or bonuses, state "Member has not received educational assistance, special pay or bonuses." This information is needed for possible recoupment action.

u. For Unit and ANG, provide member's current mailing address in accordance with records maintained by the member's assigned unit and MilPDS.

4.  Before recommending this discharge, I (describe efforts or other corrective actions and the extent of their effectiveness, and attach records of counseling or other documented action). **Note**: If the member is alleging or has alleged that (he) (she) was the victim of sexual assault, include the following paragraphs as applicable,

a. (I am aware that the member is alleging or has alleged that (he) (she) was the victim of sexual assault but (he) (she) is not entitled to request review of this separation action by the general court-martial convening authority or the first general officer in the chain of command, whichever is higher, per DAFI 90-6001, *Sexual Assault Prevention and Response (SAPR) Program*, paragraph 6.6. and DAFI 36-3211, paragraph 3.29).

b. (I am aware that the member is within 1 year of the final disposition of (his) (her) sexual assault case and entitled to request review of this separation action by the general court-martial convening authority or the first general officer in the chain of command, whichever is higher, per DAFI 90-6001, *Sexual Assault Prevention and Response (SAPR) Program*, paragraph 6.6. and DAFI 36-3211, **paragraph 3.29**.  The member has been properly notified of (his) (her) right to request review.  (The member has requested general court-martial convening authority review and I have attached documents to justify this separation action IAW the requirements of DAFI 36-3211, **paragraphs 3.29.3** and **3.29.3.1**) (The member did not request general court-martial convening authority review.)

5.  I do/do not recommend probation and rehabilitation IAW DAFI 36-3211, **Chapter 9.** (Specific reasons must be given if probation and rehabilitation is not recommended and the basis for discharge requires it to be considered.)

6.  In my judgment, this member (should) (should not) be reported under AFI 71-101, Volume 1, *Criminal Investigations Program*.

7.  Actions required under DoDM5200.02_AFMAN16-1405, *Air Force Personnel Security Program*, are complete (if applicable).

8.  Include or attach any other information or documents pertaining to the case (if applicable).

Signature

Typed Name, Grade and Title

Attachments:

1.  _____

2.  _____

cc:  _____

**Notes**:

1.  Enter appropriate component.  Example:  For ANG, state "I recommend that (grade, name) be discharged from the Air National Guard of the United States. For AFR, state "I recommend that (grade, name) be discharged from the Air Force Reserve."

2.  Omit if not applicable.  Under DAFI 90-6001, paragraph 6.6.2, when a commander recommending administrative separation action is aware, or is made aware by the respondent or other, that the respondent is alleging or has alleged that the service member was a sexual assault victim, the Commander shall notify the separation authority that the discharge proceeding involves a sexual assault victim.  The Commander, (or equivalent) recommending administrative separation must provide sufficient information to the separation authority concerning the alleged assault and the respondent's status to ensure a full and fair consideration of the victim's military service and particular situation.  Commanders should consult with AF Office of Special Investigations and the servicing legal office for guidance on the level of information that may be applicable.

**DAFI36-3211  24 JUNE 2022**

**Attachment 9**

**FORMAT FOR RESERVE COMPONENT SWORN AFFIDAVIT OF SERVICE BY MAIL**

State of (specify)

County of (specify)

(Name, rank of dispatcher), being duly sworn deposes and says:

1.  That (he) (she) is a (member) (employee) of the (AFR) (ANG) (other) at (specify USAF base).

2.  That on the _____ day of _____, 20_____, in the performance of (his) (her) official duties, mailed the original memorandum, Letter of Notification of (appointment)(enlistment), a true copy of which is attached hereto, via certified mail, return receipt requested, and by first-class mail, to (respondent's name, rank) at (address, street, city, state, ZIP), that being the last known address given to the (custodian of Electronic Unit Personnel Record Group) as the one at which official mail would be received or forwarded to (him)(her) by depositing the same in an official depository of the US Postal Service at (base or city and state) in a securely wrapped and sealed US postage and fees prepaid envelope addressed to (him)(her) at said address.

(Signature of dispatcher)

Attachment

Copy of Memorandum

Sworn to and subscribed to before me this _____ day of _____, 20_____.

(Notary Public) or (see **Note**)

(Signature of officer administering oath)

(Typed name and rank)

**Note**:  Swear to the affidavit before a Notary Public or an officer on active duty.  "Active Duty" means full-time in the active military service of the US.  It includes duty on the active duty list, full-time training duty, annual training duty, and attendance, while in the active military service, at a school designated as a service school by law or by the Secretary of the military department concerned.

**Attachment 10**

**MEMORANDUM OF NOTIFICATION (ARC ENLISTED - NOT BOARD ELIGIBLE)**

(Appropriate Letterhead)

Date

MEMORANDUM FOR (Grade, Name)

FROM:  Commander

        (Mailing Address)

SUBJECT:  MEMORANDUM OF NOTIFICATION of Intent to Discharge

1.  I am recommending you for discharge from the (Air Force Reserve) (Air National Guard of the United States and as a Reserve of the AF).  The authority for this action is DAFI 36-3211, paragraph (enter appropriate paragraph(s)).  This action could result in your separation with a (enter least favorable possible characterization) discharge characterization.  I am recommending that your service be characterized as (enter recommended service characterization).  (List Name/Office) is the discharge/separation authority for this action.

2. The specific reason for the proposed discharge is (enter specific reason for separation or discharge).  Copies of the documents to support this recommendation will be forwarded to the separation authority.  The (Discharge or Separation Authority) or a higher authority will decide whether you will be discharged or retained in the Air Reserve Component.  An involuntary discharge makes an individual ineligible for reenlistment in the Air Force and probably precludes enlistment in any component of the armed forces.

3.  You have the right to:

a. Consult legal counsel.

b. Submit statements or documents on your behalf to be considered in the disposition of the case.

c. Waive your rights.  You may consult legal counsel before making a decision to waiver any of your rights.

4.  Military legal counsel is available to assist you.  Please contact the Area Defense Counsel

(ADC) closest to you, or if you do not know which ADC is closest to you, contact the Robins AFB ADC office at (478) 926-5852 for assistance.  You have the ability to request specific military counsel, may also consult civilian counsel retained at your own expense, or request military counsel of your choice, if such counsel is serving in an active status in any branch of the Armed Forces of the US and is reasonably available. Guidance on counsel is provided in DAFI 51-201, *Administration of Military Justice*.

5.  You may waive your rights contained in paragraphs 3(a) and 3(b) after having the opportunity to consult with counsel.  You must return the attachment - Member's Statement Memorandum - within 30 calendar days of receipt specifying which rights you choose to exercise as outlined in paragraph 3(a) and 3(b) above, along with any comments you choose to submit.  If you fail to acknowledge receipt of this Memorandum of Notification, consult legal counsel, or submit statements on your behalf within 30 calendar days, your failure to comply will constitute a waiver of your right to do so.  Your case will be processed based on the information available and without further notice to you.  I will consider granting an extension of the time to reply if additional time is needed by you or your counsel.  You or your counsel must submit a written request for such delay, stating the reasons and how much time is needed. The decision whether to grant the additional time is discretionary with me.

6.  If you have previously made a restricted or unrestricted report of sexual assault, you have the right to seek assistance from the Sexual Assault and Response Coordinator prior to discharge.

7.  If you have made an unrestricted report of sexual assault, are being recommended for discharge within 1 year of final disposition of the sexual assault allegation, and believe this recommendation for discharge was initiated in retaliation for making that report, you have the right to request review of this recommendation by the commander exercising general court-martial convening authority or first general officer in your chain of command if the general court-martial convening authority is not a general officer, whichever is higher.  If you request this review, the commander exercising general court-martial convening authority or higher authority will review the circumstances of, and grounds for, this recommendation for discharge and decide whether you will be discharged or retained in the Air Force.

8.  You have the opportunity to voluntarily extend your ETS to allow the separation process to run its course.  If separation takes place on ETS while involuntary discharge is pending, then you are not eligible to reenlist.  See paragraphs **3.12.5.1** and **3.12.5.2**.

9.  You are required to complete a comprehensive Separation History and Physical Examination.  You have been scheduled for a medical examination.  You must report to (medical facility) at (time) on (date) for the examination.  (**Note**: If time permits, the member

may elect to have the Separation History and Physical Examination accomplished through a DoD Military Treatment Facility or through the Veterans Affairs. **Exception:**  Only certain Air Reserve Component members are required to undergo the Separation History and Physical Examination.  Check DAFMAN 48-123 for eligibility criteria.  If not applicable, remove from memo.

10.  If you have received any advanced educational assistance monies, special pay, or bonuses, you may be required to repay the US for these monies under the authority of 10 USC § 2005 (see **Note**).

11.  Any personal information you furnish in rebuttal is covered by the Privacy Act of 1974. A copy of DAFI 36-3211, Part 2 is available for your use (say where).

12.  Execute the acknowledgment of receipt below and return it to me immediately (if not served in person, require return within 24 hours of receipt).

                                                                    Commander's Signature Block

Attachments:
1.  Documents supporting the basis for discharge
2.  Member's Statement Memorandum
3.  Privacy Act Statement

MEMBER'S ACKNOWLEDGEMENT OF RECEIPT:

I received this Memorandum of Notification, dated (date of memorandum), at (hours) on (date of receipt), informing me of processing IAW DAFI 36-3211, Part 2, "Separation of Enlisted Members", paragraph (paragraph(s) on which discharge is based).

I understand that I have the right to:
1.  Consult counsel.
2.  Submit statements on my own behalf.
3.  Waive either of the above rights.

I acknowledge that:

I have received copies of the documents to be forwarded to the separation authority in support of the recommendation for my discharge.

I have been given an appointment to consult military legal counsel.

I understand that:

This action may result in my discharge from the Air Force (for ANG: Air National Guard of the United States and the Reserve of the Air Force) with (enter the least favorable type of separation).

That my failure to acknowledge receipt of this action, consult counsel, or submit statements within 30 calendar days will constitute a waiver of my right to do so.

(Member's signature)

(Typed name, grade)

**Note**:  Add the following paragraph only in cases involving recoupment of education assistance funds under 10 USC § 2005: "I understand that the separation authority will make the findings and recommendations required to the Secretary of the Air Force to determine if I did not complete the period of active duty specified in an agreement for advanced educational assistance, or I did not fulfill any term or condition prescribed in the agreement. I understand that I am subject to the repayment provisions of 37 USC § 303a (e) and to such other terms and conditions contained in the agreement as authorized by 10 USC § 2005(a) (3)-(4)."

**DAFI36-3211  24 JUNE 2022**                                                                    **487**

## Attachment 11

### SAMPLE MEMORANDUM MEMBER'S STATEMENT (ARC ENLISTED - NOT BOARD ELIGIBLE)

(Appropriate Letterhead)

Date

MEMORANDUM FOR COMMANDER

FROM: (Grade, Name)

SUBJECT:  Member's Statement

1.  I have been previously notified that you are recommending me for discharge under DAFI 36-3211, Part 2, *Separation of Enlisted Members*, paragraph(s) and of the specific basis of the proposed discharge.

2.  I make the following election of rights in this case:

a. Military legal counsel was made available to me.  I (have consulted) (hereby waive my option to consult) counsel.

b. I (am submitting the attached statements for consideration by the separation authority) (hereby waive my right to submit statements).

(Grade, Name, and Signature)

Attachment(s):

1.  Statements (if any)
**Note**:  This attachment must be returned within 30 calendar days of receipt.

**Attachment 12**

**MEMORANDUM OF NOTIFICATION (ARC ENLISTED - BOARD ELIGIBLE)**

(Appropriate Letterhead

Date

MEMORANDUM FOR (Grade, Name)

FROM:  COMMANDER, _____
            Mailing Address

SUBJECT:  Memorandum of Notification of Intent to Discharge – Board Hearing1.  I am recommending you for discharge from the (Air Reserve Component) (Air National Guard of the United States and as a Reserve of the AF).  The authority for this action is DAFI 36-3211, paragraph (enter appropriate paragraph(s)).

*2.  My reasons for these actions are: (enter specific reason for separation or discharge).  Copies of the documents to support this recommendation will be forwarded to the separation authority.

3.  This action could result in your separation with (specify least favorable type of separation authorized for the reason or reasons given in **paragraph 2**).  The (enter Discharge or Separation Authority) or a higher authority will decide whether you will be discharged or retained in the Air Reserve Component.  An involuntary discharge makes an individual ineligible for reenlistment in the Air Force and probably precludes enlistment in any component of the armed forces.

4.  You have the right to:

a. Consult legal counsel.
b. Present your case to an administrative discharge board.
c. Be represented by legal counsel at a board hearing.
d. Submit statements on your own behalf in addition to, or in lieu of, the board hearing.
e. Waive the above rights.

5.  You may waive your rights contained in paragraph 4(a)-(d) above, after having the opportunity to consult with counsel.  Within 30 calendar days of receipt of this notification, you must return the attachment, Member's Statement of Board Hearing or Unconditional Waiver, specifying the rights you choose to exercise as outlined in paragraph 4(a)-(d) above.  Failure to respond will constitute a waiver of your rights and this separation action will be

processed without an administrative discharge board based on the information available and without further notice to you.

6.  I will consider granting an extension of the time to reply if additional time is needed by you or your counsel.  You or your counsel must submit a written request for such delay, stating the reasons and how much time is needed.  The decision whether to grant the additional time is discretionary with me.

7.  You have the right, prior to action by the separation authority, to submit statements or documents to be considered in the disposition of your case.  If you waive your right to a hearing before an administrative discharge board, you may submit written statements on your own behalf.  I will send the statements to the separation authority with the case file to be considered with this recommendation.

8.  Military legal counsel is available to assist you.  An appointment has been scheduled with (grade, name), on (date and time) at (location).  You may also consult civilian counsel retained at your own expense, or request military counsel of your choice, if such counsel is serving in an active status in any branch of the Armed Forces of the US and is reasonably available.  Guidance on counsel is provided in DAFI 51-201 *Administration of Military Justice*.  Non-lawyers may not represent a member before a board unless: You expressly decline appointment of counsel qualified and certified under Article 27(b) of the Uniform Code of Military Justice and you request specific non-lawyer counsel; or the separation authority assigns the non-lawyer counsel as assistance counsel.  (For ANG, replace "qualified and certified under Article 27(b) of the Uniform Code of Military Justice" with "qualified under Article 27(b) (1) of the Uniform Code of Military Justice").

9.  You have the opportunity to voluntarily extend your ETS to allow the separation process to run its course.  If separation takes place on ETS while involuntary discharge is pending, then you are not eligible to reenlist.  See paragraphs 3.12.5.1 and 3.12.5.2**.**

10.  Failure to make a personal appearance at an administrative discharge board hearing, after having indicated an intention to do so, will result in the case being heard by the administrative discharge board in your absence.

11.  You are required to complete a comprehensive Separation History and Physical Examination.  You have been scheduled for a medical examination.  You must report to (medical facility) at (time) on (date) for the examination.  (**Note**:  If time permits, the member may elect to have the Separation History and Physical Examination accomplished through a DoD Military Treatment Facility or through the Veterans Affairs.  **Exception:**  Only certain Air Reserve Component members are required to undergo the Separation History and Physical

Examination.  Check DAFMAN 48-123 for eligibility criteria.  If not applicable, remove from memo).

12.  If you have previously made a restricted or unrestricted report of sexual assault you have the right to seek assistance from the Sexual Assault Response Coordinator prior to discharge.

13.  If you have made an unrestricted report of sexual assault, and are being recommended for discharge within 1 year of final disposition of the sexual assault allegation and believe this recommendation for discharge was initiated in retaliation for making that report, you have the right to request review of this recommendation by the commander exercising general court-martial convening authority or first general officer in your chain of command if the general court-martial convening authority is not a general officer, whichever is higher.  If you request this review, the commander exercising general court-martial convening authority or higher authority will review the circumstances of, and grounds for, this recommendation for discharge and decide whether you will be discharged or retained in the Air Force.

14.  If you received advanced educational assistance, special pay or bonuses, and have not completed the period of active duty you agreed to serve, you may be subject to recoupment.

15.  Any personal information you furnish in rebuttal is covered by the Privacy Act of 1974.  A copy of DAFI 36-3211 is available for your use (say where).

*16.  (Only applies to members eligible for transfer to the Retired Reserve).  Our records indicate you are eligible for transfer to the Retired Reserve.  If you desire to apply for transfer to the Retired Reserve in lieu of administrative discharge, complete and return the attached AF Form 131, *Application for Transfer to the Retired Reserve*.  Should you elect to apply for transfer to the Retired Reserve, your application will require approval by the Office of the Secretary of the Air Force prior to discontinuance of administrative discharge action.  If you are discharged in lieu of transfer to the Retired Reserve, you will not be eligible for transfer to the Retired Reserve, allowed to reenter the Air Force Reserve for the purpose of transfer to the Retired Reserve, and will only be entitled to retired pay and medical care at age 60.  Do not apply for transfer to the Retired Reserve via myFSS.

17.  Execute the acknowledgment below and return it to me immediately (if not served in person, require return within 24 hours of receipt).  Failure to acknowledge receipt of this notification constitutes a waiver of all rights and this separation case will be processed based on the information available and without further notice to you.

Commander's Signature Block

Attachments:
1.  Documents supporting the basis for discharge
2.  Documents containing any other derogatory information and relied upon
3.  Member's Statement of Board Hearing or Unconditional Waiver
4.  Privacy Act Statement
5.  AF Form 131, *Application for Transfer to the Retired Reserve* (if applicable)

MEMBER'S ACKNOWLEDGEMENT OF RECEIPT:

1.  I received this Memorandum of Notification – Board Hearing, dated _____, informing me of processing IAW DAFI 36-3211, Part 2, Separation of Enlisted Members, (paragraph(s) on which discharge is based) at (time) hours on (date of acknowledgement).

2.  I understand I have the right to:

a. Consult legal counsel.

b. An administrative board hearing.

c. Be represented by counsel at a board hearing.

d. Submit statements on my own behalf.

e. Waive the above rights.

3.  I acknowledge that:

a. I have received copies of the documents to be forwarded to the separation authority in support of the recommendation for discharge.

b. I have been given the opportunity to consult legal counsel.

4.  I understand that:

a. This action may result in my discharge from the AF with a discharge of (enter Characterization of Service).

b. My failure to acknowledge receipt of this action, consult counsel, or to submit statements will constitute a waiver of my right to do so.

(Member's signature)
(Typed Name, Grade)

**Note**:

1. Include information about special processing requirements if the member is eligible to apply for transfer to the Retired Reserve or other conditions apply.

2. Add the following paragraph only in cases involving recoupment of education assistance funds under 10 USC § 2005: "I understand that the separation authority will make the findings and recommendations required to the Secretary of the Air Force to determine if I did not complete the period of active duty specified in an agreement for advanced educational assistance, or I did not fulfill any term or condition prescribed in the agreement. I understand that I am subject to the repayment provisions of 37 USC § 303a (e) and to such other terms and conditions contained in the agreement as authorized by 10 USC § 2005(a) (3)-(4)."

**DAFI36-3211  24 JUNE 2022**                                                                                 **493**

## Attachment 13

## SAMPLE LETTER MEMBER'S STATEMENT OF BOARD HEARING OR UNCONDITIONAL WAIVER (ARC ENLISTED - BOARD ELIGIBLE)

(Appropriate Letterhead)

Date

MEMORANDUM FOR COMMANDER, _____

FROM: (Grade, Name)

SUBJECT:  Discharge Under DAFI 36-3211 (Board Hearing or Unconditional Waiver)

1.  I have received your Memorandum of Notification dated _____, informing me of processing IAW with DAFI 36-3211, paragraph(s) _____.

2.  I know that I am entitled to request or waive, in writing, the following rights;

   a.  To consult counsel.

   b. To present my case to an administrative discharge board.

   c. To be represented by counsel at a board hearing.

   d. To submit statements on my own behalf.

   e. To waive the above rights.

3.  I make the following elections with regard to the rights detailed in **paragraph 2**.

4.  I (do) (do not) request retention in the (enter the Air Reserve Component).

5.  I (do) (do not) request to submit an application for transfer to the Retired Reserve, in lieu of further action (only if retirement eligible).

6.  I (will) (will not) submit statements for consideration by the separation authority.

7.  I (do) (do not) waive my right to a board hearing.

8.  I (will) (will not) make a personal appearance before the discharge board.

9.  I (do) (do not) want representation by the military legal counsel made available to me.  If not, the military legal counsel of my choice is:  _____.

10.  I (do) (do not) wish to be represented by civilian counsel.  If so, the name and address of my counsel is:  _____.

11.  Witnesses I wish to have appear before the board are: (Name, address, and phone number, if known).


_____                    _____

(Grade, Name, and Signature)                                  Date /   Hour


**Note**:  Circle (do) or (do not) or (will) or (will not) in all items.  Sign above your typed name, enter the date and hour, and return to _____.

This attachment must be returned within 30 calendar days of receipt.  Failure to acknowledge receipt or to respond regarding your selection of rights, within 30 calendar days after receipt of the Memorandum of Notification constitutes a waiver of all your rights.  This will result in the case being processed without an administrative discharge board hearing on the information available.

**Attachment 14**

**PRIVACY ACT STATEMENT FOR ENLISTED MEMBERS SUBJECT TO INVOLUNTARY SEPARATION**

AUTHORITY:  10 USC, Chapter 1221, *Separation.*

PURPOSE:  You are entitled to submit statements about your case so you will have a chance to comment on the recommendation for your separation or discharge.

*ROUTINE USES:  The statements you submit will be used by the processing activities and separation authority.  The information in the statements will be considered in deciding whether you will be discharged or retained.  The statements will become a part of the discharge case file.  If you are discharged, the case file will be kept in your Master Personnel Record permanently.  It may be disclosed to any DoD component including the Department of the AF at base, MAJCOM/FLDCOM, USAF/USSF level, or Office of the Secretary.  It may be used for other lawful purposes including litigation.

DISCLOSURE IS VOLUNTARY:  You are not required to submit any statements or supply personal information.  If you have favorable information and do not make it available, you will deprive yourself of the help it might be.

(Member may retain a copy)

496                                                                    DAFI36-3211  24 JUNE 2022

**Attachment 15**

**SAMPLE POSTMASTER MEMORANDUM**

---

(Appropriate Letterhead)

Date

MEMORANDUM FOR POSTMASTER
                      ANYWHERE USA 12345-6789

FROM:  REQUESTING ORGANIZATION

SUBJECT:  Request for Mailing Address

1.  Please furnish this agency with the new address, if available, for the following individual or verify whether or not the address given below is one at which mail for this individual is currently being delivered.  If the following address is a post office box, please furnish the street address as recorded on the box holder's application form.
Name:  John Doe
Last Known Street Address:  100 Alpha Dr.

2.  I certify that the address information for this individual is required for the performance of this agency's official duties.

                                        Military Personnel Technician
                                        Reserve Personnel Contact Center
                                        Personnel Services Directorate

FOR POST OFFICE USE ONLY
    () a. Mail is delivered to individual at above address
    () b. Not known at address given
    () c. Moved, left no forwarding address
    () d. No such address
    () e. Other (Specify):  _____

New Address                          Box Holder's Street Address

_____          _____
_____          _____

                                        Postmark/Date Stamp

                                        _____
                                          (STAMP HERE)

**DAFI36-3211  24 JUNE 2022**                                                                                   **497**

**Attachment 16**

**SAMPLE MEMORANDUM OF VOLUNTARY EXTENSION OF ENLISTMENT**

---

(Appropriate Letterhead)

(Date)

MEMORANDUM FOR (Individual's rank and name)

FROM: (Unit Commander's unit and office symbol)

SUBJECT:  Voluntary Extension of Enlistment

1.  Your current expiration of term of service expires (date).  To afford yourself due process, you may voluntarily extend your current enlistment to allow sufficient time for processing of your administrative discharge case.  If separation occurs on your expiration of term of service while administrative discharge is pending, you will not be eligible to reenlist.

2.  Indicate your decision regarding voluntary extension of your enlistment by completing and signing the indorsement listed below.


Signature
Typed Name, Grade, and Title

1st Ind, (Individuals rank and name)

TO: (Unit Commander's unit and office symbol)

I elect to voluntarily extend my enlistment.

OR

I elect not to voluntarily extend my current enlistment.


Member's Signature

---

**Attachment 17**

**SEPARATION PAY, READJUSTMENT PAY, AND SEVERANCE PAY**

**A17.1.  Separation Pay.**

A17.1.1.  **Full Separation Pay.**  Full separation pay is payable to an active duty list regular or reserve officer who meets each of these conditions:

A17.1.1.1.  6 or more, but less than 20, years of active military service.

A17.1.1.2.  Separating involuntarily and none of the limiting conditions in **paragraph A17.1.3** apply.

A17.1.1.3.  Separating involuntarily under one of these specific conditions:

A17.1.1.3.1.  Fully qualified for retention but denied continuation.

A17.1.1.3.2.  Fully qualified for retention but separating under a reduction-in-force.

A17.1.1.3.3.  Separating as a result of being non-selected for promotion (including not qualified for promotion to O-2).  **Exception:**  An officer who directly causes the officer's non-selection for promotion through written communication to the promotion board (including a request not to be selected) is not eligible for separation pay.  This exception applies to selection boards convened under Title 10 United States Code Section 611, *Convening of selection boards (a) on or after 17 October 1998*.  Effective with the 2001 National Defense Authorization Act, 10 USC § 1174, any officer who is offered continuation for a period of time to reach retirement eligibility and declines that continuation is not eligible for separation pay.

A17.1.1.3.4.  Separating or transferring to the Retired Reserve as a result of maximum service or age.

A17.1.1.4.  Enters into a written agreement to serve in the Ready Reserve for a period of 3 years following separation from active duty.

A17.1.1.4.1.  If the officer has an unfulfilled MSO at the time of separation from active duty, the 3-year Ready Reserve obligation begins on the day after the day on which the officer completes the MSO.

A17.1.1.4.2.  A Regular officer receives an appointment as a Reserve officer upon separating from active duty if qualified for such appointment.

A17.1.1.4.3.  A Regular officer not qualified for a Reserve appointment need not be appointed to be considered to have met this condition of eligibility for full separation pay.

A17.1.2.  **Half Separation Pay.**  Half separation pay is payable to an active duty list Regular officer who meets each of these conditions:

A17.1.2.1.  6 or more, but less than 20, years active military service.

A17.1.2.2.  Separation is Honorable or General (Under Honorable Conditions) and none of the limiting conditions in **paragraph A17.1.3** apply.

A17.1.2.3.  Involuntary discharge after being required to show cause for retention and one of these specific conditions apply:

A17.1.2.3.1.  Drug or alcohol abuse rehabilitation failure.

A17.1.2.3.2.  In the interest of national security.

A17.1.2.3.3.  A service-specific program established as a half-payment level by the SecAF.

A17.1.2.4.  Enters into a written agreement to serve in the Ready Reserve for a period of 3 years following separation from active duty (except where waived by the SecAF).

A17.1.2.4.1.  If the officer has an unfulfilled MSO at the time of separation from active duty, the 3-year Ready Reserve obligation begins on the day after the day on which the officer completes the MSO.

A17.1.2.4.2.  A Regular officer receives an appointment as a Reserve officer upon separating from active duty if qualified for such appointment.

A17.1.2.4.3.  A Regular officer not qualified for a Reserve appointment need not be appointed to be considered to have met this condition of eligibility for half separation pay.

A17.1.3.  **Limitations.**  An officer is not eligible for separation pay under these circumstances:

A17.1.3.1.  Separation at their own request to include resignation in lieu of further administrative action under **paragraph 19.9.8** of DAFI 36-3211.

A17.1.3.2.  Eligible for retired pay based on military service.

A17.1.3.3.  Dismissal as a result of a court-martial sentence.

A17.1.3.4.  Dropped from the rolls of the USAF.

A17.1.3.5.  Discharge Under Other Than Honorable Conditions (UOTHC).

A17.1.3.6.  Discharge for substandard performance (except drug or alcohol abuse rehabilitation failure), misconduct or moral or professional dereliction.

A17.1.3.7.  Separation under a service-specific program established as a no-payment level by the SecAF.

A17.1.3.8.  The SecAF determines that the conditions under which the officer is separating do not warrant separation payment.

A17.1.3.9.  Otherwise eligible for separation pay and does not agree to serve 3 years in the Ready Reserve.

A17.1.4.  **Computing Active Military Service and Separation Pay.** The local financial services office computes the full- or half-separation pay payable to officers.

A17.1.4.1.  The 6 or more years of active military service do not have to be continuous. Count each full month of active military service that is in addition to the number of full years of active military service as one-twelfth of a year.  Disregard any remaining fractional part of a month.

A17.1.4.2.  Full separation pay is 10 percent of 12 times the amount of monthly basic pay to which entitled at the time of separation from active duty, times the years and full months of active military service.

A17.1.4.3.  Half separation pay is 50 percent of what the full separation pay would have been.

**A17.2.  Severance Pay or Readjustment Pay.**

A17.2.1.  An officer who was on EAD on 15 Sep 81 may elect to receive severance pay (Regular officers) or readjustment pay (Reserve officers) under laws in effect prior to 15 Sep 81 instead of separation pay.  The officer must meet one of the following conditions **(T-0)**:

A17.2.1.1.  Involuntary separation and character of service is Honorable or General (Under Honorable Conditions).

A17.2.1.2.  Voluntary discharge after the officer is notified to show cause for retention under DAFI 36-3211, and character of service is Honorable or General (Under Honorable Conditions).

A17.2.2.  Computing Readjustment Pay.   The local financial services office computes readjustment pay.

A17.2.2.1.  When computing years of active federal military service for readjustment pay, count 6 months or more as a whole year, and disregard any part less than 6 months.

A17.2.2.2.  The readjustment pay formula for an officer separating for adverse reasons is one-half month's basic pay multiplied by years of active federal military service but not over 18 years.  The readjustment pay cannot exceed 9 months' basic pay or $15,000, whichever is less.

A17.2.3.  Computing Severance Pay.  The local financial services office computes severance pay.

A17.2.3.1.  When computing years of active federal commissioned service for severance pay, count 6 months or more of active Federal commissioned service as a whole year, and disregard any part less than 6 months.

A17.2.3.2.  The severance pay formula for an officer separating for adverse reasons is 1 months' basic pay multiplied by years of active federal commissioned service but not more than 12 years.  The severance pay cannot exceed 1 year's basic pay.

**A17.3.  Effect on Retired Pay or Disability Compensation.**

A17.3.1.  Retired Pay.  Officers who receive separation pay, severance pay, or readjustment pay and who later qualify for retired or retainer pay under 10 USC or 14 USC, will have deducted an amount equal to the total amount of separation pay, severance pay, and readjustment pay.

A17.3.2.  Disability Compensation.  Officers who receive separation pay, severance pay, or readjustment pay based on active military service and become eligible for disability compensation administered by the Department of the Veterans Affairs will have deducted from such payments an amount equal to the total net amount of separation pay, severance pay, or readjustment pay.

**A17.4.  SecAF Determination.**

A17.4.1.  An officer may be separated under an AF specific program established as one-half or no payment level by the SecAF.

A17.4.2.  Notwithstanding the provisions of this or any other directive, the SecAF may direct, in extraordinary cases, because of the conditions under which an officer is separated, that the member does not warrant separation pay.  This discretionary authority is used sparingly and is not delegated.

A17.4.3.  A recommendation that the SecAF deny separation pay to an otherwise qualified officer may be made by the officer's commander.  Such a recommendation is in memorandum format and contains justification for denial of separation pay.

A17.4.4.  A commander recommending SecAF action under this paragraph notifies the member in writing of the recommendation and justification for the recommendation.  The officer is given 3 duty days to submit a rebuttal with the assistance of military legal counsel.

A17.4.5.  The recommendation and rebuttal are reviewed by the servicing legal office and with the show cause authority's concurrence is forwarded to AFPC/DPMSSR for referral to SAFPC. The show cause authority may disapprove the recommendation and return it to the unit commander.

A17.4.6.  In extraordinary instances, the SecAF may award full separation pay to officers otherwise eligible for half separation pay when the specific reasons for separation and the overall quality of the member's service have been such that denial of such pay would be clearly unjust.  Use the following procedures to make this recommendation:

A17.4.6.1.  Officer submits a memorandum through the unit commander and show cause authority (SCA) outlining the extraordinary instances that justify full separation pay.

A17.4.6.2.  All recipients recommend approval or disapproval with comments to support their recommendation.  Show cause authority forwards the recommendation to AFPC/DPMSSR who forwards it to SAFPC for final action.

**Attachment 18**

**RECOUPMENT STATEMENT**

(CONTRACTUAL AGREEMENTS ON OR AFTER 1 APRIL 2006)

**Note***: This recoupment statement applies only to officers who entered into a contract or agreement for advanced educational assistance, special pays or bonuses on or after 1 April 2006, which has not been satisfied by completion of the associated active duty service commitment or service requirement.*   An officer notified of separation action under Chapter 16, Chapter 17, Chapter 18 of DAFI 36-3211, uses this statement to acknowledge understanding of the rules regarding recoupment.  This statement is also used for the same purpose by an officer who submits a request for voluntary separation under **Chapter 15.**

**Sample Statement**

RECOUPMENT STATEMENT

An Air Force member who receives advanced educational assistance, special pay, or bonuses incurs an active duty service commitment.  If the member fails to complete the educational requirements or separates before completing the agreed period of service, the Air Force will require repayment (recoupment) of all or part of the advanced educational assistance, special pay, or bonuses unless specifically waived by Secretary of the Air Force or exempted from recoupment liability. Guidance on recoupment is provided in DoD 7000.14-R, Department of Defense Financial Management Regulation, Volume 7A: *Military Pay Policy – Active Duty and Reserve Pay*, Chapter 2, or DAFI 36-3211, Part 3, *Separation of Commissioned Officers.*

Advanced education assistance includes such programs as service academies, Armed Forces Health Professions Scholarship Program, Uniformed Services University of the Health Sciences, ROTC college scholarship program, tuition assistance, Air Force Institute of Technology and Air Force Institute of Technology-supervised programs, and the Minuteman education program.

The authority for recoupment is 37 USC § 303a (e), for advanced educational assistance, special pays and bonuses; and the contract or agreement the member signed.

The amount recouped ordinarily is an amount that bears the same ratio to the total amount or cost provided the member as the unserved portion of active duty bears to the total period of active duty the member agreed to serve.  However, for accession and/or retention bonuses in certain medical specialties, the law may require recoupment of the entire amount paid to the officer.

**I have read and understand the above.**


(Signature)                                (Date)

(Typed name, grade)

504                                                        DAFI36-3211  24 JUNE 2022

**Attachment 19**

**VOLUNTARY AND INVOLUNTARY SEPARATION OR DISCHARGE AND DROPPING COMMISSIONED OFFICERS FROM THE ROLLS OF THE AIR FORCE (ARC OFFICERS)**

**Table A19.1.  ARC Separation or Discharge.**

| RULE | **A** If the reason for separation/ discharge is | **B** Reference Paragraph | **C** Notification Required (See Section 19C) | **D** Board Entitlement (See Chapter 20) | **E** Discharge Authority is (See Notes 3 or 4) | **F** Type of Separation Authorized | **G** SecAF Approval Required (See Notes 1 or 4) |
|---|---|---|---|---|---|---|---|
| 1 | Hardship | **15.1.1** | No | No | TAG, CG, or discharge authority | Honorable | Yes (**Note** 3) |
| 2 | Completion of required active service | **15.1.2** | No | No | TAG, CG, or discharge authority | Honorable | No |
| 3 | Conscientious objection | **15.1.8** | No | No | TAG, CG, or discharge authority | Honorable | Yes |
| 4 | Pregnancy or childbirth | **15.1.12** | No | No | TAG, CG, or discharge authority | Honorable | No |
| 5 | Final vows in a religious order | **15.1.17** | No | No | TAG, CG, or discharge authority | Honorable | No |
| 6 | Regular or ordained ministers | **15.1.18** | No | No | TAG, CG, or discharge authority | Honorable | No |
| 7 | Survivorship | **15.1.19** | No | No | TAG, CG, or discharge authority | Honorable | No |
| 8 | Miscellaneous reasons | **15.1.20.** | No | No | TAG, CG, or discharge authority | Honorable | Yes (See **Note** 3) |
| 9 | Resignation resulting in honorable discharge | **15.16.1.** | No | No | TAG, CG, or discharge authority | Honorable | No |
| 10 | Resignation resulting in general discharge | **15.16.2** | No | No | TAG, CG, or discharge authority | General | Yes |
| 11 | Resignation in | **15.16.3** | No | No | TAG, CG, or | Honorable, | Yes (See |

| | | | | | discharge authority | General or UOTHC | Note 3) |
|---|---|---|---|---|---|---|---|
| | lieu of action under Section 18.5.D and/or E | | | | | | |
| 12 | Resignation for the good of the service | 15.16.4. | No | No | TAG, CG, or discharge authority | Honorable, General or UOTHC | Yes |
| 13 | Insufficient retainability for mobilization or ineligibility for worldwide deployment (AFR only) | 15.16.5 | | | | | |
| 14 | Applying for conditional release | 15.17. | No | No | TAG, CG, or Wing Commander on G-series order | Honorable | No |
| 15 | Second lieutenants not qualified for promotion (AFR only) | 16.3 | No | No | Discharge authority | Honorable | Yes |
| 16 | Chaplains/ Chaplain candidates | 16.8 | No | No | TAG, CG, or discharge authority | Honorable | No |
| 17 | Incompatible status | 16.9.1 | No | No | TAG, CG, or discharge authority | Honorable | No |
| 18 | Discharge for position, grade, and age | 16.11 | No | No | TAG, CG, or discharge authority | Honorable | No |
| 19 | General officers who cease to occupy general officer positions | 16.12 | No | No | TAG, CG, or discharge authority | Honorable | No |
| 20 | Second lieutenants not qualified for promotion (ANG only) | 16.13 | No | No | TAG, CG, or discharge authority | Honorable | Yes |
| 21 | Effect of failure of selection for promotion (twice deferred) | 16.14 | No | No | TAG, CG, or discharge authority | Honorable | No |

506                                                                    DAFI36-3211  24 JUNE 2022

| 22 | Elimination for length of service | 16.15 | No | No | TAG, CG, or discharge authority | Honorable | No |
| 23 | Selective early removal from the RASL | 16.16 | No | No | TAG, CG, or discharge authority | Honorable | Yes |
| 24 | Failure to reply to official correspondence (AFR Only) | 16.17 | Yes | Yes | TAG, CG, or discharge authority | Honorable | Yes |
| 25 | Inability to locate | 16.18 | Yes | Yes | TAG, CG, or discharge authority | Honorable or General only | No |
| 26 | Elimination from ISLRS | 16.19 | No | No | ARPC commander | Honorable | No |
| 27 | Physical disqualification | 16.20 | No | No | TAG, CG, or discharge authority | Honorable | Yes (See **Note 2**) |
| 28 | Accepting civil employment or military service with a foreign government or concern | 16.22 or 16.23 | Yes | Yes | TAG, CG, or discharge authority | Honorable, General or UOTHC | Yes |
| 29 | Loss of nationality | 16.24 | No | No | TAG, CG, or discharge authority | Honorable | Yes |
| 30 | Withdrawal from military medical educational assistance programs | 16.25 | Yes | Yes | TAG, CG, or discharge authority | Honorable | Yes (See **Note 2**) |
| 31 | Officers declining voluntary EAD | 16.26 | No | No | Discharge authority | Honorable | No |
| 32 | Accelerated appointments | 16.27 | No | No | TAG, CG, or discharge authority | Honorable | No |
| 33 | Drug or alcohol abuse rehabilitation failure | 18.5.5 or 18.5.6. | Yes | Yes | TAG, CG, or Discharge Authority | Honorable, General or Under UOTHC | Yes |
| 34 | Serious or recurring misconduct, | 18.7.1 | Yes | Yes | TAG, CG, or discharge authority | Honorable, General or UOTHC | Yes |

| | | | | | | |
|---|---|---|---|---|---|---|
| | punishable by military or civilian authorities | | | | | |
| 35 | Foreign court convictions | **18.7.2** | Yes | Yes | TAG, CG, or discharge authority | Honorable, General or UOTHC | Yes |
| 36 | Failure to meet financial obligations | **18.7.3** | Yes | Yes | TAG, CG, or discharge authority | Honorable, General or UOTHC | Yes |
| 37 | Drug abuse | **18.7.4** | Yes | Yes | TAG, CG, or discharge authority | Honorable, General or UOTHC | Yes |
| 38 | Intentional misrepresentation or omission of facts in obtaining an appointment or in official statements or records | **18.7.5** | Yes | Yes | TAG, CG, or discharge authority | Honorable, General or UOTHC | Yes |
| 39 | Culpable failure to perform assigned duties or complete required training | **18.7.6** | Yes | Yes | TAG, CG, or discharge authority | Honorable, General or UOTHC | Yes |
| 40 | Conduct resulting in a loss of professional status | **18.7.7** | Yes | Yes | TAG, CG, or discharge authority | Honorable, General or UOTHC | Yes |
| 41 | Fraternization or unprofessional relationships | **18.7.8** | Yes | Yes | TAG, CG, or discharge authority | Honorable, General or UOTHC | Yes |
| 42 | Improper participation in political activities | **18.7.9** | Yes | Yes | TAG, CG, or discharge authority | Honorable, General or UOTHC | Yes |
| 43 | Failure to follow preventive medical | **18.7.10** | Yes | Yes | TAG, CG, or discharge authority | Honorable, General or UOTHC | Yes |

| | | | | | | |
|---|---|---|---|---|---|---|
| | procedures to prevent HIV transmission | | | | | |
| 44 | Acts of sexual perversion/misconduct | **18.7.11** | Yes | Yes | TAG, CG, or discharge authority | Honorable, General or UOTHC | Yes |
| 45 | Sexual assault | **18.7.12** | Yes | Yes | TAG, CG, or discharge authority | Honorable, General or UOTHC | Yes |
| 46 | Fear of flying by a rated officer | **18.7.13** | Yes | Yes | TAG, CG, or discharge authority | Honorable, General or UOTHC | Yes |
| 47 | Restriction of duties based on asserted moral reasons | **18.7.14** | Yes | Yes | TAG, CG, or discharge authority | Honorable, General or UOTHC | Yes |
| 48 | Retention is clearly inconsistent with the interests of national security | **18.7.15** | Yes | Yes | TAG, CG, or discharge authority | Honorable, General or UOTHC | Yes |
| 49 | Attempting to avoid deployed or hardship duty | **18.7.16** | Yes | Yes | TAG, CG, or discharge authority | Honorable, General or UOTHC | Yes |
| 50 | Extended confinement | **18.7.17** | Yes | Yes | TAG, CG, or discharge authority | Honorable, General or UOTHC | Yes |
| 51 | Unprofessional relationship/s with prospective or new members of the AF | **18.7.18** | Yes | Yes | TAG, CG, or discharge authority | Honorable, General or UOTHC | Yes |
| 52 | Unsatisfactory participation | **18.9** | Yes | Yes | TAG, CG, or discharge authority | Honorable, General or UOTHC | Yes |
| 53 | Substandard performance of duty | **18.10** | Yes | Yes | TAG, CG, or discharge authority | Honorable or General | Yes |
| 54 | Failure to comply with requirements for a medical | **18.11** | Yes | Yes | TAG, CG, or discharge authority | Honorable or General only | Yes |

| | | | | | | |
|---|---|---|---|---|---|---|
| | examination | | | | | | |
| 55 | ANG unique separations | **18.12** | No | No | N/A | Honorable | No |
| 56 | Mismanagement of government affairs | **18.14.1** | Yes | Yes | TAG, CG, or discharge authority | Honorable, General or UOTHC | Yes |
| 57 | Termination of civil service appointment as an ART, MT, or AGR for reasons that warrant termination of appointment as an officer | **18.14.2** | Yes | Yes | TAG, CG, or discharge authority | Honorable, General or UOTHC | Yes |
| 58 | Failure or dismissal from school when attendance is at DoD expense | **18.14.3** | Yes | Yes | TAG, CG, or discharge authority | Honorable, General or UOTHC | Yes |
| 59 | Civilian conviction | **18.15** | Yes | Yes | TAG, CG, or discharge authority | Honorable, General or UOTHC | Yes |
| 60 | Dropping officers from the rolls of the AF | **21.8** | No | No | TAG or discharge authority | Honorable, General of UOTHC | Yes |
| 61 | Conviction by foreign court | **21.9** | Yes | No | TAG, CG, or discharge Authority | Honorable, General of UOTHC | Yes |
| 62 | Conviction by state court-martial (ANG only) | **21.10** | Yes | Yes | TAG, CG, or discharge authority | Honorable, General or UOTHC | Yes |

**Notes**:

1.  Officer cases where the discharge authority recommends discharge and the "SecAF Approval Required" column indicates "Yes" are reviewed by AF/JAJ and sent to the SecAF, who directs the appropriate commander to take discharge action.

2.  Cases are forwarded to the SecAF, or designee, only when recoupment of advanced education assistance (10 USC § 2005 and § 2123) funds are involved.

3.  Unless authority is withheld by the HQ AFRC/CC, the respective AFR GCMCA is the final approval and disapproval authority for all Individual Reservists managed by AFRC (Cat A, B, and E).  ARPC/CC is the final approval and disapproval authority for all Reserve personnel assigned to

the IRR, Standby Reserve (Active and Inactive), Retired Reserve, and those attending Special Professional Education and Stipend Programs.

4.  ANG officer cases where the discharge authority recommends discharge are forwarded to NGB/A1PP for review by NGB/JA, then forwarded to NGB/CF for further recommendation.  Once the reviews are completed and the recommendation is obtained, NGB/A1PP forwards the case for review by AF/JAJ prior to it being sent to the SecAF for final determination.

## Attachment 20

## RESIGNING WHEN NOT ELIGIBLE FOR AN HONORABLE DISCHARGE

Use this memorandum for officers resigning instead of undergoing further administrative discharge proceedings under DAFI 36-3211, *Military Separations*.  Follow the instructions in parentheses ( ). Use material enclosed in brackets [ ] as appropriate.
**Sample Memorandum**

(Appropriate Letterhead)

(Date)

MEMORANDUM FOR (Functional address symbol of wing or comparable commander)

FROM: (Officer's full name, grade)

SUBJECT:  Resignation under DAFI 36-3211 instead of undergoing further administrative discharge proceedings

I am resigning from all appointments in the USAF/USSF under DAFI 36-3211 effective ASAP.

I have received a memorandum notifying me of action initiated under DAFI 36-3211 (cite applicable chapter and paragraph numbers).  (Cite one or more references that cover situations that don't require honorable discharges.)

I am voluntarily resigning instead of undergoing further action under DAFI 36-3211 because I believe it is in my best interest.  Nobody threatened me, coerced me, or made promises to induce me to resign.

I fully understand that by resigning, I am giving up my rights under DAFI 36-3211 and my opportunity to stay in the Air Force.  I understand I may be separated with the worst characterization authorized for discharge under the pending action, unless the Secretary of the Air Force determines I should be separated with a more favorable characterization.

[I am not accountable or responsible for public property or funds.] [I am accountable or responsible for public property or funds.  I have attached the required certificate of relief.] (**Note**: If accountable or responsible for public property or funds, attach a certificate indicating that you have been relieved from accountability or responsibility.  Specify whether you have returned all issued government personal property to the proper agency.)

[I [have] [have not] consulted with counsel regarding this action.] [I decline counsel but (enter grade, full name, and full duty title of the chief, Military Personnel Flight) counseled me and I fully understand my rights and options regarding this action.]  [I fully understand my rights and options regarding this action, as explained to me by (enter area defense counsel's grade and full name, if military, or full name and business address, if civilian, or both).  I fully understand the eligibility criteria for separation pay as explained to

**DAFI36-3211  24 JUNE 2022**

me by the (area defense counsel or chief, Military Personnel Flight).


(Signature)
(TYPED FULL NAME, Grade,
USAF/USSF)
(Organization)


[Attachments:]
[1. Certificate of Relief from Accountability or Responsibility]
[2. Recoupment Statement]