

**NATIONAL GUARD BUREAU**
111 SOUTH GEORGE MASON DRIVE
ARLINGTON VA 22204-1373

ARNG-HRH (RN135)

MEMORANDUM FOR The Adjutants General of the States, Territories, and the Commanding General of the District of Columbia

Subject: Updated Army National Guard (ARNG) Implementing Guidance for "Prioritizing Military Excellence and Readiness" (PPOM 25-015e)

1. References:  See Annex A (Enclosure 1)

2. Purpose.  To provide updated policy guidance and prescribed procedures for separation processing of Soldiers who have a current diagnosis or history of gender dysphoria, or those who exhibit symptoms consistent with gender dysphoria.  The enclosed guidance at Annex B (Enclosure 2) assigns responsibility and prescribes procedures related to Soldiers in any of the categories above.

3. Applicability.  This guidance applies to all ARNG Soldiers including traditional (M-day), T32/T10 AGR, dual-status technicians, and Simultaneous Membership Program (SMP) cadets.

4. Point of contact for this memorandum is Ms. Sharon Archibald, Chief, AGR and Retirement Policy Branch, ARNG-HRH, at DSN ██████████████, or ██████████████.

PEREZ.CARRIE.LY
NN.1232299190
Digitally signed by
PEREZ.CARRIE.LYNN.1232299190
Date: 2026.04.07 15:37:59 -04'00'

CARRIE L. PEREZ
Brigadier General, USA
Assistant Director, Army National Guard
    For Personnel and Talent Management

3 Encls

(CHANGE) Encl 1 (Annex A) References
(CHANGE) Encl 2 (Annex B) Guidance
(RESTATED) Encl 3 (Annexes A-N)
(ADD) Encl 3 (Annex O) Medical FAQs
(ADD) Encl 3 (Annex P) TERA Intent Memo
(ADD) Encl 3 (Annex Q) OSW Memorandum

Enclosure 1
Annex A (PPOM #25-015e)

References

a.  FRAGO 5 (corrected copy) to HQDA EXORD 175-25 Implementation of Executive Order 14183: "Prioritizing Military Excellence and Readiness," 20 November 2025

b.  Under Secretary of War, Personnel and Readiness Memo, "Prioritizing Military Excellence and Readiness: Additional Implementation Guidance on Administrative Separations," 8 October 2025

c.  FRAGO 4 to HQDA EXORD 175-25 Implementation of Executive Order 14183: "Prioritizing Military Excellence and Readiness," 22 July 2025

d.  FRAGO 3 to HQDA EXORD 175-25 Implementation of Executive Order 14183: "Prioritizing Military Excellence and Readiness," 10 June 2025

e.  ARNG-HRH memorandum "Army National Guard (ARNG) Implementing Guidance for "Prioritizing Military Excellence and Readiness" (PPOM 25-015)," 22 May 2025

f.  FRAGO 2 to HQDA EXORD 175-25 Implementation of Executive Order 14183: "Prioritizing Military Excellence and Readiness," 20 May 2025

g.  Secretary of Defense memorandum, "Implementing Policy on Prioritizing Military Excellence and Readiness," 8 May 2025

h.  Under Secretary of Defense, Personnel and Readiness Memo, "Prioritizing Military Excellence and Readiness: Implementation Guidance," 15 May 2025

i.  Assistant Secretary of Defense, Health Affairs, "Additional Guidance on Treatment of Gender Dysphoria," dated 9 May 2025

j.  Army Regulation (AR) 135-175, Separation of Officers

k.  AR 135-178, Enlisted Administrative Separations

l.  Title 32, Section 709, United States Code (32 U.S.C. 709f)

m.  Chief, National Guard Bureau Instruction (CNGBI) 1400.25, Vol 213, National Guard Technician and Civilian Personnel Excepted Service Employment, 31 July 2024

n.  CNGBI 1400.25, Vol 303A, National Guard Technician and Civilian Personnel Excepted Service Employment, 31 July 2024

Enclosure 2
Annex B (PPOM #25-015e)


1. Guidance

   a.  [CHANGE TO READ] Voluntary Separations: States should continue to expeditiously process separations for Soldiers with approved voluntary separations upon receipt of the SECARMY approval memo from NGB.  States must notify their NGB point of contact of the separation date and send a copy of the discharge order when closing out the IPPS-A case. Individuals who elect voluntary separation will be separated no later than the 1st day of the 7th month from the end of phase 1 (01 January 2026).  The United States Army Transformation and Training Command (T2COM) trainees are exempt from this requirement.  States should use SPD code KFF for all voluntary separations.

   b.  [RESTATED] Involuntary separations:  Involuntary separation (Phase II) began on 7 June 2025 for T10 and T32 AGR and Soldiers on active-duty orders for 30 or more consecutive days, and on 8 July 2025 for T32 ARNG Traditional (M-Day) Soldiers.

      (1)  [RESTATED] Commanders will take immediate measures to update personnel records and administrative systems to reflect biological sex for all individuals. Commanders will verify and annotate within all separations actions that the individual being separated has had their records updated within IPPS-A to reflect biological sex. At a minimum, commanders will ensure that the individual personal profile data reflects the biological sex.  This may be accomplished through the IPPS-A function known as "Modify a Person."  The Soldier Talent Profile will be provided as supporting documentation within the separation action and must reflect the Soldier's biological sex for the packet to be actioned.  See Annex M for a list of required documentation for involuntary packet processing.

      (2)  [RESTATED] Once identified, Soldiers who did not previously elect voluntary separation during Phase I will be processed for involuntary separation NLT 30 days from identification and medical verification.

2.  Initial Actions:

   a.  [RESTATED] The primary means of identifying individuals for involuntary separation will be through individual medical readiness (IMR) reviews such as the annual periodic health assessment (PHA) or Soldier readiness process (SRP).  The first O5 Commander will direct an IMR review when they have personal knowledge of individuals with gender dysphoria. Subordinate commanders may collaborate with the first O5 Commander in their unit to assist with directing the IMR review for those individuals who are disqualified for military service.

Enclosure 2
Annex B (PPOM #25-015e)


b.  [RESTATED] Commanders will not conduct mass directed SRP/PHA events for unit personnel for the sole intent of identifying individuals with gender dysphoria, and commanders will not query supporting medical providers or behavioral health specialists for consolidated information about their unit personnel.  Commanders will not submit individualized, command-directed behavioral health consults for the purposes of confirmation of the gender dysphoria diagnosis unless the commander has personal knowledge. Additionally, the first O5 commander will direct the Soldier to complete an IMR review if the commander has personal knowledge.  The commander may follow up with the medical provider to discuss the individual's medical readiness status if it is not communicated through the profiling system.

c.  [ADD] behavioral health officers and behavioral health department providers (psychiatrists, psychologists, social workers, and psychiatric mental health nurse practitioners) are not authorized as signature authorities for the gender dysphoria medical verification memo.  See Annex O for authorized medical providers for medical verification. upon commander's verification from the medical provider that the individual meets the criteria for separation, the first O5 commander will notify the individual of disqualification from service and initiate separation.  Commanders should provide this notification utilizing the template in Annex N (commander's memo).

d.  [RESTATED] The Soldier does not need to be present for a credentialed provider to conduct an IMR review.  Upon medical verification, the separation action will be initiated within the system of record (i.e. IPPS-A).

3.  Medical:

a.  [RESTATED]  Personal knowledge will be based on one of the following criteria:

(1)  An individual's prior request for an exception to policy (ETP) to grooming standards pursuant to AD 2021-22 or PPOM 21-037.

(2)  An individual's request for a medical treatment plan pursuant to AD 2021-22 or PPOM 21-037.

(3)  An individual's open or overt conduct regarding his or her gender dysphoria in the unit or in public/social media.

(4)  An individual's private conversation with his or her commander disclosing his or her gender dysphoria.

b.  [CHANGE TO READ] Effective 30 June 2025, MEDPROS now hosts an updated DD form 3024 Periodic Health Assessment (PHA) to include questions about gender

2

Enclosure 2
Annex B (PPOM #25-015e)

dysphoria.  Medical providers conducting a PHA, SRP, or individual medical readiness review who identify individuals with a current diagnosis or history of, or exhibiting symptoms consistent with, gender dysphoria must immediately notify the individual's commander using the medical profiling system.  They will also complete a verification memorandum utilizing the template at Annex E and provide it to the soldier's commander.

c.  [CHANGE TO READ] Medical providers who are asked to perform an IMR review may utilize the gender dysphoria clinical decision support tool (Annex H) that outlines criteria for the diagnosis of gender dysphoria.  If uncertainty remains after review of the medical documentation and discussion with the individual, then the provider may refer the individual to a behavioral health provider for diagnostic clarification.  For the purposes of this PPOM, medical providers who may perform the IMR review consist of the following personnel or equivalent: physician, nurse practitioner (NP), or physician assistant (PA) credentialed to perform soldier medical readiness assessments.  Behavioral health officers and behavioral health department providers (psychiatrists, psychologists, social workers, and psychiatric mental health nurse practitioners) are not authorized as signature authorities for the gender dysphoria medical verification memo.  The medical provider can be either military or civilian.  See Annex O for authorized medical providers for medical verification.

d.  [RESTATED] When a gender dysphoria diagnosis is documented in the electronic health record, the information shared in the profile will follow the minimum necessary rule IAW DOD Manual 6025.18 and will note that the Service member is non-deployable IAW AR 40-502.

e.  [CHANGE TO READ] Individuals may be referred to the DES if they have a co-morbidity, or other qualifying condition, that is appropriate for disability evaluation processing in accordance with AR 635-40, prior to the completion of their separation physical.  For cases properly referred to DES for review of a co-morbidity or other qualifying condition, DES processing takes precedence over voluntary and involuntary separation processing.

4.  Involuntary Separation Procedures:

a.  [RESTATED] For involuntary separations, State's HROs/G1s will receive all submissions from subordinate units and will submit one Customer Relationship Management (CRM) case to ARNG-HRH for each Soldier by selecting the provider group: NGB HRH AGR POLICY.  The CRM case for involuntary packets must contain all the required documents listed in Annex M.  Subject of CRM case will be "Involuntary

3

Enclosure 2
Annex B (PPOM #25-015e)

Separation Request." States will enter their own provider group name in the comments box of the CRM case to ensure continued communication.

    b.  [RESTATED] Once the CRM case is assigned to ARNG-HRH, the state should add the minimum number of individuals necessary with a need-to-know as "interested parties" to the CRM case.  If additional documents need to be added to the case, states should utilize the "interested parties" capability and refrain from re-assigning the case back to their own provider group, to ensure that NGB retains visibility and tracking of the CRM case.

    c.  [RESTATED] States should add additional required documents to pending CRM cases IAW Annex M (involuntary separation checklist) utilizing the appropriate templates as soon as possible and keeping the deadlines for separation in mind. Commander's endorsement memos must be signed by the first O5 or higher in the Soldier's chain of command.

    d.  [RESTATED] Commanders must consult with their servicing legal office with regard to all involuntary separation actions during Phase II.

    e.  [RESTATED] All involuntary separation actions must include a statement as part of Annex N (Commander's Memo), attesting that the individual has comported to their biological sex in all matters, to include updating administrative systems.

    g.  [CHANGE TO READ] A Soldier who is notified as a respondent is entitled to a board hearing, upon request.  Board hearings for enlisted members will comply with implementation guidance in reference b (Annex Q) and withdrawal of Federal Recognition actions will follow the same guidance and use the templates attached to this PPOM.  A respondent refers to a soldier that has been command notified that they are being involuntarily separated for gender dysphoria.  All boards will only make findings about whether a respondent has a diagnosis, history of, or exhibits symptoms consistent with gender dysphoria.  All boards will adhere to the following appropriate Army Regulation:

    (1)   ARNG Officers will be separated IAW AR 135-175, AR 135-180, NGR 600-100, NGR 600-101, and NGR 635-101.

    (2)   ARNG Enlisted Soldiers will be separated IAW AR 365-200 or AR 135-178 as applicable.

    h.  [RESTATED] Commanders will counsel individuals on their right to a board and document the individual's consent (or waiver) of a board within the separation action. This annotation will be included on Annex N (Commander's Memo).

4

Enclosure 2
Annex B (PPOM #25-015e)

i.  [CHANGE TO READ] Board member composition and appointments will be consistent with existing Army policy, to include the authorities identified in paragraph 4.g.(1-2).  Board members will be familiar with the policies listed in the reference section of reference b (Annex Q).

j.  [ADD] In accordance with reference b (Annex Q), board appointing authorities will direct that administrative separation boards and boards of inquiry are conducted in a closed setting and not open to the public.  In the absence of specific guidance by the board appointing authority, the board president, in consultation with their legal advisor, are authorized to determine the reasonable number of counsels that may attend a separation board to represent a respondent during in-person proceedings.

k.  [ADD] Staff Judge Advocates (SJAs), or legal office equivalent, will select a Judge Advocate (JA) to serve as the legal advisor to the board president and a separate JA to serve as the board recorder based on the individual's education, experience, and temperament.  The SJA or equivalent will appoint an assistant recorder, if appropriate, utilizing the same criteria.  Legal offices facilitating involuntary separation board hearings will ensure JAs assigned to serve as legal advisor/board recorder(s) receive training as deemed appropriate by their respective chain of command.  Use of these specially selected JAs will ensure consistency in board procedures, accuracy in reporting board results, and the legal integrity of board proceedings.  No later than seven calendar days after publication of this PPOM, legal offices will provide OTJAG Administrative Law Division (ALD) with the following information by emailing usarmy.pentagon.hqda-otjag.mbx.p-law@army.mil: respondent's name and respondent's unit of assignment, legal advisor/board recorder's name, and legal advisor/board recorder's contact phone/email.  OTJAG ALD will provide technical channel advice to legal advisors/board recorder(s).  Only JAs selected by their SJA are authorized to perform duties as legal advisor or recorder for board hearings initiated pursuant to this PPOM and EXORD 175-25.  State legal offices will comply with this directive by courtesy copying NGB-GC Admin Law at ng.ncr.ngb-arng.mbx.ngb-gc-adlaw1@army.mil.

l.  [ADD] Board legal advisors will understand their responsibilities outlined in applicable Army regulations and those responsibilities specified in reference b (Annex Q).  Board recorders will understand their responsibilities outlined in applicable army regulations and those responsibilities specified in reference b (Annex Q).  Detailed counsel for the respondent will consult with their supervisory or technical channel for appropriate administrative support, resources, and information on the relevant authorities, board processes, and the rights and obligations of their clients.

m.  [ADD] All administrative separation boards and boards of inquiry will use the

5

Enclosure 2
Annex B (PPOM #25-015e)

standardized findings and recommendations worksheet included as an attachment within this PPOM.

n.  [ADD] Commanders will ensure the board finding, recommendation(s), and other required documents are forwarded through appropriate channels to NGB (HRH-M) for action.  The Secretary of the Army or his designee is the separation authority for all involuntary separations.

o.  [ADD] Soldiers undergoing involuntary separation will, if applicable, submit retention waivers within the timelines prescribed in reference b (Annex Q).

p.  [RESTATED] ~~The Secretary of the Army is the separation authority for all involuntary separations for enlisted Soldiers.  The Chief, National Guard Bureau (CNGB) is the separation authority for all officers.  For involuntary separation actions where a board recommends retaining the Soldier, Commanders will ensure the board findings, recommendations, and other required documents are forwarded through the appropriate channels to NGB for action.~~

p.  [CORRECTED] The separation authority for all involuntary separations, enlisted and officer, will be retained by SECARMY.  The Director, Army National Guard (DARNG) will be a signature authority and forwarding agent for officer packets prior to them going to SECARMY for decision.  For involuntary separation actions where a board recommends retaining the Soldier, Commanders will ensure the board findings, recommendations, and other required documents are forwarded through the appropriate channels to NGB for action.

5.  Waivers and Entry Into Military Service:

a.  [RESTATED] Waiver requests will be routed THRU the first General Officer in the Soldier's chain of command for review.  Request memos will be sent THRU the Director, Army National Guard, ATTN: ARNG-HRH TO the Secretary of the Army for decision.  Disqualified individuals may be considered for a waiver if there is a compelling government interest that directly supports warfighting capabilities to include special experience, special training, and advanced education in a highly technical career field designated as mission critical and hard to fill by the Secretary of the Army.  Requests will be considered if such experience, training, and education is directly related to the operational needs of the Army. The Soldier concerned must meet all the following criteria:

(1)  [CHANGE TO READ] The individual demonstrates 36 consecutive months of stability in the individual's biological sex without clinically significant distress

6

Enclosure 2
Annex B (PPOM #25-015e)

or impairment in social, occupational, or other important areas of functioning; and the individual demonstrates that he or she has never attempted to transition to any other sex.  An attempt to transition is any documented plan or actions directed towards living consistently as the preferred sex.  This includes medical interventions such as gender affirming surgery, voice therapy, and medications.  It also includes social interventions such as name changes and real-life experience living as the preferred gender; and the individual is willing and able to adhere to all applicable standards associated with his or her biological sex.

    (2)  [CHANGE TO READ] The individual disqualified applicants requesting entry into military service may submit a written waiver request for accession through their recruiter to Secretary of the Army (SECARMY) for consideration.

    (3)  [RESTATED] Waiver authority for accession or retention is withheld to the SECARMY.

6.  Separation Pay and benefits:

    a.  [RESTATED] All remaining Military Service Obligations (MSO), Active-Duty Service Obligations (ADSO), and Service Remaining Obligations (SRO) will be waived for both voluntary and involuntary separations.  Soldiers who completed at least six years of service with an approved transfer of their post-9/11 GI Bill benefits to their dependents will have any remaining service obligations waived.  The transfer request must be submitted and approved prior to the voluntary separation date.

    b.  [CHANGE TO READ] For involuntary separations, early retirement under the Temporary Early Retirement Authority (TERA) is authorized for Soldiers who have achieved 18 but less than 20 years Active Federal Service (AFS) IAW DoDI 1332.46.  Individuals must have a minimum of 18 years AFS prior to 1 January 2026 to qualify for TERA.  The authority for TERA and ETP approvals resides with ASA (M&RA).  Individuals requesting retirement in lieu of separation must have 20 years AFS prior to 1 January 2026.

    c.  [ADD] Soldier memos will be required for all TERA requests and will include language indicating the soldier understands that if their TERA request is not approved, the applicable separation action under the EXORD will proceed forward for processing, based on the date the TERA request was submitted.  See Annex P for an example of a TERA request intent memo.

    d.  [RESTATED] Soldiers who are involuntarily separated may be eligible for involuntary separation pay IAW 10 U.S.C 1174 and DODI 1332.29.

7

Enclosure 2
Annex B (PPOM #25-015e)


e.  [ADD] Individuals who have been identified as being disqualified from service and are currently on permanent change of station (PCS) assignment orders, must immediately contact their state career/talent managers to discuss options

f.  [ADD] Upon medical verification, commanders (or command designee) must contact their state G1 for further coordination regarding PCS assignment orders for individuals identified for separation.  All permanent change of station (PCS) orders, moves, etc. will be deleted if a soldier is identified for a separation under gender dysphoria.

7.  Administrative:

a.  [ADD] Enlisted Soldiers will be processed for involuntary separation under secretarial plenary authority using program designator (SPD) code JFF.  Officers will be processed for involuntary separation on the basis their continued service is not clearly in the interests of national security using the separation program designator (SPD) code JDK.

b.  [ADD] Individuals approved for involuntary separation will be separated no later than the 1st day of the 7th month from the initiation of the separation request within IPPS-A.  States must notify their NGB point of contact of the separation date and send a copy of the discharge order when closing out the IPPS-A case for both voluntary and involuntary packets.

c.  [RESTATED] The MS Teams Channel entitled "Prioritizing Mil Excellence State Work Group" will continue to be the repository for all Gender Dysphoria products and templates at:
https://dod.teams.microsoft.us/l/team/19%3Adod%3A1kdgqosQmRday5EGjWa8EMEM
mkZyfnw9vrNL77gNAGU1%40thread.tacv2/conversations?groupId=c31c012f-3414-
4900-b1e6-9145275906ee&tenantId=fae6d70f-954b-4811-92b6-0530d6f84c43

8

Enclosure 2
Annex B (PPOM #25-015e)

## ATTACHMENT 1, OFFICER BOARD TEMPLATES

FINDINGS AND RECOMMENDATIONS

In the withdrawal of Federal recognition board convened to determine whether [Servicemember] should retain Federal recognition, under the provisions of Executive Order 14183, "Prioritizing Military Excellence and Readiness," January 27, 2025; Secretary of Defense Memorandum, "Prioritizing Military Excellence and Readiness," February 7, 2025; Secretary of Defense Memorandum, "Implementing Policy on Prioritizing Military Excellence and Readiness," May 8, 2005; Official Performing the Duties of the Under Secretary for Defense for Readiness Memorandum, "Additional Guidance on Prioritizing Military Excellence and Readiness," February 26, 2025, Official Performing the Duties of the Under Secretary of Defense for Manpower and Reserve Affairs Memorandum, "Clarifying Guidance on Prioritizing Military Excellence and Readiness:  Retention and Accession Waivers," March 4, 2025; Official Performing the Duties of the Under Secretary of Defense for Personnel and Readiness Memorandum, "Prioritizing Military Excellence and Readiness:   Implementation Guidance," May 15, 2025; Under Secretary of War for Personnel and Readiness Memorandum, "Administrative Separations," 8 October 2025; and National Guard Regulations 635-100 and 635-101, in the interest of national security, the board, in a closed session and upon secret ballot with a majority vote taken, has made the following findings and recommendations:

FINDINGS

The board, having carefully considered the evidence before it finds:
That [Servicemember] (has) (does not have) a current diagnosis of, history of, or exhibits symptoms consistent with, gender dysphoria, or has a history of cross-sex hormone therapy or a history of sex reassignment or genital reconstruction surgery as treatment of gender dysphoria or in pursuit of a sex transition, and therefore (is disqualified from)(remains qualified for) military service in the [Service[ in the notification of proposed withdrawal of Federal recognition (is)(is not) supported by a preponderance of evidence.
Comment(s):

_____

9

Enclosure 2
Annex B (PPOM #25-015e)


RECOMMENDATIONS

In view of the above findings, the board recommends that [Servicemember ]:


_____ Retain Federal recognition. [This option is only available if the finding is not supported by substantial evidence]

_____ Retain Federal recognition with a recommendation that a waiver be processed through the Secretary of the [Military Department]. [If eligible.]

_____ Be retired from the [Service].  [If eligible.]

_____ Federal Recognition be withdrawn with an [characterization] character of service.  [Characterization of service will be Honorable unless the respondent's record otherwise warrants a lesser characterization.]



Signatures of Board Members, Recorders, and Counsel for Respondent

Date: _____

10