# IMPLEMENTING POLICY ON PRIORITIZING MILITARY EXCELLENCE AND  READINESS FOR THE IDENTIFICATION, PROCESSING, AND INVOLUNTARY  SEPARATION OF MARINES

Date Signed: 4/23/2026 | MARADMINS Number: 189/26

MARADMINS : 189/26

```
R 231015Z APR 26
MARADMIN 189/26
MSGID/GENADMIN/CMC WASHINGTON DC MRA//
SUBJ/IMPLEMENTING POLICY ON PRIORITIZING MILITARY EXCELLENCE AND
READINESS FOR THE IDENTIFICATION, PROCESSING, AND INVOLUNTARY
SEPARATION OF MARINES//
REF/A/MSGID/MSG/ALNAV/R061945ZMAR26//
REF/B/MSGID/DOC/SECNAV/03JUL25//
REF/C/MSGID/MSG/ALNAV/R121919ZMAY25//
REF/D/MSGID/DOC/OUSW(PR)/21MAR25//
REF/E/MSGID/DOC/CMC/15FEB19//
REF/F/MSGID/DOC/OUSW(PR)/26FEB25//
REF/G/MSGID/DOC/OUSW(MRA)/04MAR25//
REF/H/MSGID/DOC/SECNAV/01OCT25//
REF/I/MSGID/DOC/DODI/10NOV22//
REF/J/MSGID/DOC/OUSW(PR)/08OCT25//
REF/K/MSGID/DOC/SECNAV/24JAN20//
REF/L/MSGID/DOC/DODI/14JUN19//
REF/M/MSGID/DOC/OUSW(PR)/15MAY25//
NARR/REF A IS ALNAV 011/26 IMPLEMENTING POLICY ON PRIORITIZING
MILITARY EXCELLENCE AND READINESS FOR INVOLUNTARY SEPARATION
GUIDANCE.  REF B IS A SECRETARY OF THE NAVY MEMORANDUM DIRECTION
```

CONCERNING INVOLUNTARY SEPARATION UNDER DEPARTMENT OF WAR POLICY ON PRIORITIZING MILITARY EXCELLENCE AND READINESS.  REF C IS ALNAV 038/25 IMPLEMENTING POLICY ON PRIORITIZING MILITARY EXCELLENCE AND READINESS.  REF D IS UNDER SECRETARY OF WAR FOR PERSONNEL AND READINESS MEMORANDUM, PRIORITIZING MILITARY EXCELLENCE AND READINESS: MILITARY DEPARTMENT IDENTIFICATION.  REF E IS MCO 1900.16, with CH-3 THE MARINE CORPS SEPARATIONS AND RETIREMENT MANUAL.  REF F IS UNDER SECRETARY OF WAR FOR PERSONNEL AND READINESS MEMORANDUM, ADDITIONAL GUIDANCE ON PRIORITIZING MILITARY EXCELLENCE AND READINESS.  REF G IS UNDER SECRETARY OF WAR FOR PERSONNEL AND READINESS MEMORANDUM, CLARIFYING GUIDANCE ON PRIORITIZING MILITARY EXCELLENCE AND READINESS, RETENTION AND ACCESSION WAIVERS.  REF H IS DEPARTMENT OF THE NAVY MEMO, PRIORITIZING MILITARY EXCELLENCE AND READINESS – INVOLUNTARY SEPARATIONS. REF I IS DEPARTMENT OF DEFENSE INSTRUCTION 1332.18, DISABILITY EVALUATION SYSTEM.  REF J IS UNDER SECRETARY OF WAR FOR PERSONNEL AND READINESS MEMORANDUM, PRIORITIZING MILITARY EXCELLENCE AND READINESS: ADDITIONAL IMPLEMENTATION GUIDANCE ON ADMINISTRATIVE SEPARATIONS.  REF K IS THE SECRETARY OF THE NAVY INSTRUCTION 5510.30, DEPARTMENT OF THE NAVY PERSONNEL SECURITY PROGRAM.  REF L IS DEPARTMENT OF DEFENSE INSTRUCTION 6120.3A PERIODIC HEALTH ASSESSMENT FOR INDIVIUAL MEDICAL READINESS.  REF M IS UNDER SECRETARY OF WAR FOR PERSONNEL AND READINESS MEMORANDUM, PRIORITIZING MILITARY EXCELLENCE AND READINESS: IMPLEMENTATION GUIDANCE//
POC/MPO/EMAIL:SMB_HQMC_MPO@USMC.MIL/TEL:(703) 784-9632//
POC/CDA/EMAIL:CDA_USMC@USMC.MIL//
POC/MMSR2ENLISTED/EMAIL:SMB_MANPOWER_MMSR2E@USMC.MIL//
POC/MMSR2OFFICER/EMAIL:SMB_MANPOWER_MMSR2O@USMC.MIL//
POC/BUMED DAC/EMAIL:USN.NCR.BUMEDFCHVA.MBX.BUMED-DEPLOYABILITY-ACTION-CELL@HEALTH.MIL//
GENTEXT/REMARKS/1.  Purpose.  Pursuant to references (a) through (m), this MARADMIN provides direction on the identification, processing, and involuntary separation of Marines who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria and who have not previously requested voluntary discharge pursuant to reference (c).
1.a.  Policy.  Pursuant to references:
1.a.1.  Marines must adhere to standards associated with their biological sex.
1.a.2.  A Marine's sex must be accurately reflected in the Defense Enrollment Eligibility Reporting System (DEERS) and all other systems of record.

1.a.3.  If a Commander determines a sex marker change is required in DEERS or any other system of record, contact Manpower Military Policy (MPO), Manpower Plans and Policy, (MP) Deputy Commandant for Manpower and Reserve Affairs (DC M&RA).

1.a.4.  All Exceptions to Policy (ETPs) are revoked allowing a member to conform to standards associated to a sex different from their identification in DEERS.

1.b.  Definitions.  For the purpose of this MARADMIN, the following definitions apply:

1.b.1.  "Sex," is an individual's immutable biological classification as either male or female.

1.b.2.  For the purposes of this MARADMIN, an ETP refers to a formal authorization that allowed a Marine to live in a manner not aligned with their biological sex and was granted by either 1) Headquarters Marine Corps authorized deviations from service-level policy (e.g., grooming or uniform standards) and/or 2) Local commanders authorized the use of local facilities (e.g., heads, barracks, locker rooms).

2.  Identification.  Marines are identified for processing under this policy through 1) Periodic Health Assessment or 2) Commander's Awareness.

2.a.  Periodic Health Assessment (PHA).  The primary method of identifying Marines subject to involuntary separation is the Individual Medical Readiness program.  A Marine attesting on the PHA self-assessment questionnaire to a diagnosis, history, or symptoms of gender dysphoria will be evaluated for medical standards compliance as directed by the Bureau of Medicine and Surgery (BUMED).  No Marine will be directed to complete a PHA outside the periodicity directed in reference (l).

2.b.  Commander's Awareness.  Commanders who are aware of Marines who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria will identify Marines subject to this policy by directing a medical record review to assess compliance with medical standards.  This review is not required if medical verification was previously completed (e.g., in support of an exception to policy request).  For the purposes of this MARADMIN, "Commander's Awareness" is strictly limited to knowledge derived from one or more of the following:

2.b.1.  A Marine's prior request for an ETP to adhere to sex-based military standards different from their sex.

2.b.2.  A prior request to change their sex-marker in DEERS.

2.b.3.  A medical treatment plan, placement in a medically restricted duty status, or deployment waiver associated with a documented

diagnosis of gender dysphoria.

2.b.4.   A Marine's voluntary self-identification via written administrative remarks to their chain of command that they have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria pursuant to reference (d).  This self-identification will acknowledge the member is subject to review for compliance with medical standards and possible involuntary separation.

2.b.5.   When a commander possesses facts or circumstances not explicitly covered in subparagraph 2.b.1. through 4, but which they believe demonstrates a diagnosis or, history of, or symptoms of gender dysphoria, the commander must present these facts to the first general officer (GO) in the Marine's chain of command.  The GO will then make a case-by-case determination in consultation with an assigned military judge advocate and the BUMED Deployability and Action Cell (BUMED DAC) in an advisory capacity, based on medical record review as permitted by law and, if necessary, medical evaluation.

2.c.  Medical Verification.  Commanders will contact the BUMED DAC at usn.ncr.bumedfchva.mbx.bumed-deployability-action-cell@health.mil to initiate an individualized medical record review.  Commanders will also notify MPO that they have requested a medical verification within 24 hours.

3.  Referral and Initial Actions.  Once a Marine is identified in accordance with paragraph 2, the following steps will occur:

3.a. BUMED Notification and Prerequisite for Referral.  Upon confirmation that the Marine meets the medical criteria for involuntary separation, BUMED DAC will document the Marine as non-deployable and not medically ready, and notify MPO of their determination.

3.b. Referral for Separation Processing.  The command referral will be in naval letter correspondence format and contain the following:

3.b.1.   Marine's Name

3.b.2.   Command Assigned

3.b.3.   Electronic Data Interchange Personal Identifier (EDIPI)

3.b.4.   Annotate whether the Marine receives special pay or a bonus and, if applicable, provide a recommendation with justification regarding debt recoupment.

3.b.5.   Referrals will be titled with the Marine's initials and the last five digits of their EDIPI, and saved in Portable Document Format (PDF).

3.b.6.   If commands require GO determination under paragraph 2.b.5.

the GO assumes all referral procedures and responsibilities.

3.c.  Final Routing.  The command and GO referrals will be routed to MPO.  Once MPO has verified that a package is complete, the referral will be routed to the Consolidated Disposition Authority (CDA).

4.  Notification and Placement on Administrative Absence.  Upon notification from MPO that a medical verification is confirmed, Commanders should place Marines in administrative absence status. All Marines notified will begin pre-separation requirements immediately, including the Transition Assistance Program. While in administrative absence, Marines will be afforded maximum flexibility to complete such requirements remotely or in civilian attire.  If a commander elects not to place a Marine on administrative absence, the command will notify MPO within 24 hours.

4.a.  Active and Active Reserve Components:

4.a.1.  Marines will be assigned a duty limitation code of E – ADMIN, NON-DEPLOY.

4.a.2.  Marines are entitled to full pay and benefits.  However, if a Marine is an administrative absence status, they will not receive bonus, special, and/or incentive pays.

4.a.3.  Administrative absence will be initiated by the Marine through the Marine Online (MOL) Leave and Liberty module with the type selected as "Other (Enter Reason in Comments Box)."  The comment to be recorded is "Administrative absence in accordance with ALNAV 011/26 for the duration of the retirement/separation process."

4.b.  Selected Marine Corps Reserve (SMCR):

4.b.1.  Commanders should excuse Marines from drill execution for the duration of their separation process.  Marines will not receive drill pay or retirement points for excused drills.  If a commander elects not to excuse a Marine from drill, the command will notify MPO within 24 hours.

4.b.2.  All excused drills will be reported as "EA – OTHER" via unit diary.

4.b.3.  The history statement for the unit diary entry is: "Excused absence in accordance with ALNAV 011/26 for the duration of the retirement/separation process."

4.c.  Commands remain fully responsible for personnel placed in an administrative absence status.  This communication is essential to ensure the timely and expeditious completion of all pre-separation requirements, meet the prescribed notification timelines, and safeguard the Marine's health and welfare throughout the entire process.

5.  Involuntary Separation Board Proceedings.  The process for the

involuntary separation of Marines is outlined below.  All correspondence and documents associated with this MARADMIN will be routed through MPO.

5.a.  Authorities.

5.a.1.  The Commander, Navy Installations Command, is designated as the CDA.  The CDA is the exclusive authority to initiate involuntary separation procedures for all Marines and is the sole show-cause authority for all officer boards of inquiry convened pursuant to this policy.  The CDA may promulgate necessary involuntary separations guidance governing board and referral procedures.

5.a.2.  The Secretary of the Navy (SECNAV) is the separation authority for all officer and enlisted separations under this policy.

5.b.  Notification of Separation and Marine's Rights.

5.b.1.  Within 30 calendar days of referral, the CDA will inform the Marine via their command that involuntary separation proceedings have been initiated.  The notification will inform the Marine of their right to elect an administrative separation board or board of inquiry, as applicable.  The CDA will notify MPO that involuntary separation proceedings have been initiated.

5.b.2.  Per reference (j), enlisted Marines being processed under this MARADMIN are entitled to an administrative separation board and officers are entitled to a Board of Inquiry, regardless of time in service.

5.b.3.  Upon notification, Marines considering a board may consult with a military defense counsel or a civilian defense counsel (at their own expense).

5.b.4.  The commander will ensure the Marine understands their right to a board and the associated 10-day timeline for election of a board.

5.b.5.  The Marine must respond to the CDA and MPO within 10 calendar days of the notification of separation if they are electing a board.

5.b.6.  Failure of the Marine to meet the notification timeline of 10 calendar days will result in waiving their right to a board.

5.c.  Basis for Separation and Separation program designator (SPD) Codes.

5.c.1.  The Service will process officers for separation on the basis that their continued service is not consistent with the interests of national security, using the Military Personnel Security Program (JDK2) SPD code.  As outlined in reference (k), no personnel security actions will be pursued under this separation basis, solely for meeting gender dysphoria separation criteria.

5.c.2.  The Service will process enlisted Marines for separation on

the basis that separation is in the best interest of the Military Service, using the Secretarial Authority (JFF8) SPD code.

5.d.  CDA Responsibilities and Resourcing.

5.d.1.  The CDA is responsible for the consistent application of standards for all boards.  The CDA will make determinations on obtaining witnesses and continuances.

5.d.2.  If a Marine waives board proceedings, the CDA will ensure the waiver is appropriately documented, and will expeditiously process the package to the SECNAV via DC M&RA, MPO.

5.d.3.  DC M&RA will resource the CDA as necessary to effectuate these proceedings.  The CDA shall route requests for resources directly to DC M&RA.  The Assistant Secretary of the Navy (Manpower and Reserve Affairs) (ASN (M&RA)) shall resolve any conflicts regarding Service resourcing.

5.e.  Board Procedures and Standards.

5.e.1.  Pre-Separation Requirements.  Commands should strive to have Marines complete all pre-separation requirements, as detailed in paragraph 12.d., prior to the convening of a board.  Marines will be allotted a minimum of 30-days from notification of separation until a board is convened.  This 30-day timeline is a critical deadline. If a command anticipates any delay, the commander must contact MPO to report the circumstances within 24 hours.

5.e.2.  Commands are responsible for funding travel and other related expenses associated with the execution of administrative boards.

5.f.  Board Findings.

5.f.1.  Boards convened by the CDA will only make findings on whether the Marine has a diagnosis or history of, or exhibits symptoms consistent with, gender dysphoria and, if so, that the Marine should be separated.

5.f.2.  The least favorable characterization of service is Honorable if the only basis for separation is a diagnosis or history of, or exhibiting symptoms consistent with, gender dysphoria.

6.  Post-Board Actions and Final Decision.  Post-board procedures shall follow established service processes except as outlined below.

6.a.  Post-Board Reporting Process.  The CDA will prepare the report of board proceedings, make recommendations on any letters of deficiency submitted by the Marine, and forward the package to MPO. DC M&RA will forward final separation packages to the SECNAV via ASN(M&RA).

6.b.  ASN (M&RA), will upon receipt from DC M&RA, review the package and make a recommendation to SECNAV.  The subsequent actions are as

follows:

6.b.1.  If the board determines the basis for separation exists and ASN (M&RA) recommends approval of the board's recommendation, the Marine will be notified by the CDA, via MPO and their commander, of their right to either accept ASN (M&RA)'s recommendation or submit a retention waiver request.

6.b.2.  If the board determines the basis for separation exists but ASN (M&RA) recommends disapproval, the Marine will be retained.

6.b.3.  If an enlisted administrative separation board determines the basis for separation does not exist and ASN (M&RA) recommends approval of retention, the Marine will be retained.

6.b.4.  If an enlisted administrative separation board determines the basis for separation does not exist but ASN (M&RA) recommends disapproval of retention, the Marine will be notified by MPO, via their commander, of their right to either accept ASN (M&RA)'s recommendation or submit a retention waiver request.

6.b.5.  If an officer board of inquiry determines the basis for separation does not exist, the case is closed and the officer is retained.

6.c.  If a Marine waives their right to a board, MPO will notify the Marine, via their commander, of their right to submit a retention waiver request.

6.d.  Retention Waiver Eligibility. Marines requesting a retention waiver must meet the following criteria:

6.d.1.  Demonstrate 36 consecutive months of stability in the individual's sex without clinically significant distress or impairment in social, occupational, or other important areas of functioning.

6.d.2.  Demonstrate that he or she has never attempted to transition to any other sex than his or her biological sex.

6.d.3.  Be willing and able to adhere to all applicable standards, including the standards associated with his or her sex.

6.e.  If a Marine elects to submit a waiver it is a two-step, concurrent routing process:

6.e.1.  Member Waiver Application.  The Marine has 15 calendar days from notification of ASN(M&RA)'s recommendation to compile and submit their Waiver Request package directly to MPO.  The member at a minimum must present evidence that they meet all three eligibility criteria.  No waiver requests in any form will be accepted after this 15-day deadline.  Contact MPO for further instructions.

6.e.2.  Concurrent Package Submission to Command: Simultaneously, the Marine must submit their complete waiver package, including all

supporting evidence, to their chain of command to begin the endorsement process.  The command is responsible for routing the package to the first GO for an endorsement that includes an assessment of a compelling government interest.  The complete package will be forwarded to DC M&RA, via MPO, no later than 30 calendar days from the date of the Marine's initial Waiver Request due date.

6.e.3.  Consideration of a compelling government interest. A compelling government interest includes special experience, training, and advanced education in a highly technical career field designated as mission critical and as a hard-to-fill career field by the SECNAV, where such attributes are directly related to the operational needs of the Department of the Navy that directly supports warfighting capabilities.

6.f.  SECNAV is the sole approval authority for any retention waiver.

7.  Final Pay, Benefits, and Separation Conditions.  Marines separated under this policy are subject to the following:

7.a.  Reentry Code.  Marines separated under this policy will receive a reentry code of RE-3G to reflect that an accession waiver is required for reentry.

7.b.  Service Obligation.  Any remaining service obligation, including any obligation associated with a transfer of education benefits under the Post-9/11 GI Bill and any inactive reserve obligation, will be waived.

7.c.  Involuntary Separation Pay.  Marines separated pursuant to this policy may be eligible for involuntary separation pay.  In general Marines are eligible for separation pay if they have completed at least 6 years of continuous active duty service.

7.d.  Unearned Bonuses, Incentive, and Special Pays.

7.d.1.  Pursuant to reference (a), Marines subject to involuntary separation who are in receipt of a bonus, incentive, or special pay will have that bonus, incentive, or special pay terminate upon placement in an administrative absence status until administrative separation proceedings are resolved.

7.d.2.  Pursuant to reference (f) and 37 U.S.C. § 373, the Department of the Navy may recoup any unearned bonuses and/or special and incentive pay for Marines who fail to satisfy service eligibility requirements as a result of their separation.

7.d.3.  DC M&RA will include a recommendation regarding debt recoupment as part of the endorsement on the separation package.

7.e.  Transition Benefits.  Per reference (b), Marines are eligible for all other separation and transition benefits to which they are

otherwise entitled under law or Department of War policy, with the exception of the Skillbridge program.  Participation in Skillbridge is not authorized.

8.  Retirement Requests.

8.a.  Eligibility.

8.a.1.  Marines with sufficient service for a transfer to the Fleet Marine Corps Reserve (FMCR) or retirement list per reference (e) may request retirement in lieu of involuntary separation pursuant to reference (a).

8.a.2.  At any time prior to final action by the SECNAV, Marines with greater than 18 but less than 20 years of active service may be eligible for early retirement under Temporary Early Retirement Authority (TERA), per reference (f).  Contact MPO for further instruction.  SECNAV is the final authority for TERA approval.

8.a.3.  Marines with greater than 15 but less than 18 years of active service may request an exception to policy for TERA, per reference (a).  Contact MPO for further instruction.  The Under Secretary of War (Personnel and Readiness) is the final approval authority for TERA exceptions to policy.  Pending requests will not delay board proceedings.

8.b.  Submission Process for Regular Retirement.

8.b.1.  Requests for retirement must be submitted to HQMC, Separations and Retirement Branch (MMSR) and MPO within 30 calendar days from the date the Marine has been identified as meeting the criteria outlined in this MARADMIN.  The requested retirement date will not exceed six months from the date of identification.

8.b.2.  Such requests will include a completed Navy and Marine Corps (NAVMC) Form 10274, Appendix J, and shall be routed via the first GO in the Marine's chain of command and DC M&RA.

8.c.  Marines Previously Approved for Retirement.  Marines who are subsequently identified under this policy will transfer to the Fleet Marine Corps Reserve (FMCR) retirement list no later than six months from identification.

8.d.  Commanders will place Marines pending retirement in administrative absence status in accordance with paragraph 4.

9.  Separation for Reasons Other than Gender Dysphoria.

9.a.  Disability Evaluation System (DES).

9.a.1.  Basis for Referral.  A diagnosis of gender dysphoria does not in itself constitute a physical disability, and Marines are ineligible for referral to the DES on this basis alone.  However, Marines may be referred to the DES if they have a co-morbidity or other qualifying medical condition that is appropriate for disability

evaluation.

9.a.2.  Administrative actions under this MARADMIN (such as conducting a board or submitting a waiver) will proceed concurrently with the DES process.  The SECNAV will hold any final separation determinations in abeyance until the DES process has fully concluded. The DES separation determination will take precedence.

9.a.3.  Notification Requirement.  Commanders will notify MPO within 24 hours if at any time during the separation process a Marine is referred to the DES.

9.b. Administrative Separation.

9.b.1.  Precedence of other administrative separation actions.  If a Marine is being processed for administrative separation for other reasons, processing under this MARADMIN will be held in abeyance. At the conclusion of the enlisted administrative board, if the Marine is not separated, processing under this MARADMIN will resume.

9.b.2.  Commanders shall notify MPO within 24 hours if a Marine, undergoing administrative processing under this MARADMIN, concurrently becomes subject to administrative separation for any other reason.

10. Duty Status Reporting.  Upon identification for involuntary separation under this policy, commanders will report via Marine Corps Total Force System (MCTFS) the Marine as non-deployable with strength category code 'X' and duty status code 'C'.  This duty status will remain until the conclusion of the separation process.

11.  Eligibility for Extension.

11.a.  A Marine approaching their Expiration of Active Service (EAS) may request an extension of service under the following circumstances:

11.a.1.  The Marine is qualified for Involuntary Separation Pay and is awaiting a final separation authority letter from the SECNAV.

11.a.2.  The Marine has elected to appear before an administrative separation board and the proceedings are not yet complete.

11.b.  Marine Request Procedure.  Eligible Marines will submit a request for an extension of service to their Commanding Officer using NAVMC Form 10274.

11.c.  Action by Command.  Upon receipt of a valid request by the Marine, the Commanding Officer will extend the Marine's service in 30-day increments until the separation process is finalized. Commanders are not authorized to involuntarily extend a Marines EAS.

12.  Commander's Responsibilities.

12.a.  Dignity and Respect.  Commanders will maximize the use of all available command authorities within the Department of War and

Department of Navy policy, consistent with reference (f), to ensure affected personnel are treated with dignity and respect throughout this process.

12.b.  Privacy of Health Information.  Commanders will protect the privacy of protected health information (PHI) they receive under this policy in the same manner as any other PHI.  Access to such information will be strictly restricted to personnel with a specific need to know for the conduct of official duties.  All personnel are accountable for safeguarding health information consistent with law and policy.

12.c.  Higher Headquarters Reporting.  Commanders with Marines in their commands subject to this policy will submit a report twice a month to MPO via their major subordinate command.  Commanders should contact MPO for the report template.

12.d.  Pre-Separation Checklist Reporting.

12.d.1.  Commanders must proactively ensure that all efforts are made to expedite the completion of the following requirements:

12.d.2.  Final Physical (page 3 of DD 2808 or 2807 stating "Medically Qualified for Separation/Retirement").

12.d.3.  DD Form 2648, Pre-Separation/Transition Counseling Checklist.

12.d.4.  Commanding Officer's Interview (required for all enlisted Marines).

12.d.5.  DD Form 2963, Service Treatment Record Transfer and Transmittal.

12.d.6.  Unit Check-Out Sheet.

12.e.  Commanders requiring clarification on any aspect of this policy, to include questions regarding available command authorities or tools, will contact MPO at the POC listed in this MARADMIN.

12.f.  Proactive Support.  Commanders will support impacted Marines during the separation process by advising them of available mental health, financial, and separation resources while maintaining positive engagement through regular check-ins.

13.  Military OneSource.  Military OneSource is available 24/7 at 1-800-342-9647 to assist all Marines and their families with any aspect of the separation process.

14.  Released authorized by Lieutenant General William J. Bowers, Deputy Commandant for Manpower and Reserve Affairs.//